IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERIMETRAL ORIENTAL DE BOGOTÁ, S.A.S.,

    *Petitioner*,

v.

AGENCIA NACIONAL DE INFRAESTRUCTURA
and
THE REPUBLIC OF COLOMBIA

    *Respondents*.

**Civil Action No. _____**

**Declaration of Jason W. Myatt in Support of Petition to Confirm Arbitral Award**

# EXHIBIT 9

# Decreto 1079 de 2015 Sector Transporte

Los datos publicados tienen propósitos exclusivamente informativos. El Departamento Administrativo de la Función Pública no se hace responsable de la vigencia de la presente norma. Nos encontramos en un proceso permanente de actualización de los contenidos.

DECRETO 1079 DE 2015

(Mayo 26)

VERSIÓN INTEGRADA CON SUS MODIFICACIONES

Esta versión incorpora las modificaciones introducidas al Decreto Único Reglamentario del Sector Transporte a partir de la fecha de su expedición.

ÚLTIMA FECHA DE ACTUALIZACIÓN: 24 DE FEBRERO DE 2023

"Por medio del cual se expide el Decreto Único Reglamentario del Sector Transporte."

EL PRESIDENTE DE LA REPÚBLICA DE COLOMBIA,

En ejercicio de las facultades que le confiere el numeral 11 del artículo 189 de la Constitución Política, y,

CONSIDERANDO:

Que la producción normativa ocupa un espacio central en la implementación de políticas públicas, siendo el medio a través del cual se estructuran los instrumentos jurídicos que materializan en gran parte las decisiones del Estado.

Que la racionalización y simplificación del ordenamiento jurídico es una de las principales herramientas para asegurar la eficiencia económica y social del sistema legal y para afianzar la seguridad jurídica.

Que constituye una política pública gubernamental la simplificación y compilación orgánica del sistema nacional regulatorio.

Que la facultad reglamentaria incluye la posibilidad de compilar normas de la misma naturaleza.

Que por tratarse de un decreto compilatorio de normas reglamentarias preexistentes, las mismas no requieren de consulta previa alguna, dado que las normas fuente cumplieron al momento de su expedición con las regulaciones vigentes sobre la materia.

Que la tarea de compilar y racionalizar las normas de carácter reglamentario implica, en algunos casos, la simple actualización de la normativa compilada, para que se ajuste a la realidad institucional y a la normativa vigente, lo cual conlleva, en aspectos puntuales, el ejercicio formal de la facultad reglamentaria.

Que en virtud de sus características propias, el contenido material de este Decreto guarda correspondencia con el de los decretos compilados; en consecuencia, no puede predicarse el decaimiento de las resoluciones, las circulares y demás actos administrativos expedidos por distintas autoridades administrativas con fundamento en las facultades derivadas de los decretos compilados.

políticas, principios, métodos, procedimientos y medidas generales en materia de seguridad aeroportuaria.

(Decreto 1400 de 2002, artículo 2, parágrafo).

ARTÍCULO 1.1.3.6. *Comité de Coordinación permanente entre el Ministerio de Transporte y la Dirección General Marítima, DIMAR.* Es el organismo integrado por funcionarios del Ministerio de Transporte y la Dirección General Marítima del Ministerio de Defensa Nacional, bajo la directa dependencia y orientación del Ministerio de Transporte, que tiene entre sus funciones revisar los diferentes temas que sobre transporte marítimo se presenten.

(Decreto 804 de 2001, artículos 2 y 58).

ARTÍCULO 1.1.3.7. *Comisión Intersectorial para los proyectos de infraestructura de transporte.* Tiene por objeto articular las entidades públicas que tienen relación con los proyectos de infraestructura de transporte en el país y coordinar y orientar la planeación integral y el seguimiento a la ejecución eficiente de los referidos proyectos

(Decreto 2163 de 2018, articulo 8)

ARTÍCULO 1.1.3.8. Comisión Intersectorial de Logística y transporte. Tiene por objeto coordinar y orientar la efectiva, eficiente, segura y continua prestación del servicio público de transporte en el territorio nacional para facilitar el funcionamiento de la cadena de producción, abastecimiento, almacenamiento, transporte, distribución y comercialización de los bienes.

(Artículo ADICIONADO por el Art. 8 del Decreto 935 de 2022)

PARTE 2

SECTOR DESCENTRALIZADO

TÍTULO 1

ENTIDADES ADSCRITAS

ARTÍCULO 1.2.1.1. *Instituto Nacional de Vías - INVIAS.* Tiene por objeto la ejecución de las políticas, estrategias, planes, programas y proyectos de la infraestructura no concesionada de la Red Vial Nacional de carreteras primaria y terciaria, férrea, fluvial y de la infraestructura marítima, de acuerdo con los lineamientos dados por el Ministerio de Transporte.

(Decreto 2618 de 2013, artículo 1).

ARTÍCULO 1.2.1.2. *Agencia Nacional de Infraestructura.* Tiene por objeto planear, coordinar, estructurar, contratar, ejecutar, administrar y evaluar proyectos de concesiones y otras formas de Asociación Público Privada (APP), para el diseño, construcción, mantenimiento, operación, administración y/o explotación de la infraestructura pública de transporte en todos sus modos y de los servicios conexos o relacionados y el desarrollo de proyectos de asociación público privada para otro tipo de infraestructura pública cuando así lo determine expresamente el Gobierno Nacional.

(Decreto 4165 de 2011, artículo 3).

ARTÍCULO 1.2.1.3. *Aeronáutica Civil - Aerocivil.* Tiene como objetivo garantizar el desarrollo de la aviación civil y de la administración del espacio aéreo en condiciones de seguridad y eficiencia, en concordancia con las políticas, planes y programas gubernamentales en materia económico-social y de relaciones internacionales.

*(Decreto 260 de 2004, artículo 3).*

ARTÍCULO 1.2.1.4. *Superintendencia de Puertos y Transporte.* Tiene por objeto ejercer las funciones de inspección, control y vigilancia que le corresponden al Presidente de la República como Suprema Autoridad Administrativa, en materia de puertos de conformidad con la Ley 01 de 1991 y en materia de tránsito, transporte y su infraestructura.

*(Decreto 1016 de 2000, artículo 3).*

ARTÍCULO 1.2.1.5*. Agencia Nacional de Seguridad Vial - ANSV.* Tiene por objeto la planificación, articulación y gestión de la seguridad vial del país. Será el soporte institucional y de coordinación para la ejecución, el seguimiento y el control de las estrategias, los planes y las acciones dirigidos a dar cumplimiento a los objetivos de las políticas de seguridad vial del Gobierno Nacional en todo el territorio nacional.

*(Ley 1702 de 2013, artículo 3).*

ARTÍCULO 1.2.1.6. *Unidad de Planeación de Infraestructura de Transporte - UPIT.* Tiene por objeto planear el desarrollo de la infraestructura de transporte de manera integral, indicativa, permanente y coordinada con los agentes del sector transporte, para promover la competitividad, conectividad, movilidad y desarrollo en el territorio nacional en materia de infraestructura de transporte, así como consolidar y divulgar la información requerida para la formulación de política en materia de infraestructura de transporte.

*(Decreto 946 de 2014, artículo 2).*

ARTÍCULO 1.2.1.7. *Comisión de Regulación de Infraestructura y Transporte - CRIT.* Tiene como objeto el diseño y definición del marco de regulación económica de los servicios de transporte y de la infraestructura de transporte, cuando se presenten fallas de mercado, para fomentar la eficiencia, promover la competencia, controlar los monopolios y evitar el abuso de posición dominante.

*(Decreto 947 de 2014, artículo 2).*

LIBRO 2

RÉGIMEN REGLAMENTARIO DEL SECTOR

PARTE 1

DISPOSICIONES GENERALES

TÍTULO 1

OBJETO Y ÁMBITO DE APLICACIÓN

ARTÍCULO 2.1.1.1 *Objeto.* El objeto de este Decreto es compilar la normatividad expedida por el Gobierno Nacional en ejercicio de las facultades reglamentarias conferidas por el numeral 11 del artículo 189 de la Constitución Política, para la cumplida ejecución de las leyes del sector transporte.

autoridad fluvial para recoger botes cargados u otros que se tomen en dicho puerto.

(Decreto 3112 de 1997, artículo 48).

ARTÍCULO 2.2.3.2.7.6. *Permanencia en puerto.* Cuando las embarcaciones atraquen para pernoctar, aprovisionarse o hacer reparaciones o maniobras, no requerirán tener permiso de zarpe, siempre y cuando no permanezcan por tiempo superior a cuarenta y ocho (48) horas; además, deberán dar previo aviso de estas circunstancias a la autoridad fluvial.

(Decreto 3112 de 1997, artículo 49).

ARTÍCULO 2.2.3.2.7.7. *Actividad portuaria fluvial.* El Ministerio de Transporte, a través de las autoridades fluviales respectivas, será el encargado de coordinar y de determinar los lugares para atraque, zarpe, amarre, almacenamiento, reparación de embarcaciones, cargue y descargue y demás actividades fluviales de los usuarios del puerto.

(Decreto 3112 de 1997, artículo 50).

ARTÍCULO 2.2.3.2.7.8. *Utilización del muelle.* El capitán o quien haga sus veces, está obligado a atracar la embarcación en el sitio dentro del muelle, asignado por la autoridad fluvial o portuaria competentes.

(Decreto 3112 de 1997, artículo 51).

ARTÍCULO 2.2.3.2.7.9. *Continuidad de la actividad portuaria.* El cargue y descargue serán continuos y en lo posible mecánicos y se efectuarán con los equipos con que cuente el puerto, o que sean contratados.

Las variaciones en los horarios, las rutas y los turnos de cargue y descargue establecidos, deberán efectuarse proporcional y razonablemente por la autoridad fluvial o portuaria competentes, dando aviso a los capitanes de las embarcaciones afectadas; solamente por razones de calamidad pública, de emergencia o conveniencia para la economía nacional, debidamente comprobadas.

(Decreto 3112 de 1997, artículo 52).

ARTÍCULO 2.2.3.2. 7.10. *Del convoy.* Cuando en su convoy una embarcación transporte cargamentos para diversos puertos podrá dejar botes en los puertos intermedios para el cargue y descargue y para recogerlos al regreso. El transportador deberá mantener en el puerto, o dejar contratada, una unidad propulsora que ejecute las operaciones para que no haya entorpecimiento en las labores de los muelles. Si el transportador no lo hiciere, la autoridad fluvial podrá ejecutar la maniobra y cobrará el costo de la misma.

(Decreto 3112 de 1997, artículo 53).

ARTÍCULO 2.2.3.2.7.11. *Cargue y descargue.* El cargue y el descargue en cualquier puerto serán independientes el uno del otro. Se realizará en turno de acuerdo con el orden de atraque y la presentación del diario de navegación y demás documentación ante la autoridad fluvial, portuaria o marítima competentes, según el caso, cuando llegue la unidad remolcadora con su convoy.

(Decreto 3112 de 1997, artículo 54).

ARTÍCULO 2.2.3.2.7.12. *Turnos.* Aunque haya embarcaciones en turno de cargue o descargue y no pueda verificarse con éstas la operación respectiva habiendo muelle, equipos o personal disponible cuando no haya embarcaciones en turno, podrán ser cargados o descargados los botes de cualquier embarcación siempre que haya en puerto un representante de la empresa fluvial que asuma la responsabilidad de la operación y la carga, pero se suspenderá dicha operación tan pronto como cese el impedimento u otra embarcación adquiera legalmente el turno.

*(Decreto 3112 de 1997, artículo 55).*

CAPÍTULO 3

Trámite de solicitud de concesiones para el desarrollo de actividades portuarias previstas en las Leyes 1 de 1991 y 1242 de 2008

ARTÍCULO 2.2.3.3.1. *Campo de aplicación.* El presente Capítulo regula lo relativo al procedimiento para el otorgamiento de las concesiones, autorizaciones temporales, modificaciones a los contratos sobre bienes de uso público, para el desarrollo de las actividades portuarias, incluidas las actividades pesqueras industriales, conforme a lo previsto en las leyes 1 de 1991 y 1242 de 2008.

*(Decreto 474 de 2015, artículo 1).*

ARTÍCULO 2.2.3.3.2. *Competencia.* Corresponde al Estado a través la Agencia Nacional de Infraestructura y la Corporación Autónoma Regional del Río Grande de la Magdalena - Cormagdalena -, en las zonas de su jurisdicción, el otorgamiento de concesiones y demás trámites previstos en el artículo anterior.

*(Decreto 474 de 2015, artículo 2).*

ARTÍCULO 2.2.3.3.3. *Condiciones generales de la solicitud de contrato de concesión.* La petición original y las alternativas si las hubiere deberán ajustarse a lo previsto por el artículo 9 de la Ley 1 de 1991 y la actividad pesquera industrial a las disposiciones, regulaciones y políticas establecidas por la Autoridad Nacional de Acuicultura y Pesca -AUNAP, de conformidad con las regulaciones y normas vigentes sobre la materia, en especial lo dispuesto en la Ley 13 de 1990 o en aquellas normas que la modifiquen, adicionen o sustituyan.

*(Decreto 474 de 2015, artículo 3).*

ARTÍCULO 2.2.3.3.4. *Principios del procedimiento.* Las entidades competentes deberán interpretar y aplicar las disposiciones que regulan los procedimientos previstos en el presente Capítulo, de conformidad con los principios consagrados en la Constitución Política, en leyes especiales y reglamentarias. Las actuaciones se adelantarán con sujeción a los principios del debido proceso, igualdad, imparcialidad, buena fe, moralidad, participación, responsabilidad, transparencia, publicidad, coordinación, eficacia, economía y celeridad.

Igualmente las entidades, en cumplimiento del artículo 65 de la Constitución Política, darán especial prioridad a los proyectos de infraestructura que desarrollen las actividades previstas en el citado artículo.

*(Decreto 474 de 2015, artículo 4).*

SECCIÓN 1

Trámite de las concesiones

ARTÍCULO 2.2.3.3.1.1. *Iniciativa.* El trámite administrativo para el otorgamiento de concesiones portuarias, embarcaderos y autorizaciones temporales podrá iniciarse a solicitud de parte u oficiosamente por las entidades competentes.

*(Decreto 474 de 2015, artículo 5).*

ARTÍCULO 2.2.3.3.1.2. *Trámite.* El trámite administrativo de la solicitud para otorgamiento de concesiones portuarias se inicia con la radicación de la petición de concesión ante la entidad competente, siempre que reúna los requisitos exigidos por el artículo 9 de la Ley 1 de 1991 y los siguientes:

1. Para los puertos cuyo objeto es el servicio público o privado de importación o exportación de bienes.

1.1 Documentos mínimos del Estudio Técnico de la Solicitud:

1.1.1 Planos georreferenciados a escala legible, donde se identifiquen las zonas de uso público, las zonas públicas adyacentes y la infraestructura si la hubiere. La georreferencia debe hacerse a partir de puntos geodésicos o topográficos de la red MAGNA-SIRGAS, los cuales se encuentran materializados a través del territorio nacional, utilizando para tal fin las coordenadas suministradas por el Instituto Geográfico Agustín Codazzi.

1.1.2 Un estudio de batimetría y los planos de esta sobre las zonas de maniobras respectivas tales como dársenas, profundidad de zona de atraque, y canal de acceso.

1.1.3 Diseños conceptuales a una escala donde se identifiquen claramente las áreas de los muelles, bodegas y patios; igualmente deben entregarse planos estructurales, procesos constructivos de los muelles, patios, bodegas y en general de toda la infraestructura portuaria que se va a construir.

1 .1.4 Documentos sobre la descripción general del proyecto.

1.1.5 El estudio debe indicar el tipo de puerto que se va a construir, si es multipropósito o especializado en algún tipo de carga, cuál es el volumen de carga que va a movilizar y sus proyecciones, si el servicio será público o privado, presentando una propuesta sobre las tarifas de servicios.

1.1.6. Plan de conectividad de los potenciales terminales con las principales rutas terrestres, férreas y/o fluviales de comercio exterior e interior o directamente con los centros de producción y consumo que garantizarán la movilización de carga, en condiciones óptimas de accesibilidad.

1.1.7. Especificaciones de las zonas de uso público necesarias para el cálculo de la contraprestación portuaria, de conformidad con lo establecido en el Decreto 1099 de 2013 o aquellas normas que lo modifiquen, adicionen o sustituyan.

1.2. Documentos mínimos del Estudio Financiero de la solicitud:

1.2.1 Flujo caja libre en dólares constantes de los Estados Unidos de América, en medio físico y magnético, debidamente formulado, donde se incluyan ingresos, egresos e inversiones. Las contraprestaciones portuarias deberán ser incluidas como gastos, de conformidad con lo establecido en el Decreto 1099 de 2013 o aquellas normas que lo modifiquen, adicionen o sustituyan.

# English Translation of Exhibit 9



# Decree 1079 of 2015 Transport Sector

The data published is for informational purposes only. The Administrative Department of the Civil Service is not responsible for the validity of this regulation. We are constantly updating the content.

DECREE 1079 OF 2015

(May 26)

INTEGRATED VERSION WITH MODIFICATIONS

This version incorporates the modifications introduced to the Single Regulatory Decree of the Transport Sector as of the date of its issuance.

LAST UPDATE: FEBRUARY 24, 2023

By means of which the Single Regulatory Decree of the Transport Sector is issued.

THE PRESIDENT OF THE REPUBLIC OF COLOMBIA,

In exercise of the powers conferred by numeral 11 of article 189 of the Political Constitution, and,

WHEREAS:

That normative production occupies a central space in the implementation of public policies, being the means through which the legal instruments that largely materialize the State's decisions are structured.

That the rationalization and simplification of the legal system is one of the main tools for ensuring the economic and social efficiency of the legal system and for strengthening legal certainty.

That the simplification and organic compilation of the national regulatory system constitutes a government public policy.

That the regulatory power includes the possibility of compiling standards of the same nature.

Since this is a compilation decree of pre-existing regulatory norms, they do not require any prior consultation, given that the source norms complied with the regulations in force on the matter at the time of their issuance.

That the task of compiling and rationalizing regulatory standards involves, in some cases, simply updating the compiled regulations to ensure they conform to the institutional reality and current regulations, which entails, in specific aspects, the formal exercise of regulatory powers.

That, by virtue of its specific characteristics, the material content of this Decree corresponds to that of the compiled decrees; consequently, the lapse of the resolutions, circulars, and other administrative acts issued by various administrative authorities based on the powers derived from the compiled decrees cannot be predicted.

policies, principles, methods, procedures and general measures regarding airport security.

(Decree 1400 of 2002, article 2, paragraph).

ARTICLE 1.1.3.6. Permanent Coordination Committee between the Ministry of Transport and the General Maritime Directorate (DIMAR). This body, composed of officials from the Ministry of Transport and the General Maritime Directorate of the Ministry of National Defense, reports directly to and is supervised by the Ministry of Transport. Its functions include reviewing various maritime transport issues that arise.

(Decree 804 of 2001, articles 2 and 58).

ARTICLE 1.1.3.7. Intersectoral Commission for Transportation Infrastructure Projects. Its purpose is to coordinate the public entities involved in transportation infrastructure projects in the country and to coordinate and guide the comprehensive planning and monitoring of the efficient execution of said projects.

(Decree 2163 of 2018, article 8)

ARTICLE 1.1.3.8. Intersectoral Commission on Logistics and Transportation. Its purpose is to coordinate and guide the effective, efficient, safe, and continuous provision of public transportation services within the national territory to facilitate the functioning of the production, supply, storage, transportation, distribution, and marketing chain of goods.

(Article ADDED by Art. 8 of Decree 935 of 2022)

PART 2

DECENTRALIZED SECTOR

TITLE 1

ASSOCIATED ENTITIES

ARTICLE 1.2.1.1. National Road Institute - INVIAS. Its purpose is to implement the policies, strategies, plans, programs, and projects for the non-concessioned infrastructure of the National Road Network, including primary and tertiary roads, railways, rivers, and maritime infrastructure, in accordance with the guidelines issued by the Ministry of Transport.

(Decree 2618 of 2013, article 1).

ARTICLE 1.2.1.2. National Infrastructure Agency. Its purpose is to plan, coordinate, structure, contract, execute, manage, and evaluate concession projects and other forms of Public-Private Partnership (PPP) for the design, construction, maintenance, operation, administration, and/or exploitation of public transportation infrastructure in all its modes and related or connected services, and the development of public-private partnership projects for other types of public infrastructure when expressly determined by the National Government.

(Decree 4165 of 2011, article 3).

Machine Translated by Google

ARTICLE 1.2.1.3. Civil Aeronautics - Aerocivil. Its objective is to guarantee the development of civil aviation and airspace management under conditions of safety and efficiency, in accordance with government policies, plans, and programs in the areas of economic, social, and international relations.

(Decree 260 of 2004, article 3).

ARTICLE 1.2.1.4. Superintendency of Ports and Transportation. Its purpose is to exercise the inspection, control, and surveillance functions that correspond to the President of the Republic as the Supreme Administrative Authority, in matters relating to ports, in accordance with Law 01 of 1991, and in matters relating to transit, transportation, and their infrastructure.

(Decree 1016 of 2000, article 3).

ARTICLE 1.2.1.5. National Road Safety Agency - ANSV. Its purpose is the planning, coordination, and management of road safety in the country. It will provide institutional and coordinating support for the execution, monitoring, and control of strategies, plans, and actions aimed at achieving the objectives of the National Government's road safety policies throughout the country.

(Law 1702 of 2013, article 3).

ARTICLE 1.2.1.6. Transportation Infrastructure Planning Unit - UPIT. Its purpose is to plan the development of transportation infrastructure in a comprehensive, indicative, permanent, and coordinated manner with stakeholders in the transportation sector, to promote competitiveness, connectivity, mobility, and development within the national territory in terms of transportation infrastructure, as well as to consolidate and disseminate the information required for the formulation of transportation infrastructure policy.

(Decree 946 of 2014, article 2).

ARTICLE 1.2.1.7. Infrastructure and Transportation Regulation Commission - CRIT. Its purpose is to design and define the economic regulatory framework for transportation services and transportation infrastructure, when market failures arise, to foster efficiency, promote competition, control monopolies, and prevent abuse of dominant positions.

(Decree 947 of 2014, article 2).

BOOK 2

REGULATORY REGIME OF THE SECTOR

PART 1

GENERAL PROVISIONS

TITLE 1

PURPOSE AND SCOPE OF APPLICATION

ARTICLE 2.1.1.1 Purpose. The purpose of this Decree is to compile the regulations issued by the National Government in exercise of the regulatory powers conferred by section 11 of article 189 of the Political Constitution, for the full implementation of the laws of the transportation sector.

river authority to collect loaded boats or others taken at said port.

(Decree 3112 of 1997, article 48).

ARTICLE 2.2.3.2.7.6. Stay in port. When vessels dock for the night, to refuel, or to make repairs or maneuvers, they will not require a sailing permit, provided they do not remain for more than forty-eight (48) hours; in addition, they must give prior notice of these circumstances to the river authority.

(Decree 3112 of 1997, article 49).

ARTICLE 2.2.3.2.7.7. River port activity. The Ministry of Transportation, through the respective river authorities, will be responsible for coordinating and determining the locations for docking, departure, mooring, storage, vessel repair, loading and unloading, and other river activities of port users.

(Decree 3112 of 1997, article 50).

ARTICLE 2.2.3.2.7.8. Use of the dock. The captain or whoever acts in his place is required to dock the vessel at the location within the dock assigned by the competent river or port authority.

(Decree 3112 of 1997, article 51).

ARTICLE 2.2.3.2.7.9. Continuity of port activity. Loading and unloading shall be continuous and, if possible, mechanical, and shall be carried out using the equipment available at the port or contracted.

Any changes to established loading and unloading schedules, routes, and shifts must be made proportionally and reasonably by the competent river or port authority, with notice given to the captains of the affected vessels, only for duly verified reasons of public calamity, emergency, or national economic benefit.

(Decree 3112 of 1997, article 52).

ARTICLE 2.2.3.2. 7.10. Convoy. When a vessel transports cargo to various ports in its convoy, it may leave boats at intermediate ports for loading and unloading, and to collect cargo upon return. The carrier must maintain a propulsion unit at the port, or hire one, to carry out the operations so as not to hinder dock work. If the carrier fails to do so, the river authority may carry out the maneuver and charge for its cost.

(Decree 3112 of 1997, article 53).

ARTICLE 2.2.3.2.7.11. Loading and unloading. Loading and unloading at any port shall be independent of one another. Loading and unloading shall be carried out in turn according to the berthing order and the presentation of the logbook and other documentation to the competent river, port, or maritime authority, as applicable, upon the arrival of the tugboat unit with its convoy.

(Decree 3112 of 1997, article 54).

ARTICLE 2.2.3.2.7.12. Shifts. Even if there are vessels on shift for loading or unloading and the respective operation cannot be carried out with them, even if there is a dock, equipment or personnel available when there are no vessels on shift, the boats of any vessel may be loaded or unloaded provided that there is a representative of the river company in port who assumes responsibility for the operation and loading, but said operation will be suspended as soon as the impediment ceases or another vessel legally acquires the shift.

(Decree 3112 of 1997, article 55).

## CHAPTER 3

Application process for concessions for the development of port activities provided for in Laws 1 of 1991 and 1242 of 2008

ARTICLE 2.2.3.3.1. Scope. This Chapter regulates the procedures for granting concessions, temporary authorizations, and amendments to contracts for public-use assets for the development of port activities, including industrial fishing activities, in accordance with the provisions of Laws 1 of 1991 and 1242 of 2008.

(Decree 474 of 2015, article 1).

ARTICLE 2.2.3.3.2. Jurisdiction. The State, through the National Infrastructure Agency and the Magdalena River Regional Autonomous Corporation (Cormagdalena), is responsible for granting concessions and performing other procedures provided for in the previous article within its jurisdiction.

(Decree 474 of 2015, article 2).

ARTICLE 2.2.3.3.3. General conditions of the concession contract application. The original application and any alternatives must comply with the provisions of Article 9 of Law 1 of 1991, and the industrial fishing activity must comply with the provisions, regulations, and policies established by the National Aquaculture and Fisheries Authority (AUNAP), in accordance with the regulations and standards in force on the matter, especially the provisions of Law 13 of 1990 or any regulations that modify, add to, or replace it.

(Decree 474 of 2015, article 3).

ARTICLE 2.2.3.3.4. Procedural Principles. The competent entities shall interpret and apply the provisions governing the procedures set forth in this Chapter in accordance with the principles enshrined in the Political Constitution and in special and regulatory laws. Proceedings shall be carried out in accordance with the principles of due process, equality, impartiality, good faith, morality, participation, responsibility, transparency, publicity, coordination, efficiency, economy, and speed.

Likewise, in compliance with Article 65 of the Political Constitution, the entities will give special priority to infrastructure projects that carry out the activities provided for in the aforementioned article.

(Decree 474 of 2015, article 4).

## SECTION 1

Processing of concessions

ARTICLE 2.2.3.3.1.1. Initiative. The administrative process for granting port concessions, piers, and temporary authorizations may be initiated at the request of a party or ex officio by the competent entities.

(Decree 474 of 2015, article 5).

ARTICLE 2.2.3.3.1.2. Procedure. The administrative process for applications for the granting of port concessions begins with the filing of the concession request with the competent authority, provided that it meets the requirements of Article 9 of Law 1 of 1991 and the following:

1. For ports whose purpose is the public or private service of import or export of goods.

1.1 Minimum documents of the Technical Study of the Application:

1.1.1 Georeferenced plans at a legible scale, identifying public use areas, adjacent public areas, and infrastructure, if any. Georeferencing must be based on geodetic or topographic points of the MAGNA-SIRGAS network, which are located throughout the national territory, using the coordinates provided by the Agustín Codazzi Geographic Institute.

1.1.2 A bathymetry study and its plans for the respective maneuvering areas such as docks, docking area depth, and access channel.

1.1.3 Conceptual designs at a scale clearly identifying the areas of the docks, warehouses, and yards; structural plans and construction processes for the docks, yards, warehouses, and, in general, all port infrastructure to be built must also be submitted.

1 .1.4 Documents on the general description of the project.

1.1.5 The study must indicate the type of port to be built, whether it is multipurpose or specialized in a particular type of cargo, the volume of cargo it will handle and its projections, whether the service will be public or private, and present a proposal for service rates.

1.1.6. Connectivity plan for potential terminals with the main land, rail, and/or river routes for foreign and domestic trade, or directly with production and consumption centers that will guarantee cargo movement under optimal accessibility conditions.

1.1.7. Specifications of the public use areas required for calculating the port fee, in accordance with the provisions of Decree 1099 of 2013 or any regulations that modify, supplement, or replace it.

1.2. Minimum documents of the Financial Study of the application:

1.2.1 Free cash flow in constant United States dollars, in physical and magnetic media, duly formulated, including income, expenses, and investments. Port compensation must be included as expenses, in accordance with the provisions of Decree 1099 of 2013 or any regulations that modify, supplement, or replace it.