IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERIMETRAL ORIENTAL DE BOGOTÁ,
S.A.S.,

*Petitioner*,

v.

AGENCIA NACIONAL DE
INFRAESTRUCTURA
and
THE REPUBLIC OF COLOMBIA

*Respondents*.

Civil Action No. _____

**Declaration of Jason W. Myatt in Support of Petition to Confirm Arbitral Award**

# EXHIBIT 13

# Ley 80 de 1993

Los datos publicados tienen propósitos exclusivamente informativos. El Departamento Administrativo de la Función Pública no se hace responsable de la vigencia de la presente norma. Nos encontramos en un proceso permanente de actualización de los contenidos.

LEY 80 DE 1993

(Octubre 28)

Por la cual se expide el Estatuto General de Contratación de la Administración PÚBLICA

EL CONGRESO DE COLOMBIA

(Ver la exposición de motivos, Ley 80 de 1993 , Ver el Documento de Relatoría 160 de 2003 , Ver el Documento de Relatoría 173 de 2004 , Ver el Decreto Nacional 4828 de 2008 , Ver el Decreto Nacional 2430 de 2011 , Ver el Decreto Nacional 2430 de 2011 )

DECRETA:

I. DE LAS DISPOSICIONES GENERALES

ARTÍCULO 1.- *Del objeto.* La presente Ley tiene por objeto disponer las reglas y principios que rigen los contratos de las entidades estatales.

(Ver concepto del Consejo de Estado 2003A de 2011)

ARTÍCULO 2.- *De la Definición de Entidades, Servidores y Servicios Públicos.* Para los solos efectos de esta Ley:

1o. Se denominan entidades estatales:

a) La Nación, las regiones, los departamentos, las provincias, el Distrito Capital y los distritos especiales, las áreas metropolitanas, las asociaciones de municipios, los territorios indígenas y los municipios; los establecimientos públicos, las empresas industriales y comerciales del Estado, las sociedades de economía mixta en las que el Estado tenga participación superior al cincuenta por ciento (50%), así como las entidades descentralizadas indirectas y las demás personas jurídicas en las que exista dicha participación pública mayoritaria, cualquiera sea la denominación que ellas adopten, en todos los órdenes y niveles.

(Ver los Conceptos de la Sec. General 140 y 390 de 1998.)

b) El Senado de la República, la Cámara de Representantes, el Consejo Superior de la Judicatura, la Fiscalía General de la Nación, la Contraloría General de la República, las contralorías departamentales, distritales y municipales, la Procuraduría General de la Nación, la Registraduría Nacional del Estado Civil, los ministerios, los departamentos administrativos, las superintendencias, las unidades administrativas especiales y, en general, los organismos o dependencias del Estado a los que la ley otorgue capacidad para celebrar contratos.

(Literal b) declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-374 de 1994.)

(Ver concepto del Consejo de Estado 2003A de 2011)

2o. Se denominan servidores públicos:

a) Las personas naturales que prestan sus servicios dependientes a los organismos y entidades de que trata este artículo, con excepción de las asociaciones y fundaciones de participación mixta en las cuales dicha denominación se predicará exclusivamente de sus representantes legales y de los funcionarios de los niveles directivo, asesor o ejecutivo o sus equivalentes en quienes se delegue la celebración de contratos en representación de aquéllas.

(Texto subrayado declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-230 de 1995.)

(Declarado exequible por la Sentencia C-949-01.)

b) Los miembros de las corporaciones públicas que tengan capacidad para celebrar contratos en representación de éstas.

(Literal b) declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-374 de 1994.)

(declarado exequible por la Sentencia C-949-01.)

3o. Se denominan servicios públicos:

Los que están destinados a satisfacer necesidades colectivas en forma general, permanente y continua, bajo la dirección, regulación y control del Estado, así como aquéllos mediante los cuales el Estado busca preservar el orden y asegurar el cumplimiento de sus fines.

PARÁGRAFO.- Derogado por el art. 32, Ley 1150 de 2007. Para los solos efectos de esta Ley, también se denominan entidades estatales las cooperativas y asociaciones conformadas por entidades territoriales, las cuales estarán sujetas a las disposiciones del presente estatuto, especialmente cuando en desarrollo de convenios interadministrativos celebren contratos por cuenta de dichas entidades.

(Ver el Fallo del Consejo de Estado 2859 de 1994)

ARTÍCULO 3.- *De los Fines de la Contratación Estatal*. Los servidores públicos tendrán en consideración que al celebrar contratos y con la ejecución de los mismos, las entidades buscan el cumplimiento de los fines estatales, la continua y eficiente prestación de los servicios públicos y la efectividad de los derechos e intereses de los administrados que colaboran con ellas en la consecución de dichos fines.

Los particulares, por su parte, tendrán en cuenta al celebrar y ejecutar contratos con las entidades estatales que, además de la obtención de utilidades cuya protección garantiza el Estado, colaboran con ellas en el logro de sus fines y cumplen una función social que, como tal, implica obligaciones.

(El texto subrayado fue derogado por el art. 32 de la Ley 1150 de 2007.)

ARTÍCULO 4.- *De los Derechos y Deberes de las Entidades Estatales*. Para la consecución de los fines de que trata el artículo anterior, las entidades estatales:

1o. Exigirán del contratista la ejecución idónea y oportuna del objeto contratado. Igual exigencia podrán hacer al garante.

2o. Adelantarán las gestiones necesarias para el reconocimiento y cobro de las sanciones pecuniarias y garantías a que hubiere lugar.

3o. Solicitarán las actualización o la revisión de los precios cuando se produzcan fenómenos que alteren en su contra el equilibrio económico o financiero del contrato.

4o. Adelantarán revisiones periódicas de las obras ejecutadas, servicios prestados o bienes suministrados, para verificar que ellos cumplan con las condiciones de calidad ofrecidas por los contratistas, y promoverán las acciones de responsabilidad contra éstos y sus garantes cuando dichas condiciones no se cumplan.

Las revisiones periódicas a que se refiere el presente numeral deberán llevarse a cabo por lo menos una vez cada seis (6) meses durante el término de vigencia de las garantías.

5o. Exigirán que la calidad de los bienes y servicios adquiridos por las entidades estatales se ajuste a los requisitos mínimos previstos en las normas técnicas obligatorias, sin perjuicio de la facultad de exigir que tales bienes o servicios cumplan con las normas técnicas colombianas o, en su defecto, con normas internacionales elaboradas por organismos reconocidos a nivel mundial o con normas extranjeras aceptadas en los acuerdos internacionales suscrito por Colombia.

6o. Adelantarán las acciones conducentes a obtener la indemnización de los daños que sufran en desarrollo o con ocasión del contrato celebrado.

7o. Sin perjuicio del llamamiento en garantía, repetirán contra los servidores públicos, contra el contratista o los terceros responsables, según el caso, por las indemnizaciones que deban pagar como consecuencia de la actividad contractual.

8o. Adoptarán las medidas necesarias para mantener durante el desarrollo y ejecución del contrato las condiciones técnicas, económicas y financieras existentes al momento de proponer en los casos en que se hubiere realizado licitación o concurso, o de contratar en los casos de contratación directa. Para ello utilizarán los mecanismos de ajuste y revisión de precios, acudirán a los procedimientos de revisión y corrección de tales mecanismos si fracasan los supuestos o hipótesis para la ejecución y pactarán intereses moratorios.

Sin perjuicio de la actualización o revisión de precios, en caso de no haberse pactado intereses moratorios, se aplicará la tasa equivalente al doble del interés legal civil sobre el valor histórico actualizado.

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

(NOTA: El numeral 8° fue reglamentado por el Decreto Nacional 679 de 1994.)

9o. Actuarán de tal modo que por causas a ellas imputables, no sobrevenga una mayor onerosidad en el cumplimiento de las obligaciones a cargo del contratista. Con este fin, en el menor tiempo posible, corregirán los desajustes que pudieren presentarse y acordarán los mecanismos

y procedimientos pertinentes para precaver o solucionar rápida y eficazmente las diferencias o situaciones litigiosas que llegaren a presentarse.

(Ver el Fallo del Consejo de Estado 13180 de 1997.)

10. Numeral adicionado por el art. 19 de la Ley 1150 de 2007, así: Respetarán el orden de presentación de los pagos por parte de los contratistas. Sólo por razones de interés público, el jefe de la entidad podrá modificar dicho orden dejando constancia de tal actuación.

Para el efecto, las entidades deben llevar un registro de presentación por parte de los contratistas, de los documentos requeridos para hacer efectivos los pagos derivados de los contratos, de tal manera que estos puedan verificar el estricto respeto al derecho de turno. Dicho registro será público.

Lo dispuesto en este numeral no se aplicará respecto de aquellos pagos cuyos soportes hayan sido presentados en forma incompleta o se encuentren pendientes del cumplimiento de requisitos previstos en el contrato del cual se derivan".

ARTÍCULO 5o.- *De los Derechos y Deberes de los Contratistas*. Para la realización de los fines de que trata el artículo 3o. de esta Ley, los contratistas:

1o. Tendrán derecho a recibir oportunamente la remuneración pactada y a que el valor intrínseco de la misma no se altere o modifique durante la vigencia del contrato.

(Ver el Artículo 19, Decreto Nacional 2150 de 1995.)

En consecuencia tendrán derecho, previa solicitud, a que la administración les restablezca el equilibrio de la ecuación económica del contrato a un punto de no pérdida por la ocurrencia de situaciones imprevistas que no sean imputables a los contratistas. Si dicho equilibrio se rompe por incumplimiento de la entidad estatal contratante, tendrá que restablecerse la ecuación surgida al momento del nacimiento del contrato.

(Ver el Concepto del Consejo de Estado 1011 de 1997, Ver el Fallo del Consejo de Estado 14577 de 2003.)

2o. Colaborarán con las entidades contratantes en lo que sea necesario para que el objeto contratado se cumpla y que éste sea de la mejor calidad; acatarán las órdenes que durante el desarrollo del contrato ellas les impartan y, de manera general, obrarán con lealtad y buena fe en las distintas etapas contractuales, evitando las dilaciones y entrabamiento que pudieran presentarse.

3o. Podrán acudir a las autoridades con el fin de obtener la protección de los derechos derivados del contrato y la sanción para quienes los desconozcan o vulneren.

Las autoridades no podrán condicionar la participación en licitaciones o concursos ni la adjudicación, adición o modificación de contratos, como tampoco la cancelación de las sumas adeudadas al contratista, a la renuncia, desistimiento o abandono de peticiones, acciones, demandas y reclamaciones por parte de éste.

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

4o. Garantizarán la calidad de los bienes y servicios contratados y responderán por ello.

5o. No accederán a peticiones o amenazas de quienes actúen por fuera de la ley con el fin de obligarlos a hacer u omitir algún acto o hecho.

Cuando se presenten tales peticiones o amenazas, los contratistas deberán informar inmediatamente de su ocurrencia a la entidad contratante y a las demás autoridades competentes para que ellas adopten las medidas y correctivos que fueren necesarios. El incumplimiento de esta obligación y la celebración de los pactos o acuerdos prohibidos, dará lugar a la declaratoria de caducidad del contrato.

ARTÍCULO 6.- *De la Capacidad para Contratar*. Pueden celebrar contratos con las entidades estatales las personas consideradas legalmente capaces en las disposiciones vigentes. También podrán celebrar contratos con las entidades estatales los Cabildos Indígenas, las asociaciones de Autoridades Tradicionales Indígenas, los consejos comunitarios de las comunidades negras regulados por la Ley 70 de 1993.

Para las organizaciones de base de comunidades negras, afrocolombianas, raizales y palenqueras y las demás formas y expresiones organizativas, deberán contar con diez (10) años o más de haber sido incorporados por el Ministerio del Interior en el correspondiente Registro Público Único Nacional y que hayan cumplido con el deber de actualización de información en el mismo registro; y los consorcios y uniones temporales.

Las personas jurídicas nacionales y extranjeras deberán acreditar que su duración no será inferior a la del plazo del contrato y un año más.

PARÁGRAFO. Para efectos de la presente ley, la Corporación para la Reconstrucción de la .Cuenca del RIO Páez y Zonas Aledañas Nasa Ki'We, podrá celebrar contratos para adelantar y ejecutar, planes, programas y proyectos para la atención de las necesidades de los habitantes de las comunidades- étnicas de los municipios de Popayán, Almaguer, Bolívar, Buenos Aires, Cajibío, Caldono, Caloto, Corinto, El Tambo, Inzá, Jambaló, La Sierra, La Vega, Miranda, Páez, Patía, Piendamó, Puracé, Rosas, San Sebastián, Santander De Quilichao, Silvia, Sotará, Suarez, Toribio, Totoró del departamento del Cauca y los municipios de Neiva, Gigante, Íquira, La Argentina, La Plata, Nátaga, Paicol, Pitalito, San Agustín, Tesalia, Villavieja, Yaguará, Palermo y Rivera del departamento del Huila.

(Modificado por la ley 2160 de 2021, Art. 1)

*jurisprudencia*

ARTÍCULO 7.- ENTIDADES A CONTRATAR. Para los efectos de esta ley se entiende por:

1. Cabildo Indígena: Es una entidad pública especial, cuyos integrantes son miembros de una comunidad indígena, elegidos y reconocidos por esta, con una organización socio política tradicional, cuya función es representar legalmente a la comunidad, ejercer la autoridad y realizar las actividades que le atribuyen las leyes, sus usos, costumbres y el reglamento interno de cada comunidad.

2. Consejo comunitario de las comunidades negras: Es la persona jurídica que ejerce la máxima autoridad de administración Interna dentro de las Tierras de las Comunidades Negras, de acuerdo con los mandatos constitucionales y legales que lo rigen y los demás que le asigne el sistema de derecho propio de cada comunidad.

3. Formas o expresiones organizativas. Son manifestaciones que, en ejercicio del derecho constitucional de participación, asociación y de la autonomía de conjuntos de familias de ascendencia negra, afrocolombiana, raizal o palenquera que reivindican y promueven su cultura propia, su historia, sus prácticas tradicionales y costumbres, para preservar y proteger la identidad cultural, y que estén asentados en un territorio que por su naturaleza no es susceptible de ser titulada de manera colectiva.

4. Organizaciones de Base de Comunidades Negras, Afrocolombianas, Raizales y Palenqueras. Son asociaciones comunitarias integradas por personas de las Comunidades Negras, Afrocolombianas, Raizales o Palenqueras; que reivindican y promueven los derechos étnicos y humanos de estas comunidades.

5. Organizaciones de Segundo Nivel. Son asociaciones de Consejos Comunitarios, formas y expresiones organizativas y/o organizaciones de base que agrupan a más de dos (2), inscritas en el Registro Único de la Dirección de Asuntos Para Comunidades Negras, Afrocolombianas, Raizales y Palenqueras del Ministerio del Interior, siempre y cuando el área de influencia de la organización de. segundo nivel corresponda a más de la tercera parte de los departamentos donde existan comisiones consultivas.

6. Consorcio: Cuando dos o más personas en forma conjunta presentan una misma propuesta para la adjudicación, celebración y ejecución de un contrato, respondiendo solidariamente de todas y cada una de las obligaciones derivadas de la propuesta y del contrato. En consecuencia, las actuaciones, hechos y omisiones que se presenten en desarrollo de la propuesta y del contrato, afectarán a todos los miembros que lo conforman.

7. Unión Temporal: Cuando dos o más personas en forma conjunta presentan una misma propuesta para la adjudicación, celebración y ejecución de un contrato, respondiendo solidariamente por el cumplimiento total de la propuesta y del objeto contratado, pero las sanciones por el incumplimiento de as obligaciones derivadas de la propuesta y del contrato se impondrán de acuerdo con la participación en la ejecución de cada uno de los miembros de la unión temporal.

8. Asociaciones de cabildos indígenas y/o autoridades tradicionales indígenas. Entidad de derecho público, encargada de fomentar y coordinar con las autoridades locales, regionales y nacionales, la ejecución de programas, planes y proyectos del plan de desarrollo relacionados con el fortalecimiento del gobierno propio, la identidad cultural, el ejercicio de la autonomía, la garantía de los derechos, satisfacción de necesidades y/o servicios públicos de los pueblos y comunidades indígenas, conforme a los lineamientos que al respecto reglamente el Ministerio del Interior y las demás entidades técnicas con competencias relacionadas para su conformación, dentro de los seis (6) meses siguientes a la expedición de la presente ley.

*jurisprudencia*

(Numeral 8, Modificado por el Art. 354 de la Ley 2294 de 2023)

9. Consejo Indígena. Forma de gobierno indígena, conformados y reglamentados a través de sus usos y costumbres, de conformidad con lo

dispuesto en el artículo 330 de la Constitución Política.

(Numeral 9, Adicionado por el Art. 354 d ela Ley 2294 de 2023)

PARÁGRAFO 1. Los proponentes indicaran si su participación es a título de consorcio o unión temporal y, en este último caso, señalaran los términos y extensión de la participación en la propuesta y en su ejecución, los cuales no podrán ser modificados sin el consentimiento previo de la entidad estatal contratante.

Los miembros del consorcio y de la unión temporal deberán designar la persona que, para todos los efectos, representará al consorcio o unión temporal y señalarán las reglas básicas que regulen las relaciones entre ellos y su responsabilidad.

PARÁGRAFO 2. En los casos en que se conformen sociedades bajo cualquiera de las modalidades previstas en la ley con el único objeto de presentar una propuesta, celebrar y ejecutar un contrato estatal, la responsabilidad y sus efectos se regirá por las disposiciones previstas en esta ley para los consorcios.

PARÁGRAFO 3. Los miembros que hagan parte de los consorcios o uniones temporales no podrán contratar acorde con lo previsto en la presente ley cuando hayan sido sancionados disciplinaria, fiscal o penalmente.

(Modificado por la ley 2160 de 2021, Art. 3)

*jurisprudencia*

ARTÍCULO 8.- *De las Inhabilidades e Incompatibilidades para Contratar:*

1o. Son inhábiles para participar en licitaciones o concursos y para celebrar contratos con las entidades estatales:

a) Las personas que se hallen inhabilitadas para contratar por la Constitución y las leyes

b) Quienes participaron en las licitaciones o concursos o celebraron los contratos de que trata el literal anterior estando inhabilitados.

c) Quienes dieron lugar a la declaratoria de caducidad

d) (Quienes en sentencia judicial hayan sido condenados a la pena accesoria de interdicción de derechos y funciones públicas) y quienes hayan sido sancionados disciplinariamente con destitución.

(El texto subrayado fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-178 de 1996; el texto entre paréntesis fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia 489 de 1996.)

e) Quienes sin justa causa se abstengan de suscribir el contrato estatal adjudicado.

f) Los servidores públicos.

(Ver el Concepto del Consejo de Estado 867 de 1996.)

g) Quienes sean cónyuges o (compañeros permanentes) y quienes se encuentren dentro del segundo grado de consanguinidad o segundo de afinidad con cualquier otra persona que formalmente haya presentado propuesta para una misma licitación o concurso.

(Literal declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-415 de 1994.)

(El texto entre paréntesis fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-029 de 2009, en el entendido de que en igualdad de condiciones, ellas comprenden también a los integrantes de las parejas de un mismo sexo.)

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

(Ver el Concepto de la Sec. General 1045 de 1995.)

h) Las sociedades distintas de las anónimas abiertas, en las cuales el representante legal o cualquiera de sus socios tenga parentesco en segundo grado de consanguinidad o segundo de afinidad con el representante legal o con cualquiera de los socios de una sociedad que formalmente haya presentado propuesta, para una misma licitación o concurso.

(Literal declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-415 de 1994)

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

i) Los socios de sociedades de personas a las cuales se haya declarado la caducidad, así como las sociedades de personas de las que aquéllos formen parte con posterioridad a dicha declaratoria.

Las inhabilidades a que se refieren los literales c), d), e i) se extenderán por un término de cinco (5) años contados a partir de la fecha de ejecutoria del acto que declaró la caducidad, o de la sentencia que impuso la pena, o del acto que dispuso la destitución; las previstas en los literales b) y e), se extenderán por un término de cinco (5) años contados a partir de la fecha de ocurrencia del hecho de la participación en la licitación o concurso, o de la celebración del contrato, o de la de expiración del plazo para su firma.

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

j) Modificado por el art. 2, Ley 2014 de 2019, Modificado por el art. 1, Ley 1474 de 2011. Literal adicionado por el art. 18, Ley 1150 de 2007, así: Las personas naturales que hayan sido declaradas responsables judicialmente por la comisión de delitos contra la Administración Pública, o de cualquiera de los delitos o faltas contempladas por la Ley 1474 de 2011 y sus normas modificatorias o de cualquiera de las conductas delictivas contempladas por las convenciones o tratados de lucha contra la corrupción suscritos y ratificados por Colombia, así como las personas jurídicas que hayan sido declaradas responsables administrativamente por la conducta de soborno transnacional.

Esta inhabilidad procederá preventivamente aún en los casos en los que esté pendiente la decisión sobre la impugnación de la sentencia condenatoria.

Asimismo, la inhabilidad se extenderá a las sociedades de las que hagan parte dichas personas en calidad de administradores, representantes legales, miembros de junta directiva o de socios controlantes, a sus matrices y a sus subordinadas, a los grupos empresariales a los que estas pertenezcan cuando la conducta delictiva haya sido parte de una política del grupo y a las sucursales de sociedades extranjeras, con excepción de las sociedades anónimas abiertas.

También se considerarán inhabilitadas para contratar, las personas jurídicas sobre las cuales se haya ordenado la suspensión de la personería jurídica en los términos de ley, o cuyos representantes legales, administradores de hecho o de derecho, miembros de junta directiva o sus socios controlantes, sus matrices, subordinadas y/o las sucursales de sociedades extranjeras, hayan sido beneficiados con la aplicación de un principio de oportunidad por cualquier delito contra la administración pública o el patrimonio del Estado.

La inhabilidad prevista en este literal se extenderá de forma permanente a las sociedades de las que hagan parte dichas personas en las calidades presentadas en los incisos anteriores, y se aplicará de igual forma a las personas naturales que hayan sido declaradas responsables judicialmente por la comisión de delitos mencionados en este literal.

*jurisprudencia*

k) Literal adicionado por el art. 2, Ley 1474 de 2011, adicionado por el parágrafo 2, art. 84, Ley 1474 de 2011 Las personas naturales o jurídicas que hayan financiado campañas políticas a la Presidencia de la República, a las gobernaciones, a las alcaldías o al Congreso de la República, con aportes superiores al dos por ciento (2.0%) de las sumas máximas a invertir por los candidatos en las campañas electorales en cada circunscripción electoral, quienes no podrán celebrar contratos con las entidades públicas, incluso descentralizadas, del respectivo nivel administrativo para el cual fue elegido el candidato.

La inhabilidad se extenderá por todo el período para el cual el candidato fue elegido. Esta causal también operará para las personas que se encuentren dentro del segundo grado de consanguinidad, segundo de afinidad, o primero civil de la persona que ha financiado la campaña política.

Esta inhabilidad comprenderá también a las personas jurídicas en las cuales el representante legal, los miembros de junta directiva o cualquiera de sus socios controlantes hayan financiado directamente o por interpuesta persona campañas políticas a la Presidencia de la República, a las gobernaciones, las alcaldías o al Congreso de la República.

La inhabilidad contemplada en esta norma no se aplicará respecto de los contratos de prestación de servicios profesionales.

k) Literal CONDICIONALMENTE exequible. Literal adicionado por el parágrafo 2o. del artículo 84 de la Ley 1474 de 2011. El nuevo texto es el siguiente:> El interventor que incumpla el deber de entregar información a la entidad contratante relacionada con el incumplimiento del contrato, con hechos o circunstancias que puedan constituir actos de corrupción tipificados como conductas punibles, o que puedan poner o pongan en riesgo el cumplimiento del contrato.

Esta inhabilidad se extenderá por un término de cinco (5) años, contados a partir de la ejecutoria del acto administrativo que así lo declare, previa la actuación administrativa correspondiente.

2. Tampoco podrán participar en licitaciones o concursos ni celebrar contratos estatales con la entidad respectiva:

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

a. Quienes fueron miembros de la junta o consejo directivo o servidores públicos de la entidad contratante. Esta incompatibilidad sólo comprende a quienes desempeñaron funciones en los niveles directivo, asesor o ejecutivo y se extiende por el término de un (1) año, contado a partir de la fecha del retiro.

(Ver el Concepto del Consejo de Estado 867 de 1996.)

b. Las personas que tengan vínculos de parentesco, hasta el segundo grado de consanguinidad, segundo de afinidad o primero civil con los servidores públicos de los niveles directivo, asesor ejecutivo o con los miembros de la junta o consejo directivo, o con las personas que ejerzan el control interno o fiscal de la entidad contratante.

(Literal declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia 429 de 1997.)

(Ver los Conceptos del Consejo de Estado 761 de 1995 y 925 de 1996.)

c. El cónyuge compañero o compañera permanente del servidor público en los niveles directivo, asesor, ejecutivo, o de un miembro de la junta o consejo directivo, o de quien ejerza funciones de control interno o de control fiscal.

(El texto subrayado fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-029 de 2009, en el entendido de que en igualdad de condiciones, ellas comprenden también a los integrantes de las parejas de un mismo sexo.)

d) Las corporaciones, asociaciones, fundaciones y las sociedades anónimas que no tengan el carácter de abiertas, así como las sociedades de responsabilidad limitada y las demás sociedades de personas en las que el servidor público en los niveles directivo, asesor o ejecutivo, o el miembro de la junta o consejo directivo, o el cónyuge, compañero o compañera permanente o los parientes hasta el segundo grado de consanguinidad, afinidad o civil de cualquiera de ello, tenga participación o desempeñe cargos de dirección o manejo.

(El texto subrayado fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-029 de 2009, en el entendido de que en igualdad de condiciones, ellas comprenden también a los integrantes de las parejas de un mismo sexo.)

e) Los miembros de las juntas o consejos directivos. Esta incompatibilidad sólo se predica respecto de la entidad a la cual prestan sus servicios y de las del sector administrativo al que la misma esté adscrita o vinculada.


f) Literal adicionado por el art. 4, Ley 1474 de 2011 Directa o indirectamente las personas que hayan ejercido cargos en el nivel directivo en entidades del Estado y las sociedades en las cuales estos hagan parte o estén vinculados a cualquier título, durante los dos (2) años siguientes al retiro del ejercicio del cargo público, cuando el objeto que desarrollen tenga relación con el sector al cual prestaron sus servicios.

Esta incompatibilidad también operará para las personas que se encuentren dentro del primer grado de consanguinidad, primero de afinidad, o primero civil del ex empleado público.

*(Ver Sentencia C-257 de 2013)*

PARÁGRAFO 1.- La inhabilidad prevista en el literal d) del ordinal 2o. de este artículo no se aplicará en relación con las corporaciones, asociaciones, fundaciones y sociedades allí mencionadas, cuando por disposición legal o estatutaria el servidor público en los niveles referidos debe desempeñar en ellas cargos de dirección o manejo.

El art. 18 de la Ley 1150 de 2007, adicionó el siguiente inciso:

En las causales de inhabilidad por parentesco o por matrimonio, los vínculos desaparecen por muerte o por disolución del matrimonio.

PARÁGRAFO 2.- Para los efectos previstos en este artículo, el Gobierno Nacional determinará qué debe entenderse por sociedades anónimas abiertas.

(Ver el art. 5, Decreto Nacional 679 de 1994, Ver el Fallo del Consejo de Estado 10641 de 1999.)

PARÁGRAFO 3. Adicionado por el art. 3, Ley 2014 de 2019 Las inhabilidades e incompatibilidades contempladas en este artículo se aplicarán a cualquier proceso de contratación privada en el que se comprometan recursos públicos.

ARTÍCULO 9.- *De las Inhabilidades e Incompatibilidades Sobrevinientes.* Modificado por el art. 6, Ley 2014 de 2019 Si llegare a sobrevenir inhabilidad o incompatibilidad en el contratista, este cederá el contrato previa autorización escrita de la entidad contratante o, si ello no fuere posible, renunciará a su ejecución.

Cuando la inhabilidad o incompatibilidad sobrevenga en un proponente dentro de un proceso de selección, se entenderá que renuncia a la participación en el proceso de selección y a los derechos surgidos del mismo.

Si la inhabilidad o incompatibilidad sobreviene en uno de los miembros de un consorcio o unión temporal, este cederá su participación a un tercero previa autorización escrita de la entidad contratante. En ningún caso podrá haber cesión del contrato entre quienes integran el consorcio o unión temporal.

PARÁGRAFO 1. Cuando la inhabilidad sobreviniente sea la contemplada en el literal j) del numeral 1 del artículo 8 de la Ley 80 de 1993, o cuando administrativamente se haya sancionado por actos de corrupción al contratista, no procederá la renuncia del contrato a la que se refiere este artículo. La entidad estatal ordenará mediante acto administrativo motivado la cesión unilateral, sin lugar a indemnización alguna al contratista inhábil.

Para el caso de cesión, será la entidad contratante la encargada de determinar el cesionario del contrato.

*jurisprudencia*

ARTÍCULO 9A. *Efectos de la declaratoria de cesión unilateral del contrato.* En firme el acto administrativo que ordena la cesión unilateral del contrato por actos de corrupción. La entidad que la haya declarado deberá compulsar copias a las autoridades fiscales, disciplinarias y penales para las investigaciones de su competencia.

Adicionado por el art. 8, Ley 2014 de 2019.

ARTÍCULO 10.- *De las Excepciones a las Inhabilidades e Incompatibilidades.* No quedan cobijadas por las inhabilidades e incompatibilidades de que tratan los artículos anteriores, las personas que contraten por obligación legal o lo hagan para usar los bienes o servicios que las entidades a que se refiere el presente estatuto ofrezcan al público en condiciones comunes a quienes los soliciten, ni las personas jurídicas sin ánimo de lucro cuyos representantes legales hagan parte de las juntas o consejos directivos en virtud de su cargo o por mandato legal o estatutario, ni quienes celebren contratos en desarrollo de lo previsto en el artículo 60 de la Constitución Política.

ARTÍCULO 11.- *De la competencia para dirigir licitaciones o concursos y para celebrar contratos estatales.* En las entidades estatales a que se refiere el artículo 2.

1o. La competencia para ordenar y dirigir la celebración de licitaciones o concursos y para escoger contratistas será del jefe o representante de la entidad, según el caso.

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

2o. Tiene competencia para celebrar contratos a nombre de la Nación, el Presidente de la República.

3o. Tiene competencia para celebrar contratos a nombre de la Entidad respectiva

a) Los ministros del despacho, los directores de departamentos administrativos, los superintendentes, los jefes de unidades administrativas especiales, el Presidente del Senado de la República, el Presidente de la Cámara de Representantes, los presidentes de la Sala Administrativa del Consejo Superior de la Judicatura y de sus Consejos Seccionales, el Fiscal General de la Nación, el Contralor General de la República, el Procurador General de la Nación, y el Registrador Nacional del Estado Civil.

b) A nivel territorial, los gobernadores de los departamentos, los alcaldes municipales y de los distritos capitales y especiales, los contralores departamentales, distritales y municipales, y los representantes legales de las regiones, las provincias, las áreas metropolitanas, los territorios indígenas y las asociaciones de municipios, en los términos y condiciones de las normas legales que regulen la organización y el funcionamiento de dichas entidades.

(NOTA: El numeral 1, 2 y 3, así como el literal a) y la expresión " los contralores departamentales, distritales y municipales" del literal b), fueron declarados EXEQUIBLES por la Corte Constitucional mediante Sentencia C-374 de 1994.)

c) Los representantes legales de las entidades descentralizadas en todos los órdenes y niveles.

(Literal c) declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia, C-178 de 1996.)

(Ver los Decretos Nacionales 2681 de 1993, 94 y 95 de 1994)

ARTÍCULO 12.- *De la Delegación para Contratar.* Los jefes y los representantes legales de las entidades estatales podrán delegar total o parcialmente la competencia para celebrar contratos y desconcentrar la realización de licitaciones o concursos en los servidores públicos que desempeñen cargos del nivel directivo o ejecutivo o en sus equivalentes

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

(NOTA: Artículo declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-374 de 1994.)

(Ver los Decretos Nacionales 2681 de 1993; 94, 95, 679 y 1985 de 1994; Ver el Concepto de la Sec. General 2115 de 1999; Ver la Sentencia de la Corte Constitucional C-088 de 2000.)

El art. 21 de la Ley 1150 de 2007, adicionó el inciso segundo y un Parágrafo al artículo 12, así:

"En ningún caso, los jefes y representantes legales de las entidades estatales quedarán exonerados por virtud de la delegación de sus deberes de control y vigilancia de la actividad precontractual y contractual.

(El Inciso 2 del artículo 21 de la Ley 1150 de 2007, fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-693 de 2008, en

el entendido según el cual el delegante sólo responderá del recto ejercicio de sus deberes de control y vigilancia de la actividad precontractual, cuando haya incurrido en dolo o culpa grave en el ejercicio de dichas funciones).

PARÁGRAFO. Para los efectos de esta ley, se entiende por desconcentración la distribución adecuada del trabajo que realiza el jefe o representante legal de la entidad, sin que ello implique autonomía administrativa en su ejercicio. En consecuencia, contra las actividades cumplidas en virtud de la desconcentración administrativa no procederá ningún recurso".

ARTÍCULO 13.- De *la Normatividad Aplicable a los Contratos Estatales.* Reglamentado parcialmente por los Decretos Nacionales 1896 y 2166 de 1994, Reglamentado parcialmente por el Decreto Nacional 4266 de 2010. Los contratos que celebren las entidades a que se refiere el artículo 2 del presente estatuto se regirán por las disposiciones comerciales y civiles pertinentes, salvo en las materias particularmente reguladas en esta Ley.

Los contratos celebrados en el exterior se podrán regir en su ejecución por las reglas del país en donde se hayan suscrito, a menos que deban cumplirse en Colombia

*(Inciso declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-249 de 2004.)*

Los contratos que se celebren en Colombia y deban ejecutarse o cumplirse en el extranjero podrán someterse a la ley extranjera.

(Inciso declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-249 de 2004, en el entendido de que tanto la celebración como la parte de la ejecución que se haga en Colombia se someten a la ley colombiana.)

(Inciso declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-249 de 2004, en el entendido de que la discrecionalidad allí prevista sólo puede ejercerse válidamente, en relación con los contratos relativos a recursos percibidos de entes u organismos internacionales, esto es, en relación con contratos de empréstito, donación, asistencia técnica o cooperación celebrados por las respectivas entidades estatales con entes u organismos internacionales.)

(NOTA: El inciso 4 del art. 13, fue derogado por el art. 32 de la Ley 1150 de 2007.)

(Ver el art. 39, Decreto Nacional 2681 de 1993, Ver el Decreto Nacional 679 de 1994, Ver el Concepto de la Sec. General 2130 de 1998.)

ARTÍCULO 14.- *De los Medios que pueden utilizar las Entidades Estatales para el Cumplimiento del Objeto Contractual.* Para el cumplimiento de los fines de la contratación, las entidades estatales al celebrar un contrato:

1o. Tendrán la dirección general y la responsabilidad de ejercer el control y vigilancia de la ejecución del contrato. En consecuencia, con el exclusivo objeto de evitar la paralización o la afectación grave de los servicios públicos a su cargo y asegurar la inmediata, continua y adecuada prestación, podrán en los casos previstos en el numeral 2 de este artículo, interpretar los documentos contractuales y las estipulaciones en ellos convenidas, introducir modificaciones a lo contratado y, cuando las condiciones particulares de la prestación así lo exijan, terminar unilateralmente el contrato celebrado.

En los actos en que se ejerciten algunas de estas potestades excepcionales deberá procederse al reconocimiento y orden de pago de las compensaciones e indemnizaciones a que tengan derecho las personas objeto de tales medidas y se aplicarán los mecanismos de ajuste de las condiciones y términos contractuales a que haya lugar, todo ello con el fin de mantener la ecuación o equilibrio inicial.

Contra los actos administrativos que ordenen la interpretación, modificación y terminación unilaterales, procederá el recurso de reposición, sin perjuicio de la acción contractual que puede intentar el contratista, según lo previsto en el artículo 77 de esta Ley.

2o. Pactaran las cláusulas excepcionales al derecho común de terminación, interpretación y modificación unilaterales, de sometimiento a las leyes nacionales y de caducidad en los contratos que tengan por objeto el ejercicio de una actividad que constituya monopolio estatal, la prestación de servicios públicos, los contratos relacionados con el programa de alimentación escolar o la explotación y concesión de bienes del Estado, así como en los contratos de obra. En los contratos de explotación y concesión de bienes del Estado se incluirá la cláusula de reversión.

Las entidades estatales podrán pactar estas cláusulas en los contratos de suministro y de prestación de servicios.

En los casos previstos en este numeral, las cláusulas excepcionales se entienden pactadas aun cuando no se consignen expresamente.

(Numeral modificado por el Art. 52 de la Ley 2195 de 2022).

*jurisprudencia*

PARÁGRAFO.- En los contratos que se celebren con personas públicas internacionales, o de cooperación, ayuda o asistencia; en los interadministrativos; en los de empréstito, donación y arrendamiento y en los contratos que tengan por objeto actividades comerciales o industriales de las entidades estatales que no correspondan a las señaladas en el numeral 2o. de este artículo, o que tengan por objeto el desarrollo directo de actividades científicas o tecnológicas, así como en los contratos de seguro tomados por las entidades estatales, se prescindirá de la utilización de las cláusulas o estipulaciones excepcionales.

(Ver el Concepto de la Sec. General 360 de 1998, Ver el Concepto del Consejo de Estado 10540 de 2000.)

ARTÍCULO 15.- *De la Interpretación Unilateral*. Si durante la ejecución del contrato surgen discrepancias entre las partes sobre la interpretación de algunas de sus estipulaciones que puedan conducir a la paralización o a la afectación grave del servicio público que se pretende satisfacer con el objeto contratado, la entidad estatal, si no se logra acuerdo, interpretará en acto administrativo debidamente motivado, las estipulaciones o cláusulas objeto de la diferencia.

ARTÍCULO 16.- *De la Modificación Unilateral*. Si durante la ejecución del contrato y para evitar la paralización o la afectación grave del servicio público que se deba satisfacer con él, fuere necesario introducir variaciones en el contrato y previamente las partes no llegan al acuerdo respectivo, la entidad en acto administrativo debidamente motivado, lo modificará mediante la supresión o adición de obras, trabajos, suministros o servicios.

Si las modificaciones alteran el valor del contrato en veinte por ciento (20%) o más del valor inicial, el contratista podrá renunciar a la continuación de la ejecución. En este evento, se ordenará la liquidación del contrato y la entidad adoptará de manera inmediata las medidas que fueren necesarias para garantizar la terminación del objeto del mismo.

ARTÍCULO 17.- De la Terminación Unilateral. La entidad en acto administrativo debidamente motivado dispondrá la terminación anticipada del contrato en los siguientes eventos:

1. Cuando las exigencias del servicio público lo requieran o la situación de orden público lo imponga.

2. Por muerte o incapacidad física permanente del contratista, si es persona natural, o por disolución de la persona jurídica del contratista.

(El texto subrayado fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-454 de 1994, en la medida en que la incapacidad física permanente impida de manera absoluta el cumplimiento de las obligaciones específicamente contractuales, cuando ellas dependan de las habilidades físicas del contratista.)

3. Por interdicción judicial o declaración de quiebra del contratista.

4. Por cesación de pagos, concurso de acreedores o embargos judiciales del contratista que afecten de manera grave el cumplimiento del contrato.

Sin embargo, en los casos a que se refieren los numerales 2o. y 3o. de este artículo podrá continuarse la ejecución con el garante de la obligación.

La iniciación de trámite concordatario no dará lugar a la declaratoria de terminación unilateral. En tal evento la ejecución se hará con sujeción a las normas sobre administración de negocios del deudor en concordato. La entidad dispondrá las medidas de inspección, control y vigilancia necesarias para asegurar el cumplimiento del objeto contractual e impedir la paralización del servicio.

(Ver el Concepto de la Sec. de Hacienda 380 de 1997.)

ARTÍCULO 17B. Efectos de la Sentencia judicial por actos de corrupción. Una vez en firme y ejecutoriada la sentencia judicial que determina la comisión de delitos contra la Administración pública o de cualquiera de los delitos contemplados en el literal j) del artículo 8o de la Ley 80 de 1993, se hará exigible por parte de la Administración la cláusula penal pecuniaria.

Adicionado por el art. 7, Ley 2014 de 2019.

ARTÍCULO 18.- *De la Caducidad y sus Efectos*. La caducidad es la estipulación en virtud de la cual si se presenta alguno de los hechos constitutivos de incumplimiento de las obligaciones a cargo del contratista, que afecte de manera grave y directa la ejecución del contrato y evidencia que puede conducir a su paralización, la entidad por medio de acto administrativo debidamente motivado lo dará por terminado y ordenará su liquidación en el estado en que se encuentre.

En caso de que la entidad decida abstenerse de declarar la caducidad, adoptará las medidas de control e intervención necesarias, que garanticen la ejecución del objeto contratado. La declaratoria de caducidad no impedirá que la entidad contratante tome posesión de la obra o continúe inmediatamente la ejecución del objeto contratado, bien sea a través del garante o de otro contratista, a quien a su vez se le podrá declarar la caducidad, cuando a ello hubiere lugar.

Si se declara la caducidad no habrá lugar a indemnización para el contratista, quien se hará acreedor a las sanciones e inhabilidades previstas en esta ley.

La declaratoria de caducidad será constitutiva del siniestro de incumplimiento.

(Ver el Concepto de la Sec. General 360 de 1998, Ver el Fallo del Consejo de Estado 13180 de 1997.)

ARTÍCULO 19.- *De la Reversión*. En los contratos de explotación o concesión de bienes estatales se pactará que, al finalizar el término de la explotación o concesión, los elementos y bienes directamente afectados a la misma pasen a ser propiedad de la entidad contratante, sin que por ello ésta deba efectuar compensación alguna.

(Artículo declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-250 de 1996; Ver el Concepto de la Sec. General 0111 de 2008 )

ARTÍCULO 20.- *De la Reciprocidad.* En los procesos de contratación estatal se concederá al proponente de bienes y servicios de origen extranjero, el mismo tratamiento y en las mismas condiciones, requisitos procedimientos y criterios de adjudicación que el tratamiento concedido al nacional, exclusivamente bajo el principio de reciprocidad.

Se entiende por principio de reciprocidad, el compromiso adquirido por otro país, mediante acuerdo, tratado o convenio celebrado con Colombia, en el sentido de que a las ofertas de bienes y servicios colombianos se les concederá en ese país el mismo tratamiento otorgado a sus nacionales en cuanto a las condiciones, requisitos, procedimientos y criterios para la adjudicación de los contratos celebrados con el sector público.

PARÁGRAFO 1.- El Gobierno Nacional, en los acuerdos, tratados o convenios, que celebre para estos efectos, deberá establecer todos los mecanismos necesarios para hacer cumplir el tratamiento igualitario entre el nacional y el extranjero tanto en Colombia como en el territorio del país con quien se celebre el mencionado acuerdo, convenio o tratado.

PARÁGRAFO 2.- Cuando para los efectos previstos en este artículo no se hubiese celebrado acuerdo, tratado, o convenio, los proponentes de bienes y servicios de origen extranjero podrán participar en los procesos de contratación en las mismas condiciones y con los mismos requisitos exigidos a los nacionales colombianos, siempre y cuando en sus respectivos países los proponentes de bienes y servicios de origen colombiano gocen de iguales oportunidades. El Gobierno Nacional establecerá los mecanismos para asegurar el cumplimiento de la reciprocidad prevista en este parágrafo.

ARTÍCULO 21.- *Del Tratamiento y Preferencia de las Ofertas Nacionales*. Las entidades estatales garantizarán la participación de los oferentes de bienes y servicios de origen nacional, en condiciones competitivas de calidad, oportunidad y precio, sin perjuicio del procedimiento de selección objetiva que se utilice y siempre y cuando exista oferta de origen nacional.

Cuando se trate de la ejecución de proyectos de inversión se dispondrá la desagregación tecnológica.

En los contratos de empréstito y demás formas de financiamiento, distintos de los créditos de proveedores, se buscará que no se exija el empleo o la adquisición de bienes o la prestación de servicios de procedencia extranjera específica, o que a ello se condicione el otorgamiento. Así mismo, se buscará incorporar condiciones que garanticen la participación de oferentes de bienes y servicios de origen nacional.

En igualdad de condiciones para contratar, se preferirá la oferta de bienes y servicios de origen nacional.

Para los oferentes extranjeros que se encuentren en igualdad de condiciones, se preferirá aquel que contenga mayor incorporación de recursos humanos nacionales, mayor componente nacional y mejores condiciones para la transferencia tecnológica.

El Consejo Superior de Comercio Exterior determinará el régimen vigente para las importaciones de las entidades estatales.

PARÁGRAFO 1.- El Gobierno Nacional determinará que debe entenderse por bienes y servicios de origen Nacional y de origen Extranjero y por desagregación tecnológica. Corresponde también al Gobierno Nacional diseñar mecanismos que faciliten el conocimiento oportuno tanto de la oferta de bienes y servicios de origen nacional, como de la demanda de las entidades estatales.

(Ver el art. 4.2.2 del Decreto Nacional 734 de 2012

PARÁGRAFO 2.- El Gobierno Nacional reglamentará el componente nacional al que deben someterse las entidades estatales, para garantizar la participación de las ofertas de bienes y servicios de origen nacional.

Ver el Concepto de la Sec. General 024 de 2008.

ARTÍCULO 22.- *De los Registros de Proponentes.* Derogado por el art. 32, Ley 1150 de 2007.

## II DE LOS PRINCIPIOS DE LA CONTRATACIÓN ESTATAL

ARTÍCULO 23.- *De Los Principios de las Actuaciones Contractuales de las Entidades Estatales*. Las actuaciones de quienes intervengan en la contratación estatal se desarrollarán con arreglo a los principios de transparencia, economía y responsabilidad y de conformidad con los postulados que rigen la función administrativa. Igualmente, se aplicarán en las mismas las normas que regulan la conducta de los servidores públicos, las reglas de interpretación de la contratación, los principios generales del derecho y los particulares del derecho administrativo.

ARTÍCULO 24.- *Del principio de Transparencia*. En virtud de este principio:

(Ver la Circular Conjunta de la Procuraduría General, la Contraloría General y la Auditoría General 014 de 2011)

-1">1o. Numeral Derogado por el art. 32 de la Ley 1150 de 2007.

2o. En los procesos contractuales los interesados tendrán oportunidad de conocer y controvertir los informes, conceptos y decisiones que se rindan o adopten, para lo cual se establecerán etapas que permitan el conocimiento de dichas actuaciones y otorguen la posibilidad de expresar observaciones.

3o. Las actuaciones de las autoridades serán públicas y los expedientes que las contengan estarán abiertos al público, permitiendo en el caso de licitación el ejercicio del derecho de que trata el artículo 273 de la Constitución Política.

(Ver el Concepto del Consejo de Estado 558 de 1993.)

4o. Las autoridades expedirán a costa de aquellas personas que demuestren interés legítimo, copia de las actuaciones y propuestas recibidas, respetando la reserva de que gocen legalmente las patentes, procedimientos y privilegios.

(Ver el Concepto del Consejo de Estado 558 de 1993)

5o. En los pliegos de condiciones o términos de referencia:

(Ver el Fallo del Consejo de Estado 16385 de 2011)

(La expresión "Términos de referencia" fue derogada por el art. 32 de la Ley 1150 de 2007. a) Se indicarán los requisitos objetivos necesarios para participar en el correspondiente proceso de selección. Literal reglamentado por el Decreto Nacional 679 de 1994.)

b) Se definirán reglas objetivas, justas, claras y completas que permitan la confección de ofrecimientos de la misma índole, aseguren una escogencia objetiva y eviten las declaratorias de desierta de la licitación o concurso.

(Literal declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-932 de 2007, en el entendido de que los principios de transparencia, selección objetiva e igualdad permiten que dentro de los factores de escogencia o criterios de ponderación, en los pliegos de condiciones se incluyan medidas de acciones afirmativas.)

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

c) Se definirán con precisión las condiciones de costo y calidad de los bienes, obras o servicios necesarios para la ejecución del objeto del contrato.

d) No se incluirán condiciones y exigencias de imposible cumplimiento, ni exenciones de la responsabilidad derivada de los datos, informes y documentos que se suministren.

e) Se definirán reglas que no induzcan a error a los proponentes y contratistas y que impidan la Formulación de ofrecimientos de extensión ilimitada o que dependan de la voluntad exclusiva de la entidad.

f) Se definirá el plazo para la liquidación del contrato, cuando a ello hubiere lugar, teniendo en cuenta su objeto, naturaleza y cuantía.

Serán ineficaces de pleno derecho las estipulaciones de los pliegos o términos de referencia y de los contratos que contravengan lo dispuesto en este numeral, o dispongan renuncias a reclamaciones por la ocurrencia de los hechos aquí enunciados.

(La expresión "Términos de referencia" fue derogada por el art. 32 de la Ley 1150 de 2007.)

6o. En los avisos de publicación de apertura de la licitación o concurso y en los pliegos de condiciones o términos de referencia, se señalarán las reglas de adjudicación del contrato.

(Las expresiones "Concurso" y "Términos de referencia" fueron derogadas por el art. 32 de la Ley 1150 de 2007.)

7o. Los actos administrativos que se expidan en la actividad contractual o con ocasión de ella, salvo los de mero trámite, se motivarán en forma detallada y precisa e igualmente lo serán los informes de evaluación, el acto de adjudicación y la declaratoria de desierto del proceso de escogencia.

(Ver el Concepto de la Sec. General 2045 de 1998.)

8o. Las autoridades no actuarán con desviación o abuso de poder y ejercerán sus competencias exclusivamente para los fines previstos en la ley. Igualmente, les será prohibido eludir los procedimientos de selección objetiva y los demás requisitos previstos en el presente estatuto.

(Ver el Concepto de la Sec. General 140 de 1998.)

9o. Los avisos de cualquier clase a través de los cuales se informe o anuncie la celebración o ejecución de contratos por parte de las entidades estatales, no podrán incluir referencia alguna al nombre o cargo de ningún servidor público.

(Ver el Concepto del Consejo de Estado 642 de 1994.)

PARÁGRAFO 1.- Derogado por el art. 32, Ley 1150 de 2007.

PARÁGRAFO 2.- El Gobierno Nacional expedirá, dentro de los seis (6) meses siguientes a la promulgación de esta ley, un reglamento de

contratación directa, cuyas disposiciones garanticen y desarrollen los principios de economía, transparencia y selección objetiva previstos en ella.

Si el Gobierno no expidiere el reglamento respectivo, no podrá celebrarse directamente contrato alguno por ninguna entidad estatal so pena de su nulidad.

(NOTA: El Parágrafo 2° fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-508 de 2002, bajo el entendido que el plazo de seis meses fijado al Gobierno Nacional para la expedición del reglamento de contratación directa, no limita el ejercicio de la facultad reglamentaria del Presidente de la República, como ha quedado expuesto en los fundamentos de esta providencia.)

PARÁGRAFO 3.- Cuando la venta de los bienes de las entidades estatales deba efectuarse por el sistema de martillo, se hará a través del procedimiento de subasta que realicen las entidades financieras debidamente autorizadas para el efecto y vigiladas por la Superintendencia Bancaria.

La selección de la entidad vendedora la hará la respectiva entidad estatal, de acuerdo con los principios de transparencia, economía, responsabilidad y selección objetiva y teniendo en cuenta la capacidad administrativa que pueda emplear cada entidad financiera para realizar los remates.

(NOTA: Ver los Decretos Nacionales 2251 y 2681 de 1993; 855 de 1994 y 781 de 1997; Ver los Fallos del Consejo de Estado 12344 de 1999 y 10963 de 2000; Ver los Conceptos del Consejo de Estado 596 y 642 de 1994 y 811 de 1996; Ver los Conceptos de la Sec. General 100 de 1997 y 140 de 1998; Ver el Concepto de la Sec. de Hacienda 750 de 1998.)

ARTÍCULO 25.- *Del Principio de Economía.* Reglamentado por el Decreto Nacional 287 de 1996. En virtud de este principio:

1o. En las normas de selección y en los pliegos de condiciones o términos de referencia para la escogencia de contratistas, se cumplirán y establecerán los procedimientos y etapas estrictamente necesarios para asegurar la selección objetiva de la propuesta más favorable. Para este propósito, se señalarán términos preclusivos y perentorios para las diferentes etapas de la selección y las autoridades darán impulso oficioso a las actuaciones.

(La expresión "Términos de referencia" fue derogada por el art. 32 de la Ley 1150 de 2007.)

2o. Las normas de los procedimientos contractuales se interpretarán de tal manera que no den ocasión a seguir trámites distintos y adicionales a los expresamente previstos o que permitan valerse de los defectos de forma o de la inobservancia de requisitos para no decidir o proferir providencias inhibitorias.

3o. Se tendrán en consideración que las reglas y procedimientos constituyen mecanismos de la actividad contractual que buscan servir a los fines estatales, a la adecuada, contínua y eficiente prestación de los servicios públicos y a la protección y garantía de los derechos de los administrados.

4o. Los trámites se adelantarán con austeridad de tiempo, medios y gastos y se impedirán las dilaciones y los retardos en la ejecución del contrato.

5o. Se adoptarán procedimientos que garanticen la pronta solución de las diferencias y controversias que con motivo de la celebración y ejecución del contrato se presenten.

(Ver el Fallo del Consejo de Estado 10399 de 2000.)

6o. Las entidades estatales abrirán licitaciones o concursos e iniciarán procesos de suscripción de contratos, cuando existan las respectivas partidas o disponibilidades presupuestales.

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

7o. La conveniencia o inconveniencia del objeto a contratar y las autorizaciones y aprobaciones para ello, se analizarán o impartirán con antelación al inicio del proceso de selección del contratista o al de la firma del contrato, según el caso.

8o. El acto de adjudicación y el contrato no se someterán a aprobaciones o revisiones administrativas posteriores, ni a cualquier otra clase de exigencias o requisitos, diferentes de los previstos en este estatuto.

9o. En los procesos de contratación intervendrán el jefe y las unidades asesoras y ejecutoras de la entidad que se señalen en las correspondientes normas sobre su organización y funcionamiento.

10. Numeral subrogado por el art. 37, Decreto Nacional 2150 de 1995, así: Los jefes o representantes de las entidades a las que se aplica la presente ley, podrán delegar la facultad para celebrar contratos en los términos previstos en el artículo 12 de esta ley y con sujeción a las cuantías que señalen sus respectivas juntas o consejos directivos. En los demás casos, dichas cuantías las fijará el reglamento.

(Ver el art. 14, Decreto Nacional 679 de 1994 y el 1985 del mismo año.)

11. Las corporaciones de elección popular y los organismos de control y vigilancia no intervendrán en los procesos de contratación, salvo en lo

relacionado con la solicitud de audiencia pública para la adjudicación en caso de licitación.

De conformidad con lo previsto en los artículos 300, numeral 9o. y 313, numeral 3o. de la Constitución Política, las Asambleas Departamentales y los Concejos Municipales autorizarán a los gobernadores, y alcaldes respectivamente, para la celebración de contratos.

(Ver Concepto del Consejo de Estado 1371 de 2001, Ver Concepto del Consejo de Estado 1889 de 2008.)

12. Modificado por el art. 87, Ley 1474 de 2011. Previo a la apertura de un proceso de selección, o a la firma del contrato en el caso en que la modalidad de selección sea contratación directa, deberán elaborarse los estudios, diseños y proyectos requeridos, y los pliegos de condiciones, según corresponda.

Cuando el objeto de la contratación incluya la realización de una obra, en la misma oportunidad señalada en el inciso primero, la entidad contratante deberá contar con los estudios y diseños que permitan establecer la viabilidad del proyecto y su impacto social, económico y ambiental. Esta condición será aplicable incluso para los contratos que incluyan dentro del objeto el diseño.

(La expresión "Términos de referencia" fue derogada por el art. 32 de la Ley 1150 de 2007.)

(Inciso 2° derogado por el art. 32 de la Ley 1150 de 2007.)

13. Las autoridades constituirán las reservas y compromisos presupuestales necesarios, tomando como base el valor de las prestaciones al momento de celebrar el contrato y el estimativo de los ajustes resultantes de la aplicación de la cláusula de actualización de precios.

14. Las entidades incluirán en sus presupuestos anuales una apropiación global destinada a cubrir los costos imprevistos ocasionados por los retardos en los pagos, así como los que se originen en la revisión de los precios pactados por razón de los cambios o alteraciones en las condiciones iniciales de los contratos por ellas celebrados.

15. Las autoridades no exigirán sellos, autenticaciones, documentos originales o autenticados, reconocimientos de firmas, traducciones oficiales, ni cualquier otra clase de formalidades o exigencias rituales, salvo cuando en forma perentoria y expresa lo exijan leyes especiales.

(Inciso 2° derogado por el art. 32 de la Ley 1150 de 2007.)

16. En las solicitudes que se presenten en el curso de la ejecución del contrato, si la entidad estatal no se pronuncia dentro del término de tres (3) meses siguientes, se entenderá que la decisión es favorable a las pretensiones del solicitante en virtud del silencio administrativo positivo. Pero el funcionario o funcionarios competentes para dar respuesta serán responsables en los términos de esta Ley.

(Ver el art. 15, Decreto Nacional 679 de 1994)

17. Las entidades no rechazarán las solicitudes que se les formulen por escrito aduciendo la inobservancia por parte del peticionario de las formalidades establecidas por la entidad para su tramitación y oficiosamente procederán a corregirlas y a subsanar los defectos que se adviertan en ellas.

Igualmente, estarán obligadas a radicar las actas o cuentas de cobro en la fecha en que sean presentadas por el contratista, procederán a corregirlas o ajustarlas oficiosamente si a ello hubiere lugar y, si esto no fuere posible, las devolverán a la mayor brevedad explicando por escrito los motivos en que se fundamente tal determinación.

18. La declaratoria de desierta de la licitación o concurso únicamente procederá por motivos o causas que impidan la escogencia objetiva y se declarará en acto administrativo en el que se señalarán en forma expresa y detallada las razones que han conducido a esa decisión.

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

19 Numeral derogado por el art. 32 de la Ley 1150 de 2007.)

(Ver la Sentencia de la Corte Constitucional C-154 de 1996.)

20. Los fondos destinados a la cancelación de obligaciones derivadas de contratos estatales podrán ser entregados en administración fiduciaria o bajo cualquier otra forma de manejo que permita la obtención de beneficios y ventajas financieras y el pago oportuno de lo adeudado.

(NOTA: Ver el Decreto Nacional 679 de 1994, Ver el Concepto de la Sec. General 140 de 1998, Ver los Conceptos del Consejo de Estado 811 de 1996 y 1121 de 1998, así como el Fallo 12344 de 1999.)

ARTÍCULO 26.- *Del Principio de Responsabilidad*. En virtud de este principio:

1o. Los servidores públicos están obligados a buscar el cumplimiento de los fines de la contratación, a vigilar la correcta ejecución del objeto contratado y a proteger los derechos de la entidad, del contratista y de los terceros que puedan verse afectados por la ejecución del contrato.

2o. Los servidores públicos responderán por sus actuaciones y omisiones antijurídicas y deberán indemnizar los daños que se causen por razón de ellas.

3o. Las entidades y los servidores públicos, responderán cuando hubieren abierto licitaciones o concursos sin haber elaborado previamente los

correspondientes pliegos de condiciones, términos de referencia, diseños, estudios, planos y evaluaciones que fueren necesarios, o cuando los pliegos de condiciones o términos de referencia hayan sido elaborados en forma incompleta, ambigua o confusa que conduzcan a interpretaciones o decisiones de carácter subjetivo por parte de aquellos.

(La expresión "Concurso" y "Términos de referencia" fueron derogadas por el art. 32 de la Ley 1150 de 2007.)

4o. Las actuaciones de los servidores públicos estarán presididas por las reglas sobre administración de bienes ajenos y por los mandatos y postulados que gobiernan una conducta ajustada a la ética y a la justicia.

5o. La responsabilidad de la dirección y manejo de la actividad contractual y la de los procesos de selección será del jefe o representante de la entidad estatal quien no podrá trasladarla a las juntas o consejos directivos de la entidad, ni a las corporaciones de elección popular, a los comités asesores, ni a los organismos de control y vigilancia de la misma.

6o. Los contratistas responderán cuando formulen propuestas en las que se fijen condiciones económicas y de contratación artificialmente bajas con el propósito de obtener la adjudicación del contrato.

7o. Los contratistas responderán por haber ocultado al contratar, inhabilidades, incompatibilidades o prohibiciones, o por haber suministrado información falsa.

8o. Los contratistas responderán y la entidad velará por la buena calidad del objeto contratado.

(Ver el Concepto de la Sec. General 140 de 1998.)

ARTÍCULO 27.- *De la Ecuación Contractual*. En los contratos estatales se mantendrá la igualdad o equivalencia entre derechos y obligaciones surgidos al momento de proponer o de contratar, según el caso. Si dicha igualdad o equivalencia se rompe por causas no imputables a quien resulte afectado, las partes adoptarán en el menor tiempo posible las medidas necesarias para su restablecimiento.

Para tales efectos, las partes suscribirán los acuerdos y pactos necesarios sobre cuantías, condiciones y forma de pago de gastos adicionales, reconocimiento de costos financieros e intereses, si a ello hubiere lugar, ajustando la cancelación a las disponibilidades de la apropiación de que trata el numeral 14 del artículo 25. En todo caso, las entidades deberán adoptar las medidas necesarias que aseguren la efectividad de estos pagos y reconocimientos al contratista en la misma o en la siguiente vigencia de que se trate.

ARTÍCULO 28.- *De la Interpretación de las Reglas Contractuales*. En la interpretación de las normas sobre contratos estatales, relativas a procedimientos de selección y escogencia de contratistas y en la de la cláusula y estipulaciones de los contratos, se tendrá en consideración los fines y los principios de que trata esta ley, los mandatos de la buena fe y la igualdad y equilibrio entre prestaciones y derechos que caracteriza a los contratos conmutativos.

(NOTA: Ver el Concepto de la Sec. General 355 de 1998, Ver el Concepto del Consejo de Estado 811 de 1996 y el Fallo 12344 de 1999.)

ARTÍCULO 29.- Artículo derogado por el art. 32, de la Ley 1150 de 2007. *Del Deber de Selección Objetiva*. La selección de contratistas será objetiva.

Es objetiva la selección en la cual la escogencia se hace al ofrecimiento más favorable a la entidad y a los fines que ella busca, sin tener en consideración factores de afecto o de interés y, en general, cualquier clase de motivación subjetiva.

Ofrecimiento más favorable es aquel que, teniendo en cuenta los factores de escogencia, tales como cumplimiento, experiencia, organización, equipos, plazo, precio y la ponderación precisa, detallada y concreta de los mismos, contenida en los pliegos de condiciones o términos de referencia o en el análisis previo a la suscripción del contrato, si se trata de contratación directa, resulta ser más ventajoso para la entidad, sin que la favorabilidad la constituyan factores diferentes a los contenidos en dichos documentos, sólo alguno de ellos, el más bajo precio o el plazo ofrecido. Si el plazo ofrecido es menor al previsto en los pliegos de condiciones o términos de referencia, no será objeto de evaluación.

El administrador efectuará las comparaciones del caso mediante el cotejo de los diferentes ofrecimientos recibidos, la consulta de precios o condiciones del mercado y los estudios y deducciones de la entidad o de los organismos consultores o asesores designados para ello.

En caso de comparación de propuestas nacionales y extranjeras, se incluirán los costos necesarios para la entrega del producto terminado en el lugar de su utilización.

(NOTA: Ver el Concepto del Consejo de Estado 811 de 1996, así como los Fallos 9868 de 1996, 12344 de 1999 y 12633 de 2000; Ver la Directiva Presidencial 12 de 2002; Ver la Ley 816 de 2003.)

(NOTA: El artículo 29 fue reglamentado por el Decreto Nacional 287 de 1996.)

ARTÍCULO 30.- Reglamentado por el Decreto Nacional 287 de 1996. De la Estructura de los Procedimientos de Selección. La licitación o concurso se efectuará conforme a las siguientes reglas:

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

1o. El jefe o representante de la entidad estatal ordenará su apertura por medio de acto administrativo motivado.

De conformidad con lo previsto en el numeral 12 del artículo 25 de esta Ley, la resolución de apertura debe estar precedida de un estudio realizado por la entidad respectiva en el cual se analice la conveniencia y oportunidad del contrato y su adecuación a los planes de inversión, de adquisición o compras, presupuesto y ley de apropiaciones, según el caso. Cuando sea necesario, el estudio deberá estar acompañado, además de los diseños, planos y evaluaciones de prefactibilidad o factibilidad.

2o. La entidad interesada elaborará los correspondientes pliegos de condiciones o términos de referencia, de conformidad con lo previsto en el numeral 5o. del artículo 24 de esta Ley, en los cuales se detallarán especialmente los aspectos relativos al objeto del contrato, su regulación jurídica, los derechos y obligaciones de las partes, la determinación y ponderación de los factores objetivos de selección y todas las demás circunstancias de tiempo, modo y lugar que se consideren necesarias para garantizar reglas objetivas, claras y completas.

(La expresión "Términos de referencia" fue derogada por el art. 32 de la Ley 1150 de 2007.)

3o. Modificado por el art. 224, Decreto Nacional 019 de 2012. Dentro de los diez (10) a veinte (20) días calendario anteriores a la apertura de la licitación se publicarán hasta tres (3) avisos con intervalos entre dos (2) y cinco (5) días calendario, según lo exija la naturaleza, objeto y cuantía del contrato, en la página Web de la entidad contratante y en el Sistema Electrónico para la Contratación Pública -SECOP.

En defecto de dichos medios de comunicación, en los pequeños poblados, de acuerdo con los criterios que disponga el reglamento, se leerán por bando y se fijarán por avisos en los principales lugares públicos por el término de siete (7) días calendario, entre los cuales deberá incluir uno de los días de mercado en la respectiva población.

Los avisos contendrán información sobre el objeto y características esenciales de la respectiva licitación.

4o. Modificado por el art. 220, Decreto Nacional 019 de 2012. Dentro de los tres (3) días hábiles siguientes al inicio del plazo para la presentación de propuestas y a solicitud de cualquiera de las personas interesadas en el proceso se celebrará una audiencia con el objeto de precisar el contenido y alcance de los pliegos de condiciones, de lo cual se levantará un acta suscrita por los intervinientes. En la misma audiencia se revisará la asignación de riesgos que trata el artículo 4 de la Ley 1150 de 2007 con el fin de establecer su tipificación, estimación y asignación definitiva.

Como resultado de lo debatido en la audiencia y cuando resulte conveniente, el jefe o representante de la entidad expedirá las modificaciones pertinentes a dichos documentos y prorrogará, si fuere necesario, el plazo de la licitación o concurso hasta por seis (6) días hábiles.

Lo anterior no impide que dentro del plazo de la licitación, cualquier interesado pueda solicitar aclaraciones adicionales que la entidad contratante responderá mediante comunicación escrita, la cual remitirá al interesado y publicará en el SECOP para conocimiento público.

5o. El plazo de la licitación o concurso, entendido como el término que debe transcurrir entre la fecha a partir de la cual se pueden presentar propuestas y la de su cierre, se señalará en los pliegos de condiciones o términos de referencia, de acuerdo con la naturaleza, objeto y cuantía del contrato.

Modificado por el art 89, Ley 1474 de 2011. Cuando lo estime conveniente la entidad interesada o cuando lo soliciten las dos terceras partes de las personas que hayan retirado pliegos de condiciones o términos de referencia, dicho plazo se podrá prorrogar, antes de su vencimiento, por un término no superior a la mitad del inicialmente fijado.

(Las expresiones "Concurso" y "Términos de referencia" fueron derogadas por el art. 32 de la Ley 1150 de 2007.)

6o. Las propuestas deben referirse y sujetarse a todos y cada uno de los puntos contenidos en el pliego de condiciones o términos de referencia. Los proponentes pueden presentar alternativas y excepciones técnicas o económicas siempre y cuando ellas nos signifiquen condicionamientos para la adjudicación.

(La expresión "Términos de referencia" fue derogada por el art. 32 de la Ley 1150 de 2007.)

7o. De acuerdo con la naturaleza, objeto y cuantía del contrato, en los pliegos de condiciones o términos de referencia, se señalará el plazo razonable dentro del cual la entidad deberá elaborar los estudios técnicos, económicos y jurídicos necesarios para la evaluación de las propuestas y para solicitar a los proponentes las aclaraciones y explicaciones que se estimen indispensables.

(La expresión "Términos de referencia" fue derogada por el art. 32 de la Ley 1150 de 2007.)

8o. Los informes de evaluación de las propuestas permanecerán en la secretaría de la entidad por un término de cinco (5) días hábiles para que los oferentes presenten las observaciones que estimen pertinentes. En ejercicio de esta facultad, los oferentes no podrán completar, adicionar, modificar o mejorar sus propuestas.

9o. Los plazos para efectuar la adjudicación y para la firma del contrato se señalarán en los pliegos de condiciones o términos de referencia, teniendo en cuenta su naturaleza, objeto y cuantía.

El jefe o representante de la entidad podrá prorrogar dichos plazos antes de su vencimiento y por un término total no mayor a la mitad del inicialmente fijado, siempre que las necesidades de la administración así lo exijan.

Dentro del mismo término de adjudicación, podrá declararse desierta la licitación o concurso conforme a lo previsto en este estatuto.

(Las expresiones "Concurso" y "Términos de referencia" fueron derogadas por el art. 32 de la Ley 1150 de 2007.)

10. En el evento previsto en el artículo 273 de la Constitución Política, la adjudicación se hará en audiencia pública. En dicha audiencia participarán el jefe de la entidad o la persona en quien, conforme a la ley, se haya delegado la facultad de adjudicar y, además podrán intervenir en ella los servidores públicos que hayan elaborado los estudios y evaluaciones, los proponentes y las demás personas que deseen asistir.

De la audiencia se levantará un acta en la que se dejará constancia de las deliberaciones y decisiones que en el desarrollo de la misma se hubieren producido.

11. Numeral derogado por el art. 32 de la Ley 1150 de 2007. El acto de adjudicación se hará mediante resolución motivada que se notificará personalmente al proponente favorecido en la forma y términos establecidos para los actos administrativos y, en el evento de no haberse realizado en audiencia pública, se comunicará a los no favorecidos dentro de los cinco (5) días calendario siguientes.

El acto de adjudicación es irrevocable y obliga a la entidad y al adjudicatario.

12. Si el adjudicatario no suscribe el contrato correspondiente dentro del término que se haya señalado, quedará a favor de la entidad contratante, en calidad de sanción, el valor del depósito o garantía constituidos para responder por la seriedad de la propuesta, sin menoscabo de las acciones legales conducentes al reconocimiento de perjuicios causados y no cubiertos por el valor de los citados depósito o garantía.

En este evento, la entidad estatal mediante acto administrativo debidamente motivado, podrá adjudicar el contrato, dentro de los quince (15) días siguientes, al proponente calificado en segundo lugar, siempre y cuando su propuesta sea igualmente favorable para la entidad.

PARÁGRAFO.- Para los efectos de la presente ley se entiende por licitación pública el procedimiento mediante el cual la entidad estatal formula públicamente una convocatoria para que, en igualdad de oportunidades, los interesados presenten sus ofertas y seleccione entre ellas la más favorable. Cuando el objeto del contrato consista en estudios o trabajos técnicos, intelectuales o especializados, el proceso de selección se llamará concurso y se efectuará también mediante invitación pública. El texto subrayado fue derogado por el art. 32 de la Ley 1150 de 2007.

(NOTA: Este Parágrafo fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-932 de 2007, en el entendido de que los principios de transparencia, selección objetiva e igualdad permiten que dentro de los factores de escogencia o criterios de ponderación, en los pliegos de condiciones se incluyan medidas de acciones afirmativas.)

(Ver Fallo del Consejo de Estado 10399 de 2000 , Ver Fallo del Consejo de Estado 10963 de 2000 , Ver Fallo del Consejo de Estado 12962 de 2000)

PARÁGRAFO 2 Y 3 (Adicionado por el art. 1 de la Ley 1882 de 2018)

ARTÍCULO 31.- *De la Publicación de los Actos y Sentencias Sancionatorias.* Modificado por el art. 218, Decreto Nacional 019 de 2012. La parte resolutiva de los actos que declaren la caducidad, impongan multas, sanciones o declaren el incumplimiento, una vez ejecutoriados, se publicarán en el SECOP y se comunicarán a la cámara de comercio en que se encuentre inscrito el contratista respectivo. También se comunicarán a la Procuraduría General de la Nación."

*(Ver sentencia C-016 de 2013 de la Corte Constitucional)*

III. DEL CONTRATO ESTATAL

ARTÍCULO 32. *De los Contratos Estatales.* Son contratos estatales todos los actos jurídicos generadores de obligaciones que celebren las entidades a que se refiere el presente estatuto, previstos en el derecho privado o en disposiciones especiales, o derivados del ejercicio de la autonomía de la voluntad, así como los que, a título enunciativo, se definen a continuación

1. Contrato de Obra Son contratos de obra los que celebren las entidades estatales para la construcción, mantenimiento, instalación y, en general, para la realización de cualquier otro trabajo material sobre bienes inmuebles, cualquiera que sea la modalidad de ejecución y pago.

En los contratos de obra que hayan sido celebrados como resultado de un proceso de licitación o concurso públicos, la interventoría deberá ser contratada con una persona independiente de la entidad contratante y del contratista, quien responderá por los hechos y omisiones que le fueren imputables en los términos previstos en el artículo 53 del presente estatuto.

(La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.)

2. Contrato de consultoría Reglamentado por el Decreto Nacional 2326 de 1995

Son contratos de consultoría los que celebren las entidades estatales referidos a los estudios necesarios para la ejecución de proyectos de inversión, estudios de diagnóstico, prefactibilidad o factibilidad para programas o proyectos específicos, así como a las asesorías técnicas de coordinación, control y supervisión.

Son también contratos de consultoría los que tienen por objeto la interventoría, asesoría, gerencia de obra o de proyectos, dirección, programación y la ejecución de diseños, planos, anteproyectos y proyectos.

Ninguna orden del interventor de una obra podrá darse verbalmente. Es obligatorio para el interventor entregar por escrito sus órdenes o

sugerencias y ellas deben enmarcarse dentro de los términos del respectivo contrato.

3. Contrato de prestación de servicios Son contratos de prestación de servicios los que celebren las entidades estatales para desarrollar actividades relacionadas con la administración o funcionamiento de la entidad. Estos contratos sólo podrán celebrarse con personas naturales cuando dichas actividades no puedan realizarse con personal de planta o requieran conocimiento especializado.

En ningún caso estos contratos generan relación laboral ni prestaciones sociales y se celebrarán por el término estrictamente indispensable.

(Ver Sentencia Consejo de Estado 2014-90305 de 2020)

(Ver Sentencia Consejo de Estado 2011-00400 de 2020)

(Ver sentencia Consejo de Estado 2013-01143 de 2021)

(NOTA: Las expresiones subrayadas fueron declaradas EXEQUIBLES por la Corte Constitucional mediante Sentencia C-154 de 1997, salvo que se acredite la existencia de una relación laboral subordinada.)

(NOTA: Ver la Ley 190 de 1995; Ver el Decreto Nacional 2681 de 1993, Ver el art. 141, Decreto Nacional 2150 de 1995; Ver el Concepto de la Sec. General 1045 de 1995; Ver los Fallos del Consejo de Estado IJ-0039 de 2003 y 4096 de 2006.)

(Ver concepto del Consejo de Estado 2003A de 2011)

4.Contrato de concesión Son contratos de concesión los que celebran las entidades estatales con el objeto de otorgar a una persona llamada concesionario la prestación, operación explotación, organización o gestión, total o parcial, de un servicio público, o la construcción, explotación o conservación total o parcial, de una obra o bien destinados al servicio o uso público, así como todas aquellas actividades necesarias para la adecuada prestación o funcionamiento de la obra o servicio por cuenta y riesgo del concesionario y bajo la vigilancia y control de la entidad concedente, a cambio de una remuneración que puede consistir en derechos, tarifas, tasas, valorización, o en la participación que se le otorgue en la explotación del bien, o en una suma periódica, única o porcentual y, en general, en cualquier otra modalidad de contraprestación que las partes acuerden.

(Ver el Decreto Nacional 624 de 1994, Ver Ley 1508 de 2012)

5. Encargos fiduciarios y fiducia pública.

(Ver el art. 36 de la Ley 388 de 1997)

(Texto subrayado declarado INEXEQUIBLE por la Corte Constitucional mediante Sentencia C-086 de 1995.)

Los encargos fiduciarios que celebren las entidades estatales con las sociedades fiduciarias autorizadas por la Superintendencia Bancaria, tendrán por objeto la administración o el manejo de los recursos vinculados a los contratos que tales entidades celebren. Lo anterior sin perjuicio de lo previsto en el numeral 20 del artículo 25 de esta Ley.

Los encargos fiduciarios y los contratos de fiducia pública sólo podrán celebrarse por las entidades estatales con estricta sujeción a lo dispuesto en el presente estatuto, únicamente para objetos y con plazos precisamente determinados. En ningún caso las entidades públicas fideicomitentes podrán delegar en las sociedades fiduciarias la adjudicación de los contratos que se celebren en desarrollo del encargo o de la fiducia pública, ni pactar su remuneración con cargo a los rendimientos del fideicomiso, salvo que éstos se encuentren presupuestados.

Los encargos fiduciarios y los contratos de fiducia mercantil que a la fecha de promulgación de esta ley hayan sido suscritos por las entidades estatales, continuarán vigentes en los términos convenidos con las sociedades fiduciarias.

El inciso 4 fue modificado por el art. 25, de la Ley 1150 de 2007 así: La selección de las sociedades fiduciarias a contratar, sea pública o privada, se hará con rigurosa observancia del procedimiento de licitación o concurso previsto en esta ley. No obstante, los excedentes de tesorería de las entidades estatales, se podrán invertir directamente en fondos comunes ordinarios administrados por sociedades fiduciarias, sin necesidad de acudir a un proceso de licitación pública.

PARÁGRAFO 1.- Modificado por el art. 15, Ley 1150 de 2007, así: Los Contratos que celebren los Establecimientos de Crédito, las compañías de seguros y las demás entidades financieras de carácter estatal, no estarán sujetos a las disposiciones del Estatuto General de Contratación de la Administración Pública y se regirán por las disposiciones legales y reglamentarias aplicables a dichas actividades.

En todo caso, su actividad contractual se someterá a lo dispuesto en el artículo 13 de la presente ley.

(Ver la Sentencia de la Corte Constitucional mediante Sentencia C-086 de 1995, que declaró EXEQUIBLES los apartes demandados del artículo 32.)

PARÁGRAFO 2.- Reglamentado por el Decreto Nacional 4533 de 2008, Derogado por el art. 39, Ley 1508 de 2011.

ARTÍCULO 33.- *De la Concesión de los Servicios y de las Actividades de Telecomunicaciones.* Se entiende por actividad de telecomunicaciones el

establecimiento de una red de telecomunicaciones, para uso particular y exclusivo, a fin de satisfacer necesidades privadas de telecomunicaciones, y sin conexión a las redes conmutadas del Estado o a otras redes privadas de telecomunicaciones. Para todos los efectos legales las actividades de telecomunicaciones se asimilan a servicios privados.

Se entiende por servicios de telecomunicaciones aquellos que son prestados por personas jurídicas, públicas o privadas, debidamente constituidas en Colombia, con o sin ánimo de lucro, con el fin de satisfacer necesidades específicas de telecomunicaciones a terceros, dentro del territorio nacional o en conexión con el exterior.

Para efectos de la presente Ley, la clasificación de servicios públicos y de las actividades de telecomunicaciones será la establecida en el Decreto-ley 1900 de 1990 o en las demás normas que lo aclaren, modifiquen o deroguen.

Los servicios y las actividades de telecomunicación serán prestados mediante concesión otorgada por contratación directa o a través de licencias por las entidades competentes, de acuerdo con lo dispuesto en el Decreto-ley 1900 de 1990 o en las normas que lo sustituyan, modifiquen o adicionen.

Las calidades de las personas naturales o jurídicas, públicas o privadas, y los requisitos y condiciones jurídicos y técnicos, que deben cumplir los concesionarios de los servicios y actividades de telecomunicaciones, serán los previstos en las normas y estatutos de telecomunicaciones vigentes.

Parágrafo.- Los procedimientos, contratos, modalidades de asociación y adjudicación de servicios de telecomunicaciones de que trata la Ley 37 de 1993, continuarán rigiéndose por lo previsto en dicha ley y en las disposiciones que la desarrollen o complemente. Los servicios de televisión se concederán mediante contrato, de conformidad con las normas legales y disposiciones especiales sobre la materia.

(NOTA: El artículo 73 de la Ley 1341 de 2009, previó que sin perjuicio del régimen de transición previsto en la citada Ley, quedan derogadas todas las disposiciones que le sean contrarias y, entre ellas lo pertinente de los artículos 33, 34, 35 y 38 de la Ley 80 de 1993, exclusivamente en cuanto haga referencia a los servicios, las redes, las actividades y los proveedores, y en cuanto resulte contraria a las normas y principios contenidos en la nueva legislación.)

(Ver la Ley 37 de 1993; Ver los Decretos Nacionales 453, 741 y 2061 de 1993 y el 855 de 1994.)

ARTÍCULO 34.- *De la Concesión del Servicio de Telefonía de Larga Distancia Nacional e Internacional*. La concesión para la prestación de los servicios de telefonía básica fija conmutada de larga distancia nacional e internacional, se otorgará conforme a lo dispuesto por el Decreto 2122 de 1992.

(NOTA: El artículo 73 de la Ley 1341 de 2009, previó que sin perjuicio del régimen de transición previsto en la citada Ley, quedan derogadas todas las disposiciones que le sean contrarias y, entre ellas lo pertinente de los artículos 33, 34, 35 y 38 de la Ley 80 de 1993, exclusivamente en cuanto haga referencia a los servicios, las redes, las actividades y los proveedores, y en cuanto resulte contraria a las normas y principios contenidos en la nueva legislación.)

ARTÍCULO 35.- *De la Radiodifusión Sonora.* (Derogado por el artículo 73 de la Ley 1341 de 2009)

ARTÍCULO 36.- *De la Duración y Prorroga de la Concesión.* Derogado por el art. 32, Ley 1150 de 2007. El término de duración de las concesiones para la prestación de los servicios y actividades de telecomunicaciones, no podrá exceder de diez (10) años, prorrogable automáticamente por un lapso igual. Dentro del año siguiente a la prórroga automática, se procederá a la formalización de la concesión.

Parágrafo 1.- Los contratos vigentes para la prestación del servicio de radio difusión sonora, quedan prorrogados automáticamente por el término para el cual fueron otorgados, siempre y cuando no exceda el lapso de diez (10) años.

(El texto subrayado y el Parágrafo fueron declarados INEXEQUIBLES por la Corte Constitucional mediante Sentencia C-949 de 2001.)

(NOTA: El art. 36, fue reglamentado por el Decreto Nacional 1696 de 2002.)

(Ver el Decreto Nacional 1480 de 1994)

ARTÍCULO 37.- Derogado por el art. 50, Ley 1369 de 2009. *Del Régimen de Concesiones y Licencias de los Servicios Postales.* Los servicios postales comprenden la prestación de los servicios de correo y del servicio de mensajería especializada.

Se entiende por servicio de correo la prestación de los servicios de giros postales y telegráficos, así como el recibo, clasificación y entrega de envíos de correspondencia y otros objetos postales, transportados vía superficie y aérea, dentro del territorio nacional. El servicio de correo internacional se prestará de acuerdo con los convenios y acuerdos internacionales suscritos con la Unión Postal Universal y los países miembros.

Se entiende por servicio de mensajería especializada, la clase de servicio postal prestado con independencia a las redes postales oficiales del correo nacional e internacional, que exige la aplicación y adopción de características especiales para la recepción, recolección y entrega personalizada de los objetos transportados, vía superficie y aérea, en el ámbito nacional y en conexión con el exterior.

El Gobierno Nacional reglamentará las calidades, condiciones y requisitos que deben reunir las personas naturales y jurídicas para la prestación de los servicios postales. Igualmente fijará los derechos, tasas, y tarifas, que regularán las concesiones y licencias para la prestación de los

servicios postales.

PARÁGRAFO 1.- La prestación de los servicios de correos se concederá mediante contrato, a través del procedimiento de selección objetiva de que trata la presente Ley. La prestación del servicio de mensajería especializada se concederá directamente mediante licencia.

PARÁGRAFO 2.- El término de duración de las concesiones para la prestación de los servicios postales, no podrá exceder de cinco (5) años, pero podrá ser prorrogado antes de su vencimiento por igual término.

(Ver la Sentencia de la Corte Constitucional mediante Sentencia C-407 de 1994, que declaró EXEQUIBLES los apartes demandados del artículo 37.)

(Ver el Decreto Nacional 1697 de 1994)

ARTÍCULO 38.- *Del Régimen Especial para las Entidades Estatales que Prestan el Servicio de Telecomunicaciones*. Las entidades estatales que tengan por objeto la prestación de servicios y actividades de telecomunicaciones, en los contratos que celebren para la adquisición y suministro de equipos, construcción, instalación y mantenimiento de redes y de los sitios donde se ubiquen, no estarán sujetos a los procedimientos de selección previstos en esta Ley.

Los estatutos internos de estas entidades determinarán las cláusulas excepcionales que podrán pactar en los contratos, de acuerdo con la naturaleza propia de cada uno de ellos, así como los procedimientos y las cuantías a los cuales deben sujetarse para su celebración.

Los procedimientos que en cumplimiento de lo previsto en este artículo adopten las mencionadas entidades estatales, deberán desarrollar los principios de selección objetiva, transparencia, economía y responsabilidad establecidos en esta Ley.

(NOTA: El artículo 73 de la Ley 1341 de 2009, previó que sin perjuicio del régimen de transición previsto en la citada Ley, quedan derogadas todas las disposiciones que le sean contrarias y, entre ellas lo pertinente de los artículos 33, 34, 35 y 38 de la Ley 80 de 1993, exclusivamente en cuanto haga referencia a los servicios, las redes, las actividades y los proveedores, y en cuanto resulte contraria a las normas y principios contenidos en la nueva legislación.)

(Ver el art. 31, Ley 142 de 1994, Ver el Concepto del Consejo de Estado 666 de 1995.)

ARTÍCULO 39.- *De la Forma del Contrato Estatal*. Los contratos que celebren las entidades estatales constarán por escrito y no requerirán ser elevados a escritura pública, con excepción de aquellos que impliquen mutación del dominio o imposición de gravámenes y servidumbres sobre bienes inmuebles, y en general aquellos que conforme a las normas legales vigentes deban cumplir con dicha formalidad.

Las entidades estatales establecerán las medidas que demande la preservación, inmutabilidad y seguridad de los originales de los contratos estatales.

(Ver los Conceptos del Consejo de Estado 596 de 1994 y 666 de 1995; Ver el Concepto de la Sec. General 1925 de 1999.)

PARÁGRAFO.- Derogado por el art. 32, Ley 1150 de 2007. No habrá lugar a la celebración de contrato con las formalidades plenas cuando se trate de contratos cuyos valores correspondan a los que a continuación se relacionan, determinados en función de los presupuestos anuales de las entidades a las que se aplica la presente Ley expresados en salarios mínimos legales mensuales.

Para las entidades que tengan un presupuesto anual igual o superior a 6.000.000 de salarios mínimos legales mensuales, cuando el valor del contrato sea igual o inferior a 2.500 salarios mínimos legales mensuales; las que tengan un presupuesto anual igual o superior a 4.000.000 de salarios mínimos legales mensuales e inferior a 6.000.000 de salarios mínimos legales mensuales, cuando el valor del contrato sea igual o inferior a 1.000 salarios mínimos legales mensuales; las que tengan un presupuesto anual igual o superior a 2.000.000 de salarios mínimos legales mensuales e inferior a 4.000.000 de salarios mínimos legales mensuales, cuando el valor del contrato sea igual o inferior a 300 salarios mínimos legales mensuales; las que tengan un presupuesto anual igual o superior a 1.000.000 de salarios mínimos legales mensuales e inferior a 2.000.000 de salarios mínimos legales mensuales cuando el valor del contrato sea igual o inferior a 50 salarios mínimos legales mensuales; las que tengan un presupuesto anual igual o superior a 500.000 inferior a 1.000.000 de salarios mínimos legales mensuales, cuando el valor del contrato sea igual o inferior a 40 salarios mínimos legales mensuales, las que tengan un presupuesto anual igual o superior a 250.000 e inferior a 500.000 salarios mínimos legales mensuales, cuando el valor del contrato sea igual o inferior a 30 salarios mínimos legales mensuales; las que tengan un presupuesto anual igual o superior a 120.000 e inferior a 250.000 salarios mínimos legales mensuales, cuando el valor del contrato sea igual o inferior a 20 salarios mínimos legales mensuales y las que tengan un presupuesto anual inferior a 120.000 salarios mínimos legales mensuales, cuando el valor del contrato sea igual o inferior a 15 salarios mínimos legales mensuales.

En esos casos, las obras, trabajos, bienes o servicios objeto del contrato, deben ser ordenados previamente y por escrito por el jefe o representante legal de la entidad, o por el funcionario en quien hubiese delegado la ordenación del gasto.

(Ver el Decreto Nacional 679 de 1994; Ver el Concepto del Consejo de Estado 596 de 1994; Ver el Concepto de la Sec. General 2125 de 1998.)

ARTÍCULO 40.- *Del Contenido del Contrato Estatal*. Las estipulaciones de los contratos serán las que de acuerdo con las normas civiles, comerciales y las previstas en esta Ley, correspondan a su esencia y naturaleza.

Las entidades podrán celebrar los contratos y acuerdos que permitan la autonomía de la voluntad y requieran el cumplimiento de los fines

estatales.

En los contratos que celebren las entidades estatales podrán incluirse las modalidades, condiciones y, en general, las cláusulas o estipulaciones que las partes consideren necesarias y convenientes, siempre que no sean contrarias a la Constitución, la ley, el orden público y a los principios y finalidades de esta Ley y a los de la buena administración.

En los contratos de empréstito o cualquier otra forma de financiación de organismos multilaterales, podrán incluirse las previsiones y particularidades contempladas en los reglamentos de tales entidades, que no sean contrarias a la Constitución o a la ley.

PARÁGRAFO.- En los contratos que celebren las entidades estatales se podrá pactar el pago anticipado y la entrega de anticipos, pero su monto no podrá exceder del cincuenta por ciento (50%) del valor del respectivo contrato.

Los contratos no podrán adicionarse en más del cincuenta por ciento (50%) de su valor inicial, expresado éste en salarios mínimos legales mensuales.

Adición y modificación de contratos estatales. Durante la vigencia de la Emergencia Sanitaria declarada por el Ministerio de Salud y Protección Social, con ocasión de la pandemia derivada del Coronavirus COVID-19, todos los contratos celebrados por las entidades estatales que se relacionen con bienes, obras o servicios que permitan una mejor gestión y mitigación de la situación de emergencia con ocasión de la pandemia derivada del Coronavirus COVID-19, podrán adicionarse sin limitación al valor. Para este propósito, la entidad estatal deberá justificar previamente la necesidad y la forma como dichos bienes y servicios contribuirán a gestionar o mitigar la situación de emergencia.

Igualmente, esta disposición se aplicará a los contratos que se celebren durante la vigencia de la Emergencia Sanitaria declarada por el Ministerio de Salud y Protección Social, con ocasión de la pandemia derivada del Coronavirus COVID-19, y durante el término que dicho estado esté vigente.

(Incisos, adicionados por el Art. 8 del Decreto 537 de 2020)

(Ver el Concepto del Consejo de Estado 1121 de 1998, así como el Fallo 10399 de 2000; Ver el Concepto de la Sec. General 2125 de 1998, Ver el Concepto del Consejo de Estado 1920 de 2008.)

ARTÍCULO 41.- *Del Perfeccionamiento del Contrato.* Los contratos del Estado se perfeccionan cuando se logre acuerdo sobre el objeto y la contraprestación y éste se eleve a escrito.

El art. 23 de la Ley 1150 de 2007, modificó el inciso segundo de éste artículo así: Para la ejecución se requerirá de la aprobación de la garantía y de la existencia de las disponibilidades presupuestales correspondientes, salvo que se trate de la contratación con recursos de vigencias fiscales futuras de conformidad con lo previsto en la ley orgánica del presupuesto. El proponente y el contratista deberán acreditar que se encuentran al día en el pago de aportes parafiscales relativos al Sistema de Seguridad Social Integral, así como los propios del Sena, ICBF y Cajas de Compensación Familiar, cuando corresponda.

Texto anterior:

Para la ejecución se requerirá de la aprobación de la garantía y de la existencia de las disponibilidades presupuestales correspondientes, salvo que se trate de la contratación con recursos de vigencias fiscales futuras de conformidad con lo previsto en la ley orgánica del presupuesto.

Los contratos estatales son "Intuito personae" y, en consecuencia, una vez celebrados no podrán cederse sin previa autorización escrita de la entidad contratante.

En caso de situaciones de urgencia manifiesta a que se refiere el artículo 42 de esta Ley que no permitan la suscripción de contrato escrito, se prescindirá de éste y aún del acuerdo acerca de la remuneración, no obstante deberá dejarse constancia escrita de la autorización impartida por la entidad estatal contratante.A falta de acuerdo previo sobre la remuneración de que trata el inciso anterior, la contraprestación económica se acordará con posterioridad al inicio de la ejecución de lo contratado. Si no se lograre el acuerdo, la contraprestación será determinada por el justiprecio objetivo de la entidad u organismo respectivo que tenga el carácter de cuerpo consultivo del Gobierno y, a falta de éste por un perito designado por las partes.

(Ver Artículo 26 Decreto Nacional 679 de 1994)

PARÁGRAFO 1.- Modificado por el art. 23, Ley 1150 de 2007 así: El requisito establecido en la parte final del inciso segundo de este artículo, deberá acreditarse para la realización de cada pago derivado del contrato estatal.

El servidor público que sin justa causa no verifique el pago de los aportes a que se refiere el presente artículo, incurrirá en causal de mala conducta, que será sancionada con arreglo al régimen disciplinario vigente.

Texto anterior:

PARÁGRAFO 1.- *Declarado Inexequible Sentencia C 772 de 1998 Corte Constitucional.* Para efectos de lo establecido en el presente artículo, la autoridad administrativa directamente realizará los ajustes o modificaciones presupuestales a que haya lugar de conformidad con lo previsto en la ley orgánica del presupuesto.

PARÁGRAFO 2.- *Operaciones de Crédito Público*. Sin perjuicio de lo previsto en leyes especiales, para efectos de la presente ley se consideran operaciones de crédito público las que tienen por objeto dotar a la entidad de recursos con plazo para su pago, entre las que se encuentran la contratación de empréstitos, la emisión, suscripción y colocación de bonos y títulos valores, los créditos de proveedores y el otorgamiento de garantías para obligaciones de pago a cargo de las entidades estatales.

Así mismo, las entidades estatales podrán celebrar las operaciones propias para el manejo de la deuda, tales como la refinanciación, reestructuración, renegociación, reordenamiento, conversión, sustitución, compra y venta de deuda pública, acuerdos de pago, cobertura de riesgos, las que tengan por objeto reducir el valor de la deuda o mejorar su perfil, así como las de capitalización con ventas de activos, titularización y aquellas operaciones de similar naturaleza que en el futuro se desarrollen. Para efectos del desarrollo de procesos de titularización de activos e inversiones se podrán constituir patrimonios autónomos con entidades sometidas a la vigilancia de la Superintendencia Bancaria, lo mismo que cuando estén destinados al pago de pasivos laborales.

Cuando las operaciones señaladas en el inciso anterior se refieran a operaciones de crédito público externo o asimiladas, se requerirá autorización previa del Ministerio de Hacienda y Crédito Público, que podrá otorgarse en forma general o individual, dependiendo de la cuantía y modalidad de la operación.

Para la gestión y celebración de toda operación de crédito externo y operaciones asimiladas a éstas de las entidades estatales y para las operaciones de crédito público interno y operaciones asimiladas a éstas por parte de la Nación y sus entidades descentralizadas, así como para el otorgamiento de la garantía de la Nación se requerirá la autorización del Ministerio de Hacienda y Crédito Público, previos los conceptos favorables del CONPES y del Departamento Nacional de Planeación.

El Gobierno Nacional, mediante decreto reglamentario que expedirá a más tardar el 31 de diciembre de 1993, con base en la cuantía y modalidad de las operaciones, su incidencia en el manejo ordenado de la economía y en los principios orgánicos de este Estatuto de Contratación, podrá determinar los casos en que no se requieran los conceptos mencionados, así como impartir autorizaciones de carácter general para dichas operaciones. En todo caso, las operaciones de crédito público externo de la Nación y las garantizadas por ésta, con plazo mayor de un año, requerirán concepto previo de la Comisión Interparlamentaria de Crédito Público.

Las operaciones de crédito público interno de las entidades territoriales y sus descentralizadas se regularán por las disposiciones contenidas en los Decretos 1222 y 1333 de 1986, que continúan vigentes, salvo lo previsto en forma expresa en esta Ley. En todo caso, con antelación al desembolso de los recursos provenientes de estas operaciones, éstas deberán registrarse en la Dirección General de Crédito Público del Ministerio de Hacienda y Crédito Público.

De conformidad con las condiciones generales que establezca la autoridad monetaria, la emisión, suscripción y colocación de títulos de deuda pública interna de las entidades territoriales y sus descentralizadas requerirán autorización previa del Ministerio de Hacienda y Crédito Público y concepto previo favorable de los organismos departamentales o distritales de planeación, según el caso.

Cada uno de los conceptos y autorizaciones requeridos deberá producirse dentro del término de dos meses, contados a partir de la fecha en que los organismos que deban expedirlos reciban la documentación requerida en forma completa. Transcurrido este término para cada organismo, se entenderá otorgado el concepto o autorización respectiva.

En ningún caso se otorgará la garantía de la Nación a las operaciones de crédito público interno de las entidades territoriales y sus entidades descentralizadas, ni a operaciones de particulares.

Las operaciones a que se refiere el presente artículo y las conexas con éstas se contratarán en forma directa. Su publicación, si a ello hubiere lugar, se cumplirá en el Diario Oficial cuando se trate de operaciones de la Nación y sus entidades descentralizadas. Para operaciones de la este requisito se entenderá cumplido en la fecha de la orden de publicación impartida por el Director General de Crédito Público del Ministerio de Hacienda y Crédito Público, en las entidades descentralizadas del orden nacional en la fecha del pago de los derechos correspondientes por parte de la entidad contratante. Salvo lo que determine el Consejo de Ministros, queda prohibida cualquier estipulación que obligue a la entidad estatal prestataria a adoptar medidas en materia de precios, tarifas y en general, el compromiso de asumir decisiones o actuaciones sobre asuntos de su exclusiva competencia, en virtud de su carácter público. Así mismo, en los contratos de garantía la Nación sólo podrá garantizar obligaciones de pago

Las operaciones a que se refiere este artículo y que se celebren para ser ejecutadas en el exterior se someterán a la jurisdicción que se pacte en los contratos.

PARÁGRAFO 3- . Derogado por el art. 225, Decreto Nacional 019 de 2012, a partir del 1 de Junio de 2012. Salvo lo previsto en el parágrafo anterior perfeccionado el contrato, se solicitará su publicación en el Diario Oficial o Gaceta Oficial correspondiente a la respectiva entidad territorial, o a falta de dicho medio, por algún mecanismo determinado en forma general por la autoridad administrativa territorial, que permita a los habitantes conocer su contenido. Cuando se utilice un medio de divulgación oficial, este requisito se entiende cumplido con el pago de los derechos correspondientes.

(NOTA: Artículo reglamentado por los Decretos Nacionales 327 y 941 de 2002)

(Ver el art. 59 de la Ley 190 de 1995; Ver el Decreto Nacional 2681 de 1993, 679 de 1994 y 1477 de 1995; Ver el Concepto del Consejo de Estado 1024 de 1997; Ver el Concepto de la Sec. General 1925 de 1999; 40 de 2002; 29 de 2010)

ARTÍCULO 42.- *De la Urgencia Manifiesta*. Existe urgencia manifiesta cuando la continuidad del servicio exige el suministro de bienes, o la prestación de servicios, o la ejecución de obras en el inmediato futuro, cuando se presenten situaciones relacionadas con los Estados de Excepción; cuando se trate de conjurar situaciones excepcionales relacionadas con hechos de calamidad o constitutivos de fuerza mayor o desastre que demanden actuaciones inmediatas y, en general cuando se trate de situaciones similares que imposibiliten acudir a los procedimientos de selección o concursos públicos.

La urgencia manifiesta se declara mediante acto administrativo motivado.

La expresión "Concurso" fue derogada por el art. 32 de la Ley 1150 de 2007.

PARÁGRAFO.- Con el fin de atender las necesidades y los gastos propios de la urgencia manifiesta, se podrán hacer los traslados presupuestales internos que se requieran dentro del presupuesto del organismo o entidad estatal correspondiente.

(Parágrafo declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C 772 de 1998, bajo el entendimiento de que los traslados presupuestales internos a que se refiere dicha norma, se efectúen afectando exclusivamente el anexo del decreto de liquidación del Presupuesto.)

ARTÍCULO 43.- *Del Control de la Contratación de Urgencia*. Inmediatamente después de celebrados los contratos originados en la urgencia manifiesta, éstos y el acto administrativo que la declaró, junto con el expediente contentivo de los antecedentes administrativos, de la actuación y de las pruebas de los hechos, se enviará al funcionario u organismo que ejerza el control fiscal en la respectiva entidad, el cual deberá pronunciarse dentro de los dos (2) meses siguientes sobre los hechos y circunstancias que determinaron tal declaración.

Si fuere procedente, dicho funcionario u organismo solicitará al jefe inmediato del servidor público que celebró los referidos contratos o a la autoridad competente, según el caso, la iniciación de la correspondiente investigación disciplinaria y dispondrá el envío del asunto a los funcionarios competentes para el conocimiento de las otras acciones. El uso indebido de la contratación de urgencia será causal de mala conducta.

Lo previsto en este artículo se entenderá sin perjuicio de otros mecanismos de control que señale el reglamento para garantizar la adecuada y correcta utilización de la contratación de urgencia.

IV. DE LA NULIDAD DE LOS CONTRATOS

ARTÍCULO 44.- *De las Causales de Nulidad Absoluta*. Los contratos del Estado son absolutamente nulos en los casos previstos en el derecho común y además cuando:

1o. Se celebren con personas incursas en causales de inhabilidad o incompatibilidad previstas en la Constitución y la ley;

2o. Se celebren contra expresa prohibición constitucional o legal.

3o. Se celebren con abuso o desviación de poder.

4o. Se declaren nulos los actos administrativos en que se fundamenten; y

5o. Se hubieren celebrado con desconocimiento de los criterios previstos en el artículo 21 sobre tratamiento de ofertas nacionales y extranjeras o con violación de la reciprocidad de que trata esta Ley.

ARTÍCULO 45.- *De la Nulidad Absoluta* La nulidad absoluta podrá ser alegada por las partes, por el agente del Ministerio Público, por cualquier persona o declarada de oficio, y no es susceptible de saneamiento por ratificación.

En los casos previstos en los numerales 1o. 2o. y 4o. del artículo anterior, el jefe o representante legal de la entidad respectiva deberá dar por terminado el contrato mediante acto administrativo debidamente motivado y ordenará su liquidación en el estado en que se encuentre.

(NOTA: La corte Constitucional en la Sentencia C-1048 de 2001, expresa: "*iii) Por fuera del tema de la separabilidad de los actos previos, la disposición en comento también modificó el artículo 45 de la Ley 80 de 1993, que había ampliado la titularidad de la acción de nulidad absoluta de los contratos estatales, al haber dispuesto que podía ser alegada "...por las partes, por el agente del Ministerio Público, por cualquier persona o declarada de oficio..." Ahora, según el inciso tercero no acusado de la disposición bajo examen, solamente "cualquier tercero que acredite un interés directo podrá pedir que se declare su nulidad absoluta".)*

ARTÍCULO 46.- *De la Nulidad Relativa*. Los demás vicios que se presenten en los contratos y que conforme al derecho común constituyen causales de nulidad relativa, pueden sanearse por ratificación expresa de los interesados o por el transcurso de dos (2) años contados a partir de la ocurrencia del hecho generador del vicio.

ARTÍCULO 47.- *De la Nulidad Parcial*. La nulidad de alguna o algunas cláusulas de un contrato, no invalidarán la totalidad del acto, salvo cuando éste no pudiese existir sin la parte viciada.

ARTÍCULO 48.- *De los Efectos de la Nulidad* La declaración de nulidad de un contrato de ejecución sucesiva no impedirá el reconocimiento y pago de las prestaciones ejecutadas hasta el momento de la declaratoria.

Habrá lugar al reconocimiento y pago de las prestaciones ejecutadas del contrato nulo por objeto o causa ilícita, cuando se probare que la entidad estatal se ha beneficiado y únicamente hasta el monto del beneficio que ésta hubiere obtenido. Se entenderá que la entidad estatal se ha beneficiado en cuanto las prestaciones cumplidas le hubieren servido para satisfacer un interés público.

ARTÍCULO 49.- *Del Saneamiento de los Vicios de Procedimiento o de Forma.* Ante la ocurrencia de vicios que no constituyan causales de nulidad y cuando las necesidades del servicio lo exijan o las reglas de la buena administración lo aconsejen, el Jefe o representante legal de la entidad, en acto motivado, podrá sanear el correspondiente vicio.

V. DE LA RESPONSABILIDAD CONTRACTUAL

ARTÍCULO 50.- *De la Responsabilidad de las Entidades Estatales.* Las entidades responderán por las actuaciones, abstenciones, hechos y omisiones antijurídicos que les sean imputables y que causen perjuicios a sus contratistas. En tales casos deberán indemnizar la disminución patrimonial que se ocasione, la prolongación de la misma y la ganancia, beneficio o provecho dejados de percibir por el contratista.

(El texto subrayado fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-333 de 1996, en el entendido de que ella debe ser interpretada en consonancia con el artículo 90 de la Constitución, puesto que esa norma constitucional se aplica también en relación con la responsabilidad contractual del Estado.)

ARTÍCULO 51.- *De la Responsabilidad de los Servidores Públicos.* El servidor público responderá disciplinaria, civil y penalmente por sus acciones y omisiones en la actuación contractual en los términos de la Constitución y de la ley.

ARTÍCULO 52.- *De la Responsabilidad de los Contratistas* Los contratistas responderán civil y penalmente por sus acciones y omisiones en la actuación contractual en los términos de la ley. Los consorcios y uniones temporales responderán por las acciones y omisiones de sus integrantes, en los términos del artículo 7o. de esta Ley.

ARTÍCULO 53.- *De la Responsabilidad de los Consultores, Interventores y Asesores* Modificado por el art. 82, Ley 1474 de 2011. (Modificado por el art. 2 de la Ley 1882 de 2018) Los consultores y asesores externos responderán civil, fiscal, penal y disciplinariamente tanto por el cumplimiento de las obligaciones derivadas del contrato de consultoría o asesoría, celebrado por ellos, como por los hechos u omisiones que les fueren imputables constitutivos de incumplimiento de las obligaciones correspondientes a tales contratos y que causen daño o perjuicio a las entidades, derivados de la celebración y ejecución de contratos respecto de los cuales hayan ejercido o ejerzan las actividades de consultoría o asesoría incluyendo la etapa de liquidación de los mismos.

Por su parte, los interventores, responderán civil, fiscal, penal y disciplinariamente, tanto por el cumplimiento de las obligaciones derivadas del contrato de interventoría, como por los hechos u omisiones que le sean imputables y causen daño o perjuicio a las entidades, derivados de la celebración y ejecución de los contratos respecto de los cuales hayan ejercido o ejerzan las funciones de interventoría, incluyendo la etapa de liquidación de los mismos siempre y cuando tales perjuicios provengan del incumplimiento o responsabilidad directa, por parte del interventor, de las obligaciones que a este le correspondan conforme con el contrato de interventoría.

*jurisprudencia*

ARTÍCULO 54.- *De la Acción de Repetición* Derogado por el art. 30, Ley 678 de 2001. En caso de condena a cargo de una entidad por hechos u omisiones imputables a título de dolo o culpa grave de un servidor público, la entidad el Ministerio Público, cualquier persona u oficiosamente el juez competente, iniciarán la respectiva acción de repetición, siempre y cuando aquél no hubiere sido llamado en garantía de conformidad con las normas vigentes sobre la materia.

ARTÍCULO 55.- *De la Prescripción de las Acciones de Responsabilidad Contractual* La acción civil derivada de las acciones y omisiones a que se refieren los artículos 50, 51, 52 y 53 de esta ley prescribirá en el término de veinte (20) años, contados a partir de la ocurrencia de los mismos. La acción disciplinaria prescribirá en diez (10) años. La acción penal prescribirá en veinte (20) años.

ARTÍCULO 56.- *De la Responsabilidad Penal de los Particulares que Intervienen en la Contratación Estatal.* Para efectos penales, el contratista, el interventor, el consultor y el asesor se consideran particulares que cumplen funciones públicas en todo lo concerniente a la celebración, ejecución y liquidación de los contratos que celebren con las entidades estatales y, por lo tanto, estarán sujetos a la responsabilidad que en esa materia señala la ley para los servidores públicos.

ARTÍCULO 57.- *De la Infracción de las Normas de Contratación.* El servidor público que realice alguna de las conductas tipificadas en los artículos 144, 145 y 146 del Código Penal, incurrirá en prisión de cuatro (4) a doce (12) años y en multa de veinte (20) a ciento cincuenta (150) salarios mínimos legales mensuales.

ARTÍCULO 58.- *De las Sanciones.* Como consecuencia de las acciones u omisiones que se les impute en relación con su actuación contractual, y sin perjuicio de las sanciones e inhabilidades señaladas en la Constitución Política, las personas a que se refiere este capítulo se harán acreedoras a:

1o.- En caso de declaratoria de responsabilidad civil, al pago de las indemnizaciones en la forma y cuantía que determine la autoridad judicial competente.

2o.- En caso de declaratoria de responsabilidad disciplinaria, a la destitución.

3o. En caso de declaratoria de responsabilidad civil o penal y sin perjuicio de las sanciones disciplinarias, los servidores públicos quedarán inhabilitados para ejercer cargos públicos y para proponer y celebrar contratos con las entidades estatales por diez (10) años contados a partir de la fecha de ejecutoria de la respectiva sentencia. A igual sanción estarán sometidos los particulares declarados responsables civil o penalmente.

(Ver el Concepto del Consejo de Estado 624 de 1994.)

4o.- En los casos en que se hubiere proferido medida de aseguramiento en firme, o elevado pliego de cargos, la autoridad competente podrá, con el propósito de salvaguardar la recta administración pública, suspender provisionalmente al servidor público imputado o sindicado hasta por el término de duración de la medida de aseguramiento o de la investigación disciplinaria.

(NOTA: La Corte Constitucional al resolver la demanda de inconstitucionalidad de los apartes demandados del numeral 4°, en la Sentencia C-04 de 1996, expresa: "La norma acusada, en cuanto faculta a la autoridad competente para suspender al servidor público contra el cual se hubiere elevado pliego de cargos, hasta por el término de duración de la investigación disciplinaria, se encuentra derogada por las normas de la Ley 200 de 1995, mediante la cual se adoptó el Código Único Disciplinario, que en los arts. 115 y 116 regularon todo lo relativo a la suspensión provisional del funcionario o empleado contra el cual se adelante una investigación disciplinaria que verse sobre faltas gravísimas o graves, y en el art. 177 "deroga las disposiciones generales o especiales que regulen materias disciplinarias a nivel nacional, departamental, distrital o municipal o que le sean contrarias, salvo los regímenes especiales de la fuerza pública de acuerdo con el art. 175 de este Código".)

5o.- En el evento en que se hubiere proferido medida de aseguramiento en firme a un particular, por acciones u omisiones que se le imputen en relación con su actuación contractual, se informará de tal circunstancia a la respectiva Cámara de Comercio que procederá de inmediato a inscribir dicha medida en el registro de proponentes.

El jefe o representante legal de la entidad estatal que incumpla esta obligación, incurrirá en causal de mala conducta.

6o.- En el evento en que se hubiere proferido medida de aseguramiento en firme al representante legal de una persona jurídica de derecho privado, como consecuencia de hechos u omisiones que se le imputen en relación con su actuación contractual, aquella quedará inhabilitada para proponer y celebrar contratos con las entidades estatales por todo el término de duración de la medida de aseguramiento. Si se profiere Sentencia condenatoria contra dicho representante legal, la persona jurídica quedará inhabilitada para proponer y celebrar contratos con las entidades estatales por diez (10) años contados a partir de la fecha de ejecutoria de dicha sentencia. A igual sanción estará sometida la persona jurídica declarada civilmente responsable por razón de hechos u omisiones que se le imputen en relación con su actuación contractual.

(Ver la Sentencia de la Corte Constitucional C- 178 de 1996.)

ARTÍCULO 59.- *Del Contenido de los Actos Sancionatorios.* La determinación de la responsabilidad de que tratan los artículos anteriores la harán las autoridades competentes en providencia motivada en la que se precisarán los hechos que la generan, los motivos y circunstancias para la cuantificación de las indemnizaciones a que haya lugar y los elementos utilizados para la dosimetría sancionatoria. Así mismo, en ella se señalarán los medios de impugnación y defensa que procedan contra tales actos, el término que se disponga para ello y la autoridad ante quien deba intentarse.

## VI DE LA LIQUIDACIÓN DE LOS CONTRATOS

ARTÍCULO 60.- *De Su Ocurrencia y Contenido.* Modificado por el art. 217, Decreto Nacional 019 de 2012. Los contratos de tracto sucesivo, aquellos cuya ejecución o cumplimiento se prolongue en el tiempo y los demás que lo requieran, serán objeto de liquidación.

También en esta etapa las partes acordarán los ajustes, revisiones y reconocimientos a que haya lugar.

En el acta de liquidación constarán los acuerdos, conciliaciones y transacciones a que llegaren las partes para poner fin a las divergencias presentadas y poder declararse a paz y salvo.

Para la liquidación se exigirá al contratista la extensión o ampliación, si es del caso, de la garantía del contrato a la estabilidad de la obra, a la calidad del bien o servicio suministrado, a la provisión de repuestos y accesorios, al pago de salarios, prestaciones e indemnizaciones, a la responsabilidad civil y, en general, para avalar las obligaciones que deba cumplir con posterioridad a la extinción del contrato.

La liquidación a que se refiere el presente artículo no será obligatoria en los contratos de prestación de servicios profesionales y de apoyo a la gestión."

*(Ver sentencia C-967 de 2012 de la Corte Constitucional)*

*jurisprudencia**

ARTÍCULO 61.- *De la Liquidación Unilateral.* Derogado por el art. 32, Ley 1150 de 2007. Si el contratista no se presenta a la liquidación o las partes no llegan a acuerdos sobre el contenido de la misma, será practicada directa y unilateralmente por la entidad y se adoptará por acto administrativo motivado susceptible del recurso de reposición

## VII DEL CONTROL DE LA GESTIÓN CONTRACTUAL

ARTÍCULO 62.- *De la Intervención del Ministerio Publico.* La Procuraduría General de la Nación y los demás agentes del Ministerio Público, de oficio o a petición de cualquier persona, adelantarán las investigaciones sobre la observancia de los principios y fines de la contratación estatal y promoverán las acciones pertinentes tendientes a obtener las sanciones pecuniarias y disciplinarias para quienes quebranten tal normatividad.

ARTÍCULO 63.- *De las Visitas e Informes.* La Procuraduría adelantará visitas a las entidades estatales oficiosamente y con la periodicidad que demande la protección de los recursos públicos y el imperio de la moralidad, legalidad y honestidad en la administración pública.

Durante las visitas, cuya realización se divulgará ampliamente, se oirá a las asociaciones gremiales y comunitarias del lugar y se dará oportunidad a los administrados para que hagan las denuncias y presenten las quejas que a bien consideren.

Las conclusiones de las visitas se dejarán en informes escritos que se pondrán en conocimiento de la comunidad respectiva y de ellos se correrá traslado a los jefes de las entidades y a quienes aparezcan implicados en la comisión de conductas antijurídicas.

Copias de tales informes se enviarán a la Fiscalía General de la Nación o a la delegada respectiva para que éstas, si es del caso den cumplimiento a la función de que trata el artículo siguiente.

El visitador exigirá a los administrados identificarse y les advertirá de las consecuencias de la formulación de denuncias temerarias.

ARTÍCULO 64.- *De la Participación de la Fiscalía General de la Nación.* La Fiscalía General de la Nación, de oficio o por denuncia, investigará las conductas constitutivas de hechos punibles en la actividad contractual y acusará a los presuntos infractores ante los jueces competentes.

La Fiscalía General de la Nación creará unidades especializadas para la investigación y acusación de los hechos punibles que se cometan con ocasión de las actividades contractuales de que trata esta Ley.

ARTÍCULO 65.- *De la Intervención de las Autoridades que ejercen Control Fiscal.* La intervención de las autoridades de control fiscal se ejercerá una vez agotados los trámites administrativos de legalización de los contratos. Igualmente, se ejercerá control posterior a las cuentas correspondientes a los pagos originados en los mismos, para verificar que estos se ajustaron a las disposiciones legales.

Una vez liquidados a terminados los contratos, según el caso, la vigilancia fiscal incluirá un control financiero, de gestión y de resultados fundados en la eficiencia, la economía, la equidad y la valoración de los costos ambientales.

El control previo administrativo de los contratos le corresponde a las oficinas de control interno.

Las autoridades de control fiscal pueden exigir informes sobre su gestión contractual a los servidores públicos de cualquier orden.

Lo anterior, sin perjuicio del control preventivo y concomitante ejercido por parte de la Contraloría General de la República. El cual se realizará en tiempo real - a través del seguimiento permanente de los ciclos, uso, ejecución, contratación e. impacto de los- recursos públicos, mediante el uso de tecnologías de la información, con la participación activa del control social y con la articulación del control interno.

(Modificado por la ley 2160 de 2021, Art. 4)

*jurisprudencia*

ARTÍCULO 66.- *De la Participación Comunitaria.* Todo contrato que celebren las entidades estatales, estará sujeto a la vigilancia y control ciudadano.

Las asociaciones cívicas comunitarias de profesionales, benéficas o de utilidad común, podrán denunciar ante las autoridades competentes las actuaciones, hechos u omisiones de los servidores públicos o de los particulares, que constituyan delitos, contravenciones, o faltas en materia de contratación estatal.

Las autoridades brindarán especial apoyo y colaboración a las personas y asociaciones que emprendan campañas de control y vigilancia de la gestión pública contractual y oportunamente suministrarán la documentación o información que requieran para el cumplimiento de tales tareas.

El Gobierno Nacional y los de las Entidades territoriales establecerán sistemas y mecanismos de estímulo de la vigilancia y control comunitario en la actividad contractual orientados a recompensar dichas labores.

Las entidades estatales podrán contratar con las asociaciones de profesionales y gremiales y con las universidades y centros especializados de investigación, el estudio y análisis de las gestiones contractuales realizadas.

ARTÍCULO 67.-*De la Colaboración de los Cuerpos Consultivos del Gobierno.* Los organismos o entidades gremiales, profesionales o universitarios que tengan el carácter de cuerpos consultivos del Gobierno prestarán la colaboración que en la actividad contractual requieran las entidades estatales.

Así mismo podrán servir de árbitros para dirimir las discrepancias de naturaleza técnica que surjan en desarrollo del contrato o con ocasión de éste.

VIII. DE LA SOLUCIÓN DE LAS CONTROVERSIAS CONTRACTUALES

ARTÍCULO 68.- *De la Utilización de Mecanismos de Solución Directa de las Controversias Contractuales. (derogado el inciso 1° y 2°) El artículo 226 del estatuto de los mecanismos alternativos de solución de conflictos - Decreto extraordinario 1818 de 1998 fue derogado por el artículo 118 de la Ley 1563 de 2012.*

Parágrafo.- Los actos administrativos contractuales podrán ser revocados en cualquier tiempo, siempre que sobre ellos no haya recaído sentencia ejecutoriada.

ARTÍCULO 69.- *De La Improcedencia De Prohibir La Utilización De Los Mecanismos De Solución Directa. El artículo 227 del estatuto de los mecanismos alternativos de solución de conflictos - Decreto extraordinario 1818 de 1998 fue derogado por el artículo 118 de la Ley 1563 de 2012.*

ARTÍCULO 70.- *De la Cláusula Compromisoria.* Derogado por el art. 118, Ley 1563 de 2012. En los contratos estatales podrá incluirse la cláusula compromisoria a fin de someter a la decisión de árbitros las distintas diferencias que puedan surgir por razón de la celebración del contrato y de su ejecución, desarrollo, determinación o liquidación.

El arbitramento será en derecho. Los árbitros serán tres (3), a menos que las partes decidan acudir a un árbitro único. En las controversias de menor cuantía habrá un solo árbitro.

La designación, requerimiento, constitución y funcionamiento del tribunal de arbitramento se regirá por las normas vigentes sobre la materia.

Los árbitros podrán ampliar el término de duración del Tribunal por la mitad del inicialmente acordado o legalmente establecido, si ello fuere necesario para la producción del laudo respectivo.

El inciso 4° del art. 70, fue modificado por el art. 4 de la Ley 315 de 1996, así: En los contratos con personas extranjeras, como también en aquellos con persona Nacional, y en los que se prevea financiamiento a largo plazo y sistemas de pago del mismo mediante la explotación del objeto construido u operación de bienes para la celebración de un servicio público, podrá pactarse que las diferencias surgidas del contrato, sean sometidas a la decisión de un Tribunal Arbitral Internacional.

(El texto subrayado fue declarado INEXEQUIBLE por la Corte Constitucional mediante Sentencia C-347 de 1997.)

Texto anterior:

En los contratos con personas extranjeras y en los que incluyan financiamiento a largo plazo, sistemas de pago mediante la explotación del objeto construido u operación de bienes para la prestación de un servicio público, podrá pactarse que las diferencias surgidas del contrato sean sometidas a la decisión de un tribunal de arbitramento designado por un organismo internacional.

(NOTA: El art. 70, fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-1436 de 2000, bajo el entendido que los árbitros nombrados para resolver los conflictos suscitados como consecuencia de la celebración, el desarrollo, la terminación y la liquidación de contratos celebrados entre el Estado y los particulares, no tienen competencia para pronunciarse sobre los actos administrativos dictados por la administración en desarrollo de sus poderes excepcionales.)

ARTÍCULO 71.- *Del Compromiso.* Derogado por el art. 118, Ley 1563 de 2012. Cuando en el contrato no se hubiere pactado cláusula compromisoria, cualquiera de las partes podrá solicitar a la otra la suscripción de un compromiso para la convocatoria de un Tribunal de arbitramento a fin de resolver las diferencias presentadas por razón de la celebración del contrato y su ejecución, desarrollo, terminación o liquidación.

En el documento de compromiso que se suscriba se señalarán la materia objeto del arbitramento, la designación de árbitros, el lugar de funcionamiento del tribunal y la forma de proveer los costos del mismo.

(NOTA: El art. 71, fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia 1436 de 2000, bajo el entendido que los árbitros nombrados para resolver los conflictos suscitados como consecuencia de la celebración, el desarrollo, la terminación y la liquidación de contratos celebrados entre el Estado y los particulares, no tienen competencia para pronunciarse sobre los actos administrativos dictados por la administración en desarrollo de sus poderes excepcionales.)

ARTÍCULO 72.- Modificado por el art. 22, Ley 1150 de 2007, así: *Del recurso de anulación contra el laudo arbitral.* Derogado por el art. 118, Ley 1563 de 2012. Contra el laudo arbitral procede el recurso de anulación. Este deberá interponerse por escrito presentado ante el Tribunal de Arbitramento dentro de los cinco (5) días siguientes a la notificación del laudo o de la providencia que lo corrija, aclare o complemente.

El recurso se surtirá ante la Sección Tercera de la Sala de lo Contencioso Administrativo del Consejo de Estado.

Son causales de anulación del laudo las previstas en el artículo 38 del Decreto 2279 de 1989 o las normas que lo modifiquen, deroguen o sustituyan.

Texto anterior:

Del Recurso de Anulación Contra el Laudo Arbitral. Contra el laudo arbitral procede el recurso de anulación. Este deberá interponerse por escrito presentado ante el Tribunal de Arbitramento dentro de los cinco (5) días siguientes a la notificación del laudo o de la providencia que lo corrija, aclare o complemente.

El recurso se surtirá ante la Sección Tercera de la Sala de lo Contencioso Administrativo del Consejo de Estado.

Son causales de anulación del laudo las siguientes:

1o.- Cuando sin fundamento legal no se decretaren pruebas oportunamente solicitadas, o se hayan dejado de practicar las diligencias necesarias para evacuarlas, siempre que tales comisiones tengan incidencia en la decisión y el interesado las hubiere reclamado en la forma y tiempo debidos.

2o.- Haberse fallado en conciencia debiendo ser en derecho, siempre que esta circunstancia aparezca manifiesta en el laudo.

3o.- Contener la parte resolutiva del laudo errores aritméticos o disposiciones contradictorias, siempre que se hayan alegado oportunamente ante el Tribunal de Arbitramento.

4o.- Haber recaído el laudo sobre puntos no sujetos a la decisión de los árbitros o haberse concedido más de lo pedido.

5o.- No haberse decidido sobre cuestiones sujetas al arbitramento

El trámite y efectos del recurso se regirán por las disposiciones vigentes sobre la materia.

ARTÍCULO 73.- *De la Colaboración de las Asociaciones de Profesionales y de las Cámaras de Comercio.* Podrá pactarse acudir a los centros de conciliación y arbitramento institucional de las asociaciones profesionales, gremiales y de las cámaras de comercio para que diriman las controversias surgidas del contrato.

ARTÍCULO 74.- *Del Arbitramento o Pericia Técnicos. El artículo 231 del estatuto de los mecanismos alternativos de solución de conflictos - Decreto extraordinario 1818 de 1998 fue derogado por el artículo 118 de la Ley 1563 de 2012.*

ARTÍCULO 75.- *Del Juez Competente.* Sin perjuicio de lo dispuesto en los artículos anteriores, el juez competente para conocer de las controversias derivadas de los contratos estatales y de los procesos de ejecución o cumplimiento será el de la jurisdicción contencioso administrativo.

PARÁGRAFO 1.- Una vez practicadas las pruebas dentro del proceso, el juez citará a demandantes y demandados para que concurran personalmente o por medio de apoderado a audiencia de conciliación. Dicha audiencia se sujetará a las reglas previstas en el artículo 101 del Código de Procedimiento Civil y se procurará que se adelante por intermedio de personas diferentes de aquellas que intervinieron en la producción de los actos o en las situaciones que provocaron las discrepancias.

PARÁGRAFO 2.- En caso de condena en procesos originados en controversias contractuales, el juez, si encuentra la existencia de temeridad en la posición no conciliatoria de alguna de las partes, condenará a la misma o a los servidores públicos que intervinieron en la correspondientes conversaciones, a cancelar multas a favor del Tesoro Nacional de cinco (5) a doscientos (200) salarios mínimos legales mensuales.

PARÁGRAFO 3.- En los procesos derivados de controversias de naturaleza contractual se condenará a costas a cualquiera de las partes, siempre que se encuentre que se presentó la conducta del parágrafo anterior.

IX. DE LAS DISPOSICIONES VARIAS

ARTÍCULO 76.- *De los Contratos de Exploración y Explotación de los Recursos Naturales.* Los contratos de exploración y explotación de recursos naturales renovables y no renovables, así como los concernientes a la comercialización y demás actividades comerciales e industriales propias de las entidades estatales a las que correspondan las competencias para estos asuntos, continuarán rigiéndose por la legislación especial que les sea aplicable. Las entidades estatales dedicadas a dichas actividades determinarán en sus reglamentos internos el procedimiento de selección de los contratistas, las cláusulas excepcionales que podrán pactarse, las cuantías y los trámites a que deben sujetarse.

Los procedimientos que adopten las mencionadas entidades estatales, desarrollarán el deber de selección objetiva y los principios de transparencia, economía y responsabilidad establecidos en esta Ley.

En ningún caso habrá lugar a aprobaciones o revisiones administrativas por parte del Consejo de Ministros, el Consejo de Estado ni de los Tribunales Administrativos.

ARTÍCULO 77.- *De la Normatividad aplicable en las actuaciones administrativas.* En cuanto sean compatibles con la finalidad y los principios de

esta ley, las normas que rigen los procedimientos y actuaciones en la Función administrativa, serán aplicables en las actuaciones contractuales. A falta de éstas, regirán las disposiciones del Código de Procedimiento Civil.

Los actos administrativos que se produzcan con motivo u ocasión de la actividad contractual sólo serán susceptibles de recurso de reposición y del ejercicio de la acción contractual, de acuerdo con las reglas del Código Contencioso Administrativo.

PARÁGRAFO 1.- El acto de adjudicación no tendrá recursos por la vía gubernativa. Este podrá impugnarse mediante el ejercicio de la acción de nulidad y restablecimiento del derecho, según las reglas del Código Contencioso Administrativo.

PARÁGRAFO 2.- Para el ejercicio de las acciones contra los actos administrativos de la actividad contractual no es necesario demandar el contrato que los origina.

ARTÍCULO 78.- *De los Contratos Procedimientos y Procesos en curso.* Los contratos, los procedimientos de selección y los procesos judiciales en curso a la fecha en que entre a regir la presente ley, continuarán sujetos a las normas vigentes en el momento de su celebración o iniciación.

ARTÍCULO 79.- *De la Reglamentación del Registro de Proponentes.* El funcionamiento del registro de proponentes en las cámaras de comercio, será reglamentado por el Gobierno Nacional dentro de los seis (6) meses siguientes a la promulgación de la presente Ley.

ARTÍCULO 80.- *De la Adecuación de Estatutos.* Dentro de los seis (6) meses siguientes a la fecha de promulgación de la presente ley, las autoridades competentes adoptarán las medidas necesarias para adecuar los estatutos de las entidades estatales a lo dispuesto en esta Ley.

ARTÍCULO 81.- *De la Derogatoria y de la Vigencia.* A partir de la vigencia de la presente ley, quedan derogados el Decreto ley 2248 de 1972; la Ley 19 de 1982; el Decreto ley 222 de 1983, excepción hecha de los artículos 108, 109, 110, 111, 112 y 113; el Decreto ley 591 de 1991, excepción hecha de los artículos 2o., 8o., 9o., 17 y 19; el Decreto ley 1684 de 1991; las normas sobre contratación del Decreto 700 de 1992, y los artículos 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263 y 264 del Código Contencioso Administrativo; así como las demás normas que le sean contrarias.

A partir de la promulgación de la presente ley, entrarán a regir el parágrafo del artículo 2o.; el literal l) del numeral 1o. y el numeral 9o. del artículo 24; las normas de este estatuto relacionadas con el contrato de concesión; el numeral 8o. del artículo 25; el numeral 5o., del artículo 32 sobre fiducia pública y encargo fiduciario; y los artículos 33, 34, 35, 36, 37 y 38, sobre servicios y actividades de telecomunicaciones.

Las demás disposiciones de la presente ley, entrarán a regir a partir del 1o. de enero de 1994 con excepción de las normas sobre registro, clasificación y calificación de proponentes, cuya vigencia se iniciará un año después de la promulgación de esta ley.

PARÁGRAFO 1.- *TRANSITORIO.* La presente Ley entrará a regir en relación con la Sociedad de Acueducto, Alcantarillado y Aseo de Barranquilla S.A., y para todo lo que tenga que ver con la prestación del servicio de agua, alcantarillado y aseo, tres (3) años después de su promulgación.

PARÁGRAFO 2.-*TRANSITORIO.* A partir de la promulgación de la presente Ley, el Gobierno adelantará con la colaboración de la Escuela Superior de Administración Pública (ESAP) y de las demás Entidades Estatales, así como de los organismos o entidades gremiales y profesionales, actividades pedagógicas y de divulgación del presente estatuto. Texto subrayado declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-374 de 1994.

REPÚBLICA DE COLOMBIA - GOBIERNO NACIONAL

PUBLÍQUESE Y EJECÚTESE

Dada en Santa Fe de Bogotá, D.C., 28 de Octubre de 1993

EL PRESIDENTE DE LA REPÚBLICA,

CÉSAR GAVIRIA TRUJILLO.

EL MINISTRO DE GOBIERNO,

FABIO VILLEGAS RAMÍREZ.

EL VICEMINISTRO DE HACIENDA Y CRÉDITO PÚBLICO, ENCARGADO DE LAS FUNCIONES DEL DESPACHO DEL MINISTRO DE HACIENDA Y CRÉDITO PÚBLICO,

HÉCTOR JOSÉ CADENA CLAVIJO.

EL MINISTRO DE MINAS Y ENERGÍA,

GUIDO NULE AMIN.

EL MINISTRO DE COMUNICACIONES,

WILLIAM JARAMILLO GÓMEZ.

EL MINISTRO DE OBRAS PÚBLICAS Y TRANSPORTE,

JORGE BENDECK OLIVELLA.

NOTA No. 1 El Decreto 222 de 1983, por el cual se expiden normas sobre contratos de la Nación y sus entidades descentralizadas lo derogó la Ley 80 de 1993, con excepción hecha de los artículos 108 a 113, que dicen:

CAPÍTULO III

OCUPACIÓN Y ADQUISICIÓN DE INMUEBLES E IMPOSICIÓN DE SERVIDUMBRE

"ARTÍCULO 108.- *De la Utilidad Pública en la Ocupación Transitoria Adquisición E Imposición de Servidumbres sobre Inmuebles de Propiedad Particular.* De conformidad con las leyes vigentes, considérense de utilidad pública para todos los efectos legales la adquisición y la imposición de servidumbres sobre bienes inmuebles de propiedad particular, cuando tal adquisición o imposición de servidumbre sea necesaria para la ejecución de los contratos definidos en el artículo 81 de este estatuto.

ARTÍCULO 109.- *De la ocupación temporal y la indemnización.* En ejercicio de la función social de la propiedad, los propietarios, poseedores y tenedores de predios están obligados a permitir la ocupación temporal de los mismos cuando ella fuere necesaria para los objetos del contrato previsto en el artículo anterior.

La ocupación temporal de un bien inmueble, deberá limitarse al espacio y tiempo estrictamente indispensable, causando el menor daño posible.

La entidad interesada en la obra pública respectiva comunicará por escrito al propietario, poseedor o tenedor del bien, la necesidad de ocuparlo temporalmente indicando la extensión que será ocupada y el tiempo que durará, invitándolo a convenir el precio respectivo.

El valor de esta ocupación se convendrá teniendo en cuenta los precios que fijen peritos de la Caja de Crédito Agrario, Industrial y Minero, o en su defecto los avalúos del Instituto Geográfico Agustín Codazzi, practicados para tal fin.

Si no obtuviere el consentimiento para la ocupación temporal o no hubiere acuerdo sobre el valor que por la misma deba pagarse, transcurrido un (1) mes a partir de la comunicación enviada por la entidad interesada, se llevará a cabo la ocupación para cuyo efecto aquella podrá solicitar el apoyo de la autoridad competente.

En todo caso, si hubiere lugar a alguna indemnización, ésta estará señalada siguiendo los trámites previstos en el Código Contencioso Administrativo.

ARTÍCULO 110.- *De la negación directa o la expropiación.* Cuando fuere necesario, en los términos de este capítulo, las entidades públicas podrán adquirir total o parcialmente los correspondientes inmuebles para negociación directa con los propietarios o previo el trámite del proceso de expropiación regulada por los artículos 451 y siguientes del Código de procedimiento Civil.

En el evento contemplado en el artículo 457 del Código de Procedimiento Civil y previa la consignación de la suma de que allí se habla, el Juez decretará la entrega material del inmueble a más tardar dentro de los tres (3) días siguientes a la presentación de la respectiva solicitud. La diligencia deberá practicarse dentro de los diez (10) días siguientes por el mismo juez que la hubiere decretado, quien por lo tanto no podrá comisionar para ello.

ARTÍCULO 111.- *De la imposición de servidumbres.* Los predios de propiedad particular deberán soportar todas las servidumbres legales que sean necesarias para la construcción, montaje, instalación, mejoras, adiciones, conservación mantenimiento y restauración de obras públicas.

La imposición de una servidumbre con los fines mencionados en el inciso anterior se decidirá por el juez competente, según la cuantía, previo el siguiente procedimiento:

1.- Con la demanda la entidad interesada pondrá a disposición del juzgado la suma correspondiente al estimativo de la indemnización que en su concepto deba pagarse al propietario del bien.

2.- Admitida la demanda se correrá traslado de ella al demando por el término de tres días.

3.- Si dos días después de preferido el auto que ordena el traslado de la demanda ésta no hubiere podido ser notificada a los demandados, se procederá a emplazarlos en la forma indicada en el inciso 2o. del artículo 4452 del Código de Procedimiento Civil.

4.- En materia de excepciones se dará aplicación a lo establecido por el artículo 453 del Código de Procedimiento Civil.

5. En todo caso el juez, dentro de los dos días siguientes a la presentación de la demanda practicará una inspección judicial sobre el predio que haya de ser afectado por la servidumbre y autorizará la imposición provisional de la misma, si así lo solicitare por el juez.

6.- El valor de la indemnización será señalado por peritos nombrados por el juez.

7.- En la sentencia el juez señalará con toda claridad la clase de servidumbre de que se trata, teniendo en cuenta la clasificación que de ellas se hace en las disposiciones legales vigentes.

En lo no previsto en este artículo, se aplicarán las normas previstas en el título 24 del libro 3o., del Código de Procedimiento Civil.

ARTÍCULO 112.- *De la desafectación de inmuebles.* Previa desafectación, mediante acto administrativo, la Nación y demás entidades del orden nacional podrán destinar a otros objetivos del servicio público aquellos inmuebles de su propiedad que ya no requieran para el servicio a que originalmente se encontraban afectos.

ARTÍCULO 113.- *De la vigencia de la Ley 56 de 1981.* Lo dispuesto en los artículos anteriores relativos a la ocupación, adquisición e imposición de servidumbres sobre inmuebles de propiedad particular, no modifica lo dispuesto en la Ley 56 de 1981 para las obras públicas a que ello se refiere."

*Fecha y hora de creación: 2025-03-10 21:31:55*

# English Translation
# of Exhibit 13



# Law 80 of 1993

The published data is for informational purposes only. The Administrative Department of the Civil Service is not responsible for the validity of this standard. We are in a permanent process of updating the contents.

LAW 80 OF 1993

(October 28)

By which the General Statute of Public Administration Contracting is issued

THE CONGRESS OF COLOMBIA

(See the explanatory statement, Law 80 of 1993)     , See Rapporteur Document 160 of 2003          , See Rapporteur Document 173 of 2004, See the National Decree 4828 of 2008, See National Decree 2430 of 2011, See National Decree 2430 of 2011)

DECREES:

I. GENERAL PROVISIONS

ARTICLE 1.- Purpose. The purpose of this Law is to establish the rules and principles that govern contracts of state entities.

(See the concept of the Council of State 2003A (from 2011)

ARTICLE 2.- Definition of Entities, Public Servants and Services. For the sole purposes of this Law:

1st. The following are called state entities:

a) The Nation, the regions, the departments, the provinces, the Capital District and the special districts, the metropolitan areas, the associations of municipalities, the indigenous territories and the municipalities; the public establishments, the industrial and commercial companies of the State, the mixed economy companies in which the State has a participation greater than fifty percent (50%), as well as the indirect decentralized entities and the other legal persons in which there is such majority public participation, whatever the name they adopt, in all orders and levels.

(See the Concepts of General Section 140 and 390 (from 1998.)

b) The Senate of the Republic, the House of Representatives, the Higher Council of the Judiciary, the Office of the Attorney General of the Nation, the Office of the Comptroller General of the Republic, the departmental, district and municipal comptrollers, the Office of the Attorney General of the Nation, the National Registry of Civil Status, the ministries, the administrative departments, the superintendencies, the special administrative units and, in general, the State agencies or dependencies to which the law grants the capacity to enter into contracts.

(Literal b) declared CONSTITUTIONAL by the Constitutional Court through Sentence C-374 (from 1994.)

(See the concept of the Council of State 2003A (from 2011)

2nd. The following are called public servants:

a) Natural persons who provide their dependent services to the organizations and entities referred to in this article, with the exception of mixed participation associations and foundations in which said name shall apply exclusively to their legal representatives and to the officials at the management, advisory or executive levels or their equivalents to whom the execution of contracts on their behalf is delegated.

(Underlined text declared CONSTITUTIONAL by the Constitutional Court through Sentence C-230 (from 1995.)

(Declared constitutional by Judgment C-949-01.)

Machine Translated by Google

Administrative Department of the Civil Service

b) Members of public corporations who have the capacity to enter into contracts on their behalf.

(Literal b) declared CONSTITUTIONAL by the Constitutional Court through Sentence C-374 (from 1994).

(declared constitutional by Judgment C-949-01.)

3rd. The following are called public services:

Those that are intended to satisfy collective needs in a general, permanent and continuous manner, under the direction, regulation and control of the State, as well as those through which the State seeks to preserve order and ensure the fulfillment of its purposes.

PARAGRAPH.- Repealed by art. 32, Law 1150 of 2007. For the sole purposes of this Law, cooperatives and associations formed by territorial entities are also called state entities, which will be subject to the provisions of this statute, especially when, in the development of inter-administrative agreements, they enter into contracts on behalf of said entities.

(See the Ruling of the Council of State 2859 (from 1994)

ARTICLE 3.- Purposes of State Contracting. Public servants shall take into consideration that when entering into contracts and with their execution, entities seek to fulfill state purposes, the continuous and efficient provision of public services and the effectiveness of the rights and interests of the administered entities that collaborate with them in the achievement of said purposes.

Private individuals, for their part, will take into account when entering into and executing contracts with state entities that, in addition to obtaining profits whose protection is guaranteed by the State, they collaborate with them in achieving their objectives and fulfill a social function that, as such, entails obligations.

(The underlined text was repealed by art. 32 of Law 1150 of 2007.)

ARTICLE 4.- Rights and Duties of State Entities. In order to achieve the purposes set forth in the previous article, state entities:

1st. They shall require from the contractor the suitable and timely execution of the contracted object. They may make the same demand from the guarantor.

2nd. They will take the necessary steps to recognize and collect any applicable financial penalties and guarantees.

3rd. They will request price updates or revisions when events occur that alter the economic or financial balance of the contract against them.

4th. They will conduct periodic reviews of the works executed, services provided or goods supplied, to verify that they comply with the quality conditions offered by the contractors, and will promote liability actions against them and their guarantors when said conditions are not met.

The periodic reviews referred to in this section must be carried out at least once every six (6) months during the term of validity of the guarantees.

5th. They will require that the quality of the goods and services acquired by state entities conform to the minimum requirements provided for in the mandatory technical standards, without prejudice to the power to require that such goods or services comply with Colombian technical standards or, failing that, with international standards developed by globally recognized organizations or with foreign standards accepted in international agreements signed by Colombia.

6th. They will take action to obtain compensation for damages suffered in the development or on the occasion of the contract entered into.

7th. Without prejudice to the call for guarantee, they will recover against the public servants, against the contractor or the responsible third parties, as the case may be, for the compensation they must pay as a consequence of the contractual activity.

8th. They will adopt the necessary measures to maintain, during the development and execution of the contract, the technical, economic and financial conditions existing at the time of proposing in cases where a tender or competition has been held, or of contracting in cases of direct contracting. To do so, they will use price adjustment and review mechanisms, resort to the procedures for reviewing and correcting such mechanisms if the assumptions or hypotheses for execution fail, and agree on default interest.

Without prejudice to the updating or revision of prices, if default interest has not been agreed, the rate equivalent to double the legal civil interest on the updated historical value will be applied.

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

(NOTE: Number 8 was regulated by National Decree 679 (from 1994).

9th. They will act in such a way that, due to causes attributable to them, no greater burden arises in the fulfillment of the obligations of the contractor. To this end, they will correct any imbalances that may arise in the shortest possible time and agree on the mechanisms

Machine Translated by Google

and relevant procedures to prevent or resolve quickly and effectively any differences or contentious situations that may arise.

(See the Ruling of the Council of State 13180 (from 1997.)

10. Number added by art. 19 of Law 1150 of 2007, as follows: They will respect the order in which payments are submitted by contractors. Only for reasons of public interest, the head of the entity may modify said order, leaving a record of such action.

To this end, entities must keep a record of the documents submitted by contractors to make effective payments arising from the contracts, so that they can verify strict compliance with the right of turn. This record will be public.

The provisions of this section shall not apply to those payments whose supporting documents have been submitted incompletely or are pending compliance with the requirements provided for in the contract from which they are derived."

ARTICLE 5.- Rights and Duties of Contractors. In order to achieve the purposes set forth in Article 3 of this Law, contractors:

1st. They will have the right to receive the agreed remuneration in a timely manner, as long as its intrinsic value does not change or modify during the term of the contract.

(See Article 19, National Decree 2150 (from 1995.)

Consequently, they will have the right, upon request, to have the administration restore the balance of the economic equation of the contract to a point of no loss due to the occurrence of unforeseen situations that are not attributable to the contractors. If this balance is broken due to non-compliance by the contracting state entity, the equation that arose at the time of the contract's inception will have to be restored.

(See State Council Concept 1011 1997, See the Ruling of the Council of State 14577 (from 2003.)

2nd. They will collaborate with the contracting entities in whatever is necessary so that the contracted object is fulfilled and that it is of the best quality; they will comply with the orders that they are given during the development of the contract and, in general, they will act with loyalty and good faith in the different contractual stages, avoiding delays and obstructions that may arise.

3rd. They may turn to the authorities in order to obtain protection of the rights derived from the contract and sanctions for those who ignore or violate them.

The authorities may not condition participation in tenders or competitions, or the awarding, addition or modification of contracts, or the cancellation of sums owed to the contractor, on the waiver, withdrawal or abandonment of requests, actions, demands and claims by the latter.

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

4th. They will guarantee the quality of the goods and services contracted and will be responsible for them.

5th. They will not accede to requests or threats from those who act outside the law in order to force them to do or omit any act or deed.

When such requests or threats are made, contractors must immediately inform the contracting entity and other competent authorities of their occurrence so that they may adopt the necessary measures and corrective measures. Failure to comply with this obligation and the conclusion of prohibited pacts or agreements will result in the declaration of termination of the contract.

ARTICLE 6.- Capacity to Contract. Persons considered legally capable under current provisions may enter into contracts with state entities. Indigenous Councils, associations of Traditional Indigenous Authorities, and community councils of black communities regulated by Law 70 of 1993 may also enter into contracts with state entities.

For grassroots organizations of black, Afro-Colombian, Raizal and Palenquera communities and other organizational forms and expressions, they must have ten (10) years or more of having been incorporated by the Ministry of the Interior in the corresponding National Single Public Registry and that they have complied with the obligation to update information in the same registry; and the consortia and temporary unions.

National and foreign legal entities must prove that their duration will not be less than the term of the contract plus one year.

PARAGRAPH. For the purposes of this law, the Corporation for the Reconstruction of the Páez River Basin and Surrounding Areas Nasa Ki'We, may enter into contracts to advance and execute plans, programs and projects to meet the needs of the inhabitants of the ethnic communities of the municipalities of Popayán, Almaguer, Bolívar, Buenos Aires, Cajibío, Caldono, Caloto, Corinto, El Tambo, Inzá, Jambaló, La Sierra, La Vega, Miranda, Páez, Patía, Piendamó, Puracé, Rosas, San Sebastián, Santander De Quilichao, Silvia, Sotará, Suarez, Toribio, Totoró of the department of Cauca and the municipalities of Neiva, Gigante, Íquira, La Argentina, La Plata, Nátaga, Paicol, Pitalito, San Agustín, Tesalia, Villavieja, Yaguará, Palermo and Rivera of the department of Huila.

(Modified by Law 2160 of 2021, Art. 1)

Machine Translated by Google

*jurisprudence*

ARTICLE 7.- ENTITIES TO BE CONTRACTED. For the purposes of this law, the following are understood as:

1. Indigenous Council: It is a special public entity, whose members are members of an indigenous community, elected and recognized by it, with a traditional socio-political organization, whose function is to legally represent the community, exercise authority and carry out the activities attributed to it by the laws, its uses, customs and the internal regulations of each community.

2. Community Council of Black Communities: This is the legal entity that exercises the highest authority of internal administration within the Lands of the Black Communities, in accordance with the constitutional and legal mandates that govern it and others assigned to it by the legal system of each community.

3. Organizational forms or expressions. These are manifestations that, in exercising the constitutional right of participation, association and autonomy of groups of families of black, Afro-Colombian, Raizal or Palenquera descent, claim and promote their own culture, history, traditional practices and customs, to preserve and protect cultural identity, and that are settled in a territory that by its nature is not susceptible to being titled collectively.

4. Grassroots Organizations of Black, Afro-Colombian, Raizal and Palenquera Communities. These are community associations made up of people from Black, Afro-Colombian, Raizal or Palenquera Communities, who claim and promote the ethnic and human rights of these communities.

5. Second Level Organizations. These are associations of Community Councils, organizational forms and expressions and/or grassroots organizations that group more than two (2), registered in the Single Registry of the Directorate of Affairs for Black, Afro-Colombian, Raizal and Palenquera Communities of the Ministry of the Interior, provided that the area of influence of the second level organization corresponds to more than a third of the departments where advisory commissions exist.

6. Consortium: When two or more persons jointly submit the same proposal for the award, execution and performance of a contract, jointly and severally liable for each and every one of the obligations arising from the proposal and the contract. Consequently, the actions, facts and omissions that occur in the development of the proposal and the contract will affect all the members that comprise it.

7. Temporary Union: When two or more persons jointly present the same proposal for the award, celebration and execution of a contract, they are jointly and severally liable for the full compliance of the proposal and the contracted object, but the sanctions for non-compliance with the obligations derived from the proposal and the contract will be imposed in accordance with the participation in the execution of each of the members of the temporary union.

8. Associations of indigenous councils and/or traditional indigenous authorities. Public law entity, responsible for promoting and coordinating with local, regional and national authorities, the execution of programs, plans and projects of the development plan related to the strengthening of self-government, cultural identity, the exercise of autonomy, the guarantee of rights, satisfaction of needs and/or public services of indigenous peoples and communities, in accordance with the guidelines regulated in this regard by the Ministry of the Interior and other technical entities with related powers for its formation, within six (6) months following the issuance of this law.

*jurisprudence*

(Number 8, Modified by Art. 354 of Law 2294 of 2023)

9. Indigenous Council. Form of indigenous government, formed and regulated through their uses and customs, in accordance with what is established

provided for in article 330 of the Political Constitution.

(Number 9, Added by Art. 354 (of Law 2294 of 2023)

PARAGRAPH 1. The proponents shall indicate whether their participation is as a consortium or temporary union and, in the latter case, shall indicate the terms and extent of participation in the proposal and its execution, which may not be modified without the prior consent of the contracting state entity.

The members of the consortium and the temporary union must designate the person who, for all purposes, will represent the consortium or temporary union and will establish the basic rules that regulate the relations between them and their responsibility.

PARAGRAPH 2. In cases where companies are formed under any of the modalities provided for in the law with the sole purpose of presenting a proposal, entering into and executing a state contract, the liability and its effects shall be governed by the provisions provided for in this law for consortia.

PARAGRAPH 3. Members who are part of consortia or temporary unions may not contract in accordance with the provisions of this law when they have been subject to disciplinary, fiscal or criminal sanctions.

(Modified by Law 2160 of 2021, Art. 3)

*jurisprudence*

ARTICLE 8.- Disqualifications and Incompatibilities for Contracting:

1st. The following are not eligible to participate in tenders or competitions and to enter into contracts with state entities:

a) Persons who are disqualified from contracting by the Constitution and the laws

b) Those who participated in the tenders or competitions or entered into the contracts referred to in the previous paragraph while being disqualified.

c) Those who gave rise to the declaration of expiration

d) (Those who have been sentenced by court order to the additional penalty of prohibition of public rights and functions) and those who have been disciplined with dismissal. _____

(The underlined text was declared CONSTITUTIONAL by the Constitutional Court through Sentence C-178 of 1996; the text in parentheses was declared CONSTITUTIONAL by the Constitutional Court through Sentence 489 (from 1996.)

e) Those who, without just cause, abstain from signing the awarded state contract.

f) Public servants.

(See the State Council's Concept 867 (from 1996.)

g) Those who are spouses or (permanent partners) and those who are within the second degree of consanguinity or second degree of affinity with any other person who has formally submitted a proposal for the same tender or competition. _____

(Literal declared CONSTITUTIONAL by the Constitutional Court through Sentence C-415 (from 1994.)

(The text in parentheses was declared CONSTITUTIONAL by the Constitutional Court through Sentence C-029 of 2009, on the understanding that, under equal conditions, they also include members of same-sex couples.)

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

(See the Concept of General Sec. 1045 (from 1995.)

h) Companies other than open public limited companies, in which the legal representative or any of its partners is related in the second degree of consanguinity or second degree of affinity with the legal representative or with any of the partners of a company that has formally submitted a proposal for the same tender or competition. _____

(Literal declared CONSTITUTIONAL by the Constitutional Court through Sentence C-415 (from 1994)

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

i) Partners of partnerships for which the expiration has been declared, as well as the partnerships of which they form part after said declaration.

The disqualifications referred to in literals c), d), and i) shall extend for a term of five (5) years counted from the date of execution of the act that declared the expiration, or of the sentence that imposed the penalty, or of the act that ordered the dismissal; those provided for in literals b) and e) shall extend for a term of five (5) years counted from the date of occurrence of the fact of participation in the tender or contest, or of the celebration of the contract, or of the expiration of the term for its signature.

————

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

j) Amended by art. 2, Law 2014 of 2019, Amended by art. 1, Law 1474 of 2011. Literal added by art. 18, Law 1150 of 2007, thus: Natural persons who have been declared judicially responsible for the commission of crimes against the Public Administration, or for any of the crimes or misdemeanors contemplated by Law 1474 of 2011 and its amending regulations or any of the criminal conduct contemplated by the conventions or treaties against corruption signed and ratified by Colombia, as well as legal persons who have been declared administratively responsible for the conduct of transnational bribery.

This disqualification will proceed preventively even in cases where the decision on the appeal of the conviction is pending.

Likewise, the disqualification will extend to companies of which said persons are part as administrators, legal representatives, members of the board of directors or controlling partners, to their parent companies and their subsidiaries, to the business groups to which they belong when the criminal conduct has been part of a group policy and to the branches of foreign companies, with the exception of open joint stock companies.

Legal entities whose legal status has been suspended in accordance with the law, or whose legal representatives, de facto or de jure administrators, members of the board of directors or their controlling partners, their parent companies, subsidiaries and/or branches of foreign companies, have benefited from the application of the principle of opportunity for any crime against public administration or state assets, will also be considered disqualified from contracting.

The disqualification provided for in this section shall be permanently extended to the companies of which said persons are part in the capacities presented in the preceding paragraphs, and shall apply in the same way to natural persons who have been declared judicially responsible for the commission of crimes mentioned in this section.

*jurisprudence*

k) Literal added by art. 2, Law 1474 of 2011, added by paragraph 2, art. 84, Law 1474 of 2011 Natural or legal persons who have financed political campaigns for the Presidency of the Republic, for governorships, for mayors or for the Congress of the Republic, with contributions exceeding two percent (2.0%) of the maximum sums to be invested by the candidates in the electoral campaigns in each electoral district, who may not enter into contracts with public entities, including decentralized ones, of the respective administrative level for which the candidate was elected.

The disqualification will extend for the entire period for which the candidate was elected. This reason will also apply to persons who are within the second degree of consanguinity, second degree of affinity, or first degree of civil relationship of the person who financed the political campaign.

This disqualification will also include legal entities in which the legal representative, the members of the board of directors or any of its controlling partners have directly or through an intermediary financed political campaigns for the Presidency of the Republic, for the governorships, for the mayorships or for the Congress of the Republic.

The disqualification contemplated in this rule will not apply with respect to contracts for the provision of professional services.

k) CONDITIONALLY enforceable clause. Clause added by paragraph 2 of article 84 of Law 1474 of 2011. The new text is as follows: > The intervenor who fails to comply with the duty to provide information to the contracting entity related to the breach of contract, with facts or circumstances that may constitute acts of corruption classified as punishable conduct, or that may put or put at risk the fulfillment of the contract.

This disqualification will extend for a period of five (5) years, counted from the execution of the administrative act that so declares, after the corresponding administrative action.

2. The following may not participate in tenders or competitions or enter into state contracts with the respective entity:

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

a. Those who were members of the board or executive council or public servants of the contracting entity. This incompatibility only includes those who served at the management, advisory or executive levels and extends for a period of one (1) year, counted from the date of retirement.

(See the State Council's Concept 867 (from 1996.)

b. Persons who have family ties, up to the second degree of consanguinity, second degree of affinity or first degree of civil ties, with public servants at the management or executive advisory levels or with members of the board or executive council, or with persons who exercise internal or fiscal control of the contracting entity.

(Literal declared CONSTITUTIONAL by the Constitutional Court through Sentence 429 (from 1997.)

(See the Concepts of the Council of State 761 from 1995 and 925 (from 1996.)

c. The spouse or permanent partner of a public servant at the management, advisory, executive, or board or executive council level, or of a member of the board or executive council, or of someone who performs internal control or fiscal control functions.

(The underlined text was declared CONSTITUTIONAL by the Constitutional Court through Sentence C-029 of 2009, on the understanding that, under equal conditions, they also include members of same-sex couples.)

d) Corporations, associations, foundations and anonymous companies that are not open, as well as limited liability companies and other partnerships in which a public servant at the management, advisory levels, or a member of the board or executive council, or the spouse, permanent partner or relatives up to the second degree of consanguinity, affinity or civil relationship of any of them, has a stake or holds management or management positions.

(The underlined text was declared CONSTITUTIONAL by the Constitutional Court through Sentence C-029 of 2009, on the understanding that, under equal conditions, they also include members of same-sex couples.)

e) Members of boards or management councils. This incompatibility only applies to the entity to which they provide their services and to those in the administrative sector to which it is attached or linked.

f) Literal added by art. 4, Law 1474 of 2011 Directly or indirectly, persons who have held positions at the management level in State entities and the companies in which they are part or are linked by any title, during the two (2) years following retirement from public office, when the object they develop is related to the sector to which they provided their services.

This incompatibility will also apply to persons who are within the first degree of consanguinity, first degree of affinity, or first degree of civil relationship of the former public employee.

(See Sentence C-257 (from 2013)

PARAGRAPH 1.- The disqualification provided for in literal d) of ordinal 2 of this article shall not apply in relation to the corporations, associations, foundations and companies mentioned therein, when by legal or statutory provision the public servant at the referred levels must perform management or direction positions in them.

Art. 18 of Law 1150 of 2007, added the following paragraph:

In cases of disqualification due to kinship or marriage, the ties disappear due to death or dissolution of the marriage.

PARAGRAPH 2.- For the purposes set forth in this article, the National Government shall determine what is to be understood by open corporations.

(See art. 5, National Decree 679 1994, See the Ruling of the Council of State 10641 (from 1999.)

PARAGRAPH 3. Added by art. 3, Law 2014 of 2019 The disqualifications and incompatibilities contemplated in this article shall apply to any private contracting process in which public resources are committed.

ARTICLE 9.- On Supervening Disqualifications and Incompatibilities. Amended by art. 6, Law 2014 of 2019 If the contractor becomes incapable or incompatible, he shall assign the contract with prior written authorization from the contracting entity or, if this is not possible, he shall renounce its execution.

When a candidate becomes incapable or incompatible within a selection process, it will be understood that he or she renounces participation in the selection process and the rights arising from it.

If one of the members of a consortium or temporary union becomes incapable or incompatible, he or she will transfer his or her participation to a third party with prior written authorization from the contracting entity. Under no circumstances may there be any transfer of the contract between the members of the consortium or temporary union.

Machine Translated by Google

PARAGRAPH 1. When the subsequent disability is that contemplated in literal j) of numeral 1 of article 8 of Law 80 of 1993, or when the contractor has been administratively sanctioned for acts of corruption, the contract waiver referred to in this article shall not apply. The state entity shall order, through a reasoned administrative act, the unilateral transfer, without any compensation to the incompetent contractor.

In the case of assignment, the contracting entity will be responsible for determining the assignee of the contract.

*jurisprudence*

ARTICLE 9A. Effects of the declaration of unilateral assignment of the contract. The administrative act ordering the unilateral assignment of the contract due to acts of corruption shall be final. The entity that has declared it must send copies to the tax, disciplinary and criminal authorities for investigations within their jurisdiction.

Added by art. 8, Law 2014 of 2019.

ARTICLE 10.- Exceptions to Disqualifications and Incompatibilities. The following are not covered by the disqualifications and incompatibilities dealt with in the preceding articles: Persons who contract by legal obligation or do so to use the goods or services that the entities referred to in this statute offer to the public under common conditions to those who request them, nor non-profit legal entities whose legal representatives are part of the boards or directive councils by virtue of their position or by legal or statutory mandate, nor those who enter into contracts in development of the provisions of article 60 of the Political Constitution.

ARTICLE 11.- On the authority to direct tenders or competitions and to enter into state contracts. In the state entities referred to in article 2.

1st. The authority to order and direct the holding of tenders or competitions and to select contractors will be the responsibility of the head or representative of the entity, as the case may be.

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

2nd. The President of the Republic is competent to enter into contracts on behalf of the Nation.

3rd. Has the authority to enter into contracts on behalf of the respective Entity

a) The ministers of the office, the directors of administrative departments, the superintendents, the heads of special administrative units, the President of the Senate of the Republic, the President of the House of Representatives, the presidents of the Administrative Chamber of the Superior Council of the Judiciary and its Sectional Councils, the Attorney General of the Nation, the Comptroller General of the Republic, the Attorney General of the Nation, and the National Registrar of Civil Status.

b) At the territorial level, the governors of the departments, the mayors of municipalities and of the capital and special districts, the departmental, district and municipal comptrollers, and the legal representatives of the regions, provinces, metropolitan areas, indigenous territories and associations of municipalities, in the terms and conditions of the legal regulations that govern the organization and operation of said entities.

(NOTE: Numbers 1, 2 and 3, as well as literal a) and the expression "the departmental, district and municipal comptrollers" of literal b), were declared CONSTITUTIONAL by the Constitutional Court through Sentence C-374 (from 1994.)

c) The legal representatives of decentralized entities at all levels and orders.

(Literal c) declared CONSTITUTIONAL by the Constitutional Court through Sentence, C-178 (from 1996.)

(See National Decrees 2681 from 1993, 94 and 95 (from 1994)

ARTICLE 12.- Delegation to Contract. The heads and legal representatives of state entities may fully or partially delegate the authority to enter into contracts and decentralize the execution of tenders or competitions to public servants who hold positions at the management or executive level or their equivalents.

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

(NOTE: Article declared CONSTITUTIONAL by the Constitutional Court through Sentence C-374 (from 1994.)

(See National Decrees 2681 of 1993; 94, 95, 679 and 1985 of 1994; See the Concept of General Sec. 2115 1999; See the Constitutional Court's ruling C-088 (from 2000.)

Art. 21 of Law 1150 of 2007, added the second paragraph and a Paragraph to article 12, as follows:

"In no case will the heads and legal representatives of state entities be exonerated by virtue of the delegation of their duties of control and surveillance of pre-contractual and contractual activity.

(Section 2 of Article 21 of Law 1150 of 2007 was declared CONSTITUTIONAL by the Constitutional Court through Sentence C-693 of 2008, in

Machine Translated by Google

the understanding that the delegator will only be liable for the correct exercise of his duties of control and supervision of the pre-contractual activity, when he has incurred fraud or serious negligence in the exercise of said functions).

PARAGRAPH. For the purposes of this law, decentralization is understood as the appropriate distribution of work carried out by the head or legal representative of the entity, without this implying administrative autonomy in its exercise. Consequently, no appeal shall be made against the activities carried out by virtue of administrative decentralization."

ARTICLE 13.- On the Regulations Applicable to State Contracts. Partially regulated by National Decrees 1896 and 2166 of 1994, Partially regulated by National Decree 4266 of 2010. The contracts entered into by the entities referred to in Article 2 of this statute shall be governed by the relevant commercial and civil provisions, except in the matters specifically regulated in this Law.

Contracts entered into abroad may be governed in their execution by the rules of the country where they were signed, unless they must be fulfilled in Colombia.

(Section declared CONSTITUTIONAL by the Constitutional Court through Sentence C-249 (from 2004).

Contracts entered into in Colombia and which must be executed or fulfilled abroad may be subject to foreign law.

(Section declared CONSTITUTIONAL by the Constitutional Court through Sentence C-249 of 2004, on the understanding that both the celebration and the part of the execution that takes place in Colombia are subject to Colombian law.)

(Section declared CONSTITUTIONAL by the Constitutional Court through Sentence C-249 of 2004, on the understanding that the discretion provided therein may only be validly exercised in relation to contracts relating to resources received from international entities or organizations, that is, in relation to loan, donation, technical assistance or cooperation contracts entered into by the respective state entities with international entities or organizations.)

(NOTE: Paragraph 4 of article 13 was repealed by article 32 of Law 1150 of 2007.)

(See art. 39, National Decree 2681 of 1993, See National Decree 679 of 1994, See the Concept of General Sec. 2130 (from 1998.)

ARTICLE 14.- Regarding the Means that State Entities may use to Fulfill the Contractual Object. In order to fulfill the purposes of the contract, state entities, when entering into a contract:

1st. They shall have the general management and responsibility for exercising control and supervision of the execution of the contract. Consequently, with the exclusive purpose of avoiding the paralysis or serious affectation of the public services under their charge and ensuring the immediate, continuous and adequate provision, they may, in the cases provided for in section 2 of this article, interpret the contractual documents and the stipulations agreed therein, introduce modifications to the contract and, when the particular conditions of the provision so require, unilaterally terminate the contract entered into.

In the acts in which some of these exceptional powers are exercised, the recognition and payment order of the compensation and indemnities to which the persons subject to such measures are entitled must be carried out and the mechanisms for adjusting the contractual conditions and terms where appropriate must be applied, all with the aim of maintaining the initial equation or balance.

Against administrative acts that order unilateral interpretation, modification and termination, an appeal for reconsideration shall be admissible, without prejudice to the contractual action that the contractor may attempt, as provided for in article 77 of this Law.

2. They will agree on the exceptional clauses to the common law of unilateral termination, interpretation and modification, submission to national laws and expiration in contracts that have as their object the exercise of an activity that constitutes a state monopoly, the provision of public services, contracts related to the school feeding program or the exploitation and concession of state assets, as well as in construction contracts. In contracts for the exploitation and concession of state assets, the reversion clause shall be included.

State entities may agree to these clauses in supply and service provision contracts.

In the cases provided for in this section, the exceptional clauses are deemed to be agreed upon even when they are not expressly stated.

(Number modified by Art. 52 of Law 2195 of 2022.)

*jurisprudence*

PARAGRAPH.- In contracts entered into with international public persons, or for cooperation, aid or assistance; in inter-administrative contracts; in loans, donations and leasing contracts and in contracts that have as their object commercial or industrial activities of state entities that do not correspond to those indicated in numeral 2 of this article, or that have as their object the direct development of scientific or technological activities, as well as in insurance contracts taken out by state entities, the use of exceptional clauses or stipulations shall be omitted.

Machine Translated by Google

(See the Concept of General Sec. 360 of 1998, See the Concept of the Council of State 10540 (from 2000.)

ARTICLE 15.- Unilateral Interpretation. If during the execution of the contract discrepancies arise between the parties regarding the interpretation of some of its stipulations that may lead to the paralysis or serious affectation of the public service that is intended to be satisfied with the contracted object, the state entity, if no agreement is reached, will interpret in a duly motivated administrative act, the stipulations or clauses that are the object of the difference.

ARTICLE 16.- Unilateral Modification. If during the execution of the contract and to avoid the stoppage or serious affectation of the public service that must be satisfied with it, it is necessary to introduce variations in the contract and the parties do not previously reach the respective agreement, the entity in a duly motivated administrative act, will modify it by deleting or adding works, jobs, supplies or services.

If the modifications alter the value of the contract by twenty percent (20%) or more of the initial value, the contractor may renounce the continuation of the execution. In this event, the liquidation of the contract will be ordered and the entity will immediately adopt the measures that are necessary to guarantee the completion of the object of the same.

ARTICLE 17.- Unilateral Termination. The entity, in a duly motivated administrative act, shall arrange for early termination of the contract in the following events:

1. When the demands of public service so require or when the situation of public order so dictates

2. Due to death or permanent physical disability of the contractor, if he is a natural person, or due to dissolution of the legal entity of the contractor.
   (The underlined text was declared CONSTITUTIONAL by the Constitutional Court through Sentence C-454 of 1994, to the extent that permanent physical disability absolutely prevents the fulfillment of specifically contractual obligations, when they depend on the physical abilities of the contractor.)

3. By judicial interdiction or declaration of bankruptcy of the contractor.

4. Due to default, bankruptcy or judicial embargoes of the contractor that seriously affect the fulfillment of the contract.

However, in the cases referred to in paragraphs 2 and 3 of this article, the execution may be continued with the guarantor of the obligation.

The initiation of bankruptcy proceedings will not give rise to a declaration of unilateral termination. In such an event, the execution will be subject to the rules on the administration of the debtor's business in bankruptcy. The entity will arrange the inspection, control and surveillance measures necessary to ensure compliance with the contractual object and prevent the suspension of the service.

(See Treasury Sec. 380 **Concept** (from 1997.)

ARTICLE 17B. Effects of the Court's Sentence for Acts of Corruption. Once the court's sentence determining the commission of crimes against the public administration or any of the crimes contemplated in section j) of article 8 of Law 80 of 1993 becomes final and enforceable, the pecuniary penalty clause shall become enforceable by the Administration.

Added by art. 7, Law 2014 of 2019.

ARTICLE 18.- Expiration and its Effects. Expiration is the stipulation under which if any of the facts constituting non-compliance with the obligations of the contractor occur, which seriously and directly affects the execution of the contract and shows evidence that it may lead to its suspension, the entity, by means of a duly motivated administrative act, will terminate it and order its liquidation in the state in which it is found.

In the event that the entity decides not to declare the expiration, it will adopt the necessary control and intervention measures to guarantee the execution of the contracted object. The declaration of expiration will not prevent the contracting entity from taking possession of the work or immediately continuing the execution of the contracted object, either through the guarantor or another contractor, who in turn may be declared void, when appropriate.

If the contract is declared void, there will be no compensation for the contractor, who will be subject to the sanctions and disqualifications provided for in this law.

The declaration of expiration will constitute a breach of contract.

(See the Concept of General Sec. 360 1998, See the Ruling of the Council of State 13180 (from 1997.)

ARTICLE 19.- Reversion. In contracts for the exploitation or concession of state property, it shall be agreed that, at the end of the term of the exploitation or concession, the elements and assets directly affected by it shall become the property of the contracting entity, without the latter having to make any compensation for this.

Machine Translated by Google

(Article declared CONSTITUTIONAL by the Constitutional Court through Sentence C-250 of 1996; See the Concept of General Sec. 0111 of 2008 )

ARTICLE 20.- Reciprocity. In state contracting processes, the proponent of goods and services of foreign origin shall be granted the same treatment and under the same conditions, requirements, procedures and award criteria as the treatment granted to the national, exclusively under the principle of reciprocity.

The principle of reciprocity is understood as the commitment made by another country, through an agreement, treaty or convention signed with Colombia, in the sense that offers of Colombian goods and services will be granted in that country the same treatment granted to its nationals in terms of the conditions, requirements, procedures and criteria for the award of contracts signed with the public sector.

PARAGRAPH 1.- The National Government, in the agreements, treaties or conventions that it enters into for these purposes, must establish all the necessary mechanisms to enforce equal treatment between nationals and foreigners both in Colombia and in the territory of the country with whom the aforementioned agreement, convention or treaty is entered into.

PARAGRAPH 2.- When no agreement, treaty or convention has been entered into for the purposes provided for in this article, the proponents of goods and services of foreign origin may participate in the contracting processes under the same conditions and with the same requirements demanded of Colombian nationals, provided that in their respective countries the proponents of goods and services of Colombian origin enjoy equal opportunities. The National Government shall establish the mechanisms to ensure compliance with the reciprocity provided for in this paragraph.

ARTICLE 21.- Treatment and Preference of National Offers. State entities shall guarantee the participation of suppliers of goods and services of national origin, under competitive conditions of quality, opportunity and price, without prejudice to the objective selection procedure used and provided that there is an offer of national origin.

When it comes to the execution of investment projects, technological disaggregation will be arranged.

In loan contracts and other forms of financing, other than supplier credits, it will be sought to ensure that the use or acquisition of goods or the provision of services of specific foreign origin is not required, or that the granting of such is not conditioned on this. Likewise, conditions will be sought to ensure the participation of suppliers of goods and services of national origin.

Under equal conditions for contracting, the offer of goods and services of national origin will be preferred.

For foreign bidders on equal terms, preference will be given to the one that contains the greatest incorporation of national human resources, a greater national component and better conditions for technology transfer.

The Higher Council for Foreign Trade will determine the current regime for imports by state entities.

PARAGRAPH 1.- The National Government shall determine what is to be understood by goods and services of national and foreign origin and by technological disaggregation. It is also the responsibility of the National Government to design mechanisms that facilitate timely knowledge of both the supply of goods and services of national origin, as well as the demand of state entities.

(See art. 4.2.2 of National Decree 734 of 2012

PARAGRAPH 2.- The National Government will regulate the national component to which state entities must submit, to guarantee the participation of offers of goods and services of national origin.

See the Concept of General Sec. 024 of 2008.

ARTICLE 22.- On the Register of Bidders. Repealed by art. 32, Law 1150 of 2007.

II OF THE PRINCIPLES OF STATE CONTRACTING

ARTICLE 23.- Principles of Contractual Actions of State Entities. The actions of those involved in state contracting shall be carried out in accordance with the principles of transparency, economy and responsibility and in accordance with the postulates that govern the administrative function. Likewise, the rules that regulate the conduct of public servants, the rules of interpretation of contracting, the general principles of law and the particulars of administrative law shall apply to them.

ARTICLE 24.- On the principle of Transparency. By virtue of this principle:

(See Joint Circular of the Attorney General's Office, the Comptroller General's Office and the General Audit Office 014 of 2011)

-1">1st. Number Repealed by art. 32 of Law 1150 of 2007.

Machine Translated by Google

2nd. In contractual processes, interested parties will have the opportunity to learn about and challenge the reports, concepts and decisions that are submitted or adopted, for which stages will be established that allow for the knowledge of said actions and grant the possibility of expressing observations.

3rd. The actions of the authorities will be public and the files containing them will be open to the public, allowing in the case of bidding the exercise of the right referred to in article 273 of the Political Constitution.

(See the State Council's Concept 558 (from 1993.)

4th. The authorities will issue, at the expense of those persons who demonstrate legitimate interest, copies of the proceedings and proposals received, respecting the confidentiality that patents, procedures and privileges legally enjoy.

(See the State Council's Concept 558 (from 1993)

5th. In the specifications or terms of reference: _____

(See the Council of State Ruling 16385 of 2011)

(The expression "Terms of reference" was repealed by art. 32 of Law 1150 of 2007. a) The objective requirements necessary to participate in the corresponding selection process will be indicated. Literal regulated by National Decree 679 (from 1994.)

b) Objective, fair, clear and complete rules will be defined that allow the preparation of offers of the same type, ensure an objective selection and avoid declarations of voidness of the tender or competition. _____

(Literal declared CONSTITUTIONAL by the Constitutional Court through Sentence C-932 of 2007, on the understanding that the principles of transparency, objective selection and equality allow affirmative action measures to be included in the selection factors or weighting criteria in the specifications.)

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

c) The cost and quality conditions of the goods, works or services necessary for the execution of the object of the contract will be precisely defined.

d) Conditions and requirements that cannot be fulfilled will not be included, nor will exemptions from liability arising from the data, reports and documents supplied.

e) Rules will be defined that do not mislead proponents and contractors and that prevent the formulation of offers of unlimited extension or that depend on the exclusive will of the entity.

f) The period for the liquidation of the contract will be defined, where appropriate, taking into account its object, nature and amount.

Any provisions of the specifications or terms of reference and of the contracts that contravene the provisions of this section, or provide for waivers of claims due to the occurrence of the events stated herein, shall be automatically ineffective.

(The expression "Terms of reference" was repealed by art. 32 of Law 1150 of 2007.)

6th. The rules for awarding the contract shall be indicated in the notices of publication of the opening of the tender or competition and in the specifications or terms of reference.

(The expressions "Contest" and "Terms of reference" were repealed by art. 32 of Law 1150 of 2007.)

7th. Administrative acts issued in the contractual activity or on the occasion of it, except those of mere procedure, shall be motivated in a detailed and precise manner, as shall be the evaluation reports, the award act and the declaration of voidness of the selection process.

(See the Concept of General Sec. 2045 (from 1998.)

8th. The authorities shall not act with deviation or abuse of power and shall exercise their powers exclusively for the purposes provided for by law. They shall also be prohibited from evading objective selection procedures and other requirements provided for in this statute.

(See the Concept of General Sec. 140 (from 1998.)

9. Notices of any kind through which the execution or execution of contracts by state entities is reported or announced may not include any reference to the name or position of any public servant.

(See the State Council's Concept 642 (from 1994.)

PARAGRAPH 1.- Repealed by art. 32, Law 1150 of 2007.

PARAGRAPH 2.- The National Government will issue, within six (6) months following the promulgation of this law, a regulation of

Machine Translated by Google

direct contracting, whose provisions guarantee and develop the principles of economy, transparency and objective selection provided for therein.

If the Government does not issue the relevant regulations, no contract may be entered into directly by any State entity under penalty of its nullity.

(NOTE: Paragraph 2 was declared CONSTITUTIONAL by the Constitutional Court through Sentence C-508 of 2002, with the understanding that the six-month period set for the National Government to issue the direct contracting regulations does not limit the exercise of the regulatory power of the President of the Republic, as has been set forth in the grounds of this ruling.)

PARAGRAPH 3.- When the sale of assets of state entities must be carried out by the auction system, it will be done through the auction procedure carried out by financial entities duly authorized for this purpose and supervised by the Banking Superintendency.

The selection of the selling entity will be made by the respective state entity, in accordance with the principles of transparency, economy, responsibility and objective selection and taking into account the administrative capacity that each financial entity can employ to carry out the auctions.

(NOTE: See National Decrees 2251 and 2681 of 1993; 855 of 1994 and 781 of 1997; See the Rulings of the Council of State 12344 from 1999 and 10963 2000; See the Concepts of the Council of State 596 and 642 of 1994 and 811 of 1996; See the Concepts of General Sec. 100 from 1997 and 140 of 1998; See the Concept of the Sec. of Finance 750 (from 1998.)

ARTICLE 25.- On the Principle of Economy. Regulated by National Decree 287 of 1996. By virtue of this principle:

1. In the selection rules and in the specifications or terms of reference for the selection of contractors, the procedures and stages strictly necessary to ensure the objective selection of the most favorable proposal will be complied with and established. For this purpose, preclusive and peremptory terms will be indicated for the different stages of the selection and the authorities will give unofficial impetus to the proceedings.

(The expression "Terms of reference" was repealed by art. 32 of Law 1150 of 2007.)

2nd. The rules of contractual procedures shall be interpreted in such a way that they do not give rise to the following of procedures other than those expressly provided for or that allow the use of defects in form or failure to comply with requirements to avoid making a decision or to issue inhibitory orders.

3rd. The rules and procedures will be taken into consideration as mechanisms of contractual activity that seek to serve state purposes, the adequate, continuous and efficient provision of public services and the protection and guarantee of the rights of those administered.

4th. The procedures will be carried out with austerity of time, means and expenses and delays and setbacks in the execution of the project will be prevented. contract.

5th. Procedures will be adopted to ensure the prompt resolution of any differences and disputes that may arise in connection with the execution and performance of the contract.

(See the Ruling of the Council of State 10399 (from 2000.)

6th. State entities will open tenders or contests and initiate contract signing processes, when the respective budget items or availabilities exist.

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

7th. The convenience or inconvenience of the object to be contracted and the authorizations and approvals for it, will be analyzed or issued prior to the start of the contractor selection process or the signing of the contract, as the case may be.

8th. The award act and the contract shall not be subject to subsequent administrative approvals or reviews, nor to any other type of demands or requirements, other than those provided for in this statute.

9th. The head and the advisory and executive units of the entity that are indicated in the corresponding regulations on its organization and operation will intervene in the contracting processes.

10. Number substituted by art. 37, National Decree 2150 of 1995, as follows: The heads or representatives of the entities to which this law applies may delegate the power to enter into contracts under the terms provided for in article 12 of this law and subject to the amounts set by their respective boards or governing councils. In other cases, said amounts shall be set by the regulations.

(See art. 14, National Decree 679 from 1994 and 1985 of the same year.)

11. The corporations elected by popular vote and the control and surveillance bodies will not intervene in the contracting processes, except in the following cases:

Machine Translated by Google

related to the request for a public hearing for the award in the event of a tender.

In accordance with the provisions of articles 300, paragraph 9 and 313, paragraph 3 of the Political Constitution, the Departmental Assemblies and the Municipal Councils shall authorize the governors and mayors, respectively, to enter into contracts.

(See State Council Concept 1371 of 2001, See Concept of the Council of State 1889 (from 2008.)

12. Amended by art. 87, Law 1474 of 2011. Prior to the opening of a selection process, or the signing of the contract in the case where the selection method is direct contracting, the required studies, designs and projects, and the specifications, as appropriate, must be prepared.

When the purpose of the contract includes the execution of a work, at the same time as indicated in the first paragraph, the contracting entity must have the studies and designs that allow establishing the viability of the project and its social, economic and environmental impact. This condition will be applicable even for contracts that include design within the purpose.

(The expression "Terms of reference" was repealed by art. 32 of Law 1150 of 2007.)

(Section 2 repealed by art. 32 of Law 1150 of 2007.)

13. The authorities will establish the necessary budgetary reserves and commitments, taking as a basis the value of the services at the time of signing the contract and the estimate of the adjustments resulting from the application of the price update clause.

14. Entities shall include in their annual budgets a global appropriation intended to cover unforeseen costs arising from delays in payments, as well as those arising from the revision of agreed prices due to changes or alterations in the initial conditions of the contracts entered into by them.

15. The authorities shall not require seals, authentications, original or authenticated documents, recognition of signatures, official translations, or any other kind of formalities or ritual requirements, except when expressly and peremptorily required by special laws.

(Section 2 repealed by art. 32 of Law 1150 of 2007.)

16. In applications submitted during the execution of the contract, if the state entity does not make a decision within the term of three (3) months following, it will be understood that the decision is favorable to the applicant's claims by virtue of positive administrative silence.
However, the official or officials competent to respond will be responsible under the terms of this Law.

(See art. 15, National Decree 679 (from 1994)

17. Entities will not reject requests submitted in writing on the grounds of non-compliance by the petitioner with the formalities established by the entity for processing them, and will ex officio proceed to correct them and remedy any defects noted in them.

Likewise, they shall be obliged to file the minutes or accounts of collection on the date they are submitted by the contractor, they shall proceed to correct or adjust them ex officio if necessary and, if this is not possible, they shall return them as soon as possible, explaining in writing the reasons on which such determination is based.

18. The declaration of voidness of the tender or competition will only proceed for reasons or causes that prevent objective selection and will be declared in an administrative act in which the reasons that led to that decision will be expressly and in detail indicated.

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

19 Number repealed by art. 32 of Law 1150 of 2007.)

(See Constitutional Court Ruling C-154 (from 1996.)

20. Funds intended for the settlement of obligations arising from state contracts may be delivered under trust administration or any other form of management that allows for obtaining financial benefits and advantages and the timely payment of the amount owed.

(NOTE: See National Decree 679 of 1994, See the Concept of General Sec. 140 1998, See the Concepts of the Council of State 811 from 1996 and 1121 of 1998, as well as Ruling 12344 (from 1999.)

ARTICLE 26.- On the Principle of Responsibility. Pursuant to this principle:

1st. Public servants are obliged to seek compliance with the purposes of the contract, to monitor the correct execution of the contracted object and to protect the rights of the entity, the contractor and third parties that may be affected by the execution of the contract.

2nd. Public servants shall be liable for their unlawful actions and omissions and shall compensate for any damages caused by them.

3rd. Entities and public servants will be liable when they have opened tenders or competitions without having previously prepared the

corresponding specifications, terms of reference, designs, studies, plans and evaluations that may be necessary, or when the specifications or terms of reference have been prepared in an incomplete, ambiguous or confusing manner that leads to subjective interpretations or decisions on the part of those.

(The expression "Contest" and "Terms of reference" were repealed by art. 32 of Law 1150 of 2007.)

4th. The actions of public servants will be governed by the rules on the administration of other people's property and by the mandates and postulates that govern conduct in accordance with ethics and justice.

5th. The responsibility for the direction and management of the contractual activity and the selection processes will be of the head or representative of the state entity who may not transfer it to the boards or directive councils of the entity, nor to the corporations of popular election, to the advisory committees, nor to the control and surveillance bodies of the same.

6. Contractors shall be liable when they make proposals in which economic and contracting conditions are set artificially low for the purpose of obtaining the award of the contract.

7th. Contractors shall be liable for having concealed, when contracting, disqualifications, incompatibilities or prohibitions, or for having provided false information.

8th. The contractors will be responsible and the entity will ensure the good quality of the contracted object.

(See the Concept of General Sec. 140 (from 1998).)

ARTICLE 27.- On Contractual Equation. In state contracts, equality or equivalence shall be maintained between rights and obligations arising at the time of proposing or contracting, as the case may be. If said equality or equivalence is broken for reasons not attributable to the affected party, the parties shall adopt the necessary measures to reestablish it as soon as possible.

For such purposes, the parties shall sign the necessary agreements and pacts on the amounts, conditions and form of payment of additional expenses, recognition of financial costs and interest, if applicable, adjusting the cancellation to the availability of the appropriation referred to in numeral 14 of article 25. In any case, the entities must adopt the necessary measures to ensure the effectiveness of these payments and recognitions to the contractor in the same or the following term in question.

ARTICLE 28.- Interpretation of Contractual Rules. In the interpretation of the rules on state contracts, relative to the procedures for selecting and choosing contractors and in the interpretation of the clauses and stipulations of contracts, the purposes and principles dealt with in this law, the mandates of good faith and the equality and balance between services and rights that characterize commutative contracts shall be taken into consideration.

(NOTE: See the Concept of General Sec. 355 1998, See the Concept of the Council of State 811 of 1996 and Ruling 12344 (from 1999).)

ARTICLE 29.- Article repealed by art. 32, of Law 1150 of 2007. On the Duty of Objective Selection. The selection of contractors will be objective.

Objective selection is when the choice is made to the offer most favorable to the entity and the goals it seeks, without taking into consideration factors of affection or interest and, in general, any kind of subjective motivation.

The most favourable offer is one which, taking into account the selection factors, such as performance, experience, organisation, equipment, deadline, price and the precise, detailed and specific weighting of these contained in the specifications or terms of reference or in the analysis prior to signing the contract, if it is a direct contract, turns out to be more advantageous for the entity, without the favourability being constituted by factors other than those contained in said documents, only one of them, the lowest price or the offered deadline. If the deadline offered is less than that provided for in the specifications or terms of reference, it will not be subject to evaluation.

The administrator will make the relevant comparisons by comparing the different offers received, consulting prices or market conditions and the studies and deductions of the entity or the consulting or advisory bodies designated for this purpose.

In the case of a comparison of national and foreign proposals, the costs necessary for the delivery of the finished product to the place of use shall be included.

(NOTE: See State Council Concept 811 of 1996, as well as the Judgments 9868 of 1996, 12344 of 1999 and 12633 of 2000; See Presidential Directive 12 of 2002; See Law 816 (from 2003).)

(NOTE: Article 29 was regulated by National Decree 287 (from 1996).)

ARTICLE 30.- Regulated by National Decree 287 of 1996. On the Structure of Selection Procedures. The tender or competition will be carried out in accordance with the following rules:

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

1st. The head or representative of the state entity will order its opening by means of a reasoned administrative act.

Machine Translated by Google

In accordance with the provisions of paragraph 12 of article 25 of this Law, the opening resolution must be preceded by a study carried out by the respective entity in which the convenience and opportunity of the contract and its adequacy to the investment, acquisition or purchase plans, budget and appropriation law, as the case may be, are analyzed. When necessary, the study must also be accompanied by the designs, plans and pre-feasibility or feasibility evaluations.

2nd. The interested entity shall prepare the corresponding specifications or terms of reference, in accordance with the provisions of section 5 of article 24 of this Law, in which the aspects relating to the object of the contract, its legal regulation, the rights and obligations of the parties, the determination and weighting of the objective selection factors and all other circumstances of time, manner and place that are considered necessary to guarantee objective, clear and complete rules shall be detailed.

(The expression "Terms of reference" was repealed by art. 32 of Law 1150 of 2007.)

3rd. Modified by art. 224, National Decree 019 of 2012. Within ten (10) to twenty (20) calendar days prior to the opening of the tender, up to three (3) notices will be published at intervals between two (2) and five (5) calendar days, as required by the nature, object and amount of the contract, on the Web page of the contracting entity and in the Electronic System for Public Contracting - SECOP.

In the absence of such means of communication, in small towns, in accordance with the criteria established by the regulations, they will be read by announcement and posted by notices in the main public places for a period of seven (7) calendar days, which must include one of the market days in the respective town.

The notices will contain information on the purpose and essential characteristics of the respective tender.

4th. Amended by art. 220, National Decree 019 of 2012. Within three (3) business days following the start of the period for the submission of proposals and at the request of any of the persons interested in the process, a hearing will be held in order to specify the content and scope of the specifications, of which a record will be drawn up signed by the participants. At the same hearing, the allocation of risks dealt with in article 4 will be reviewed. of Law 1150 of 2007 in order to establish its classification, estimation and final assignment.

As a result of what was discussed at the hearing and when appropriate, the head or representative of the entity will issue the relevant modifications to said documents and extend, if necessary, the term of the tender or contest for up to six (6) business days.

The above does not prevent any interested party from requesting additional clarifications within the tender period, which the contracting entity will respond to by means of written communication, which will be sent to the interested party and published in SECOP for public knowledge.

5th. The tender or competition period, understood as the period that must elapse between the date from which proposals may be submitted and the date of its closing, shall be indicated in the specifications or terms of reference, in accordance with the nature, object and amount of the contract.

Modified by art 89, Law 1474 of 2011. When deemed appropriate by the interested entity or when requested by two-thirds of the persons who have withdrawn specifications or terms of reference, said period may be extended, before its expiry, for a period not exceeding half of that initially set.

(The expressions "Contest" and "Terms of reference" were repealed by art. 32 of Law 1150 of 2007.)

6th. Proposals must refer to and adhere to each and every point contained in the specifications or terms of reference. Proponents may present technical or economic alternatives and exceptions as long as they do not pose conditions for the award.

(The expression "Terms of reference" was repealed by art. 32 of Law 1150 of 2007.)

7th. In accordance with the nature, object and amount of the contract, the specifications or terms of reference shall indicate the reasonable period within which the entity must prepare the technical, economic and legal studies necessary for the evaluation of the proposals and to request from the proponents the clarifications and explanations deemed essential.

(The expression "Terms of reference" was repealed by art. 32 of Law 1150 of 2007.)

8th. The evaluation reports of the proposals will remain in the secretariat of the entity for a period of five (5) business days so that the bidders may present any observations they deem pertinent. In exercising this power, the bidders may not complete, add, modify or improve their proposals.

9th. The deadlines for making the award and for signing the contract will be specified in the specifications or terms of reference, taking into account their nature, purpose and amount.

The head or representative of the entity may extend said terms before their expiration and for a total term not exceeding half of that initially established, provided that the needs of the administration so require.

Within the same award period, the tender or competition may be declared void in accordance with the provisions of this statute.

(The expressions "Contest" and "Terms of reference" were repealed by art. 32 of Law 1150 of 2007.)

10. In the event provided for in Article 273 of the Political Constitution, the award will be made in a public hearing. The head of the entity or the person to whom, in accordance with the law, the power to award has been delegated will participate in said hearing, and the public servants who have prepared the studies and evaluations, the proponents and other persons who wish to attend may also participate in it.

Minutes shall be kept of the hearing, recording the deliberations and decisions that have occurred during the hearing.

11. Number repealed by art. 32 of Law 1150 of 2007. The awarding act will be carried out by means of a reasoned resolution that will be personally notified to the favored proponent in the manner and terms established for administrative acts and, in the event that it has not been carried out in a public hearing, it will be communicated to those not favored within the following five (5) calendar days.

The award act is irrevocable and binds the entity and the successful bidder.

12. If the successful tenderer does not sign the corresponding contract within the specified period, the value of the deposit or guarantee constituted to respond for the seriousness of the proposal will be in favour of the contracting entity as a penalty, without prejudice to legal actions leading to the recognition of damages caused and not covered by the value of the aforementioned deposit or guarantee.

In this event, the state entity, through a duly motivated administrative act, may award the contract, within the following fifteen (15) days, to the second-place qualified bidder, provided that its proposal is equally favorable to the entity.

PARAGRAPH.- For the purposes of this law, public tendering is understood to be the procedure by which the state entity publicly issues a call for bids so that, on equal terms, interested parties may submit their offers and select the most favorable among them. When the object of the contract consists of technical, intellectual or specialized studies or works, the selection process will be called a contest and will also be carried out by public invitation. The underlined text was repealed by art. 32 of Law 1150 of 2007.

---

(NOTE: This Paragraph was declared CONSTITUTIONAL by the Constitutional Court through Sentence C-932 of 2007, on the understanding that the principles of transparency, objective selection and equality allow affirmative action measures to be included in the selection factors or weighting criteria in the specifications.)

(See Ruling of the Council of State 10399 of 2000 2000)    , See Ruling of the Council of State 10963 of 2000    , See Ruling of the Council of State 12962 of

PARAGRAPH 2 AND 3 (Added by art. 1 of Law 1882 of 2018)

ARTICLE 31.- Publication of Sanctioning Acts and Sentences. Amended by art. 218, National Decree 019 of 2012. The final part of the acts that declare expiration, impose fines, sanctions or declare non-compliance, once final, will be published in SECOP and will be communicated to the chamber of commerce in which the respective contractor is registered. They will also be communicated to the Attorney General's Office."

(See sentence C-016 of 2013 of the Constitutional Court)

### III. OF THE STATE CONTRACT

ARTICLE 32. State Contracts. State contracts are all legal acts that generate obligations and are entered into by the entities referred to in this statute, provided for in private law or in special provisions, or derived from the exercise of the autonomy of the will, as well as those, by way of example, defined below:

1. Construction Contract Construction contracts are those entered into by state entities for the construction, maintenance, installation and, in general, for the performance of any other material work on real estate, regardless of the method of execution and payment.

In construction contracts that have been entered into as a result of a public tender or competition process, the supervision must be contracted to a person independent of the contracting entity and the contractor, who will be responsible for the acts and omissions attributable to him in the terms provided for in article 53 of this statute.

(The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.)

2. Consulting contract Regulated by National Decree 2326 of 1995

Consulting contracts are those entered into by state entities relating to the studies required for the execution of investment projects, diagnostic, pre-feasibility or feasibility studies for specific programs or projects, as well as technical advice on coordination, control and supervision.

Consulting contracts also include those whose purpose is supervision, advice, construction or project management, direction, programming and the execution of designs, plans, preliminary projects and projects.

No order from the supervisor of a work may be given verbally. It is obligatory for the supervisor to deliver his orders in writing or

Machine Translated by Google

**Administrative Department of the Civil Service**

suggestions and they must be framed within the terms of the respective contract.

3. Service provision contracts Service provision contracts are those entered into by state entities to carry out activities related to the administration or operation of the entity. These contracts may only be entered into with natural persons when said activities cannot be carried out with permanent personnel or require specialized knowledge,_____ _____

In no case do these contracts create an employment relationship or social benefits and will be entered into for the strictly indispensable term.

(See Council of State Ruling 2014-90305 (of 2020)

(See Council of State Ruling 2011-00400 (of 2020)

(See Council of State ruling 2013-01143 (of 2021)

(NOTE: The underlined expressions were declared CONSTITUTIONAL by the Constitutional Court through Sentence C-154 of 1997, unless the existence of a subordinate employment relationship is proven.)

(NOTE: See Law 190 of 1995; See National Decree 2681 of 1993, See art. 141, National Decree 2150 of 1995; See the Concept of General Sec. 1045 of 1995; See the Rulings of the Council of State IJ-0039 of 2003 and 4096 (from 2006.)

(See the concept of the Council of State 2003A (from 2011)

4. Concession contract Concession contracts are those entered into by state entities for the purpose of granting a person called a concessionaire the provision, operation, exploitation, organization or management, in whole or in part, of a public service, or the construction, exploitation or conservation, in whole or in part, of a work or asset destined for public service or use, as well as all those activities necessary for the adequate provision or operation of the work or service at the expense and risk of the concessionaire and under the supervision and control of the granting entity, in exchange for remuneration that may consist of rights, tariffs, rates, valuation, or the participation granted in the exploitation of the asset, or in a periodic, single or percentage sum and, in general, in any other form of compensation agreed upon by the parties.

(See National Decree 624 of 1994, See Law 1508 of 2012)

5. Fiduciary assignments and public trust.

(See art. 36 of Law 388 of 1997)

(Underlined text declared UNCONSTITUTIONAL by the Constitutional Court through Sentence C-086 (from 1995.)

The fiduciary contracts entered into by state entities with trust companies authorized by the Banking Superintendency shall have as their object the administration or management of the resources linked to the contracts entered into by such entities. The above is without prejudice to the provisions of paragraph 20 of article 25 of this Law.

Trust assignments and public trust contracts may only be entered into by state entities in strict compliance with the provisions of this statute, only for purposes and within precisely determined time periods. In no case may the trustor public entities delegate to the trust companies the awarding of contracts entered into in the development of the assignment or public trust, nor agree on their remuneration from the trust's earnings, unless these are budgeted.

Fiduciary assignments and commercial trust contracts that have been signed by state entities at the date of promulgation of this law will remain in force under the terms agreed upon with the trust companies.

Paragraph 4 was amended by Article 25, of Law 1150 of 2007 as follows: The selection of trust companies to be contracted, whether public or private, will be done with strict observance of the bidding or competition procedure provided for in this law. However, treasury surpluses of state entities may be invested directly in ordinary common funds managed by trust companies, without the need to resort to a public bidding process.

PARAGRAPH 1.- Modified by art. 15, Law 1150 of 2007, as follows: Contracts entered into by Credit Institutions, insurance companies and other state-owned financial entities shall not be subject to the provisions of the General Statute of Public Administration Contracting and shall be governed by the legal and regulatory provisions applicable to said activities.

In any case, its contractual activity will be subject to the provisions of Article 13 of this law.

(See the Constitutional Court's ruling through Ruling C-086 of 1995, which declared the contested sections of article 32 CONSTITUTIONAL.)

PARAGRAPH 2.- Regulated by National Decree 4533 of 2008, Repealed by art. 39, Law 1508 of 2011.

ARTICLE 33.- On the Concession of Telecommunications Services and Activities. Telecommunications activity is understood to mean the

Machine Translated by Google

establishment of a telecommunications network, for private and exclusive use, in order to satisfy private telecommunications needs, and without connection to the State's switched networks or to other private telecommunications networks. For all legal purposes, telecommunications activities are considered private services.

Telecommunications services are understood to be those provided by legal entities, public or private, duly constituted in Colombia, with or without profit motive, in order to satisfy specific telecommunications needs of third parties, within the national territory or in connection with abroad.

For the purposes of this Law, the classification of public services and telecommunications activities shall be that established in Decree-Law 1900 of 1990 or in other regulations that clarify, modify or repeal it.

Telecommunication services and activities will be provided through a concession granted by direct contract or through licenses by the competent entities, in accordance with the provisions of Decree-Law 1900 of 1990 or the regulations that replace, modify or add to it.

The qualifications of natural or legal persons, public or private, and the legal and technical requirements and conditions that must be met by concessionaires of telecommunications services and activities, will be those provided for in the current telecommunications regulations and statutes.

Paragraph.- The procedures, contracts, forms of association and awarding of telecommunications services covered by Law 37 of 1993 shall continue to be governed by the provisions of said law and the provisions that develop or complement it. Television services shall be awarded by contract, in accordance with the legal norms and special provisions on the subject matter.

(NOTE: Article 73 of Law 1341 of 2009, provided that without prejudice to the transition regime provided for in the aforementioned Law, all provisions contrary to it are hereby repealed, including the relevant provisions of articles 33, 34, 35 and 38 of Law 80 of 1993, exclusively insofar as they refer to services, networks, activities and providers, and insofar as they are contrary to the rules and principles contained in the new legislation.)

(See Law 37 of 1993; See National Decrees 453, 741 and 2061 from 1993 and 855 (from 1994.)

ARTICLE 34.- On the Concession of National and International Long Distance Telephone Service. The concession for the provision of basic fixed switched national and international long distance telephone services shall be granted in accordance with the provisions of Decree 2122 of 1992.

(NOTE: Article 73 of Law 1341 of 2009, provided that without prejudice to the transition regime provided for in the aforementioned Law, all provisions contrary to it are hereby repealed, including the relevant provisions of articles 33, 34, 35 and 38 of Law 80 of 1993, exclusively insofar as they refer to services, networks, activities and providers, and insofar as they are contrary to the rules and principles contained in the new legislation.)

ARTICLE 35.- On Audio Broadcasting. (Repealed by Article 73 of Law 1341 of 2009)

ARTICLE 36.- Duration and Extension of the Concession. Repealed by art. 32, Law 1150 of 2007. The term of duration of the concessions for the provision of telecommunications services and activities may not exceed ten (10) years, which may be automatically extended for an equal period. Within the year following the automatic extension, the concession will be formalized.

Paragraph 1.- Current contracts for the provision of sound broadcasting services are automatically extended for the term for which they were granted, as long as it does not exceed ten (10) years.

(The underlined text and the Paragraph were declared UNCONSTITUTIONAL by the Constitutional Court through Sentence C-949 (from 2001.)

(NOTE: Art. 36 was regulated by National Decree 1696 (from 2002.)

(See National Decree 1480 (from 1994)

ARTICLE 37.- Repealed by art. 50, Law 1369 of 2009. On the Regime of Concessions and Licences for Postal Services. Postal services include the provision of mail services and specialized courier services.

Mail service is understood to mean the provision of postal and telegraphic money orders, as well as the receipt, classification and delivery of correspondence and other postal items transported by surface and air within the national territory. The international mail service shall be provided in accordance with the international conventions and agreements signed with the Universal Postal Union and the member countries.

Specialized courier service is understood to be the type of postal service provided independently of the official national and international postal networks, which requires the application and adoption of special characteristics for the reception, collection and personalized delivery of transported objects, by surface and air, within the national scope and in connection with the exterior.

The National Government will regulate the qualities, conditions and requirements that natural and legal persons must meet to provide postal services. It will also establish the rights, rates and tariffs that will regulate the concessions and licenses for the provision of postal services.

postal services.

PARAGRAPH 1.- The provision of postal services will be granted by contract, through the objective selection procedure provided for in this Law. The provision of specialized courier services will be granted directly by license.

PARAGRAPH 2.- The term of duration of the concessions for the provision of postal services may not exceed five (5) years, but may be extended before its expiration for the same period.

(See the Constitutional Court's ruling through Ruling C-407 of 1994, which declared the contested sections of article 37 CONSTITUTIONAL.)


(See National Decree 1697 (from 1994)

ARTICLE 38.- On the Special Regime for State Entities Providing Telecommunications Services. State entities whose purpose is to provide telecommunications services and activities, in the contracts they enter into for the acquisition and supply of equipment, construction, installation and maintenance of networks and the sites where they are located, shall not be subject to the selection procedures provided for in this Law.


The internal statutes of these entities will determine the exceptional clauses that may be agreed upon in the contracts, in accordance with the nature of each one of them, as well as the procedures and amounts to which they must be subject for their conclusion.

The procedures adopted by the aforementioned state entities in compliance with the provisions of this article must develop the principles of objective selection, transparency, economy and responsibility established in this Law.

(NOTE: Article 73 of Law 1341 of 2009, provided that without prejudice to the transition regime provided for in the aforementioned Law, all provisions contrary to it are hereby repealed, including the relevant provisions of articles 33, 34, 35 and 38 of Law 80 of 1993, exclusively insofar as they refer to services, networks, activities and providers, and insofar as they are contrary to the rules and principles contained in the new legislation.)


(See art. 31, Law 142 1994, See the Concept of the Council of State 666 (from 1995.)

ARTICLE 39.- On the Form of the State Contract. Contracts entered into by state entities shall be in writing and shall not require being formalized as a public deed, with the exception of those that imply a change of ownership or the imposition of liens and easements on real estate, and in general those that, in accordance with current legal regulations, must comply with said formality.

State entities shall establish the measures required for the preservation, immutability and security of the originals of state contracts.


(See the Concepts of the Council of State 596 of 1994 and 666 of 1995; See the Concept of the General Sec. 1925 (from 1999.)

PARAGRAPH.- Repealed by art. 32, Law 1150 of 2007. There will be no place for the celebration of a contract with full formalities when it concerns contracts whose values correspond to those listed below, determined based on the annual budgets of the entities to which this Law applies, expressed in legal monthly minimum wages.


For entities with an annual budget equal to or greater than 6,000,000 legal minimum monthly wages, when the value of the contract is equal to or less than 2,500 legal minimum monthly wages; those with an annual budget equal to or greater than 4,000,000 legal minimum monthly wages and less than 6,000,000 legal minimum monthly wages, when the value of the contract is equal to or less than 1,000 legal minimum monthly wages; those with an annual budget equal to or greater than 2,000,000 legal minimum monthly wages and less than 4,000,000 legal minimum monthly wages, when the value of the contract is equal to or less than 300 legal minimum monthly wages; those with an annual budget equal to or greater than 1,000,000 legal minimum monthly wage and less than 2,000,000 times the legal minimum monthly wage when the value of the contract is equal to or less than 50 times the legal minimum monthly wage; those with an annual budget equal to or greater than 500,000 times the legal minimum monthly wage and less than 1,000,000 times the legal minimum monthly wage, when the value of the contract is equal to or less than 40 times the legal minimum monthly wage; those with an annual budget equal to or greater than 250,000 times the legal minimum monthly wage and less than 500,000 times the legal minimum monthly wage, when the value of the contract is equal to or less than 30 times the legal minimum monthly wage; Those with an annual budget equal to or greater than 120,000 and less than 250,000 legal minimum monthly wages, when the value of the contract is equal to or less than 20 legal minimum monthly wages, and those with an annual budget less than 120,000 legal minimum monthly wages, when the value of the contract is equal to or less than 15 legal minimum monthly wages.


In these cases, the works, jobs, goods or services that are the object of the contract must be ordered in advance and in writing by the head or legal representative of the entity, or by the official to whom the management of the expenditure has been delegated.

(See National Decree 679 of 1994; See the Concept of the Council of State 596 of 1994; See the Concept of General Sec. 2125 (from 1998.)

ARTICLE 40.- Content of the State Contract. The stipulations of the contracts shall be those that, in accordance with civil and commercial regulations and those provided for in this Law, correspond to their essence and nature.

Entities may enter into contracts and agreements that allow for autonomy of will and require compliance with the purposes

Machine Translated by Google

**Administrative Department of the Civil Service**

state.

In the contracts entered into by state entities, the modalities, conditions and, in general, the clauses or stipulations that the parties consider necessary and convenient may be included, provided that they are not contrary to the Constitution, the law, public order and the principles and purposes of this Law and those of good administration.

In loan contracts or any other form of financing of multilateral organizations, the provisions and particularities contemplated in the regulations of such entities, which are not contrary to the Constitution or the law, may be included.

PARAGRAPH.- In contracts entered into by state entities, advance payment and delivery of advances may be agreed upon, but their amount may not exceed fifty percent (50%) of the value of the respective contract.

Contracts may not be added by more than fifty percent (50%) of their initial value, expressed in legal monthly minimum wages.

Addition and modification of state contracts. During the duration of the Health Emergency declared by the Ministry of Health and Social Protection, due to the pandemic derived from the Coronavirus COVID-19, all contracts entered into by state entities that are related to goods, works or services that allow for better management and mitigation of the emergency situation due to the pandemic derived from the Coronavirus COVID-19, may be added without limitation to the value. For this purpose, the state entity must previously justify the need and the way in which said goods and services will contribute to managing or mitigating the emergency situation.

Likewise, this provision will apply to contracts entered into during the duration of the Health Emergency declared by the Ministry of Health and Social Protection, on the occasion of the pandemic derived from the Coronavirus COVID-19, and during the term that said state is in force.

(Subsections, added by Art. 8 of Decree 537 of 2020)

(See State Council Concept 1121 of 1998, as well as Ruling 10399 of 2000; See the Concept of General Sec. 2125 of 1998, See the Concept of the Council of State 1920 (from 2008.)

ARTICLE 41.- Perfection of the Contract. State contracts are perfected when an agreement is reached on the object and the consideration and this is put into writing.

Art. 23 of Law 1150 of 2007, modified the second paragraph of this article as follows: For the execution, the approval of the guarantee and the existence of the corresponding budgetary availability will be required, unless it is a contract with resources from future fiscal years in accordance with the provisions of the organic budget law. The proponent and the contractor must prove that they are up to date in the payment of parafiscal contributions related to the Comprehensive Social Security System, as well as those of SENA, ICBF and Family Compensation Funds, when applicable.

Previous text:

For the execution, the approval of the guarantee and the existence of the corresponding budgetary availability will be required, unless it is a contract with resources from future fiscal years in accordance with the provisions of the organic budget law.

State contracts are "Intuito personae" and, consequently, once signed, they cannot be transferred without prior written authorization from the contracting entity.

In the event of manifestly urgent situations as referred to in Article 42 of this Law which do not permit the signing of a written contract, the latter shall be disregarded, as shall even the agreement on remuneration; however, a written record of the authorization given by the contracting State entity must be kept. In the absence of a prior agreement on the remuneration referred to in the previous paragraph, the economic consideration shall be agreed upon after the start of the execution of the contracted action. If no agreement is reached, the consideration shall be determined by the objective fair price of the respective entity or body that has the character of an advisory body to the Government and, in the absence of this, by an expert appointed by the parties.

(See Article 26 National Decree 679 of 1994)

PARAGRAPH 1.- Modified by art. 23, Law 1150 of 2007 as follows: The requirement established in the final part of the second paragraph of this article must be accredited for the realization of each payment derived from the state contract.

Any public servant who, without just cause, fails to verify payment of the contributions referred to in this article shall incur misconduct, which shall be sanctioned in accordance with the disciplinary regime in force.

Previous text:

PARAGRAPH 1.- Judgment C 772 of 1998 declared unconstitutional Constitutional Court. For the purposes of the provisions of this article, the administrative authority shall directly make the budgetary adjustments or modifications that may be necessary in accordance with the provisions of the organic budget law.

Machine Translated by Google

PARAGRAPH 2.- Public Credit Operations. Without prejudice to the provisions of special laws, for the purposes of this law, public credit operations are considered to be those whose purpose is to provide the entity with resources with a term for payment, including the contracting of loans, the issuance, subscription and placement of bonds and securities, supplier credits and the granting of guarantees for payment obligations by state entities.

Likewise, state entities may enter into operations specific to debt management, such as refinancing, restructuring, renegotiation, reorganization, conversion, substitution, purchase and sale of public debt, payment agreements, risk coverage, those aimed at reducing the value of the debt or improving its profile, as well as capitalization with asset sales, securitization and any operations of a similar nature that may be developed in the future. For the purposes of developing asset and investment securitization processes, autonomous assets may be established with entities subject to the supervision of the Banking Superintendency, as well as when they are intended for the payment of labor liabilities.

When the operations indicated in the previous section refer to external public credit operations or similar, prior authorization from the Ministry of Finance and Public Credit will be required, which may be granted generally or individually, depending on the amount and type of operation.

For the management and execution of any external credit operation and operations assimilated to these by state entities and for internal public credit operations and operations assimilated to these by the Nation and its decentralized entities, as well as for the granting of the Nation's guarantee, the authorization of the Ministry of Finance and Public Credit will be required, after the favorable opinions of CONPES and the National Planning Department.

The National Government, through a regulatory decree to be issued no later than December 31, 1993, based on the amount and type of operations, their impact on the orderly management of the economy and on the organic principles of this Contracting Statute, may determine the cases in which the aforementioned concepts are not required, as well as issue general authorizations for said operations. In any case, the external public credit operations of the Nation and those guaranteed by it, with a term of more than one year, will require a prior opinion of the Interparliamentary Commission on Public Credit.

The internal public credit operations of territorial entities and their decentralized entities shall be regulated by the provisions contained in Decrees 1222 and 1333 of 1986, which remain in force, except as expressly provided for in this Law. In any case, prior to the disbursement of resources from these operations, they must be registered with the General Directorate of Public Credit of the Ministry of Finance and Public Credit.

In accordance with the general conditions established by the monetary authority, the issuance, subscription and placement of internal public debt securities of territorial entities and their decentralized entities will require prior authorization from the Ministry of Finance and Public Credit and a prior favorable opinion from the departmental or district planning bodies, as the case may be.

Each of the required concepts and authorizations must be produced within a period of two months, counting from the date on which the agencies that must issue them receive the required documentation in full. After this period has elapsed for each agency, the respective concept or authorization will be deemed to have been granted.

In no case will the Nation's guarantee be granted to internal public credit operations of territorial entities and their decentralized entities, or to operations of private individuals.

The operations referred to in this article and those related to them shall be contracted directly. Their publication, if applicable, shall be carried out in the Official Journal when it concerns operations of the Nation and its decentralized entities. For operations of the Nation and its decentralized entities, this requirement shall be deemed to be fulfilled on the date of the publication order issued by the Director General of Public Credit of the Ministry of Finance and Public Credit, in decentralized entities of the national order on the date of payment of the corresponding fees by the contracting entity. Except for what is determined by the Council of Ministers, any stipulation that obliges the borrowing state entity to adopt measures regarding prices, tariffs and, in general, the commitment to assume decisions or actions on matters of its exclusive competence, by virtue of its public nature, is prohibited. Likewise, in guarantee contracts, the Nation may only guarantee payment obligations.

The operations referred to in this article and which are carried out to be executed abroad shall be subject to the jurisdiction agreed upon in the contracts.

PARAGRAPH 3- . Repealed by art. 225, National Decree 019 of 2012, effective June 1, 2012. Except as provided in the preceding paragraph, once the contract has been concluded, its publication shall be requested in the Official Journal or Official Gazette corresponding to the respective territorial entity, or in the absence of such means, by some mechanism determined in a general manner by the territorial administrative authority, which allows the inhabitants to know its content. When an official means of dissemination is used, this requirement is deemed to be fulfilled with the payment of the corresponding fees.

(NOTE: Article regulated by National Decrees 327 and 941 (from 2002)

(See art. 59 of Law 190 of 1995; See National Decree 2681 of 1993, 679 from 1994 and 1477 of 1995; See the Concept of the Council of State 1024 of 1997; See the Concept of the General Sec. 1925 of 1999; 40 of 2002; 29 (from 2010)

ARTICLE 42.- Manifest Urgency. Manifest urgency exists when the continuity of the service requires the supply of goods, or the rendering of services, or the execution of works in the immediate future, when situations related to States of Exception arise; when it is a matter of averting exceptional situations related to calamity or constituting force majeure or disaster that demand immediate action and, in general, when it involves similar situations that make it impossible to resort to selection procedures or public competitions.

--------

Manifest urgency is declared by means of a reasoned administrative act.

The expression "Contest" was repealed by art. 32 of Law 1150 of 2007.

PARAGRAPH.- In order to meet the needs and expenses inherent to the manifest urgency, the internal budget transfers required within the budget of the corresponding state agency or entity may be made.

(Paragraph declared CONSTITUTIONAL by the Constitutional Court through Sentence C 772 of 1998, with the understanding that the internal budget transfers referred to in said regulation will be carried out exclusively affecting the annex of the Budget liquidation decree.)

ARTICLE 43.- Control of Urgent Contracting. Immediately after the contracts originating from manifest urgency have been executed, these and the administrative act that declared it, together with the file containing the administrative background, the performance and the evidence of the facts, will be sent to the official or agency that exercises fiscal control in the respective entity, which must pronounce itself within the following two (2) months on the facts and circumstances that determined such declaration.

If appropriate, the said official or agency will request the immediate superior of the public servant who entered into the aforementioned contracts or the competent authority, as the case may be, to initiate the corresponding disciplinary investigation and will order the matter to be sent to the competent officials for further action. The improper use of emergency contracting will be grounds for misconduct.

The provisions of this article shall be understood without prejudice to other control mechanisms indicated in the regulations to guarantee the appropriate and correct use of emergency contracting.

IV. NULLITY OF CONTRACTS

ARTICLE 44.- Grounds for Absolute Nullity. State contracts are absolutely null in the cases provided for in common law and also when:

1st. They are held with persons who incur in causes of disqualification or incompatibility provided for in the Constitution and the law;

2nd. They are held against an express constitutional or legal prohibition.

3rd. They are celebrated with abuse or misuse of power.

4th. The administrative acts on which they are based are declared null and void; and

5th. They have been entered into without knowledge of the criteria provided for in Article 21 on the treatment of national and foreign offers or in violation of the reciprocity provided for in this Law.

ARTICLE 45.- Absolute Nullity Absolute nullity may be alleged by the parties, by the agent of the Public Ministry, by any person or declared ex officio, and is not susceptible to rectification by ratification.

In the cases provided for in paragraphs 1, 2 and 4 of the previous article, the head or legal representative of the respective entity must terminate the contract by means of a duly motivated administrative act and order its liquidation in the state in which it is found.

(NOTE: The Constitutional Court in Judgment C-1048 of 2001, states: "iii) Outside the issue of the separability of prior acts, the provision in question also modified article 45 of Law 80 of 1993, which had expanded the ownership of the action for absolute nullity of state contracts, by having provided that it could be alleged "...by the parties, by the agent of the Public Ministry, by any person or declared ex officio..." Now, according to the third paragraph not challenged of the provision under review, only "any third party who proves a direct interest may request that its absolute nullity be declared.").

ARTICLE 46.- Relative Nullity. Other defects that occur in contracts and that, according to common law, constitute grounds for relative nullity, may be cured by express ratification of the interested parties or by the passage of two (2) years from the occurrence of the event that generated the defect.

ARTICLE 47.- Partial Nullity. The nullity of one or more clauses of a contract shall not invalidate the entire act, except when the latter could not exist without the defective part.

ARTICLE 48.- Effects of Nullity The declaration of nullity of a contract of successive execution will not prevent the recognition and payment of the services executed up to the time of the declaration.

Recognition and payment of the services performed under a contract that is void due to an unlawful purpose or cause shall be granted when it is proven that the state entity has benefited and only up to the amount of the benefit it has obtained. It shall be understood that the state entity has benefited to the extent that the services performed have served to satisfy a public interest.

ARTICLE 49.- On the Correction of Procedural or Formal Defects. In the event of defects that do not constitute grounds for nullity and when the needs of the service require it or the rules of good administration so advise, the Head or legal representative of the entity, in a reasoned act, may correct the corresponding defect.

## V. CONTRACTUAL LIABILITY

ARTICLE 50.- Responsibility of State Entities. Entities shall be liable for any unlawful actions, abstentions, acts and omissions that are attributable to them and that cause harm to their contractors. In such cases, they shall compensate for any resulting decrease in assets, the prolongation of the same and any profit, benefit or gain not received by the contractor.

(The underlined text was declared CONSTITUTIONAL by the Constitutional Court through Sentence C-333 of 1996, on the understanding that it must be interpreted in accordance with article 90 of the Constitution, since this constitutional provision also applies in relation to the contractual responsibility of the State.)

ARTICLE 51.- Responsibility of Public Servants. Public servants shall be held disciplinarily, civilly and criminally liable for their actions and omissions in contractual performance under the terms of the Constitution and the law.

ARTICLE 52.- Liability of Contractors Contractors shall be civilly and criminally liable for their actions and omissions in contractual performance under the terms of the law. Consortia and temporary unions shall be liable for the actions and omissions of their members, under the terms of article 7 of this Law.

ARTICLE 53.- Responsibility of Consultants, Supervisors and Advisors Modified by art. 82, Law 1474 of 2011. (Modified by art. 2 of Law 1882 of 2018) External consultants and advisors shall be held civilly, fiscally, criminally and disciplinarily liable both for the fulfilment of the obligations arising from the consultancy or advisory contract entered into by them, and for the acts or omissions attributable to them that constitute non-compliance with the obligations corresponding to such contracts and that cause damage or harm to the entities, arising from the celebration and execution of contracts in respect of which they have exercised or are exercising consultancy or advisory activities, including the liquidation stage thereof.


For their part, the auditors shall be held civilly, fiscally, criminally and disciplinarily liable for both the fulfillment of the obligations arising from the auditor contract and for any acts or omissions that are attributable to them and cause damage or harm to the entities, arising from the celebration and execution of the contracts for which they have exercised or are exercising the auditor functions, including the liquidation stage thereof, provided that such damages arise from non-compliance or direct liability on the part of the auditor for the obligations that correspond to him in accordance with the auditor contract.

*jurisprudence*

ARTICLE 54.- On the Action for Repetition Repealed by art. 30, Law 678 of 2001. In the event of a conviction by an entity for acts or omissions attributable to wilful misconduct or gross negligence on the part of a public servant, the entity, the Public Prosecutor's Office, any person or, ex officio, the competent judge, shall initiate the respective action for recourse, provided that the latter has not been called as a guarantor in accordance with the regulations in force on the matter.

ARTICLE 55.- On the Prescription of Contractual Liability Actions The civil action derived from the actions and omissions referred to in articles 50, 51, 52 and 53 of this law will prescribe within the term of twenty (20) years, counted from the occurrence of the same.

The disciplinary action will be subject to a statute of limitations of ten (10) years. The criminal action will be subject to a statute of limitations of twenty (20) years.

ARTICLE 56.- Criminal Liability of Private Parties Involved in State Contracting. For criminal purposes, the contractor, the inspector, the consultant and the advisor are considered private parties who perform public functions in everything related to the celebration, execution and liquidation of contracts they celebrate with state entities and, therefore, they will be subject to the liability that the law establishes for public servants in this matter.


ARTICLE 57.- Violation of Contracting Regulations. Any public servant who engages in any of the conduct classified in articles 144, 145 and 146 of the Penal Code shall be subject to imprisonment from four (4) to twelve (12) years and a fine of twenty (20) to one hundred and fifty (150) legal monthly minimum wages.

ARTICLE 58.- Sanctions. As a consequence of the actions or omissions imputed to them in relation to their contractual performance, and without prejudice to the sanctions and disqualifications indicated in the Political Constitution, the persons referred to in this chapter shall be entitled to:


1st.- In the event of a declaration of civil liability, payment of compensation in the form and amount determined by the competent judicial authority.


2nd.- In the event of a declaration of disciplinary responsibility, dismissal.

Machine Translated by Google

3rd. In the event of a declaration of civil or criminal liability and without prejudice to disciplinary sanctions, public servants shall be disqualified from holding public office and from proposing and entering into contracts with state entities for ten (10) years from the date of execution of the respective sentence. Individuals declared civilly or criminally liable shall be subject to the same sanction.

(See the State Council's Concept 624 (from 1994).

4th.- In cases where a final precautionary measure has been issued or a list of charges has been submitted, the competent authority may, for the purpose of safeguarding proper public administration, provisionally suspend the accused or indicted public servant for the duration of the precautionary measure or the disciplinary investigation.

(NOTE: The Constitutional Court, when resolving the claim of unconstitutionality of the challenged sections of numeral 4, in Judgment C-04 of 1996, states: "The challenged rule, insofar as it empowers the competent authority to suspend the public servant against whom a charge sheet has been filed, for up to the term of the duration of the disciplinary investigation, is repealed by the rules of Law 200 of 1995, by means of which the Single Disciplinary Code was adopted, which in arts. 115 and 116 regulated everything related to the provisional suspension of the official or employee against whom a disciplinary investigation is conducted that deals with very serious or grave faults, and in art. 177 "repeals the general or special provisions that regulate disciplinary matters at the national, departmental, district or municipal level or that are contrary to it, except for the special regimes of the public force in accordance with art. 175 of this Code.").

5th.- In the event that a final security measure has been issued against an individual, for actions or omissions attributed to him in relation to his contractual performance, the respective Chamber of Commerce will be informed of such circumstance, which will immediately proceed to register said measure in the registry of proponents.

The head or legal representative of the state entity who fails to comply with this obligation will incur a cause for misconduct.

6th.- In the event that a final precautionary measure has been issued against the legal representative of a private legal entity, as a result of acts or omissions imputed to it in relation to its contractual performance, the latter shall be disqualified from proposing and entering into contracts with state entities for the entire duration of the precautionary measure. If a conviction is issued against said legal representative, the legal entity shall be disqualified from proposing and entering into contracts with state entities for ten (10) years from the date of execution of said sentence. The legal entity declared civilly liable due to acts or omissions imputed to it in relation to its contractual performance shall be subject to the same sanction.

(See the Constitutional Court Ruling C- 178 (from 1996).

ARTICLE 59.- Content of Sanctioning Acts. The determination of liability referred to in the previous articles shall be made by the competent authorities in a reasoned ruling which shall specify the facts that give rise to it, the reasons and circumstances for the quantification of the compensation to which there is a right, and the elements used for the sanctioning dosimetry. Likewise, it shall indicate the means of challenge and defense that may be used against such acts, the term provided for this, and the authority before whom it should be attempted.

## VI OF THE SETTLEMENT OF CONTRACTS

ARTICLE 60.- Its Occurrence and Content. Modified by art. 217, National Decree 019 of 2012. Contracts of successive performance, those whose execution or fulfillment is extended over time and others that require it, will be subject to liquidation.

At this stage, the parties will also agree on any adjustments, revisions and acknowledgements that may be necessary.

The settlement minutes shall record the agreements, conciliations and transactions reached by the parties to put an end to the differences presented and to be able to declare peace and safety.

For the liquidation, the contractor will be required to extend or expand, if applicable, the contract guarantee for the stability of the work, the quality of the goods or services supplied, the provision of spare parts and accessories, the payment of salaries, benefits and compensation, civil liability and, in general, to guarantee the obligations that must be fulfilled after the termination of the contract.

The settlement referred to in this article shall not be mandatory in contracts for the provision of professional services and management support."

(See judgment C-967 of 2012 of the Constitutional Court)

*jurisprudence*

ARTICLE 61.- Unilateral Liquidation. Repealed by art. 32, Law 1150 of 2007. If the contractor does not appear at the liquidation or the parties do not reach an agreement on the content of the same, it will be carried out directly and unilaterally by the entity and will be adopted by a reasoned administrative act susceptible to appeal for reconsideration.

## VII OF CONTRACTUAL MANAGEMENT CONTROL

Machine Translated by Google

ARTICLE 62.- Intervention by the Public Prosecutor's Office. The Office of the Attorney General of the Nation and other agents of the Public Prosecutor's Office, ex officio or at the request of any person, shall conduct investigations into compliance with the principles and purposes of state contracting and shall promote the pertinent actions aimed at obtaining financial and disciplinary sanctions for those who violate such regulations.

ARTICLE 63.- Visits and Reports. The Office of the Attorney General shall conduct visits to state entities ex officio and with the frequency required for the protection of public resources and the rule of morality, legality and honesty in public administration.

During the visits, the conduct of which will be widely publicised, the local trade and community associations will be heard and the administrators will be given the opportunity to make any complaints they deem appropriate.

The conclusions of the visits will be left in written reports that will be made known to the respective community and will be forwarded to the heads of the entities and to those who appear to be involved in the commission of unlawful conduct.

Copies of such reports will be sent to the Attorney General's Office or the respective delegate so that they, if applicable, may comply with the function referred to in the following article.

The inspector will require the citizens to identify themselves and will warn them of the consequences of making reckless complaints.

ARTICLE 64.- Participation of the Attorney General's Office. The Attorney General's Office, ex officio or by complaint, will investigate conduct constituting punishable offenses in contractual activity and will accuse the alleged offenders before the competent judges.

The Office of the Attorney General of the Nation shall create specialized units for the investigation and prosecution of punishable offenses committed in connection with the contractual activities covered by this Law.

ARTICLE 65.- Intervention of the Authorities that exercise Fiscal Control. The intervention of the fiscal control authorities will be exercised once the administrative procedures for legalization of the contracts have been exhausted. Likewise, subsequent control will be exercised on the accounts corresponding to the payments originated in them, to verify that these were in accordance with the legal provisions.

Once the contracts have been liquidated or terminated, as appropriate, fiscal oversight will include financial, management and results control based on efficiency, economy, equity and assessment of environmental costs.

The prior administrative control of contracts is the responsibility of the internal control offices.

Fiscal control authorities may require reports on their contractual management from public servants of any order.

The above, without prejudice to the preventive and concomitant control exercised by the Office of the Comptroller General of the Republic. Which will be carried out in real time - through permanent monitoring of the cycles, use, execution, contracting and impact of public resources, through the use of information technologies, with the active participation of social control and with the articulation of internal control.

(Modified by Law 2160 of 2021, Art. 4)

*jurisprudence*

ARTICLE 66.- Community Participation. All contracts entered into by state entities shall be subject to citizen oversight and control.

Community civic associations of professionals, charities or those of common benefit may report to the competent authorities any actions, acts or omissions of public servants or individuals that constitute crimes, violations or offences in matters of state contracting.

The authorities will provide special support and collaboration to individuals and associations that undertake control and monitoring campaigns for public contractual management and will promptly provide the documentation or information they require to carry out such tasks.

The National Government and the territorial entities will establish systems and mechanisms to encourage community surveillance and control in contractual activities aimed at rewarding such work.

State entities may contract with professional and trade associations and with universities and specialized research centers, the study and analysis of the contractual procedures carried out.

Machine Translated by Google

ARTICLE 67.- Collaboration of Government Advisory Bodies. Professional, university or trade union organizations or entities that have the status of advisory bodies to the Government shall provide the collaboration that state entities require in contractual activity.

They may also serve as arbitrators to resolve technical disputes that arise during the development of the contract or in connection with it.

VIII. OF THE SOLUTION OF CONTRACTUAL DISPUTES

ARTICLE 68.- On the Use of Direct Resolution Mechanisms for Contractual Disputes. (paragraphs 1 and 2 repealed) Article 226 of the statute on alternative dispute resolution mechanisms - Extraordinary Decree 1818 of 1998 was repealed by article 118 of Law 1563 of 2012.

Paragraph.- Contractual administrative acts may be revoked at any time, provided that no final judgment has been issued against them.

ARTICLE 69.- On the Inadmissibility of Prohibiting the Use of Direct Resolution Mechanisms. Article 227 of the statute of alternative conflict resolution mechanisms - Extraordinary Decree 1818 of 1998 was repealed by Article 118 of Law 1563 of 2012.

ARTICLE 70.- On the Compromissory Clause. Repealed by art. 118, Law 1563 of 2012. In state contracts, the arbitration clause may be included in order to submit to the decision of arbitrators the different differences that may arise due to the conclusion of the contract and its execution, development, determination or liquidation.

The arbitration will be based on law. There will be three (3) arbitrators, unless the parties decide to use a sole arbitrator. In disputes of lesser value there will be only one arbitrator.

The appointment, requirement, constitution and operation of the arbitration tribunal shall be governed by the regulations in force on the matter.

The arbitrators may extend the duration of the Tribunal by half of that initially agreed upon or legally established, if this is necessary for the production of the respective award.

Paragraph 4 of Article 70 was modified by Article 4 of Law 315 of 1996, as follows: In contracts with foreign persons, as well as those with national persons, and in which long-term financing and payment systems are foreseen through the exploitation of the constructed object or operation of goods for the celebration of a public service, it may be agreed that the differences arising from the contract will be submitted to the decision of an International Arbitration Court.

(The underlined text was declared UNCONSTITUTIONAL by the Constitutional Court through Sentence C-347 (from 1997.)

Previous text:

In contracts with foreign persons and in those that include long-term financing, payment systems through the exploitation of the constructed object or operation of assets for the provision of a public service, it may be agreed that the differences arising from the contract will be submitted to the decision of an arbitration court appointed by an international organization.

(NOTE: Art. 70 was declared CONSTITUTIONAL by the Constitutional Court through Sentence C-1436 of 2000, on the understanding that the arbitrators appointed to resolve conflicts arising from the celebration, development, termination and liquidation of contracts entered into between the State and private individuals, do not have jurisdiction to rule on administrative acts issued by the administration in the exercise of its exceptional powers.)

ARTICLE 71.- Commitment. Repealed by art. 118, Law 1563 of 2012. When no arbitration clause has been agreed in the contract, either party may request the other to sign a commitment to convene an arbitration court in order to resolve the differences arising from the conclusion of the contract and its execution, development, termination or liquidation.

The signed commitment document will indicate the subject matter of the arbitration, the designation of arbitrators, the place where the court will operate and the manner in which the costs of the court will be provided.

(NOTE: Art. 71 was declared CONSTITUTIONAL by the Constitutional Court through Sentence 1436 of 2000, on the understanding that the arbitrators appointed to resolve conflicts arising from the celebration, development, termination and liquidation of contracts entered into between the State and private individuals, do not have jurisdiction to rule on administrative acts issued by the administration in the exercise of its exceptional powers.)

ARTICLE 72.- Modified by art. 22, Law 1150 of 2007, as follows: Regarding the appeal for annulment of the arbitration award. Repealed by art. 118, Law 1563 of 2012. An appeal for annulment of the arbitration award may be filed. This appeal must be filed in writing before the Arbitration Court within five (5) days following notification of the award or the order correcting, clarifying or supplementing it.

Machine Translated by Google

The appeal will be submitted to the Third Section of the Administrative Litigation Chamber of the Council of State.

The grounds for annulment of the award are those provided for in article 38 of Decree 2279 of 1989 or the regulations that modify, repeal or replace it.


Previous text:

From the Appeal for Annulment Against the Arbitration Award. The appeal for annulment of the arbitration award is admissible. This appeal must be filed in writing before the Arbitration Court within five (5) days following notification of the award or the order that corrects, clarifies or complements it.


The appeal will be submitted to the Third Section of the Administrative Litigation Chamber of the Council of State.

The following are grounds for annulment of the award:

1st.- When, without legal grounds, evidence duly requested is not ordered, or the necessary steps to evacuate it have not been carried out, provided that such commissions have an impact on the decision and the interested party has requested them in the due form and time.


2nd.- A decision has been made in conscience when it should have been made in law, provided that this circumstance appears clearly in the award.

3rd.- The operative part of the award must contain arithmetic errors or contradictory provisions, provided that they have been duly alleged before the Arbitration Tribunal.


4th.- The award was made on points not subject to the decision of the arbitrators or more was granted than requested.

5th.- Not having decided on issues subject to arbitration

The procedure and effects of the appeal shall be governed by the provisions in force on the matter.

ARTICLE 73.- Collaboration between Professional Associations and Chambers of Commerce. It may be agreed to resort to institutional conciliation and arbitration centers of professional associations, trade unions and chambers of commerce to settle disputes arising from the contract.


ARTICLE 74.- Technical Arbitration or Expertise. Article 231 of the statute of alternative mechanisms for conflict resolution - Extraordinary Decree 1818 of 1998 was repealed by article 118 of Law 1563 of 2012.

ARTICLE 75.- Competent Judge. Without prejudice to the provisions of the preceding articles, the judge competent to hear disputes arising from state contracts and execution or compliance proceedings shall be the judge of the administrative litigation jurisdiction.


PARAGRAPH 1.- Once the evidence has been collected in the proceedings, the judge will summon the plaintiffs and defendants to appear in person or through a representative at the conciliation hearing. Said hearing will be subject to the rules provided for in article 101 of the Civil Procedure Code and efforts will be made to ensure that it is conducted by persons other than those who participated in the production of the acts or in the situations that caused the discrepancies.


PARAGRAPH 2.- In the event of conviction in proceedings arising from contractual disputes, the judge, if he finds the existence of recklessness in the non-conciliatory position of any of the parties, will condemn the same or the public servants who intervened in the corresponding conversations, to cancel fines in favor of the National Treasury of five (5) to two hundred (200) legal monthly minimum wages.

PARAGRAPH 3.- In proceedings arising from disputes of a contractual nature, any of the parties shall be ordered to pay costs, provided that it is found that the conduct in the previous paragraph occurred.

IX. MISCELLANEOUS PROVISIONS

ARTICLE 76.- Contracts for the Exploration and Exploitation of Natural Resources. Contracts for the exploration and exploitation of renewable and non-renewable natural resources, as well as those concerning marketing and other commercial and industrial activities of state entities responsible for these matters, shall continue to be governed by the special legislation applicable to them. State entities engaged in such activities shall determine in their internal regulations the procedure for selecting contractors, the exceptional clauses that may be agreed upon, the amounts and the procedures to which they must be subject.


The procedures adopted by the aforementioned state entities will develop the duty of objective selection and the principles of transparency, economy and responsibility established in this Law.

In no case will there be room for administrative approvals or reviews by the Council of Ministers, the Council of State or the Administrative Courts.


ARTICLE 77.- Of the Regulations applicable to administrative actions. As long as they are compatible with the purpose and principles of

This law, the rules governing the procedures and actions in the administrative function, will be applicable in contractual actions.

In the absence of these, the provisions of the Code of Civil Procedure shall apply.

Administrative acts that occur as a result of or on the occasion of contractual activity shall only be subject to appeal for reconsideration and the exercise of contractual action, in accordance with the rules of the Administrative Litigation Code.

PARAGRAPH 1.- The awarding act shall not be subject to administrative appeals. It may be challenged by exercising the action for annulment and restoration of rights, according to the rules of the Administrative Litigation Code.

PARAGRAPH 2.- In order to exercise actions against administrative acts of contractual activity, it is not necessary to sue the contract that gives rise to them.

ARTICLE 78.- On Contracts, Procedures and Processes in progress. Contracts, selection procedures and judicial processes in progress on the date this law comes into effect shall continue to be subject to the regulations in force at the time of their execution or initiation.

ARTICLE 79.- Regulation of the Registry of Proponents. The operation of the registry of proponents in the chambers of commerce will be regulated by the National Government within six (6) months following the promulgation of this Law.

ARTICLE 80.- Adaptation of Statutes. Within six (6) months following the date of promulgation of this law, the competent authorities shall adopt the necessary measures to adapt the statutes of state entities to the provisions of this Law.

ARTICLE 81.- Repeal and Validity. As of the effective date of this law, Decree Law 2248 of 1972; Law 19 of 1982; Decree Law 222 of 1983 are hereby repealed, with the exception of articles 108, 109, 110, 111, 112 and 113; Decree Law 591 of 1991, except for articles 2, 8, 9, 17 and 19; Decree Law 1684 of 1991; the contracting regulations of Decree 700 of 1992, and articles 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263 and 264 of the Administrative Litigation Code; as well as other regulations that are contrary to it.

From the date of promulgation of this law, paragraph 2 of article 2; literal l) of numeral 1 and numeral 9 of article 24; the regulations of this statute related to the concession contract; numeral 8 of article 25; numeral 5 of article 32 on public trust and fiduciary assignment; and articles 33, 34, 35, 36, 37 and 38 on telecommunications services and activities shall come into force.

The other provisions of this law will come into force as of January 1, 1994, with the exception of the rules on registration, classification and qualification of bidders, which will come into force one year after the promulgation of this law.

PARAGRAPH 1.- TRANSITIONAL. This Law will come into force in relation to the Barranquilla Water, Sewerage and Cleaning Company SA, and for everything related to the provision of water, sewerage and cleaning services, three (3) years after its promulgation.

PARAGRAPH 2.- TRANSITIONAL. From the promulgation of this Law, the Government will advance, with the collaboration of the Escuela Superior de Administración Pública (ESAP) and other State Entities, as well as professional and trade organizations or entities, pedagogical activities and dissemination of this statute. Underlined text declared CONSTITUTIONAL by the Constitutional Court through Judgment C-374 from 1994.

REPUBLIC OF COLOMBIA - NATIONAL GOVERNMENT

PUBLISH AND EXECUTE

Given in Santa Fe de Bogotá, DC, October 28, 1993

THE PRESIDENT OF THE REPUBLIC,

CESAR GAVIRIA TRUJILLO.

THE MINISTER OF GOVERNMENT,

FABIO VILLEGAS RAMIREZ.

THE DEPUTY MINISTER OF FINANCE AND PUBLIC CREDIT, IN CHARGE OF THE FUNCTIONS OF THE OFFICE OF THE MINISTER OF FINANCE AND CREDIT PUBLIC,

HECTOR JOSE CHAIN CLAVIJO.

THE MINISTER OF MINES AND ENERGY,

GUIDO NULE AMIN.

THE MINISTER OF COMMUNICATIONS,

WILLIAM JARAMILLO GOMEZ.

THE MINISTER OF PUBLIC WORKS AND TRANSPORT,

JORGE BENDECK OLIVELLA.

NOTE No. 1 Decree 222 of 1983, which issues regulations on contracts of the Nation and its decentralized entities, was repealed by Law 80 of 1993, with the exception of articles 108 to 113, which state:

CHAPTER III

OCCUPATION AND ACQUISITION OF PROPERTY AND IMPOSITION OF EASEMENT

"ARTICLE 108.- Public Utility in the Temporary Occupation, Acquisition and Imposition of Easements on Privately Owned Real Estate. In accordance with current laws, the acquisition and imposition of easements on privately owned real estate shall be considered to be of public utility for all legal purposes, when such acquisition or imposition of easement is necessary for the execution of the contracts defined in article 81 of this statute.

ARTICLE 109.- Temporary occupation and compensation. In exercising the social function of property, the owners, possessors and holders of properties are obliged to allow the temporary occupation of the same when this is necessary for the purposes of the contract provided for in the previous article.

The temporary occupation of a real estate property must be limited to the strictly indispensable space and time, causing the least possible damage.

The entity interested in the respective public works will communicate in writing to the owner, possessor or holder of the property, the need to occupy it temporarily, indicating the extension that will be occupied and the time that it will last, inviting him to agree on the respective price.

The value of this occupation will be agreed taking into account the prices set by experts from the Agricultural, Industrial and Mining Credit Fund, or failing that, the appraisals of the Agustín Codazzi Geographic Institute, carried out for this purpose.

If consent is not obtained for the temporary occupation or there is no agreement on the value to be paid for it, after one (1) month from the communication sent by the interested entity, the occupation will be carried out, for which purpose the entity may request the support of the competent authority.

In any case, if any compensation is due, this will be specified following the procedures provided for in the Administrative Litigation Code.

ARTICLE 110.- Direct denial or expropriation. When necessary, under the terms of this chapter, public entities may acquire all or part of the corresponding properties for direct negotiation with the owners or after the expropriation process regulated by articles 451 and following of the Civil Procedure Code.

In the event contemplated in article 457 of the Civil Procedure Code and after the deposit of the sum referred to therein, the Judge will decree the physical delivery of the property no later than within three (3) days following the presentation of the respective request. The diligence must be carried out within ten (10) days following by the same judge who decreed it, who therefore cannot commission it.

ARTICLE 111.- On the imposition of easements. Privately owned properties must bear all legal easements that are necessary for the construction, assembly, installation, improvements, additions, conservation, maintenance and restoration of public works.

The imposition of an easement for the purposes mentioned in the previous section will be decided by the competent judge, according to the amount, after the following procedure.

1.- With the claim, the interested entity will make available to the court the sum corresponding to the estimate of the compensation that it believes should be paid to the owner of the property.

2.- Once the claim has been admitted, it will be forwarded to the defendant within a period of three days.

3.- If two days after the order ordering the transfer of the claim has been preferred, it has not been possible to notify the defendants, they will be summoned in the manner indicated in section 2 of article 4452 of the Code of Civil Procedure.

4.- In matters of exceptions, the provisions of article 453 of the Code of Civil Procedure shall apply.

5. In any case, the judge, within two days following the filing of the claim, will carry out a judicial inspection of the property that is to be affected by the easement and will authorize the provisional imposition of the same, if so requested by the judge.

6.- The value of the compensation will be determined by experts appointed by the judge.

7.- In the judgment the judge will clearly indicate the type of easement in question, taking into account the classification made of them in the current legal provisions.

In any matter not provided for in this article, the rules set forth in Title 24 of Book 3 of the Code of Civil Procedure shall apply.

Machine Translated by Google

**Administrative Department of the Civil Service**

ARTICLE 112.- On the declassification of real estate. After declassification, by means of an administrative act, the Nation and other entities of the national order may allocate to other public service objectives those properties of their property that are no longer required for the service for which they were originally assigned.

ARTICLE 113.- On the validity of Law 56 of 1981. The provisions of the previous articles relating to the occupation, acquisition and imposition of easements on privately owned real estate do not modify the provisions of Law 56 of 1981 for the public works to which it refers."

Creation date and time: 2025-03-10 21:31:55