IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERIMETRAL ORIENTAL DE BOGOTÁ,
S.A.S.,

                *Petitioner*,

v.

AGENCIA NACIONAL DE
INFRAESTRUCTURA
and
THE REPUBLIC OF COLOMBIA

                *Respondents*.

**Civil Action No.** _____

**<u>Declaration of Jason W. Myatt in Support of Petition to Confirm Arbitral Award</u>**

# EXHIBIT 14



EVA › Gestor Normativo › Consulta › Ley 1474/11

# Ley 1474 de 2011

Descargar PDF

## Fechas ⌄

## Temas (13) ⌄

## Conceptos (22) ⌄

## Vigencias(12)

Reglamentado parcialmente por Decreto 1122 de 2024 Presidencia de la Republica

Reglamentado por Decreto 1122 de 2024 Presidencia de la Republica

Modificado por Ley 2195 de 2022

Adicionado por Ley 2195 de 2022

Adicionado por Decreto 537 de 2020

Modificado por Decreto 403 de 2020

Reglamentado parcialmente por Decreto 1083 de 2015 Sector de Función Pública

Adicionado parcialmente Decreto 2711 de 2013

Reglamentado por Decreto 734 de 2012

Reglamentado por Decreto 4632 de 2011

Modifica Decreto Ley 267 de 2000

Modifica Ley 489 de 1998

Los datos publicados tienen propósitos exclusivamente informativos. El Departamento Administrativo de la Función Pública no se hace responsable de la vigencia de la presente norma. Nos encontramos en un proceso permanente de actualización de los contenidos.

**LEY 1474 DE 2011**

**(Julio 12)**

*(Ver Decreto 1081 de 2015 y Decreto 124 de 2016.)*

***"Por la cual se dictan normas orientadas a fortalecer los mecanismos de prevención, investigación y sanción de actos de corrupción y la efectividad del control de la gestión pública."***

**EL CONGRESO DE COLOMBIA**

**DECRETA:**

**CAPÍTULO I**

**MEDIDAS ADMINISTRATIVAS PARA LA LUCHA CONTRA LA CORRUPCIÓN**

**ARTÍCULO 1.** ***Inhabilidad para contratar de quienes incurran en actos de corrupción.*** *El literal j) del numeral 1 del artículo 8 de la Ley 80 de 1993* quedará así:

Las personas naturales que hayan sido declaradas responsables judicialmente por la comisión de delitos contra la Administración Pública o de cualquiera de los delitos o faltas contemplados por la Ley 1474 de 2011 y sus normas modificatorias o de cualquiera de las conductas delictivas contempladas por las convenciones o tratados de lucha contra la corrupción suscritos y ratificados por Colombia, así como las personas jurídicas que hayan sido declaradas responsables administrativamente por la conducta de soborno transnacional.

Esta inhabilidad procederá preventivamente aún en los casos en los que esté pendiente la decisión sobre la impugnación de la sentencia condenatoria.

Asimismo, la inhabilidad se extenderá a las sociedades de las que hagan parte dichas personas en calidad de administradores, representantes legales, miembros de junta directiva o de socios controlantes, a sus matrices y a sus subordinadas y a las sucursales de sociedades extranjeras, con excepción de las sociedades anónimas abiertas

La inhabilidad prevista en este literal se extenderá por un término de veinte (20) años.

(Modificado por el art. 31, de la Ley 1778 de 2016.)

**(Nota:** Expresión subrayada declarada INEXEQUIBLE por la Corte Constitucional mediante Sentencia *C-630* de 2012.)

**ARTÍCULO 2. *Inhabilidad para contratar de quienes financien campañas políticas.*** El numeral 1 del artículo 8 de la Ley 80 de 1993 tendrá un nuevo literal k), el cual quedará así:

Las personas naturales o jurídicas que hayan financiado campañas políticas a la Presidencia de la República, a las gobernaciones, a las alcaldías o al Congreso de la República, con aportes superiores al dos por ciento (2.0%) de las sumas máximas a invertir por los candidatos en las campañas electorales en cada circunscripción electoral, quienes no podrán celebrar contratos con las entidades públicas, incluso descentralizadas, del respectivo nivel administrativo para el cual fue elegido el candidato.

La inhabilidad se extenderá por todo el período para el cual el candidato fue elegido. Esta causal también operará para las personas que se encuentren dentro del segundo grado de consanguinidad, segundo de afinidad, o primero civil de la persona que ha financiado la campaña política.

Esta inhabilidad comprenderá también a las personas jurídicas en las cuales el representante legal, los miembros de junta directiva o cualquiera de sus socios controlantes hayan financiado directamente o por interpuesta persona campañas políticas a la Presidencia de la República, a las gobernaciones, las alcaldías o al Congreso de la República..

La inhabilidad contemplada en esta norma no se aplicará respecto de los contratos de prestación de servicios profesionales.

(Modificado por el art. 33, de la Ley 1778 de 2016.)

**ARTÍCULO 3. *Prohibición para que ex servidores públicos gestionen intereses privados.*** EL numeral 22 del artículo 35 de la Ley 734 de 2002 quedará así:

Prestar, a título personal o por interpuesta persona, servicios de asistencia, representación o asesoría en asuntos relacionados con las funciones propias del cargo, o permitir que ello ocurra, hasta por el término de dos (2) años después de la dejación del cargo, con respecto del organismo, entidad o corporación en la cual prestó sus servicios, y para la prestación de servicios de asistencia, representación o asesoría a quienes estuvieron sujetos a la inspección, vigilancia, control o regulación de la entidad, corporación u organismos al que se haya estado vinculado.

Esta prohibición será indefinida en el tiempo respecto de los asuntos concretos de los cuales el servidor conoció en ejercicio de sus funciones.

Se entiende por asuntos concretos de los cuales conoció en ejercicio de sus funciones aquellos de carácter particular y concreto que fueron objeto de decisión durante el ejercicio de sus funciones y de los cuales existe sujetos claramente determinados.

(Derogado por el art. 265 de la Ley 1952 de 2019.)

*(Ver Sentencia C-257 de 2013)*

**ARTÍCULO 4.** ***Inhabilidad para que ex empleados públicos contraten con el Estado.*** Adicionase un literal f) al numeral 2 del artículo 8 de la Ley 80 de 1993, el cual quedará así:

Directa o indirectamente las personas que hayan ejercido cargos en el nivel directivo en entidades del Estado y las sociedades en las cuales estos hagan parte o estén vinculados a cualquier título, durante los dos (2) años siguientes al retiro del ejercicio del cargo público, cuando el objeto que desarrollen tenga relación con el sector al cual prestaron sus servicios.

Esta incompatibilidad también operará para las personas que se encuentren dentro del primer grado de consanguinidad, primero de afinidad, o primero civil del ex empleado público.

*(Ver Sentencia C-257 de 2013)*

**CAPÍTULO I**

**MEDIDAS ADMINISTRATIVAS PARA LA LUCHA CONTRA LA CORRUPCIÓN**

**ARTÍCULO 5.** Quien haya celebrado un contrato estatal de obra pública, de concesión, suministro de medicamentos y de alimentos o su cónyuge, compañero o compañera permanente, pariente hasta el segundo grado de consanguinidad, segundo de afinidad y/o primero civil o sus socios en sociedades distintas de las anónimas abiertas, con las entidades a que se refiere el artículo 2 de la Ley 80 de 1993, durante el plazo de ejecución y hasta la liquidación del mismo, no podrán celebrar contratos de interventoría con la misma entidad.

***(Nota:*** *Declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-618 de 2012.)*

**ARTÍCULO 6.** ***Acción de repetición.*** El numeral 2 del artículo 8 de la Ley 678 de 2001 quedará así:

2. El Ministerio de Justicia y del Derecho, a través de la Dirección de Defensa Judicial de la Nación o quien haga sus veces.

**ARTÍCULO 7.** ***Responsabilidad de los Revisores Fiscales.*** Adiciónese un numeral 5) al artículo 26 de la Ley 43 de 1990, el cual quedará así:

5. Los revisores fiscales tendrán la obligación de denunciar ante las autoridades penales, disciplinarias y administrativas, los actos de corrupción así como la presunta realización de un delito contra la administración pública, un delito contra el orden económico y social, o un delito contra el patrimonio económico que hubiere detectado en el ejercicio de su cargo. También deberán poner estos hechos en conocimiento de los órganos sociales y de la administración de la sociedad. Las denuncias correspondientes deberán presentarse dentro de los seis (6) meses siguientes al momento en que el revisor fiscal hubiere tenido conocimiento de los hechos. Para los efectos de este artículo, no será aplicable el régimen de secreto profesional que ampara a los revisores fiscales.

(Adicionado por el art. 32 de la Ley 1778 de 2016.)

*(Ver Sentencia C-630 de 2012.)*

**ARTÍCULO 8.** *Designación de responsable del control interno.* Modifíquese el artículo 11 de la Ley 87 de 1993, que quedará así:

Para la verificación y evaluación permanente del Sistema de Control, el Presidente de la República designará en las entidades estatales de la rama ejecutiva del orden nacional al jefe de la Unidad de la oficina de control interno o quien haga sus veces, quien será de libre nombramiento y remoción.

Cuando se trate de entidades de la rama ejecutiva del orden territorial, la designación se hará por la máxima autoridad administrativa de la respectiva entidad territorial. Este funcionario será designado por un período fijo de cuatro años, en la mitad del respectivo período del alcalde o gobernador.

**PARÁGRAFO 1.** Para desempeñar el cargo de asesor, coordinador o de auditor interno se deberá acreditar formación profesional y experiencia mínima de tres (3) años en asuntos del control interno.

(Parágrafo Derogado por el Art. 166 del Decreto 403 de 2020)

**PARÁGRAFO 2.** El auditor interno, o quien haga sus veces, contará con el personal multidisciplinario que le asigne el jefe del organismo o entidad, de acuerdo con la naturaleza de las funciones del mismo. La selección de dicho personal no implicará necesariamente aumento en la planta de cargos existente.

**ARTÍCULO 9.** *Reportes del responsable de control interno.* Modifíquese el artículo 14 de la Ley 87 de 1993, que quedará así:

El jefe de la Unidad de la Oficina de Control Interno o quien haga sus veces en una entidad de la rama ejecutiva del orden nacional será un servidor público de libre nombramiento y remoción, designado por el Presidente de la República.

Este servidor público, sin perjuicio de las demás obligaciones legales, deberá reportar a los organismos de control los posibles actos de corrupción e irregularidades que haya encontrado en ejercicio de sus funciones..

(Modificado por el art. 231, del Decreto 019 de 2012.)

El jefe de la Unidad de la Oficina de Control Interno deberá publicar cada cuatro (4) meses en la página web de la entidad, un informe pormenorizado del estado del control interno de dicha entidad, so pena de incurrir en falta disciplinaria grave.

Los informes de los funcionarios del control interno tendrán valor probatorio en los procesos disciplinarios, administrativos, judiciales y fiscales cuando las autoridades pertinentes así lo soliciten.

*(Ver Literal b) artículo 2.2.21.4.9, Decreto 1083 de 2015.)*

**PARÁGRAFO TRANSITORIO.** Para ajustar el periodo de qué trata el presente artículo, los responsables del Control Interno que estuvieren ocupando el cargo al 31 de diciembre del 2011, permanecerán en el mismo hasta que el Gobernador o Alcalde haga la designación del nuevo funcionario, conforme a la fecha prevista en el presente artículo.

**ARTÍCULO 10.** *Presupuesto de publicidad.* Los recursos que destinen las entidades públicas y las empresas y sociedades con participación mayoritaria del Estado del orden nacional y territorial, en la divulgación de los programas y políticas que realicen, a través de publicidad oficial o de cualquier otro medio o mecanismo similar que implique utilización de dineros del Estado, deben buscar el cumplimiento de la finalidad de la respectiva entidad y garantizar el derecho a la información de los ciudadanos. En esta publicidad oficial se procurará la mayor limitación, entre otros, en cuanto a contenido, extensión, tamaño y medios de comunicación, de manera tal que se logre la mayor austeridad en el gasto y la reducción real de costos.

Los contratos que se celebren para la realización de las actividades descritas en el inciso anterior, deben obedecer a criterios preestablecidos de efectividad, transparencia y objetividad.

Se prohíbe el uso de publicidad oficial, o de cualquier otro mecanismo de divulgación de programas y políticas oficiales, para la promoción de servidores públicos, partidos políticos o candidatos, o que hagan uso de su voz, imagen, nombre, símbolo, logo o cualquier otro elemento identificable que pudiese inducir a confusión.

En ningún caso las entidades objeto de esta reglamentación podrán patrocinar, contratar o realizar directamente publicidad oficial que no esté relacionada con las funciones que legalmente debe cumplir, ni contratar o patrocinar la impresión de ediciones de lujo.

(Modificado por el art. 232, Decreto 019 de 2012.)

(Reglamentado por el Decreto 4326 de 2011).

*(Ver sentencia 2015-00001-01(PI) del Consejo de Estado)*

**PARÁGRAFO 1.** Las entidades del orden nacional y territorial que tengan autorizados en sus presupuestos rubros para publicidad o difusión de campañas institucionales, deberán reducirlos en un treinta por ciento (30%) en el presente año, tomando como base para la reducción el monto inicial del presupuesto o apropiación presupuestal para publicidad o campaña. Una vez surtida la reducción anterior, en los años siguientes el rubro correspondiente sólo se podrá incrementar con base en el Índice de Precios al Consumidor.

(Derogado por el art. 50, de la Ley 1551 de 2012).

**PARÁGRAFO 2.** Lo previsto en este artículo no se aplicará a las Sociedades de Economía Mixta ni a las empresas industriales y comerciales del Estado que compitan con el sector público o privado o cuando existan motivos de interés público en salud. Pero en todo caso su ejecución deberá someterse a los postulados de planeación, relación costo beneficio, presupuesto previo y razonabilidad del gasto.

**PARÁGRAFO 3.** Las entidades del orden nacional y territorial a que se refiere esta disposición están obligadas a publicar periódicamente en su página de Internet toda la información relativa al presupuesto, planificación y gastos en las actividades descritas en el inciso primero de este artículo.

**ARTÍCULO 11.** *Control y vigilancia en el sector de la seguridad social en salud.*

1. Obligación y control. Las instituciones sometidas al control y vigilancia de la Superintendencia Nacional de Salud, estarán obligadas a adoptar medidas de control apropiadas y suficientes, orientadas a evitar que se generen fraudes en el sistema de seguridad social en salud.

2. Mecanismos de control. Para los efectos del numeral anterior, esas instituciones en cuanto les sean aplicables adoptarán mecanismos y reglas de conducta que deberán observar sus representantes legales, directores, administradores y funcionarios, con los siguientes propósitos:

a) Identificar adecuadamente a sus afiliados, su actividad económica, vínculo laboral y salario;

b) Establecer la frecuencia y magnitud con la cual sus usuarios utilizan el sistema de seguridad social en salud;

c) Reportar de forma inmediata y suficiente a la Comisión Nacional de Precios de Medicamentos y Dispositivos Médicos ?CNPMD?, cualquier sobrecosto en la venta u ofrecimiento de medicamentos e insumos;

d) Reportar de forma inmediata y suficiente al Instituto Nacional de Vigilancia de Medicamentos y Alimentos, Invima, la falsificación de medicamentos e insumos y el suministro de medicamentos vencidos, sin perjuicio de las denuncias penales correspondientes;

e) Reportar de forma inmediata y suficiente a la Unidad Administrativa de Gestión Pensional y Contribuciones Parafiscales de la Protección Social (UGPP) y a la Superintendencia Nacional de Salud cualquier información relevante cuando puedan presentarse eventos de afiliación fraudulenta o de

fraude en los aportes a la seguridad social para lo de su competencia;

f) Los demás que señale el Gobierno Nacional.

3. Adopción de procedimientos. Para efectos de implementar los mecanismos de control a que se refiere el numeral anterior, las entidades vigiladas deberán diseñar y poner en práctica procedimientos específicos, y designar funcionarios responsables de verificar el adecuado cumplimiento de dichos procedimientos.

4. A partir de la expedición de la presente ley, ninguna entidad prestadora del servicio de salud en cualquiera de sus modalidades, incluidas las cooperativas podrán hacer ningún tipo de donaciones a campañas políticas o actividades que no tenga relación con la prestación del servicio.

(**Nota:** Numeral declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C–084 de 2013.)

**PARÁGRAFO .** El Gobierno reglamentará la materia en un término no superior a tres meses.

**ARTÍCULO 12.** Sistema preventivo de prácticas riesgosas financieras y de atención en salud del Sistema General de Seguridad Social en Salud. Créase el Sistema Preventivo de Prácticas Riesgosas Financieras y de Atención en Salud del Sistema General de Seguridad Social en Salud que permita la identificación oportuna, el registro y seguimiento de estas conductas. La Superintendencia Nacional de Salud definirá para sus sujetos vigilados, el conjunto de medidas preventivas para su control, así como los indicadores de alerta temprana y ejercerá sus funciones de inspección, vigilancia y control sobre la materia. Dicho sistema deberá incluir indicadores que permitan la identificación, prevención y reporte de eventos sospechosos de corrupción y fraude en el Sistema General de Seguridad Social en Salud. El no reporte de información a dicho sistema, será sancionado conforme al artículo 131 de la Ley 1438 de 2011.

CAPÍTULO II

**MEDIDAS PENALES EN LA LUCHA CONTRA LA CORRUPCIÓN PÚBLICA Y PRIVADA**

**ARTÍCULO 13. *Exclusión de beneficios en los delitos contra la Administración Pública relacionados con corrupción.*** El artículo 68 A del Código Penal quedará así:

No se concederán los subrogados penales o mecanismos sustitutivos de la pena privativa de libertad de suspensión condicional de la ejecución de la pena o libertad condicional; tampoco la prisión domiciliaria como sustitutiva de la prisión; ni habrá lugar a ningún otro beneficio o subrogado legal, judicial o administrativo, salvo los beneficios por colaboración regulados por la ley, siempre que esta sea efectiva, cuando la persona haya sido condenada por delito doloso o preterintencional dentro de los cinco (5) años anteriores.

Tampoco tendrán derecho a beneficios o subrogados quienes hayan sido condenados por delitos contra la Administración Pública, estafa y abuso de confianza que recaigan sobre los bienes del Estado, utilización indebida de información privilegiada, lavado de activos y soborno transnacional.

Lo dispuesto en el presente artículo no se aplicará respecto de la sustitución de la detención preventiva y de la sustitución de la ejecución de la pena en los eventos contemplados en los numerales 2, 3, 4 y 5 del artículo 314 de la Ley 906 de 2004, ni en aquellos eventos en los cuales se aplique el principio de oportunidad, los preacuerdos y negociaciones y el allanamiento a cargos.

**ARTÍCULO 14.** *Ampliación de términos de prescripción penal.* El inciso sexto del artículo 83 del Código Penal quedará así:

6. Al servidor público que en ejercicio de las funciones de su cargo o con ocasión de ellas realice una conducta punible o participe en ella, el término de prescripción se aumentará en la mitad. Lo anterior se aplicará también en relación con los particulares que ejerzan funciones públicas en forma permanente o transitoria y de quienes obren como agentes retenedores o recaudadores.

**ARTÍCULO 15.** *Estafa sobre recursos públicos y en el Sistema de Seguridad Social Integral.* El artículo 247 del Código Penal tendrá unos numerales 5 y 6 del siguiente tenor:

5. La conducta relacionada con bienes pertenecientes a empresas o instituciones en que el Estado tenga la totalidad o la mayor parte, o recibidos a cualquier título de este.

6. La conducta tenga relación con el Sistema General de Seguridad Social Integral.

**ARTÍCULO 16.** *Corrupción privada.* La Ley 599 de 2000 tendrá un artículo 250A, el cual quedará así:

El que directamente o por interpuesta persona prometa, ofrezca o conceda a directivos, administradores, empleados o asesores de una sociedad, asociación o fundación una dádiva o cualquier beneficio no justificado para que le favorezca a él o a un tercero, en perjuicio de aquella, incurrirá en prisión de cuatro (4) a ocho (8) años y multa de diez (10) hasta de mil (1.000) salarios mínimos legales mensuales vigentes.

Con las mismas penas será castigado el directivo, administrador, empleado o asesor de una sociedad, asociación o fundación que, por sí o por persona interpuesta, reciba, solicite o acepte una dádiva o cualquier beneficio no justificado, en perjuicio de aquella.

Cuando la conducta realizada produzca un perjuicio económico en detrimento de la sociedad, asociación o fundación, la pena será de seis (6) a diez (10) años.

**ARTÍCULO 17.** *Administración desleal.* La Ley 599 de 2000 tendrá un artículo 250B, el cual quedará así:

El administrador de hecho o de derecho, o socio de cualquier sociedad constituida o en formación, directivo, empleado o asesor, que en beneficio propio o de un tercero, con abuso de las funciones propias de su cargo, disponga fraudulentamente de los bienes de la sociedad o contraiga obligaciones a cargo de está causando directamente un perjuicio económicamente evaluable a sus socios, incurrirá en prisión de cuatro (4) a ocho (8) años y multa de diez (10) hasta mil (1.000) salarios mínimos legales mensuales vigentes.

**ARTÍCULO 18.** *Utilización indebida de información privilegiada.* El artículo 258 del Código Penal quedará así:

El que como empleado, asesor, directivo o miembro de una junta u órgano de administración de cualquier entidad privada, con el fin de obtener provecho para sí o para un tercero, haga uso indebido de información que haya conocido por razón o con ocasión de su cargo o función y que no sea objeto de conocimiento público, incurrirá en pena de prisión de uno (1) a tres (3) años y multa de cinco (5) a cincuenta (50) salarios mínimos legales mensuales vigentes.

En la misma pena incurrirá el que utilice información conocida por razón de su profesión u oficio, para obtener para sí o para un tercero, provecho mediante la negociación de determinada acción, valor o instrumento registrado en el Registro Nacional de Valores, siempre que dicha información no sea de conocimiento público.

**ARTÍCULO 19.** *Especulación de medicamentos y dispositivos médicos.* Adiciónese un inciso al artículo 298 de la Ley 599 de 2000, el cual quedará así:

La pena será de cinco (5) años a diez (10) años de prisión y multa de cuarenta (40) a mil (1.000) salarios mínimos legales mensuales vigentes, cuando se trate de medicamento o dispositivo médico.

**ARTÍCULO 20.** *Agiotaje con medicamentos y dispositivos médicos.* Adiciónese un inciso al artículo 301 de la Ley 599 de 2000, el cual quedará así:

La pena será de cinco (5) años a diez (10) años de prisión y multa de cuarenta (40) a mil (1.000) salarios mínimos legales mensuales vigentes, cuando se trate de medicamento o dispositivo médico.

**ARTÍCULO 21.** *Evasión fiscal.* El artículo 313 de la Ley 599 de 2000, quedará así:

El concesionario, representante legal, administrador o empresario legalmente autorizado para la explotación de un monopolio rentístico, que incumpla total o parcialmente con la entrega de las rentas monopolísticas que legalmente les correspondan a los servicios de salud y educación, incurrirá en prisión de cinco (5) años a diez (10) años y multa de hasta 1.020.000 UVT.

En la misma pena incurrirá el concesionario, representante legal, administrador o empresario legalmente autorizado para la explotación de un monopolio rentístico que no declare total o parcialmente los ingresos percibidos en el ejercicio del mismo, ante la autoridad competente.

**ARTÍCULO 22.** *Omisión de control en el sector de la salud.* La Ley 599 de 2000 tendrá un artículo 325B, el cual quedará así:

El empleado o director de una entidad vigilada por la Superintendencia de Salud, que con el fin de ocultar o encubrir un acto de corrupción, omita el cumplimiento de alguno o todos los mecanismos de control establecidos para la prevención y la lucha contra el fraude en el sector de la salud, incurrirá, por esa sola conducta, en la pena prevista para el artículo 325 de la Ley 599 de 2000.

**(Nota:** *Artículo declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia* C-084 *de 2013.)*

**ARTÍCULO 23.** *Peculado por aplicación oficial diferente frente a recursos de la seguridad social.* La Ley 599 de 2000 tendrá un artículo 399 A, el cual quedará así:

La pena prevista en el artículo 399 se agravará de una tercera parte a la mitad, cuando se dé una aplicación oficial diferente a recursos destinados a la seguridad social integral.

**ARTÍCULO 24.** *Peculado culposo frente a recursos de la seguridad social integral.* La Ley 599 de 2000 tendrá un artículo 400 A, el cual quedará así:

Las penas previstas en el artículo 400 de la Ley 599 de 2000 se agravarán de una tercera parte a la mitad, cuando se dé una aplicación oficial diferente a recursos destinados a la seguridad social integral.

**ARTÍCULO 25.** *Circunstancias de atenuación punitiva.* El artículo 401 del Código Penal quedará así:

Si antes de iniciarse la investigación, el agente, por sí o por tercera persona, hiciere cesar el mal uso, reparare lo dañado, corrigiere la aplicación oficial diferente, o reintegrare lo apropiado, perdido o extraviado, o su valor actualizado con intereses la pena se disminuirá en la mitad.

Si el reintegro se efectuare antes de dictarse sentencia de segunda instancia, la pena se disminuirá en una tercera parte.

Cuando el reintegro fuere parcial, el juez deberá, proporcionalmente, disminuir la pena hasta en una cuarta parte.

**ARTÍCULO 26.** *Fraude de subvenciones.* La Ley 599 de 2000 tendrá un artículo 403A, el cual quedará así:

El que obtenga una subvención, ayuda o subsidio proveniente de recursos públicos mediante engaño sobre las condiciones requeridas para su concesión o callando total o parcialmente la verdad, incurrirá en prisión de cinco (5) a nueve (9) años, multa de doscientos (200) a mil (1.000) salarios mínimos legales

mensuales vigentes e inhabilidad para el ejercicio de derechos y funciones públicas de seis (6) a doce (12) años.

Las mismas penas se impondrán al que no invierta los recursos obtenidos a través de una subvención, subsidio o ayuda de una entidad pública a la finalidad a la cual estén destinados.

**ARTÍCULO 27.** *Acuerdos restrictivos de la competencia.* La Ley 599 de 2000 tendrá un artículo 410 A, el cual quedará así:

El que en un proceso de licitación pública, subasta pública, selección abreviada o concurso se concertar con otro con el fin de alterar ilícitamente el procedimiento contractual, incurrirá en prisión de seis (6) a doce (12) años y multa de doscientos (200) a mil (1.000) salarios mínimos legales mensuales vigentes e inhabilidad para contratar con entidades estatales por ocho (8) años.

**PARÁGRAFO .** El que en su condición de delator o clemente mediante resolución en firme obtenga exoneración total de la multa a imponer por parte de la Superintendencia de Industria y Comercio en una investigación por acuerdo anticompetitivos en un proceso de contratación pública obtendrá los siguientes beneficios: reducción de la pena en una tercera parte, un 40% de la multa a imponer y una inhabilidad para contratar con entidades estatales por cinco (5) años.

**ARTÍCULO 28.** *Tráfico de influencias de particular.* La Ley 599 de 2000 tendrá un artículo 411 A, el cual quedará así:

El particular que ejerza indebidamente influencias sobre un servidor público en asunto que este se encuentre conociendo o haya de conocer, con el fin de obtener cualquier beneficio económico, incurrirá en prisión de cuatro (4) a ocho (8) años y multa de cien (100) a doscientos (200) salarios mínimos legales mensuales vigentes.

**ARTÍCULO 29.** *Enriquecimiento ilícito.* El artículo 412 del Código Penal quedará así:

El servidor público, o quien haya desempeñado funciones públicas, que durante su vinculación con la administración o dentro de los cinco (5) años posteriores a su desvinculación, obtenga, para sí o para otro, incremento patrimonial injustificado, incurrirá, siempre que la conducta no constituya otro delito, en prisión de nueve (9) a quince (15) años, multa equivalente al doble del valor del enriquecimiento sin que supere el equivalente a cincuenta mil (50.000) salarios mínimos legales mensuales vigentes, e inhabilitación para el ejercicio de derechos y funciones públicas de noventa y seis (96) a ciento ochenta (180) meses.

**ARTÍCULO 30.** *Soborno trasnacional.* El artículo 433 del Código Penal quedará así:

El que dé, prometa u ofrezca a un servidor público extranjero, en provecho de este o de un tercero, directa o indirectamente, sumas de dinero, cualquier objeto de valor pecuniario u otro beneficio o utilidad a cambio de que este realice, omita o retarde cualquier acto relacionado con el ejercicio de sus funciones y en relación con un negocio o transacción internacional, incurrirá en prisión de nueve (9) a

quince (15) años, inhabilitación para el ejercicio de derechos y funciones públicas por el mismo término y multa de seiscientos cincuenta (650) a cincuenta mil (50.000) salarios mínimos legales mensuales vigentes.

(Modificado por el art. 30 de la Ley 1778 de 2016).

**PARÁGRAFO .** Para los efectos de lo dispuesto en el presente artículo, se considera servidor público extranjero toda persona que tenga un cargo legislativo, administrativo o judicial en un Estado, sus subdivisiones políticas o autoridades locales, o una jurisdicción extranjera, sin importar si el individuo hubiere sido nombrado o elegido. También se considera servidor público extranjero toda persona que ejerza una función pública para un Estado, sus subdivisiones políticas o autoridades locales, o en una jurisdicción extranjera, sea dentro de un organismo público, o de una empresa del Estado o una entidad cuyo poder de decisión se encuentre sometido a la voluntad del Estado, sus subdivisiones políticas o autoridades locales, o de una jurisdicción extranjera. También se entenderá que ostenta la referida calidad cualquier funcionario o agente de una organización publica internacional.

(Modificado por el art. 30 de la Ley 1778 de 2016).

**ARTÍCULO 31.** *Soborno.* Modifíquese el artículo 444 de la Ley 599 de 2000, que quedará así:

El que entregue o prometa dinero u otra utilidad a un testigo para que falte a la verdad o la calle total o parcialmente en su testimonio, incurrirá en prisión de seis (6) a doce (12) años y multa de cien (100) a mil (1.000) salarios.

**ARTÍCULO 32.** *Soborno en la actuación penal.* Modifíquese el artículo 444A de la Ley 599 de 2000, que quedará así:

El que en provecho suyo o de un tercero entregue o prometa dinero u otra utilidad a persona que fue testigo de un hecho delictivo, para que se abstenga de concurrir a declarar, o para que falte a la verdad, o la calle total o parcialmente, incurrirá en prisión de seis (6) a doce (12) años y multa de cincuenta (50) a dos mil (2.000) salarios mínimos legales mensuales vigentes.

**ARTÍCULO 33.** *Circunstancias de agravación punitiva.* Los tipos penales de que tratan los artículos 246, 250 numeral 3, 323, 397, 404, 405, 406, 408, 409, 410,411, 412, 413, 414 y 433 de la Ley 599 de 2000 les será aumentada la pena de una sexta parte a la mitad cuando la conducta sea cometida por servidor público que ejerza como funcionario de alguno de los organismos de control del Estado.

**ARTÍCULO 34. Responsabilidad administrativa sancionatoria contra personas jurídicas y sucursales de sociedades extranjeras.** Independientemente de las responsabilidades penales individuales a que hubiere lugar y las medidas contempladas en el Artículo 91 de la Ley 906 de 2004, se aplicará un régimen de responsabilidad administrativa sancionatoria a las personas jurídicas, sucursales de sociedades extranjeras, a las personas jurídicas que integren uniones temporales o consorcios, a las empresas industriales y comerciales del Estado y empresas de economía mixta y a las entidades sin ánimo de lucro, domiciliadas en Colombia, cuando se den los siguientes supuestos :

(i) Exista sentencia penal condenatoria ejecutoriada o principio de oportunidad en firme, contra alguno de sus administradores o funcionarios, por la comisión de delitos contra la administración pública, el medio ambiente, el orden económico y social, financiación del terrorismo y de grupos de delincuencia organizada, administración de recursos relacionados con actividades terroristas y de la delincuencia

organizada, los consagrados en la Ley 1474 de 2011 , o cualquier conducta punible relacionada con el patrimonio público, que hubieren sido realizados, directa o indirectamente; y (ii) Cuando la persona jurídica o sucursal de sociedad extranjera, domiciliados en Colombia se hubiere beneficiado o buscado beneficiarse, directa o indirectamente por la comisión de la conducta punible cometida por sus administradores o funcionarios; y (iii) Cuando la persona jurídica o sucursal de . sociedad extranjera, domiciliados en Colombia, consintió o toleró la realización de la conducta punible, por acción u omisión, considerando la aplicación de sus respectivos controles de riesgo.

**PARÁGRAFO 1.** En los casos de soborno transnacional, la Superintendencia de Sociedades aplicará el régimen de responsabilidad administrativa sancionatoria especial previsto en la Ley 1778 de 2016 para esa falta administrativa.

**PARÁGRAFO 2.** En la etapa de investigación de los delitos establecidos en el literal i) las entidades estatales posiblemente perjudicadas, podrán pedir la vinculación como tercero civilmente responsable a las personas jurídicas y las sucursales de sociedades extranjeras domiciliadas en Colombia que hayan participado presuntamente en la comisión de los delitos.

(Modificado por el art. 35, de la Ley 1778 de 2016).

(Modificado por el Art. 2 de la Ley 2195 de 2022).

Norma Anterior

**ARTÍCULO 34-1.** Las superintendencias o autoridades de inspección, vigilancia y control son las competentes para iniciar de oficio el proceso administrativo sancionatorio referido en el Artículo 34 de la Ley 1474 de 2011, e imponer las sanciones correspondientes a sus vigilados, cuando existan los supuestos descritos en el anterior Artículo.

**PARÁGRAFO 1.** Si existiere conflicto de competencias administrativas, el mismo se resolverá por lo consagrado en el Artículo 39 de la Ley 1437 de 2011.

**PARÁGRAFO 2.** Lo dispuesto en los Artículos 34 y 34-1 de la presente Ley no serán aplicables para la Superintendencia de Industria y Comercio.

**PARÁGRAFO 3.** Cuando la prestación del servicio esté a cargo de una entidad pública o se trate de un notario, curador o ente territorial que preste directamente servicios públicos domiciliarios, se aplicarán las normas de responsabilidad propias de los funcionarios públicos por las entidades competentes.

(Adicionado por el Art. 3 de la Ley 2195 de 2022).

**ARTÍCULO 34-2. SANCIONES ADMINISTRATIVAS A PERSONAS JURÍDICAS Y SUCURSALES DE SOCIEDADES EXTRANJERAS DOMICILIADAS EN COLOMBIA.** Las sanciones administrativas aplicables a las personas jurídicas y sucursales de sociedades extranjeras domiciliadas en Colombia, conforme a lo establecido en el Artículo 34 de la Ley 1474 de 2011, podrán ser una o varias de las siguientes:

1. Multa de hasta doscientos mil (200.000) salarios mínimos mensuales legales vigentes, a la que se le sumará el mayor valor entre el beneficio obtenido o pretendido. La autoridad competente tendrá en cuenta la capacidad patrimonial de la persona jurídica.

La autoridad de inspección, vigilancia y control podrá ordenar que hasta el 10% de la multa impuesta sea destinada a la adopción, fortalecimiento o actualización del programa de transparencia y ética empresarial de la persona jurídica responsable.

2. Inhabilidad para contratar contenida en el literal j) del Artículo 8 de la Ley 80 de 1993 y aplicación de lo dispuesto en el parágrafo 1 del Artículo 9 de la misma ley.

3. Publicación en medios de amplia circulación hasta por cinco (5) veces con la periodicidad que la autoridad indique, del extracto de la decisión sancionatoria. Igualmente procederá la publicación del extracto de la decisión sancionatoria en la página web de la persona jurídica sancionada, desde seis (6) meses hasta por un tiempo máximo de un (1) año. La persona jurídica sancionada asumirá los costos de esa publicación".

4. Prohibición de recibir cualquier tipo de incentivo o subsidios del Gobierno, en un plazo de diez (10) años.

5. Remoción de los administradores u otros funcionarios o empleados de la persona jurídica o sucursal de sociedad extranjera domiciliada en Colombia que hayan sido condenados penalmente u objeto de un principio de oportunidad, salvo que dicha remoción la haya dispuesto el juez en la parte resolutiva de la sentencia.

6. Remoción de los administradores u otros funcionarios o empleados de la persona jurídica que hubieren tolerado o consentido la conducta de la persona natural condenada penalmente o la conducta objeto de un principio de oportunidad.

**PARÁGRAFO 1.** Una vez ejecutoriado el acto administrativo por medio del cual se impongan las sanciones de que trata esta Ley, este deberá inscribirse en el registro público correspondiente de la persona jurídica o sucursal de sociedad extranjera sancionada.

La autoridad administrativa competente remitirá el acto administrativo a la Cámara de Comercio del domicilio de la persona jurídica para su inscripción en el registro correspondiente.

(Adicionado por el Art. 4 de la Ley 2195 de 2022).

**ARTÍCULO 34-3. CRITERIOS DE GRADUACIÓN DE LAS SANCIONES.** Para efectos de la graduación de las sanciones de que trata el Artículo 34 de la Ley 1474 de 2011, se tendrán en cuenta los siguientes criterios:

Circunstancias Agravantes:

a) El daño o peligro generado a los intereses jurídicos tutelados.

b) El beneficio económico obtenido o pretendido por el infractor para sí o a favor de un tercero.

c) La reincidencia en la comisión de la infracción.

d) La resistencia, negativa u obstrucción a la acción investigadora o de supervisión y la conducta procesal del investigado.

e) La utilización de medios fraudulentos o utilización de persona interpuesta para ocultar la infracción u ocultar sus efectos.

f) La renuncia o desacato en el cumplimiento de las órdenes impartidas por la autoridad competente.
Circunstancias Atenuantes:

a) El reconocimiento o aceptación expresa de la infracción antes del decreto de pruebas salvo que se esté en presencia de reiteración de conductas.

b) El grado de cumplimiento de las medidas cautelares.

c) La realización de un proceso adecuado de debida diligencia, en caso que la persona jurídica o la sucursal de sociedad extranjera domiciliadas en Colombia hayan sido adquiridas por un tercero, con posterioridad a los hechos de corrupción.

d) Que la persona jurídica o sucursal de sociedad extranjera domiciliada en Colombia hayan entregado pruebas relacionadas con la comisión de los delitos del Artículo 34 de esta ley por parte de sus administradores, funcionarios o empleados involucrados.

e) Haber puesto en conocimiento de las autoridades de inspección, vigilancia y control la infracción.

f) Adoptar medidas y acciones que, a juicio de la autoridad administrativa encargada de llevar la investigación, razonablemente permitan prevenir futuros actos de corrupción.

g) Abstenerse de ejecutar los negocios jurídicos o de ejercer los derechos obtenidos mediante la ejecución de actos de corrupción.

(Adicionado por el Art, 5 de la Ley 2195 de 2022).

**ARTÍCULO 34-4. Procedimiento aplicable.** Cuando las superintendencias o autoridades de inspección, vigilancia y control no cuenten con un procedimiento administrativo especial, las actuaciones que se inicien de conformidad con el Artículo 34 de la Ley 1474 de 2011, se tramitarán atendiendo el procedimiento administrativo sancionatorio contenido en el Capítulo III del Título III de la Ley 1437 de 2011.

En materia de medidas cautelares, recursos contra la decisión que declara la responsabilidad de la persona jurídica, reconocimiento de beneficios por colaboración, actuaciones y diligencias que se pueden realizar durante la investigación y la renuencia a suministrar información, se aplicarán las disposiciones especiales previstas para las investigaciones administrativas reguladas en los Artículos 13, 17, 19, 20 y 21 del Capítulo 111 de la Ley 1778 de 2016.

**PARÁGRAFO 1.** En los casos de soborno transnacional, la Superintendencia de Sociedades aplicará el régimen sancionatorio especial previsto para esa conducta en la Ley 1778 de 2016.

(Adicionado por el Art, 6 de la Ley 2195 de 2022).

**ARTÍCULO 34-5. INICIO DE LA ACTUACIÓN ADMINISTRATIVA.** Mediante la integración del Sistema Único de Gestión de Información de la actividad litigiosa de la Nación con el sistema de información de la Rama Judicial y de la Fiscalía General de la Nación, la Agencia Nacional de Defensa Jurídica del Estado recaudará la información sobre principios de oportunidad en firme y sentencias condenatorias ejecutoriadas, impuestas por los delitos mencionados en la presente Ley y requerirá a la Cámara de Comercio o a la Unidad de Gestión Pensional y Parafiscales- UGPP, según corresponda, para que en un término de quince (15) días hábiles, informe las sociedades y las sucursales de sociedades extranjeras en las que las personas condenadas o beneficiadas con principio de oportunidad actúan como administradores , funcionarios . o empleados, respectivamente.

La Agencia Nacional de Defensa Jurídica del Estado remitirá en el término de treinta (30) días hábiles a las autoridades administrativas competentes las decisiones sobre principios de oportunidad en firme y sentencias condenatorias ejecutoriadas, proferidos por los delitos señalados en el presente capítulo, contra personas que funjan o hayan fungido como administradores, o funcionarios o empleados de la persona jurídica o sucursal de sociedad extranjera domiciliadas en Colombia a fin de que se inicie el proceso administrativo sancionatorio correspondiente.

(Adicionado por el Art, 7 de la Ley 2195 de 2022).

**ARTÍCULO 34-6. CADUCIDAD DE LAS INVESTIGACIONES ADMINISTRATIVAS.** La facultad sancionatoria administrativa prevista en el Artículo 34 de la Ley 1474 de 2011 podrá ejercerse por las autoridades competentes en el término de diez (10) años, contados a partir de la ejecutoria de la sentencia judicial , mediante la cual se declare la responsabilidad penal de los administradores , funcionarios o empleados de las personas jurídicas o sucursales de sociedades extranjeras domiciliadas en Colombia o en firme el reconocimiento de un principio de oportunidad en favor de los mismos, que hayan quedado ejecutoriados o en firme con posterioridad a la entrada en vigencia de la presente Ley e independientemente de la fecha de comisión de la conducta punible por parte de las personas naturales.

Constituye falta gravísima para el funcionario de la autoridad competente que no inicie actuación administrativa, estando obligado a ello, conforme los Artículos 34, 34- 1 y 34-5 de la Ley 1474 de 2011.

(Adicionado por el Art, 8 de la Ley 2195 de 2022).

**ARTÍCULO 34-7. PROGRAMAS DE TRANSPARENCIA Y ÉTICA EMPRESARIAL.** Las personas jurídicas sujetas a su inspección, vigilancia o control adoptarán programas de transparencia y ética empresarial que incluyan mecanismos y normas internas de auditoria.

Las respectivas superintendencias o autoridades de inspección, vigilancia o control determinarán el contenido de los programas de transparencia y ética empresarial teniendo en cuenta criterios tales como el sector, los riesgos del mismo, el monto de los activos, ingresos, el número de empleados y objeto social.

En el caso de las Pymes y Mipymes, se deberán establecer programas de acompañamiento para facilitar la elaboración e implementación de los programas de transparencia y ética empresarial, procurando que no generen costos o trámites adicionales para las mismas.

El incumplimiento de las instrucciones y órdenes que impartan las autoridades de inspección, vigilancia y control de la rama ejecutiva en materia de programas transparencia y ética empresarial dará lugar a la imposición de las sanciones que correspondan de conformidad con las normas aplicables por cada ente de inspección, vigilancia o control.

**PARÁGRAFO 1.** En aquellas personas jurídicas en las que se tenga implementado un sistema integral de administración de riesgos, éste podrá articularse con el programa de transparencia y ética empresarial de forma tal que incluya los riesgos que mediante el mismo se pretenden mitigar.

**PARÁGRAFO 2.** Las superintendencias o autoridades de inspección, vigilancia o control de la rama ejecutiva en coordinación con la Secretaría de Transparencia de la Presidencia de la República, determinarán los lineamientos mínimos que deben prever los programas de transparencia y ética empresarial con el fin estandarizar las acciones, las políticas, los métodos, procedimientos, mecanismos de prevención, control, evaluación y de mejoramiento continuo. Dichos lineamientos serán evaluados y actualizados, de conformidad con los estándares internacionales y nuevas prácticas que fortalezcan los programas de transparencia y ética empresarial, al menos cada cuatro (4) años.

**PARÁGRAFO 3.** Los encargados de las auditorías o control interno de las personas jurídicas obligadas deberán incluir en su plan anual de auditoría la verificación del cumplimiento y eficacia de los programas de transparencia y ética empresarial.

**PARÁGRAFO 4.** El revisor fiscal, cuando se tuviere, debe valorar los programas de transparencia y ética empresarial y emitir opinión sobre los mismos.

(Adicionado por el Art. 9 de la Ley 2195 de 2022).

**ARTÍCULO 35.** *Ampliación de términos para investigación.* El artículo 175 de la Ley 906 de 2004 tendrá un parágrafo, el cual quedará así:

**PARÁGRAFO .** En los procesos por delitos de competencia de los jueces penales del circuito especializados, por delitos contra la Administración Pública y por delitos contra el patrimonio económico que recaigan sobre bienes del Estado respecto de los cuales proceda la detención preventiva, los anteriores términos se duplicarán cuando sean tres (3) o más los imputados o los delitos objeto de investigación.

**ARTÍCULO 36.** *Operaciones encubiertas contra la corrupción.* La Ley 906 de 2004 tendrá un artículo 242 A, el cual quedará así:

Los mecanismos contemplados en los artículos 241 y 242 podrán utilizarse cuando se verifique la posible existencia de hechos constitutivos de delitos contra la Administración Pública en una entidad pública.

Cuando en investigaciones de corrupción, el agente encubierto, en desarrollo de la operación, cometa delitos contra la Administración Pública en coparticipación con la persona investigada, quedará exonerado de responsabilidad, salvo que exista un verdadero acuerdo criminal ajeno a la operación encubierta, mientras que el indiciado o imputado responderá por el delito correspondiente.

**ARTÍCULO 37. _Pruebas anticipadas._** El artículo 284 de la Ley 906 de 2004 tendrá un parágrafo cuarto, el cual quedará así:

**PARÁGRAFO 1.** En las investigaciones que versen sobre delitos de competencia de los jueces penales del circuito especializados, por delitos contra la Administración Pública y por delitos contra el patrimonio económico que recaigan sobre bienes del Estado respecto de los cuales proceda la detención preventiva, será posible practicar como prueba anticipada el testimonio de quien haya recibido amenazas contra su vida o la de su familia por razón de los hechos que conoce; así mismo, procederá la práctica de dicha prueba anticipada cuando contra el testigo curse un trámite de extradición en el cual se hubiere rendido concepto favorable por la Sala Penal de la Corte Suprema de Justicia.

La prueba deberá practicarse antes de que quede en firme la decisión del Presidente de la República de conceder la extradición.

**ARTÍCULO 38. _Aumento de términos respecto de las causales de libertad en investigaciones relacionadas con corrupción._** El artículo 317 de la Ley 906 de 2004 tendrá un parágrafo segundo, el cual quedará así:

**PARÁGRAFO 1.** En los procesos por delitos de competencia de los jueces penales del circuito especializados, por delitos contra la Administración Pública y por delitos contra el patrimonio económico que recaigan sobre bienes del Estado respecto de los cuales proceda la detención preventiva, los términos previstos en los numerales 4 y 5 se duplicarán cuando sean tres (3) o más los imputados o los delitos objeto de investigación.

**ARTÍCULO 39. _Restricción de la detención domiciliaria._** El parágrafo del artículo 314 de la Ley 906 de 2004 quedará así:

**PARÁGRAFO 1.** No procederá la sustitución de la detención preventiva en establecimiento carcelario, por detención domiciliaria cuando la imputación se refiera a los siguientes delitos: Los de competencia de los jueces penales del circuito especializados o quien haga sus veces, Tráfico de migrantes (C. P. artículo 188); Acceso carnal o actos sexuales con incapaz de resistir (C. P. artículo 210); Violencia intrafamiliar (C. P. artículo 229); Hurto calificado (C. P. artículo 240); Hurto agravado (C. P. artículo 241, numerales 7, 8, 11, 12 y 15); Estafa agravada (C. P. artículo 247); Uso de documentos falsos relacionados con medios motorizados hurtados (C. P. artículo 291); Fabricación, tráfico y porte de armas de fuego o municiones de uso personal, cuando concurra con el delito de concierto para delinquir (C. P. artículos 340 y 365), o los imputados registren sentencias condenatorias vigentes por los mismos delitos; Fabricación, tráfico y porte de armas y municiones de uso privativo de las fuerzas armadas (C. P. artículo 366); Fabricación, importación, tráfico, posesión y uso de armas químicas, biológicas y nucleares (C. P. artículo 367); Peculado por apropiación en cuantía superior a cincuenta (50) salarios mínimos legales mensuales (C. P. artículo 397); Concusión (C. P. artículo 404); Cohecho propio (C. P. artículo 405); Cohecho impropio (C.P. artículo 406); cohecho por dar u ofrecer (C. P. artículo 407); Enriquecimiento Ilícito (C.P. artículo 412);

Soborno Transnacional (C.P. artículo 433); Interés Indebido en la Celebración de Contratos (C.P. artículo 409); Contrato sin Cumplimiento de Requisitos Legales (C.P. artículo 410); Tráfico de Influencias (C.P. artículo 411); Receptación repetida, continua (C.P. artículo 447, incisos 1 y 3); Receptación para ocultar o encubrir el delito de hurto calificado, la receptación para ocultar o encubrir el hurto calificado en concurso con el concierto para delinquir, receptación sobre medio motorizado o sus partes esenciales, o sobre mercancía o combustible que se lleve en ellos (C. P. artículo 447, inciso 2)".

**ARTÍCULO 40.** *Principio de oportunidad para los delitos de cohecho.* El artículo 324 de la Ley 906 de 2004 tendrá un numeral 18, el cual quedará así:

"18. Cuando el autor o partícipe en los casos de cohecho formulare la respectiva denuncia que da origen a la investigación penal, acompañada de evidencia útil en el juicio, y sirva como testigo de cargo, siempre y cuando repare de manera voluntaria e integral el daño causado.

Los efectos de la aplicación del principio de oportunidad serán revocados si la persona beneficiada con el mismo incumple con las obligaciones en la audiencia de juzgamiento.

El principio de oportunidad se aplicará al servidor público si denunciare primero el delito en las condiciones anotadas.

**CAPÍTULO III**

**MEDIDAS DISCIPLINARIAS PARA LA LUCHA CONTRA LA CORRUPCIÓN**

**ARTÍCULO 41.** *Funciones disciplinarias de la Sala Jurisdiccional Disciplinaria del Consejo Superior de la Judicatura.* Además de lo previsto en la Constitución Política la Sala Jurisdiccional Disciplinaria del Consejo Superior de la Judicatura o de los Consejos Seccionales según el caso, examinará la conducta y sancionará las faltas de los auxiliares de la Justicia.

(Derogado por el art. 265 de la Ley 1952 de 2019.)

**ARTÍCULO 42.** *Poder preferente de la Sala Jurisdiccional Disciplinaria del Consejo Superior de la Judicatura.* La Sala Jurisdiccional Disciplinaria del Consejo Superior de la Judicatura a solicitud de parte u oficiosamente ejercerá el poder preferente jurisdiccional disciplinario, en relación con los procesos que son competencia de sus seccionales, respetando el debido proceso y la doble instancia; igualmente podrá disponer el cambio de radicación de los mismos, en cualquier etapa. (INEXEQUIBLE)

Para el cumplimiento de estas funciones y las de su competencia creará por medio de su reglamento interno las salas de decisión pertinentes".

(Derogado por el art. 265 de la Ley 1952 de 2019.)

*(Nota:* Declarado INEXEQUIBLE por la Corte Constitucional mediante Sentencia *C-619* de 2012.)

**ARTÍCULO 43.** *Prohibición de represalias.* Adiciónese un numeral nuevo al artículo 48 de la Ley 734 de 2002, el cual quedará así

(Derogado por el art. 265 de la Ley 1952 de 2019)

"**ARTÍCULO 48.** *Faltas Gravísimas.* Son faltas gravísimas las siguientes:

64. Sin perjuicio de la adopción de las medidas previstas en la Ley 1010 de 2006, cometer, directa o indirectamente, con ocasión de sus funciones o excediéndose en el ejercicio de ellas, acto arbitrario e injustificado contra otro servidor público que haya denunciado hechos de corrupción".

**ARTÍCULO 44.** *Sujetos disciplinables.* El artículo 53 de la Ley 734 de 2002, quedará así:

El presente régimen se aplica a los particulares que cumplan labores de interventoría o supervisión en los contratos estatales; también a quienes ejerzan funciones públicas, de manera permanente o transitoria, en lo que tienen que ver con estas, y a quienes administren recursos públicos u oficiales.

Se entiende que ejerce función pública aquel particular que, por disposición legal, acto administrativo, convenio o contrato, realice funciones administrativas o actividades propias de los órganos del Estado, que permiten el cumplimiento de los cometidos estatales, así como el que ejerce la facultad sancionadora del Estado; lo que se acreditará, entre otras manifestaciones, cada vez que ordene o señale conductas, expida actos unilaterales o ejerza poderes coercitivos.

Administran recursos públicos aquellos particulares que recaudan, custodian, liquidan o disponen el uso de rentas parafiscales, de rentas que hacen parte del presupuesto de las entidades públicas o que estas últimas han destinado para su utilización con fines específicos.

No serán disciplinables aquellos particulares que presten servicios públicos, salvo que en ejercicio de dichas actividades desempeñen funciones públicas, evento en el cual resultarán destinatarios de las normas disciplinarias.

Cuando se trate de personas jurídicas la responsabilidad disciplinaria será exigible del representante legal o de los miembros de la Junta Directiva.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**(Nota:** *El texto subrayado fue declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-084 de 2013, bajo el entendido que la falta le fuere imputable por el incumplimiento de los deberes funcionales.)*

**ARTÍCULO 45.** *Responsabilidad del interventor por faltas gravísimas.* Modifíquese el numeral 11 del artículo 55 de la Ley 734 de 2002, el cual quedará así:

11. Las consagradas en los numerales 2, 3, 14, 15, 16, 18, 19, 20, 26, 27, 28, 34, 40, 42, 43, 50, 51, 52, 55, 56, y 59, parágrafo 4, del artículo 48 de esta ley cuando resulten compatibles con la función.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**ARTÍCULO 46.** *Notificaciones.* El artículo 105 de la Ley 734 de 2002 tendrá un inciso segundo, el cual quedará así:

De esta forma se notificarán los autos de cierre de investigación y el que ordene el traslado para alegatos de conclusión.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**ARTÍCULO 47.** *Procedencia de la revocatoria directa.* El artículo 122 de la Ley 734 quedará así:

Los fallos sancionatorios y autos de archivo podrán ser revocados de oficio o a petición del sancionado, por el Procurador General de la Nación o por quien los profirió. El quejoso podrá solicitar la revocatoria del auto de archivo.

(Derogado por el art. 265 de la Ley 1952 de 2019)

(**Nota:** *Expresiones subrayadas declaradas EXEQUIBLES por la Corte Constitucional mediante Sentencia* C-306 *de 2012.)*

**PARÁGRAFO 1.** Cuando se trate de faltas disciplinarias que constituyen violaciones al Derecho Internacional de los Derechos Humanos y del Derecho Internacional Humanitario, procede la revocatoria del fallo absolutorio y del archivo de la actuación por parte del Procurador General de la Nación, de oficio o a petición del quejoso que tenga la calidad de víctima o perjudicado.

**PARÁGRAFO 2.** El plazo para proceder a la revocatoria será de tres (3) meses calendario.

**ARTÍCULO 48.** *Competencia.* El artículo 123 de la Ley 734 de 2002 quedará así:

Los fallos sancionatorios y autos de archivo podrán ser revocados por el funcionario que los hubiere proferido o por su superior funcional.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**PARÁGRAFO .** El Procurador General de la Nación podrá revocar de oficio los fallos sancionatorios, los autos de archivo y el fallo absolutorio, en este último evento cuando se trate de faltas disciplinarias que constituyen violaciones del Derecho Internacional de los Derechos Humanos y del Derecho Internacional Humanitario, expedidos por cualquier funcionario de la Procuraduría o autoridad disciplinaria, o asumir directamente el conocimiento de la petición de revocatoria, cuando lo considere necesario, caso en el cual proferirá la decisión correspondiente.

*(**Nota:** Expresión subrayada declarada EXEQUIBLE por la Corte Constitucional mediante Sentencia C-306 de 2012.)*

**ARTÍCULO 49. *Causal de revocación de las decisiones disciplinarias.*** El artículo 124 de la Ley 734 de 2002 quedará así:

En los casos referidos por las disposiciones anteriores, los fallos sancionatorios, <u>los autos de archivo y el fallo absolutorio</u> son revocables sólo cuando infrinjan manifiestamente las normas constitucionales, legales o reglamentarias en que deban fundarse. Igualmente cuando con ellos se vulneren o amenacen manifiestamente los derechos fundamentales.

*(**Nota:** Expresión subrayada declarada Exequible por la Corte Constitucional mediante Sentencia C-306 de 2012.)*

(Derogado por el art. 265 de la Ley 1952 de 2019)

**ARTÍCULO 50. *Medios de prueba.*** El inciso primero del artículo 130 de la Ley 734 quedará así:

Son medios de prueba la confesión, el testimonio, la peritación, la inspección o visita especial, y los documentos, y cualquier otro medio técnico científico que no viole el ordenamiento jurídico, los cuales se practicarán de acuerdo con las reglas previstas en la Ley 600 de 2000, en cuanto sean compatibles con la naturaleza y reglas del derecho disciplinario.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**ARTÍCULO 51. *Prueba trasladada.*** El artículo 135 de la Ley 734 quedará así:

Las pruebas practicadas válidamente en una actuación judicial o administrativa, dentro o fuera del país y los medios materiales de prueba, podrán trasladarse a la actuación disciplinaria mediante copias autorizadas por el respectivo funcionario y serán apreciadas conforme a las reglas previstas en este código.

También podrán trasladarse los elementos materiales de prueba o evidencias físicas que la Fiscalía General de la Nación haya descubierto con la presentación del escrito de acusación en el proceso penal, aun cuando ellos no hayan sido introducidos y controvertidos en la audiencia del juicio y no tengan por consiguiente la calidad de pruebas. Estos elementos materiales de prueba o evidencias físicas deberán ser sometidos a contradicción dentro del proceso disciplinario.

Cuando la Procuraduría General de la Nación o el Consejo Superior de la Judicatura necesiten información acerca de una investigación penal en curso o requieran trasladar a la actuación disciplinaria elementos materiales de prueba o evidencias físicas que no hayan sido descubiertos, así lo solicitarán al Fiscal General de la Nación. En cada caso, el Fiscal General evaluará la solicitud y determinará qué información o elementos materiales de prueba o evidencias físicas puede entregar, sin afectar la investigación penal ni poner en riesgo el éxito de la misma.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**ARTÍCULO 52. *Término de la investigación disciplinaria.*** Los dos primeros incisos del artículo 156 de la Ley 734 quedarán así:

El término de la investigación disciplinaria será de doce meses, contados a partir de la decisión de apertura.

En los procesos que se adelanten por faltas gravísimas, la investigación disciplinaria no podrá exceder de dieciocho meses. Este término podrá aumentarse hasta en una tercera parte, cuando en la misma actuación se investiguen varias faltas o a dos o más inculpados.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**ARTÍCULO 53. *Decisión de cierre de investigación.*** La Ley 734 de 2002 tendrá un artículo 160 A, el cual quedará así:

Cuando se haya recaudado prueba que permita la formulación de cargos, o vencido el término de la investigación, el funcionario de conocimiento, mediante decisión de sustanciación notificable y que sólo admitirá el recurso de reposición, declarará cerrada la investigación.

En firme la providencia anterior, la evaluación de la investigación disciplinaria se verificará en un plazo máximo de quince (15) días hábiles.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**ARTÍCULO 54. *Término probatorio.*** El inciso primero del artículo 168 de la Ley 734 de 2002 quedará así:

Vencido el término señalado en el artículo 166, el funcionario competente resolverá sobre las nulidades propuestas y ordenará la práctica de las pruebas que hubieren sido solicitadas, de acuerdo con los criterios de conducencia, pertinencia y necesidad.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**ARTÍCULO 55. *Traslado para alegatos de conclusión.*** El artículo 169 de la Ley 734 de 2002 quedará así:

Si no hubiere pruebas que practicar o habiéndose practicado las señaladas en la etapa de juicio disciplinario, el funcionario de conocimiento mediante auto de sustanciación notificable ordenará traslado común de diez (10) días para que los sujetos procesales puedan presentar alegatos de conclusión.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**ARTÍCULO 56. *Término para fallar.*** La Ley 734 de 2002 tendrá un artículo 169 A, el cual quedará así:

El funcionario de conocimiento proferirá el fallo dentro de los veinte (20) días hábiles siguientes al vencimiento del término de traslado para presentar alegatos de conclusión.

([Derogado por el art. 265 de la Ley 1952 de 2019](#))

**ARTÍCULO 57.** *Aplicación del procedimiento verbal.* El artículo [175](#) de la Ley 734 de 2002, quedará así:

El procedimiento verbal se adelantará contra los servidores públicos en los casos en que el sujeto disciplinable sea sorprendido en el momento de la comisión de la falta o con elementos, efectos o instrumentos que provengan de la ejecución de la conducta, cuando haya confesión y en todo caso cuando la falta sea leve.

También se aplicará el procedimiento verbal para las faltas gravísimas contempladas en el artículo 48 numerales 2, 4, 17, 18, 19, 20, 21, 22, 23, 32, 33, 35, 36, 39, 46, 47, 48, 52, 54, 55, 56, 57, 58, 59 y 62 de esta ley.

En los eventos contemplados en los incisos anteriores, se citará a audiencia, en cualquier estado de la actuación, hasta antes de proferir pliego de cargos.

En todo caso, y cualquiera que fuere el sujeto disciplinable, si al momento de valorar sobre la decisión de apertura de investigación estuvieren dados los requisitos sustanciales para proferir pliego de cargos se citará a audiencia.

([Derogado por el art. 265 de la Ley 1952 de 2019](#))

**(Nota:** *Expresión subrayada declarada EXEQUIBLE por la Corte Constitucional mediante Sentencia [C-370](#) de 2012.)*

**ARTÍCULO 58.** *Procedimiento verbal.* El artículo [177](#) de la Ley 734 de 2002 quedará así:

Calificado el procedimiento a seguir conforme a las normas anteriores, el funcionario competente, mediante auto que debe notificarse personalmente, ordenará adelantar proceso verbal y citará a audiencia al posible responsable.

En el auto que ordena adelantar proceso verbal, debe consignarse la identificación del funcionario cuestionado, el cargo o empleo desempeñado, una relación sucinta de los hechos reputados irregulares y de las normas que los tipifican, la relación de las pruebas tomadas en cuenta y de las que se van a ordenar, lo mismo que la responsabilidad que se estima puede caber al funcionario cuestionado.

La audiencia debe iniciar no antes de cinco (5) ni después de quince (15) días de la fecha del auto que la ordena. Contra esta decisión no procede recurso alguno.

Al inicio de la audiencia, a la que el investigado puede asistir solo o asistido de abogado, podrá dar su propia versión de los hechos y aportar y solicitar pruebas, las cuales serán practicadas en la misma diligencia, dentro del término improrrogable de tres (3) días. Si no fuere posible hacerlo se suspenderá la audiencia por el término máximo de cinco (5) días y se señalará fecha para la práctica de la prueba o pruebas pendientes.

Las pruebas se practicarán conforme se regulan para el proceso ordinario, haciéndolas compatibles con las formas propias del proceso verbal.

Podrá ordenarse la práctica de pruebas por comisionado, cuando sea necesario y procedente. La negativa a decretar y practicar pruebas, por inconducentes, impertinentes o superfluas, debe ser motivada.

El director del proceso podrá ordenar un receso, por el tiempo que estime indispensable, para que las partes presenten los alegatos de conclusión, el cual será de mínimo tres (3) días y máximo de diez (10) días. De la misma manera podrá proceder en aquellos eventos que no estén previstos y que hagan necesaria tal medida. Contra esta decisión no cabe ningún recurso.

De la audiencia se levantará acta en la que se consignará sucintamente lo ocurrido en ella. Todas las decisiones se notifican en estrados.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**(Nota:** *Expresión subrayada declarada EXEQUIBLE por la Corte Constitucional mediante Sentencia C-370 de 2012, en el entendido que este término solamente comenzará a correr a partir de la notificación del auto que ordena adelantar el proceso verbal.)*

**ARTÍCULO 59. *Recursos.*** El artículo 180 de la Ley 734 de 2002 quedará así:

El recurso de reposición procede contra las decisiones que niegan la práctica de pruebas, las nulidades y la recusación, el cual debe interponerse y sustentarse verbalmente en el momento en que se profiera la decisión. El director del proceso, a continuación, decidirá oral y motivadamente sobre lo planteado en el recurso.

El recurso de apelación cabe contra el auto que niega pruebas, contra el que rechaza la recusación y contra el fallo de primera instancia, debe sustentarse verbalmente en la misma audiencia, una vez proferido y notificado el fallo en estrados. Inmediatamente se decidirá sobre su otorgamiento.

**(Nota:** *Inciso declarado EXEQUIBLE por la Corte Constitucional, mediante Sentencias C-315 de 2012 y C-401 de 2013)*

Procede el recurso de reposición cuando el procedimiento sea de única instancia, el cual deberá interponerse y sustentarse una vez se produzca la notificación en estrados, agotado lo cual se decidirá el mismo.

Las decisiones de segunda instancia se adoptarán conforme al procedimiento escrito.

De proceder la recusación, el ad quem revocará la decisión y devolverá el proceso para que se tramite por el que sea designado.

En caso de revocarse la decisión que negó la práctica de pruebas, el ad quem las decretará y practicará. También podrá decretar de oficio las que estime necesarias para resolver el fondo del asunto, debiendo garantizar el derecho de contradicción.

**(Nota:** *Inciso declarado EXEQUIBLE por la Corte Constitucional, mediante Sentencia C-401 de 2013.)*

Antes de proferir el fallo, las partes podrán presentar alegatos de conclusión, para lo cual dispondrán de un término de traslado de dos (2) días, contados a partir del día siguiente al de la notificación por estado, que es de un día.

El ad quem dispone de diez (10) días para proferir el fallo de segunda instancia. Este se ampliará en otro tanto si debe ordenar y practicar pruebas.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**ARTÍCULO 60.** *Procedencia del procedimiento disciplinario especial ante el Procurador General de la Nación.* El artículo 182 de la Ley 734 de 2002 tendrá un inciso segundo, el cual quedará así:

El Procurador General de la Nación también podrá aplicar este procedimiento especial para los casos en que su competencia para disciplinar sea en única instancia.

(Derogado por el art. 265 de la Ley 1952 de 2019)

**CAPÍTULO IV**

**REGULACIÓN DEL LOBBY O CABILDEO**

**ARTÍCULO 61.** *Acceso a la información.* La autoridad competente podrá requerir, en cualquier momento, informaciones o antecedentes adicionales relativos a gestiones determinadas, cuando exista al menos prueba sumaria de la comisión de algún delito o de una falta disciplinaria.

**CAPÍTULO V**

**ORGANISMOS ESPECIALES PARA LA LUCHA CONTRA LA CORRUPCIÓN**

**ARTÍCULO 62.** ***Conformación de la Comisión Nacional para la Moralización.*** Créase la Comisión Nacional para la Moralización, integrada por:

a) El Presidente de la República;

b) El Ministro del Interior y de Justicia;

c) El Procurador General de la Nación;

d) El Contralor General de la República;

e) El Auditor General de la República;

f) El Presidente del Senado y de la Cámara de Representantes;

g) El Fiscal General de la Nación;

h) El Presidente de la Corte Suprema de Justicia;

i) El Presidente del Consejo de Estado;

j) El Director del Programa Presidencial de Modernización, Eficiencia, Transparencia y Lucha contra la Corrupción;

k) El Consejero Presidencial para el Buen Gobierno y la Transparencia;

l) El Defensor del Pueblo.

*(Ver numeral 9, artículo 1.3.1, Decreto 1081 de 2015)*

**ARTÍCULO 63.** ***Presidencia de la Comisión.*** La Presidencia de la Comisión Nacional para la Moralización corresponderá al Presidente de la República.

**ARTÍCULO 64.** ***Funciones.*** La Comisión Nacional para la Moralización tendrá las siguientes funciones:

a) Velar por el cumplimiento de la aplicación de la presente ley y de la Ley 190 de 1995;

b) Coordinar la realización de acciones conjuntas para la lucha contra la corrupción frente a entidades del orden nacional o territorial en las cuales existan indicios de este fenómeno;

c) Coordinar el intercambio de información en materia de lucha contra la corrupción;

d) Realizar propuestas para hacer efectivas las medidas contempladas en esta ley respecto de las personas políticamente expuestas;

e) Establecer los indicadores de eficacia, eficiencia y transparencia obligatorios para la Administración Pública, y los mecanismos de su divulgación;

f) Establecer las prioridades para afrontar las situaciones que atenten o lesionen la moralidad en la Administración Pública;

g) Adoptar una estrategia anual que propenda por la transparencia, la eficiencia, la moralidad y los demás principios que deben regir la Administración Pública;

h) Promover la implantación de centros piloto enfocados hacia la consolidación de mecanismos transparentes y la obtención de la excelencia en los niveles de eficiencia, eficacia y economía de la gestión pública;

i) Promover el ejercicio consciente y responsable de la participación ciudadana y del control social sobre la gestión pública;

j) Prestar su concurso en el cumplimiento de las acciones populares en cuanto tienen que ver con la moralidad administrativa;

k) Orientar y coordinar la realización de actividades pedagógicas e informativas sobre temas asociados con la ética y la moral públicas, los deberes y las responsabilidades en la función pública;

l) Mantener contacto e intercambio permanentes con entidades oficiales y privadas del país y del exterior que ofrezcan alternativas de lucha contra la corrupción administrativa;

m) Prestar todo su concurso para la construcción de un Estado transparente;

n) Darse su propio Reglamento.

**PARÁGRAFO:** La Comisión Nacional de Moralización instalará dos subcomisiones técnicas, una para la prevención y otra para la detección y sanción de hechos de corrupción, con el fin de garantizar la continuidad y calidad técnica de la comisión.

Las subcomisiones estarán conformadas por delegados permanentes de los miembros que la componen de acuerdo a sus competencias.

Las subcomisiones podrán convocar otras entidades cuando lo consideren necesario.

La Comisión Nacional de Moralización a través del Gobierno Nacional reglamentará las Subcomisiones Técnicas, dentro de los seis (6) meses siguientes a la expedición de la presente Ley.

(Parágrafo adicionado por el Art. 28 de la Ley 2195 de 2022).

**ARTÍCULO 65.** *Comisiones Regionales de Moralización.* Cada departamento instalará una Comisión Regional de Moralización que estará encargada de aplicar y poner en marcha los lineamientos de la Comisión Nacional de Moralización y coordinar en el nivel territorial las acciones de los órganos de prevención, investigación y sanción de la corrupción.

La Comisión Regional estará conformada por los representantes regionales de la Procuraduría General de la Nación, la Contraloría General de la República, la Fiscalía General de la Nación, el Consejo Seccional de la Judicatura y la Contraloría Departamental, Municipal y Distrital. La asistencia a estas reuniones que se llevarán a cabo mensualmente es obligatoria e indelegable.

Otras entidades que pueden ser convocadas para ser parte de la Comisión Regional de Moralización, cuando se considere necesario, son: la Defensoría del Pueblo, las personerías municipales, los cuerpos especializados de policía técnica, el Gobernador y el Presidente de la Asamblea Departamental.

Con el fin de articular las Comisiones Regionales de Moralización con la ciudadanía organizada, deberá celebrarse entre ellos por lo menos una reunión trimestral para atender y responder sus peticiones, inquietudes, quejas y denuncias.

**ARTÍCULO 66.** *Conformación de la Comisión Nacional Ciudadana para la Lucha contra la Corrupción.* Créase la Comisión Nacional Ciudadana para la Lucha contra la Corrupción, la cual estará integrada por:

a) Un representante de los Gremios Económicos;

b) Un representante de las Organizaciones No Gubernamentales dedicadas a la lucha contra la corrupción;

c) Un representante de las Universidades;

d) Un representante de los Medios de Comunicación;

e) Un representante de las Veedurías Ciudadanas;

f) Un representante del Consejo Nacional de Planeación;

g) Un representante de las Organizaciones Sindicales;

h) Un representante de Conferilec (Confederación Colombiana de Libertad Religiosa, Conciencia y Culto).

**ARTÍCULO 67. *Designación de Comisionados.*** La designación de los Comisionados Ciudadanos corresponde al Presidente de la República, de ternas enviadas por cada sector. El desempeño del cargo será por períodos fijos de cuatro (4) años y ejercerán sus funciones ad honórem.

(Reglamentado por el Decreto 958 de 2016).

**ARTÍCULO 68. *Funciones.*** La Comisión Nacional Ciudadana para la Lucha contra la Corrupción ejercerá las siguientes funciones:

a) Velar por el cumplimiento de la aplicación de la presente ley y de la Ley 190 de 1995;

b) Realizar un informe de seguimiento, evaluación y recomendaciones a las políticas, planes y programas que se pongan en marcha en materia de lucha contra la corrupción, el cual deberá presentarse al menos una (1) vez cada año;

c) Impulsar campañas en las instituciones educativas para la promoción de los valores éticos y la lucha contra la corrupción;

d) Promover la elaboración de códigos de conducta para el ejercicio ético y transparente de las actividades del sector privado y para la prevención de conflictos de intereses en el mismo;

e) Hacer un seguimiento especial a las medidas adoptadas en esta ley para mejorar la gestión pública tales como la contratación pública, la política antitrámites, la democratización de la Administración Pública, el acceso a la información pública y la atención al ciudadano;

f) Realizar un seguimiento especial a los casos e investigaciones de corrupción de alto impacto;

g) Realizar un seguimiento a la implementación de las medidas contempladas en esta ley para regular el cabildeo, con el objeto de velar por la transparencia de las decisiones públicas;

h) Promover la participación activa de los medios de comunicación social en el desarrollo de programas orientados a la lucha contra la corrupción y al rescate de la moral pública;

i) Denunciar ante las autoridades competentes los hechos o actuaciones irregulares de los servidores públicos de los cuales tengan conocimiento, en cumplimiento de lo previsto en el artículo 92 de la Constitución;

j) Prestar su concurso en el cumplimiento de las acciones populares en cuanto hacen relación con la moralidad administrativa;

k) Velar por que la Administración Pública mantenga actualizado el inventario y propiedad de bienes muebles e inmuebles pertenecientes a las diversas entidades, así como su adecuada utilización;

l) Velar y proponer directrices para dar cumplimiento a lo previsto en el artículo 56 de la Ley 190 de 1995;

m) Darse su propio Reglamento.

**ARTÍCULO 69.** *Secretaría Técnica.* La Secretaría Técnica de la Comisión Nacional Ciudadana para la lucha contra la corrupción será designada por los representantes de qué trata el Artículo 66 de esta Ley. La Secretaría Técnica de la Comisión Nacional de Moralización y de sus subcomisiones técnicas será ejercida por la Secretaría de Transparencia de la Presidencia de la República.

(Modificado por el Art. 29 de la Ley 2195 de 2022).

Norma Anterior

**ARTÍCULO 70.** *Requisitos.* Son requisitos para ser miembro de la Comisión Nacional Ciudadana para la Lucha contra la Corrupción, los siguientes:

1. Ser ciudadano colombiano en ejercicio.

2. No haber sido condenado por delito o contravención dolosos.

3. No haber sido sancionado disciplinariamente por falta grave o gravísima.

4. No ostentar la calidad de servidor público, ni tener vínculo contractual con el Estado.

**ARTÍCULO 71.** *Reuniones de la Comisión Nacional de Moralización y la Comisión Ciudadana.* La Comisión Nacional de Moralización y la Comisión Ciudadana deberán reunirse al menos dos (2) veces al año y entregar a fin de año un informe de sus actividades y resultados, el cual será público y podrá ser consultado en la página de Internet de todas las entidades que conforman esta Comisión.

(Modificado por el Art. 71 de la Ley 2195 de 2022).

Norma Anterior

**ARTÍCULO 72.** *Funciones del Programa Presidencial de Modernización, Eficiencia, Transparencia y Lucha contra la Corrupción.* El Programa Presidencial de Modernización, Eficiencia, Transparencia y Lucha contra la Corrupción, o quien haga sus veces, tendrá las siguientes funciones:

a) Diseñar y coordinar la implementación de la política del Gobierno en la lucha contra la corrupción, enmarcada en la Constitución y en el Plan Nacional de Desarrollo, según los lineamientos del Presidente de la República;

b) Diseñar, coordinar e implementar directrices, mecanismos y herramientas preventivas para el fortalecimiento institucional, participación ciudadana, control social, rendición de cuentas, acceso a la información, cultura de la probidad y transparencia;

c) Coordinar la implementación de los compromisos adquiridos por Colombia en los instrumentos internacionales de lucha contra la corrupción;

d) Fomentar y contribuir en la coordinación interinstitucional de las diferentes ramas del poder y órganos de control en el nivel nacional y territorial;

e) Diseñar instrumentos que permitan conocer y analizar el fenómeno de la corrupción y sus indicadores, para diseñar políticas públicas;

f) Definir y promover acciones estratégicas entre el sector público y el sector privado para la lucha contra la corrupción;

g) Solicitar y analizar información de naturaleza pública de las entidades públicas o privadas que ejecuten recursos del Estado o presten un servicio público, y de las sujetos obligados bajo la Ley 1712 de 2014 -Ley de Transparencia y Acceso a la Información Pública-, cuando sea necesario para verificar la transparencia en el manejo de las recursos y la integridad de la administración pública, y generar alertas tempranas, que deberá poner en conocimiento de las autoridades competentes.

(Derogado por el art. 237, del Decreto 019 de 2012)

(Adicionado por el Artículo 34 de la Ley 1778 de 2016).

h) Dar traslado a los entes de control y a la Fiscalía General de la Nación de presuntos delitos contra la administración pública, delitos contra el orden económico y social, o delitos contra el patrimonio económico, así como infracciones disciplinarias o fiscales, de las que haya tenido conocimiento, y de la documentación o evidencia conducente para la verificación de esos casos

(Adicionado por el Artículo 34 de la Ley 1778 de 2016).

i) Requerir a las comisiones regionales de moralización adelantar las investigaciones por presuntos delitos contra la administración pública, delitos contra el orden económico y social, delitos contra el patrimonio económico, infracciones disciplinarias o fiscales, de las que haya tenido conocimiento; y formular recomendaciones para prevenir y atacar riesgos sistémicos de corrupción.

(*Adicionado por el Artículo 34 de la Ley 1778 de 2016*).

**CAPÍTULO VI**

**POLÍTICAS INSTITUCIONALES Y PEDAGÓGICAS**

**ARTÍCULO 73.** *Plan Anticorrupción y de Atención al Ciudadano.* Cada entidad del orden nacional, departamental y municipal, cualquiera que sea su régimen de contratación, deberá implementar Programas de Transparencia y Ética Pública con el fin de promover la cultura de la legalidad e identificar, medir, controlar y monitorear constantemente el riesgo de corrupción en el desarrollo de su misionalidad. Este programa contemplará, entre otras cosas:

a. Medidas de debida diligencia en las entidades del sector público.

b. Prevención, gestión y administración de riesgos de lavado de activos, financiación del terrorismo y proliferación de armas y riesgos de corrupción, incluidos los reportes de operaciones sospechosas a la UIAF, consultas en las listas restrictivas y otras medidas específicas que defina el Gobierno Nacional dentro del año siguiente a la expedición de esta norma;

c. Redes interinstitucionales para el fortalecimiento de prevención de actos de corrupción, transparencia y legalidad;

d. Canales de denuncia conforme lo establecido en el Artículo 76 de la Ley 1474 de 2011;

e. Estrategias de transparencia, Estado abierto, acceso a la información pública y cultura de legalidad;

f. Todas aquellas iniciativas adicionales que la Entidad considere necesario incluir para prevenir y combatir la corrupción.

**PARÁGRAFO 1.** En aquellas entidades en las que se tenga, implementado un Sistema Integral de Administración de Riesgos, éste deberá articularse con el Programa de Transparencia y Ética Pública.

**PARÁGRAFO 2.** Las entidades del orden territorial contarán con el término máximo de dos (2) años y las entidades del orden nacional con un (1) año para adoptar Programa de Transparencia y Ética Pública.

**PARÁGRAFO 3.** La Secretaría de Transparencia de la Presidencia de la República será la encargada de señalar las características, estándares, elementos, requisitos, procedimientos y controles mínimos que deben cumplir el Programa de Transparencia y Ética Pública de que trata este Artículo, el cual tendrá un enfoque de riesgos. El Modelo Integrado de Planeación y Gestión (MIPG) o modelos sucesores deberá armonizarse con el Programa de Transparencia y Ética Pública.

**PARÁGRAFO 4.** El Departamento Administrativo de la Función Pública tendrá a cargo las estrategias antitrámites y los mecanismos para mejorar la atención al ciudadano estarán a cargo de dicha entidad y el Departamento Nacional de Planeación

**PARÁGRAFO 5.** La Agencia de Renovación del Territorio acompañará el proceso de adopción del Programa de Transparencia y Ética Pública de los municipios descritos en el Decreto Ley 893 de 2017 o la norma que lo modifique, adicione o sustituya, para lo cual, contará con el apoyo de la Secretaría de Transparencia de la Presidencia de la República.

El Programa de Transparencia y Ética Pública para los municipios PDET deberá prever el monitoreo específico respecto de los programas, proyectos y recursos derivados de los Planes de Acción para la Transformación Regional - PATR o en su momento la Hoja de Ruta Única que los incorpore.

La Agencia de Renovación del Territorio será la encargada de realizar la articulación entre los municipios del Decreto Ley 893 de 2017 y la Secretaría de Transparencia de la Presidencia de la República.

(Reglamentado por el Decreto 1122 de 2024)

(Modificado por el Art. 31 de la Ley 2195 de 2022).

(Reglamentado por el Decreto 2641 de 2012)

*(Ver art. 2.1.4.1, Decreto 1081 de 2015)*

*(Ver art. 2.1.4.2, Decreto 1081 de 2015)*

*(Ver art. 2.1.4.9, Decreto 1081 de 2015)*

Norma Anterior

**ARTÍCULO 74. *Plan de acción de las entidades públicas.*** A partir de la vigencia de la presente ley, todas las entidades del Estado a más tardar el 31 de enero de cada año, deberán publicar en su respectiva página web el Plan de Acción para el año siguiente, en el cual se especificarán los objetivos, las estrategias, los proyectos, las metas, los responsables, los planes generales de compras y la distribución presupuestal de sus proyectos de inversión junto a los indicadores de gestión.

A partir del año siguiente, el Plan de Acción deberá estar acompañado del informe de gestión del año inmediatamente anterior.

Igualmente publicarán por dicho medio su presupuesto debidamente desagregado, así como las modificaciones a este o a su desagregación.

**PARÁGRAFO .** Las empresas industriales y comerciales del Estado y las Sociedades de Economía Mixta estarán exentas de publicar la información relacionada con sus proyectos de inversión.

*(Ver art. 2.1.1.2.1.10, Decreto 1081 de 2015)*

**Nota** (Ver Directiva Presidencial No. 07 de 2018)

((Ver Circular Externa 100-024 de 2021 Departamento Administrativo de la Función Pública)

**ARTÍCULO 75. *Política antitrámites.*** Para la creación de un nuevo trámite que afecte a los ciudadanos en las entidades del orden nacional, estas deberán elaborar un documento donde se justifique la creación del respectivo trámite. Dicho documento deberá ser remitido al Departamento Administrativo de la Función Pública que en un lapso de treinta (30) días deberá conceptuar sobre la necesidad del mismo. En caso de que dicho concepto sea negativo la entidad se abstendrá de ponerlo en funcionamiento.

**PARÁGRAFO 1.** De conformidad con lo dispuesto en el numeral 10 del artículo 150 de la Constitución Política, revístese al Presidente de la República de precisas facultades extraordinarias para que en el término de seis meses, contados a partir de la fecha de la publicación de la presente ley, expida normas

con fuerza de ley para suprimir o reformar regulaciones, procedimientos y trámites innecesarios existentes en la Administración Pública.

**PARÁGRAFO 2.** Las facultades extraordinarias atribuidas en el presente artículo no serán aplicables respecto de trámites relacionados con licencias ambientales.

(Derogado por el Art. 158 del Decreto 2106 de 2019)

**ARTÍCULO 76.** *Oficina de Quejas, Sugerencias y Reclamos.* En toda entidad pública, deberá existir por lo menos una dependencia encargada de recibir, tramitar y resolver las quejas, sugerencias y reclamos que los ciudadanos formulen, y que se relacionen con el cumplimiento de la misión de la entidad.

La oficina de control interno deberá vigilar que la atención se preste de acuerdo con las normas legales vigentes y rendirá a la administración de la entidad un informe semestral sobre el particular. En la página web principal de toda entidad pública deberá existir un link de quejas, sugerencias y reclamos de fácil acceso para que los ciudadanos realicen sus comentarios.

Todas las entidades públicas deberán contar con un espacio en su página web principal para que los ciudadanos presenten quejas y denuncias de los actos de corrupción realizados por funcionarios de la entidad, y de los cuales tengan conocimiento, así como sugerencias que permitan realizar modificaciones a la manera como se presta el servicio público.

La oficina de quejas, sugerencias y reclamos será la encargada de conocer dichas quejas para realizar la investigación correspondiente en coordinación con el operador disciplinario interno, con el fin de iniciar las investigaciones a que hubiere lugar.

(Inciso derogado por el art. 237, del Decreto 019 de 2012.)

El Programa Presidencial de Modernización, Eficiencia, Transparencia y Lucha contra la Corrupción señalará los estándares que deben cumplir las entidades públicas para dar cumplimiento a la presente norma.

**PARÁGRAFO .** En aquellas entidades donde se tenga implementado un proceso de gestión de denuncias, quejas y reclamos, se podrán validar sus características contra los estándares exigidos por el Programa Presidencial de Modernización, Eficiencia, Transparencia y Lucha contra la Corrupción.

(Reglamentado por el Decreto 2641 de 2012)

*(Ver Literal b) artículo 2.2.21.4.9, Decreto 1083 de 2015.)*

*(Ver art. 2.1.4.3, Decreto 1081 de 2015)*

*(Ver art. 2.1.4.9, Decreto 1081 de 2015)*

**ARTÍCULO 77. *Publicación proyectos de inversión.*** Sin perjuicio de lo ordenado en los artículos 27 y 49 de la Ley 152 de 1994 y como mecanismo de mayor transparencia en la contratación pública, todas las entidades del orden nacional, departamental, municipal y distrital deberán publicar en sus respectivas páginas web cada proyecto de inversión, ordenado según la fecha de inscripción en el Banco de Programas y Proyectos de Inversión nacional, departamental, municipal o distrital, según el caso.

**PARÁGRAFO .** Las empresas industriales y comerciales del Estado y Sociedades de Economía Mixta estarán exentas de publicar la información relacionada con sus proyectos de inversión.

**ARTÍCULO 78. *Democratización de la Administración Pública.*** Modifíquese el artículo 32 de la Ley 489 de 1998, que quedará así:

Todas las entidades y organismos de la Administración Pública tienen la obligación de desarrollar su gestión acorde con los principios de democracia participativa y democratización de la gestión pública. Para ello podrán realizar todas las acciones necesarias con el objeto de involucrar a los ciudadanos y organizaciones de la sociedad civil en la formulación, ejecución, control y evaluación de la gestión pública.

Entre otras podrán realizar las siguientes acciones:

a) Convocar a audiencias públicas;

b) Incorporar a sus planes de desarrollo y de gestión las políticas y programas encaminados a fortalecer la participación ciudadana;

c) Difundir y promover los derechos de los ciudadanos respecto del correcto funcionamiento de la Administración Pública;

d) Incentivar la formación de asociaciones y mecanismos de asociación de intereses para representar a los usuarios y ciudadanos;

e) Apoyar los mecanismos de control social que se constituyan;

f) Aplicar mecanismos que brinden transparencia al ejercicio de la función administrativa.

En todo caso, las entidades señaladas en este artículo tendrán que rendir cuentas de manera permanente a la ciudadanía, bajo los lineamientos de metodología y contenidos mínimos establecidos por el Gobierno Nacional, los cuales serán formulados por la Comisión Interinstitucional para la Implementación de la Política de rendición de cuentas creada por el CONPES 3654 de 2010.

**ARTÍCULO 79.** *Pedagogía de las competencias ciudadanas.* Los establecimientos educativos de educación básica y media incluirán en su Proyecto Educativo Institucional, según lo consideren pertinente, estrategias para el desarrollo de competencias ciudadanas para la convivencia pacífica, la participación y la responsabilidad democrática, y la identidad y valoración de la diferencia, lo cual deberá verse reflejado en actividades destinadas a todos los miembros de la comunidad educativa. Específicamente, desde el ámbito de participación se orientará hacia la construcción de una cultura de la legalidad y del cuidado de los bienes comunes.

**PARÁGRAFO .** El Ministerio de Educación Nacional y las Secretarías de Educación promoverán programas de formación docente para el desarrollo de las competencias ciudadanas.

**ARTÍCULO 80.** *Divulgación de campañas institucionales de prevención de la corrupción.* Los proveedores de los Servicios de Radiodifusión Sonora de carácter público o comunitario deberán prestar apoyo gratuito al Ministerio de Tecnologías de la Información y las Comunicaciones en divulgación de proyectos y estrategias de comunicación social, que dinamicen los mecanismos de integración social y comunitaria, así como a la Procuraduría General de la Nación, la Contraloría General de la República, la Fiscalía General de la Nación, el Programa Presidencial de Modernización, Eficiencia, Transparencia y Lucha contra la Corrupción y otras entidades de la Rama Ejecutiva con un mínimo de 15 minutos diarios de emisión a cada entidad, para divulgar estrategias de lucha contra la corrupción y proteger y promover los derechos fundamentales de los Colombianos.

De la misma manera los operadores públicos de sistemas de televisión, deberán prestar apoyo en los mismos términos y con el mismo objetivo, en un tiempo no inferior a 30 minutos efectivos de emisión en cada semana.

**ARTÍCULO 81.** *Sanciones por incumplimiento de políticas institucionales.* El incumplimiento de la implementación de las políticas institucionales y pedagógicas contenidas en el presente capítulo, por parte de los servidores públicos encargados se constituirá como falta disciplinaria grave.

**CAPÍTULO VII**

**DISPOSICIONES PARA PREVENIR Y COMBATIR LA CORRUPCIÓN EN LA CONTRATACIÓN PÚBLICA**

**ARTÍCULO 82.** *Responsabilidad de los interventores.* Modifíquese el artículo 53 de la Ley 80 de 1993, el cual quedará así:

Los consultores y asesores externos responderán civil, fiscal, penal y disciplinariamente tanto por el cumplimiento de las obligaciones derivadas del contrato de consultoría o asesoría, como por los hechos u omisiones que les fueren imputables y que causen daño o perjuicio a las entidades, derivados de la celebración y ejecución de los contratos respecto de los cuales hayan ejercido o ejerzan las actividades de consultoría o asesoría.

Por su parte, los interventores responderán civil, fiscal, penal y disciplinariamente, tanto por el cumplimiento de las obligaciones derivadas del contrato de interventoría, como por los hechos u omisiones que les sean imputables y causen daño o perjuicio a las entidades, derivados de la

celebración y ejecución de los contratos respecto de los cuales hayan ejercido o ejerzan las funciones de interventoría.

**PARÁGRAFO .** El Gobierno Nacional reglamentará la materia dentro de los seis (6) meses siguientes a la expedición de esta ley.

**ARTÍCULO 83.** *Supervisión e interventoría contractual.* Con el fin de proteger la moralidad administrativa, de prevenir la ocurrencia de actos de corrupción y de tutelar la transparencia de la actividad contractual, las entidades públicas están obligadas a vigilar permanentemente la correcta ejecución del objeto contratado a través de un supervisor o un interventor, según corresponda.

La supervisión consistirá en el seguimiento técnico, administrativo, financiero, contable, y jurídico que sobre el cumplimiento del objeto del contrato, es ejercida por la misma entidad estatal cuando no requieren conocimientos especializados. Para la supervisión, la Entidad estatal podrá contratar personal de apoyo, a través de los contratos de prestación de servicios que sean requeridos.

La interventoría consistirá en el seguimiento técnico que sobre el cumplimiento del contrato realice una persona natural o jurídica contratada para tal fin por la Entidad Estatal, cuando el seguimiento del contrato suponga conocimiento especializado en la materia, o cuando la complejidad o la extensión del mismo lo justifiquen. No obstante, lo anterior cuando la entidad lo encuentre justificado y acorde a la naturaleza del contrato principal, podrá contratar el seguimiento administrativo, técnico, financiero, contable, jurídico del objeto o contrato dentro de la interventoría.

Por regla general, no serán concurrentes en relación con un mismo contrato, las funciones de supervisión e interventoría. Sin embargo, la entidad puede dividir la vigilancia del contrato principal, caso en el cual en el contrato respectivo de interventoría, se deberán indicar las actividades técnicas a cargo del interventor y las demás quedarán a cargo de la Entidad a través del supervisor.

El contrato de Interventoría será supervisado directamente por la entidad estatal.

**PARÁGRAFO 1.** En adición a la obligación de contar con interventoría, teniendo en cuenta la capacidad de la entidad para asumir o no la respectiva supervisión en los contratos de obra a que se refiere el artículo 32 de la Ley 80 de 1993, los estudios previos de los contratos cuyo valor supere la menor cuantía de la entidad, con independencia de la modalidad de selección, se pronunciarán sobre la necesidad de contar con interventoría.

**PARÁGRAFO 2.** El Gobierno Nacional reglamentará la materia.

**ARTÍCULO 84.** *Facultades y deberes de los supervisores y los interventores.* La supervisión e interventoría contractual implica el seguimiento al ejercicio del cumplimiento obligacional por la entidad contratante sobre las obligaciones a cargo del contratista.

Los interventores y supervisores están facultados para solicitar informes, aclaraciones y explicaciones sobre el desarrollo de la ejecución contractual, y serán responsables por mantener informada a la entidad contratante de los hechos o circunstancias que puedan constituir actos de corrupción tipificados como conductas punibles, o que puedan poner o pongan en riesgo el cumplimiento del contrato, o cuando tal incumplimiento se presente.

**PARÁGRAFO 1.** El numeral 34 del artículo 48 de la Ley 734 de 2002 quedará así:

No exigir, el supervisor o el interventor, la calidad de los bienes y servicios adquiridos por la entidad estatal, o en su defecto, los exigidos por las normas técnicas obligatorias, o certificar como recibida a satisfacción, obra que no ha sido ejecutada a cabalidad. También será falta gravísima omitir el deber de informar a la entidad contratante los hechos o circunstancias que puedan constituir actos de corrupción tipificados como conductas punibles, o que puedan poner o pongan en riesgo el cumplimiento del contrato, o cuando se presente el incumplimiento.

**PARÁGRAFO 2.** Adiciónese la Ley 80 de 1993, artículo 8, numeral 1, con el siguiente literal:

k) El interventor que incumpla el deber de entregar información a la entidad contratante relacionada con el incumplimiento del contrato, con hechos o circunstancias que puedan constituir actos de corrupción tipificados como conductas punibles, o que puedan poner o pongan en riesgo el cumplimiento del contrato.

Esta inhabilidad se extenderá por un término de cinco (5) años, contados a partir de la ejecutoria del acto administrativo que así lo declare, previa la actuación administrativa correspondiente.

**(Nota:** *Parágrafo declarado EXEQUIBLE por la Corte Constitucional, mediante Sentencia C-434 de 2013.)*

**PARÁGRAFO 3.** El interventor que no haya informado oportunamente a la Entidad de un posible incumplimiento del contrato vigilado o principal, parcial o total, de alguna de las obligaciones a cargo del contratista, será solidariamente responsable con este de los perjuicios que se ocasionen con el incumplimiento por los daños que le sean imputables al interventor.

Cuando el ordenador del gasto sea informado oportunamente de los posibles incumplimientos de un contratista y no lo conmine al cumplimiento de lo pactado o adopte las medidas necesarias para salvaguardar el interés general y los recursos públicos involucrados, será responsable solidariamente con este, de los perjuicios que se ocasionen.

**PARÁGRAFO 4.** Cuando el interventor sea consorcio o unión temporal la solidaridad se aplicará en los términos previstos en el artículo 7 de la Ley 80 de 1993, respecto del régimen sancionatorio.

**ARTÍCULO 85.** *Continuidad de la interventoría.* Los contratos de interventoría podrán prorrogarse por el mismo plazo que se haya prorrogado el contrato objeto de vigilancia. En tal caso el valor podrá ajustarse en atención a las obligaciones del objeto de interventoría, sin que resulte aplicable lo dispuesto en el parágrafo del artículo 40 de la Ley 80 de 1993.

**PARÁGRAFO .** Para la ejecución de los contratos de interventoría es obligatoria la constitución y aprobación de la garantía de cumplimiento hasta por el mismo término de la garantía de estabilidad del contrato principal; el Gobierno Nacional regulará la materia. En este evento podrá darse aplicación al artículo 7 de la Ley 1150, en cuanto a la posibilidad de que la garantía pueda ser dividida teniendo en cuenta las etapas o riesgos relativos a la ejecución del respectivo contrato.

**ARTÍCULO 86.** *Imposición de multas, sanciones y declaratorias de incumplimiento.* Las entidades sometidas al Estatuto General de Contratación de la Administración Pública podrán declarar el incumplimiento, cuantificando los perjuicios del mismo, imponer las multas y sanciones pactadas en el contrato, y hacer efectiva la cláusula penal. Para tal efecto observarán el siguiente procedimiento:

a) Evidenciado un posible incumplimiento de las obligaciones a cargo del contratista, la entidad pública lo citará a audiencia para debatir lo ocurrido. En la citación, hará mención expresa y detallada de los hechos que lo soportan, acompañando el informe de interventoría o de supervisión en el que se sustente la actuación y enunciará las normas o cláusulas posiblemente violadas y las consecuencias que podrían derivarse para el contratista en desarrollo de la actuación. En la misma se establecerá el lugar, fecha y hora para la realización de la audiencia, la que podrá tener lugar a la mayor brevedad posible, atendida la naturaleza del contrato y la periodicidad establecida para el cumplimiento de las obligaciones contractuales. En el evento en que la garantía de cumplimiento consista en póliza de seguros, el garante será citado de la misma manera;

b) En desarrollo de la audiencia, el jefe de la entidad o su delegado, presentará las circunstancias de hecho que motivan la actuación, enunciará las posibles normas o cláusulas posiblemente violadas y las consecuencias que podrían derivarse para el contratista en desarrollo de la actuación. Acto seguido se concederá el uso de la palabra al representante legal del contratista o a quien lo represente, y al garante, para que presenten sus descargos, en desarrollo de lo cual podrá rendir las explicaciones del caso, aportar pruebas y controvertir las presentadas por la entidad;

c) Hecho lo precedente, mediante resolución motivada en la que se consigne lo ocurrido en desarrollo de la audiencia y la cual se entenderá notificada en dicho acto público, la entidad procederá a decidir sobre la imposición o no de la multa, sanción o declaratoria de incumplimiento. Contra la decisión así proferida sólo procede el recurso de reposición que se interpondrá, sustentará y decidirá en la misma audiencia. La decisión sobre el recurso se entenderá notificada en la misma audiencia;

d) En cualquier momento del desarrollo de la audiencia, el jefe de la entidad o su delegado, podrá suspender la audiencia cuando de oficio o a petición de parte, ello resulte en su criterio necesario para alegar o practicar pruebas que estime conducentes y pertinentes, o cuando por cualquier otra razón debidamente sustentada, ello resulte necesario para el correcto desarrollo de la actuación administrativa. En todo caso, al adoptar la decisión, se señalará fecha y hora para reanudar la audiencia.

La entidad podrá dar por terminado el procedimiento en cualquier momento, si por algún medio tiene conocimiento de la cesación de situación de incumplimiento.

**Procedimientos sancionatorios**. Durante la vigencia de la Emergencia Sanitaria declarada por el Ministerio de Salud y Protección Social, con ocasión de la pandemia derivada del Coronavirus COVID-19, las audiencias programadas de conformidad con el procedimiento establecido en el presente artículo,

se podrán realizar a través de medios electrónicos, los cuales deberán garantizar el acceso de los contratistas y de quienes hayan expedido la garantía

La entidad estatal debe elegir y garantizar los medios electrónicos y de comunicación que utilizará, así como los mecanismos para el registro de la información generada.

Sin perjuicio de lo anterior, el ordenador del gasto o funcionario competente podrá decretar la suspensión de términos, inclusive los iniciados con anterioridad a la vigencia de este Decreto.

(Incisos adicionados, por el Art. 2 del Decreto 537 de 2020)

**(Nota:** *declarado EXEQUIBLE por la Corte Constitucional, mediante Sentencia C-499 de 2015.)*

**ARTÍCULO 87.** *Maduración de proyectos.* El numeral 12 del artículo 25 de la Ley 80 de 1993 quedará así:

12. Previo a la apertura de un proceso de selección, o a la firma del contrato en el caso en que la modalidad de selección sea contratación directa, deberán elaborarse los estudios, diseños y proyectos requeridos, y los pliegos de condiciones, según corresponda.

Cuando el objeto de la contratación incluya la realización de una obra, en la misma oportunidad señalada en el inciso primero, la entidad contratante deberá contar con los estudios y diseños que permitan establecer la viabilidad del proyecto y su impacto social, económico y ambiental. Esta condición será aplicable incluso para los contratos que incluyan dentro del objeto el diseño.

**PARÁGRAFO 1.** Para efectos de decretar su expropiación, además de los motivos determinados en otras leyes vigentes, declárese de utilidad pública o interés social los bienes inmuebles necesarios para la ejecución de proyectos de infraestructura de transporte.

Para estos efectos, el procedimiento para cada proyecto de infraestructura de transporte diseñado será el siguiente:

1. La entidad responsable expedirá una resolución mediante la cual determine de forma precisa las coordenadas del proyecto.

2. El Instituto Geográfico Agustín Codazzi – IGAC o la entidad competente según el caso, en los dos (2) meses siguientes a la publicación de la resolución de que trata el numeral anterior, procederá a identificar los predios que se ven afectados por el proyecto y ordenará registrar la calidad de predios de utilidad pública o interés social en los respectivos registros catastrales y en los folios de matrícula inmobiliaria, quedando dichos predios fuera del comercio a partir del mencionado registro.

3. Efectuado el Registro de que trata el numeral anterior, en un término de seis (6) meses el IGAC o la entidad competente, con cargo a recursos de la entidad responsable del proyecto, realizará el avalúo comercial del inmueble y lo notificará a esta y al propietario y demás interesados acreditados.

4. El avalúo de que trata el numeral anterior deberá incluir el valor de las posesiones si las hubiera y de las otras indemnizaciones o compensaciones que fuera del caso realizar por afectar dicha declaratoria el patrimonio de los particulares.

5. El Gobierno Nacional reglamentará las condiciones para determinar el valor del precio de adquisición o precio indemnizatorio que se reconocerá a los propietarios en los procesos de enajenación voluntaria y expropiación judicial y administrativa, teniendo en cuenta la localización, las condiciones físicas y jurídicas y la destinación económica de los inmuebles.

6. Los interesados acreditados podrán interponer los recursos de ley en los términos del Código Contencioso Administrativo contra el avalúo del IGAC o de la entidad competente.

7. En firme el avalúo, la entidad responsable del proyecto o el contratista si así se hubiere pactado, pagará dentro de los tres (3) meses siguientes, las indemnizaciones o compensaciones a que hubiere lugar. Al recibir el pago el particular, se entiende que existe mutuo acuerdo en la negociación y transacción de posibles indemnizaciones futuras.

8. Efectuado el pago por mutuo acuerdo, se procederá a realizar el registro del predio a nombre del responsable del proyecto ratificando la naturaleza de bien como de uso público e interés social, el cual gozará de los beneficios del artículo 63 de la Constitución Política.

9. De no ser posible el pago directo de la indemnización o compensación, se expedirá un acto administrativo de expropiación por parte de la entidad responsable del proyecto y se realizará el pago por consignación a órdenes del Juez o Tribunal Contencioso Administrativo competente, acto con el cual quedará cancelada la obligación.

10. La resolución de expropiación será el título con fundamento en el cual se procederá al registro del predio a nombre de la entidad responsable del proyecto y que, como bien de uso público e interés social, gozará de los beneficios del artículo 63 de la Constitución Política. Lo anterior, sin perjuicio del derecho de las personas objeto de indemnización o compensación a recurrir ante los Jueces Contencioso Administrativos el valor de las mismas en cada caso particular.

11. La entidad responsable del proyecto deberá notificar a las personas objeto de la indemnización o compensación que el pago de la misma se realizó. Una vez efectuada la notificación, dichos sujetos deberán entregar el inmueble dentro de los quince (15) días hábiles siguientes.

12. En el evento en que las personas objeto de indemnización o compensación no entreguen el inmueble dentro del término señalado, la entidad responsable del proyecto y las autoridades locales competentes deberán efectuar el desalojo dentro del mes siguiente al vencimiento del plazo para entrega del inmueble.

13. El presente parágrafo también será aplicable para proyectos de infraestructura de transporte que estén contratados o en ejecución al momento de expedición de la presente ley.

(Derogado por el art. 73 de la Ley 1682 de 2013).

**PARÁGRAFO 2.** El avalúo comercial del inmueble requerido para la ejecución de proyectos de infraestructura de transporte, en la medida en que supere en un 50% el valor del avalúo catastral, podrá ser utilizado como criterio para actualizar el avalúo catastral de los inmuebles que fueren des englobados como consecuencia del proceso de enajenación voluntaria o expropiación judicial o administrativa.

(Derogado por el art. 73 de la Ley 1682 de 2013).

**ARTÍCULO 88.** *Factores de selección y procedimientos diferenciales para la adquisición de los bienes y servicios a contratar.* Modifíquese el numeral 2 del artículo 5 de la Ley 1150 de 2007 en el siguiente sentido:

"2. La oferta más favorable será aquella que, teniendo en cuenta los factores técnicos y económicos de escogencia y la ponderación precisa y detallada de los mismos contenida en los pliegos de condiciones o sus equivalentes, resulte ser la más ventajosa para la entidad, sin que la favorabilidad la constituyan factores diferentes a los contenidos en dichos documentos. En los contratos de obra pública, el menor plazo ofrecido no será objeto de evaluación. La entidad efectuará las comparaciones del caso mediante el cotejo de los ofrecimientos recibidos y la consulta de precios o condiciones del mercado y los estudios y deducciones de la entidad o de los organismos consultores o asesores designados para ello.

En los procesos de selección en los que se tenga en cuenta los factores técnicos y económicos, la oferta más ventajosa será la que resulte de aplicar alguna de las siguientes alternativas:

a) La ponderación de los elementos de calidad y precio soportados en puntajes o fórmulas señaladas en el pliego de condiciones; o

b) La ponderación de los elementos de calidad y precio que representen la mejor relación de costo-beneficio para la entidad.

**PARÁGRAFO .** Adiciónese un parágrafo 6 en el artículo 2 de la Ley 1150 de 2007 del siguiente tenor:

"El Gobierno Nacional podrá establecer procedimientos diferentes al interior de las diversas causales de selección abreviada, de manera que los mismos se acomoden a las particularidades de los objetos a contratar, sin perjuicio de la posibilidad de establecer procedimientos comunes. Lo propio podrá hacer en relación con el concurso de méritos".

**ARTÍCULO 89.** *Expedición de adendas.* El inciso 2 del numeral 5 del artículo 30 de la Ley 80 de 1993 quedará así:

"Cuando lo estime conveniente la entidad interesada, de oficio o a solicitud de un número plural de posibles oferentes, dicho plazo se podrá prorrogar antes de su vencimiento, por un término no superior a la mitad del inicialmente fijado. En todo caso no podrán expedirse adendas dentro de los tres (3) días

anteriores en que se tiene previsto el cierre del proceso de selección, ni siquiera para extender el término del mismo. La publicación de estas adendas sólo se podrá realizar en días hábiles y horarios laborales".

**ARTÍCULO 90. INHABILIDAD POR INCUMPLIMIENTO REITERADO.** Quedará inhabilitado el contratista que incurra en alguna de las siguientes conductas:

a. Haber sido objeto de imposición de cinco (5) o más multas durante la ejecución de uno o varios contratos, con una o varias entidades estatales, durante los últimos tres (3) años.

b. Haber sido objeto de declaratorias de incumplimiento contractual en por lo menos dos (2) contratos, con una o varias entidades estatales, durante los últimos tres (3) años.

c. Haber sido objeto de imposición de dos (2) multas y un (1) incumplimiento durante una misma vigencia fiscal, con una o varias entidades estatales.

La inhabilidad se extenderá por un término de tres (3) años, contados a partir de la publicación del acto administrativo que impone la inscripción de la última multa o incumplimiento en el Registro Único de Proponentes, de acuerdo con la información remitida por las entidades públicas. La inhabilidad pertinente se hará explícita en el Registro Único de Proponentes cuando a ello haya lugar.

d. Haber sido objeto de incumplimiento contractual o de imposición de dos (2) o más multas, con una o varias entidades, cuando se trate de contratos cuyo objeto esté relacionado con el Programa de Alimentación Escolar. Esta inhabilidad se extenderá por un término de diez (10) años, contados a partir de la publicación del acto administrativo que impone la inscripción de la última multa o incumplimiento en el Registro Único de Proponentes, de acuerdo con la información remitida por las entidades públicas.

La inhabilidad pertinente se hará explícita en el Registro Único de Proponentes cuando a ello haya lugar.

(Literal adicionado por el Art. 51 de la Ley 2195 de 2022).

**PARÁGRAFO .** La inhabilidad a que se refiere el presente artículo se extenderá a los socios de sociedades de personas a las cuales se haya declarado esta inhabilidad, así como las sociedades de personas de las que aquellos formen parte con posteriordad a dicha declaratoria.

(Artículo MODIFICADO por el Art. 43 de la Ley 1955 de 2019)

**ARTÍCULO 91.** *Anticipos.* En los contratos de obra, concesión, salud, o los que se realicen por licitación pública, el contratista deberá constituir una fiducia o un patrimonio autónomo irrevocable para el manejo de los recursos que reciba a título de anticipo, con el fin de garantizar que dichos recursos se apliquen exclusivamente a la ejecución del contrato correspondiente, salvo que el contrato sea de menor o mínima cuantía.

El costo de la comisión fiduciaria será cubierto directamente por el contratista.

**PARÁGRAFO .** La información financiera y contable de la fiducia podrá ser consultada por los Organismos de Vigilancia y Control Fiscal.

**ARTÍCULO 92.** *Contratos interadministrativos.* Modifícase el inciso primero del literal c) del numeral 4 del artículo 2 de la Ley 1150 de 2007, el cual quedará así:

c) Contratos interadministrativos, siempre que las obligaciones derivadas del mismo tengan relación directa con el objeto de la entidad ejecutora señalado en la ley o en sus reglamentos.

Se exceptúan los contratos de obra, suministro, prestación de servicios de evaluación de conformidad respecto a las normas o reglamentos técnicos, encargos fiduciarios y fiducia pública cuando las instituciones de educación superior públicas o las Sociedades de Economía Mixta con participación mayoritaria del Estado, o las personas jurídicas sin ánimo de lucro conformadas por la asociación de entidades públicas, o las federaciones de entidades territoriales sean las ejecutoras. Estos contratos podrán ser ejecutados por las mismas, siempre que participen en procesos de licitación pública o contratación abreviada de acuerdo con lo dispuesto por los numerales 1 y 2 del presente artículo.

**ARTÍCULO 93.** *Del régimen contractual de las Empresas Industriales y Comerciales del Estado, las Sociedades de Economía Mixta, sus filiales y empresas con participación mayoritaria del Estado.* Modifíquese el artículo 14 de la Ley 1150 de 2007, el cual quedará así:

Las Empresas Industriales y Comerciales del Estado, las Sociedades de Economía Mixta en las que el Estado tenga participación superior al cincuenta por ciento (50%), sus filiales y las Sociedades entre Entidades Públicas con participación mayoritaria del Estado superior al cincuenta por ciento (50%), estarán sometidas al Estatuto General de Contratación de la Administración Pública, con excepción de aquellas que desarrollen actividades comerciales en competencia con el sector privado y/o público, nacional o internacional o en mercados regulados, caso en el cual se regirán por las disposiciones legales y reglamentarias aplicables a sus actividades económicas y comerciales, sin perjuicio de lo previsto en el artículo 13 de la presente ley. Se exceptúan los contratos de ciencia y tecnología, que se regirán por la Ley 29 de 1990 y las disposiciones normativas existentes.

**ARTÍCULO 94.** *Transparencia en contratación de mínima cuantía.* Adiciónese al artículo 2 de la Ley 1150 de 2007 el siguiente numeral.

La contratación cuyo valor no excede del 10 por ciento de la menor cuantía de la entidad independientemente de su objeto, se efectuará de conformidad con las siguientes reglas:

a) Se publicará una invitación, por un término no inferior a un día hábil, en la cual se señalará el objeto a contratar, el presupuesto destinado para tal fin, así como las condiciones técnicas exigidas;

b) El término previsto en la invitación para presentar la oferta no podrá ser inferior a un día hábil;

c) La entidad seleccionará, mediante comunicación de aceptación de la oferta, la propuesta con el menor precio, siempre y cuando cumpla con las condiciones exigidas;

d) La comunicación de aceptación junto con la oferta constituyen para todos los efectos el contrato celebrado, con base en lo cual se efectuará el respectivo registro presupuestal.

**PARÁGRAFO 1.** Las particularidades del procedimiento aquí previsto, así como la posibilidad que tengan las entidades de realizar estas adquisiciones en establecimientos que correspondan a la definición de "gran almacén" señalada por la Superintendencia de Industria y Comercio, se determinarán en el reglamento que para el efecto expida el Gobierno Nacional.

**Adquisición en grandes superficies**. Durante la vigencia de la Emergencia Sanitaria declarada por el Ministerio de Salud y Protección Social, con ocasión de la pandemia derivada del Coronavirus COVID-19, cuando se trate de la adquisición de bienes relacionados con la emergencia, las entidades públicas podrán adquirirlos mediante el instrumento de agregación de demanda de grandes superficies, en cuyo caso el valor de la transacción podrá ser hasta por el monto máximo de la menor cuantía de la respectiva Entidad Estatal.

(inciso, adicionado por el Art. 6 del Decreto 537 de 2020)

**PARÁGRAFO 2.** La contratación a que se refiere el presente artículo se realizará exclusivamente con las reglas en él contempladas y en su reglamentación. En particular no se aplicará lo previsto en la Ley 816 de 2003, ni en el artículo 12 de la Ley 1150 de 2007.

**ARTÍCULO 95.** *Aplicación del Estatuto Contractual.* Modifíquese el inciso 2 del literal c) del numeral 4 del artículo 2 de la Ley 1150 de 2007, el cual quedará así:

En aquellos eventos en que el régimen aplicable a la contratación de la entidad ejecutora no sea el de la Ley 80 de 1993, la ejecución de dichos contratos estará en todo caso sometida a esta ley, salvo que la entidad ejecutora desarrolle su actividad en competencia con el sector privado o cuando la ejecución del contrato interadministrativo tenga relación directa con el desarrollo de su actividad.

**ARTÍCULO 96.** *Régimen de Transición.* Los procesos de contratación estatal en curso, a la fecha en que entre a regir la presente ley, continuarán sujetos a las normas vigentes al momento de su iniciación.

No se generarán inhabilidades ni incompatibilidades sobrevinientes por la aplicación de las normas contempladas en la presente ley respecto de los procesos contractuales que se encuentren en curso antes de su vigencia.

CAPÍTULO VIII

MEDIDAS PARA LA EFICIENCIA Y EFICACIA DEL CONTROL FISCAL EN LA LUCHA CONTRA LA CORRUPCIÓN

SECCIÓN PRIMERA

MODIFICACIONES AL PROCESO DE RESPONSABILIDAD FISCAL

SUBSECCIÓN I

PROCEDIMIENTO VERBAL DE RESPONSABILIDAD FISCAL

**ARTÍCULO 97.** *Procedimiento verbal de responsabilidad fiscal.* El proceso de responsabilidad fiscal se tramitará por el procedimiento verbal que crea esta ley cuando del análisis del dictamen del proceso auditor, de una denuncia o de la aplicación de cualquiera de los sistemas de control, se determine que están dados los elementos para proferir auto de apertura e imputación. En todos los demás casos se continuará aplicando el trámite previsto en la Ley 610 de 2000.

El procedimiento verbal se someterá a las normas generales de responsabilidad fiscal previstas en la Ley 610 de 2000 y en especial por las disposiciones de la presente ley.

**PARÁGRAFO 1.** Régimen de Transición. El proceso verbal que se crea por esta ley se aplicará en el siguiente orden:

1. El proceso será aplicable al nivel central de la Contraloría General de la República y a la Auditoría General de la República a partir de la entrada en vigencia de la presente ley.

2. A partir del 1 de enero de 2012 el proceso será aplicable a las Gerencias Departamentales de la Contraloría General y a las Contralorías Territoriales.

**PARÁGRAFO 2.** Con el fin de tramitar de manera adecuada el proceso verbal de responsabilidad fiscal, los órganos de control podrán redistribuir las funciones en las dependencias o grupos de trabajo existentes, de acuerdo con la organización y funcionamiento de la entidad.

**PARÁGRAFO 3.** En las indagaciones preliminares que se encuentren en trámite a la entrada en vigencia de la presente ley, los órganos de control fiscal competentes podrán adecuar su trámite al procedimiento verbal en el momento de calificar su mérito, profiriendo auto de apertura e imputación si se dan los presupuestos señalados en este artículo. En los procesos de responsabilidad fiscal en los cuales no se haya proferido auto de imputación a la entrada en vigencia de la presente ley, los órganos de control fiscal competentes, de acuerdo con su capacidad operativa, podrán adecuar su trámite al procedimiento verbal en el momento de la formulación del auto de imputación, evento en el cual así se indicará en este acto administrativo, se citará para audiencia de descargos y se tomarán las provisiones procesales necesarias para continuar por el trámite verbal. En los demás casos, tanto las indagaciones preliminares como los procesos de responsabilidad fiscal se continuarán adelantando hasta su terminación de conformidad con la Ley 610 de 2000.

*(***Nota:*** Parágrafo declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-512 de 2013.)*

**ARTÍCULO 98.** *Etapas del procedimiento verbal de responsabilidad fiscal.* El proceso verbal comprende las siguientes etapas:

a) Cuando se encuentre objetivamente establecida la existencia del daño patrimonial al Estado y exista prueba que comprometa la responsabilidad del gestor fiscal, el funcionario competente expedirá un auto de apertura e imputación de responsabilidad fiscal, el cual deberá cumplir con los requisitos establecidos en los artículos 41 y 48 de la Ley 610 de 2000 y contener además la formulación individualizada de cargos a los presuntos responsables y los motivos por los cuales se vincula al garante.

El auto de apertura e imputación indicará el lugar, fecha y hora para dar inicio a la audiencia de descargos. Al día hábil siguiente a la expedición del auto de apertura se remitirá la citación para notificar personalmente esta providencia. Luego de surtida la notificación se citará a audiencia de descargos a los presuntos responsables fiscales, a sus apoderados, o al defensor de oficio si lo tuviere y al garante;

b) El proceso para establecer la responsabilidad fiscal se desarrollará en dos (2) audiencias públicas, la primera denominada de Descargos y la segunda denominada de Decisión. En dichas audiencias se podrán utilizar medios tecnológicos de comunicación como la videoconferencia y otros que permitan la interacción virtual remota entre las partes y los funcionarios investigadores;

c) La audiencia de descargos será presidida en su orden, por el funcionario del nivel directivo o ejecutivo competente o en ausencia de este, por el funcionario designado para la sustanciación y práctica de pruebas. La audiencia de decisión será presidida por el funcionario competente para decidir;

d) Una vez reconocida la personería jurídica del apoderado del presunto responsable fiscal, las audiencias se instalarán y serán válidas, aun sin la presencia del presunto responsable fiscal. También se instalarán y serán válidas las audiencias que se realicen sin la presencia del garante.

*(**Nota:** Literal declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia C-083 de 2015, en el entendido de que las cargas de desistimiento y archivo de la petición o la declaratoria de desierto del recurso que debe ser sustentado, no se le aplicarán al presunto responsable fiscal, cuando no asista a la audiencia correspondiente y sólo comparezca su apoderado, cuya personería jurídica haya sido debidamente reconocida en el proceso.)*

La ausencia injustificada del presunto responsable fiscal, su apoderado o del defensor de oficio o del garante o de quien este haya designado para que lo represente, a alguna de las sesiones de la audiencia, cuando existan solicitudes pendientes de decidir, implicará el desistimiento y archivo de la petición. En caso de inasistencia a la sesión en la que deba sustentarse un recurso, este se declarará desierto.

**ARTÍCULO 99. *Audiencia de descargos.*** La Audiencia de Descargos deberá iniciarse en la fecha y hora determinada en el auto de apertura e imputación del proceso. La audiencia de descargos tiene como finalidad que los sujetos procesales puedan intervenir, con todas las garantías procesales, y que se realicen las siguientes actuaciones:

1. Ejercer el derecho de defensa.

2. Presentar descargos a la imputación.

3. Rendir versión libre.

4. Aceptar los cargos y proponer el resarcimiento del daño o la celebración de un acuerdo de pago.

5. Notificar medidas cautelares.

6. Interponer recurso de reposición.

7. Aportar y solicitar pruebas.

8. Decretar o denegar la práctica de pruebas.

9. Declarar, aceptar o denegar impedimentos.

10. Formular recusaciones.

11. Interponer y resolver nulidades.

12. Vincular nuevo presunto responsable.

13. Decidir acumulación de actuaciones.

14. Decidir cualquier otra actuación conducente y pertinente.

En esta audiencia las partes tienen la facultad de controvertir las pruebas incorporadas al proceso en el auto de apertura e imputación, las decretadas en la Audiencia de Descargos y practicadas dentro o fuera de la misma, de acuerdo con lo previsto en el artículo siguiente.

**ARTÍCULO 100.** *Trámite de la audiencia de descargos.* La audiencia de descargos se tramitará conforme a las siguientes reglas:

a) El funcionario competente para presidir la audiencia, la declarará abierta con la presencia de los profesionales técnicos de apoyo designados; el presunto responsable fiscal y su apoderado, si lo tuviere, o el defensor de oficio y el garante, o a quien se haya designado para su representación;

(Numeral a) modificado por el Art. 141 del Decreto 403 de 2020)

b) Si el presunto responsable fiscal no acude a la audiencia, se le designará un defensor de oficio;

c) Si el garante en su calidad de tercero civilmente responsable, o su apoderado previa citación, no acude a la audiencia, se allanarán a las decisiones que en la misma se profieran;

d) Cuando exista causa debidamente justificada, se podrán disponer suspensiones o aplazamientos de audiencias por un término prudencial, señalándose el lugar, día y hora para su reanudación o continuación, según el caso;

e) Solamente en el curso de la audiencia de descargos, los sujetos procesales podrán aportar y solicitar pruebas. Las pruebas solicitadas y las decretadas de oficio serán practicadas o denegadas en la misma diligencia. Cuando se denieguen pruebas, procede el recurso de reposición, el cual se interpondrá, sustentará y resolverá en la misma audiencia;

f) La práctica de pruebas que no se pueda realizar en la misma audiencia será decretada por un término máximo de un (1) año, señalando término, lugar, fecha y hora para su práctica; para tal efecto se ordenará la suspensión de la audiencia.

**ARTÍCULO 101.** *Trámite de la audiencia de decisión.* La audiencia de decisión se tramitará conforme a las siguientes reglas:

a) El funcionario competente para presidir la audiencia de decisión, la declarará abierta con la presencia del funcionario investigador fiscal, los profesionales técnicos de apoyo designados, el presunto responsable fiscal o su apoderado, si lo tuviere, o el defensor de oficio y el garante o a quien se haya designado para su representación;

(Numeral a) modificado por el Art. 142 del Decreto 403 de 2020)

b) Se concederá el uso de la palabra a los sujetos procesales para que expongan sus alegatos de conclusión sobre los hechos que fueron objeto de imputación;

c) El funcionario realizará una exposición amplia de los hechos, pruebas, defensa, alegatos de conclusión, determinará si existen pruebas que conduzcan a la certeza de la existencia o no del daño al patrimonio público; de su cuantificación; de la individualización y actuación del gestor fiscal a título de dolo o culpa grave; de la relación de causalidad entre la conducta del presunto responsable fiscal y el daño ocasionado, y determinará también si surge una obligación de pagar una suma líquida de dinero por concepto de resarcimiento;

d) Terminadas las intervenciones el funcionario competente declarará que el debate ha culminado, y proferirá en la misma audiencia de manera motivada fallo con o sin responsabilidad fiscal. Para tal efecto, la audiencia se podrá suspender por un término máximo de veinte (20) días, al cabo de los cuales la reanudará y se procederá a dictar el fallo correspondiente, el cual se notificará en estrados. El responsable fiscal, su defensor, apoderado de oficio o el tercero declarado civilmente responsable, deberán manifestar en la audiencia si interponen recurso de reposición o apelación según fuere procedente, caso en el cual lo sustentará dentro de los diez (10) días siguientes;

(Numeral d) modificado por el Art. 142 del Decreto 403 de 2020)

e) La cuantía del fallo con responsabilidad fiscal será indexada a la fecha de la decisión. La providencia final se entenderá notificada en estrados en la audiencia, con independencia de si el presunto responsable o su apoderado asisten o no a la misma.

**ARTÍCULO 102. *Recursos.*** Contra los actos que se profieran en el proceso verbal de responsabilidad fiscal, proceden los siguientes recursos:

El recurso de reposición procede contra el rechazo a la petición de negar la acumulación de actuaciones.

El recurso de reposición en subsidio el recurso de apelación procede contra la decisión que resuelve las solicitudes de nulidad, la que deniegue la práctica de pruebas y contra el auto que decrete medidas cautelares, en este último caso el recurso se otorgará en el efecto devolutivo.

Contra el fallo con responsabilidad fiscal proferido en audiencia proceden los recursos de reposición o apelación dependiendo de la cuantía determinada en el auto de apertura e imputación.

El recurso de reposición procede cuando la cuantía del presunto daño patrimonial estimado en el auto de apertura e imputación, sea igual o inferior a la menor cuantía para contratación de la entidad afectada con los hechos y tendrá recurso de apelación cuando supere la suma señalada.

Estos recursos se interpondrán en la audiencia de decisión y serán resueltos dentro de los dos (2) meses siguientes, contados a partir del día siguiente a la sustentación del mismo.

**ARTÍCULO 103. *Medidas cautelares.*** En el auto de apertura e imputación, deberá ordenarse la investigación de bienes de las personas que aparezcan como posibles autores de los hechos que se están investigando y deberán expedirse de inmediato los requerimientos de información a las autoridades correspondientes.

Si los bienes fueron identificados en el proceso auditor, en forma simultánea con el auto de apertura e imputación, se proferirá auto mediante el cual se decretarán las medidas cautelares sobre los bienes de las personas presuntamente responsables de un detrimento al patrimonio del Estado. Las medidas cautelares se ejecutarán antes de la notificación del auto que las decreta.

El auto que decrete medidas cautelares, se notificará en estrados una vez se encuentren debidamente registradas y contra él sólo procederá el recurso de reposición, que deberá ser interpuesto, sustentado y resuelto en forma oral, en la audiencia en la que sea notificada la decisión.

Las medidas cautelares estarán limitadas al valor estimado del daño al momento de su decreto. Cuando la medida cautelar recaiga sobre sumas líquidas de dinero, se podrá incrementar hasta en un cincuenta por ciento (50%) de dicho valor y de un ciento por ciento (100%) tratándose de otros bienes, límite que

se tendrá en cuenta para cada uno de los presuntos responsables, sin que el funcionario que las ordene tenga que prestar caución.

Se podrá solicitar el desembargo al órgano fiscalizador, en cualquier momento del proceso o cuando el acto que estableció la responsabilidad se encuentre demandado ante la jurisdicción competente, siempre que exista previa constitución de garantía real, bancaria o expedida por una compañía de seguros, suficiente para amparar el pago del valor integral del daño estimado y probado por quien decretó la medida.

**ARTÍCULO 104.** *Notificación de las decisiones.* Las decisiones que se profieran en el curso del proceso verbal de responsabilidad fiscal, se notificarán en forma personal, por aviso, por estrados o por conducta concluyente, con los siguientes procedimientos:

a) Se notificará personalmente al presunto responsable fiscal o a su apoderado o defensor de oficio, según el caso, el auto de apertura e imputación y la providencia que resuelve los recursos de reposición o de apelación contra el fallo con responsabilidad fiscal.

La notificación personal se efectuará en la forma prevista en los artículos 67 y 68 de la Ley 1437 de 2011, y si ella no fuere posible se recurrirá a la notificación por aviso establecida en el artículo 69 de la misma ley;

b) Las decisiones que se adopten en audiencia, se entenderán notificadas a los sujetos procesales inmediatamente se haga el pronunciamiento, se encuentren o no presentes en la audiencia.

En caso de no comparecer a la audiencia a pesar de haberse hecho la citación oportunamente, se entenderá surtida la notificación salvo que la ausencia se justifique por fuerza mayor o caso fortuito dentro de los dos (2) días siguientes a la fecha en que se profirió la decisión, caso en el cual la notificación se realizará al día siguiente de haberse aceptado la justificación. En el mismo término se deberá hacer uso de los recursos, si a ello hubiere lugar;

c) Cuando no se hubiere realizado la notificación o esta fuera irregular, la exigencia legal se entiende cumplida, para todos los efectos, cuando el sujeto procesal dándose por suficientemente enterado, se manifiesta respecto de la decisión, o cuando él mismo utiliza en tiempo los recursos procedentes.

Dentro del expediente se incluirá un registro con la constancia de las notificaciones realizadas tanto en audiencia como fuera de ella, para lo cual se podrá utilizar los medios técnicos idóneos;

d) La vinculación del garante, en calidad de tercero civilmente responsable, se realizará mediante el envío de una comunicación. Cuando sea procedente la desvinculación del garante se llevará a cabo en la misma forma en que se vincula.

**ARTÍCULO 105.** *Remisión a otras fuentes normativas.* En los aspectos no previstos en la presente ley, se aplicarán las disposiciones de la Ley 610 de 2000, en cuanto sean compatibles con la naturaleza del proceso verbal establecido en la presente ley.

**SUBSECCIÓN II**

**MODIFICACIONES A LA REGULACIÓN DEL PROCEDIMIENTO ORDINARIO DE RESPONSABILIDAD FISCAL**

**ARTÍCULO 106.** *Notificaciones.* En los procesos de responsabilidad fiscal que se tramiten en su integridad por lo dispuesto en la Ley 610 de 2000 únicamente deberán notificarse personalmente las siguientes providencias: el auto de apertura del proceso de responsabilidad fiscal, el auto de imputación de responsabilidad fiscal y el fallo de primera o única instancia; para estas providencias se aplicará el sistema de notificación personal y por aviso previsto para las actuaciones administrativas en la Ley 1437 de 2011. Las demás decisiones que se profieran dentro del proceso serán notificadas por estado.

**ARTÍCULO 107.** *Preclusividad de los plazos en el trámite de los procesos de responsabilidad fiscal.* Los plazos previstos legalmente para la práctica de las pruebas en la indagación preliminar y en la etapa de investigación en los procesos de responsabilidad fiscal serán preclusivos y por lo tanto carecerán de valor las pruebas practicadas por fuera de los mismos. La práctica de pruebas en el proceso ordinario de responsabilidad fiscal no podrá exceder de dos años contados a partir del momento en que se notifique la providencia que las decreta. En el proceso verbal dicho término no podrá exceder de un año.

**ARTÍCULO 108.** *Perentoriedad para el decreto de pruebas en la etapa de descargos.* Vencido el término para la presentación de los descargos después de la notificación del auto de imputación de responsabilidad fiscal, el servidor público competente de la Contraloría deberá decretar las pruebas a que haya lugar a más tardar dentro del mes siguiente. Será obligación de la Auditoría General de la República incluir la constatación del cumplimiento de esta norma como parte de sus programas de auditoría y derivar las consecuencias por su desatención.

**ARTÍCULO 109.** *Oportunidad y requisitos de la solicitud de nulidad.* La solicitud de nulidad podrá formularse hasta antes de proferirse la decisión final, la cual se resolverá dentro de los cinco (5) días siguientes a la fecha de su presentación.

Contra el auto que decida sobre la solicitud de nulidad procederá el recurso de apelación, que se surtirá ante el superior del funcionario que profirió la decisión.

**SUBSECCIÓN III**

**DISPOSICIONES COMUNES AL PROCEDIMIENTO ORDINARIO Y AL PROCEDIMIENTO VERBAL DE RESPONSABILIDAD FISCAL**

**ARTÍCULO 110.** *Instancias.* El proceso de responsabilidad fiscal será de única instancia cuando la cuantía del presunto daño patrimonial estimado en el auto de apertura e imputación o de imputación de responsabilidad fiscal, según el caso, sea igual o inferior a la menor cuantía para contratación de la respectiva entidad afectada con los hechos y será de doble instancia cuando supere la suma señalada.

(Modificado por el Art. 143 del Decreto 403 de 2020

**ARTÍCULO 111.** *Procedencia de la cesación de la acción fiscal.* En el trámite de los procesos de responsabilidad fiscal únicamente procederá la terminación anticipada de la acción cuando se acredite el pago del valor del detrimento patrimonial que está siendo investigado o por el cual se ha formulado imputación o cuando se haya hecho el reintegro de los bienes objeto de la pérdida investigada o imputada. Lo anterior sin perjuicio de la aplicación del principio de oportunidad.

**ARTÍCULO 112.** *Citaciones y notificaciones.* Cuando se deba notificar personalmente una decisión, o convocarse a la celebración de una audiencia se citará oportunamente a las partes, al garante, testigos, peritos y demás personas que deban intervenir en la actuación.

El presunto responsable y su apoderado si lo tuviere, o el defensor de oficio, y el garante en calidad de tercero civilmente responsable, tendrán la obligación procesal de señalar la dirección, el correo electrónico o cualquier otro medio idóneo de comunicación, en el cual se recibirán las citaciones. Igualmente tendrán el deber de informar cualquier cambio que se presente en el curso del proceso. Cuando se haga un cambio de dirección, el funcionario responsable deberá hacer en forma inmediata el respectivo registro, so pena de sanción de conformidad con lo establecido en el Código Único Disciplinario. La omisión a este deber implicará que sean legalmente válidas las comunicaciones que se envíen a la última dirección conocida.

La citación debe indicar la clase de diligencia para la cual se le requiere, el lugar, la fecha y hora en donde se llevará a cabo y el número de radicación de la actuación a la cual corresponde.

**ARTÍCULO 113.** *Causales de impedimento y recusación.* Las únicas causales de impedimento y recusación para los servidores públicos intervinientes en el trámite de las indagaciones preliminares y los procesos de responsabilidad fiscal serán las previstas para los jueces y magistrados en la Ley 1437 de 2011.

**PARÁGRAFO TRANSITORIO.** Mientras entra en vigencia la Ley 1437 de 2011, las causales de impedimento y recusación serán las previstas para los jueces y magistrados en el Código Contencioso Administrativo.

**ARTÍCULO 114.** Facultades de investigación de los organismos de control fiscal. Los organismos de control fiscal en el desarrollo de sus funciones contarán con las siguientes facultades:

a) Adelantar las investigaciones que estimen convenientes para establecer la ocurrencia de hechos generadores de daño patrimonial al Estado originados en el menoscabo, disminución, perjuicio, detrimento, pérdida, o deterioro de los bienes o recursos públicos, producida por una gestión fiscal antieconómica, ineficaz, ineficiente, e inoportuna y que en términos generales no se aplique al cumplimiento de los cometidos y de los fines esenciales del Estado;

b) Citar o requerir a los servidores públicos, contratistas, interventores y en general a las personas que hayan participado, determinado, coadyuvado, colaborado o hayan conocido los hechos objeto de investigación;

c) Exigir a los contratistas, interventores y en general a las personas que hayan participado, determinado, coadyuvado, colaborado o hayan conocido los hechos objeto de investigación, la presentación de documentos que registren sus operaciones cuando unos u otros estén obligados a llevar libros registrados;

d) Ordenar a los contratistas, interventores y proveedores la exhibición y de los libros, comprobantes y documentos de contabilidad;

e) En general, efectuar todas las diligencias necesarias que conduzcan a la determinación de conductas que generen daño al patrimonio público.

**PARÁGRAFO 1.** Para el ejercicio de sus funciones, las contralorías también están facultadas para ordenar que los comerciantes exhiban los libros, comprobantes y documentos de contabilidad, o atiendan requerimientos de información, con miras a realizar estudios de mercado que sirvan como prueba para la determinación de sobrecostos en la venta de bienes y servicios a las entidades públicas o privadas que administren recursos públicos.

**PARÁGRAFO 2.** La no atención de estos requerimientos genera las sanciones previstas en el artículo 101 de la Ley 42 de 1993. En lo que a los particulares se refiere, la sanción se tasará entre cinco (5) y diez (10) salarios mínimos mensuales legales vigentes.

(Parágrafo 2 Derogado por el Art. 166 del Decreto 403 de 2020)

**ARTÍCULO 115.** *Facultades especiales.* Los Organismos de Vigilancia y Control Fiscal crearán un grupo especial de reacción inmediata con las facultades de policía judicial previstas en la Ley 610 de 2000, el cual actuará dentro de cualquier proceso misional de estos Organismos y con la debida diligencia y cuidado en la conservación y cadena de custodia de las pruebas que recaudan en aplicación de las funciones de policía judicial en armonía con las disposiciones del Código de Procedimiento Penal en cuanto sean compatibles con la naturaleza de las mismas. Estas potestades deben observar las garantías constitucionales previstas en el artículo 29 de la Constitución Política.

**ARTÍCULO 116.** *Utilización de medios tecnológicos.* Las pruebas y diligencias serán recogidas y conservadas en medios técnicos. Así mismo, la evacuación de audiencias, diligencias en general y la práctica de pruebas pueden llevarse a cabo en lugares diferentes a la sede del funcionario competente para adelantar el proceso, a través de medios como la audiencia o comunicación virtual, siempre que otro servidor público controle materialmente su desarrollo en el lugar de su evacuación. De ello se dejará constancia expresa en el acta de la diligencia.

Las decisiones podrán notificarse a través de un número de fax o a la dirección de correo electrónico del investigado o de su defensor, si previamente y por escrito, hubieren aceptado ser notificados de esta manera. La notificación se entenderá surtida en la fecha que aparezca en el reporte del fax o en que el correo electrónico sea enviado. La respectiva constancia será anexada al expediente.

**ARTÍCULO 117.** *Informe Técnico.* Los órganos de vigilancia y control fiscal podrán comisionar a sus funcionarios para que rindan informes técnicos que se relacionen con su profesión o especialización. Así mismo, podrán requerir a entidades públicas o particulares, para que en forma gratuita rindan informes técnicos o especializados que se relacionen con su naturaleza y objeto. Estas pruebas estarán destinadas a demostrar o ilustrar hechos que interesen al proceso. El informe se pondrá a disposición de los sujetos procesales para que ejerzan su derecho de defensa y contradicción, por el término que sea establecido por el funcionario competente, de acuerdo con la complejidad del mismo.

El incumplimiento de ese deber por parte de las entidades públicas o particulares de rendir informes, dará lugar a la imposición de las sanciones indicadas en el artículo 101 de la Ley 42 de 1993. En lo que a los particulares se refiere, la sanción se tasará entre cinco (5) y veinticinco (25) salarios mínimos mensuales legales vigentes.

**ARTÍCULO 118.** *Determinación de la culpabilidad en los procesos de responsabilidad fiscal.* El grado de culpabilidad para establecer la existencia de responsabilidad fiscal será el dolo o la culpa grave.

Se presumirá que el gestor fiscal ha obrado con dolo cuando por los mismos hechos haya sido condenado penalmente o sancionado disciplinariamente por la comisión de un delito o una falta disciplinaria imputados a ese título.

Se presumirá que el gestor fiscal ha obrado con culpa grave en los siguientes eventos:

a) Cuando se hayan elaborado pliegos de condiciones o términos de referencia en forma incompleta, ambigua o confusa, que hubieran conducido a interpretaciones o decisiones técnicas que afectaran la integridad patrimonial de la entidad contratante;

b) Cuando haya habido una omisión injustificada del deber de efectuar comparaciones de precios, ya sea mediante estudios o consultas de las condiciones del mercado o cotejo de los ofrecimientos recibidos y se hayan aceptado sin justificación objetiva ofertas que superen los precios del mercado;

c) Cuando se haya omitido el cumplimiento de las obligaciones propias de los contratos de interventoría o de las funciones de supervisión, tales como el adelantamiento de revisiones periódicas de obras, bienes o servicios, de manera que no se establezca la correcta ejecución del objeto contractual o el cumplimiento de las condiciones de calidad y oportunidad ofrecidas por los contratistas;

d) Cuando se haya incumplido la obligación de asegurar los bienes de la entidad o la de hacer exigibles las pólizas o garantías frente al acaecimiento de los siniestros o el incumplimiento de los contratos;

e) Cuando se haya efectuado el reconocimiento de salarios, prestaciones y demás emolumentos y haberes laborales con violación de las normas que rigen el ejercicio de la función pública o las relaciones laborales.

**(Nota:** *Artículo declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia* C-512 *de 2013.)*

**ARTÍCULO 119.** *Solidaridad.* En los procesos de responsabilidad fiscal, acciones populares y acciones de repetición en los cuales se demuestre la existencia de daño patrimonial para el Estado proveniente de sobrecostos en la contratación u otros hechos irregulares, responderán solidariamente el ordenador del gasto del respectivo organismo o entidad contratante con el contratista, y con las demás personas que concurran al hecho, hasta la recuperación del detrimento patrimonial.

*(**Nota:** Artículo declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia* C-338 *de 2014.)*

**ARTÍCULO 120.** *Pólizas.* Las pólizas de seguros por las cuales se vincule al proceso de responsabilidad fiscal al garante en calidad de tercero civilmente responsable, prescribirán en los plazos previstos en el artículo 9 de la Ley 610 de 2000.

**SECCIÓN SEGUNDA**

**MEDIDAS PARA EL FORTALECIMIENTO DEL EJERCICIO DE LA FUNCIÓN DE CONTROL FISCAL**

**ARTÍCULO 121.** *Alianzas estratégicas.* Las Contralorías Territoriales realizarán alianzas estratégicas con la academia y otras organizaciones de estudios e investigación social para la conformación de equipos especializados de veedores ciudadanos, con el propósito de ejercer con fines preventivos el control fiscal social a la formulación y presupuestación de las políticas públicas y los recursos del erario comprometidos en su ejecución.

**ARTÍCULO 122.** *Control excepcional.* Cuando a través de las Comisiones Constitucionales Permanentes del Congreso se solicite a la Contraloría General de la República, ejercer el control excepcional de las investigaciones que se estén adelantando por el ente de control fiscal del nivel territorial correspondiente, quien así lo solicitare deberá:

1. Presentar un informe previo y detallado en el cual sustente las razones que fundamentan la solicitud.

2. La solicitud debe ser aprobada por la mayoría absoluta de la Comisión Constitucional a la cual pertenece.

(Derogado por el Art. 166 del Decreto 403 de 2020)

**PARÁGRAFO .** Si la solicitud fuere negada esta no podrá volver a presentarse hasta pasado un año de la misma.

**ARTÍCULO 123.** *Articulación con el ejercicio del control político.* Los informes de auditoría definitivos producidos por las contralorías serán remitidos a las Corporaciones de elección popular que ejerzan el control político sobre las entidades vigiladas. En las citaciones que dichas entidades hagan a servidores

públicos para debates sobre temas que hayan sido materia de vigilancia en el proceso auditor deberá invitarse al respectivo contralor para que exponga los resultados de la auditoría.

**ARTÍCULO 124.** *Regulación del proceso auditor.* La regulación de la metodología del proceso auditor por parte de la Contraloría General de la República y de las demás contralorías, tendrá en cuenta la condición instrumental de las auditorías de regularidad respecto de las auditorías de desempeño, con miras a garantizar un ejercicio integral de la función auditora.

**ARTÍCULO 125.** *Efecto del control de legalidad.* Cuando en ejercicio del control de legalidad la Contraloría advierta el quebrantamiento del principio de legalidad, promoverá en forma inmediata las acciones constitucionales y legales pertinentes y solicitará de las autoridades administrativas y judiciales competentes las medidas cautelares necesarias para evitar la consumación de un daño al patrimonio público, quienes le darán atención prioritaria a estas solicitudes.

(Modificado por el Art. 153 del Decreto 403 de 2020)

**ARTÍCULO 126.** *Sistemas de información.* La Contraloría General de la República, las Contralorías territoriales y la Auditoría General de la República, a través del Sistema Nacional de Control Fiscal - Sinacof, levantarán el inventario de los sistemas de información desarrollados o contratados hasta la fecha de la entrada en vigencia de la presente ley por parte de las Contralorías territoriales para el ejercicio de su función fiscalizadora y propondrá una plataforma tecnológica unificada que procure la integración de los sistemas existentes y permita la incorporación de nuevos desarrollos previamente convenidos y concertados por los participantes de dicho sistema.

**ARTÍCULO 127.** *Verificación de los beneficios del control fiscal.* La Auditoría General de la República constatará la medición efectuada por las Contralorías de los beneficios generados por el ejercicio de su función, para lo cual tendrá en cuenta que se trate de acciones evidenciadas debidamente comprobadas, que correspondan al seguimiento de acciones establecidas en planes de mejoramiento o que sean producto de observaciones, hallazgos, pronunciamientos o advertencias efectuados por la Contraloría, que sean cuantificables o cualificables y que exista una relación directa entre la acción de mejoramiento y el beneficio.

**ARTÍCULO 128.** *Fortalecimiento institucional de la Contraloría General de la República.* Con el fin de fortalecer las acciones en contra de la corrupción, créanse dentro de la estructura de la Contraloría General de la República la Unidad de Investigaciones Especiales contra la Corrupción, la Unidad de Cooperación Nacional e Internacional de Prevención, Investigación e Incautación de Bienes, la Unidad de Apoyo Técnico al Congreso y la Unidad de Seguridad y Aseguramiento Tecnológico e Informático, las cuales estarán adscritas al Despacho del Contralor General y serán dirigidas por un Jefe de Unidad del mismo nivel de los jefes de las oficinas asesoras.

En la Unidad de Investigaciones Especiales contra la Corrupción, créanse once (11) cargos de Contralor delegado intersectorial, quienes desarrollarán sus funciones con la finalidad de adelantar auditorías especiales o investigaciones relacionadas con hechos de impacto nacional que exijan la intervención inmediata de la entidad por el riesgo inminente de pérdida o afectación indebida del patrimonio público o para establecer la ocurrencia de hechos constitutivos de responsabilidad fiscal y recaudar y asegurar las pruebas para el adelantamiento de los procesos correspondientes.

La Unidad de Cooperación Nacional e Internacional de Prevención, Investigación e Incautación de Bienes estará conformada por servidores públicos de la planta de personal de la entidad, asignados en misión a la misma, y tendrá como función principal la promoción e implementación de tratados, acuerdos o convenios con entidades internacionales o nacionales para obtener el intercambio de información, pruebas y conocimientos por parte de personal experto o especializado que permita detectar bienes, cuentas, inversiones y otros activos de personas naturales o jurídicas investigadas o responsabilizadas por la causación de daños al patrimonio público para solicitar el decreto de medidas cautelares en el trámite de los procesos de responsabilidad fiscal y de cobro coactivo o en las acciones de repetición.

La Unidad de Apoyo Técnico al Congreso prestará asistencia técnica a las plenarias, las comisiones constitucionales y legales, las bancadas parlamentarias y los senadores y representantes a la Cámara para el ejercicio de sus funciones legislativa y de control político, mediante el suministro de información que no tenga carácter reservado, el acompañamiento en el análisis, evaluación y la elaboración de proyectos e informes especialmente en relación con su impacto y efectos fiscales y presupuestales, así como la canalización de las denuncias o quejas de origen parlamentario.

La Unidad de Seguridad y Aseguramiento Tecnológico e Informático prestará apoyo profesional y técnico para la formulación y ejecución de las políticas y programas de seguridad de los servidores públicos, de los bienes y de la información de la entidad; llevará el inventario y garantizará el uso adecuado y mantenimiento de los equipos de seguridad adquiridos o administrados por la Contraloría; promoverá la celebración de convenios con entidades u organismos nacionales e internacionales para garantizar la protección de las personas, la custodia de los bienes y la confidencialidad e integridad de los datos manejados por la institución.

Para los efectos anteriores, créanse dentro de la planta global de la Contraloría General de la República dos cargos de director grado 03, cinco (5) cargos de profesional universitario grado 02 y tres (3) cargos asistenciales grado 04, de libre nombramiento y remoción.

**(Nota:** *El texto subrayado fue declarado INEXEQUIBLE por la Corte Constitucional mediante Sentencia* C-824 *de 2013.)*

Para la vigilancia de los recursos públicos de la Nación administrados en forma desconcentrada en el nivel territorial o transferidos a las entidades territoriales y sobre los cuales la Contraloría General de la República ejerza control prevalente o concurrente, organícese en cada departamento gerencias departamentales colegiadas, conformadas por un gerente departamental y no menos de dos contralores provinciales. Con la misma estructura, organícese para el Distrito Capital una gerencia distrital colegiada.

El número de contralores provinciales a nivel nacional será de 75 y su distribución entre las gerencias departamentales y la distrital la efectuará el Contralor General de la República en atención al número de municipios, el monto de los recursos auditados y nivel de riesgo en las entidades vigiladas.

Las gerencias departamentales y Distrital colegiadas, serán competentes para:

a) Elaborar el componente territorial del plan general de auditoría de acuerdo con los lineamientos fijados por el Contralor General de la República y en coordinación con las Contralorías delegadas;

b) Configurar y trasladar los hallazgos fiscales;

c) Resolver las controversias derivadas del ejercicio del proceso auditor;

d) Determinar la procedencia de la iniciación de los procesos de responsabilidad fiscal y del decreto de medidas cautelares;

e) Las demás que establezca el Contralor General de la República por resolución orgánica.

**PARÁGRAFO 1.** Para los efectos previstos en este artículo, los servidores públicos de la Contraloría General de la República que tengan la calidad o ejerzan la función de contralores delegados, contralores provinciales, directores, supervisores, coordinadores, asesores, profesionales o tecnólogos podrán hacer parte de los grupos o equipos de auditoría.

**PARÁGRAFO 2.** Los gastos que demande la aplicación de lo dispuesto en el presente artículo serán atendidos con los recursos del presupuesto de la respectiva vigencia y para el año 2011 no implican una erogación adicional. La Contraloría General de la República efectuará los traslados necesarios.

**SECCIÓN TERCERA**

**MEDIDAS ESPECIALES PARA EL FORTALECIMIENTO DEL EJERCICIO DE LA FUNCIÓN DE CONTROL FISCAL TERRITORIAL**

**ARTÍCULO 129.** *Planeación estratégica en las contralorías territoriales.* Cada Contraloría departamental, distrital o municipal elaborará su plan estratégico institucional para el período del respectivo Contralor, el cual deberá ser adoptado a más tardar dentro de los tres meses siguientes a su posesión.

La planeación estratégica de estas entidades se armonizará con las actividades que demanda la implantación del modelo estándar de control interno y el sistema de gestión de calidad en la gestión pública y tendrá en cuenta los siguientes criterios orientadores para la definición de los proyectos referentes a su actividad misional:

a) Reconocimiento de la ciudadanía como principal destinataria de la gestión fiscal y como punto de partida y de llegada del ejercicio del control fiscal;

b) Componente misional del plan estratégico en función de la formulación y ejecución del Plan de Desarrollo de la respectiva entidad territorial;

c) Medición permanente de los resultados e impactos producidos por el ejercicio de la función de control fiscal;

d) Énfasis en el alcance preventivo de la función fiscalizadora y su concreción en el fortalecimiento de los sistemas de control interno y en la formulación y ejecución de planes de mejoramiento por parte de los sujetos vigilados;

e) Desarrollo y aplicación de metodologías que permitan el ejercicio inmediato del control posterior y el uso responsable de la función de advertencia;

f) Complementación del ejercicio de la función fiscalizadora con las acciones de control social de los grupos de interés ciudadanos y con el apoyo directo a las actividades de control macro y micro mediante la realización de alianzas estratégicas.

**ARTÍCULO 130.** *Metodología para el proceso auditor en el nivel territorial.* La Contraloría General de la República, con la participación de representantes de las Contralorías territoriales a través del Sistema Nacional de Control Fiscal - Sinacof, facilitará a las Contralorías Departamentales, distritales y municipales una versión adaptada a las necesidades y requerimientos propios del ejercicio de la función de control fiscal en el nivel territorial de la metodología para el proceso auditor, se encargará de su actualización y apoyará a dichas entidades en el proceso de capacitación en el conocimiento y manejo de esta herramienta. La Auditoría General de la República verificará el cumplimiento de este mandato legal.

**CAPÍTULO IX**

**OFICINAS DE REPRESENTACIÓN**

**ARTÍCULO 131.** *Oficinas de representación.* Lo dispuesto en la presente ley también se aplicará a las oficinas de representación o a cualquier persona que gestione intereses de personas jurídicas que tengan su domicilio fuera del territorio nacional.

**ARTÍCULO 132.** *Caducidad y prescripción de la acción disciplinaria.* El artículo 30 de la Ley 734 de 2002, quedará así:

"La acción disciplinaria caducará si transcurridos cinco (5) años desde la ocurrencia de la falta, no se ha proferido auto de apertura de investigación disciplinaria. Este término empezará a contarse para las faltas instantáneas desde el día de su consumación, para las de carácter permanente o continuado desde la realización del último hecho o acto y para las omisivas cuando haya cesado el deber de actuar.

La acción disciplinaria prescribirá en cinco (5) años contados a partir del auto de apertura de la acción disciplinaria. Cuando fueren varias las conductas juzgadas en un mismo proceso la prescripción se cumple independientemente para cada una de ellas.

**PARÁGRAFO .** Los términos prescriptivos aquí previstos quedan sujetos a lo establecido a los tratados internacionales que Colombia ratifique".

(Derogado por el art. 265 de la Ley 1952 de 2019.)

**ARTÍCULO 133.** *El artículo* _106_ *de la Ley* _1438_ *de 2011, quedará así:*

"**ARTÍCULO 106.** *Prohibición de prendas o dádivas a trabajadores en el sector de la salud.* Queda expresamente prohibida la promoción u otorgamiento de cualquier tipo de prendas, dádivas a trabajadores de las entidades del Sistema General de Seguridad Social en Salud y trabajadores independientes, sean estas en dinero o en especie, por parte de las Entidades Promotoras de Salud, Instituciones Prestadoras de Salud, empresas farmacéuticas productoras, distribuidoras, comercializadoras u otros, de medicamentos, insumos, dispositivos y equipos, que no esté vinculado al cumplimiento de una relación laboral contractual o laboral formalmente establecida entre la institución y el trabajador de las entidades del Sistema General de Seguridad Social en Salud.

**PARÁGRAFO 1.** Las empresas o instituciones que incumplan con lo establecido en el presente artículo serán sancionadas con multas que van de 100 a 500 SMMLV, multa que se duplicará en caso de reincidencia. Estas sanciones serán tenidas en cuenta al momento de evaluar procesos contractuales con el Estado y estarán a cargo de las entidades de Inspección, Vigilancia y Control con respecto a los sujetos vigilados por cada una de ellas.

**PARÁGRAFO 2.** Los trabajadores de las entidades del Sistema General de Seguridad Social en Salud que reciban este tipo de prendas y/o dádivas, serán investigados por las autoridades competentes. Lo anterior, sin perjuicio de las normas disciplinarias vigentes".

*(**Nota:** Artículo declarado EXEQUIBLE por la Corte Constitucional mediante Sentencia* _C-084_ *de 2013.)*

**ARTÍCULO 134.** *El artículo* _411_ *del Código Penal quedará con parágrafo que dirá:*

**PARÁGRAFO .** Los miembros de corporaciones públicas no incurrirán en este delito cuando intervengan ante servidor público o entidad estatal en favor de la comunidad o región.

**CAPÍTULO X**

**VIGENCIA**

**ARTÍCULO 135.** *Vigencia.* La presente ley rige a partir de su promulgación y deroga las normas que le sean contrarias.

**EL PRESIDENTE DEL HONORABLE SENADO DE LA REPÚBLICA,**

**ARMANDO BENEDETTI VILLANEDA.**

EL SECRETARIO GENERAL DEL HONORABLE SENADO DE LA REPÚBLICA,

EMILIO RAMÓN OTERO DAJUD.

EL PRESIDENTE DE LA HONORABLE CÁMARA DE REPRESENTANTES,

CARLOS ALBERTO ZULUAGA DÍAZ.

EL SECRETARIO GENERAL DE LA HONORABLE CÁMARA DE REPRESENTANTES,

JESÚS ALFONSO RODRÍGUEZ CAMARGO.

REPÚBLICA DE COLOMBIA – GOBIERNO NACIONAL

PUBLÍQUESE Y CÚMPLASE.

Dada en Bogotá, D. C., a los 12 días del mes de julio de 2011.

JUAN MANUEL SANTOS CALDERÓN

EL MINISTRO DEL INTERIOR Y DE JUSTICIA,

GERMÁN VARGAS LLERAS.

EL MINISTRO DE HACIENDA Y CRÉDITO PÚBLICO,

JUAN CARLOS ECHEVERRY GARZÓN.

EL MINISTRO DE LA PROTECCIÓN SOCIAL,

MAURICIO SANTA MARÍA SALAMANCA.

EL DIRECTOR DEL DEPARTAMENTO NACIONAL DE PLANEACIÓN,

HERNANDO JOSÉ GÓMEZ RESTREPO.

LA DIRECTORA DEL DEPARTAMENTO ADMINISTRATIVO DE LA FUNCIÓN PÚBLICA,

ELIZABETH RODRÍGUEZ TAYLOR

NOTA: Publicada en el Diario Oficial 48128 de julio 12 de 2011.

**Volver Atrás**



- Vicepresidencia
- MinJusticia
- MinDefensa
- MinTrabajo
- MinInterior
- MinCiencias

- MinRelaciones
- MinHacienda
- MinSalud
- MinEnergía
- MinComercio
- MinDeporte

- MinTIC
- MinEducacion
- MinCultura
- MinAgricultura
- MinAmbiente

- MinTransporte
- MinVivienda
- Urna de Cristal




FUNCIÓN PUBLICA

Carrera 6 # 12-62,
Bogotá D.C.

**Código Postal:** 111711
**PBX:** (+57) 601 7395656
**FAX:** (+57) 601 7395657

www.funcionpublica.gov.co
Correo de Contacto: eva@funcionpublica.gov.co

CONTACTO

Horario de atención presencial grupo de Servicio al ciudadano:
Lunes a Viernes, 7:30 a.m a 6:00 p.m

Recepción de correspondencia:
Lunes a viernes, 8:00 am a 4:00 pm Jornada Continua

Línea gratuita nacional: 018000917770

SERVICIOS AL CIUDADANO

Notificaciones judiciales

Notificación de actos administrativos

Notificaciones a terceros

Denuncias por actos de corrupción

Participación ciudadana

Preguntas frecuentes

Formule su petición PQRS

Mapa del sitio

Ingreso correo institucional

Estadísticas del sitio

Acceder

Política de Privacidad   |   Términos y condiciones de uso



# English Translation
# of Exhibit 14



## Función Pública

EVA › Regulatory Manager › Consulta › Law 1474/11

# Law 1474 of 2011

Download PDF

## Dates ☐

## Topics (13) ☐

## Concepts (22) ☐

## Vigors(12)

Partially regulated by Decree 1122 of 2024 Presidency of the Republic of Mexico

Regulated by Decree 1122 of 2024 Presidency of the Republic of Colombia

Amended by Law 2195 of 2022

Added by Law 2195 of 2022

Added by Decree 537 of 2020

Amended by Decree 403 of 2020

Partially regulated by Decree 1083 of 2015 Civil Service Sector.

Partially added Decree 2711 of 2013

Regulated by Decree 734 of 2012.

Regulated by Decree 4632 of 2011.

Amends Decree Law 267 of 2000

Amends Law 489 of 1998

The data published are for information purposes only. The Administrative Department of the Civil Service is not responsible for the validity of this standard. We are in a permanent process of updating the contents.

**LAW 1474 OF 2011**

**(July 12)**

*(See Decree 1081 of 2015 and Decree 124 of 2016).*

*"Whereby regulations are issued strengthen the mechanisms for the prevention, investigation and punishment of acts of corruption and the effectiveness of the control of public management."*

THE CONGRESS OF COLOMBIA

DECREES:

CHAPTER I

ADMINISTRATIVE MEASURES FOR THE FIGHT AGAINST CORRUPTION

ARTICLE 1. *Inability to contract of those who incur in acts of corruption. Paragraph j) of numeral 1 of Article 8 Law 80 of 1993* shall read as follows:

Natural persons who have been declared judicially liable for the commission of crimes against the Public Administration or any of the crimes or misdemeanors contemplated by Law 1474 of 2011 and its amending regulations or any of the criminal conduct contemplated by the anti-corruption conventions or treaties signed and ratified by Colombia, as well as legal persons who have been declared administratively liable for the conduct of transnational bribery.

This disqualification shall be preventive even in cases in which the decision on the challenge to the conviction is pending.

Likewise, the disqualification shall be extended to the companies of which such persons  part as administrators, legal representatives, members of the board of directors or controlling partners, to their parent companies and their subordinates and to the branches of foreign companies,  the exception of open corporations.

The disqualification provided for in this paragraph shall be extended for a term of twenty (20) years.

(Amended by art. 31 of Law 1778 of 2016).

*(Note: Underlined expression declared INEXEQUIBLE by the Constitutional Court by Ruling C-630 of 2012).*

**ARTICLE 2.** *Inability to contract of those who finance political campaigns.* Section 1 of Article 8 of Law 80 of 1993 will have a new paragraph k), which will read as follows:

Natural or legal persons who have financed political campaigns for the Presidency of the Republic, governorships, mayorships or the Congress of the Republic, with contributions in excess of two percent (2.0%) of the maximum amounts to be invested by candidates in electoral campaigns in each electoral district, who may not enter into contracts with public entities, including decentralized entities, of the respective administrative level for which the candidate was elected.

The disqualification shall extend for  entire period for which the candidate was elected. This cause shall also apply to persons within the second degree of consanguinity, second degree of affinity, or first civil degree of the person who has financed the political campaign.

This disqualification shall also include legal entities in which the legal representative, the members of the board of directors or any of its controlling partners have directly or through an intermediary financed political campaigns for the Presidency of the Republic, governorships, mayoralties or the Congress of the Republic.

The inability contemplated in this rule shall not apply with respect to contracts for the rendering professional services.

(Amended by art. 33 Law 1778 of 2016).

**ARTICLE 3.** *Prohibition for former public servants to manage private interests.* Section 22 of Article 35 of Law 734 of 2002 shall read as follows:

To provide, personally or through an intermediary, assistance, representation or advisory services in matters related to the functions of the position, or to allow this to occur, for  period of up to two (2) years after leaving , with respect to the agency, entity or corporation in which he/she provided his/her services, and for the provision of assistance, representation or advisory services to those who were subject to the inspection, supervision, control or regulation of the entity, corporation or agencies to which he/she was linked.

This prohibition shall be indefinite in time with respect to the specific matters of which the employee was aware in the exercise of his or her functions.

Specific matters of a particular and concrete nature that were the subject of a decision during the exercise of his functions and of which there are clearly determined subjects.

(Repealed by art. 265 of Law 1952 of 2019).

*(See Judgment C-257 of 2013).*

**ARTICLE 4. *Inability of former public employees to contract with the State.*** Add a paragraph f) to numeral 2 of article 8 of Law 80 of 1993, which shall read as follows:

Directly or indirectly the persons who have held positions at the executive level in State entities and the companies in which they are part or are linked to any title, during the two (2) years following the retirement from public office, when the object they develop is related to the sector to which they rendered their services.

This incompatibility shall also apply to persons within the first degree of consanguinity, first degree of affinity, or first civil degree of the former public employee.

*(See Judgment C-257 of 2013).*

CHAPTER I

ADMINISTRATIVE MEASURES FOR THE FIGHT AGAINST CORRUPTION

**ARTICLE 5.** Whoever has entered into a state contract for public works, concession, supply of medicines and food or their spouse, permanent partner, relative up to the second degree of consanguinity, second degree of affinity and/or first civil degree or their partners in companies other than open corporations, with the entities referred to in Article 2 Law 80 of 1993, during the term of execution and until the liquidation of the same, may not enter into auditing contracts with the same entity.

***(Note:*** *Declared EXEQUIBLE by the Constitutional Court through Ruling C-618 of 2012).*

**ARTICLE 6. *Repetition action.*** Paragraph 2 of article 8 of Law 678 of 2001 shall read as follows:

2. The Ministry of Justice and Law, through the Directorate of Judicial Defense of the Nation or whoever acts in its stead.

**ARTICLE 7. *Responsibility of the Statutory Auditors.*** Add a numeral 5) to article 26 of Law 43 of 1990, which shall read as follows:

5. The statutory auditors shall have the obligation to report to the criminal, disciplinary and administrative authorities, acts of corruption as well as the alleged commission of a crime against the public administration, a crime against the economic and social order, or a crime against the economic patrimony that they have detected in the exercise of their office. They must also bring these facts to the attention of the corporate bodies and the company's management. The corresponding complaints must be presented within six (6) months from the time statutory auditor has knowledge of the facts. For the purposes of this article, the professional secrecy regime applicable to statutory auditors shall not be applicable.

(Added by art. 32 of Law 1778 of 2016).

*(See Judgment C-630 of 2012).*

**ARTICLE 8.** *Designation of the person responsible for internal control.* Amend Article 11 of Law 87 of 1993, which shall read as follows:

For the verification and permanent evaluation of the Control System, the President of the Republic shall appoint in the state entities of the executive branch of the national order the head of the Unit  internal control office or whoever takes its place, who shall freely appointed and removed.

In the  of entities of the executive branch of the territorial order, the appointment shall be made by highest administrative authority of the respective territorial entity. This official shall be appointed for a fixed term of four years, in the middle of the respective term of the mayor or governor.

**PARAGRAPH 1.** To hold the position of advisor, coordinator or internal auditor, professional training and experience of at least three (3) years in internal control matters must be accredited.

(Paragraph Repealed by Art. 166 of Decree 403 of 2020)

**PARAGRAPH 2.** The internal auditor, or whoever takes his place, shall have the multidisciplinary personnel assigned to him by the head of the agency or entity, in accordance with the nature of functions. The selection of such personnel shall not necessarily imply an increase in the existing staff.

**ARTICLE 9.** *Reports of the person in charge of internal control.* Amend article 14 of Law 87 of 1993, which shall read as follows:

The head of the Internal Control Office Unit or whoever takes its place in an entity of the executive branch of the national order shall be a public servant of free appointment and removal, appointed by the President of the Republic.

This public servant, without prejudice to other legal obligations, shall report to the control agencies any possible acts of corruption and irregularities encountered in the performance of his duties.

(Modified by art. 231 of Decree 019 of 2012).

The head of the Internal Control Office Unit shall publish every four (4) months on the entity's website, a detailed report on the status of internal control of the entity, under penalty of incurring in serious disciplinary offenses.

The reports of internal control officers shall have probative value in disciplinary, administrative, judicial and tax proceedings when requested by the relevant authorities.

*(See Section b) article 2.2.21.4.9, Decree 1083 of 2015).*

**TRANSITIONAL PARAGRAPH:** In order to adjust the period referred to in this article, those responsible for Internal Control who were in office on December 31, 2011, shall remain in office until the Governor or Mayor appoints a new officer, in accordance with the date provided in this article.

**ARTICLE 10.** *Advertising budget.* The resources allocated by public entities and companies and corporations with majority participation of the State of the national and territorial order, in the dissemination of the programs and policies they carry out, through official advertising or any other means or similar mechanism that involves the use of State money, must seek the fulfillment of the purpose of the respective entity and guarantee the right to information of the citizens. In this official advertising, the greatest limitation shall be sought, among others, in terms of content, extension, size and means of communication, in such a way as to achieve the greatest austerity in spending and the real reduction of costs.

Contracts entered into for the performance of the activities described in the preceding paragraph must comply with pre-established criteria of effectiveness, transparency and objectivity.

The use of official advertising, or any other mechanism for the dissemination of official programs and policies, for the promotion of public servants, political parties or candidates, or that make use of their voice, image, name, symbol, logo or any other identifiable element that could lead to confusion, is prohibited.

In no case may the entities subject to this regulation sponsor, contract or directly carry out official advertising that is not related to the functions it is legally required to perform, or contract or sponsor the printing of luxury editions.

(Modified by art. 232, Decree 019 of 2012.) (Regulated by

Decree 4326 of 2011).

*(See judgment 2015-00001-01(PI) of the Council of State).*

**PARAGRAPH 1.** The entities of the national and territorial order that have authorized in their budgets items for advertising or dissemination of institutional campaigns, must reduce them thirty percent (30%) in the current year, taking as a basis for the reduction the initial amount of the budget or budgetary appropriation for advertising or campaign. Once the above reduction has taken place, in the following years the corresponding item may only be increased based on the Consumer Price Index.

(Repealed by art. 50 of Law 1551 of 2012).

**PARAGRAPH 2.** The provisions of this article shall not apply to Mixed Economy Corporations nor to industrial and commercial companies of the State that compete with the public or private sector or when there are reasons of public interest in health. But in any case, their execution shall be subject to the postulates of planning, cost-benefit ratio, prior budget and reasonableness of the expenditure.

**PARAGRAPH 3.** The national and territorial entities referred to in this provision are obliged to periodically publish on their web page all the information related to the budget, planning and expenditures in the activities described in the first paragraph of this article.

ARTICLE 11. *Control and surveillance in the social security health sector.*

1. Obligation and control. The institutions subject to the control and surveillance of the National Superintendence of Health shall be obliged to adopt appropriate and sufficient control measures aimed at preventing fraud in the social security health system.

2. Control mechanisms. For the purposes of the preceding paragraph, such institutions, as applicable to them, shall adopt mechanisms and rules of conduct to be observed by their legal representatives, directors, managers and officers, for the following purposes:

a) Adequately identify its members, their economic activity, employment relationship and salary;

b) Establish the frequency and magnitude with which its users use the social security health system;

c) Immediately and sufficiently report to the National Commission on Drug and Medical Device Prices (CNPMD) any overcharge in the sale or offer of drugs and supplies;

d) Immediately and sufficiently report to the National Institute for Drug and Food Surveillance, Invima, the counterfeiting of drugs and supplies and the supply of expired drugs, without prejudice to the corresponding criminal complaints;

e) Immediately and sufficiently report to the Administrative Unit of Pension Management and Parafiscal Contributions of the Social Protection (UGPP) and to the National Superintendence of Health any relevant information when fraudulent affiliation or fraudulent affiliation events may occur.

fraud in social security contributions for matters within its competence;

f)  Others indicated by the National Government.

3.  Adoption of procedures. For purposes of implementing the control mechanisms referred to in the preceding paragraph, the supervised entities must design and implement specific procedures, and designate officers responsible for verifying the adequate compliance with such procedures.

4.  As of the issuance of the present law, no entity providing health services in any of its modalities, including cooperatives, may make any type of donations to political campaigns or activities to the provision of the service.

(**Note:** *This paragraph was declared EXEQUIBLE by the Constitutional Court by means of Decision* C-084 *of 2013.*)

**PARAGRAPH .** The Government shall regulate the matter within a term not exceeding three months.

**ARTICLE 12.** Preventive system of risky financial and health care practices of the General Social Security Health . The Preventive System of Risky Financial and Health Care Practices of the General System of Social Security in Health shall be created to allow the timely identification, registration and follow-up of these conducts. The National Superintendence of Health shall define for its supervised subjects, the set of preventive measures for their control, as well as the early warning indicators and shall exercise its inspection, surveillance and control functions on the matter. Said system shall include indicators that allow the identification, prevention and reporting of suspicious events of corruption and fraud in the General Social Security Health System. Failure to report information to such system shall be sanctioned in accordance with Article 131 of Law 1438 of 2011.

**CHAPTER II**

**CRIMINAL MEASURES IN THE FIGHT AGAINST PUBLIC AND PRIVATE CORRUPTION**

**ARTICLE 13.** *Exclusion of benefits in crimes against Public Administration related to corruption.* Article 68 A of the Criminal Code shall read as follows:

No penal subrogation or substitute mechanisms for the custodial sentence conditional suspension of the execution of the sentence or conditional release will be granted; nor will home detention be granted as a substitute for imprisonment; nor will there be any other legal, judicial or administrative benefit or subrogation, except for the benefits for collaboration regulated by law, provided that it is effective, when the person has been convicted of a fraudulent or premeditated crime within the previous five (5) years.

Those who have been convicted of crimes against the Public Administration, fraud and breach of trust involving State property, misuse privileged information, money laundering and transnational bribery will not be entitled to benefits or subrogation.

The provisions of this article shall not apply with respect to the substitution of preventive detention and the substitution of the execution of the sentence in the events contemplated in paragraphs 2, 3, 4 and 5 of article 314 Law 906 of 2004, nor in those events in which the principle of opportunity, pre-agreements and negotiations and acquiescence charges are applied.

**ARTICLE 14.** *Extension of criminal statute of limitations.* The sixth paragraph of article 83 of the Criminal Code shall read as follows:

6. The statute of limitations shall be increased by half for public servants who, in the exercise of the functions of their office or on occasion thereof, engage punishable conduct or participate in it. The foregoing shall also apply in relation to individuals who exercise public functions on a permanent or transitory basis and those who act as withholding or collection agents.

**ARTICLE 15.** *Fraud involving public resources and Integral Social Security System.* Article 247 of the Criminal Code shall have paragraphs 5 and 6 as follows:

5. Conduct related to assets belonging to companies or institutions in which the State has the totality or majority share, or received in any capacity from the State.

6. The conduct is related to the General Integral Social Security System.

**ARTICLE 16.** *Private corruption.* Law 599 of 2000 shall have an article 250A, which shall read as follows:

directly or through an intermediary promises, offers or grants to directors, administrators, employees or advisors of a company, association or foundation a gift or any unjustified benefit favor him a third party, to the detriment of the company, association or foundation, shall incur imprisonment from four (4) to eight (8) years and a fine of ten (10) to one thousand (1,000) legal monthly minimum wages in force.

The same penalties shall apply to the director, administrator, employee or advisor of a company, association or foundation who, by himself or through an intermediary, receives, requests or accepts a gift or any unjustified benefit, to the detriment of the company, association or foundation.

When the conduct carried out produces economic damage to the detriment of the corporation, association or foundation, the penalty shall be from six (6) to ten (10) years.

**ARTICLE 17.** *Unfair administration.* Law 599 of 2000 will have an article 250B, which will read as follows:

The de facto or de jure administrator, or partner of any corporation incorporated or in formation, director, employee or advisor, who for his own benefit or that of a third party, with abuse of the functions of his position, fraudulently disposes of the assets of the corporation or incurs obligations on its behalf, directly causing an economically assessable damage to its partners, shall incur a prison term of four (4) to eight (8) years and a fine of ten (10) to one thousand (1,000) legal monthly minimum wages in force.

**ARTICLE 18.** *Improper use of privileged information.* Article 258 of the Criminal Code shall read as follows:

Whoever, as an employee, advisor, director or member of a board or administrative body any private entity, with the purpose of obtaining benefits for himself or for a third party, makes improper use of information that he has learned by reason of or on occasion of his position or function and that not publicly known, shall incur a prison sentence of one (1) to three (3) years and a fine of five (5) to fifty (50) legal monthly minimum wages in force.

The same penalty shall be incurred by anyone who uses information known by reason of his profession or trade, to obtain for himself or for a third party, an advantage through the negotiation of a certain share, security or instrument registered in the National Securities Registry, provided that such information not public knowledge.

**ARTICLE 19.** *Speculation of drugs and medical devices.* A subsection shall be added to article 298 of Law 599 of 2000, which shall read as follows:

The penalty shall be five (5) years to ten (10) years of imprisonment and a fine of forty (40) to one thousand (1,000) legal monthly minimum wages in force, in the case of medication or medical devices.

**ARTICLE 20.** *Agiotage with drugs and medical devices.* Add a subsection to article 301 of Law 599 of 2000, which shall read as follows:

The penalty shall be five (5) years to ten (10) years of imprisonment and a fine of forty (40) to one thousand (1,000) legal monthly minimum wages in force, in the case of medication or medical devices.

**ARTICLE 21.** *Tax evasion.* Article 313 of Law 599 of 2000 shall read as follows:

The concessionaire, legal representative, administrator or businessman legally authorized for the exploitation of a rent monopoly, who fails to comply totally or partially with the delivery of the monopolistic income that legally corresponds to the health and education services, shall incur in imprisonment from five (5) years to ten (10) years and a fine of up to 1,020,000 UVT.

The same penalty shall be incurred by the concessionaire, legal representative, administrator or businessman legally authorized for the exploitation of a rent monopoly who does not declare all or part of the income received in the exercise thereof, before the competent authority.

**ARTICLE 22.** *Omission of control in the health sector.* Law 599 of 2000 will have an article 325B, which will read as follows:

The employee or director of an entity supervised by the Superintendence of Health, who in to conceal or cover up an act of corruption, omits compliance with any or all of the control mechanisms established for the prevention and fight against fraud in the health sector, shall incur, for that conduct alone, in the penalty provided for in Article 325 of Law 599 of 2000.

*(Note: Article declared EXEQUIBLE by the Constitutional Court by means of Decision C-084 of 2013.)*

**ARTICLE 23.** *Misappropriation by different official application of social security resources.* Law 599 of 2000 will have an article 399 A, which will read as follows:

The penalty provided for in Article 399 shall be increased by one third to one half, when a different official application is given to resources destined to integral social security.

**ARTICLE 24.** *Culpable misconduct with respect to integral social security resources.* Law 599 of 2000 will have an article 400 A, which will read as follows:

The penalties provided for in Article 400 of Law 599 of 2000 shall be increased by one third to one half, when a different official application is given to resources destined to integral social security.

**ARTICLE 25.** *Circumstances of punitive attenuation.* Article 401 of the Penal Code shall read as follows:

If before the initiation of the investigation, the agent, by himself or by a third , causes the to cease, repairs what was damaged, corrects the different official application, or reintegrates what was appropriated, lost or misplaced, or its updated value with interest, the penalty shall be reduced by half.

If the reimbursement is made before the second instance sentence is issued, the penalty shall be reduced by one third.

When the reimbursement is partial, the judge shall, proportionally, reduce the penalty by up to one fourth.

**ARTICLE 26.** *Fraud of subsidies.* Law 599 of 2000 shall have an article 403A, which shall read as follows:

Whoever obtains a subsidy, aid or subsidy from public resources by deceiving about the conditions required for its concession or by totally or partially concealing the truth, shall incur a prison term of five (5) to nine (9) years, a fine of two hundred (200) to one thousand (1,000) legal minimum wages, a fine of one hundred (200) to one thousand (1,000) times the legal minimum wage, and a fine of one thousand (1,000) times the legal minimum wage, and a fine of one thousand (1,000) times the legal minimum wage.

and disqualification from the exercise of public rights and functions from six (6) to twelve (12) months.
(12) years.

The same penalties shall be imposed on anyone who fails to invest the resources obtained through a subsidy, grant or aid from a public entity for the purpose for which they are intended.

**ARTICLE 27.** *Agreements restricting competition.* Law 599 of 2000 will have an article 410 A, which will read as follows:

Whoever in a public bidding process, public auction, abbreviated selection or contest agrees with another for the purpose of unlawfully altering the contractual procedure, shall be subject to imprisonment of six (6) to twelve (12) years and a fine of two hundred (200) to one thousand (1,000) legal monthly minimum wages in force and disqualification from contracting with state entities for eight (8) years.

**PARAGRAPH .** Whoever in his condition of whistleblower or leniency by means of a firm resolution obtains total exoneration of the fine to be imposed by the Superintendence of Industry and Commerce in an investigation for anticompetitive agreement in a public contracting process shall obtain the following benefits: reduction of the penalty by one , 40% of the fine to be imposed and an inability to contract with state entities for five (5) years.

**ARTICLE 28.** *Influence peddling by a private individual.* Law 599 of 2000 will have an article 411 A, which will read as follows:

Any private individual who unduly influences a public servant in a matter that he/she is or will be aware , with the purpose of obtaining any economic benefit, shall incur a prison term of four (4) to eight (8) years and a fine of one hundred (100) to two hundred (200) legal monthly minimum wages in force.

**ARTICLE 29.** *Illicit enrichment.* Article 412 of the Criminal Code shall read as follows:

The public servant, or whoever has performed public functions, who during his relationship with the administration or within five (5) years after his dismissal, obtains, for himself or for another, an unjustified increase in assets, shall incur, provided that the conduct does not constitute another crime, imprisonment from nine (9) to fifteen (15) years, a fine equivalent to twice the value of the enrichment without exceeding the equivalent of fifty thousand (50.000) legal monthly minimum wages in force, and disqualification from the exercise of public rights and functions from ninety-six (96) to one hundred and eighty (180) years of imprisonment.
(180) months.

**ARTICLE 30.** *Transnational bribery.* Article 433 of the Criminal Code shall read as follows:

gives, promises or offers to foreign public servant, for his benefit or that of a third party, directly or indirectly, sums of money, any object of pecuniary value or any other benefit or advantage in exchange for the performance, omission or delay of any act related to the exercise of his functions and in connection with an international business or transaction, shall be with imprisonment of nine (9) to

fifteen (15) years, disqualification from the exercise of public rights and functions for the same term and a fine of six hundred and fifty (650) to fifty thousand (50,000) legal monthly minimum wages in force.

(Amended by art. 30 of Law 1778 of 2016).

**PARAGRAPH .** For the purposes of the provisions of this article, a foreign public servant is considered to be any person who holds a legislative, administrative or judicial position in a State, its political subdivisions or local authorities, or a foreign jurisdiction, regardless of whether the individual has been appointed or elected. A foreign public servant is also considered to be any person who exercises a public function for a State, its political subdivisions or local authorities, or in a foreign jurisdiction, whether within a public agency, a State enterprise or an entity whose decision-making power is subject to the will of the State, its political subdivisions or local authorities, or a foreign jurisdiction. It shall also be understood that any official or agent of a public international organization hastheaforementioned capacity.

(Amended by art. 30 of Law 1778 of 2016).

**ARTICLE 31.** *Bribery.* Amend Article 444 of Law 599 of 2000, which shall read as follows:

delivers or promises money or any other utility to a witness so that he or she will be untruthful or will totally or partially silence the truth in his or her testimony, shall incur a prison term of six (6) to twelve (12) years and a fine of one hundred (100) to one thousand (1,000) salaries.

**ARTICLE 32.** *Bribery in criminal proceedings.* Amend Article 444A of Law 599 of 2000, which shall read as follows:

, for his own benefit or that of a third party, delivers or promises money or any other benefit to a person who was a witness of a criminal act, so that he refrains from testifying, or so that he lies to the truth, or totally or partially conceals it, shall incur a prison term of six (6) to twelve (12) years and a fine of fifty (50) to two thousand (2,000) legal monthly minimum wages in force.

**ARTICLE 33.** *Circumstances of punitive aggravation.* The penalties provided for in Articles 246, 250 numeral 3, 323, 397, 404, 405, 406, 408, 409, 410, 411, 412, 413, 414 and 433 of Law 599 of 2000 shall be aggravated by the following circumstances.
The penalty shall be increased by one-sixth to one-half when the conduct is committed by a public servant who is an official of one of the State control agencies.

**ARTICLE 34. Administrative sanctioning liability against legal persons and branches of foreign companies.** Independently of the individual criminal liabilities that may be applicable and the measures contemplated in Article 91 of Law 906 of 2004, a regime of administrative sanctioning liability shall be applied to legal persons, branches foreign companies, legal persons that integrate temporary unions or consortiums, industrial and commercial companies of the State and mixed economy companies and entities, domiciled in Colombia, when the following assumptions occur:

(i) There is an enforceable criminal conviction or a firm opportunity principle against any of its administrators or officers for the commission of crimes against the public administration, the environment, the economic and social order, financing of terrorism and organized crime groups, administration of resources related to terrorist activities and crime.

(i) When the legal person or branch of a foreign company, domiciled in Colombia has benefited or sought to benefit, directly or indirectly, from the commission of the punishable conduct committed by its administrators or officers; and (ii) When the legal person or branch of a foreign company, domiciled in Colombia, consented or tolerated the commission of the punishable conduct, by action or omission, considering the application of its respective risk controls. foreign corporation, domiciled in Colombia, consented or tolerated the commission of the punishable conduct, by action or omission, considering the application of their respective risk controls.

**PARAGRAPH 1.** In cases of transnational bribery, the Superintendency of Companies shall apply the special administrative liability regime of sanctions provided for in Law 1778 of 2016 for that administrative offense.

**PARAGRAPH 2.** In the investigation stage of the crimes established in paragraph i), the state entities possibly harmed, may request the involvement as civilly liable third parties of the legal entities and branches of foreign companies domiciled in Colombia that have allegedly participated in the commission of the crimes.

(Amended by art. 35 of Law 1778 of 2016).

(Modified by Art. 2 of Law 2195 of 2022).

Previous
Standard

**ARTICLE 34-1.** The superintendencies or inspection, surveillance and control authorities competent to initiate ex officio the administrative sanctioning process referred to in Article 34 of Law 1474 of 2011, and impose the corresponding sanctions on their supervised parties, when the assumptions described in the preceding Article exist.

**PARAGRAPH 1.** If there is a conflict of administrative competencies, it shall be resolved in accordance with the provisions of Article 39 of Law 1437 of 2011.

**PARAGRAPH 2.** The provisions of Articles 34 and 34-1 of this Law shall not be applicable to the Superintendency of Industry and Commerce.

**PARAGRAPH 3.** When the provision of the service is in charge of a public entity or in the case of a notary, curator or territorial entity that directly provides domiciliary public utilities, the rules of responsibility of public officials shall be applied by the competent entities.

(Added by Art. 3 of Law 2195 of 2022).

**ARTICLE 34-2. ADMINISTRATIVE PENALTIES FOR LEGAL ENTITIES AND BRANCHES OF FOREIGN CORPORATIONS DOMICILED IN COLOMBIA.** The administrative sanctions applicable to legal entities and branches of foreign companies domiciled in Colombia, pursuant to the provisions of Article 34 of Law 1474 of 2011, may be one or more of the following:

1. A fine of up to two hundred thousand (200,000) legal monthly minimum wages in force, which shall be added the greater value between the benefit obtained or intended. The competent authority shall take into account the patrimonial capacity of the legal person.

The inspection, surveillance and control authority may order that up to 10% of the fine imposed be destined to the adoption, strengthening or updating of the transparency and business ethics program of the responsible legal entity.

2. Inability to contract contained in literal j) of Article 8 of Law 80 of 1993 and application the provisions of paragraph 1 of Article 9 of the same law.

3.  Publication in the media of wide circulation up to five (5) with the periodicity indicated by the authority, of the extract of the sanctioning decision. Likewise, the publication of the extract of the sanctioning decision in the web page of the sanctioned legal person, from six (6) months up to a maximum period of one (1) year. The sanctioned legal entity shall bear the costs of such publication".

4.  Prohibition to receive any type of incentive or subsidy from the Government for a period of ten (10) years.

5.  Removal of the administrators or other officers or employees of the legal entity or branch of a foreign company domiciled in Colombia that have been criminally convicted or subject to a principle of opportunity, unless such removal has been ordered by the judge in the operative part of the sentence.

6.  Removal of the administrators or other officers or employees of the legal person who have tolerated or consented to the conduct of the natural person criminally convicted or the conduct subject to a principle of opportunity.

**PARAGRAPH 1.** Once the administrative act imposing the penalties provided for in this Law has been executed, it must be registered in the corresponding public registry of the penalized legal entity or branch of a foreign company.

The competent administrative authority shall forward the administrative act to the Chamber of Commerce of the domicile of the legal entity for its registration in the corresponding registry.

(Added by Art. 4 Law 2195 of 2022).

**ARTICLE 34-3. CRITERIA FOR GRADUATION OF SANCTIONS.** The following criteria shall be taken into account for the purposes of grading the penalties referred to in Article 34 of Law 1474 of 2011:

Aggravating Circumstances:

a) The damage or danger generated to the protected legal interests.

b) The economic benefit obtained or intended by the offender for himself or in favor of a third party.

c) Recidivism in the commission of the infraction.

d) Resistance, refusal or obstruction to the investigative or supervisory action and the procedural conduct of the investigated party.

e) The use of fraudulent means or the use of an intermediary to conceal the infraction or hide its effects.

f) Reluctance or contempt in complying with orders issued by the competent authority. Extenuating Circumstances:

a) The express acknowledgment or acceptance of the infraction before the decree of evidence, except in the case of repeated conduct.

b) The degree of compliance with the precautionary measures.

c) The realization of an adequate due diligence process, in case the legal entity or the branch of a foreign company domiciled in Colombia has been acquired by a third party, after the corruption events.

d) That the juridical person or branch of a foreign company domiciled in Colombia has delivered evidence related to the commission of the crimes of Article 34 of this law its administrators, officers or employees involved.

e) To have brought the infraction to the attention of the inspection, surveillance and control authorities.

f) Adopt measures and actions that, in the judgment of the administrative authority in charge of the investigation, may reasonably be expected to prevent future acts of corruption.

g) Refrain from executing legal transactions or exercising rights obtained through the execution of acts of corruption.

(Added by Art. 5 of Law 2195 of 2022).

**ARTICLE 34-4. Applicable procedure.** When the superintendencies or inspection, surveillance and control authorities do not have a special administrative procedure, the proceedings initiated in accordance with Article 34 of Law 1474 of 2011, shall be processed in accordance with the administrative sanctioning procedure contained in Chapter III of Title III of Law 1437 of 2011.

In matters of precautionary measures, appeals against the decision declaring the liability of the legal person, recognition of benefits for collaboration, actions and proceedings that may be carried out during the investigation and the reluctance to provide information, the special provisions provided for administrative investigations regulated in Articles 13, 17, 19, 20 and 21 of Chapter 111 of Law 1778 of 2016 shall apply.

**PARAGRAPH 1.** In cases of transnational bribery, the Superintendency Companies shall apply the special sanctioning regime provided for such conduct in Law 1778 of 2016.

(Added by Art. 6 of Law 2195 of 2022).

**ARTICLE 34-5. INITIATION OF ADMINISTRATIVE PROCEEDINGS.** By means of the integration of the Unified Information Management System of the litigation activity of the Nation with the information system of the Judicial Branch and the Office of the Attorney General of the Nation, the National Agency for the Legal Defense of the State shall collect the information on final principles of opportunity and enforceable sentences imposed for the crimes mentioned in this Law and shall require the Chamber of Commerce or the Pension and Parafiscal Management Unit (UGPP), as the case may be, to inform the companies and branches of foreign companies in the Judicial Branch and the Office of the Attorney General of the Nation, within fifteen (15) working days, of the companies and branches of foreign companies in the country, as the case may be. and Parafiscal Management Unit - UGPP, as appropriate, so that within a term of fifteen (15) working days, it informs the companies and branches of foreign companies in which the persons convicted or benefited with the principle of opportunity act as administrators, officers or employees, respectively.

The National Agency for the Legal Defense of the State shall forward within a term of thirty (30) working days to the competent administrative authorities the final decisions on the principles of opportunity and enforceable convictions, issued for the crimes indicated in this chapter, against persons who act or have acted as administrators, or officers or employees of the legal entity or branch of a foreign company domiciled in Colombia, in order to initiate the corresponding administrative sanctioning process.

(Added by Art. 7 of Law 2195 of 2022).


**ARTICLE 34-6. EXPIRATION OF ADMINISTRATIVE INVESTIGATIONS.** The sanctioning power
The administrative action provided for in Article 34 of Law 1474 of 2011 may be exercised by the competent authorities within a term of ten (10) years, counted from the execution of the judicial sentence, by which the criminal liability of the administrators, officers or employees of legal persons or branches of foreign companies domiciled in Colombia is declared, or the recognition of a principle of opportunity in favor of the same, officers or employees of legal persons or branches of foreign companies domiciled in Colombia or the recognition of a principle of opportunity in favor the same, which have been executed or final after the entry into force of this Law and regardless of the date of commission of the punishable conduct by natural persons.

It is a very serious offense for the official of the competent authority who does not initiate an administrative action, being obliged to do so, in accordance Articles 34, 34-1 and 34-5 Law 1474 of 2011.

(Added by Art. 8 Law 2195 of 2022).

**ARTICLE 34-7. TRANSPARENCY AND BUSINESS ETHICS PROGRAMS.** Legal entities subject to their inspection, supervision or control shall adopt transparency and business ethics programs that include internal auditing mechanisms and standards.

The respective superintendencies or inspection, surveillance or control authorities shall determine the content of the transparency and business ethics programs taking into account criteria such as the sector, the risks of the same, the amount of assets, income, number of employees and corporate purpose.

In the case of SMEs and MSMEs, support programs should be established to facilitate the preparation and implementation of transparency and business ethics programs, ensuring that they do not generate additional costs or procedures for them.

Failure to comply with the instructions and orders issued by the inspection, oversight and control authorities of the executive branch regarding transparency and business ethics programs shall give rise to the imposition of the corresponding sanctions in accordance with the rules applicable to each inspection, oversight or control entity.

**PARAGRAPH 1.** In those legal entities in which an integral risk management system has been implemented, this may be articulated with the transparency and business ethics program in such a way that it includes the risks intends to mitigate.

**PARAGRAPH 2.** The superintendencies or inspection, surveillance or control authorities of the executive branch, in coordination with the Transparency Secretariat of the Presidency of the Republic, shall determine the minimum guidelines that transparency and business ethics programs must provide for  to standardize actions, policies, methods, procedures, prevention, control, evaluation and continuous improvement mechanisms. Such guidelines shall be evaluated and updated, in accordance with international standards and new practices that strengthen transparency and business ethics programs, at least every four (4) years.

**PARAGRAPH 3.** Those in charge of audits or internal control of the obligated legal entities must include in their annual audit plan the verification of compliance and effectiveness of the transparency and business ethics programs.

**PARAGRAPH 4.** The statutory auditor, when available, must evaluate the transparency and business ethics programs and issue an opinion on them.

(Added by Art. 9 Law 2195 of 2022).

**ARTICLE 35.** *Extension of terms for investigation.* Article 175 of Law 906 of 2004 will have a paragraph, which will read as follows:


**PARAGRAPH .** In proceedings for crimes under the jurisdiction of the specialized circuit criminal judges, for crimes against the Public Administration and for crimes against the economic patrimony that involve State property for which preventive detention is appropriate, the above terms shall be duplicated when there are three (3) or more accused or the crimes under investigation.


**ARTICLE 36.** *Undercover operations against corruption.* Law 906 of 2004 will have an article 242 A, which will read as follows:


The mechanisms contemplated in Articles 241 and 242 may be used when possible existence of facts constituting crimes against the Public Administration in a public entity is verified.

When in corruption investigations, the undercover agent, in the course of the operation, commits crimes against the Public Administration in co-participation with the person under investigation, he/she will be exonerated from liability, unless there is a true criminal agreement unrelated to the undercover operation, while the defendant or accused will be liable for the corresponding crime.

**ARTICLE 37. *Anticipated evidence.*** Article 284 of Law 906 of 2004 will have a fourth paragraph, which will read as follows:

**PARAGRAPH 1.** In investigations concerning crimes under the jurisdiction of the specialized circuit criminal judges, crimes against the Public Administration and crimes against the economic patrimony that involve State assets for which preventive detention is appropriate, it shall be possible to use as evidence in advance the testimony of those who have received threats against their lives or that of their families due to the facts known to them; likewise, the use of such evidence in advance shall be possible when the witness is undergoing extradition proceedings in which a favorable opinion has been rendered by the Criminal Chamber of the Supreme Court of Justice.

The test must be taken before the decision of the President of the Republic to grant extradition becomes final.

**ARTICLE 38. *Increase of terms regarding the grounds for release in investigations related to corruption.*** Article 317 of Law 906 of 2004 will have a second paragraph, which will read as follows:

**PARAGRAPH 1.** In proceedings for crimes under the jurisdiction of the specialized circuit criminal judges, for crimes against the Public Administration and for crimes against the economic patrimony that involve State assets for which preventive detention is appropriate, the terms provided in paragraphs 4 and 5 shall be doubled when there are three (3) or more defendants or the crimes under investigation.

**ARTICLE 39. *Restriction of house arrest.*** The paragraph of article 314 of Law 906 of 2004 shall read as follows:

**PARAGRAPH 1.** The substitution of preventive detention in a prison establishment for home detention shall not be applicable when the indictment refers to the following crimes: Those under the jurisdiction of the specialized circuit criminal judges or whoever takes their place, Trafficking of migrants (C. P. article 188); Carnal access or sexual acts with incapable of resisting (C. P. article 210); Domestic violence (C. P. article 229); Aggravated theft (C. P. article 240); Aggravated theft (C. P. article 241, numerals 7, 8, 11, 12 and 15); Aggravated swindling (C. P. article 247); Use of false documents related to stolen motorized vehicles (C. P. article 291); Manufacture, trafficking and carrying of firearms or ammunition for personal use, when it concur with the crime of conspiracy to commit a crime (C. P. articles 340 and 365), or with the crime of conspiracy to commit a crime (C. P. articles 340 and 365). Articles 340 and 365), or the accused have convictions in force for the same crimes; Manufacture, trafficking and carrying of arms and ammunition for private use of the armed forces (C.P. Article 366); Manufacture, importation, trafficking, possession and use of chemical, biological and nuclear weapons (C.P. Article 367); Embezzlement (C.P. Article 368); Embezzlement (C.P. Article 369) Article 367); Embezzlement in an amount greater than fifty (50) legal minimum monthly salaries (C.P. Article 397); Concussion (C.P. Article 404); Bribery (C.P. Article 405); Bribery improper (C.P. Article 406); Bribery by giving or offering (C.P. Article 407); Illicit Enrichment (C.P. Article 412);

Transnational Bribery (C.P. article 433); Undue Interest in the Conclusion of Contracts (C.P. article 409); Contract without Compliance with Legal Requirements (C.P. article 410); Traffic of Influence (C.P. article 411); Repeated, Continuous Receipt (C.P. Article 447, paragraphs 1 and 3); Receiving to conceal or cover up the crime of grand theft, receiving to conceal or cover up grand theft in concurrence with conspiracy to commit a crime, receiving of motor vehicles or their essential parts, or of merchandise or fuel carried in them (C.P. Article 447, paragraph 2)".

**ARTICLE 40.** *Principle of opportunity for bribery crimes.* Article 324 of Law 906 of 2004 will have a numeral 18, which will read as follows:

"18. When the perpetrator or participant in cases of bribery formulates the respective complaint that gives rise to the criminal investigation, accompanied by evidence useful in the trial, and serves as a witness for the prosecution, provided that he voluntarily and integrally repairs the damage caused.

The effects of the application of the principle of opportunity will be revoked if the person benefiting from fails to comply with the obligations at the trial hearing.

The principle of opportunity shall be applied to the public servant if he first denounces the crime under the aforementioned conditions.

**CHAPTER III**

**DISCIPLINARY MEASURES TO COMBAT CORRUPTION**

**ARTICLE 41.** *Disciplinary functions of the Disciplinary Jurisdictional Chamber of the Superior Council of the Judiciary.* In addition to the provisions of the Political Constitution, the Disciplinary Jurisdictional Chamber of the Superior Council of the Judiciary or of the Sectional Councils, as the case may be, shall examine the conduct and sanction the misconduct of the assistants of the Judiciary.

(Repealed by art. 265 of Law 1952 of 2019).

**ARTICLE 42.** *Preferential power of the Disciplinary Jurisdictional Chamber of the Superior Council of the Judiciary.* The Disciplinary Jurisdictional Chamber of the Superior Council of Judiciary, at the request of a party or ex officio, shall exercise the preferential disciplinary jurisdictional power, in relation to the processes that are within the jurisdiction of its sections, respecting due process and the double instance; it may also order the change of location of the same, at any stage. (INEXEQUIBLE).

For the fulfillment of these functions and those of its competence, it shall create, by means of its internal regulations, the pertinent decision-making chambers".

(Repealed by art. 265 of Law 1952 of 2019).

**(Note:** *Declared INEXEQUIBLE by the Constitutional Court through Decision C-619 of 2012).*

**ARTICLE 43. *Prohibition of retaliation.*** A new numeral is added to article 48 of Law 734 of 2002, which shall read as follows

(Repealed by art. 265 of Law 1952 of 2019)

**"ARTICLE 48. *Most Serious Misconduct.*** The following are very serious misdemeanors:

64. Without prejudice to the adoption of the measures provided for in Law 1010 of 2006, committing, directly or indirectly, on the occasion of their functions or exceeding in the exercise of them, arbitrary and unjustified act against another public servant who has reported acts of corruption".

**ARTICLE 44. *Subjects subject to discipline.*** Article 53 of Law 734 of 2002 shall read as follows:

The present regime applies to individuals who perform auditing or supervision tasks in state contracts; also to those who perform public functions, permanently or temporarily, in what they have to do with these, and to those who administer public or official resources.

It is understood that a public function is exercised by a private individual who, by legal provision, administrative act, agreement or contract, performs administrative functions or activities of the organs of the State, which allow the fulfillment of the State's tasks, as well as the one who exercises the sanctioning power of the State; which will be evidenced, among other manifestations, every time he/she orders or indicates conducts, issues unilateral acts or exercises coercive powers.

Public resources are administered by those individuals who collect, safeguard, liquidate or arrange for the use of parafiscal revenues, revenues that are part of the budget of public entities or that the latter have earmarked for use for specific purposes.

Private individuals who provide public services will not be subject to disciplinary action, unless in the exercise such activities they perform public functions, in which case they will be subject to disciplinary action.

In the case of legal entities, disciplinary responsibility shall be demanded of the legal representative or of the members of the Board of Directors.

(Repealed by art. 265 of Law 1952 of 2019)

*(**Note:** The underlined text was declared EXEQUIBLE by the Constitutional Court through Ruling C- 084 of 2013, under the understanding that the misconduct was attributable to a breach of functional duties).*

**ARTICLE 45. *Responsibility of the financial controller for very serious misconduct.*** Section 11 of Article 55 of Law 734 of 2002 is hereby amended to read as follows:

11. Those enshrined in numbers 2, 3, 14, 15, 16, 18, 19, 20, 26, 27, 28, 34, 40, 40, 42, 43, 43, 50, 51, 52, 55, 56, and 59, paragraph 4, of article 48 of this law when they are compatible with the function.

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 46.** *Notifications.* Article 105 of Law 734 of 2002 shall have a second subsection, which shall read as follows:

In this way, the orders closing the investigation and the one ordering the transfer for closing arguments will be notified.

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 47.** *Proceeding of the direct revocation.* Article 122 of Law 734 shall read as follows:

Sanction rulings and dismissal orders may be revoked ex officio or at the request of the person sanctioned, by the Attorney General of the Nation or by the person who issued them. The complainant may request the revocation of the dismissal order.

(Repealed by art. 265 of Law 1952 of 2019)

*(Note: Underlined expressions declared EXEQUIBLES by the Constitutional Court by Ruling C-306 of 2012).*

**PARAGRAPH 1. In** the case of disciplinary offenses that constitute violations of International Human Rights Law and International Humanitarian Law, the Attorney General of the Nation may revoke the acquittal and close the case, either ex officio or at the request of the complainant who is the victim or injured party.

**PARAGRAPH 2.** The term to proceed with the revocation shall be three (3) calendar months.

**ARTICLE 48.** *Jurisdiction.* Article 123 of Law 734 of 2002 shall read as follows:

The sanctioning rulings and dismissal orders may be revoked by the official issued them or by his or her functional superior.

(Repealed by art. 265 of Law 1952 of 2019)

**PARAGRAPH .** The Attorney General of the Nation may revoke ex officio the sanctioning rulings, the orders of archiving and the judgment of acquittal, in the latter event in the case of disciplinary offenses that constitute violations of International Human Rights Law and International Humanitarian Law, issued by any official of the Office of the Attorney General or disciplinary authority, or directly assume the knowledge of the request for revocation, when deemed necessary, in which case he shall issue the corresponding decision.

*(Note: Underlined expression declared EXEQUIBLE by the Constitutional Court through Ruling C-306 of 2012).*

**ARTICLE 49.** *Cause for revocation of disciplinary decisions.* Article 124 of Law 734 of 2002 shall read as follows:

In the cases referred to in the above provisions, the sanctioning rulings, the orders of dismissal and the acquittal may be revoked only when they manifestly violate the constitutional, legal or regulatory norms on which they should be based. Likewise, when they manifestly violate or threaten fundamental rights.

*(Note: Underlined expression declared Exceptional by the Constitutional Court by means of Sentence C-306 of 2012.)*

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 50.** *Means of proof.* The first paragraph of article 130 of Law 734 shall read as follows:

The means of evidence are confession, testimony, expert opinion, inspection or special visit, and documents, and any other technical and scientific means that do not violate the legal system, which shall be practiced in accordance with the rules set forth in Law 600 of 2000, insofar as they are compatible with the nature and rules of disciplinary law.

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 51.** *Evidence transferred.* Article 135 of Law 734 shall read as follows:

The evidence validly taken in a judicial or administrative proceeding, within or outside the country, and material means of proof, may be transferred to the disciplinary proceeding by means of copies authorized by the respective official and shall be assessed in accordance with the rules set forth in this code.

The material elements of proof or physical evidence that the Attorney General's Office has discovered with the presentation of the indictment in the criminal proceeding may also be transferred, even if they have not been introduced and controverted in the trial hearing and therefore do not the quality of evidence. These material elements of proof or physical evidence must be submitted to contradiction within the disciplinary process.

When the Office of the Attorney General of the Nation or the Superior Council of the Judiciary need information about an ongoing criminal investigation or need to transfer to the disciplinary proceeding material elements of proof or physical evidence that have not been discovered, they shall so request the Attorney General of the Nation. In each case, the Prosecutor General will evaluate the request and determine what information or material elements of proof or physical evidence may be delivered, without affecting the criminal investigation or jeopardizing its success.

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 52. *Term of the disciplinary investigation.*** The first two paragraphs of Article 156 of Law 734 shall read as follows:

The term of the disciplinary investigation shall be twelve months, counted from the opening decision.

In proceedings for very serious misconduct, the disciplinary investigation may not exceed eighteen months. This term may be increased by up to one third when several offenses or two or more defendants are investigated in the same action.

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 53. *Decision to close the investigation.*** Law 734 of 2002 shall have an article 160 A, which shall read as follows:

When evidence has been collected that allows the formulation of charges, or when the term of investigation has expired, the officer, by means of a notifiable decision of substantiation, which will only admit the appeal for reconsideration, will declare the investigation closed.

Once the previous decision is final, the evaluation of the disciplinary investigation shall be verified within a maximum period of fifteen (15) working days.

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 54. *Evidentiary term.*** The first paragraph of article 168 of Law 734 of 2002 shall read as follows:

Upon expiration of the term set forth Article 166, the competent officer shall rule on the proposed nullities and shall order the taking of the evidence that has been requested, in accordance with the criteria of relevance, pertinence and necessity.

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 55. *Transfer for closing arguments.*** Article 169 of Law 734 of 2002 shall read as follows:

If there is no evidence to be taken or if the evidence indicated in the disciplinary trial stage has been taken, the hearing officer, by means of a notifiable order of substantiation, shall order a common transfer of ten (10) days so that the parties to the proceeding may present concluding arguments.

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 56. *Term for ruling.*** Law 734 of 2002 will have an article 169 A, which will read as follows:

The hearing officer will issue the decision within twenty (20) working days following the expiration of the term of transfer to present closing arguments.

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 57. *Application of the verbal procedure.*** Article 175 of Law 734 of 2002 shall read as follows:

Verbal proceedings shall be brought against public servants in cases in which the person subject to discipline is caught at the  of the commission of the offense or with elements, effects or instruments that come from the execution of the conduct, when there is a confession and in any case when the offense is minor.

The verbal procedure shall also be applied for the very serious offenses referred to Article 48, paragraphs 2, 4, 17, 18, 19, 20, 21, 22, 23, 32, 33, 35, 36, 39, 46, 47, 48, 52, 54, 55, 56, 57, 58, 59 and 62 of this law.

In the events contemplated in the preceding paragraphs, a hearing will be summoned at any stage of the proceedings, even before issuing a statement of charges.

In any case, and regardless of the person subject to discipline, if at the time of assessing the decision to open an investigation the substantial requirements for issuing an indictment are met, a hearing will be held.

(Repealed by art. 265 of Law 1952 of 2019)

**(Note:** *Underlined expression declared EXEQUIBLE by the Constitutional Court through Decision C-370 of 2012).*

**ARTICLE 58. *Verbal procedure.*** Article 177 of Law 734 of 2002 shall read as follows:

Once the procedure to be followed has been determined in accordance with the above rules, the competent official, by means of an order that must be notified personally, shall order oral proceedings to be carried out and shall summon the possible responsible party to a hearing.

The order to initiate oral proceedings must include the identification of the officer questioned, the position or job held, a brief list of the facts alleged to be irregular and the rules that typify them, a list of the evidence taken into account and of the evidence be ordered, as well as the responsibility that the officer questioned may be held liable for.

The hearing must begin no earlier than five (5) nor later than fifteen (15) days from the date of the order ordering it. No appeal may be filed against this decision.

At the beginning of the hearing, which the person under investigation may attend alone or assisted by counsel, he/she may give his/her own version of the facts and provide and request evidence, which will be taken at the same hearing, within a non-extendable term of three (3) days. If it is not possible to do so, the hearing shall be suspended for a maximum term of five (5) days and a date shall be set for the practice of the pending evidence or evidence.

Evidence shall be taken in accordance with the regulations for ordinary proceedings, making them compatible with the forms of the oral proceedings.

Evidence may be ordered by commissioner, when necessary and appropriate. The refusal to decree and practice evidence, for being inconductive, impertinent or superfluous, must be motivated.

The director of the process may order a recess, for the time he deems indispensable, so that the parties may present the closing arguments, which shall be a minimum of three (3) days and a maximum of ten (10) days. It may proceed in the same manner in those events that are not foreseen and that make such a measure necessary. No appeal shall be allowed against this decision.

Minutes shall be taken of the hearing, stating succinctly what occurred at the hearing. All decisions will be notified on the witness stand.

(Repealed by art. 265 of Law 1952 of 2019)

*(Note: Underlined expression declared EXEQUIBLE by the Constitutional Court through Ruling C-370 of 2012, with the understanding that this term will only begin to run from the notification of the order ordering the oral proceeding).*

**ARTICLE 59.** *Resources.* Article 180 of Law 734 of 2002 shall read as follows:

An appeal for reconsideration may be lodged against decisions denying the taking of evidence, nullities and recusal, which must be filed and supported orally at the time the decision is rendered. The director of the process will then decide orally and with reasons on the issues raised in the appeal.

The appeal may be filed against the order denying evidence, against the order rejecting the challenge and against the first  ruling, and must be verbally sustained at the same hearing, the ruling has been issued and notified on the witness stand. A decision on its granting will be made immediately.

*(Note: Subsection declared EXEQUIBLE by the Constitutional Court, through Decisions C-315 of 2012 and C-401 of 2013).*

An appeal for reconsideration is admissible when the procedure is of sole instance, which must be filed and sustained once the notification has been made on the official record, after which it will be decided.

Second instance decisions shall be adopted in accordance with the written procedure.

If the challenge proceeds, the ad quem will revoke the decision and return the process to be processed by the person appointed.

In the event of revoking the decision that denied the evidence, the ad quem will decree and practice it. It may also decree ex officio those it deems necessary to resolve the merits of the , guaranteeing the right of contradiction.

*(Note: Subsection declared EXEQUIBLE by the Constitutional Court by means of Decision C-401 of 2013).*

Before rendering the decision, the parties may file closing arguments, for which they will have a term of two (2) days, counted from the day following the day  the notification by state, which is one day.

The ad quem has ten (10) days to issue the second instance decision. This will be extended by another ten (10) days if evidence must be ordered and practiced.

(Repealed by art. 265 of Law 1952 of 2019)

**ARTICLE 60.** *Proceedings for special disciplinary proceedings before the Attorney General of the Nation.*
Article 182 of Law 734 of 2002 shall have a second subsection, which shall read as follows:

The Attorney General of the Nation may also apply this special procedure for cases in which his competence to discipline is in sole instance.

(Repealed by art. 265 of Law 1952 of 2019)

**CHAPTER IV**

**REGULATION OF LOBBYING OR LOBBYING**

**ARTICLE 61.** *Access to information.* The competent authority may request, at any time, additional information or background information related to specific proceedings, when there is at least summary evidence of the commission of a crime or disciplinary offense.

**CHAPTER V**

**SPECIAL AGENCIES FOR THE FIGHT AGAINST CORRUPTION**

**ARTICLE 62.** *Formation of the National Commission for Moralization.* The National Commission for Moralization is hereby created, composed of:

a) The President of the Republic;

b) The Minister of the Interior and Justice;

c) The Attorney General of the Nation;

d) The Comptroller General of the Republic;

e) The Auditor General of the Republic;

f) The President of the Senate and the House of Representatives;

g) The Attorney General of the Nation;

h) The Chief Justice of the Supreme Court of Justice;

i) The President of the Council of State;

j) The Director of the Presidential Program for Modernization, Efficiency, Transparency and Fight against Corruption;

k) The Presidential Advisor for Good Governance and Transparency;

l) The .

*(See numeral 9, article 1.3.1, Decree 1081 of 2015).*

**ARTICLE 63.** *Presidency of the Commission.* The Presidency of the National Commission for Moralization shall correspond to the President of the Republic.

**ARTICLE 64.** *Functions.* The National Commission for Moralization shall have the following functions:

a) To ensure compliance with the application of this law and Law 190 of 1995;

b) Coordinate the implementation of joint actions for the fight against corruption with respect to national or territorial entities in which there are indications of this phenomenon;

c) Coordinate the exchange of information on anti-corruption matters;

d) To make proposals to give effect to the measures contemplated in this law with respect politically exposed persons;

e) Establish mandatory indicators of effectiveness, efficiency and transparency for the Public Administration, and the mechanisms for their disclosure;

f) Establish priorities to deal with situations that threaten or damage morality in the Public Administration;

g) Adopt an annual strategy to promote transparency, efficiency, morality and other principles that should govern the Public Administration;

h) Promote the implementation of pilot centers focused on the consolidation of transparent mechanisms and the achievement of excellence in the levels of efficiency, effectiveness and economy public management;

i) Promote the conscious and responsible exercise of citizen participation and social control over public management;

j) To assist in the fulfillment of popular actions insofar as they have to do administrative morality;

k) To guide and coordinate the implementation of educational and informative activities on topics associated with public ethics and morals, duties and responsibilities in the public service;

l) Maintain permanent contact and exchange with official and private entities in the country and abroad that offer alternatives in the fight against administrative corruption;

m) To lend its full support to the construction of a transparent State;

n) To give itself its own regulations.

**PARAGRAPH:** The National Commission of Moralization shall install two technical sub-commissions, one for the prevention and the other for the detection and sanction of acts of corruption, in  to guarantee the continuity and technical quality of the commission.

The subcommittees shall made up of permanent delegates of the members that compose it according to their competencies.

The subcommittees may convene other entities when deemed necessary.

The National Moralization Commission, through the National Government, shall regulate the Technical Subcommissions within six (6) months following the issuance of this Law.

([Paragraph added by Art. 28 of Law 2195 of 2022](#)).

**ARTICLE 65.** *Regional Moralization Commissions.* Each department shall set up a Regional Commission on Moralization, which shall be in charge of applying and implementing the guidelines of the National Commission on Moralization and coordinating at the territorial level the actions of the bodies for the prevention, investigation and punishment of corruption.

The Regional Commission will be made up of regional representatives of the Office of the Attorney General of the Nation, the Office of the Comptroller General of the Republic, the Office of the Attorney General of the Nation, the Sectional Council of the Judiciary and the Departmental, Municipal and District Comptroller's Offices. Attendance at these meetings, which will be held monthly, is mandatory and may not be delegated.

Other entities that may be summoned to be part of the Regional Moralization Commission, when deemed necessary, are: the Ombudsman's Office, the municipal ombudsman's offices, the specialized technical police bodies, the Governor and the President of the Departmental Assembly.

In order to articulate the Regional Moralization Commissions with the organized citizenry, at least a quarterly meeting should be held between them to attend and respond to their requests, concerns, complaints and denunciations.

**ARTICLE 66.** *Formation of the National Citizen Commission for the Fight against Corruption.*
The National Citizen Commission for the Fight against Corruption is hereby created, which shall be composed of:

a) A representative of the Economic Guilds;

b) A representative of the Non-Governmental Organizations dedicated to the fight against corruption;

c) A representative of the Universities;

d) A representative of the Media;

e) A representative of the Veedurías Ciudadanas;

f) A representative of the National Planning Council;

g) A representative of the Trade Union Organizations;

h) A representative of Conferilec (Colombian Confederation of Religious Freedom, Conscience and Worship).

**ARTICLE 67.** *Appointment of Commissioners.* The appointment of the Citizen Commissioners corresponds to the President of the Republic, from short lists sent by each sector. They shall hold office for fixed periods of four (4) years and shall perform their functions ad honorem.

(Regulated by Decree 958 of 2016).

**ARTICLE 68.** *Functions.* The National Citizen Commission for the Fight against Corruption shall exercise the following functions:

a) To ensure compliance with the application of this law and Law 190 of 1995;

b) To prepare a follow-up, evaluation and recommendations report on the policies, plans and programs implemented in the fight against corruption, which shall be submitted least once (1) a year;

c) Promote campaigns in educational institutions for the promotion of ethical values and the fight against corruption;

d) Promote the development of codes of conduct for the ethical and transparent exercise of private sector activities and for the prevention of conflicts of interest in the private sector;

e) Special monitoring of the measures adopted in this law to improve public management, such as public procurement, anti-bureaucracy policy, democratization of public administration, access to public information and citizen service;

f) To conduct special follow-up on high-impact corruption cases and investigations;

g) Follow up on the implementation of the measures contemplated in this law to lobbying, in  to ensure transparency in public decisions;

h) Promote the active participation of the media in the development of programs aimed at fighting corruption and rescuing public morality;

i) To report to the competent authorities any irregular acts or actions of public servants of which they are aware, in compliance with the provisions of Article 92 of the Constitution;

j) To assist in the fulfillment of popular actions as they relate to administrative morality;

k) To ensure that the Public Administration keeps the inventory and ownership of movable and immovable property belonging to the various entities up to date, as well as its proper use;

l) To ensure and propose guidelines to comply with the provisions of Article 56 of Law 190 of 1995;

m) To give itself its own regulations.

**ARTICLE 69.** *Technical Secretariat.* The Technical Secretariat of the National Citizen Commission for the fight against corruption shall be appointed by the representatives referred to in Article 66 of this Law. The Technical Secretariat of the National Commission of Moralization and its technical sub-commissions shall be exercised by the Secretariat of Transparency of the Presidency of the Republic.

(Modified by Art. 29 of Law 2195 of 2022).

Previous Standard

**ARTICLE 70.** *Requirements.* The following are requirements to be a member of the National Citizen Commission for the Fight against Corruption:

1. To be an Colombian citizen.

2. Not to have been convicted of a felony or misdemeanor.

3. Not to have been disciplinarily sanctioned for serious or very serious misconduct.

4. Not be a public servant, nor have a contractual relationship with the State.

**ARTICLE 71.** *Meetings of National Ethics Commission and the Citizens' Commission.* The National Commission of Moralization and the Citizen Commission shall meet at least two (2) times a year and deliver at the end of the year a report of their activities and results, which shall be public and may be consulted on the Internet page of all the entities that make up this Commission.

(Modified by Art. 71 of Law 2195 of 2022).

Previous Standard

**ARTICLE 72.** *Functions of the Presidential Program for Modernization, Efficiency, Transparency and Fight against Corruption.* The Presidential Program for Modernization, Efficiency, Transparency and Fight against Corruption, or whoever takes its place, shall have the following functions:

a) To design and coordinate the implementation of the Government's policy in the fight against corruption, framed in the Constitution and the National Development Plan, according to the guidelines of the President of the Republic;

b) Design, coordinate and implement guidelines, mechanisms and preventive tools institutional strengthening, citizen participation, social control, accountability, access to information, culture of probity and transparency;

c) Coordinate the implementation of the commitments acquired by Colombia in international anti-corruption instruments;

d) Promote and contribute to the inter-institutional coordination of the different branches of power and control bodies at the national and territorial levels;

e) To design instruments to understand and analyze the phenomenon of corruption and its indicators, in order to design public policies;

f) Define and promote strategic actions between the public and private sectors in the fight against corruption;

g) Request and analyze information of a public nature from public or private entities that execute State resources or provide a public service, and from those obligated under Law 1712 of 2014 -Law on Transparency and Access to Public Information-, when necessary to verify transparency in the management of resources and the integrity of public administration, and generate early warnings, which must be brought to the attention of the competent authorities.

(Repealed by art. 237 of Decree 019 of 2012) (Added by

Article 34 of Law 1778 of 2016).

h) To transfer to the control entities and the Attorney General's Office of alleged crimes against the public administration, crimes against the economic and social order, or crimes against the economic patrimony, as well as disciplinary or fiscal infractions of which it has knowledge, and the documentation or evidence conducive to the verification of such cases.

(Added by Article 34 Law 1778 of 2016).

i) To require the regional moralization commissions to advance investigations for alleged crimes against public administration, crimes against the economic and social order, crimes economic assets, disciplinary or fiscal infractions, of which it has become aware; and to formulate recommendations to prevent and attack systemic corruption risks.

(Added by Article 34 Law 1778 of 2016).


# CHAPTER VI


## INSTITUTIONAL AND PEDAGOGICAL POLICIES


**ARTICLE 73.** *Anti-Corruption and Citizen Service Plan.* Each national, departmental and municipal entity, regardless of its contracting regime, shall implement Transparency and Public Ethics Programs in order to promote a culture of legality and to identify, measure, control and constantly monitor the risk of corruption in the development of its mission. This program shall contemplate, among other things:

a. Due diligence measures in public sector entities.

b. Prevention, management and administration of risks of laundering, financing of terrorism and arms proliferation and corruption risks, including reports of suspicious transactions to the UIAF, consultations in the restrictive lists and other specific measures defined by the National Government within the year following the issuance of this regulation;

c. Inter-institutional networks to strengthen the prevention of acts of corruption, transparency and legality;

d. Complaint channels in accordance with the provisions of Article 76 of Law 1474 of 2011;

e. Strategies for transparency, open government, access to public information and a culture of legality;

f. Any additional initiatives that the Entity deems necessary to include in order to prevent and combat corruption.

**PARAGRAPH 1.** In those entities in which an Integral Risk Management System has been implemented, it shall be articulated with Transparency and Public Ethics Program.

**PARAGRAPH 2.** The territorial entities shall have a maximum term of two (2) years and the national entities one (1) year to adopt the Transparency and Public Ethics Program.

**PARAGRAPH 3.** The Transparency Secretariat of the Presidency of the Republic shall be in charge of indicating the characteristics, standards, elements, requirements, procedures and minimum controls that the Transparency and Public Ethics Program referred to in this Article must comply with, which shall have a risk approach. The Integrated Planning and Management Model (MIPG) or successor models shall be harmonized with the Transparency and Public Ethics Program.

**PARAGRAPH 4.** The Administrative Department of the Public Function will be in charge of the anti-bureaucratic strategies and the mechanisms to improve the attention to the citizen will be in charge of said entity and the National Planning **.**

**PARAGRAPH 5.** The Territorial Renewal Agency will accompany the process of adoption of the Transparency and Public Ethics Program of the municipalities described in Decree Law 893 of 2017 or the norm that modifies, adds or replaces it, for which, it will have the support of the Transparency Secretariat of the Presidency of the Republic.

The Transparency and Public Ethics Program for PDET municipalities shall provide for specific monitoring of programs, projects and resources derived from the Action Plans for Regional Transformation - PATR or, in due course, the Single Roadmap that incorporates them.

The Territorial Renewal Agency will be in charge of carrying out the articulation between the municipalities of Decree Law 893 of 2017 and the Transparency Secretariat of the Presidency of the Republic.

(Regulated by Decree No. 1122 of 2024)

(Modified by Art. 31 of Law 2195 of 2022).


(Regulated by Decree 2641 of 2012)


*(See art. 2.1.4.1, Decree 1081 of 2015).*


*(See art. 2.1.4.2, Decree 1081 of 2015).*


*(See art. 2.1.4.9, Decree 1081 of 2015).*


| Previous Standard |
| --- |

**ARTICLE 74. *Action plan of public entities.*** As of the effective date of this law, all State entities shall publish on their respective websites, no later than January 31 of each year, the Action Plan for the following year, which shall specify the objectives, strategies, projects, goals, responsible parties, general purchasing plans and budgetary distribution of their investment projects together with the management indicators.


As of the following year, the Action Plan must be accompanied by the management report for the immediately preceding year.


Likewise, they shall publish their budget, duly disaggregated, as well as any amendments thereto or to its breakdown.


**PARAGRAPH .** The industrial and commercial enterprises of the State and Mixed Economy Companies shall be exempted from publishing the information related to their investment projects.


*(See art. 2.1.1.1.2.1.10, Decree 1081 of 2015).*

**Note** (See Presidential Directive No. 07 of 2018)

((See External Circular 100-024 of 2021 Administrative Department of the Public Function).


**ARTICLE 75. *Anti-bureaucracy policy.*** For the creation of a new procedure that affects citizens in the entities of the national order, these shall prepare a document justifying the creation of the respective procedure. Said document must be sent to the Administrative Department of the Public Function, which within thirty (30) days must give its opinion on the need for the same. In the event that such opinion is negative, the entity shall refrain from putting it into operation.


**PARAGRAPH 1.** In accordance with the provisions of numeral 10 of Article 150 of the Political Constitution, the President of the Republic is invested with precise extraordinary powers so that within a term of six months, counted from the date of publication of the present law, he may issue the following regulations

with the force of law to eliminate or reform unnecessary regulations, procedures and formalities existing in the Public Administration.

**PARAGRAPH 2.** The extraordinary powers attributed in this article shall not be applicable with respect to proceedings related to environmental licenses.

(Repealed by Art. 158 of Decree 2106 of 2019)

**ARTICLE 76.** *Office for Complaints, Suggestions and Claims.* In every public entity, there shall be at least one office in charge of receiving, processing and resolving complaints, suggestions and claims formulated by citizens, and which are related to the fulfillment of the entity's mission.

The internal control office must ensure that the service is provided in accordance with the legal standards in force and shall submit a semi-annual report on the matter to the entity's management. On the main web page of any public entity there should be a link for complaints, suggestions and claims easily accessible for citizens to make their comments.

All public entities must have a space on their main web page for citizens to file complaints and denunciations of acts of corruption carried out by officials of the entity, and of which they are aware, as well as suggestions that allow modifications to be made to the way in which public service is provided.

The office of complaints, suggestions and claims will be in charge of hearing such complaints in order to carry out the corresponding investigation in coordination with the internal disciplinary operator, in order to initiate the necessary investigations.

(Subsection repealed by art. 237 of Decree 019 of 2012).

The Presidential Program for Modernization, Efficiency, Transparency and Fight against Corruption will indicate the standards to be met by public entities in order to comply with this regulation.

**PARAGRAPH .** In those entities where a process for the management of complaints, claims and grievances has been implemented, its characteristics may be validated against the standards required by the Presidential Program for Modernization, Efficiency, Transparency and Fight against Corruption.

(Regulated by Decree 2641 of 2012)

*(See Section b) article 2.2.21.4.9, Decree 1083 of 2015).*

*(See art. 2.1.4.3, Decree 1081 of 2015).*

*(See art. 2.1.4.9, Decree 1081 of 2015).*

**ARTICLE 77.** *Publication of investment projects.* Without prejudice to the provisions of Articles 27 and 49 Law 152 of 1994 and as a mechanism for greater transparency public contracting, all national, departmental, municipal and district entities shall publish on their respective web pages each investment project, ordered according to the date of registration in the Bank of National, Departmental, Municipal or District Investment Programs and Projects, as the case may be.

**PARAGRAPH .** The industrial and commercial enterprises of the State and Mixed Economy Companies shall be exempted from publishing the information related to their investment projects.

**ARTICLE 78.** *Democratization of the Public Administration.* Amend Article 32 of Law 489 of 1998, which shall read as follows:

All entities and agencies of the Public Administration have the obligation to develop their management in accordance with the principles of participatory democracy and democratization of public management. To this end, they may carry out all necessary actions to involve citizens and civil society organizations in the formulation, execution, control and evaluation of public management.

Among others, they will be able to perform the following actions:

a) Convene public hearings;

b) Incorporate policies and programs aimed at strengthening citizen participation into their development and management plans;

c) To disseminate and promote the rights of citizens with respect to the proper functioning of the Public Administration;

d) Encourage the formation of associations and interest association mechanisms to represent users and citizens;

e) Support the social control mechanisms that may be established;

f) Apply mechanisms that provide transparency in the exercise of administrative functions.

In any case, the entities mentioned in this article will have to render accounts permanently to the citizens, under the guidelines of methodology and minimum contents established by the National Government, which will be formulated by the Interinstitutional Commission for the Implementation of the Accountability Policy created by CONPES 3654 of 2010.

**ARTICLE 79.** *Pedagogy of citizenship competencies.* The educational establishments of basic and secondary education shall include in their Institutional Educational Project, as they deem pertinent, strategies for the development of citizenship competencies for peaceful coexistence, participation and democratic responsibility, and the identity and valuing of difference, which shall be reflected in activities aimed at all members of the educational community.

Specifically, the participation area will be oriented towards the construction of a culture of legality and care for common goods.

**PARAGRAPH .** The Ministry of National Education and the Secretariats of Education shall promote teacher training programs for the development of citizenship competencies.

**ARTICLE 80.** *Dissemination of institutional corruption prevention campaigns.* The providers of public or community Radio Broadcasting Services shall provide free support to the Ministry of Information Technologies and Communications in the dissemination of social communication projects and strategies that energize the mechanisms of social and community integration, as well as to the Office of the Attorney General of the Nation, the Office of the Comptroller General of the Republic, the Office of the Attorney General of the Nation, the Presidential Program for Modernization, Efficiency, Transparency and Transparency of the Nation, the Presidential Program for Modernization, Efficiency, Transparency and Corruption Prevention, the Office of the Comptroller General of the Republic, the Office of the Attorney General of the Nation, the Presidential Program for Modernization, Efficiency, Transparency and Fight against Corruption and other entities of the Executive Branch with a minimum of 15 minutes of daily broadcasting to each entity, to disseminate strategies to fight corruption and protect and promote the fundamental rights of Colombians.

Likewise, public television system operators shall provide support in the same terms and with the same objective, in a period of no less than 30 minutes of effective broadcasting time each week.

**ARTICLE 81.** *Penalties for non-compliance with institutional policies.* Non-compliance with the implementation of the institutional and pedagogical policies contained in this chapter by the public servants in charge shall constitute a serious disciplinary offense.

**CHAPTER VII**

**PROVISIONS FOR PREVENTING AND COMBATING CORRUPTION IN PUBLIC CONTRACTING**

**ARTICLE 82.** *Responsibility of the intervenors.* Amend Article 53 of Law 80 of 1993, which shall read as follows:

The consultants and external advisors shall be civilly, fiscally, criminally and disciplinarily liable for the fulfillment of the obligations derived from the consulting or advisory contract, as well as for the facts or omissions that are attributable to them and that cause damage or harm to the entities, derived from the execution and performance of the contracts for which they have performed or perform the consulting or advisory activities.

On the other hand, the auditors shall be civilly, fiscally, criminally and disciplinarily liable, both for the fulfillment of the obligations derived from the audit contract, as well as for the facts or omissions that are attributable to them and cause damage or harm to the entities, derived from the

The celebration and execution of contracts for which they have performed or are performing the functions of auditors.

**PARAGRAPH .** The National Government shall regulate the matter within six (6) months following the issuance of this law.

**ARTICLE 83. *Contractual supervision and oversight.*** In order to protect administrative morality, prevent the occurrence of acts of corruption and protect the transparency of the contractual activity, public entities are required to permanently monitor the proper execution of the contracted object a supervisor or an auditor, as appropriate.

Supervision shall consist of technical, administrative, financial, accounting and legal monitoring of compliance with the object of the contract, which is exercised by the State Entity itself when specialized knowledge is not required. For the supervision, the State Entity may hire support personnel, through the service provision contracts that may be required.

The auditing shall consist of the technical monitoring of the performance of the contract by a natural or legal person hired for such purpose by the State Entity, when the monitoring of the contract implies specialized knowledge in the matter, or when the complexity or extension of the contract justifies it. Notwithstanding the foregoing, when the entity finds it justified and in accordance with the nature of the main contract, it may hire the administrative, technical, financial, accounting and legal monitoring of the object or contract within the auditing.

As a general rule, the functions of supervision and auditing shall not be concurrent in relation to the same contract. However, the entity may divide the supervision of the main contract, in which case the respective supervision contract must indicate the technical activities to be carried out by the supervisor and the other activities to be carried out by the entity through the supervisor.

The supervision contract will be supervised directly by the state entity.

**PARAGRAPH 1.** In addition to the obligation to have an auditor, taking into account the entity's capacity to assume or not the respective supervision in the works contracts referred to in Article 32 of Law 80 of 1993, the preliminary studies of contracts whose value exceeds the smallest amount of the entity, regardless of the selection modality, shall state need to have an auditor.

**PARAGRAPH 2.** The National Government shall regulate the matter.

**ARTICLE 84. *Powers and duties of supervisors and auditors.*** Contractual supervision and auditing implies the monitoring of the Contracting Entity's compliance with the obligations of the Contractor.

Controllers and supervisors are empowered to request reports, clarifications and explanations on the development of the execution of the contract, and shall be responsible for keeping contracting entity informed of the facts or circumstances that may constitute acts of corruption classified as punishable conduct, or that may place or jeopardize the performance of the contract, or when such non-compliance occurs.

Paragraph 34 of article 48 of Law 734 of 2002 shall read as follows:

Failure by the supervisor or the auditor to demand the quality of the goods and services acquired by the state entity, or in the absence thereof, those required mandatory technical standards, or certifying as received to satisfaction, work that has not been fully executed. It will also be a very serious offense to omit the duty inform the contracting entity of facts or circumstances that may constitute acts of corruption typified as punishable conduct, or that may place or jeopardize the performance of the contract, or when non-compliance occurs.

**PARAGRAPH 2.** Law 80 of 1993, Article 8, paragraph 1, is hereby added with the following literal:

k) The financial controller who fails to comply with the duty to deliver information to the contracting entity related to the breach of contract, with facts or circumstances that may constitute acts of corruption classified as punishable conduct, or that may place or jeopardize the performance of the contract.

This disqualification shall be extended for a term of five (5) years, counted from the date of execution of the administrative act that so declares it, after the corresponding administrative action has been taken.

*(Note: Paragraph declared EXEQUIBLE by the Constitutional Court, by means of Decision C-434 of 2013.)*

**PARAGRAPH 3.** The financial controller who has not informed the Entity in a timely manner of a possible breach of the monitored or main contract, whether partial or total, of any of the obligations the contractor, shall be jointly and severally liable with the contractor for the damages caused by the breach for the damages attributable to the financial controller.

When the authorizing officer is informed in a timely manner of possible non-compliance by a contractor and does not order him to comply with the agreement or adopt the necessary measures to safeguard the general interest and the public resources involved, he will be jointly and severally liable with the contractor for the damages caused.

**PARAGRAPH 4.** When the financial controller is a consortium or temporary union, solidarity shall be applied in accordance with the terms set forth in Article 7 of Law 80 of 1993, with respect to the penalty regime.

**ARTICLE 85.** *Continuity of the supervision.* The supervision contracts may be extended for the same term that the contract under supervision has been extended. In such case, the value may be adjusted in accordance with the obligations of the object of the supervision, without the provisions of the paragraph of Article 40 of Law 80 of 1993 being applicable.

**PARAGRAPH.** For the execution of supervision contracts, the constitution and approval of the performance guarantee is mandatory for up to the same term as the stability guarantee of the main contract; the National Government shall regulate the matter. In this event, Article 7 of Law 1150 may be applied, regarding the possibility that the guarantee may be divided taking  account the stages or risks related to the execution of the respective contract.


**ARTICLE 86.** *Imposition of fines, penalties and declarations of default.* The entities subject to the General Statute of Contracting of the Public Administration may declare noncompliance, quantifying the damages thereof, impose the fines and penalties agreed in the contract, and enforce the penalty clause. For such purpose, the following procedure shall be observed:


a) Once a possible breach of the contractor's obligations has been evidenced, the public entity will summon the contractor to a hearing to discuss what has occurred. In the summons, it shall expressly and in detail mention the facts that support it, accompanying the audit or supervision report on  the action is based and shall state the rules or clauses possibly violated and the consequences that could be derived for the contractor in the development of the action. The same will establish the place, date and time for the hearing, which may take place as soon as possible, taking into account the nature of the contract and the periodicity established for the fulfillment of the contractual obligations. In the event that the performance bond consists of an  policy, the guarantor shall be summoned in the same ;


b) During the hearing, the head of the entity or his delegate will present the factual circumstances that motivate the action, will state the possible rules or clauses possibly violated and the consequences that could arise for the contractor in the course of the action. The legal representative of the contractor or representative and guarantor will then be  the floor to present their arguments, in the course of which they may give explanations, provide evidence and dispute the evidence presented by the entity;


c) Once the foregoing has been done, the entity will proceed to decide whether or not to impose the fine, sanction or declaration of non-compliance by means of a reasoned resolution stating what occurred  the hearing, which will be understood to have been notified in said public act. Only an appeal for reconsideration may be lodged against the decision thus rendered, which shall be filed, sustained and decided at the same hearing. The decision on the appeal shall be notified at the same hearing;


d) At any time  the hearing, the head of the entity or his delegate may suspend the hearing when, ex officio or at the request of a party, it is necessary, in his opinion, gather or practice evidence that he deems relevant and pertinent, or when for any other duly supported reason, it is necessary for the correct development of the administrative proceeding. In any case, when the decision is adopted, a date and time shall be set for the resumption of the hearing.


The entity may terminate the procedure at any time, if by any means it becomes aware of the cessation of the non-compliance situation.

**Sanctioning procedures**. During the period of validity of the Sanitary Emergency declared by the Ministry of Health and Social Protection, due to the pandemic derived from the Coronavirus COVID-19, the hearings programmed in accordance with the procedure established in this article,

may be carried out through electronic means, which must guarantee access by contractors and those who have issued the guarantee.

The state entity must choose and guarantee the electronic and communication media to be used, as well as the mechanisms for recording the information generated.

Notwithstanding the foregoing, the authorizing officer or competent official may decree the suspension of terms, including those initiated prior to the entry into force of this Decree.

(Sub-sections added by Art. 2 of Decree 537 of 2020)

**(Note:** *declared EXEQUIBLE by the Constitutional Court, by means of Sentence* C-499 *of 2015).*

**ARTICLE 87.** *Maturing of projects.* Section 12 of Article 25 of Law 80 of 1993 shall read as follows:

12. Prior to the opening of a selection process, or to the signing of the contract in event that the selection modality is direct contracting, the required studies, designs and projects, and the bidding documents, as applicable, must be prepared.

When the object of the contract includes the execution of a work, in the same opportunity indicated in the first paragraph, the contracting entity must have the studies and designs that allow establishing the feasibility of the project and its social, economic and environmental impact. This condition shall be applicable even for contracts that include design as part of the object.

**PARAGRAPH 1.** For purposes of decreeing their expropriation, in addition to the reasons determined in other laws in force, the real estate necessary for the execution of transportation infrastructure projects shall be declared of public utility or social interest.

For these purposes, the procedure for each transportation infrastructure project designed will be as follows:

1. The responsible entity shall issue a resolution determining precise coordinates of the project.

2. The Agustín Codazzi Geographic Institute – IGAC or the competent entity as the case may be, within two (2) months following the publication of the resolution referred to in the preceding paragraph, shall proceed identify the properties affected by the project and shall order the registration of the quality of properties of public utility or social interest in the respective cadastral records and in the real estate registration folios, with said properties being out of commerce as of the aforementioned registration.

3. Once the registration referred to in the preceding paragraph has been carried out, within a term of six (6) months the IGAC or the competent entity, charged to the resources of the entity responsible for the project, shall carry out the commercial appraisal of the property and shall notify the latter and the owner and other accredited interested parties.

4.  The appraisal referred to in the preceding paragraph shall include the value of the possessions, if any, and of any other indemnifications or compensations that may be necessary because such declaration affects the patrimony of the individuals.

5.  The National Government shall regulate the conditions to determine the value of the acquisition price or indemnity price to be recognized to the owners in the processes of voluntary alienation and judicial and administrative expropriation, taking into account the location, the physical and legal conditions and the economic destination of the real estate.

6.  The accredited interested parties may file appeals under the terms of the Contentious Administrative Code against the appraisal of the IGAC or of the competent entity.

7.  Once the appraisal is final, the entity responsible for the project or the contractor, if so agreed, shall pay within the following three (3) months, the indemnities or compensations to which it may be entitled. Upon receipt of the payment by the individual, it is understood that there is mutual agreement in the negotiation and transaction of possible future indemnities.

8.  Once the payment has been made by mutual agreement, the property will be registered in the name of the person responsible for the project, ratifying the nature of the property as of public use and social interest, which will enjoy the benefits of Article 63 of the Political Constitution.

9.  If direct payment of the indemnification or compensation is not possible, an administrative act of expropriation will be issued by the entity responsible for the project and payment will be made by consignment to the orders of the competent Judge or Contentious-Administrative Court, will cancel the obligation.

10.  The expropriation resolution will be the title on the basis of which the property will be registered in the name of the entity responsible for the project and, as an asset of public use and social interest, will enjoy the benefits of Article 63 of the Political Constitution. The foregoing, without prejudice to the right of the persons subject to indemnification or compensation to appeal before the Contentious Administrative Judges the value of the same in each particular case.

11. The entity responsible for the project shall notify the persons subject to the indemnification or compensation that the payment thereof has been made. Once the notification has been made, said subjects must deliver the property within the following fifteen (15) working days.

12.  In the event that the persons subject to indemnification or compensation do not deliver the property within the indicated term, the entity responsible for the project and the competent local authorities must carry out the eviction within the month following the expiration of the term for delivery of the property.

13.  This paragraph shall also apply to transportation infrastructure projects that are contracted or under execution at the  of issuance of law.

(Repealed by art. 73 of Law 1682 of 2013).

**PARAGRAPH 2.** The commercial appraisal of the real estate required for the execution of transportation infrastructure projects, to the extent that it exceeds by 50% the value of the cadastral appraisal, may be used as a criterion to update the cadastral appraisal of the real estate that is disencumbered as a consequence of the process of voluntary alienation or judicial or administrative expropriation.

(Repealed by art. 73 of Law 1682 of 2013).

**ARTICLE 88.** *Selection factors and differential procedures for the acquisition of goods and services to be contracted.* Amend paragraph 2 of article 5 of Law 1150 of 2007 in the following sense:

"The most favorable offer shall be that which, taking into account the technical and economic selection and the precise and detailed weighting thereof contained in the documents or their equivalents, turns out to be the most advantageous for the entity, without the favorability being constituted by factors other than those contained in said documents. In public works contracts, the shortest term offered shall not be subject to evaluation. The entity will make the necessary comparisons by comparing the offers received and consulting prices or market conditions and the studies and deductions of the entity or of the consulting or advisory agencies designated for this purpose.

In selection processes in which technical and economic factors are taken into account, most advantageous offer will be the one resulting from applying any of the following alternatives:

a) The weighting of the quality and price elements supported by scores or formulas indicated in the bidding documents; or

b) The weighting of quality and price elements that represent the best cost-benefit ratio for the entity.

**PARAGRAPH .** Add a paragraph 6 to article 2 of Law 1150 of 2007 follows:

"The National Government may establish different procedures within the various grounds for abbreviated selection, in such a way that they are adapted to the particularities of the objects to be contracted, without prejudice to the possibility of establishing common procedures. The same may be done in relation to the merit-based competition".

**ARTICLE 89.** *Issuance of addenda.* Paragraph 2 of numeral 5 of article 30 of Law 80 of 1993 shall read as follows:

"When deemed convenient by the interested entity, ex officio or at the request of a plural number potential bidders, said term may be extended before its expiration, for a term not exceeding half of the initially set term. In any case, addenda may not be issued within three (3) days.

The publication of these addenda may only be made on business days and during working hours". The publication of these addenda may only be made on business days and during working hours".

**ARTICLE 90. DISQUALIFICATION FOR REPEATED NONCOMPLIANCE.** The contractor who incurs in any of the following conducts shall be disqualified:

a. Having been subject to the imposition of five (5) or more fines during the execution of one or several contracts, with one or several state entities, during the last three (3) years.

b. Have been subject to declarations of breach of contract in at least two (2) contracts with one or more state entities during the last three (3) years.

c. Having been subject to the imposition of two (2) fines and one (1) non-compliance during the same fiscal year, with one or several state entities.

The disqualification will be extended for a term of three (3) years, counted from the publication of the administrative act that imposes the registration of the last fine or non-compliance in the Sole Bidders' Registry, according to the information submitted by the public entities. The relevant disqualification shall be explicitly stated in the Sole Registry of Bidders when applicable.

d. Having been subject to contractual default or imposition of two (2) or more fines, with one or more entities, in the case of contracts whose object is related to the School Feeding . This disqualification shall be extended for a term of ten (10) years, counted from the publication of the administrative act imposing the registration of the last fine or default in the Sole Registry of Bidders, according to the information submitted by public entities.

The relevant disqualification shall explicitly stated in Sole Registry of Bidders when applicable. (Section added by Article 51 of Law 2195 of 2022).

**PARAGRAPH .** The disqualification referred to in this article shall extend to the partners of partnerships to which this disqualification has been declared, as well as the of which they form part after such declaration.

(Article MODIFIED by Art. 43 of Law 1955 of 2019)

**ARTICLE 91. *Advances.*** In contracts for works, concession, health, or those made by public bidding, the contractor shall constitute a trust or an irrevocable autonomous patrimony for the management of the resources received as an advance payment, in  to guarantee that such resources are applied exclusively to the execution of the corresponding contract, unless the contract is for a minor or minimum amount.

The cost of the fiduciary commission will be covered directly by the contractor.

**PARAGRAPH .** The financial and accounting information of the trust may be consulted by the Surveillance and Fiscal Control Agencies.

**ARTICLE 92. *Inter-administrative contracts.*** The first clause of paragraph c) of numeral 4 of Article 2 of Law 1150 of 2007 is hereby amended to read as follows:

c) Inter-administrative contracts, provided that the obligations arising therefrom directly related to the purpose of the executing entity as set forth in the law or its regulations.

Exceptions are contracts for works, supply, provision of conformity assessment services with respect to standards or technical regulations, fiduciary orders and public trusts when public higher education institutions or Mixed Economy Companies with majority participation of the State, or non-profit legal entities formed by the association of public entities, or federations of territorial entities are the executors. These contracts may be executed by the same, provided they participate in public bidding or abbreviated contracting processes in accordance with the provisions paragraphs 1 and 2 of this article.

**ARTICLE 93.** *The contractual regime of the State Industrial and Commercial Companies, Mixed Economy Companies, their subsidiaries and companies with majority State participation.* Amend Article 14 of Law 1150 of 2007, which shall read as follows:

The Industrial and Commercial Companies of the State, the Mixed Economy Companies in which the State has a participation of more than fifty percent (50%), their subsidiaries and the Companies between Public Entities with a majority participation of the State of more than fifty percent (50%), will be subject to the General Statute of Contracting of the Public Administration, with the exception those that develop commercial activities in competition with the private and/or public, national or international sector or in regulated markets, in which case they shall be governed by the legal and regulatory provisions applicable to their economic and commercial activities, without prejudice to provisions of Article 13 of this law. Exceptions are made for science and technology contracts, which shall be governed by Law 29 of 1990 and existing regulatory provisions.

**ARTICLE 94.** *Transparency in minimum amount contracting.* The following paragraph is added to Article 2 of Law 1150 of 2007.

Procurement whose value does not exceed 10 percent of the entity's smallest amount, regardless of its purpose, shall be carried out in accordance with the following rules:

a) An invitation shall be published for a term of no less than one working day, which shall state the object to be contracted, the budget allocated for such purpose, as well as the technical conditions required;

b) The term provided in the invitation to submit the bid shall not be less than one working day;

c) The entity will select, by means of a communication of acceptance of the offer, the proposal with lowest price, provided that it complies with the required conditions;

d) The communication of acceptance together with the offer constitutes for all purposes the executed contract, on the basis of which the respective budgetary record will be made.

**PARAGRAPH 1.** The particularities of the procedure provided herein, as well as the possibility for the entities to make these acquisitions in establishments that correspond to the definition of ¨department store¨ indicated by the Superintendence of Industry and Commerce, shall be determined in the regulations issued by the National Government for such .

**Procurement in large surfaces**. During the validity of the Sanitary Emergency declared by the Ministry of Health and Social Protection, due to the pandemic derived from the Coronavirus COVID-19, when it is about the acquisition of goods related to the emergency, the public entities may acquire them through the instrument of aggregation of demand of large surfaces, in which case the value of the transaction may be up to the maximum amount of the lowest amount of the respective State Entity.

(subsection, added by Art. 6 of Decree 537 of 2020)

**PARAGRAPH 2.** The contracting referred to in this article shall be carried out exclusively in accordance with the rules contemplated herein and in its regulations. In particular, the provisions of Law 816 of 2003 and Article 12 of Law 1150 of 2007 shall not apply.

**ARTICLE 95.** *Application of the Contractual Statute.* Amend subsection 2 of paragraph c) of numeral 4 of Article 2 of Law 1150 of 2007, which shall read as follows:

In those events in which the regime applicable to the contracting of the executing entity is not that of Law 80 of 1993, the execution of such contracts shall in any case be subject to this law, unless the executing entity develops its activity in competition with the private sector or when the execution of the interadministrative contract is directly related to the development of its activity.

**ARTICLE 96.** *Transition Regime.* The state contracting processes in progress, as of the date on which the present law comes into force, shall continue to be subject to regulations in force at the of their initiation.

No supervening disqualifications or incompatibilities shall be generated by the application of the rules contemplated in the present law with respect to the contractual processes that are in progress prior to its effectiveness.

**CHAPTER VIII**

**MEASURES FOR THE EFFICIENCY AND EFFECTIVENESS OF FISCAL CONTROL IN THE FIGHT AGAINST CORRUPTION**

**SECTION ONE**

**MODIFICATIONS TO THE FISCAL RESPONSIBILITY PROCESS**

**SUBSECTION I**

**VERBAL PROCEDURE OF FISCAL RESPONSIBILITY**

**ARTICLE 97. *Verbal procedure for fiscal responsibility.*** The process of fiscal responsibility shall be processed by the verbal procedure created by this law when from the analysis of the opinion of the audit process, a complaint or the application of any of the control systems, it is determined that the elements are present to issue an opening order and indictment. In all other cases, the procedure set forth in Law 610 of 2000 shall continue to apply.

The oral procedure shall be subject to the general rules of fiscal responsibility set forth Law 610 of 2000 and especially by the provisions of this law.

**PARAGRAPH 1.** Transitional Regime. The verbal process created by this law shall be applied in following order:

1. The process will be applicable to the central level of the Office of the Comptroller General of the Republic and to the Office of the Auditor General of the Republic as of the entry into force of this law.

2. As of January 1, 2012, the process will be applicable to the Departmental Managements of the Comptroller General's Office and the Territorial Comptrollers' Offices.

**PARAGRAPH 2.** In order to adequately process the verbal process of fiscal responsibility, the control bodies may redistribute the functions in the existing departments or work groups, in accordance with the organization and operation of the entity.

**PARAGRAPH 3.** In the preliminary inquiries that are being processed at the date of entry into force of this law, the competent fiscal control bodies may adapt their processing to the verbal procedure at the of qualifying their merit, issuing an opening and indictment order if the requirements set forth in this article are met. In fiscal responsibility proceedings in which no indictment has been issued at the time this law enters into force, the competent fiscal control bodies, in accordance with their operational capacity, may adapt their processing to the oral procedure at the time of the issuance of the indictment, in which case this shall be indicated in this administrative act, a summons shall be issued for a discharge hearing and the necessary procedural provisions shall be taken to continue with the oral procedure. In all other cases, both the preliminary inquiries and the fiscal responsibility proceedings will continue until their termination in accordance with Law 610 of 2000.

*(Note: Paragraph declared EXEQUIBLE by the Constitutional Court by means of Decision C-512 of 2013.)*

**ARTICLE 98. *Stages of the verbal procedure of fiscal responsibility.*** The verbal proceeding comprises the following stages:

a) When the existence of financial damage to the State is objectively established and there is evidence that compromises the responsibility of the fiscal manager, the competent official will issue an order opening and charging fiscal responsibility, which must comply with the requirements established in Articles 41 and 48 of Law 610 of 2000 and also contain the individualized formulation of charges to the alleged responsible parties and the reasons for which the guarantor is linked.

The opening and charging order will indicate the place, date and time for the beginning of hearing. On the business day following the issuance of the opening order, the summons will be sent to personally notify this decision. After the notification has been made, the alleged tax officers, their attorneys-in-fact, or the public defender, if any, and the guarantor will be summoned to the hearing;

b) The process to establish fiscal responsibility will be developed in two (2) public hearings, the first one called Discharge Hearing and the second one called Decision Hearing. These hearings may use technological means of communication such as videoconferencing and others that remote virtual interaction between the parties and the investigating officers;

c) The discharge hearing shall be presided over, in order, by the competent managerial or executive officer or, in the absence of such officer, by the officer designated for the substantiation and taking evidence. The decision shall be presided over by the official competent to decide;

d) Once the legal capacity of the attorney-in-fact of the attorney-in-fact of the person allegedly liable for the tax, the hearings will be installed and will be valid, even without the presence of the person allegedly liable for the tax. Hearings held without the presence of the guarantor will also be installed and valid.

*(Note: This paragraph was declared EXEQUIBLE by the Constitutional Court through Ruling C-083 of 2015, with the understanding that the charges of dismissal and filing of the petition or the declaration that the appeal that must be sustained is not valid, shall not apply to the alleged person responsible for the tax, when he/she does not attend the corresponding hearing and only his/her attorney-in-fact, whose legal capacity has been duly recognized in the process, appears).*

The unjustified absence of the alleged person responsible for the tax, his attorney-in-fact or the public defender or the guarantor or the person appointed by him to represent him, to any of the sessions of the hearing, when there are applications pending to be decided, will imply the dismissal and filing of petition. In the event of non-attendance at the session in which an appeal is to be sustained, it shall be declared abandoned.

**ARTICLE 99.** *Hearing of discharges.* The Hearing of Discharges shall begin on the date and at the time determined in the order opening and charging the proceeding. The purpose  the discharge hearing is for the parties to be able to intervene, with all the procedural guarantees, and for the following actions to be carried out:

1. Exercise the right of defense.

2. To present a defense to the charge.

3. Render free version.

4. Accept the charges and propose to compensate the damage or enter into a payment agreement.

5. Notification of precautionary measures.

6. To file an appeal for reconsideration.

7. Providing and requesting evidence.

8. Decree or deny the taking of evidence.

9. Declare, accept or deny impediments.

10. Formulate challenges.

11. Filing and resolving nullities.

12. Bind new alleged responsible party.

13. To decide on the accumulation of proceedings.

14. Decide on any other relevant and pertinent action.

At this hearing, the parties have the right to challenge the evidence included in the indictment and the indictment, the evidence ordered at the hearing on discharges, and the evidence taken inside or outside the hearing, in accordance with the provisions of the following article.

**ARTICLE 100.** *Procedure for the hearing of discharges.* The hearing of discharges shall be processed in accordance with the following rules:

a) The official competent to preside over the hearing shall declare it open with the presence the designated technical support professionals; the alleged taxpayer and his attorney-in-fact, if he has one, or the public defender and the guarantor, or whoever has been appointed to represent him;

(Paragraph a) as amended by Art. 141 of Decree 403 of 2020)

b) If the alleged offender does not attend the hearing, a public defender will be appointed for him/her;

c) If the guarantor in its capacity civilly liable third party, or its attorney-in-fact, after being summoned, does not attend the hearing, the decisions made therein shall be accepted;

d) When there is a duly justified cause, suspensions or postponements of hearings may be ordered for a prudential term, indicating the place, day and time for their resumption or continuation, as the case may be;

e) Only in the course of the hearing, the parties may provide and request evidence. The evidence requested and the evidence decreed ex officio shall be taken or denied in the same proceeding. When evidence is denied, an appeal for reconsideration may be filed, sustained and resolved at the same hearing;

f) The taking of evidence that cannot be carried out in the same hearing shall be decreed for a maximum term of one (1) year, indicating the term, place, date and time for its taking; to that effect, the suspension of the hearing shall be ordered.

**ARTICLE 101.** *Procedure for the decision hearing.* The decision hearing shall be processed in accordance the following rules:

a) The official competent to preside over the decision hearing shall declare it open with the presence of the prosecutorial investigating officer, the designated technical support professionals, the alleged taxpayer or his attorney-in-fact, if he has one, or the public defender and the guarantor or whoever has been appointed to represent him;

(Paragraph a) as amended by Art. 142 of Decree 403 of 2020)

b) The floor will be given to the parties to the proceedings to present their closing arguments on the facts that were the object of the accusation;

c) The official will make a broad presentation of the facts, evidence, defense, closing , will determine whether there is evidence that leads to the certainty of the existence or not of the damage to public assets; of its quantification; of the individualization and performance of the fiscal manager by way of fraud or gross negligence; of the causal relationship between the conduct of the alleged fiscal responsible and the damage caused, and will also determine whether an obligation to pay a liquid sum of money for compensation arises;

d) Once the interventions are finished, the competent official shall declare that the debate has culminated, and shall issue in the same hearing a reasoned decision with or without fiscal responsibility. For such purpose, the hearing may be suspended for a maximum term of twenty (20) days, at the end of which it shall be resumed and the corresponding judgment shall be issued, which shall be notified on the witness stand. The person responsible for the tax, his defense counsel, attorney-in-fact or the third party declared civilly liable, shall state at the hearing if they file an appeal for reconsideration or appeal, as appropriate, in which case they shall file it within the following ten (10) days;

(Paragraph d) as amended by Art. 142 of Decree 403 of 2020)

e) The amount of the judgment with fiscal responsibility will be indexed to the date of the decision. The final decision will be notified on the witness stand at the hearing, regardless  whether or not the alleged responsible party or his attorney attends the .

**ARTICLE 102. *Appeals.*** The following appeals may be filed against the acts issued in the verbal process of fiscal responsibility:

The appeal for reconsideration may be lodged against the rejection of the request to deny the joinder of proceedings.

The appeal for reconsideration, in subsidy to the appeal, may be filed against the decision that resolves the requests for nullity, that which denies the taking evidence and against the order that decrees precautionary measures, in the latter case the appeal will be granted in the devolutive effect.

Appeals for reconsideration or appeal may be filed against the decision with fiscal responsibility issued at the hearing, depending on the amount determined in the opening and charging order.

An appeal for reconsideration may be filed when the amount of the alleged pecuniary damage estimated in the opening and imputation order is equal to or less than the lowest amount for contracting of the entity affected by the facts, and an appeal may be filed when it exceeds the amount indicated.

These appeals shall be filed at the decision hearing and shall be resolved within the following two (2) months, counted from the day after the appeal is filed.

**ARTICLE 103. *Precautionary measures.*** In the order of opening and indictment, the investigation of the assets of the persons who appear as possible perpetrators of the facts under investigation must be ordered, and the requests for information to corresponding authorities must be issued immediately.

If the assets were identified in the audit process, simultaneously with the opening and indictment order, an order will be issued whereby precautionary measures will be decreed on the assets of the persons allegedly responsible for a detriment to the State's patrimony. The precautionary measures shall be executed before the notification of the order decreeing them.

The order decreeing precautionary measures will be notified on the official notice boards once they are duly registered and only an appeal for reconsideration may be lodged against it, which must be filed, supported and resolved orally, at the hearing at which the decision is notified.

The precautionary measures shall be limited to the estimated value of the damage at the time of its decree. When the precautionary measure is for liquid sums of money, it may be increased by up to fifty percent (50%) of said value and one hundred (100%) in the case of other assets, limit that

shall be taken into account for each of the alleged perpetrators, without the official who orders them having to provide a surety.

Disbursement may be requested to the supervisory body at any time during the process or when the act that established the liability is sued before the competent jurisdiction, provided that there is prior constitution of a real, bank or insurance company guarantee, sufficient to cover the payment of the full value of the damage estimated and proven by the person who decreed the measure.

**ARTICLE 104.** *Notification of decisions.* The decisions rendered in the course of the verbal process of fiscal responsibility shall be notified in person, by notice, by stratus or by conclusive conduct, with the following procedures:

a) The alleged taxpayer or its attorney or public defender, as the case may be, will be personally notified of the order opening and charging and the ruling that resolves the appeals or appeals against the ruling with tax liability.

Personal notification will be made in the manner provided in Articles 67 and 68 of Law 1437 of 2011, and if this is not possible, notification by notice established Article 69 of same law will be used;

b) The decisions adopted at a hearing shall be understood to be notified to the parties to the proceeding immediately after the pronouncement is made, whether or not they are present at the hearing.

In the event of failure to appear at the hearing despite having been summoned in a timely manner, the notification shall be deemed to have taken place unless the absence is justified by force majeure or fortuitous event within two (2) days following the date on which the decision was issued, in which case the notification shall be made the day after the justification has been accepted. In the same term, appeals, if any, must be ;

c) When the notification has not been made or is irregular, the legal requirement is understood to be fulfilled, for all purposes, when the procedural subject, considering himself sufficiently informed, manifests himself with respect to the decision, or when he himself uses the appropriate remedies in due time.

The file shall include a record of the notifications made both in and out of court, for which the appropriate technical means may be used;

d) The guarantor shall be bound as a civilly liable third party by sending a communication. When it is appropriate, the dissociation of the guarantor shall be carried out in the same way in which it is bound.

**ARTICLE 105.** *Reference to other regulatory sources.* In those aspects not provided for in this law, the provisions of Law 610 of 2000 shall apply, insofar as they are compatible with the nature of the verbal process established in this law.

## SUBSECTION II

## MODIFICATIONS TO THE REGULATION OF THE ORDINARY PROCEDURE OF FISCAL RESPONSIBILITY

**ARTICLE 106.** ***Notifications.*** In fiscal responsibility proceedings that are processed in their entirety in accordance with the provisions of Law 610 of 2000, only the following orders shall be notified personally: the order opening the fiscal responsibility proceedings, the order charging fiscal responsibility and the first or sole instance ruling; for these orders system of personal notification and by notice provided for administrative proceedings in Law 1437 . of 2011 shall be appliedOther decisions issued within the process will be notified by state.

**ARTICLE 107.** ***Preclusiveness of time limits in the processing of fiscal responsibility proceedings.*** The deadlines legally established for the taking of evidence in the preliminary inquiry and in the investigation in the fiscal responsibility proceedings shall be preclusive and therefore evidence taken outside them shall have no value. The practice evidence in the ordinary process of fiscal responsibility may not exceed two years counted from the time of notification of the decree that decrees it. In the verbal process such term may not one year.

**ARTICLE 108.** ***Peremptoriness for the decreeing of evidence in the discharge stage.*** Upon expiration of the term for the presentation of the discharges after the notification of the order of imputation of fiscal responsibility, the competent public servant of the Comptroller's Office shall decree the necessary evidence within the following month at the latest. It shall be the obligation of the Office of the Comptroller General of the Republic to include the verification of compliance with this rule as part of its audit programs and to derive the consequences for non-compliance.

**ARTICLE 109.** ***Timeliness and requirements of the request for annulment.*** The request for nullity may be filed before the final decision is rendered, which shall be resolved within five (5) days following the date of its filing.

An appeal may be filed against the order deciding on the request for annulment, which shall be filed before the superior of the official who issued the decision.

## SUBSECTION III

## PROVISIONS COMMON TO THE ORDINARY PROCEDURE AND TO THE ORAL PROCEDURE OF FISCAL LIABILITY

**ARTICLE 110.** ***Instances.*** The fiscal responsibility process shall be of sole instance when the amount of the alleged pecuniary damage estimated in the opening order and imputation or imputation of fiscal responsibility, as the  be, is equal to or less than the lowest amount for contracting of the respective entity affected by the facts, and it shall be of double instance when it exceeds the amount indicated.

(Amended by Art. 143 of Decree 403 of 2020.

**ARTICLE 111.** *Proceedings for the cessation of the fiscal action.* In the processing of fiscal responsibility proceedings, the early termination of the action shall only proceed when the payment of the value of the detriment to property investigated or for which an accusation has been made or when the reinstatement of the assets subject to the loss investigated or imputed has been made. The foregoing without prejudice to the application of the principle of opportunity.

**ARTICLE 112.** *Summons and notifications.* When a decision must be notified personally, or hearing must be summoned, the parties, the guarantor, witnesses, experts and other persons who must intervene in the proceedings shall be summoned in due time.

The alleged responsible party and his attorney-in-fact if he has one, or the public defender, and the guarantor civilly liable third party, shall have the procedural obligation indicate the address, e-mail or any other suitable means of communication, in which the summons will be received.
They shall also have the duty report any change that may occur during the course of the process. When a change of address is made, the responsible official must immediately make the respective record, under penalty of sanction in accordance with the provisions of the Unified Disciplinary Code. The omission of this duty will imply that the communications sent to the last known address will be legally valid.

The summons must indicate the type of proceeding for which it is required, the place, date and time where it will be carried out and the number of the proceeding to which it corresponds.

**ARTICLE 113.** *Grounds for impediment and recusal.* The only grounds for impediment and recusal for public servants involved in the processing of preliminary inquiries and fiscal responsibility proceedings shall be those provided for judges and magistrates in Law 1437 of 2011.

**TRANSITIONAL PARAGRAPH:** While Law 1437 of 2011 enters into force, the grounds for impediment and recusal shall be those provided for judges or magistrates in the Contentious-Administrative Code.

**ARTICLE 114.** Investigation powers of the fiscal control agencies. The fiscal control agencies in the development of their functions shall have the following powers:

a) Conduct such investigations as they deem appropriate to establish the occurrence of events that generate damage to the State's assets arising from the impairment, reduction, damage, detriment, loss or deterioration of public assets or resources, caused by uneconomical, ineffective, inefficient and inopportune fiscal management, and which in general terms is not applied to the fulfillment of the State's essential purposes and goals;

b) To summon or request public servants, contractors, auditors and in general those persons who have participated, determined, assisted, collaborated or have known the facts that are the object of the investigation;

c) Require contractors, interveners and in general persons who have participated, determined, assisted, collaborated or have known the facts under , to submit documents recording their operations when they are obliged to keep registered books;

d) To order contractors, auditors and suppliers to exhibit their books, vouchers and accounting documents;

e) In general, to carry out all the necessary diligences that lead to the determination of conducts that generate damage to the public patrimony.

**PARAGRAPH 1.** For the exercise of their functions, the comptrollers' offices are also empowered to order merchants to exhibit books, vouchers and accounting documents, or to comply with information requirements, with a view to conducting market studies that serve as evidence  the determination of cost overruns in the sale of goods and services to public or private entities that administer public resources.

**PARAGRAPH 2.** Failure to comply with these requirements generates the penalties provided for in Article 101 of Law 42 of 1993. With respect to individuals, the penalty shall be assessed between five (5) and ten (10) times the amount of the fine.
(10) legal monthly minimum wages in force.

(Paragraph 2 Repealed by Art. 166 of Decree 403 of 2020)

**ARTICLE 115. *Special powers.*** The Surveillance and Fiscal Control Agencies shall create a special immediate reaction group with the judicial police powers provided for in Law 610 of 2000, which shall act within any missionary process of these Agencies and with due diligence and care in the conservation and chain of custody of the evidence collected in application of the judicial police functions in harmony with the provisions of the Code of Criminal Procedure insofar as they are compatible with the nature of the same. These powers must observe the constitutional guarantees provided for in Article 29 of the Constitution.

**ARTICLE 116. *Use of technological means.*** The evidence and proceedings shall be collected and preserved in technical media. Likewise, the evacuation of hearings, proceedings in general and taking of evidence may be carried out in places other than the headquarters of the competent official to carry out the process, through means such as the hearing or virtual communication, provided that another public servant materially controls its development in the place of its evacuation. This shall be expressly recorded in the minutes of the proceedings.

The decisions may be notified through a fax number or to the e-mail address of the investigated person or his defense counsel, if previously and in writing, they have accepted to be notified in this manner. The notification shall be deemed to have been served on the appearing in the fax report or in the e-mail sent. The respective record will be attached to the file.

**ARTICLE 117. *Technical Report.*** The oversight and fiscal control bodies may commission their officers render technical reports related to their profession or specialization. Likewise, they may require public or private entities to provide technical or specialized reports related to their nature and purpose, free of charge. This evidence shall be intended to demonstrate or illustrate facts of interest to the process. The report shall be made available to the parties to the proceeding so that they may exercise their right of defense and contradiction, for the term established by the competent official, according to the complexity of the same.

Failure to comply with this duty on the part of public or private entities to submit reports shall give rise to the imposition of the penalties indicated in Article 101 of Law 42 of 1993. In the case of private parties, the penalty shall be assessed between five (5) and twenty-five (25) legal monthly minimum wages in force.

**ARTICLE 118. *Determination guilt in fiscal liability proceedings.*** The degree of culpability to establish the existence of fiscal liability shall be fraud or gross negligence.

It shall be presumed that the fiscal manager has acted with malice when for the same facts he/she has criminally convicted or disciplinarily sanctioned for the commission of a crime or a disciplinary offense imputed to that title.

The fiscal manager shall be presumed to have acted with gross negligence in the following events:

a) When the bidding documents or terms of reference have been prepared in an incomplete, ambiguous or confusing manner, leading to interpretations or technical decisions affecting the financial integrity of the contracting entity;

b) When there has been an unjustified omission of the duty to carry out price comparisons, either through studies or consultations of market conditions or comparison of the offers received, and offers that exceed market prices have been accepted without objective justification;

c) When there has been a failure to comply with the obligations inherent to supervision contracts or supervision functions, such as the performance of periodic reviews of works, goods or services, such that the correct execution of the contractual object or compliance with the conditions of quality and timeliness offered by the contractors is not established;

d) When the obligation to insure the entity's assets or to enforce the policies or guarantees against the occurrence of losses or breach of contracts has not been complied with;

e) When the recognition of salaries, benefits and other emoluments and labor assets has been made in violation of the rules governing the exercise of the public function or labor relations.

***(Note:*** *Article declared EXEQUIBLE by the Constitutional Court through Ruling C-512 of 2013).*

**ARTICLE 119.** *Solidarity.* In the processes of fiscal responsibility, popular actions and actions for repetition in which the existence of patrimonial damage to the State arising from cost overruns in contracting or other irregular acts is demonstrated, the authorizing officer of the respective contracting agency or entity shall be jointly and severally liable with the contractor, and with the other persons involved in the act, until the recovery of the patrimonial detriment.

*(Note: Article declared EXEQUIBLE by the Constitutional Court by means of Decision C-338 of 2014.)*

**ARTICLE 120.** *Policies.* The insurance policies by which the guarantor is linked to the fiscal responsibility process as a civilly liable third party, shall expire within the terms set forth Article 9 of Law 610 of 2000.

SECOND SECTION

MEASURES TO STRENGTHEN THE EXERCISE OF THE FISCAL CONTROL FUNCTION

**ARTICLE 121.** *Strategic alliances.* The Territorial Comptrollers' Offices shall enter into strategic alliances with academia and other social study and research organizations for the formation of specialized teams of citizen observers, for the purpose of exercising preventive social fiscal control  the formulation and budgeting of public policies and the resources of the treasury committed in their execution.

**ARTICLE 122.** *Exceptional control.* When through the Permanent Constitutional Commissions of Congress the Office of the Comptroller General of the Republic is requested to exercise exceptional control of the investigations that are being carried out by the fiscal control entity of the corresponding territorial level, whoever so requests shall:

1. Submit a previous and detailed report in which the reasons for the request are supported.

2. The request must be approved by the absolute majority of the Constitutional Commission to which it belongs.

(Repealed by Art. 166 of Decree 403 of 2020)

**PARAGRAPH .** If the request is denied, it may not be presented again until one year has passed.

**ARTICLE 123.** *Articulation with the exercise of political control.* The final audit reports produced by the comptrollers' offices shall be forwarded to the popularly elected Corporations that exercise political control over the supervised entities. In the summons made by said entities to public servants, the following shall be included

The respective comptroller should be invited to present the results of the audit  the public for discussions on issues that have been the subject of oversight in the audit process.

**ARTICLE 124.** *Regulation of the audit process.* The regulation of the methodology of the audit process by the Office of the Comptroller General of the Republic and the other comptrollers' offices shall take into account the instrumental condition of regularity audits with respect to performance audits, with a view to guaranteeing an integral exercise of the audit function.

**ARTICLE 125.** *Effect of the control of legality.* When in the exercise of the control of legality the Comptroller's Office notices a breach of the principle of legality, it shall immediately promote the pertinent constitutional and legal actions and shall request from the competent administrative and judicial authorities the necessary precautionary measures to avoid the consummation of damage to public assets, who shall give priority attention to these requests.

(Amended by Art. 153 of Decree 403 of 2020)

**ARTICLE 126.** *Information systems.* The Office of the Comptroller General of the Republic, the territorial Comptrollers and the Office of the Auditor General of the Republic, through the National Fiscal Control System - Sinacof, shall draw up an inventory of the information systems developed or contracted up to the date of the entry into force of law  the territorial Comptrollers for the exercise of their auditing function and shall propose a unified technological platform that seeks the integration of the existing systems and allows the incorporation of new developments previously agreed upon and agreed upon by the participants of said system.

**ARTICLE 127.** *Verification of the benefits of fiscal control.* The Office of the Auditor General of the Republic shall verify the measurement made by the Comptroller's Offices of the benefits generated by the exercise of its function, for which purpose it shall take into account that they are evidenced actions duly verified, that they correspond to the follow-up of actions established in improvement plans or that they are the result of observations, findings, pronouncements or warnings made by the Comptroller's Office, that they are quantifiable or qualifiable and that there is a direct relationship between the improvement action and the benefit.

**ARTICLE 128.** *Institutional strengthening of the Office of the Comptroller General of the Republic.* In order to strengthen actions against corruption, the following shall be created within the structure of the Office of the Comptroller General of the Republic: the Special Anti-Corruption Investigations Unit, the National and International Cooperation Unit for the Prevention, Investigation and Seizure of Assets, the Technical Support Unit for Congress and the Technological and Information Technology Security and Assurance Unit, which shall be attached to the Office of the Comptroller General and shall be directed by a Head of Unit at the same level as the heads of the advisory offices.

In the Special Anti-Corruption Investigations Unit, eleven (11) intersectoral delegated Comptroller positions are created, who will perform their functions in to carry out special audits or investigations related to events of national impact that require the immediate intervention of the entity due to the imminent risk of loss or improper involvement of public assets or to establish the occurrence of events constituting fiscal responsibility and to collect and secure evidence for the advancement of the corresponding processes.

The National and International Cooperation Unit for the Prevention, Investigation and Seizure of Assets will be made up of public servants from the staff of the entity, assigned on mission to it, and will have as its main function the promotion and implementation of treaties, agreements or conventions with international or national entities to obtain the exchange of information, The main function will be to promote and implement treaties, agreements or conventions with international or national entities to obtain the exchange of information, evidence and knowledge expert or specialized personnel to detect goods, accounts, investments and other assets of natural or legal persons investigated or responsible for causing damage to public assets to request the decree of precautionary measures in the process of fiscal responsibility and coercive collection processes or in the actions of repetition.

The Technical Support Unit for Congress will provide technical assistance to the plenary sessions, constitutional and legal commissions, parliamentary benches and senators and representatives to the House for the exercise of their legislative and political control functions, by providing information that is not of a reserved nature, accompanying the analysis, evaluation and preparation of projects and reports, especially in relation to their impact and fiscal and budgetary effects, as well as channeling complaints or denunciations of parliamentary origin.

The Technology and Information Technology Security and Assurance Unit will provide professional and technical support for the formulation and execution of policies and programs for the security of public servants, assets and information of the entity; it will keep the inventory and ensure the proper use and maintenance of security equipment acquired or managed by the Comptroller's Office; it will promote the execution of agreements with national and international entities or organizations to ensure the protection of persons, the custody assets and the confidentiality and integrity of data handled by the institution.

For the above purposes, two positions of director grade 03, five (5) positions of university professional grade 02 and three (3) assistants grade 04, of free appointment and removal, are created within the global plant of the Office of the Comptroller General of the Republic.

*(Note: The underlined text was declared INEXEQUIBLE by the Constitutional Court by Ruling C-824 of 2013).*

For the oversight of the Nation's public resources administered in a deconcentrated manner at the territorial level or transferred to territorial entities and over which the Office of the Comptroller General of the Republic exercises prevalent or concurrent control, collegiate departmental managements shall be organized in each department, comprised of a departmental manager and no less than two provincial comptrollers. With the same structure, a collegiate district management shall be organized for the Capital District.

The number of provincial comptrollers at the national level will be 75 and their distribution among the departmental and district managements will be made by the Comptroller General of the Republic based on the number of municipalities, the amount of resources audited and the level of risk in the supervised entities.

The Departmental and District Collegiate Managements will be competent to:

a) To prepare the territorial component of the general audit plan in accordance with the guidelines established by the Comptroller General of the Republic and in coordination with the delegated Comptroller's Offices;

b) Configure and transfer tax findings;

c) Resolve disputes arising from the exercise of the audit process;

d) Determine the appropriateness of the initiation of fiscal responsibility proceedings and the decree precautionary measures;

e) Any others established by the Comptroller General of the Republic by organic resolution.

**PARAGRAPH 1.** For the purposes of this article, public servants of the Office of the Comptroller General of the Republic who have the capacity or exercise the function of delegated comptrollers, provincial comptrollers, directors, supervisors, coordinators, advisors, professionals or technologists may be part of the audit groups or teams.

**PARAGRAPH 2.** The expenses required by the application of the provisions of this article shall be met with the resources of the budget of the respective fiscal year and for the year 2011 do not imply additional expenditure. The Office of the Comptroller General of the Republic shall make the necessary transfers.

**THIRD SECTION**

**SPECIAL MEASURES TO STRENGTHEN THE EXERCISE OF THE TERRITORIAL FISCAL CONTROL FUNCTION**

**ARTICLE 129.** *Strategic planning in territorial comptrollers' offices.* Each departmental, district or municipal comptroller's office shall prepare its institutional strategic plan for the term of office of the respective comptroller, which shall be adopted no later three months after taking office.

The strategic planning of these entities will be harmonized with the activities required for the implementation of the standard internal control model and the quality management system in public management and will take into account the following guiding criteria for the definition of projects related to their mission activities:

a) Recognition of the citizenry as the main recipient of fiscal management and as the starting and end point of fiscal control;

b) Mission component of the strategic plan based on the formulation and execution of the Development of the respective territorial entity;

c) Permanent measurement of the results and impacts produced by the exercise  the fiscal control function;

d) Emphasis on the preventive scope of the audit function and its concretization in the strengthening of internal control systems and in the formulation and execution of improvement plans by the supervised entities;

e) Development and application of methodologies that allow the immediate exercise of subsequent control and the responsible use of the warning function;

f) Complementing the exercise of the auditing function with social control actions citizen interest groups and with direct support to macro and micro control activities through strategic alliances.

**ARTICLE 130.** *Methodology for the audit process at the territorial level.* The Office of the Comptroller General of the Republic, with the participation of representatives of the territorial Comptrollers' Offices the National Fiscal Control System - Sinacof, shall provide Departmental, district and municipal Comptrollers' Offices with a version adapted to the needs and requirements of the exercise of the fiscal control function at the territorial level of the methodology for the audit process, shall be responsible for updating it and shall support these entities in the process of training in the knowledge and handling of this tool. The Office of the Auditor General of the Republic will verify compliance with this legal mandate.

CHAPTER IX

REPRESENTATIVE OFFICES

**ARTICLE 131.** *Representative offices.* The provisions of this law shall also apply to representative offices or to any person managing interests of legal persons domiciled outside the national territory.

**ARTICLE 132.** *Expiration and prescription of disciplinary action.* Article 30 of Law 734 of 2002 shall read as follows:

"The disciplinary action shall expire if after five (5) years from the occurrence of the misconduct, no disciplinary investigation has been opened. This term shall begin to run instantaneous misconduct from the day of its consummation, for permanent or continuous misconduct from the performance of the last act or deed, and for omissive misconduct when the duty to act has ceased.

The statute of limitations for disciplinary action shall be five (5) years from the date of the order initiating the disciplinary action. When there are several conducts judged in the same process, the statute of limitations is fulfilled independently for each one of them.

**PARAGRAPH .** The prescriptive terms provided herein are subject to the provisions of international treaties ratified by Colombia".

(Repealed by art. 265 of Law 1952 of 2019).

**ARTICLE 133.** *Article 106 of Law 1438 of 2011 shall read as follows:*

**"ARTICLE 106. *Prohibition of perks or gifts to workers in the health sector.*** It is expressly prohibited the promotion or granting of any type of gifts or handouts to workers of the entities of the General Social Security System of Health and independent workers, whether in cash or in kind, by the Health Promoting Entities, Health Providing Institutions, pharmaceutical companies producing, distributing, marketing or others, of medicines, supplies, devices and equipment, which is not linked to the fulfillment of a contractual or labor relationship formally established between the institution and the worker of the entities of the General Social Security System of Health.

**PARAGRAPH 1.** Companies or institutions that fail to comply with the provisions of this article shall be sanctioned with fines ranging from 100 to 500 SMMLV, which fine shall be doubled in case of recidivism. These sanctions shall be taken into account at the time of evaluating contractual processes with the State and shall be in charge of the Inspection, Surveillance and Control entities with respect to subjects supervised by each one of them.

**PARAGRAPH 2.** The workers of the entities of the General System of Social Security in Health who receive this type of benefits and/or gifts shall be investigated by the competent authorities. The foregoing, without prejudice to the disciplinary rules in force".

***(Note:** Article declared EXEQUIBLE by the Constitutional Court by means of Decision C-084 of 2013.)*

**ARTICLE 134.** *Article 411 of the Penal Code shall be amended with a paragraph which shall read as follows:*

**PARAGRAPH .** The members of public corporations shall not incur in this crime when they intervene before a public servant or state entity in favor of the community or region.

CHAPTER X

VALIDITY  VIGENCIA

**ARTICLE 135. *Validity.*** law shall be in force  of its promulgation and shall repeal any regulations that may be contrary to it.

THE PRESIDENT OF THE HONORABLE SENATE OF THE REPUBLIC,

ARMANDO BENEDETTI VILLANEDA.

THE SECRETARY GENERAL OF THE HONORABLE SENATE OF THE REPUBLIC,

EMILIO RAMÓN OTERO DAJUD.

THE PRESIDENT OF THE HONORABLE HOUSE OF REPRESENTATIVES,

CARLOS ALBERTO ZULUAGA DÍAZ.

THE SECRETARY GENERAL OF THE HONORABLE HOUSE OF REPRESENTATIVES,

JESÚS ALFONSO RODRÍGUEZ CAMARGO.

REPUBLIC OF COLOMBIA - NATIONAL GOVERNMENT

PUBLISH AND COMPLY.

Given in Bogotá, D. C., on the 12th day of the month of July, 2011.

JUAN MANUEL SANTOS CALDERÓN

THE MINISTER OF THE INTERIOR AND JUSTICE,

GERMÁN VARGAS LLERAS.

THE MINISTER OF FINANCE AND PUBLIC CREDIT,

JUAN CARLOS ECHEVERRY GARZÓN.

THE MINISTER OF SOCIAL PROTECTION,

MAURICIO SANTA MARÍA SALAMANCA.

THE DIRECTOR OF THE NATIONAL PLANNING DEPARTMENT,

HERNANDO JOSÉ GÓMEZ RESTREPO.

**THE DIRECTOR OF THE ADMINISTRATIVE DEPARTMENT OF THE CIVIL SERVICE,**

**ELIZABETH RODRIGUEZ TAYLOR**

**NOTE: Published in the Official Gazette 48128 of July 12, 2011.**

**Back to Back**



Gobierno de
**Colombia**

- Vice-Presidency
- MinJusticia
- MinDefensa
- MinTrabajo
- MinInterior
- MinCiencias

- MinRelations
- MinHacienda
- MinHealth
- MinEnergía
- MinComercio
- MinDeporte

- MinTIC
- MinEducation
- MinCultura
- MinAgriculture
- MinAmbiente

- MinTransporte
- MinVivienda
- Crystal Urn

 

PUBLIC FUNCTION

Carrera 6 # 12-62,
Bogotá D.C.

**Zip Code:** 111711
**PBX:** (+ 57 ) 601 7395656
**FAX:** (+ 57) 601 7395657

www.funcionpublica.gov.co
Contact e-mail: eva@funcionpublica.gov.co

CONTACT

Customer Service Group: Monday through Friday, 7:30 a.m. to 6:00
p.m.

Receipt of correspondence:
Monday to Friday, 8:00 a.m. to 4:00 p.m. Continuous workday

National toll-free hotline: 018000917770

CITIZEN SERVICES

Judicial notifications

Notification of administrative acts Notifications to

third parties

Complaints for acts of corruption Citizen

participation

Frequently asked questions

Formulate your PQRS request

Site map

Institutional mail login Site

statistics Login

Privacy Policy        |    Terms and conditions of use