IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERIMETRAL ORIENTAL DE BOGOTÁ,
S.A.S.,

                    *Petitioner*,

v.

AGENCIA NACIONAL DE
INFRAESTRUCTURA
and
THE REPUBLIC OF COLOMBIA

                    *Respondents*.

Civil Action No. _____

**Declaration of Jason W. Myatt in Support of Petition to Confirm Arbitral Award**

# EXHIBIT 18

# LEY 489 DE 1998

(diciembre 29)

por la cual se dictan normas sobre la organización y funcionamiento de las entidades del orden nacional, se expiden las disposiciones, principios y reglas generales para el ejercicio de las atribuciones previstas en los numerales 15 y 16 del artículo 189 de la Constitución Política y se dictan otras disposiciones.

ANTECEDENTE LEGISLATIVO:

PROYECTO DE LEY PUBLICADO GACETA 349/97

**Nota 1: Derogada parcialmente por el Decreto 1499 de 2017.**

**Nota 2: Modificada por el Decreto 19 de 2012, por la Ley 1474 de 2011 y por el Decreto 4415 de 2011.**

**Nota 3: Desarrollada por el Decreto 107 de 2023, por el Decreto 1136 de 2022, por el Decreto 648 de 2017, por el Decreto 1652 de 2015, por el Decreto 1510 de 2014, por el Decreto 1446 de 2014, por el Decreto 903 de 2014, por el Decreto 858 de 2014, por el Decreto 2766 de 2013, por el Decreto 2613 de 2013, por el Decreto 1987 de 2013, por el Decreto 1985 de 2013, por el Decreto 199 de 2013, por el Decreto 32 de 2013, por el Decreto 2482 de 2012, por el Decreto 750 de 2012, por el Decreto 4620 de 2010, por la Resolución 2734 de 2010, M. de Ambiente, por la Resolución 2733 de 2010, M. de Ambiente por el Decreto 3269 de 2009, por el Decreto 600 de 2008, por la Resolución 473 de 2008, M. de la Protección Social, por el Decreto 3622 de 2005 y por el Decreto 797 de 1999.**

**Nota 4: Ver Decreto 1081 de 2015. Ver Decreto 1078 de 2015. Ver Ley 1753 de 2015. Ver Decreto 457 de 2014. Ver Resolución 2143 de 2010, M. de Defensa, Resolución 2727 de 2009, M. de Cultura, Ley 1341 de 2009, artículo 18, Decreto 1972 de 2002, Decreto 955 de 2002, Decreto 573 de 2002, Decreto 29 de 2002 y Decreto 23 de 2002.**

**Nota 5: Reglamentada parcialmente por el Decreto 180 de 2008, por el Decreto 3622 de 2005, el Decreto 2740 de 2001, el Decreto 1714 de 2000, el Decreto 910 de 2000, el Decreto 1714 de 2000 y por el Decreto 529 de 1999.**

**Nota 6: Citada en la Revista de la Universidad de Medellín. Opinión Jurídica. Vol. 11 No. 21.** Particulares que ejercen funciones administrativas**: el caso de los tribunales de ética profesional. David Suárez Tamayo. María Fernanda Posada Puerta. Paulina Mejía Londoño.**

**Nota 7: Citada en la Revista de la Universidad de Medellín. Opinión Jurídica. Vol. 11. No. 22.** La investigación en derecho en la Región Andina de Colombia 2008-2011**. Jorge Eduardo Vásquez Santamaría.**

**Nota 8: Citada en la Revista de la Universidad de Medellín. Opinión Jurídica. Vol. 12. No. 23.** Las medidas preventivas ambientales, una aproximación desde el derecho administrativo**. Iván Andrés Páez Páez. Gloria Amparo Rodríguez.**

**Nota 9: Citada en la Revista de la Universidad de Medellín. Opinión Jurídica. Vol. 13. No. 25.** Procedimientos administrativos sancionatorios. Inventario normativo y de las sentencias de la Corte Constitucional de Colombia**. David Suárez Tamayo, Paulina Mejía Londoño, Laura Restrepo Gómez.**

**Nota 10: Citada en la Revista Derecho Verde. Uniagraria. Año 1. No. 1.** La descentralización del desarrollo local**: el problema entre el ser y el estar. El caso de la construcción y ejecución de los planes de desarrollo local en Bogotá. Ivonne Alexandra Bohórquez Alfonso.**

**Nota 11: Citada en la Revista Criterio Jurídico de la Universidad Javeriana de Cali. Vol. 12, No. 2.** El silencio administrativo positivo temporal en materia ambiental a la luz del Decreto Ley 019 de 2012**. Andrés Gómez Rey, Gloria Amparo Rodríguez.**

**Nota 12: Citada en la Revista Jurídica de la Universidad de Caldas. Vol. 10. No. 1.** LA INCIDENCIA DE LA EDUCACIÓN JURÍDICA AMBIENTAL Y LA PARTICIPACIÓN, EN LA TRANSFORMACIÓN DEL CONFLICTO AMBIENTAL**. Claudia Alexandra Munévar Quintero.**

**Nota 13: Citada en la Revista de la Universidad del Norte. División de Ciencias Jurídicas. No. 44.** La insubsistencia administrativa discrecional en Colombia: una mirada desde el principio de proporcionalidad**. Hernán Darío Vergara Mesa.**

**Nota 14: Citada en la Revista de la Universidad del Norte. División de Ciencias Jurídicas. No. 44.** Características y alternativas de la organización político-administrativa de Bogotá**. Naidú Duque Cante.**

**Conc.** Resolución 5921 de 2019**, M. Defensa.** Resolución 197 de 2013**.** Resolución 172 de 2013**.** Resolución 149 de 2013**.** Resolución 148 de 2013**.** Resolución 147

de 2013. **Resolución 127 de 2013**. **Resolución 126 de 2013**. **Resolución 123 de 2013**. **Resolución 115 de 2013**. **Resolución 113 de 2013**. **Resolución 112 de 2013**. **Resolución 111 de 2013**. **Resolución 110 de 2013**. **Resolución 108 de 2013**. **Resolución 107 de 2013**. **Resolución 106 de 2013**. **Resolución 105 de 2013**. **Resolución 104 de 2013**. **Resolución 103 de 2013**. **Resolución 96 de 2013**. **Resolución 95 de 2013**. **Resolución 94 de 2013**. **Resolución 93 de 2013**. **Resolución 92 de 2013**. **Resolución 91 de 2013**. **Resolución 90 de 2013**. **Resolución 89 de 2013**. **Resolución 88 de 2013**. **Resolución 87 de 2013**. **Resolución 75 de 2013**. **Resolución 74 de 2013**. **Resolución 73 de 2013**. **Resolución 72 de 2013**. **Resolución 71 de 2013**. **Resolución 70 de 2013**. **Resolución 69 de 2013**. **Resolución 61 de 2013**. **Resolución 55 de 2013**. **Resolución 53 de 2013**. **Resolución 46 de 2013**. **Resolución 45 de 2013**. **Resolución 44 de 2013**. **Resolución 43 de 2013**. **Resolución 42 de 2013**, **M. de Vivienda, Ciudad y Territorio.**

El Congreso de Colombia

DECRETA:

CAPITULO I

Disposiciones generales

Artículo 1°. Objeto. La presente ley regula el ejercicio de la función administrativa, determina la estructura y define los principios y reglas básicas de la organización y funcionamiento de la Administración Pública.

**Nota, artículo 1º: Ver Decreto 2482 de 2012.**

Artículo 2°. Ambito de aplicación. La presente ley se aplica a todos los organismos y entidades de la Rama Ejecutiva del Poder Público y de la Administración Pública y a los servidores públicos que por mandato constitucional o legal tengan a su cargo la titularidad y el ejercicio de funciones administrativas, prestación de servicios públicos o provisión de obras y bienes públicos y, en lo pertinente, a los particulares cuando cumplan funciones administrativas.

Parágrafo. Las reglas relativas a los principios propios de la función administrativa, sobre delegación y desconcentración, características y régimen de las entidades descentralizadas, racionalización administrativa, desarrollo administrativo, participación y control interno de la Administración Pública se aplicarán, en lo pertinente, a las entidades territoriales, sin perjuicio de la autonomía que les es propia de acuerdo con la Constitución Política.

CAPITULO II

Principios y finalidades de la función administrativa

Artículo 3°. Principios de la función administrativa. La función administrativa se desarrollará conforme a los principios constitucionales, en particular los atinentes a la buena fe, igualdad, moralidad, celeridad, economía, imparcialidad, eficacia, eficiencia, participación, publicidad, responsabilidad y transparencia. Los principios anteriores se aplicarán, igualmente, en la prestación de servicios públicos, en cuanto fueren compatibles con su naturaleza y régimen.

Parágrafo. Los principios de la función administrativa deberán ser tenidos en cuenta por los órganos de control y el Departamento Nacional de Planeación, de conformidad con lo dispuesto en el artículo 343 de la Constitución Política, al evaluar el desempeño de las entidades y organismos administrativos y al juzgar la legalidad de la conducta de los servidores públicos en el cumplimiento de sus deberes constitucionales, legales o reglamentarios, garantizando en todo momento que prime el interés colectivo sobre el particular.

**Nota, artículo 3º: Artículo desarrollado por el Decreto 1273 de 2020, por el Decreto 270 de 2017 y por la Resolución 887 de 2018, M. Ambiente y Desarrollo Sostenible.**

Artículo 4°. Finalidades de la función administrativa. La función administrativa del Estado busca la satisfacción de las necesidades

generales de todos los habitantes, de conformidad con los principios, finalidades y cometidos consagrados en la Constitución Política.

Los organismos, entidades y personas encargadas, de manera permanente o transitoria, del ejercicio de funciones administrativas deben ejercerlas consultando el interés general.

**Conc.** Decreto 728 de 2017.

**Nota, artículo 4º:** Artículo desarrollado por el Decreto 1273 de 2020, por el Decreto 270 de 2017 y por la Resolución 887 de 2018, M. Ambiente y Desarrollo Sostenible.

CAPITULO III

Modalidades de la acción administrativa

Artículo 5°. Competencia administrativa. Los organismos y entidades administrativos deberán ejercer con exclusividad las potestades y atribuciones inherentes, de manera directa e inmediata, respecto de los asuntos que les hayan sido asignados expresamente por la ley, la ordenanza, el acuerdo o el reglamento ejecutivo.

Se entiende que los principios de la función administrativa y los principios de coordinación, concurrencia y subsidiariedad consagrados por el artículo 288 de la Constitución Política deben ser observados en el señalamiento de las competencias propias de los organismos y entidades de la Rama Ejecutiva y en el ejercicio de las funciones de los servidores públicos.

**Nota, artículo 5º:** Artículo desarrollado por la Resolución 887 de 2018, M. Ambiente y Desarrollo Sostenible,

Artículo 6°. Principio de coordinación. En virtud del principio de coordinación y colaboración, las autoridades administrativas deben

garantizar la armonía en el ejercicio de sus respectivas funciones con el fin de lograr los fines y cometidos estatales.

En consecuencia, prestarán su colaboración a las demás entidades para facilitar el ejercicio de sus funciones y se abstendrán de impedir o estorbar su cumplimiento por los órganos, dependencias, organismos y entidades titulares.

Parágrafo. A través de los comités sectoriales de desarrollo administrativo de que trata el artículo 19 de esta ley y en cumplimiento del inciso 2° del artículo 209 de la C.P. se procurará de manera prioritaria dar desarrollo a este principio de la coordinación entre las autoridades administrativas y entre los organismos del respectivo sector.

**Conc. Decreto 870 de 2014.**

**Nota 1, artículo 6º: Artículo desarrollado por la Resolución 1726 de 2019, por la Resolución 4545 de 2015, M. de Salud y Protección Social y por el Decreto 1987 de 2013.**

**Nota 2, artículo 6º: Ver Circular Conjunta 100-000006 de 2019, S.S. Ver Resolución 6193 de 2010.**

Artículo 7°. Descentralización administrativa. En el ejercicio de las facultades *que se le otorgan por medio* de esta ley y en general en el desarrollo y reglamentación de la misma el gobierno será especialmente cuidadoso en el cumplimiento de los principios constitucionales y legales sobre la descentralización administrativa y la autonomía de las entidades territoriales. En consecuencia procurará desarrollar disposiciones y normas que profundicen en la distribución de competencias entre los diversos niveles de la administración siguiendo en lo posible el criterio de que la prestación de los servicios corresponda a los municipios, el control sobre dicha prestación a los departamentos y la definición de planes, políticas y estrategias a la Nación. Igualmente al interior de las entidades nacionales descentralizadas el gobierno velará porque se establezcan disposiciones de delegación y desconcentración de funciones, de modo tal que sin perjuicio del necesario control administrativo los funcionarios regionales de tales entidades posean y ejerzan efectivas facultades de ejecución presupuestal, ordenación del gasto, contratación y nominación, así como de formulación de los anteproyectos de presupuesto anual de la

respectiva entidad para la región sobre la cual ejercen su función. **(Nota: Las expresiones tachadas en este inciso fueron declaradas inexequibles por la Corte Constitucional en la Sentencia C-702 de 1999, la cual declaró exequible el resto del mismo, Providencia confirmada en la Sentencia C-990 de 1999.).**

Artículo 8°. Desconcentración administrativa. La desconcentración es la radicación de competencias y funciones en dependencias ubicadas fuera de la sede principal del organismo o entidad administrativa, sin perjuicio de las potestades y deberes de orientación e instrucción que corresponde ejercer a los jefes superiores de la Administración, la cual no implica delegación y podrá hacerse por territorio y por funciones.

Parágrafo. En el acto correspondiente se determinarán los medios necesarios para su adecuado cumplimiento.

Los actos cumplidos por las autoridades en virtud de desconcentración administrativa sólo serán susceptibles del recurso de reposición en los términos establecidos en las normas pertinentes.

Artículo 9°. Delegación. Las autoridades administrativas, en virtud de lo dispuesto en la Constitución Política y de conformidad con la presente ley, podrán mediante acto de delegación, transferir el ejercicio de funciones a sus colaboradores o a otras autoridades, con funciones afines o complementarias.

Sin perjuicio de las delegaciones previstas en leyes orgánicas, en todo caso, los ministros, directores de departamento administrativo, superintendentes, representantes legales de organismos y entidades que posean una estructura independiente y autonomía administrativa podrán delegar la atención y decisión de los asuntos a ellos confiados por la ley y los actos orgánicos respectivos, **en los empleados públicos de los niveles directivo y asesor vinculados al organismo correspondiente**, con el propósito de dar desarrollo a los principios de la función administrativa enunciados en el artículo 209 de la Constitución Política y en la presente ley. **(Nota: Las expresiones señaladas con negrilla fueron declaradas exequibles por la Corte Constitucional en la Sentencia C-561 de 1999.).**

Parágrafo. Los representantes legales de las entidades descentralizadas podrán delegar funciones a ellas asignadas, de conformidad con los

criterios establecidos en la presente ley, con los requisitos y en las condiciones que prevean los estatutos respectivos.

**Nota 1, artículo 9°: Artículo desarrollado por el Decreto 750 de 2012.**

**Nota 2, artículo 9°: Ver Resolución 474 de 2018. Ver Resolución 470 de 2018, PNNC. D.O. 50791, pag. 38 y 40.**

Artículo 10. Requisitos de la delegación. En el acto de delegación, que siempre será escrito, se determinará la autoridad delegataria y las funciones o asuntos específicos cuya atención y decisión se transfieren.

El Presidente de la República, los ministros, los directores de departamento administrativo y los representantes legales de entidades descentralizadas deberán informarse en todo momento sobre el desarrollo de las delegaciones que hayan otorgado e impartir orientaciones generales sobre el ejercicio de las funciones delegadas.

Artículo 11. Funciones que no se pueden delegar. Sin perjuicio de lo que sobre el particular establezcan otras disposiciones, no podrán transferirse mediante delegación:

1. La expedición de reglamentos de carácter general, salvo en los casos expresamente autorizados por la ley.

2. Las funciones, atribuciones y potestades recibidas en virtud de delegación.

3. Las funciones que por su naturaleza o por mandato constitucional o legal no son susceptibles de delegación.

Artículo 12. Régimen de los actos del delegatario. Los actos expedidos por las autoridades delegatarias estarán sometidos a los mismos requisitos establecidos para su expedición por la autoridad o entidad delegante y serán susceptibles de los recursos procedentes contra los actos de ellas.

La delegación exime de responsabilidad al delegante, la cual corresponderá exclusivamente al delegatario, sin perjuicio de que en virtud de lo dispuesto en el artículo 211 de la Constitución Política, la autoridad delegante pueda en cualquier tiempo reasumir la competencia y revisar los actos expedidos por el delegatario, con sujeción a las disposiciones del Código Contencioso Administrativo.

Parágrafo. En todo caso relacionado con la contratación, el acto de la firma expresamente delegada, no exime de la responsabilidad legal civil y penal al agente principal. **(Nota: Este parágrafo fue declarado exequible por la Corte Constitucional en la Sentencia C-727 de 2000, Providencia confirmada en la Sentencia C-372 de 2002, Providencia confirmada en la Sentencia C-414 de 2002.).**

Artículo 13. **Modificado por el Decreto 19 de 2012, artículo 45.** Delegación del ejercicio de funciones presidenciales. Sin perjuicio de lo previsto en la Ley 142 de 1994 y en otras disposiciones especiales, el Presidente de la República podrá delegar en los ministros, directores de departamento administrativo, representantes legales de entidades descentralizadas, superintendentes, gobernadores, alcaldes y agencias del Estado el ejercicio de las funciones a que se refieren el artículo 129 y los numerales 13, 18, 20, 21, 22, 23, 24, 26, 27 y 28 del artículo 189 de la Constitución Política.

Texto inicial del artículo 13: "Delegación del ejercicio de funciones presidenciales. Sin perjuicio de lo previsto en la Ley 142 de 1994 y en otras disposiciones especiales, el Presidente de la República podrá delegar en los ministros, directores de departamento administrativo, representantes legales de entidades descentralizadas, superintendentes, gobernadores, alcaldes y agencias del Estado el ejercicio de las funciones a que se refieren los numerales 13, 20, **21**, **22**, 23, **24**, **26**, 27 y 28 del artículo 189 de la Constitución Política.".

**Nota 1, artículo 13: Las expresiones señaladas con negrilla en este artículo fueron declaradas exequibles por la Corte Constitucional en la Sentencia C-561 de 1999.**

**Nota 2, artículo 13: Ver Decreto 573 de 2002.**

Artículo 14. Delegación entre entidades públicas. La delegación de las funciones de los organismos y entidades administrativos del orden nacional efectuada en favor de entidades descentralizadas o entidades territoriales deberá acompañarse de la celebración de convenios en los que se fijen los derechos y obligaciones de las entidades delegante y delegataria. Así mismo, en el correspondiente convenio podrá determinarse el funcionario de la entidad delegataria que tendrá a su cargo el ejercicio de las funciones delegadas.

Estos convenios estarán sujetos únicamente a los requisitos que la ley exige para los convenios o contratos entre entidades públicas o interadministrativos.

Parágrafo. *Cuando la delegación de funciones o servicios por parte de una entidad nacional recaiga en entidades territoriales, ella procederá sin requisitos adicionales, si tales funciones o servicios son complementarios a las competencias ya atribuidas a las mismas en las disposiciones legales. Si por el contrario, se trata de asumir funciones y servicios que no sean de su competencia, deberán preverse los recursos que fueren necesarios para el ejercicio de la función delegada.* **(Nota: Este artículo fue declarado exequible condicionalmente por la Corte Constitucional en la Sentencia C-727 de 2000, salvo su parágrafo el cual fue declarado inexequible por la misma Sentencia.).**

CAPITULO IV

Sistema de desarrollo administrativo

**Nota 1 : Capítulo reglamentado por el Decreto 3622 de 2005 y por el Decreto 2740 de 2001.**

**Nota 2: Capítulo desarrollado por el Decreto 2482 de 2012.**

**Nota 3: La Ley 1753 de 2015, artículo 133, inciso 3º, dice: "Una vez se reglamente y entre en aplicación el nuevo Modelo de Gestión", éste Capítulo perderá su vigencia.**

Artículo 15. **Derogado por el Decreto 1499 de 2017, artículo 5º.**
*Definición del sistema. El Sistema de Desarrollo Administrativo es un conjunto de políticas, estrategias, metodologías, técnicas y mecanismos de carácter administrativo y organizacional para la gestión y manejo de los recursos humanos, técnicos, materiales, físicos, y financieros de las entidades de la Administración Pública, orientado a fortalecer la capacidad administrativa y el desempeño institucional, de conformidad con la reglamentación que para tal efecto expida el Gobierno Nacional.*

*Parágrafo. Las normas del presente Capítulo serán aplicables, en lo pertinente, a las entidades autónomas y territoriales y a las sujetas a regímenes especiales en virtud de mandato constitucional.*

**Nota 1, artículo 15: Artículo desarrollado por el Decreto 3622 de 2005.**

**Nota 2, artículo 15: Ver Ley 1753 de 2015, artículo 133. Ver Resolución 2626 de 2013, M. de Salud y Protección Social.**

Artículo 16. **Derogado por el Decreto 1499 de 2017, artículo 5º.**
*Fundamentos del sistema de desarrollo administrativo. El Sistema de Desarrollo Administrativo, está fundamentado:*

*a) En las políticas de desarrollo administrativo formuladas por el Departamento Administrativo de la Función Pública, adoptadas por el Gobierno Nacional y articuladas con los organismos y entidades de la Administración Pública;*

*b) En el Plan Nacional de Formación y Capacitación formulado por el Departamento Administrativo de la Función Pública en coordinación con la Escuela Superior de Administración Pública, ESAP.*

**Nota 1, artículo 16: Artículo desarrollado por el Decreto 3622 de 2005.**

**Nota 2, artículo 16: Ver Ley 1753 de 2015, artículo 133.**

Artículo 17. **Derogado por el Decreto 1499 de 2017, artículo 5º.** *Políticas de desarrollo administrativo. Las políticas de desarrollo administrativo formuladas por el Departamento Administrativo de la Función Pública y adoptadas por el Gobierno Nacional tendrán en cuenta, entre otros, los siguientes aspectos:*

*1. Diagnósticos institucionales.*

*2. Racionalización de trámites, métodos y procedimientos de trabajo.*

*3. Ajustes a la organización interna de las entidades, relacionadas con la distribución de competencias de las dependencias o con la supresión, fusión o creación de unidades administrativas fundamentadas en la simplificación de los procedimientos identificados y en la racionalización del trabajo.*

*4. Programas de mejoramiento continuo de las entidades en las áreas de gestión, en particular en las de recursos humanos, financieros, materiales, físicos y tecnológicos, así como el desempeño de las funciones de planeación, organización, dirección y control.*

*5. Adaptación de nuevos enfoques para mejorar la calidad de los bienes y servicios prestados, metodologías para medir la productividad del trabajo e indicadores de eficiencia y eficacia.*

*6. Estrategias orientadas a garantizar el carácter operativo de la descentralización administrativa, la participación ciudadana y la coordinación con el nivel territorial.*

*7. Identificación de actividades obsoletas y de funciones que estén en colisión con otros organismos y entidades, que hubieren sido asignadas al nivel territorial, o que no correspondan al objeto legalmente establecido de las entidades.*

*8. Estrategias orientadas a fortalecer los sistemas de información propios de la gestión pública para la toma de decisiones.*

*9. Evaluación del clima organizacional, de la calidad del proceso de toma de decisiones y de los estímulos e incentivos a los funcionarios o grupos de trabajo.*

*10. Identificación de los apoyos administrativos orientados a mejorar la atención a los usuarios y a la resolución efectiva y oportuna de sus quejas y reclamos.*

*11. Diseño de mecanismos, procedimientos y soportes administrativos orientados a fortalecer la participación ciudadana en general y de la población usuaria en el proceso de toma de decisiones, en la fiscalización y el óptimo funcionamiento de los servicios.*

*Parágrafo 1°.* **Modificado por el Decreto 19 de 2012, artículo 233.** *Los Comités Sectoriales de desarrollo administrativo de conformidad con el artículo 19 de la presente Ley, tendrán la obligatoriedad de formular el plan respectivo, el cual hará parte de los planes de acción sectoriales e institucionales y será publicado a más tardar el 31 de enero de cada año en las respectivas páginas web, tal como lo establece el artículo 74 de la Ley 1474 de 2011.*

Texto inicial del parágrafo 1°: "Los Comités Sectoriales de desarrollo administrativo de conformidad con el artículo 19 de la presente ley, tendrán la obligatoriedad de presentar el plan respectivo dentro de los primeros sesenta (60) días de cada año y su ejecución estará sujeta a evaluación posterior por parte del Departamento Administrativo de la Función Pública y la responsabilidad administrativa en el cumplimiento de dicho plan recaerá directamente sobre el titular de la entidad.".

*Parágrafo 2°. Los organismos y entidades de la Administración Pública concurrirán obligatoriamente al Departamento Administrativo de Función Pública en la formulación de las políticas de desarrollo administrativo y en su debida aplicación, de conformidad con las metodologías que éste establezca.*

**Nota 1, artículo 17: Ver artículo 1.1.2.1. del Decreto 1078 de 2015, Decreto Único Reglamentario del Sector de Tecnologías de la Información y las Comunicaciones.**

**Nota 2, artículo 17:** Artículo desarrollado por el **Decreto 3622 de 2005**.

**Nota 3, artículo 17:** Ver **Ley 1753 de 2015**, artículo 133. Ver **Decreto 2482 de 2012**, artículo 3º.

Artículo 18. **Derogado por el Decreto 1499 de 2017, artículo 5º.** *Supresión y simplificación de trámites. La supresión y simplificación de trámites será objetivo permanente de la Administración Pública en desarrollo de los principios de celeridad y economía previstos en la Constitución Política y en la presente ley.*

*El Departamento Administrativo de la Función Pública orientará la política de simplificación de trámites. Para tal efecto, contará con el apoyo de los comités sectoriales para el desarrollo administrativo y con la cooperación del sector privado.*

*Será prioridad de todos los planes de desarrollo administrativo de que trata la presente ley diagnosticar y proponer la simplificación de procedimientos, la supresión de trámites innecesarios y la observancia del principio de buena fe en las relaciones entre la Administración Pública y los ciudadanos o usuarios.*

*Las autoridades de la Administración Pública que participen en el trámite y ejecución de programas de apoyo y cooperación internacional, procurarán prioritariamente la inclusión de un componente de simplificación de procedimientos y supresión de trámites*.

**Nota 1, artículo 18:** Artículo desarrollado por el **Decreto 3622 de 2005**.

**Nota 2, artículo 18:** Ver **Ley 1753 de 2015**, artículo 133.

Artículo 19. **Derogado por el Decreto 1499 de 2017, artículo 5º. Modificado por el Decreto 19 de 2012, artículo 234.** *Comités sectoriales de desarrollo administrativo. Los ministros y directores de*

*departamento administrativo conformarán el Comité Sectorial de Desarrollo Administrativo, encargado de hacer seguimiento por lo menos una vez cada tres (3) meses a la ejecución de las políticas de desarrollo administrativo, formuladas dentro del plan respectivo.*

*El Comité Sectorial de Desarrollo Administrativo estará presidido por el Ministro o Director del Departamento Administrativo del sector respectivo. Del Comité harán parte los directores, gerentes o presidentes de los organismos y entidades adscritos o vinculados, quienes serán responsables únicos por el cumplimiento de las funciones a su cargo so pena de incurrir en causal de mala conducta.*

*Corresponde al Departamento Administrativo de la Función Pública velar por I ejecución de las políticas de administración pública y de desarrollo administrativo.*

Texto inicial del artículo 19: "Comités sectoriales de desarrollo administrativo. Los ministros y directores de departamento administrativo conformarán el Comité Sectorial de Desarrollo Administrativo, encargado de hacer seguimiento por lo menos una vez cada tres (3) meses a la ejecución de las políticas de desarrollo administrativo, formuladas dentro del plan respectivo.

El Comité Sectorial de Desarrollo Administrativo estará presidido por el Ministro o Director del Departamento Administrativo del sector respectivo. Del Comité harán parte los directores, gerentes o presidentes de los organismos y entidades adscritos o vinculados, quienes serán responsables únicos por el cumplimiento de las funciones a su cargo so pena de incurrir en causal de mala conducta.

Corresponde al Departamento Administrativo de la Función Pública velar por la ejecución de las políticas de administración pública y de desarrollo administrativo, evaluación que deberá hacerse dentro de los últimos sesenta días de cada año.".

**Nota 1, artículo 19: Ver Ley 1753 de 2015, artículo 133. Ver artículo 1.1.2.1. del Decreto 1078 de 2015, Decreto Único Reglamentario del Sector de Tecnologías de la Información y las Comunicaciones.**

**Nota 2, artículo 19: Artículo desarrollado por el Decreto 3622 de 2005.**

Artículo 20. **Derogado por el Decreto 1499 de 2017, artículo 5º.** *Sistema de desarrollo administrativo territorial. Sin perjuicio de la autonomía de que gozan las entidades territoriales, las asambleas departamentales, los concejos distritales y municipales dispondrán la conformación de los comités de desarrollo administrativo, según su grado de complejidad administrativa.*

*Igualmente regularán en forma análoga a lo dispuesto para el nivel nacional, los fundamentos del Sistema de Desarrollo Administrativo.*

**Nota 1, artículo 20: Artículo desarrollado por el Decreto 3622 de 2005.**

**Nota 2, artículo 20: Ver Ley 1753 de 2015, artículo 133.**

Artículo 21. **Derogado por el Decreto 1499 de 2017, artículo 5º.**
*Desarrollo administrativo de los organismos y entidades de la Administración Pública. Los organismos y entidades de la Administración Pública diseñarán su política de desarrollo administrativo. El Ministerio o Departamento Administrativo correspondiente coordinará y articulará esas políticas a las del respectivo sector.*

*El Comité Sectorial de Desarrollo Administrativo hará el seguimiento de la ejecución de las políticas de desarrollo administrativo.*

**Nota 1, artículo 21: Artículo desarrollado por el Decreto 3622 de 2005.**

**Nota 2, artículo 21: Ver Ley 1753 de 2015, artículo 133.**

Artículo 22. **Derogado por el Decreto 1499 de 2017, artículo 5º.**
*Divulgación. Corresponde al Departamento Administrativo de la Función Pública elaborar el informe anual de ejecución y resultados de las políticas de desarrollo administrativo de los organismos y entidades de la Administración Pública que forman parte del Sistema, para lo cual solicitará a los ministros y directores de departamento administrativo los informes que considere pertinentes. Igualmente establecerá los medios idóneos para garantizar la consulta de dichos resultados por parte de las personas y organizaciones interesadas y la divulgación amplia de los mismos, sin perjuicio de los mecanismos sectoriales de divulgación que se establezcan con el objeto de atender los requerimientos de la sociedad civil.*

**Nota 1, artículo 22: Artículo desarrollado por el Decreto 3622 de 2005.**

**Nota 2, artículo 22: Ver Ley 1753 de 2015, artículo 133.**

Artículo 23. **Derogado por el Decreto 1499 de 2017, artículo 5º. Modificado por el Decreto 19 de 2012, artículo 235.** *Convenios de desempeño. Los ministerios y departamentos administrativos podrán celebrar convenios de desempeño con otros organismos y con sus entidades adscritas o vinculadas.*

Texto inicial del artículo 23: "Convenios de desempeño. Los convenios de desempeño de que trata la presente ley, que se pacten entre los ministerios y departamentos administrativos y los organismos y entidades adscritas o vinculadas, al igual que los términos de su ejecución, deberán ser enviados al Departamento Administrativo de la Función Pública una vez se suscriban.".

**Nota, artículo 23: Ver Ley 1753 de 2015, artículo 133.**

CAPITULO V

Incentivos a la gestión pública

Artículo 24. Banco de éxitos. El Departamento Administrativo de la Función Pública organizará el Banco de Exitos de la Administración Pública. En él, de conformidad con la reglamentación que para el efecto expida el Gobierno Nacional, se registrarán, documentarán y divulgarán las experiencias exitosas de desarrollo de la Administración y se promoverá y coordinará la cooperación entre las entidades exitosas y las demás que puedan aprovechar tales experiencias.

El Departamento Administrativo de la Función Pública efectuará la selección y exclusión respectivas y recomendará lo pertinente al Presidente de la República.

**Nota, artículo 24: Artículo desarrollado por el Decreto 1136 de 2022, por el Decreto 2158 de 2018 y por el Decreto 990 de 2018.**

Artículo 25. Premio nacional de alta gerencia. Autorízase al Gobierno Nacional para que otorgue anualmente el Premio Nacional de Alta Gerencia a la entidad u organismo de la Administración Pública, que por su buen desempeño institucional merezca ser distinguida e inscrita en el Banco de Exitos de la Administración Pública. Dicha entidad gozará de especial atención para el apoyo a sus programas de desarrollo administrativo.

**Nota, artículo 25: Artículo desarrollado por el Decreto 1136 de 2022 y por el Decreto 2158 de 2018.**

Artículo 26. Estímulos a los servidores públicos. El Gobierno Nacional otorgará anualmente estímulos a los servidores públicos que se distingan por su eficiencia, creatividad y mérito en el ejercicio de sus funciones, de conformidad con la reglamentación que para tal efecto expida, con fundamento en la recomendación del Departamento Administrativo de la Función Pública y sin perjuicio de los estímulos previstos en otras disposiciones.

CAPITULO VI

Sistema nacional de control interno

Artículo 27. Creación. Créase el Sistema Nacional de Control Interno, conformado por el conjunto de instituciones, instancias de participación, políticas, normas, procedimientos, recursos, planes, programas, proyectos, metodologías, sistemas de información, y tecnología aplicable, inspirado en los principios constitucionales de la función administrativa cuyo sustento fundamental es el servidor público.

**Nota, artículo 27: Ver Ley 1753 de 2015, artículo 133.**

Artículo 28. Objeto. El Sistema Nacional de Control Interno tiene por objeto integrar en forma armónica, dinámica, efectiva, flexible y suficiente, el funcionamiento del control interno de las instituciones públicas, para que, mediante la aplicación de instrumentos idóneos de gerencia, fortalezcan el cumplimiento cabal y oportuno de las funciones del Estado.

**Nota, artículo 28: Ver Ley 1753 de 2015, artículo 133.**

Artículo 29. Dirección y coordinación. El Sistema Nacional de Control Interno, de conformidad con la reglamentación que para tal efecto expida el Gobierno Nacional, será dirigido por el Presidente de la República como máxima autoridad administrativa y será apoyado y coordinado por el Consejo Asesor del Gobierno Nacional en materia de control interno de las entidades del orden nacional, el cual será presidido por el Director del Departamento Administrativo de la Función Pública.

Parágrafo 1°. Las normas del presente Capítulo serán aplicables, en lo pertinente, a las entidades autónomas y territoriales o sujetas a regímenes especiales en virtud de mandato constitucional.

Parágrafo 2°. Las unidades u oficinas que ejercen las funciones de control disciplinario interno de que trata el artículo 48 de la Ley 200 de 1995 no hacen parte del Sistema de Control Interno.

**Nota, artículo 29: Ver Ley 1753 de 2015, artículo 133.**

CAPITULO VII

Escuela de alto gobierno

Artículo 30. Escuela de alto gobierno. Establécese como un programa permanente y sistemático, la Escuela de Alto Gobierno, cuyo objeto es impartir la inducción y prestar apoyo a la alta gerencia de la Administración Pública en el orden nacional.

La Escuela de Alto Gobierno, mediante la utilización de tecnologías de punta, contribuirá a garantizar la unidad de propósitos de la Administración, el desarrollo de la alta gerencia pública y el intercambio de experiencias en materia administrativa.

El programa Escuela de Alto Gobierno será desarrollado por la Escuela Superior de Administración Pública en coordinación con el Departamento Administrativo de la Función Pública, conforme a la reglamentación que adopte el Gobierno Nacional.

Parágrafo. El Departamento Nacional de Planeación, a través del organismo encargado de la gestión de la cooperación internacional, brindará apoyo para la canalización de la ayuda internacional en la gestión y ejecución de los programas a cargo de la Escuela de Alto Gobierno.

Artículo 31. Participantes. Los servidores públicos de los niveles que determine el Gobierno Nacional, deberán participar como mínimo, en los programas de inducción de la Escuela de Alto Gobierno, preferentemente antes de tomar posesión del cargo o durante el primer mes de ejercicio de sus funciones.

La Escuela de Alto Gobierno organizará y realizará seminarios de inducción a la administración pública para Gobernadores y Alcaldes electos a realizarse en el término entre la elección y la posesión de tales mandatarios. La asistencia a estos seminarios es obligatoria como requisito para poder tomar posesión del cargo para el cual haya sido electo.

Los secretarios generales, asistentes, asesores y jefes de división jurídica, administrativa, presupuestal, de tesorería o sus similares de Ministerios, departamentos administrativos, superintendencias, y entidades autónomas o descentralizadas de cualquier orden deberán asistir y

participar en seminarios de inducción organizados por la escuela de alto gobierno, dentro de los 120 días siguientes a su posesión.

Los seminarios o cursos a que se refiere este artículo serán diseñados por la Escuela teniendo en cuenta los avances en la ciencia de la administración pública, la reingeniería del gobierno, la calidad y la eficiencia y la atención al cliente interno y externo de la respectiva entidad, así como los temas específicos del cargo o de la función que va a desempeñar el funcionario o grupo de funcionarios al cual va dirigido el curso y especialmente su responsabilidad en el manejo presupuestal y financiero de la entidad cuando a ello haya lugar según la naturaleza del cargo.

**Nota, artículo 31: Ver Ley 2200 de 2022, artículo 92.**

CAPITULO VIII

Democratización y control social de la administración pública

Artículo 32. **Modificado por la Ley 1474 de 2011, artículo 78.** Democratización de la Administración Pública. Todas las entidades y organismos de la Administración Pública tienen la obligación de desarrollar su gestión acorde con los principios de democracia participativa y democratización de la gestión pública. Para ello podrán realizar todas las acciones necesarias con el objeto de involucrar a los ciudadanos y organizaciones de la sociedad civil en la formulación, ejecución, control y evaluación de la gestión pública.

Entre otras podrán realizar las siguientes acciones:

a) Convocar a audiencias públicas;

b) Incorporar a sus planes de desarrollo y de gestión las políticas y programas encaminados a fortalecer la participación ciudadana;

c) Difundir y promover los derechos de los ciudadanos respecto del correcto funcionamiento de la Administración Pública;

d) Incentivar la formación de asociaciones y mecanismos de asociación de intereses para representar a los usuarios y ciudadanos;

e) Apoyar los mecanismos de control social que se constituyan;

f) Aplicar mecanismos que brinden transparencia al ejercicio de la función administrativa.

En todo caso, las entidades señaladas en este artículo tendrán que rendir cuentas de manera permanente a la ciudadanía, bajo los lineamientos de metodología y contenidos mínimos establecidos por el Gobierno Nacional, los cuales serán formulados por la Comisión Interinstitucional para la Implementación de la Política de rendición de cuentas creada por el CONPES 3654 de 2010.

**Nota 1, artículo 32: Ver Resolución 4-1052 de 2018, M. Minas. Ver Decreto 368 de 1999, artículo 4º.**

**Nota 2, artículo 32: Artículo desarrollado por el Decreto 1273 de 2020 y por el Decreto 270 de 2017.**

Texto inicial del artículo 32: **Reglamentado parcialmente por el Decreto 1714 de 2000.** "Democratización de la Administración Pública. Todas las entidades y organismos de la Administración Pública tienen la obligación de desarrollar su gestión acorde con los principios de democracia participativa y democratización de la gestión pública. Para ello podrán realizar todas las acciones necesarias con el objeto de involucrar a los ciudadanos y organizaciones de la sociedad civil en la formulación, ejecución, control y evaluación de la gestión pública.

Entre otras podrán realizar las siguientes acciones:

1. Convocar a audiencias públicas.

2. Incorporar a sus planes de desarrollo y de gestión las políticas y programas encaminados a fortalecer la participación ciudadana.

3. Difundir y promover los mecanismos de participación y los derechos de los ciudadanos.

4. Incentivar la formación de asociaciones y mecanismos de asociación de intereses para representar a los usuarios y ciudadanos.

5. Apoyar los mecanismos de control social que se constituyan.

6. Aplicar mecanismos que brinden transparencia al ejercicio de la función administrativa.".

**Nota, artículo 32: Artículo desarrollado por el Decreto 797 de 1999, artículo 2º.**

Artículo 33. Audiencias públicas. Cuando la administración lo considere conveniente y oportuno, se podrán convocar a audiencias públicas en las cuales se discutirán aspectos relacionados con la formulación, ejecución o evaluación de políticas y programas a cargo de la entidad, y en especial cuando esté de por medio la afectación de derechos o intereses colectivos.

Las comunidades y las organizaciones podrán solicitar la realización de audiencias públicas, sin que la solicitud o las conclusiones de las audiencias tengan carácter vinculante para la administración. En todo caso, se explicarán a dichas organizaciones las razones de la decisión adoptada.

En el acto de convocatoria a la audiencia, la institución respectiva definirá la metodología que será utilizada.

Artículo 34. Ejercicio del control social de la administración. Cuando los ciudadanos decidan constituir mecanismos de control social de la administración, en particular mediante la creación de veedurías ciudadanas, la administración estará obligada a brindar todo el apoyo requerido para el ejercicio de dicho control.

Artículo 35. Ejercicio de la veeduría ciudadana. Para garantizar el ejercicio de las veedurías ciudadanas, las entidades y organismos de la administración pública deberán tener en cuenta los siguientes aspectos:

a) Eficacia de la acción de las veedurías. Cada entidad u organismo objeto de vigilancia por parte de las veedurías deberá llevar un registro sistemático de sus observaciones y evaluar en forma oportuna y diligente los correctivos que surjan de sus recomendaciones, con el fin de hacer eficaz la acción de las mismas. Lo anterior sin perjuicio de las consecuencias de orden disciplinario, penal y de cualquier naturaleza que

se deriven del ejercicio de la vigilancia. Las distintas autoridades de control y de carácter judicial prestarán todo su apoyo al conocimiento y resolución en su respectivo ramo de los hechos que les sean presentados por dichas veedurías;

b) Acceso a la información. Las entidades u organismos y los responsables de los programas o proyectos que sean objeto de veeduría deberán facilitar y permitir a los veedores el acceso a la información para la vigilancia de todos los asuntos que se les encomienda en la presente ley y que no constituyan materia de reserva judicial o legal. El funcionario que obstaculice el acceso a la información por parte del veedor incurrirá en causal de mala conducta;

c) Formación de veedores para el control y fiscalización de la gestión pública. El Departamento Administrativo de la Función Pública, con el apoyo de la Escuela Superior de Administración Pública, diseñará y promoverá un Plan Nacional de Formación de Veedores en las áreas, objeto de intervención. En la ejecución de dicho plan contribuirán, hasta el monto de sus disponibilidades presupuestales, los organismos objeto de vigilancia por parte de las veedurías, sin perjuicio de los recursos que al efecto destine el Ministerio del Interior a través del Fondo para el Desarrollo Comunal.

CAPITULO IX

Sistema General de Información Administrativa del Sector Público

Artículo 36. Sistema General de Información Administrativa. Créase el Sistema General de Información Administrativa del Sector Público, integrado, entre otros, por los subsistemas de organización institucional, de gestión de recursos humanos, materiales y físicos, y el de desarrollo administrativo. El diseño, dirección e implementación del Sistema será responsabilidad del Departamento Administrativo de la Función Pública en coordinación con los organismos competentes en sistemas de información, y de los cuales se levantará una memoria institucional.

Artículo 37. Sistema de información de las entidades y organismos. Los sistemas de información de los organismos y entidades de la Administración Pública servirán de soporte al cumplimiento de su misión, objetivos y funciones, darán cuenta del desempeño institucional y facilitarán la evaluación de la gestión pública a su interior así como, a la ciudadanía en general.

Corresponde a los comités de desarrollo administrativo de que trata la presente ley hacer evaluaciones periódicas del estado de los sistemas de información en cada sector administrativo y propender por su simplificación en los términos previstos en las disposiciones legales.

En la política de desarrollo administrativo deberá darse prioridad al diseño, implementación, seguimiento y evaluación de los sistemas de información y a la elaboración de los indicadores de administración pública que sirvan de soporte a los mismos.

CAPITULO X

Estructura y organización de la Administración Pública

Artículo 38. Integración de la Rama Ejecutiva del Poder Público en el orden nacional. La Rama Ejecutiva del Poder Público en el orden nacional, está integrada por los siguientes organismos y entidades:

1. Del Sector Central:

a) La Presidencia de la República;

b) **Literal declarado exequible según corrección del Auto 76 de 2000 a la Sentencia C-727 de 2000.** La Vicepresidencia de la República;

c) Los Consejos Superiores de la administración;

d) Los ministerios y departamentos administrativos;

e) Las superintendencias y unidades administrativas especiales sin personería jurídica.

2. Del Sector descentralizado por servicios:

a) Los establecimientos públicos;

b) Las empresas industriales y comerciales del Estado;

c) Las superintendencias y las unidades administrativas especiales con personería jurídica;

d) Las empresas sociales del Estado **y las empresas oficiales de servicios públicos domiciliarios**; **(Nota: El aparte señalado en negrilla en este literal fue declarado exequible por los cargos analizados por la Corte Constitucional en la Sentencia C-736 de 2007.).**

e) Los institutos científicos y tecnológicos;

f) Las sociedades públicas **y las sociedades de economía mixta**; **(Nota: El aparte señalado en negrilla fue declarado exequible por la Corte Constitucional en la Sentencia C-910 de 2007.).**

g) Las demás entidades administrativas nacionales con personería jurídica que cree, organice o autorice la ley para que formen parte de la Rama Ejecutiva del Poder Público.

Parágrafo 1°. Las sociedades públicas y las sociedades de economía mixta en las que el Estado posea el noventa por ciento (90%) o más de su

capital social, se someten al régimen previsto para las empresas industriales y comerciales del Estado.

Parágrafo 2°. Además de lo previsto en el literal c) del numeral 1° del presente artículo, como organismos consultivos o coordinadores, para toda la administración o parte de ella, funcionarán con carácter **permanente** o temporal y con representación de varias entidades estatales y, **si fuere el caso, del sector privado**, los que la ley determine. En el acto de constitución se indicará el Ministerio o Departamento Administrativo al cual quedaren adscritos tales organismos. **(Nota: Las expresiones señaladas con negrilla en este parágrafo fueron declaradas exequibles por la Corte Constitucional en la Sentencia C-702 de 1999.).**

**Conc. Ley 1952 de 2019**.

Artículo 39. Integración de la Administración Pública. La Administración Pública se integra por los organismos que conforman la Rama Ejecutiva del Poder Público y por todos los demás organismos y entidades de naturaleza pública que de manera permanente tienen a su cargo el ejercicio de las actividades y funciones administrativas o la prestación de servicios públicos del Estado colombiano.

La Presidencia de la República, los ministerios y los departamentos administrativos, en lo nacional, son los organismos principales de la Administración.

Así mismo, los ministerios, los departamentos administrativos y las superintendencias constituyen el Sector Central de la Administración Pública Nacional. Los organismos y entidades adscritos o vinculados a un Ministerio o un Departamento Administrativo que gocen de personería jurídica, autonomía administrativa y patrimonio propio o capital independiente conforman el Sector Descentralizado de la Administración Pública Nacional y cumplen sus funciones en los términos que señale la ley.

Las gobernaciones, las alcaldías, las secretarías de despacho y los departamentos administrativos son los organismos principales de la Administración en el correspondiente nivel territorial. Los demás les están adscritos o vinculados, cumplen sus funciones bajo su orientación,

coordinación y control en los términos que señalen la ley, las ordenanzas o los acuerdos, según el caso.

Las asambleas departamentales y los concejos distritales y municipales son corporaciones administrativas de elección popular que cumplen las funciones que les señalan la Constitución Política y la ley.

Artículo 40. Entidades y organismos estatales sujetos a régimen especial. El Banco de la República, los entes universitarios autónomos, las corporaciones autónomas regionales, la Comisión Nacional de Televisión y los demás organismos y entidades con régimen especial otorgado por la Constitución Política se sujetan a las disposiciones que para ellos establezcan las respectivas leyes.

Artículo 41. Orientación y control. La orientación, control y evaluación general de las actividades de los organismos y entidades administrativas corresponde al Presidente de la República y en su respectivo nivel, a los ministros, los directores de departamento administrativo, los superintendentes, los gobernadores, los alcaldes y los representantes legales de las entidades descentralizadas y sociedades de economía mixta de cualquier nivel administrativo.

En el orden nacional, los ministros y directores de departamento administrativo orientan y coordinan el cumplimiento de las funciones a cargo de las superintendencias, las entidades descentralizadas y las sociedades de economía mixta que les estén adscritas o vinculadas o integren el Sector Administrativo correspondiente.

**Conc.   Resolución 294 de 2019. Resolución 338 de 2015, M. de Agricultura y Desarrollo Rural.**

Artículo 42. Sectores Administrativos. El Sector Administrativo está integrado por el Ministerio o Departamento Administrativo, las superintendencias y demás entidades que la ley *o el Gobierno Nacional* definan como adscritas o vinculadas a aquéllos según correspondiere a

cada área. **(Nota: Las expresiones tachadas fueron declaradas inexequibles por la Corte Constitucional en la Sentencia C-1437 de 2000, la cual declaró exequible el resto del mismo.).**

**Nota, artículo 42: Ver Decreto 2482 de 2012.**

Artículo 43. Sistemas Administrativos. El Gobierno Nacional podrá organizar sistemas administrativas nacionales con el fin de coordinar las actividades estatales y de los particulares. Para tal efecto preverá los órganos o entidades a los cuales corresponde desarrollar las actividades de dirección, programación, ejecución y evaluación.

**Nota 1, artículo 43: Artículo desarrollado por el Decreto 1987 de 2013.**

**Nota 2, artículo 43: Decreto 1258 de 2020. Ver Decreto 2933 de 2010.**

Artículo 44. Orientación y coordinación sectorial. La orientación del ejercicio de las funciones a cargo de los organismos y entidades que conforman un Sector Administrativo está a cargo del Ministro o Director del Departamento Administrativo a cuyo despacho se encuentran adscritos o vinculados, sin perjuicio de las potestades de decisión, que de acuerdo con la ley y los actos de creación o de reestructuración, les correspondan.

**Nota 1, artículo 44: Ver Circular Externa 16 de 2015. SNS.**

**Nota 2, artículo 44: Artículo desarrollado por la Resolución 1726 de 2019, M. Salud y Protección Social.**

Artículo 45. Comisiones Intersectoriales. El Gobierno Nacional podrá crear comisiones intersectoriales para la coordinación y orientación superior de la ejecución de ciertas funciones y servicios públicos, cuando por mandato legal o en razón de sus características, estén a cargo de dos o más ministerios, departamentos administrativos o entidades descentralizadas, sin perjuicio de las competencias específicas de cada uno de ellos.

El Gobierno podrá establecer la sujeción de las medidas y actos concretos de los organismos y entidades competentes a la previa adopción de los programas y proyectos de acción por parte de la Comisión Intersectorial y delegarle algunas de las funciones que le corresponden.

Las comisiones intersectoriales estarán integradas por los ministros, directores de departamento administrativo, superintendentes y representantes legales de los organismos y entidades que tengan a su cargo las funciones y actividades en referencia.

**Nota 1, artículo 45: Artículo desarrollado por el Decreto 1347 de 2021, por el Decreto 704 de 2018, por el Decreto 1581 de 2017, por el Decreto 1652 de 2015, por el Decreto 1510 de 2014, por el Decreto 858 de 2014, por el Decreto 2766 de 2013, por el Decreto 32 de 2013.**

**Nota 2, artículo 45: Ver Decreto 1997 de 2019. Ver Decreto 2137 de 2018. Ver Decreto 1257 de 2017. Ver Decreto 1052 de 2014. Ver Decreto 2933 de 2010, Decreto 955 de 2002 y Decreto 23 de 2002.**

**Conc. Decreto 2562 de 2012.**

Artículo 46. Participación de las entidades descentralizadas en la política gubernamental. Los organismos y entidades descentralizados participarán en la formulación de la política, en la elaboración de los programas sectoriales y en la ejecución de los mismos, bajo la orientación de los ministerios y departamentos administrativos respectivos.

Artículo 47. Consejo de Ministros. El Consejo de Ministros estará conformado por todos los Ministros convocados por el Presidente de la República. Mediante convocatoria expresa podrán concurrir también los directores de departamento administrativo, así como los demás funcionarios o particulares que considere pertinente el Presidente de la República.

Sin perjuicio de las funciones que le otorgan la Constitución Política o la ley, corresponde al Presidente de la República fijar las funciones especiales del Consejo y las reglas necesarias para su funcionamiento.

**Nota, artículo 47: Este artículo fue declarado exequible por la Corte Constitucional en la Sentencia C-702 de 1999.**

Artículo 48. Comisiones de Regulación. Las comisiones que cree la ley para la regulación, de los servicios públicos domiciliarios mediante asignación de la propia ley o en virtud de delegación por parte del Presidente de la República, para promover y garantizar la competencia entre quienes los presten, se sujetarán en cuanto a su estructura, organización y funcionamiento a lo dispuesto en los correspondientes actos de creación.

CAPITULO XI

Creación, fusión, supresión y reestructuración
de organismos y entidades

Artículo 49. Creación de organismos y entidades administrativas. Corresponde a la ley, por iniciativa del Gobierno, la creación de los ministerios, departamentos administrativos, superintendencias, establecimientos públicos y los demás organismos y entidades administrativas nacionales.

Las empresas industriales y comerciales del Estado podrán ser creadas por ley o con autorización de la misma.

Las sociedades de economía mixta serán constituidas en virtud de autorización legal.

Parágrafo. Las entidades descentralizadas indirectas y las filiales de las empresas industriales y comerciales del Estado y de las sociedades de economía mixta se constituirán con arreglo a las disposiciones de la presente ley, y en todo caso previa autorización del Gobierno Nacional si se tratare de entidades de ese orden o del Gobernador o el Alcalde en tratándose de entidades del orden departamental o municipal.

**Nota, artículo 49:** Ver artículo 1.2.2.2. del **Decreto 1078 de 2015**, Decreto Único Reglamentario del Sector de Tecnologías de la Información y las Comunicaciones.

Artículo 50. Contenido de los actos de creación. La ley que disponga la creación de un organismo o entidad administrativa deberá determinar sus objetivos y estructura orgánica, así mismo determinará el soporte presupuestal de conformidad con los lineamientos fiscales del Ministerio de Hacienda y Crédito Público.

La estructura orgánica de un organismo o entidad administrativa comprende la determinación de los siguientes aspectos:

1. La denominación.

2. La naturaleza jurídica y el consiguiente régimen jurídico.

3. La sede.

4. La integración de su patrimonio.

5. El señalamiento de los órganos superiores de dirección y administración y la forma de integración y de designación de sus titulares, y

6. El Ministerio o el Departamento Administrativo al cual estarán adscritos o vinculados.

Parágrafo. Las superintendencias, los establecimientos públicos y las unidades administrativas especiales estarán adscritos a los ministerios o departamentos administrativos; las empresas industriales y comerciales del Estado y las sociedades de economía mixta estarán vinculadas a

aquellos; los demás organismos y entidades estarán adscritos o vinculados, según lo determine su acto de creación.

Artículo 51. **Declarado inexequible por la Corte Constitucional en la Sentencia C-702 de 1999, providencia confirmada en la Sentencia C-990 de 1999.** *Modalidades de la fusión de entidades u organismos nacionales que decrete el Gobierno. El Presidente de la República, en desarrollo de los principios constitucionales de la función administrativa podrá disponer la fusión de entidades y organismos administrativos del orden nacional con el fin de garantizar la eficiencia y la racionalidad de la gestión pública, de evitar duplicidad de funciones y actividades y de asegurar la unidad en la concepción y ejercicio de la función o la prestación del servicio.*

*El acto que ordene la fusión dispondrá sobre la subrogación de obligaciones y derechos de los organismos o entidades fusionados, la titularidad y destinación de bienes o rentas, los ajustes presupuestales necesarios, el proceso de adecuación de la estructura orgánica y, de conformidad con las normas que rigen la materia, y, la situación de los servidores públicos.*

*El Presidente de la República deberá reestructurar la entidad que resulte de la fusión, establecer las modificaciones necesarias en relación con su denominación, naturaleza jurídica, patrimonio o capital y regulación presupuestal según el caso, de acuerdo con las normas orgánicas sobre la materia, y el régimen aplicable de conformidad con las disposiciones de la presente ley.*

*La fusión de organismos, entidades o dependencias, o el traslado de funciones de una entidad a otra, no implica solución de continuidad para el ejercicio de la función o la prestación del servicio público y el cumplimiento de las obligaciones de ella resultantes a cargo de la entidad u organismo al que finalmente se le atribuyan.*

*Una vez decretada la fusión, supresión o escisión, el registro público se surtirá con el acto correspondiente, y frente a terceros las transferencias a que haya lugar se producirán en bloque y sin solución de continuidad por ministerio de la ley. La fusión o supresión de entidades u organismos del orden nacional o la modificación de su estructura y los actos o contratos que deben extenderse u otorgarse con motivo de ellas, se considerarán sin cuantía y no generarán impuestos, contribuciones de*

*carácter nacional o tarifas por concepto de tarifas y anotación . Para los efectos del registro sobre inmuebles y demás bienes sujetos al mismo, bastará con enumerarlos en el respectivo acto que decrete la supresión, fusión, escisión o modificación, indicando el número de folio de matrícula inmobiliaria o el dato que identifique el registro del bien o derecho respectivo.*

*Parágrafo. Por virtud de la fusión, el Gobierno no podrá crear ninguna nueva entidad u organismo público del orden nacional. En tal sentido se considera que se crea una entidad nueva cuando quiera que la resultante de la fusión persiga objetivos esencialmente distintos de aquellos originalmente determinados por el legislador para las entidades que se fusionan.*

Artículo 52. De la supresión, disolución y liquidación de entidades u organismos administrativos nacionales. El Presidente de la República podrá suprimir o disponer la disolución y la consiguiente liquidación de entidades y organismos administrativos del orden nacional previstos en el artículo 38 de la presente ley cuando:

1. Los objetivos señalados al organismo o entidad en el acto de creación hayan perdido su razón de ser.

2. Los objetivos y funciones a cargo de la entidad sean transferidos a otros organismos nacionales o a las entidades del orden territorial.

3. Las evaluaciones de la gestión administrativa, efectuadas por el Gobierno Nacional, aconsejen su supresión o la transferencia de funciones a otra entidad.

4. Así se concluya por la utilización de los indicadores de gestión y de eficiencia que emplean los organismos de control y los resultados por ellos obtenidos cada año, luego de realizar el examen de eficiencia y eficacia de las entidades en la administración de los recursos públicos, determinada la evaluación de sus procesos administrativos, la utilización de indicadores de rentabilidad pública y desempeño y la identificación de la distribución del excedente que éstas producen, así como de los beneficiarios de su actividad o el examen de los resultados para establecer en qué medida se logran sus objetivos y cumplen los planes, programas y proyectos adoptados por la administración en un período determinado.

5. Exista duplicidad de objetivos y/o de funciones esenciales con otra u otras entidades.

6. Siempre que como consecuencia de la descentralización *o desconcentración* de un servicio la entidad pierda la respectiva competencia. **(Nota: Las expresiones tachada en este numeral fueron declaradas inexequibles por la Corte Constitucional en la Sentencia C-727 de 2000.).**

Parágrafo 1°. El acto que ordene la supresión, disolución y liquidación, dispondrá sobre la subrogación de obligaciones y derechos de los organismos o entidades suprimidas o disueltas, la titularidad y destinación de bienes o rentas, los ajustes presupuestales necesarios, el régimen aplicable a la liquidación y, de conformidad con las normas que rigen la materia, la situación de los servidores públicos.

Parágrafo 2°. Tratándose de entidades sometidas al régimen societario, la liquidación se regirá por las normas del Código de Comercio en cuanto fueren compatibles con la naturaleza de la entidad cuya liquidación se realiza.

**Nota 1, artículo 52: Este artículo fue declarado exequible por la Corte Constitucional en la Sentencia C-702 de 1999, Providencia confirmada en la Sentencia C-108 de 2002.**

**Nota 2, artículo 52: Ver Resolución 461 de 2017, UAECGN. D.O. 50381, pag. 304. Ver Decreto 1066 de 2015, artículo 2.2.5.1.9.**

Artículo 53. **Declarado inexequible por la Corte Constitucional en la Sentencia C-702 de 1999, providencia confirmada en la Sentencia C-990 de 1999.** *Escisión de empresas industriales y comerciales del Estado y de sociedades de economía mixta. El Presidente de la República podrá escindir las empresas industriales y comerciales del Estado cuando ello sea conveniente para el mejor desarrollo de su objeto, caso en el cual se aplicará en lo pertinente lo dispuesto en los artículos anteriores. El Presidente de la República igualmente, podrá autorizar la escisión de sociedades de economía mixta cuando ello sea conveniente para el mejor*

*desarrollo de su objeto, caso en el cual se aplicarán las normas que regulan las sociedades comerciales.*

Artículo 54. Principios y reglas generales con sujeción a las cuales el Gobierno Nacional puede modificar la estructura de los ministerios, departamentos administrativos y demás organismos administrativos del orden nacional. Con el objeto de modificar, esto es, variar, transformar o renovar la organización o estructura de los ministerios, departamentos administrativos y demás entidades u organismos administrativos nacionales, las disposiciones aplicables se dictarán por el Presidente de la República conforme a las previsiones del numeral 16 del artículo 189 de la Constitución Política y con sujeción a siguientes principios y reglas generales:

a) Deberán responder a la necesidad de hacer valer los principios de eficiencia y racionalidad de la gestión pública, en particular, evitar la duplicidad de funciones; **(Nota: Este literal fue declarado exequible por la Corte Constitucional en la Sentencia C-702 de 1999.).**

b) **Literal fue declarado inexequible por la Corte Constitucional en la Sentencia C-702 de 1999, providencia confirmada en la Sentencia C-990 de 1999.** *Como regla general, la estructura de cada entidad será concentrada. Excepcionalmente y sólo para atender funciones nacionales en el ámbito territorial, la estructura de la entidad podrá ser desconcentrada;*

c) **Literal fue declarado inexequible por la Corte Constitucional en la Sentencia C-702 de 1999, providencia confirmada en la Sentencia C-990 de 1999.** *La estructura deberá ordenarse de conformidad con las necesidades cambiantes de la función pública, haciendo uso de las innovaciones que ofrece la gerencia pública;*

d) **Literal fue declarado inexequible por la Corte Constitucional en la Sentencia C-702 de 1999, providencia confirmada en la Sentencia C-990 de 1999.** *Las estructuras orgánicas serán flexibles tomando en consideración que las dependencias que integren los diferentes organismos sean adecuadas a una división de los grupos de funciones que les corresponda ejercer, debidamente evaluables por las políticas, la misión y por áreas programáticas. Para tal efecto se tendrá una estructura simple, basada en las dependencias principales que requiera el funcionamiento de cada entidad u organismo;*

e) Se deberá garantizar que exista la debida armonía, coherencia y articulación entre las actividades que realicen cada una de las dependencias, de acuerdo con las competencias atribuidas por la ley, para

efectos de la formulación, ejecución y evaluación de sus políticas, planes y programas, que les permitan su ejercicio sin duplicidades ni conflictos; **(Nota: Este literal fue declarado exequible por la Corte Constitucional en la Sentencia C-702 de 1999.).**

f) Cada una de las dependencias tendrá funciones específicas pero todas ellas deberán colaborar en el cumplimiento de las funciones generales y en la realización de los fines de la entidad u organismo; **(Nota: Este literal fue declarado exequible por la Corte Constitucional en la Sentencia C-702 de 1999.).**

g) **Literal fue declarado inexequible por la Corte Constitucional en la Sentencia C-702 de 1999, providencia confirmada en la Sentencia C-990 de 1999.** *Las dependencias básicas de cada entidad deberán organizarse observando la denominación y estructura que mejor convenga a la realización de su objeto y el ejercicio de sus funciones, identificando con claridad las dependencias principales, los órganos de asesoría y coordinación, y las relaciones de autoridad y jerarquía entre las que así lo exijan;*

h) **Literal fue declarado inexequible por la Corte Constitucional en la Sentencia C-702 de 1999, providencia confirmada en la Sentencia C-990 de 1999.** *La estructura que se adopte, deberá sujetarse a la finalidad, objeto y funciones generales de la entidad previstas en la ley;*

i) **Literal fue declarado inexequible por la Corte Constitucional en la Sentencia C-702 de 1999, providencia confirmada en la Sentencia C-990 de 1999.** *Sólo podrán modificarse, distribuirse o suprimirse funciones específicas, en cuanto sea necesario para que ellas se adecuen a la nueva estructura;*

j) Se podrán fusionar, suprimir o crear dependencias internas en cada entidad u organismo administrativo, y podrá otorgárseles autonomía administrativa y financiera sin personería jurídica; **(Nota: Ver Ley 2136 de 2021, artículo 52. Nota: Este literal fue declarado exequible por la Corte Constitucional en la Sentencia C-702 de 1999.).**

k) No se podrán crear dependencias internas cuyas funciones estén atribuidas a otras entidades públicas de cualquier orden; **(Nota: Este literal fue declarado exequible por la Corte Constitucional en la Sentencia C-702 de 1999.).**

l) Deberán suprimirse o fusionarse dependencias con el objeto de evitar duplicidad de funciones y actividades; **(Nota: Este literal fue declarado**

**exequible por la Corte Constitucional en la Sentencia C-702 de 1999.).**

m) Deberán suprimirse o fusionarse los empleos que no sean necesarios y distribuirse o suprimirse las funciones específicas que ellos desarrollaban. En tal caso, se procederá conforme a las normas laborales administrativas; **(Nota: Este literal fue declarado exequible por la Corte Constitucional en la Sentencia C-702 de 1999.).**

**Conc. Decreto 1876 de 2021. Decreto 1875 de 2021. Decreto 2651 de 2013. Decreto 2107 de 2013.**

n) Deberá adoptarse una nueva planta de personal.

**Conc. Decreto 08 de 2024. Decreto 746 de 2022. Decreto 21 de 2022. Decreto 1876 de 2021. Decreto 1875 de 2021. Decreto 1874 de 2021. Decreto 1292 de 2021. Decreto 1080 de 2021. Decreto 380 de 2021. Decreto 1736 de 2020. Decreto 1064 de 2020. Decreto 95 de 2020. Decreto 1341 de 2019. Decreto 2409 de 2018. Decreto 1140 de 2018. Decreto 2186 de 2017. Decreto 1996 de 2017. Decreto 787 de 2015. Decreto 2723 de 2014. Decreto 1118 de 2014. Decreto 2651 de 2013. Decreto 2650 de 2013. Decreto 2107 de 2013. Decreto 1094 de 2013. Decreto 575 de 2013. Decreto 2587 de 2012. Decreto 2562 de 2012. Decreto 1832 de 2012.**

**Nota, artículo 54: Artículo desarrollado por el Decreto 484 de 2019, por el Decreto 1474 de 2018, por el Decreto 1446 de 2014, por el Decreto 903 de 2014 y por el Decreto 1985 de 2013.**

Artículo 55. **Declarado inexequible por la Corte Constitucional en la Sentencia C-702 de 1999, providencia confirmada en la Sentencia C-990 de 1999.** *Comisión de seguimiento. El Presidente de la República dictará los decretos a que se refieren los artículos 51, 52 y 53 de la presente ley, previo concepto de una comisión integrada por cinco (5) Senadores y cinco (5) Representantes, designados por las respectivas mesas directivas para períodos de un año, no reelegibles.*

CAPITULO XII

Presidencia de la República, ministerios, departamentos administrativos y superintendencias

Artículo 56. Presidencia de la República. Corresponde al Presidente de la República la suprema dirección y la coordinación y control de la actividad de los organismos y entidades administrativos, al tenor del artículo 189 de la Constitución Política.

La Presidencia de la República estará integrada por el conjunto de servicios auxiliares del Presidente de la República y su régimen será el de un Departamento Administrativo.

Parágrafo. El Vicepresidente de la República ejercerá las misiones o encargos especiales que le confíe el Presidente de la República, de conformidad con lo establecido en la Constitución Política.

La Vicepresidencia de la República, estará integrada por el conjunto de servicios auxiliares que señale el Presidente de la República. **(Nota: Este inciso fue declarado exequible según corrección del Auto 76 de 2000 a la Sentencia C-727 de 2000.).**

**Nota 1, artículo 56: Ver artículo 1.1.1.1. del Decreto 1081 de 2015, Decreto Reglamentario Único del Sector Presidencia de la República.**

**Nota 2, artículo 56: Artículo desarrollado por el Decreto 107 d e2023, por el Decreto 1273 de 2020 y por el Decreto 2613 de 2013.**

**Nota 3, artículo 56: Ver Directiva Presidencial 4 de 2018. Ver Directiva Presidencia No. 4 de 2014. Ver Directiva Presidencial No. 2 de 2014.**

Artículo 57. Organización y funcionamiento de los ministerios y departamentos administrativos. De conformidad con el artículo 206 de la Constitución Política, el número, denominación y orden de precedencia de los ministerios y departamentos administrativos serán determinados por la ley. Compete al Presidente de la República distribuir entre ellos los negocios según su naturaleza.

Artículo 58. Objetivos de los ministerios y departamentos administrativos. Conforme a la Constitución, al acto de creación y a la presente ley, los ministerios y los departamentos administrativos tienen como objetivos primordiales la formulación y adopción de las políticas, planes generales, programas y proyectos del Sector Administrativo que dirigen.

**Conc. Resolución 2534 de 2018, M. Transporte.**

Artículo 59. Funciones. Corresponde a los ministerios y departamentos administrativos, sin perjuicio de lo dispuesto en sus actos de creación o en leyes especiales:

1. Preparar los proyectos de ley relacionados con su ramo.

2. Preparar los proyectos de decretos y resoluciones ejecutivas que deban dictarse en ejercicio de las atribuciones que corresponden al Presidente de la República como suprema autoridad administrativa y dar desarrollo a sus órdenes que se relacionen con tales atribuciones. **(Nota: Numeral desarrollado por el Decreto 199 de 2013.).**

3. Cumplir las funciones y atender los servicios que les están asignados y dictar, en desarrollo de la ley y de los decretos respectivos, las normas necesarias para tal efecto.

4. Preparar los anteproyectos de planes o programas de inversiones y otros desembolsos públicos correspondientes a su sector y los planes de desarrollo administrativo del mismo.

5. Coordinar la ejecución de sus planes y programas con las entidades territoriales y prestarles asesoría, cooperación y asistencia técnica.

6. Participar en la formulación de la política del Gobierno en los temas que les correspondan y adelantar su ejecución.

7. Orientar, coordinar y controlar, en la forma contemplada por las respectivas leyes y estructuras orgánicas, las superintendencias, las entidades descentralizadas y las sociedades de economía mixta que a cada uno de ellos estén adscritas o vinculadas.

8. Impulsar y poner en ejecución planes de desconcentración y delegación de las actividades y funciones en el respectivo sector.

9. Promover, de conformidad con los principios constitucionales, la participación de entidades y personas privadas en la prestación de servicios y actividades relacionados con su ámbito de competencia.

10. Organizar y coordinar el Comité Sectorial de Desarrollo Administrativo correspondiente.

11. Velar por la conformación del Sistema Sectorial de Información respectivo y hacer su supervisión y seguimiento.

**Nota 1, artículo 59: Artículo desarrollado por la Resolución 273 de 2010 y por la Resolución 2733 de 2010, M. de Ambiente.**

**Nota 2: Ver Decreto 1893 de 2021, artículo 3º.**

Artículo 60. Dirección de los ministerios. La dirección de los ministerios corresponde al Ministro, quien la ejercerá con la inmediata colaboración del viceministro o viceministros.

**Artículo 60: Ver Decreto 1258 de 2020.**

Artículo 61. Funciones de los ministros. Son funciones de los ministros, además de las que les señalan la Constitución Política y las disposiciones legales especiales, las siguientes:

a) Ejercer, bajo su propia responsabilidad, las funciones que el Presidente de la República les delegue o la ley les confiera y vigilar el cumplimiento de las que por mandato legal se hayan otorgado a dependencias del Ministerio, así como de las que se hayan delegado en funcionarios del mismo;

b) Participar en la orientación, coordinación y control de las superintendencias, entidades descentralizadas y sociedades de economía mixta, adscritas o vinculadas a su Despacho, conforme a las leyes y a los respectivos estatutos;

c) Dirigir y orientar la función de planeación del sector administrativo a su cargo;

d) Revisar y aprobar los anteproyectos de presupuestos de inversión y de funcionamiento y el prospecto de utilización de los recursos del crédito público que se contemplen para el sector a su cargo;

e) Vigilar el curso de la ejecución del presupuesto correspondiente al Ministerio;

f) Suscribir en nombre de la Nación y de conformidad con el Estatuto General de Contratación y la Ley Orgánica de Presupuesto, los contratos relativos a asuntos propios del Ministerio previa delegación del Presidente de la República;

g) Dirigir las funciones de administración de personal conforme a las normas sobre la materia;

h) Actuar como superior inmediato, sin perjuicio de la función nominadora, de los superintendentes y representantes legales de entidades descentralizadas adscritas o vinculadas.

Parágrafo. La representación de la Nación en todo tipo de procesos judiciales se sujetará a lo dispuesto en el Código Contencioso Administrativo y a las disposiciones especiales relacionadas.

**Conc.** **Resolución 294 de 2019. Resolución 338 de 2015**, M. de Agricultura y Desarrollo Rural.

**Nota, artículo 61: Artículo desarrollado por la Resolución 2734 de 2010 y por la Resolución 2733 de 2010, M. de Ambiente.**

Artículo 62. Viceministros. Son funciones de los viceministros, además de las que les señalan la Constitución Política, el acto de creación o las disposiciones legales especiales y, dependiendo del número existente en el respectivo Ministerio, las siguientes:

a) Suplir las faltas temporales del Ministro, cuando así lo disponga el Presidente de la República;

b) Asesorar al Ministro en la formulación de la política o planes de acción del Sector y asistirlo en las funciones de dirección, coordinación y control que le corresponden;

c) Asistir al Ministro en sus relaciones con el Congreso de la República y vigilar el curso de los proyectos de ley relacionados con el ramo;

d) Cumplir las funciones que el Ministro le delegue;

e) Representar al Ministro en las actividades oficiales que éste le señale;

f) Estudiar los informes periódicos u ocasionales que las distintas dependencias del Ministerio y las entidades adscritas o vinculadas a éste deben rendir al Ministro y presentarle las observaciones pertinentes;

g) Dirigir la elaboración de los informes y estudios especiales que sobre el desarrollo de los planes y programas del ramo deban presentarse;

h) Velar por la aplicación del Plan de Desarrollo Administrativo específico del sector respectivo;

i) Representar al Ministro, cuando éste se lo solicite, en las juntas, consejos u otros cuerpos colegiados a que deba asistir;

j) Garantizar el ejercicio del control interno y supervisar su efectividad y la observancia de sus recomendaciones. **(Nota: Ver Decreto 91 de 2010, artículo 12.).**

Artículo 63. Unidades ministeriales. La nomenclatura y jerarquía de las unidades ministeriales será establecida en el acto que determine la estructura del correspondiente Ministerio, con sujeción a la presente ley *y a la reglamentación del Gobierno*. **(Nota: Este artículo fue declarado exequible condicionalmente por la Corte Constitucional en la Sentencia C-727 de 2000, salvo las expresiones tachadas, las cuales fueron declaradas inexequibles en la misma Sentencia.).**

Artículo 64. Funciones de los jefes o directores de las unidades ministeriales. Son funciones de los jefes o directores de las distintas unidades ministeriales, además de las que les señalan la Constitución Política, el acto de creación y las disposiciones legales especiales, las siguientes:

a) Ejercer las atribuciones que les ha conferido la ley o que les han sido delegadas;

b) Asistir a sus superiores en el estudio de los asuntos correspondientes al Ministerio;

c) Dirigir, vigilar y coordinar el trabajo de sus dependencias en la ejecución de los programas adoptados y en el despacho correcto y oportuno de los asuntos de su competencia;

d) Rendir informe de las labores de sus dependencias y suministrar al funcionario competente apreciaciones sobre el personal bajo sus órdenes de acuerdo con las normas sobre la materia;

e) Proponer las medidas que estime procedentes para el mejor despacho de los asuntos del Ministerio.

Artículo 65. Organización y funcionamiento de los departamentos administrativos. La estructura orgánica y el funcionamiento de los departamentos administrativos, sin perjuicio de lo dispuesto en esta ley, se rigen por las normas de creación y organización. Habrá, en cada uno, un Director de Departamento y un Subdirector que tendrán las funciones, en cuanto fueren pertinentes, contempladas para el Ministro y los viceministros, respectivamente.

En los departamentos administrativos funcionarán, además, las unidades, los consejos, comisiones o comités técnicos que para cada uno se determinen.

Artículo 66. Organización y funcionamiento de las superintendencias. Las superintendencias son organismos creados por la ley, con la autonomía administrativa y financiera que aquella les señale, **sin personería jurídica**, que cumplen funciones de inspección y vigilancia atribuidas por la ley **o mediante delegación que haga el Presidente de la República previa autorización legal.**

La dirección de cada superintendencia estará a cargo del Superintendente. **(Nota: Las expresiones señaladas con negrilla en este artículo fueron declaradas exequibles por la Corte Constitucional en la Sentencia C-561 de 1999.).**

Artículo 67. Organización y funcionamiento de unidades administrativas especiales. Las Unidades Administrativas Especiales son organismos creados por la ley, con la autonomía administrativa y financiera que

aquélla les señale, sin personería jurídica, que cumplen funciones administrativas para desarrollar o ejecutar programas propios de un ministerio o departamento administrativo.


CAPITULO XIII


Entidades descentralizadas



Artículo 68. Entidades descentralizadas. Son entidades descentralizadas del orden nacional, los establecimientos públicos, las empresas industriales y comerciales del Estado, las sociedades públicas y las sociedades de economía mixta, las superintendencias y las unidades administrativas especiales con personería jurídica, las empresas sociales del Estado, **las empresas oficiales de servicios públicos** y las demás entidades creadas por la ley o con su autorización, cuyo objeto principal sea el ejercicio de funciones administrativas, la prestación de servicios públicos o la realización de actividades industriales o comerciales con personería jurídica, autonomía administrativa y patrimonio propio. Como órganos del Estado aun cuando gozan de autonomía administrativa están sujetas al control político y a la suprema dirección del órgano de la administración al cual están adscritas. **(Nota: El aparte señalado en negrilla en este inciso fue declarado exequible por los cargos analizados por la Corte Constitucional en la Sentencia C-736 de 2007.).**



Las entidades descentralizadas se sujetan a las reglas señaladas en la Constitución Política, en la presente ley, en las leyes que las creen y determinen su estructura orgánica y a sus estatutos internos.



Los organismos y entidades descentralizados, sujetos a regímenes especiales por mandato de la Constitución Política, se someterán a las disposiciones que para ellos establezca la respectiva ley.



Parágrafo 1°. De conformidad con el inciso segundo del artículo 210 de la Constitución Política, el régimen jurídico aquí previsto para las entidades descentralizadas es aplicable a las de las entidades territoriales sin perjuicio de las competencias asignadas por la Constitución y la ley a las autoridades del orden territorial.

Parágrafo 2°. Los organismos o entidades del Sector Descentralizado que tengan como objetivo desarrollar actividades científicas y tecnológicas, se sujetarán a la Legislación de Ciencia y Tecnología y su organización será determinada por el Gobierno Nacional.

Parágrafo 3°. Lo dispuesto en el presente artículo no se aplica a las corporaciones civiles sin ánimo de lucro de derecho privado, vinculadas al Ministerio del Medio Ambiente, creadas por la Ley 99 de 1993.

Artículo 69. Creación de las entidades descentralizadas. Las entidades descentralizadas, en el orden nacional, se crean por la ley, en el orden departamental, distrital y municipal, por la ordenanza o el acuerdo, o con su autorización, de conformidad con las disposiciones de la presente ley. El proyecto respectivo deberá acompañarse del estudio demostrativo que justifique la iniciativa, con la observancia de los principios señalados en el artículo 209 de la Constitución Política.

Artículo 70. Establecimientos públicos. Los establecimientos públicos son organismos encargados principalmente de atender funciones administrativas y de prestar servicios públicos conforme a las reglas del Derecho Público, que reúnen las siguientes características:

a) Personería jurídica;

b) Autonomía administrativa y financiera;

c) Patrimonio independiente, constituido con bienes o fondos públicos comunes, el producto de impuestos, rentas contractuales, ingresos propios, tasas o contribuciones de destinación especial, en los casos autorizados por la Constitución y en las disposiciones legales pertinentes.

Artículo 71. Autonomía administrativa y financiera. La autonomía administrativa y financiera de los establecimientos públicos se ejercerá

conforme a los actos que los rigen y en el cumplimiento de sus funciones, se ceñirán a la ley o norma que los creó o autorizó y a sus estatutos internos; y no podrán desarrollar actividades o ejecutar actos distintos de los allí previstos ni destinar cualquier parte de sus bienes o recursos para fines diferentes de los contemplados en ellos.

Artículo 72. Dirección y administración de los establecimientos públicos. La dirección y administración de los establecimientos públicos estará a cargo de un Consejo Directivo y de un director, gerente o presidente.

Artículo 73. Integración de los consejos de los establecimientos públicos y deberes de sus miembros. Los consejos directivos de los establecimientos públicos se integrarán en la forma que determine el respectivo acto de creación.

Todos los miembros de los consejos directivos o asesores de los establecimientos públicos deberán obrar en los mismos consultando la política gubernamental del respectivo sector y el interés del organismo ante el cual actúan.

Los consejos de los establecimientos públicos, salvo disposición legal en contrario, serán presididos por el Ministro o el Director de Departamento Administrativo a cuyo despacho se encuentre adscrita la entidad o por su delegado.

Artículo 74. Calidad de los miembros de los consejos directivos. Los particulares miembros de los consejos directivos o asesores de los establecimientos públicos, aunque ejercen funciones públicas, no adquieren por ese solo hecho la calidad de empleados públicos. Su responsabilidad, lo mismo que sus incompatibilidades e inhabilidades, se regirán por las leyes de la materia y los estatutos internos del respectivo organismo.

Artículo 75. Delegados oficiales ante los consejos directivos. Los ministros y directores de Departamento Administrativo y demás autoridades nacionales que puedan acreditar delegados suyos para formar parte de consejos directivos de establecimientos públicos, lo harán designando funcionarios del nivel Directivo o Asesor de sus correspondientes reparticiones administrativas o de organismos adscritos o vinculados a su Despacho.

Cuando se trate de consejos seccionales o locales se designará preferentemente funcionarios de la entidad territorial o de organismos descentralizados vinculados o adscritos a ella. Si además dichos consejos son presididos por el Gobernador o Alcalde de la jurisdicción a que corresponda el ejercicio de las funciones de los mismos, el Ministro o el Director de Departamento consultará al Gobernador o Alcalde, sin que por ese solo hecho exista obligación en la designación del delegado.

Artículo 76. Funciones de los consejos directivos de los establecimientos públicos. Corresponde a los consejos directivos de los establecimientos públicos:

a) Formular a propuesta del representante legal, la política general del organismo, los planes y programas que, conforme a la Ley Orgánica de Planeación y a la Ley Orgánica del Presupuesto deben proponerse para su incorporación a los planes sectoriales y a través de éstos, al Plan Nacional de Desarrollo;

b) Formular a propuesta del representante legal, la política de mejoramiento continuo de la entidad, así como los programas orientados a garantizar el desarrollo administrativo;

c) Conocer de las evaluaciones semestrales de ejecución presentadas por la administración de la entidad;

d) Proponer al Gobierno Nacional las modificaciones de la estructura orgánica que consideren pertinentes y adoptar los estatutos internos de la entidad y cualquier reforma que a ellos se introduzca de conformidad con lo dispuesto en sus actos de creación o reestructuración;

e) Aprobar el proyecto de presupuesto anual del respectivo organismo;

f) Las demás que les señalen la ley, el acto de creación y los estatutos internos.

**Conc. Decreto 1703 de 2014.**

**Nota, artículo 76:  Ver Decreto 76 de 2024, artículo 8º.**

Artículo 77. Designación del director, gerente o presidente de los establecimientos públicos. El director, gerente o presidente de los establecimientos públicos será nombrado y removido libremente por el Presidente de la República.

**Conc. Decreto 2608 de 2013.  Decreto 356 de 2013.**

Artículo 78. Calidad y funciones del director, gerente o presidente. El director, gerente o presidente será el representante legal de la correspondiente entidad, celebrará en su nombre los actos y contratos necesarios para el cumplimiento de sus objetivos y funciones, tendrá su representación judicial y extrajudicial y podrá nombrar los apoderados especiales que demande la mejor defensa de los intereses de la entidad.

A más de las que les señalen las leyes y reglamentos correspondientes, los representantes legales de los establecimientos públicos cumplirán todas aquellas funciones que se relacionen con la organización y funcionamiento, con el ejercicio de la autonomía administrativa y la representación legal, que no se hallen expresamente atribuidas a otra autoridad.

En particular les compete:

a) Dirigir, coordinar, vigilar y controlar la ejecución de las funciones o programas de la organización y de su personal;

b) Rendir informes generales o periódicos y particulares al Presidente de la República, al Ministro o Director de Departamento Administrativo respectivo, sobre las actividades desarrolladas, la situación general de la entidad y las medidas adoptadas que puedan afectar el curso de la política del Gobierno.

Parágrafo. Los establecimientos públicos nacionales, solamente podrán organizar seccionales o regionales, siempre que las funciones correspondientes no estén asignadas a las entidades del orden territorial. En este caso, el gerente o director seccional será escogido por el respectivo Gobernador, de ternas enviadas por el representante legal.

**Nota, artículo 78: Ver Resolución 36 de 2018, ICBF. D.o. 50.575, pag. 6**

Artículo 79. Régimen disciplinario de los miembros de los consejos y de los representantes legales de los establecimientos públicos. Además de lo dispuesto en la Constitución Política sobre inhabilidades de los congresistas, diputados y concejales, para ser miembro de los consejos directivos, director, gerente o presidente de los establecimientos públicos, se tendrán en cuenta las prohibiciones, incompatibilidades y sanciones previstas en el Decreto ley 128 de 1976, la Ley 80 de 1993 y demás normas concordantes que las modifiquen o sustituyan.

Artículo 80. Ejercicio de privilegios y prerrogativas. Los establecimientos públicos, como organismos administrativos que son, gozan de los mismos privilegios y prerrogativas que se reconocen a la Nación.

Artículo 81. Régimen de los actos y contratos. Los actos unilaterales que expidan los establecimientos públicos en ejercicio de funciones administrativas son actos administrativos y se sujetan a las disposiciones del Código Contencioso Administrativo.

Los contratos que celebren los establecimientos públicos se rigen por las normas del Estatuto Contractual de las entidades estatales contenido en

la Ley 80 de 1993 y las disposiciones que lo complementen, adicionen o modifiquen, sin perjuicio de lo dispuesto en las normas especiales.

Artículo 82. Unidades administrativas especiales y superintendencias con personería jurídica. Las unidades administrativas especiales y las superintendencias con personería jurídica, son entidades descentralizadas, con autonomía administrativa y patrimonial, las cuales se sujetan al régimen jurídico contenido en la ley que las crea y en lo no previsto por ella, al de los establecimientos públicos.

Artículo 83. Empresas sociales del Estado. Las empresas sociales del Estado, creadas por la Nación o por las entidades territoriales para la prestación en forma directa de servicios de salud se sujetan al régimen previsto en la Ley 100 de 1993, la Ley 344 de 1996 y en la presente ley en los aspectos no regulados por dichas leyes y a las normas que las complementen, sustituyan o adicionen.

Artículo 84. Empresas oficiales de servicios públicos. Las empresas oficiales de servicios públicos domiciliarios y las entidades públicas que tienen por objeto la prestación de los mismos se sujetarán a la Ley 142 de 1994, a lo previsto en la presente ley en los aspectos no regulados por aquélla y a las normas que las complementen, sustituyan o adicionen.

Artículo 85. Empresas industriales y comerciales del Estado. Las empresas industriales y comerciales del Estado son organismos creados por la ley o autorizados por ésta, que desarrollan actividades de naturaleza industrial o comercial y de gestión económica conforme a las reglas del Derecho Privado, salvo las excepciones que consagra la ley, y que reúnen las siguientes características:

a) Personería jurídica;

b) Autonomía administrativa y financiera;

c) Capital independiente, constituido totalmente con bienes o fondos públicos comunes, los productos de ellos, o el rendimiento de tasas que perciban por las funciones o servicios, y contribuciones de destinación especial en los casos autorizados por la Constitución. **(Nota: Este inciso fue declarado exequible por la Corte Constitucional en la Sentencia C-1442 de 2000.).**

El capital de las empresas industriales y comerciales del Estado podrá estar representado en cuotas o acciones de igual valor nominal.

A las empresas industriales y comerciales del Estado y a las sociedades de economía mixta se les aplicará en lo pertinente los artículos 19, numerales 2°, 4°, 5°, 6°, 12, 13, 17, 27, numerales 2°, 3°, 4°, 5°, y 7°, y 183 de la Ley 142 de 1994.

Parágrafo. Las disposiciones legales que protegen el secreto industrial y la información comercial se aplicarán a aquellos secretos e informaciones de esa naturaleza que desarrollen y posean las empresas industriales y comerciales del Estado.

Artículo 86. Autonomía administrativa y financiera. La autonomía administrativa y financiera de las empresas industriales y comerciales del Estado se ejercerá conforme a los actos que las rigen; en el cumplimiento de sus actividades, se ceñirán a la ley o norma que las creó o autorizó y a sus estatutos internos; no podrán destinar cualquier parte de sus bienes o recursos para fines diferentes de los contemplados en la ley o en sus estatutos internos; además de las actividades o actos allí previstos, podrán desarrollar y ejecutar todos aquellos que sean necesarios para el cumplimiento del objeto asignado.

Artículo 87. Privilegios y prerrogativas. Las empresas industriales y comerciales del Estado como integrantes de la Rama Ejecutiva del Poder Público, salvo disposición legal en contrario, gozan de los privilegios y prerrogativas que la Constitución Política y las leyes confieren a la Nación y a las entidades territoriales, según el caso.

No obstante, las empresas industriales y comerciales del Estado, que por razón de su objeto compitan con empresas privadas, no podrán ejercer aquellas prerrogativas y privilegios que impliquen menoscabo de los principios de igualdad y de libre competencia frente a las empresas privadas.

Artículo 88. Dirección y administración de las empresas. La dirección y administración de las empresas industriales y comerciales del Estado estará a cargo de una Junta Directiva y de un Gerente o Presidente.

Artículo 89. Juntas directivas de las empresas estatales. La integración de las juntas directivas de las empresas industriales y comerciales del Estado, la calidad y los deberes de sus miembros, su remuneración y el régimen de sus inhabilidades e incompatibilidades se regirán por las disposiciones aplicables a los establecimientos públicos conforme a la presente ley.

Además, los delegados de organizaciones privadas en las juntas directivas de las empresas no podrán ostentar cargos de dirección en empresas privadas que desarrollen actividades similares a las de la empresa ante la cual actúan y en todo caso deberán declararse impedidos cuando ocurran conflictos de intereses.

Artículo 90. Funciones de las juntas directivas de las empresas industriales y comerciales del Estado. Corresponde a las juntas directivas de las empresas industriales y comerciales del Estado:

a) Formular la política general de la empresa, el plan de desarrollo administrativo y los planes y programas que, conforme a la Ley Orgánica de Planeación y a la Ley Orgánica del Presupuesto, deben proponerse para su incorporación a los planes sectoriales y, a través de éstos, al Plan Nacional de Desarrollo;

b) Proponer al Gobierno Nacional las modificaciones a la estructura orgánica que consideren pertinentes y adoptar los estatutos internos de la

entidad y cualquier reforma que a ellos se introduzca;

c) Aprobar el proyecto de presupuesto del respectivo organismo;

d) Controlar el funcionamiento general de la organización y verificar su conformidad con la política adoptada;

e) Las demás que les señalen la ley y los estatutos internos.

Artículo 91. Designación del Gerente o Presidente de las empresas industriales y comerciales del Estado. El Gerente o Presidente de las empresas industriales y comerciales del Estado es agente del Presidente de la República, **de su libre nombramiento y remoción. (Nota: El aparte señalado en negrillas en este artículo fue declarado exequible por la Corte Constitucional en la Sentencia C-599 de 2000.).**

**Conc. Decreto 2243 de 2013.**

Artículo 92. Calidad y funciones del Gerente o Presidente. El Gerente o Presidente será el representante legal de la correspondiente entidad y cumplirá todas aquellas funciones que se relacionen con la organización y funcionamiento que no se hallen expresamente atribuidas a otra autoridad.

Artículo 93. Régimen de los actos y contratos. Los actos que expidan las empresas industriales y comerciales del Estado para el desarrollo de su actividad propia, industrial o comercial o de gestión económica se sujetarán a las disposiciones del Derecho Privado. Los contratos que celebren para el cumplimiento de su objeto se sujetarán a las disposiciones del Estatuto General de Contratación de las entidades estatales.

Artículo 94. Asociación de las empresas industriales y comerciales del Estado. Las empresas y sociedades que se creen con la participación exclusiva de una o varias empresas industriales y comerciales del Estado o entre éstas y otras entidades descentralizadas y entidades territoriales se rigen por las disposiciones establecidas en los actos de creación, y las disposiciones del Código de Comercio. Salvo las reglas siguientes: **(Nota: El inciso 1º fue declarado exequible condicionalmente por los cargos examinados por la Corte Constitucional en la Sentencia C-691 de 2007, exequibilidad confirmada condicionalmente en la Sentencia C-262 de 2008.).**

1. Filiales de las Empresas Industriales y Comerciales

Para los efectos de la presente ley se entiende por empresa filial de una empresa industrial y comercial del Estado aquélla en que participe una empresa industrial y comercial del Estado con un porcentaje superior al 51% del capital total.

2. Características jurídicas

Cuando en el capital de las empresas filiales participen más de una empresa industrial y comercial del Estado, entidad territorial u otra entidad descentralizada, la empresa filial se organizará como sociedad comercial de conformidad con las disposiciones del Código de Comercio.

3. Creación de filiales

Las empresas industriales y comerciales del Estado y las entidades territoriales que concurran a la creación de una empresa filial actuarán previa autorización de la ley, la ordenanza departamental o el acuerdo del respectivo Concejo Distrital o Municipal, la cual podrá constar en norma especial **o en el correspondiente acto de creación y organización de la entidad o entidades participantes.** **(Nota: Las expresiones señaladas con negrilla en este numeral fueron declaradas exequibles por la Corte Constitucional en la Sentencia C-953 de 1999.).**

4. Régimen jurídico

El funcionamiento y en general el régimen jurídico de los actos, contratos, servidores y las relaciones con terceros se sujetarán a las disposiciones del derecho privado, en especial las propias de las empresas y sociedades previstas en el Código de Comercio y legislación complementaria. **(Nota: Este numeral fue declarado exequible por los cargos examinados por la Corte Constitucional en la Sentencia C-691 de 2007, exequibilidad confirmada condicionalmente en la Sentencia C-262 de 2008.).**

5. Régimen especial de las filiales creadas con participación de particulares

Las empresas filiales en las cuales participen particulares se sujetarán a las disposiciones previstas en esta ley para las sociedades de economía mixta.

6. Control administrativo sobre las empresas filiales

En el acto de constitución de una empresa filial, cualquiera sea la forma que revista, deberán establecerse los instrumentos mediante los cuales la empresa industrial y comercial del Estado que ostente la participación mayoritaria asegure la conformidad de la gestión con los planes y programas y las políticas del sector administrativo dentro del cual actúen.

**Nota, artículo 94: Ver Decreto 403 de 2020, artículo 52.**

Artículo 95. Asociación entre entidades públicas. Las entidades públicas podrán asociarse con el fin de cooperar en el cumplimiento de funciones administrativas o de prestar conjuntamente servicios que se hallen a su cargo, mediante la celebración de convenios interadministrativos o la conformación de personas jurídicas sin ánimo de lucro.

Las personas jurídicas sin ánimo de lucro que se conformen por la asociación exclusiva de entidades públicas, se sujetan a las disposiciones previstas en el Código Civil y en las normas para las entidades de este género. Sus Juntas o Consejos Directivos estarán integrados en la forma que prevean los correspondientes estatutos internos, los cuales proveerán igualmente sobre la designación de su representante legal.

*Parágrafo. La Conferencia de Gobernadores, la Federación de Municipios, la Asociación de Alcaldes y las asociaciones de municipalidades se regirán por sus actos de conformación y, en lo pertinente, por lo dispuesto en el presente artículo*. **(Nota: Este artículo fue declarado exequible condicionalmente por la Corte Constitucional en la Sentencia C-671 de 1999, salvo su parágrafo, el cual fue declarado inexequible en la misma sentencia.).**

**Nota, artículo 95: Ver Decreto 403 de 2020, artículo 52. Ver Decreto 1066 de 2015, artículo 2.2.5.1.1. parágrafo 2.**

Artículo 96. Constitución de asociaciones y fundaciones para el cumplimiento de las actividades propias de las entidades públicas con participación de particulares. Las entidades estatales, cualquiera sea su naturaleza y orden administrativo podrán, con la observancia de los principios señalados en el artículo 209 de la Constitución, asociarse con personas jurídicas particulares, mediante la celebración de convenios de asociación o la creación de personas jurídicas, para el desarrollo conjunto de actividades en relación con los cometidos y funciones que les asigna a aquéllas la ley.

Los convenios de asociación a que se refiere el presente artículo se celebrarán de conformidad con lo dispuesto en el artículo 355 de la Constitución Política, en ellos se determinará con precisión su objeto, término, obligaciones de las partes, aportes, coordinación y todos aquellos aspectos que se consideren pertinentes.

Cuando en virtud de lo dispuesto en el presente artículo, surjan personas jurídicas sin ánimo de lucro, éstas se sujetarán a las disposiciones previstas en el Código Civil para las asociaciones civiles de utilidad común.

En todo caso, en el correspondiente acto constitutivo que dé origen a una persona jurídica se dispondrá sobre los siguientes aspectos:

a) Los objetivos y actividades a cargo, con precisión de la conexidad con los objetivos, funciones y controles propios de las entidades públicas participantes;

b) Los compromisos o aportes iniciales de las entidades asociadas y su naturaleza y forma de pago, con sujeción a las disposiciones presupuestales y fiscales, para el caso de las públicas;

c) La participación de las entidades asociadas en el sostenimiento y funcionamiento de la entidad;

d) La integración de los órganos de dirección y administración, en los cuales deben participar representantes de las entidades públicas y de los particulares;

e) La duración de la asociación y las causales de disolución.

**Nota 1, artículo 96:** Ver **Ley 2294 de 2023**, artículo 270. Ver **Decreto 403 de 2020**, artículo 52. Ver **Decreto 1066 de 2015**, artículo 2.2.5.1.1. parágrafo 2.

**Nota 2, artículo 96:** Este artículo fue declarado exequible por la Corte Constitucional en la Sentencia **C-671 de 1999**.

CAPITULO XIV

Sociedades de economía mixta

Artículo 97. **Reglamentado por el Decreto 180 de 2008.** Sociedades de economía mixta. Las sociedades de economía mixta son organismos autorizados por la ley, constituidos bajo la forma de sociedades comerciales con aportes estatales y de capital privado, que desarrollan actividades de naturaleza industrial o comercial conforme a las reglas de Derecho Privado, salvo las excepciones que consagra la ley.

**Inciso declarado inexequible por la Corte Constitucional en la Sentencia C-953 de 1999.** *Para que una sociedad comercial pueda ser calificada como de economía mixta es necesario que el aporte estatal, a través de la Nación, de entidades territoriales, de entidades*

*descentralizadas y de empresas industriales y comerciales del Estado o sociedades de economía mixta no sea inferior al cincuenta por ciento (50%) del total del capital social, efectivamente suscrito y pagado.*

Las inversiones temporales de carácter financiero no afectan su naturaleza jurídica ni su régimen.

Parágrafo. Los regímenes de las actividades y de los servidores de las sociedades de economía mixta en las cuales el aporte de la Nación, de entidades territoriales y de entidades descentralizadas, sea igual o superior al noventa (90%) del capital social es el de las empresas industriales y comerciales del Estado.

**Nota, artículo 97: Artículo desarrollado por el Decreto 529 de 1999.**

Artículo 98. Condiciones de participación de las entidades públicas. En el acto de constitución de toda sociedad de economía mixta se señalarán las condiciones para la participación del Estado que contenga la disposición que autorice su creación, el carácter nacional, departamental, distrital o municipal de la sociedad; así como su vinculación a los distintos organismos para efectos del control que ha de ejercerse sobre ella.

Artículo 99. Representación de las acciones de la Nación y de las entidades públicas. La representación de las acciones que posean las entidades públicas o la Nación en una Sociedad de Economía Mixta corresponde al Ministro o Jefe de Departamento Administrativo a cuyo despacho se halle vinculada dicha Sociedad.

Lo anterior no se aplicará cuando se trate de inversiones temporales de carácter financiero en el mercado bursátil.

Cuando el accionista sea un establecimiento público o una empresa industrial y comercial del Estado, su representación corresponderá al respectivo representante legal, pero podrá ser delegada en los funcionarios que indiquen los estatutos internos.

Artículo 100. Naturaleza de los aportes estatales. En las sociedades de economía mixta los aportes estatales podrán consistir, entre otros, en ventajas financieras o fiscales, garantía de las obligaciones de la sociedad o suscripción de los bonos que la misma emita. El Estado también podrá aportar títulos mineros y aportes para la explotación de recursos naturales de propiedad del Estado.

El aporte correspondiente se computará a partir del momento en que se realicen de manera efectiva o se contabilicen en los respectivos balances los ingresos representativos.

Artículo 101. Transformación de las sociedades en empresas. Cuando las acciones o cuotas sociales en poder de particulares sean transferidas a una o varias entidades públicas, la sociedad se convertirá, sin necesidad de liquidación previa, en empresa industrial y comercial o en Sociedad entre entidades públicas. Los correspondientes órganos directivos de la entidad procederán a modificar los estatutos internos en la forma a que hubiere lugar.

Artículo 102. Inhabilidades e incompatibilidades. Los representantes legales y los miembros de los consejos y juntas directivas de los establecimientos públicos, de las empresas industriales y comerciales del Estado y de las sociedades de economía mixta **en las que la Nación o sus entidades posean el noventa por ciento (90%) o más de su capital social** y de las empresas **oficiales** de servicios públicos domiciliarios, estarán sujetos al régimen de inhabilidades, incompatibilidades, y responsabilidades previstas en el Decreto 128 de 1976 y demás normas que lo modifiquen o adicionen. **(Nota: Los apartes señalados en negrilla en este artículo fueron declarados exequibles por los cargos analizados por la Corte Constitucional en la Sentencia C-736 de 2007.).**

CAPITULO XV

Control administrativo

Artículo 103. Titularidad del control. El Presidente de la República como suprema autoridad administrativa y los ministros y directores de Departamento Administrativo, ejercerán control administrativo sobre los organismos o entidades que conforman la Administración Pública.

Artículo 104. Orientación y la finalidad. El control administrativo que de acuerdo con la ley corresponde a los ministros y directores de los departamentos administrativos se orientará a constatar y asegurar que las actividades y funciones de los organismos y entidades que integran el respectivo sector administrativo se cumplan en armonía con las políticas gubernamentales, dentro de los principios de la presente ley y de conformidad con los planes y programas adoptados.

Artículo 105. Control administrativo. El control administrativo sobre las entidades descentralizadas no comprenderá la autorización o aprobación de los actos específicos que conforme a la ley competa expedir a los órganos internos de esos organismos y entidades.

No obstante, se exceptúa de esta regla el presupuesto anual, que debe someterse a los trámites y aprobaciones señalados en la Ley Orgánica de Presupuesto.

Artículo 106. Control de las empresas industriales y comerciales del Estado y de las sociedades de economía mixta. El control administrativo de las empresas industriales y comerciales del Estado y las sociedades de economía mixta se cumplirá en los términos de los correspondientes convenios, planes o programas que deberán celebrarse periódicamente con la Nación, a través del respectivo Ministerio o Departamento Administrativo.

Artículo 107. Convenios para la ejecución de planes y programas. Con la periodicidad que determinen las normas reglamentarias, la Nación y las entidades territoriales podrán celebrar convenios con las entidades

descentralizadas del correspondiente nivel administrativo, para la ejecución de los planes y programas que se adopten conforme a las normas sobre planeación.

En dichos convenios se determinarán los compromisos y obligaciones de las entidades encargadas de la ejecución, los plazos, deberes de información e instrumentos de control para garantizar la eficiencia y la eficacia de la gestión.

Estos convenios se entenderán perfeccionados con la firma del representante legal de la Nación, o de la entidad territorial y de la respectiva entidad o empresa y podrán ejecutarse una vez acreditada, si a ello hubiere lugar, la certificación de registro de disponibilidad presupuestal. Además de las cláusulas usuales según su naturaleza, podrá pactarse cláusula de caducidad para los supuestos de incumplimiento por parte de la entidad descentralizada o empresa industrial y comercial del Estado.

Artículo 108. Convenios de desempeño. La Nación y las entidades territoriales podrán condicionar la utilización y ejecución de recursos de sus respectivos presupuestos por parte de las entidades descentralizadas y sociedades de economía mixta, cuya situación financiera, de conformidad con la correspondiente evaluación por parte de los órganos de control interno, no permita cumplir de manera eficiente y eficaz su objeto propio.

Tales condicionamientos se plasmarán en un convenio de desempeño en el cual se determinarán objetivos, programas de acción en los aspectos de organización y funcionamiento y técnicos para asegurar el restablecimiento de las condiciones para el buen desempeño de la entidad, en función de los objetivos y funciones señalados por el acto de creación.

Artículo 109. Control de las entidades descentralizadas indirectas y de las filiales de las empresas industriales y comerciales del Estado. El control administrativo sobre las actividades y programas de las entidades descentralizadas indirectas se ejercerá mediante la intervención de los representantes legales de los organismos y entidades participantes o sus

delegados, en los órganos internos de deliberación y dirección de la entidad.

Igual regla se aplicará en relación con las filiales de las empresas industriales y comerciales del Estado y las sociedades de economía mixta.

CAPITULO XVI

Ejercicio de funciones administrativas por particulares

Artículo 110. Condiciones para el ejercicio de funciones administrativas por particulares. Las personas naturales y jurídicas privadas podrán ejercer funciones administrativas, salvo *disposición legal en contrario*, bajo las siguientes condiciones:

La regulación, el control, la vigilancia y la orientación de la función administrativa corresponderá en todo momento, dentro del marco legal a la autoridad o entidad pública titular de la función la que, en consecuencia, deberá impartir las instrucciones y directrices necesarias para su ejercicio.

Sin perjuicio de los controles pertinentes por razón de la naturaleza de la actividad, la entidad pública que confiera la atribución de las funciones ejercerá directamente un control sobre el cumplimiento de las finalidades, objetivos, políticas y programas que deban ser observados por el particular.

Por motivos de interés público o social y en cualquier tiempo, la entidad o autoridad que ha atribuido a los particulares el ejercicio de las funciones administrativas puede dar por terminada la autorización.

La atribución de las funciones administrativas deberá estar precedida de acto administrativo y acompañada de convenio, *si fuere el caso*. **(Nota: Las expresiones tachadas en este artículo, fueron declaradas inexequibles por la Corte Constitucional en la Sentencia C-866 de 1999, la cual declaró exequible el resto del artículo del mismo en los términos señalados en dicha Sentencia.).**

Artículo 111. Requisitos y procedimientos de los actos administrativos y convenios para conferir funciones administrativas a particulares. Las entidades o autoridades administrativas podrán conferir el ejercicio de funciones administrativas a particulares, bajo las condiciones de que trata el artículo anterior, cumpliendo los requisitos y observando el procedimiento que se describe a continuación:

1. Expedición de acto administrativo, decreto ejecutivo, en el caso de ministerios o departamentos administrativos o de acto de la junta o consejo directivo, en el caso de las entidades descentralizadas, que será sometido a la aprobación del Presidente de la República, o por delegación del mismo, de los ministros o directores de departamento administrativo, *de los gobernadores y de los alcaldes, según el orden a que pertenezca la entidad u organismo*, mediante el cual determine: **(Nota: Las expresiones tachadas en este inciso, fueron declaradas inexequibles por la Corte Constitucional en la Sentencia C-866 de 1999.).**

a) Las funciones específicas que encomendará a los particulares; **(Nota: Este literal fue declarado exequible por la Corte Constitucional en la Sentencia C-866 de 1999.).**

b) Las calidades y requisitos que deben reunir las entidades o personas privadas;

c) Las condiciones del ejercicio de las funciones;

d) La forma de remuneración, si fuera el caso;

e) La duración del encargo y las garantías que deben prestar los particulares con el fin de asegurar la observancia y la aplicación de los principios que conforme a la Constitución Política y a la ley gobiernan el ejercicio de las funciones administrativas.

2. La celebración de convenio, *si fuere el caso*, cuyo plazo de ejecución será de cinco (5) años *prorrogables* y para cuya celebración la entidad o autoridad deberá: **(Nota: Las expresiones tachadas en este numeral, fueron**

**declaradas inexequibles por la Corte Constitucional en la Sentencia C-866 de 1999 y aquella resaltada y subrayada, fue declarada inexequible en la Sentencia C-702 de 1999, Providencia confirmada en las Sentencias C-866 de 1999 y C-990 de 1999.).**

Elaborar un pliego o términos de referencia, con fundamento en el acto administrativo expedido y formular convocatoria pública para el efecto teniendo en cuenta los principios establecidos en la Ley 80 de 1993 para la contratación por parte de entidades estatales.

Pactar en el convenio las cláusulas excepcionales previstas en la Ley 80 de 1993 y normas complementarias, una vez seleccionado el particular al cual se conferirá el ejercicio de las funciones administrativas.

**Nota, artículo 111: Este artículo – con excepción de lo anotado anteriormente- fue declarado exequible por la Corte Constitucional en la Sentencia C-866 de 1999, en los términos establecidos en la misma.**

Artículo 112. Régimen jurídico de los actos y contratos. La celebración del convenio y el consiguiente ejercicio de funciones administrativas no modifica la naturaleza ni el régimen aplicable a la entidad o persona privada que recibe el encargo de ejercer funciones administrativas. No obstante, los actos unilaterales están sujetos en cuanto a su expedición, y requisitos externos e internos, a los procedimientos de comunicación e impugnación a las disposiciones propias de los actos administrativos. Igualmente si se celebran contratos por cuenta de las entidades privadas, los mismos se sujetarán a las normas de contratación de las entidades estatales.

Artículo 113. Inhabilidades e incompatibilidades. Los representantes legales de las entidades privadas o de quienes hagan sus veces, encargadas del ejercicio de funciones administrativas están sometidos a las prohibiciones e incompatibilidades aplicables a los servidores públicos, en relación con la función conferida.

Los representantes legales y los miembros de las juntas directivas u órganos de decisión de las personas jurídicas privadas que hayan ejercido

funciones administrativas, no podrán ser contratistas ejecutores de las decisiones en cuya regulación y adopción hayan participado.

Artículo 114. Control sobre las funciones. Sin perjuicio de los controles pertinentes por razón de la naturaleza de la actividad, la entidad pública que confiera la atribución de las funciones ejercerá directamente un control sobre el cumplimiento de las finalidades, objetivos, políticas y programas que deban ser observados por el particular.

CAPITULO XVII

Disposiciones finales

Artículo 115. Planta global y grupos internos de trabajo. El Gobierno Nacional aprobará las plantas de personal de los organismos y entidades de que trata la presente ley de manera global. En todo caso el director del organismo distribuirá los cargos de acuerdo con la estructura, las necesidades de la organización y sus planes y programas.

Con el fin de atender las necesidades del servicio y cumplir con eficacia y eficiencia los objetivos, políticas y programas del organismo o entidad, su representante legal podrá crear y organizar, con carácter permanente o transitorio, grupos internos de trabajo.

En el acto de creación de tales grupos se determinarán las tareas que deberán cumplir y las consiguientes responsabilidades y las demás normas necesarias para su funcionamiento.

**Conc. Decreto 2651 de 2013. Decreto 2463 de 2013.**

**Nota 1, artículo 115: Artículo desarrollado por el Decreto 4620 de 2010.**

Nota 2, artículo 115: Ver Resolución 82 de 2017, IM. D.O. 50.219, pag. 1.

Artículo 116. Responsabilidad de los miembros de las comisiones, comités o consejos. Quienes participen a cualquier título, de manera permanente o transitoria, en las comisiones, comités o consejos a que se refiere la presente ley, sin perjuicio de lo dispuesto sobre los miembros de las juntas o consejos de las entidades descentralizadas, responderán por su actuación en los mismos términos que la ley señala para los servidores públicos.

Nota, artículo 116: Ver Resolución 82 de 2017, IM. D.O. 50.219, pag. 1.

Artículo 117. Investigación. Para mejorar procesos y resultados y para producir factores de desarrollo, las entidades públicas dispondrán lo necesario al impulso de su perfeccionamiento mediante investigaciones sociales, económicas y/o culturales según sus áreas de competencia, teniendo en cuenta tendencias internacionales y de futuro.

Artículo 118. Reorganización. Sin perjuicio de sus facultades permanentes, dentro de los doce meses siguientes a la vigencia de la presente ley, las entidades a las que ella se aplica efectuarán y promoverán las reformas necesarias para adecuar la organización y funcionamiento a sus principios y reglas.

Parágrafo. Las entidades continuarán organizadas y funcionando de acuerdo con las normas vigentes a la fecha de promulgación de la presente ley hasta cuando se aprueben las reformas a que se refiere el presente artículo.

Artículo 119. Publicación en el Diario Oficial . A partir de la vigencia de la presente ley, todos los siguientes actos deberán publicarse en el Diario Oficial:

a) Los actos legislativos y proyectos de reforma constitucional aprobados en primera vuelta;

b) Las leyes y los proyectos de ley objetados por el Gobierno;

c) Los decretos con fuerza de ley, los decretos y resoluciones ejecutivas expedidas por el Gobierno Nacional y los demás actos administrativos de carácter general, expedidos por todos los órganos, dependencias, entidades u organismos del orden nacional de las distintas Ramas del Poder Público y de los demás órganos de carácter nacional que integran la estructura del Estado.

Parágrafo. Unicamente con la publicación que de los actos administrativos de carácter general se haga en el Diario Oficial, se cumple con el requisito de publicidad para efectos de su vigencia y oponibilidad.

**Conc.** **Decreto 113 de 2023**. **Decreto 867 de 2021**. **Decreto 866 de 2021**.

**Nota, artículo 119: Este artículo fue declarado exequible por la Corte Constitucional en las Sentencias C-957 de 1999 y C-646 de 2000, en relación con los cargos analizados en la misma.**

Artículo 120. **Declarado inexequible por la Corte Constitucional en la Sentencia C-702 de 1999, providencia confirmada en las Sentencias C-923 de 1999, C-953 de 1999, C-954 de 1999, C-990 de 1999 y C-109 de 2000.** *Facultades Extraordinarias. De conformidad con lo dispuesto en el numeral 10 del artículo 150 de la Constitución Política, revístese al Presidente de la República de precisas facultades extraordinarias para que en el término de seis meses, contados a partir de la fecha de la publicación de la presente ley, expida normas con fuerza de ley para:*

*1. Suprimir, fusionar, reestructurar o transformar entidades, organismos y dependencias de la Rama Ejecutiva del poder Público del orden nacional, esto es, consejos superiores, comisiones de regulación, juntas y comités; ministerios y departamentos administrativos; superintendencias; establecimientos públicos; empresas industriales y comerciales del Estado; unidades administrativas especiales; empresas sociales del*

*Estado; empresas estatales prestadoras de servicios públicos; institutos científicos y tecnológicos; entidades de naturaleza única y las demás entidades y organismos administrativos del orden nacional que hayan sido creados o autorizados por la ley.*

*2. Disponer la fusión, escisión o disolución y consiguiente liquidación de sociedades entre entidades públicas, de sociedades de economía mixta, de sociedades descentralizadas indirectas y de asociaciones de entidades públicas, en las cuales exista participación de entidades públicas del orden nacional.*

*3. Dictar el régimen para la liquidación y disolución de entidades públicas del orden nacional.*

*4. Suprimir o reformar regulaciones, procedimientos y trámites innecesarios existentes en la administración pública.*

*5. Revisar y ajustar las normas del servicio exterior y la carrera diplomática.*

*6. Modificar la estructura de la Contraloría General de la República, determinar la organización y funcionamiento de su auditoría externa; suprimir, fusionar, reestructurar, transformar o liquidar el Fondo de Bienestar Social de que trata la Ley 106 de 1993, determinar el sistema de nomenclatura, clasificación y remuneración de los empleados de la Contraloría General de la República, pudiendo crear, suprimir o fusionar empleos y prever las normas que deben observarse para el efecto; y dictar las normas sobre la Carrera Administrativa Especial de que trata el ordinal 10 del artículo 268 de la Constitución Política y establecer todas las características que sean competencia de la ley referentes a su régimen personal.*

*7. Modificar la estructura de la Fiscalía General de la Nación y de la Procuraduría General de la Nación; determinar el sistema de nomenclatura, clasificación y remuneración de sus servidores públicos, crear, suprimir y fusionar empleos en dichas entidades; modificar el régimen de competencias interno y modificar el régimen de Carrera Administrativa previsto para los servidores de tales entidades.*

*Parágrafo 1°. Las facultades extraordinarias conferidas por el presente artículo, se ejercitarán por el Gobierno con el propósito de racionalizar el aparato estatal, garantizar la eficiencia y la eficacia de la función administrativa y reducir el gasto público.*

*Parágrafo 2°. El acto que ordene la fusión, supresión o disolución y liquidación, dispondrá sobre la subrogación de obligaciones y derechos de los organismos o entidades fusionados, suprimidos o disueltos, la titularidad y destinación de bienes o rentas, y la forma en que se continuarán ejerciendo los derechos, los ajustes presupuestales necesarios, el régimen aplicable a la liquidación y, de conformidad con las normas que rigen la materia contenidas en la Ley 443 de 1998, la situación de los servidores públicos vinculados a ellas.*

*Parágrafo 3°. En ejercicio de las facultades conferidas por el presente artículo, el Presidente de la República no podrá modificar códigos, leyes estatutarias, orgánicas y aquéllas de que trate el numeral 19 del artículo 150 de la Constitución Política.*

*Igualmente, en ejercicio de estas facultades, el Presidente de la República no podrá fusionar o suprimir entidades u organismos creados o previstos por la Constitución Política.*

*Así mismo, salvo lo previsto en los numerales 6° y 7°, el ejercicio de las facultades que se confieren en el presente artículo, no incluye los órganos, dependencias o entidades a las cuales la Constitución Política le reconoce un régimen de autonomía.*

*Parágrafo 4°. Las facultades de que tratan los numerales 6° y 7° del presente artículo serán ejercidas una vez oído el concepto del Contralor General de la República, del Fiscal General de la Nación y del Procurador General de la Nación, en lo relativo a sus respectivas entidades.*

*Parágrafo 5°. Por virtud de las facultades contenidas en el presente artículo el Gobierno no podrá crear ninguna nueva entidad u organismo público del orden nacional. En tal sentido se considera que se crea una entidad nueva cuando quiera que la resultante del ejercicio de las facultades persiga objetivos esencialmente distintos de aquellos originalmente determinados por el legislador para la entidad o entidades respectivas.*

Artículo 121. Vigencia y derogatorias. La presente ley rige a partir de su promulgación y deroga las disposiciones que le sean contrarias, en especial los Decretos-leyes 1050 de 1968, 3130 de 1968 y 130 de 1976.

El Presidente del honorable Senado de la República,

Fabio Valencia Cossio.

El Secretario General del honorable Senado de la República,

Manuel Enríquez Rosero.

El Presidente de la honorable Cámara de Representantes,

Emilio Martínez Rosales.

El Secretario General de la honorable Cámara de Representantes,

Gustavo Bustamante Moratto.

REPUBLICA DE COLOMBIA-GOBIERNO NACIONAL

Publíquese y ejecútese.

Dada en Santa Fe de Bogotá, D. C., a 29 de diciembre de 1998.

ANDRES PASTRANA ARANGO

El Ministro del Interior,

Néstor Humberto Martínez Neira.

El Director del Departamento Administrativo de la Función Pública,

Mauricio Zuluaga Ruiz.

# English Translation
# of Exhibit 18

# LAW 489 OF 1998

(December 29)

by which norms are dictated on the organization and operation of entities of the national order, the provisions, principles and general rules for the exercise of the powers provided for in numerals 15 and 16 of article 189 are issued of the Political Constitution and other provisions are issued.

LEGISLATIVE BACKGROUND:

BILL PUBLISHED IN GAZETTE 349/97 _____

**Note 1: Partially repealed by Decree 1499 of 2017.** _____

**Note 2: Modified by Decree 19 of 2012, by Law 1474 of 2011 and by Decree 4415 of 2011.** _____
_____

**Note 3: Developed by Decree 107 of 2023, by Decree 1136 of 2022, by Decree 648 of 2017, by Decree 1652 of 2015, by Decree 1510 of 2014, by Decree 1446 of 2014, by Decree 903 of 2014, by Decree 858 of 2014, by Decree 2766 of 2013, by Decree 2613 of 2013, by Decree 1987 of 2013, by Decree 1985 of 2013, by Decree 199 of 2013, by Decree 32 of 2013, by Decree 2482 of 2012, by Decree 750 of 2012, by Decree 4620 of 2010, by Resolution 2734 of 2010, Ministry of Environment, by Resolution 2733 of 2010, M. of Environment by Decree 3269 of 2009, by Decree 600 of 2008, by Resolution 473 of 2008, M. of Social Protection, by Decree 3622 of 2005 and by Decree 797 of 1999.** _____
_____  _____  _____  _____
_____  _____  _____
_____  _____

**Note 4: See Decree 1081 of 2015. See Decree 1078 of 2015, See Law 1753 of 2015. See Decree 457 of 2014. See Resolution 2143 of 2010, Ministry of Defense, Resolution 2727 of 2009, M. of Culture, Law 1341 of 2009, Article 18, Decree 1972 of 2002, Decree 955 of 2002, Decree 573 of 2002, Decree 29 of 2002 and Decree 23 of 2002.** _____
_____  _____  _____  _____
_____

**Note 5: Partially regulated by Decree 180 of 2008, by Decree 3622 of 2005, Decree 2740 of 2001, Decree 1714 of 2000, Decree 910 of 2000, Decree 1714 of 2000 and by Decree 529 of 1999.** _____
_____  _____  _____

Note 6: Cited in the Journal of the University of Medellin. Legal Opinion. Vol.
11 No. 21. Individuals who perform administrative functions: the case of professional ethics courts. David Suarez
Tamayo. Maria Fernanda Posada Puerta. Paulina Mejia Londono.

Note 7: Cited in the Journal of the University of Medellin. Legal Opinion. Vol.
11. No. 22. Legal research in the Andean Region of Colombia 2008-2011 . Jorge Eduardo Vasquez Santamaria.

Note 8: Cited in the Journal of the University of Medellin. Legal Opinion. Vol.
12. No. 23. Environmental preventive measures, an approach from administrative law. Ivan Andres Paez Paez. Gloria
Amparo Rodriguez.

Note 9: Cited in the Journal of the University of Medellin. Legal Opinion. Vol.
13. No. 25. Administrative sanctioning procedures. Inventory of regulations and rulings of the Constitutional Court
of Colombia. David Suarez Tamayo, Paulina Mejia Londono, Laura Restrepo Gomez.

Note 10: Cited in the Green Law Journal. Uniagraria. Year 1. No. 1. The decentralization of local development: the
problem between being and being. The case of the construction and execution of local development plans in Bogotá.

Ivonne Alexandra Bohorquez Alfonso.

Note 11: Cited in the Criterio Juridico Journal of the Javeriana University of Cali. Vol. 12, No. 2. The temporary
positive administrative silence in environmental matters in light of Decree Law 019 of 2012. Andres Gomez Rey,
Gloria Amparo Rodriguez.

Note 12: Cited in the Law Journal of the University of Caldas. Vol. 10. No. 1.
THE IMPACT OF ENVIRONMENTAL LEGAL EDUCATION AND PARTICIPATION IN THE TRANSFORMATION OF .
ENVIRONMENTAL CONFLICT. Claudia Alexandra Munévar Quintero.

Note 13: Cited in the Journal of the University of the North. Division of Legal Sciences. No. 44. The lack of
discretionary administrative subsistence in Colombia: a look from the principle of proportionality. Hernan Dario
Vergara Mesa.

Note 14: Cited in the Journal of the University of the North. Division of Legal Sciences. No. 44. Characteristics and
alternatives of the political- administrative organization of Bogotá. Naidú Duque Sings.

Conc. Resolution 5921 of 2019, M. Defense. Resolution 197 of 2013. Resolution 172 of 2013. Resolution 149 of 2013.
Resolution 148 of 2013. Resolution 147

of 2013. Resolution 127 of 2013. Resolution 126 of 2013. Resolution 123 of 2013. Resolution 115 of 2013. Resolution 113 of 2013. Resolution 112 of 2013.

Resolution 111 of 2013. Resolution 110 of 2013. Resolution 108 of 2013.
Resolution 107 of 2013. Resolution 106 of 2013. Resolution 105 of 2013.
Resolution 104 of 2013. Resolution 103 of 2013. Resolution 96 of 2013.
Resolution 95 of 2013. Resolution 94 of 2013. Resolution 93 of 2013.
Resolution 92 of 2013. Resolution 91 of 2013. Resolution 90 of 2013.
Resolution 89 of 2013. Resolution 88 of 2013. Resolution 87 of 2013.
Resolution 75 of 2013. Resolution 74 of 2013. Resolution 73 of 2013.
Resolution 72 of 2013. Resolution 71 of 2013. Resolution 70 of 2013.
Resolution 69 of 2013. Resolution 61 of 2013. Resolution 55 of 2013.
Resolution 53 of 2013. Resolution 46 of 2013. Resolution 45 of 2013.
Resolution 44 of 2013. Resolution 43 of 2013. Resolution 42 of 2013. **Ministry of Housing, City and Territory.**

The Congress of Colombia

DECREES:

CHAPTER I

General provisions

Article 1. Purpose. This law regulates the exercise of the administrative function, determines the structure and defines the principles and basic rules of the organization and operation of the Public Administration.

**Note, article 1: See** Decree 2482 of 2012

Article 2. Scope of application. This law applies to all agencies and entities of the Executive Branch of the Public Power and the Public Administration and to public servants who, by constitutional or legal mandate, are in charge of the ownership and exercise of administrative functions, the provision of public services or the provision of public works and goods and, where applicable, to private individuals when they perform administrative functions.

Paragraph. The rules relating to the principles of the administrative function, on delegation and decentralization, characteristics and regime of decentralized entities, administrative rationalization, administrative development, participation and internal control of the Public Administration shall apply, as appropriate, to territorial entities, without prejudice to the autonomy that is theirs in accordance with the Political Constitution.

CHAPTER II

Principles and purposes of the administrative function

Article 3. Principles of the administrative function. The administrative function shall be carried out in accordance with constitutional principles, particularly those pertaining to good faith, equality, morality, speed, economy, impartiality, effectiveness, efficiency, participation, publicity, responsibility and transparency. The above principles shall also apply to the provision of public services, insofar as they are compatible with their nature and system.

Paragraph. The principles of the administrative function must be taken into account by the control bodies and the National Planning Department, in accordance with the provisions of article 343. of the Political Constitution, when evaluating the performance of administrative entities and bodies and when judging the legality of the conduct of public servants in the fulfillment of their constitutional, legal or regulatory duties, ensuring at all times that the collective interest prevails over the individual.

**Note, article 3: Article developed by Decree 1273 of 2020, by Decree 270 of 2017 and by Resolution 887 of 2018, M. Environment and Sustainable Development.**

Article 4. Purposes of the administrative function. The administrative function of the State seeks to satisfy the needs of the people.

general rights of all inhabitants, in accordance with the principles, purposes and duties enshrined in the Political Constitution.

The bodies, entities and persons charged, on a permanent or temporary basis, with the exercise of administrative functions must do so in consultation with the general interest.

**Conc. Decree 728 of 2017.**

**Note, article 4: Article developed by Decree 1273 of 2020, by Decree 270 of 2017 and by Resolution 887 of 2018,** M. **Environment and Sustainable Development,**

CHAPTER III

Modalities of administrative action

Article 5. Administrative competence. Administrative bodies and entities must exclusively exercise the inherent powers and attributions, directly and immediately, with respect to matters that have been expressly assigned to them by law, ordinance, agreement or executive regulation.

It is understood that the principles of the administrative function and the principles of coordination, concurrence and subsidiarity enshrined in article 288 of the Political Constitution must be observed in the specification of the powers of the agencies and entities of the Executive Branch and in the exercise of the functions of public servants.

**Note, article 5: Article developed by Resolution 887 of 2018,** M. **Environment and Sustainable Development,**

Article 6. Principle of coordination. Pursuant to the principle of coordination and collaboration, administrative authorities must:

ensure harmony in the exercise of their respective functions in order to achieve state goals and objectives.

Consequently, they will lend their collaboration to other entities to facilitate the exercise of their functions and will refrain from impeding or obstructing their fulfillment by the organs, departments, agencies and entities that own them.

Paragraph. Through the sectoral committees for administrative development referred to in article 19 of this law and in compliance with section 2 of article 209 of the CP, priority will be given to developing this principle of coordination between administrative authorities and between the agencies of the respective sector.

Conc. Decree 870 of 2014.

Note 1, Article 6: Article developed by Resolution 1726 of 2019, by Resolution 4545 of 2015, Ministry of Health and Social Protection and by Decree 1987 of 2013.

Note 2, article 6: See Joint Circular 100-000006 of 2019, SS See Resolution 6193 of 2010.

Article 7. Administrative decentralization. In the exercise of the powers *granted to it by* this law and in general in the development and regulation of the same, the government will be especially careful in complying with the constitutional and legal principles on administrative decentralization and the autonomy of territorial entities. Consequently, it will seek to develop provisions and regulations that deepen the distribution of powers between the various levels of administration, following as far as possible the criterion that the provision of services corresponds to the municipalities, the control over said provision to the departments and the definition of plans, policies and strategies to the Nation. Likewise, within the decentralized national entities, the government will ensure that provisions are established for the delegation and decentralization of functions, so that without prejudice to the necessary administrative control, the regional officials of such entities possess and exercise effective powers of budget execution, expenditure management, contracting and nomination, as well as the formulation of the annual budget drafts of the

Machine Translated by Google
12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 82 of 148
Congress of Colombia - Law 489 of 1998

respective entity for the region over which they exercise their function. **(Note: The expressions crossed out in this section were declared unconstitutional by the Constitutional Court in Judgment C-702 of 1999, which declared the rest of it constitutional, a ruling confirmed in Judgment C-990 of 1999.)**

Article 8. Administrative decentralization. Decentralization is the transfer of powers and functions to departments located outside the main headquarters of the administrative body or entity, without prejudice to the powers and duties of guidance and instruction that are to be exercised by the senior heads of the Administration, which does not imply delegation and may be carried out by territory and by functions.

Paragraph. The means necessary for its proper fulfillment shall be determined in the corresponding act.

Actions carried out by the authorities by virtue of administrative decentralization shall only be subject to appeal under the terms established in the relevant regulations.

Article 9. Delegation. The administrative authorities, pursuant to the provisions of the Political Constitution and in accordance with this law, may, by means of an act of delegation, transfer the exercise of functions to their collaborators or to other authorities with similar or complementary functions.

Without prejudice to the delegations provided for in organic laws, in any case, ministers, directors of administrative departments, superintendents, legal representatives of organizations and entities that have an independent structure and administrative autonomy may delegate the attention and decision of the matters entrusted to them by law and the respective organic acts, **to public employees of the management and advisory levels linked to the corresponding organization,** with the purpose of developing the principles of the administrative function stated in article 209. of the Political Constitution and in this law. **(Note: The expressions marked in bold were declared constitutional by the Constitutional Court in Judgment C-561 of 1999.)**

Paragraph. The legal representatives of the decentralized entities may delegate functions assigned to them, in accordance with the

criteria established in this law, with the requirements and under the conditions provided for in the respective statutes.

**Note 1, Article 9: Article developed by Decree 750 of 2012.** _____

**Note 2, Article 9: See Resolution 474 of 2018. See Resolution 470 of 2018, PNNC. DO 50791, pages 38 and 40.**

Article 10. Requirements for delegation. The delegation act, which shall always be in writing, shall determine the delegated authority and the specific functions or matters whose attention and decision are being transferred.

The President of the Republic, ministers, directors of administrative departments and legal representatives of decentralized entities must be informed at all times about the development of the delegations they have granted and provide general guidance on the exercise of the delegated functions.

Article 11. Functions that cannot be delegated. Without prejudice to what is established in other provisions on this matter, the following may not be transferred by delegation:

1. The issuance of regulations of a general nature, except in cases expressly authorized by law.

2. The functions, powers and authorities received by virtue of delegation.

3. Functions that by their nature or by constitutional or legal mandate are not susceptible to delegation.

Machine Translated by Google

12/19/24, 10:1... Case 1:25-cv-01099-JDB   Document 1-19   Filed 04/11/25   Page 84 of 148
Congress of Colombia / Lexbase...

Article 12. Regime of the acts of the delegate. The acts issued by the delegate authorities shall be subject to the same requirements established for their issuance by the delegating authority or entity and shall be subject to the appropriate appeals against their acts.

The delegation exempts the delegator from liability, which shall correspond exclusively to the delegate, without prejudice to the fact that, pursuant to the provisions of article 211 of the Political Constitution, the delegating authority may at any time resume jurisdiction and review the acts issued by the delegate, subject to the provisions of the Administrative Litigation Code.

Paragraph. In any case related to contracting, the act of expressly delegated signature does not exempt the principal agent from civil and criminal legal liability. **(Note: This paragraph was declared enforceable by the Constitutional Court in Judgment C-727 of 2000, Order confirmed in Judgment C-372 of 2002, Order confirmed in Judgment C-414 of 2002.).**

Article 13. **Amended by Decree 19 of 2012, Article 45.**

Delegation of the exercise of presidential functions. Without prejudice to the provisions of Law 142 of 1994 and other special provisions, the President of the Republic may delegate to ministers, directors of administrative departments, legal representatives of decentralized entities, superintendents, governors, mayors and State agencies the exercise of the functions referred to in article 129 and numerals 13, 18, 20, 21, 22, 23, 24, 26, 27 and 28 of article 189. of the Political Constitution.

Initial text of article 13: "Delegation of the exercise of presidential functions. Without prejudice to the provisions of Law 142 of 1994 and other special provisions, the President of the Republic may delegate to ministers, directors of administrative departments, legal representatives of decentralized entities, superintendents, governors, mayors and State agencies the exercise of the functions referred to in numerals 13, 20, **21, 22,** 23, **24, 26,** 27 and 28 of article 189 of the Political Constitution."

**Note 1, article 13: The expressions marked in bold in this article were declared constitutional by the Constitutional Court in Judgment C-561 of 1999.**

**Note 2, article 13: See Decree 573 of 2002.**

Machine Translated by Google

12/19/24, 10: Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 85 of 148
Congress of Colombia Law 489 of 1998.

Article 14. Delegation between public entities. The delegation of functions of administrative bodies and entities of the national order carried out in favour of decentralised entities or territorial entities must be accompanied by the signing of agreements in which the rights and obligations of the delegating and delegatee entities are established. Likewise, the corresponding agreement may determine the official of the delegatee entity who will be in charge of exercising the delegated functions.

These agreements will be subject only to the requirements that the law requires for agreements or contracts between public or inter-administrative entities.

Paragraph. *When the delegation of functions or services by a national entity falls to territorial entities, it will proceed without additional requirements, if such functions or services are complementary to the powers already attributed to them in the legal provisions. If, on the contrary, it is a matter of assuming functions and services that are not within its competence, the resources that are necessary for the exercise of the delegated function must be provided.* (Note: This article was declared conditionally enforceable by the Constitutional Court in Judgment C-727 of 2000, except for its paragraph which was declared unconstitutional by the same Sentence).

CHAPTER IV

Administrative development system

Note 1: Chapter regulated by Decree 3622 of 2005 and by Decree 2740 of 2001.

Note 2: Chapter developed by Decree 2482 of 2012.

Note 3: Law 1753 of 2015, Article 133, paragraph 3, states: "Once the new Management Model is regulated and comes into effect," this Chapter will lose its validity.

Machine Translated by Google

12/19/24, 10:1... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/14/25    Page 86 of 148
Congress of Colombia. Law 0489 of 1998

Article 15. **Repealed by Decree 1499 of 2017, Article 5.**

*Definition of the system. The Administrative Development System is a set of policies, strategies, methodologies, techniques and mechanisms of an administrative and organizational nature for the management and handling of human, technical, material, physical, and financial resources of Public Administration entities, aimed at strengthening administrative capacity and institutional performance, in accordance with the regulations issued for this purpose by the National Government.*

*Paragraph. The provisions of this Chapter shall apply, as appropriate, to autonomous and territorial entities and to those subject to special regimes by virtue of a constitutional mandate.*

**Note 1, article 15: Article developed by Decree 3622 of 2005.**

**Note 2, article 15: See Law 1753 of 2015, Article 133. See Resolution 2626 of 2013, Ministry of Health and Social Protection.**

Article 16. **Repealed by Decree 1499 of 2017, Article 5.**

*Fundamentals of the administrative development system. The Administrative Development System is based on:*

*a) In the administrative development policies formulated by the Administrative Department of the Civil Service, adopted by the National Government and articulated with the organizations and entities of the Public Administration;*

*b) In the National Training and Capacity Building Plan formulated by the Administrative Department of the Civil Service in coordination with the Higher School of Public Administration, ESAP.*

**Note 1, article 16: Article developed by Decree 3622 of 2005.**

**Note 2, article 16: See Law 1753 of 2015, Article 133.**

Article 17. **Repealed by** Decree 1499 of 2017. **Article 5.**

*Administrative development policies. The administrative development policies formulated by the Administrative Department of the Civil Service and adopted by the National Government will take into account, among others, the following aspects:*

*1. Institutional diagnostics.*

*2. Streamlining of work procedures, methods and processes.*

*3. Adjustments to the internal organization of the entities, related to the distribution of powers of the departments or to the elimination, merger or creation of administrative units based on the simplification of the identified procedures and the rationalization of work.*

*4. Programs for continuous improvement of entities in the areas of management, particularly in human, financial, material, physical and technological resources, as well as the performance of planning, organization, direction and control functions.*

*5. Adaptation of new approaches to improve the quality of goods and services provided, methodologies to measure work productivity and efficiency and effectiveness indicators.*

*6. Strategies aimed at ensuring the operational nature of administrative decentralization, citizen participation and coordination with the territorial level.*

*7. Identification of obsolete activities and functions that are in conflict with other organizations and entities, that have been assigned to the territorial level, or that do not correspond to the legally established purpose of the entities.*

*8. Strategies aimed at strengthening public management information systems for decision-making.*

*9. Evaluation of the organizational climate, the quality of the decision-making process and the stimuli and incentives for officials or work groups.*

*10. Identification of administrative support aimed at improving user service and the effective and timely resolution of their complaints and claims.*

*11. Design of mechanisms, procedures and administrative supports aimed at strengthening citizen participation in general and of the user population in the decision-making process, in oversight and in the optimal functioning of services.*

*Paragraph 1.* **Modified by** Decree 19 of 2012, A**rticle 233.**

*The Sectoral Committees for administrative development, in accordance with article 19 of this Law, shall be required to formulate the respective plan, which shall be part of the sectoral and institutional action plans and shall be published no later than January 31 of each year on the respective web pages, as established in article 74 of Law 1474 of 2011.*

Initial text of paragraph 1: "The Sectoral Committees for administrative development in accordance with article 19 of this law, will have the obligation to present the respective plan within the first sixty (60) days of each year and its execution will be subject to subsequent evaluation by the Administrative Department of the Civil Service and the administrative responsibility in the fulfillment of said plan will fall directly on the head of the entity."

*Paragraph 2. Public Administration bodies and entities must compulsorily consult the Administrative Department of Public Service in the formulation of administrative development policies and in their proper application, in accordance with the methodologies established by the latter.*

**Note 1, Article 17: See Article 1.1.2.1. of** Decree 1078 of 2015, **S**i**ngle Regulatory Decree for the I**nformation and Communications Technology Sector.

**Note 2, article 17:** Article developed by Decree 3622 of 2005.

**Note 3, article 17:** See Law 1753 of 2015, Article 133. See Decree 2482 of 2012, Article 3.

Article 18. **Repealed by Decree 1499 of 2017, Article 5.**
*Elimination and simplification of procedures. The elimination and simplification of procedures will be a permanent objective of the Public Administration in the development of the principles of speed and economy provided for in the Political Constitution and in this law.*

*The Administrative Department of the Civil Service will guide the policy of simplifying procedures. To this end, it will have the support of the sectoral committees for administrative development and the cooperation of the private sector.*

*It will be a priority of all administrative development plans covered by this law to diagnose and propose the simplification of procedures, the elimination of unnecessary formalities and the observance of the principle of good faith in relations between the Public Administration and citizens or users.*

*Public Administration authorities involved in the processing and execution of international cooperation and support programmes will, as a priority, ensure the inclusion of a component for simplifying procedures and eliminating formalities.*

**Note 1, article 18:** Article developed by Decree 3622 of 2005.

**Note 2, article 18:** See Law 1753 of 2015, Article 133.

Article 19. **Repealed by Decree 1499 of 2017, Article 5.**
Modified by Decree 19 of 2012, Article 234. *Sectoral committees for administrative development. The ministers and directors of*

*administrative department will form the Sectoral Committee for Administrative Development,*
*responsible for monitoring at least once every three (3) months the execution of the administrative*
*development policies, formulated within the respective plan.*

*The Sectoral Committee for Administrative Development will be chaired by the Minister or*
*Director of the Administrative Department of the respective sector.*
*The Committee will be comprised of the directors, managers or presidents of the affiliated or*
*linked organizations and entities, who will be solely responsible for the fulfillment of the*
*functions under their charge under penalty of incurring a cause of misconduct.*

*The Administrative Department of the Civil Service is responsible for ensuring the implementation*
*of public administration and administrative development policies.*

Initial text of article 19: "Sectoral committees for administrative development. The ministers and directors of administrative
departments will form the Sectoral Committee for Administrative Development, responsible for monitoring at least once every three
(3) months the execution of the administrative development policies, formulated within the respective plan.

The Sectoral Committee for Administrative Development shall be chaired by the Minister or Director of the Administrative Department
of the respective sector. The Committee shall include the directors, managers or presidents of the attached or linked organizations
and entities, who shall be solely responsible for the fulfillment of the functions under their charge, under penalty of incurring in a
cause of misconduct.

The Administrative Department of the Civil Service is responsible for ensuring the implementation of public administration and
administrative development policies, an evaluation that must be carried out within the last sixty days of each year.

**Note 1, article 19: See Law 1753 of 2015, article 133. See article 1.1.2.1. of Decree 1078 of 2015, Single Regulatory Decree
of the Information Technology Sector and
Communications.**

**Note 2, article 19: Article developed by Decree 3622 of 2005.**

Article 20. **Repealed by Decree 1499 of 2017, Article 5.**
*Territorial administrative development system. Without prejudice to the autonomy enjoyed by*
*territorial entities, departmental assemblies, district and municipal councils shall arrange for the*
*formation of administrative development committees, according to their degree of administrative*
*complexity.*

*They will also regulate, in a manner analogous to that provided for at the national level, the foundations of the Administrative Development System.*

Note 1, article 20: Article developed by Decree 3622 of 2005.

Note 2, article 20: See Law 1753 of 2015, Article 133.

Article 21. **Repealed by Decree 1499 of 2017, Article 5.**
*Administrative development of public administration bodies and entities. Public administration bodies and entities will design their administrative development policy. The corresponding Ministry or Administrative Department will coordinate and articulate these policies with those of the respective sector.*

*The Sectoral Committee for Administrative Development will monitor the implementation of administrative development policies.*

Note 1, article 21: Article developed by Decree 3622 of 2005.

Note 2, article 21: See Law 1753 of 2015, Article 133.

Article 22. **Repealed by Decree 1499 of 2017, Article 5.**
*Disclosure. The Administrative Department of the Civil Service is responsible for preparing the annual report on the implementation and results of the administrative development policies of the Public Administration bodies and entities that form part of the System, for which it will request the reports it considers pertinent from the ministers and directors of the administrative departments. It will also establish the appropriate means to guarantee the consultation of said results by the interested persons and organisations and their broad dissemination, without prejudice to the sectoral mechanisms of dissemination that are established in order to meet the requirements of civil society.*

Machine Translated by Google

12/19/24, 10: Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 92 of 148
Congress of Colombia Law 489 of 1998.



**Note 1, article 22: Article developed by** Decree 3622 of 2005.

**Note 2, article 22: See** Law 1753 of 2015, **Article 133.**

Article 23. **Repealed by** Decree 1499 of 2017, **Article 5.**

**Modified by** Decree 19 of 2012, **Article 235.** *Performance agreements. Ministries and administrative departments may enter into performance agreements with other agencies and with their affiliated or linked entities.*

Initial text of article 23: "Performance agreements. The performance agreements referred to in this law, which are agreed upon between the ministries and administrative departments and the attached or linked agencies and entities, as well as the terms of their execution, must be sent to the Administrative Department of the Civil Service once they are signed."

**Note, article 23: See** Law 1753 of 2015, article 133.

CHAPTER V

Incentives for public management

Article 24. Bank of Successes. The Administrative Department of the Civil Service shall organize the Bank of Successes of the Public Administration. In accordance with the regulations issued for this purpose by the National Government, successful experiences in the development of the Administration shall be recorded, documented and disclosed, and cooperation between successful entities and others that may benefit from such experiences shall be promoted and coordinated.

The Administrative Department of the Civil Service will carry out the respective selection and exclusion and will recommend the relevant action to the President of the Republic.

Machine Translated by Google

12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 93 of 148
Congress of Colombia Law 489 of 1998

**Note, article 24: Article developed by** Decree 1136 of 2022, **by** Decree 2158 of 2018 **and by** Decree 990 of 2018.

Article 25. National Senior Management Award. The National Government is hereby authorized to annually award the National Senior Management Award to the Public Administration entity or organization that, due to its good institutional performance, deserves to be distinguished and registered in the Public Administration Success Bank. Said entity shall receive special attention to support its administrative development programs.

**Note, article 25: Article developed by** Decree 1136 of 2022 **and by** Decree 2158 of 2018.

Article 26. Incentives for public servants. The National Government shall annually grant incentives to public servants who distinguish themselves by their efficiency, creativity and merit in the exercise of their functions, in accordance with the regulations issued for such purpose, based on the recommendation of the Administrative Department of the Civil Service and without prejudice to the incentives provided for in other provisions.

CHAPTER VI

National internal control system

Article 27. Creation. The National Internal Control System is hereby created, consisting of the set of institutions, participation bodies, policies, regulations, procedures, resources, plans, programs, projects, methodologies, information systems, and applicable technology, inspired by the constitutional principles of the administrative function whose fundamental support is the public servant.

**Note, article 27: See** Law 1753 of 2015, Article 133.

Machine Translated by Google
12/19/24, 10:... Case 1:25-cv-01099-JDB Document 1-19 Filed 04/11/25 Page 94 of 148
Congress of Colombia - Law 489 of 1998

Article 28. Purpose. The National Internal Control System aims to integrate in a harmonious, dynamic, effective, flexible and sufficient manner the functioning of the internal control of public institutions, so that, through the application of suitable management instruments, they strengthen the full and timely fulfillment of the functions of the State.

**Note, article 28: See Law 1753 of 2015, Article 133.**

Article 29. Direction and coordination. The National Internal Control System, in accordance with the regulations issued for such purpose by the National Government, will be directed by the President of the Republic as the highest administrative authority and will be supported and coordinated by the Advisory Council of the National Government on matters of internal control of entities of the national order, which will be chaired by the Director of the Administrative Department of the Civil Service.

Paragraph 1. The provisions of this Chapter shall apply, as appropriate, to autonomous and territorial entities or those subject to special regimes by virtue of a constitutional mandate.

Paragraph 2. The units or offices that exercise the functions of internal disciplinary control referred to in Article 48 of Law 200 of 1995 are not part of the Internal Control System.

**Note, article 29: See Law 1753 of 2015, Article 133.**

CHAPTER VII

High Government School

Article 30. High Government School. The High Government School is hereby established as a permanent and systematic programme, the purpose of which is to provide induction and support to senior management of the Public Administration at the national level.

The High Government School, through the use of cutting-edge technologies, will contribute to ensuring the unity of purpose of the Administration, the development of senior public management and the exchange of experiences in administrative matters.

The High Government School program will be developed by the Higher School of Public Administration in coordination with the Administrative Department of the Civil Service, in accordance with the regulations adopted by the National Government.

Paragraph. The National Planning Department, through the agency responsible for managing international cooperation, will provide support for channeling international aid in the management and execution of programs under the responsibility of the High Government School.

Article 31. Participants. Public servants at the levels determined by the National Government must participate, as a minimum, in the induction programs of the High Government School, preferably before taking office or during the first month of exercising their functions.

The High Government School will organize and conduct induction seminars for elected Governors and Mayors to be held in the period between the election and the inauguration of such leaders. Attendance at these seminars is mandatory as a requirement to be able to take possession of the office for which one has been elected.

The general secretaries, assistants, advisors and heads of legal, administrative, budgetary, treasury or similar divisions of Ministries, administrative departments, superintendencies, and autonomous or decentralized entities of any order must attend and

participate in induction seminars organized by the senior government school, within 120 days of taking office.

The seminars or courses referred to in this article will be designed by the School taking into account advances in the science of public administration, government reengineering, quality and efficiency and attention to internal and external customers of the respective entity, as well as the specific topics of the position or function to be performed by the official or group of officials to whom the course is directed and especially their responsibility in the budgetary and financial management of the entity when appropriate according to the nature of the position.

**Note, article 31: See Law 2200 of 2022, Article 92.**

CHAPTER VIII

Democratization and social control of public administration

Article 32. **Amended by Law 1474 of 2011, Article 78.** _____
Democratisation of Public Administration. All entities and organisations of the Public Administration have the obligation to develop their management in accordance with the principles of participatory democracy and democratisation of public management. To this end, they may take all necessary actions to involve citizens and civil society organisations in the formulation, execution, control and evaluation of public management.

Among others, they may perform the following actions:

a) Call public hearings;

b) Incorporate into their development and management plans policies and programs aimed at strengthening citizen participation;

c) Disseminate and promote the rights of citizens regarding the proper functioning of the Public Administration;

d) Encourage the formation of associations and interest association mechanisms to represent users and citizens;

e) Support the social control mechanisms that are established;

f) Apply mechanisms that provide transparency to the exercise of the administrative function.


In any case, the entities mentioned in this article will have to be permanently accountable to the citizens, under the guidelines of methodology and minimum content established by the National Government, which will be formulated by the Interinstitutional Commission for the Implementation of the Accountability Policy created by CONPES 3654 of 2010.


**Note 1, Article 32: See Resolution 4-1052 of 2018. M. Minas. See Decree 368 of 1999, Article 4.**


**Note 2, article 32: Article developed by Decree 1273 of 2020 and by Decree 270 of 2017.**


Initial text of article 32: **Partially regulated by Decree 1714 of 2000.**
"Democratization of Public Administration. All entities and organizations of the Public Administration have the obligation to develop their management in accordance with the principles of participatory democracy and democratization of public management. To this end, they may take all necessary actions to involve citizens and civil society organizations in the formulation, execution, control and evaluation of public management.


Among others, they may perform the following actions:


1. Call for public hearings.


2. Incorporate into its development and management plans policies and programs aimed at strengthening citizen participation.


3. Disseminate and promote participation mechanisms and citizens' rights.


4. Encourage the formation of associations and interest association mechanisms to represent users and citizens.


5. Support the social control mechanisms that are established.

6. Apply mechanisms that provide transparency to the exercise of the administrative function."

**Note, article 32: Article developed by Decree 797 of 1999, article 2.**

Article 33. Public hearings. When the administration deems it convenient and timely, public hearings may be convened in which aspects related to the formulation, execution or evaluation of policies and programs under the responsibility of the entity will be discussed, and especially when collective rights or interests are affected.

Communities and organisations may request public hearings, without the request or the conclusions of the hearings being binding on the administration. In any case, the reasons for the decision taken will be explained to these organisations.

At the time of convening the hearing, the respective institution will define the methodology to be used.

Article 34. Exercise of social control of the administration. When citizens decide to establish mechanisms for social control of the administration,

administration, in particular through the creation of citizen oversight bodies, the administration shall be obliged to provide all the support required for the exercise of such control.

Article 35. Exercise of citizen oversight. To ensure the exercise of citizen oversight, public administration entities and bodies must take into account the following aspects:

a) Effectiveness of the oversight action. Each entity or organization subject to oversight by the oversight committees must keep a systematic record of their observations and evaluate in a timely and diligent manner the corrective measures arising from their recommendations, in order to make their action effective. The above without prejudice to the disciplinary, criminal and any other consequences that may arise.

Machine Translated by Google

12/19/24, 10: Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 99 of 148
Congress of Colombia Law 489 of 1998.

arise from the exercise of surveillance. The various supervisory and judicial authorities will provide their full support to the knowledge and resolution in their respective branches of the facts presented to them by said oversight bodies;

b) Access to information. Entities or agencies and those responsible for programs or projects that are subject to oversight must facilitate and allow the oversight officers access to information for the purposes of monitoring all matters entrusted to them under this law and which do not constitute matters of judicial or legal confidentiality. Any official who obstructs the oversight officer's access to information shall be guilty of misconduct;

c) Training of observers for the control and supervision of public management. The Administrative Department of the Civil Service, with the support of the Higher School of Public Administration, will design and promote a National Plan for the Training of Observers in the areas subject to intervention. The organizations subject to oversight by the observers will contribute to the execution of said plan, up to the amount of their budgetary availability, without prejudice to the resources that the Ministry of the Interior allocates for this purpose through the Fund for Communal Development.

CHAPTER IX

General Administrative Information System of the Public Sector

Article 36. General Administrative Information System. The General Administrative Information System of the Public Sector is hereby created, comprising, among others, the subsystems of institutional organization, management of human, material and physical resources, and administrative development. The design, management and implementation of the System shall be the responsibility of the Administrative Department of the Civil Service in coordination with the competent bodies in information systems, and for which an institutional report shall be compiled.

Machine Translated by Google
12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 100 of 148
Congress of Colombia Law 489 of 1998

Article 37. Information system of entities and organizations. The information systems of the organizations and entities of the Public Administration will serve as support for the fulfillment of their mission, objectives and functions, will report on institutional performance and will facilitate the evaluation of public management within them as well as for the general public.

It is the responsibility of the administrative development committees referred to in this law to periodically assess the status of information systems in each administrative sector and to promote their simplification in accordance with the terms set out in the legal provisions.

In the administrative development policy, priority should be given to the design, implementation, monitoring and evaluation of information systems and the development of public administration indicators that support them.

CHAPTER X

Structure and organization of the Public Administration

Article 38. Integration of the Executive Branch of Public Power at the national level. The Executive Branch of Public Power at the national level is made up of the following agencies and entities:

1. From the Central Sector:

a) The Presidency of the Republic;

b) **Literal declared enforceable according to correction of Order 76 of 2000 to Judgment C-727 of 2000.** The Vice Presidency of the Republic;

c) The Higher Councils of the administration;

d) Ministries and administrative departments;

e) Superintendencies and special administrative units without legal personality.

2. From the decentralized service sector:

a) Public establishments;

b) State industrial and commercial enterprises;

c) Superintendencies and special administrative units with legal personality;

d) State-owned social enterprises **and official public utility companies; (Note: The section indicated in bold in this section was declared constitutional based on the charges analyzed by the Constitutional Court in Judgment** C-736 of 2007.)

———————

e) Scientific and technological institutes;

f) Public companies **and mixed economy companies; (Note: The section indicated in bold was declared constitutional by the Constitutional Court in Judgment** C-910 of 2007.)

———————

g) Other national administrative entities with legal personality that the law creates, organizes or authorizes to form part of the Executive Branch of Public Power.

Paragraph 1. Public companies and mixed economy companies in which the State owns ninety percent (90%) or more of its shares.

share capital, are subject to the regime provided for state industrial and commercial companies.

Paragraph 2°. In addition to the provisions of paragraph c) of section 1 of this article, as advisory or coordinating bodies, for the entire administration or part of it, those determined by law shall operate on a **permanent** or temporary basis and with representation of various state entities and, **where applicable, of the private sector .** The act of constitution shall indicate the Ministry or Administrative Department to which such bodies are attached.

**(Note: The expressions marked in bold in this paragraph were declared constitutional by the Constitutional Court in Judgment C-702 of 1999.)**

**Conc. Law 1952 of 2019.**

Article 39. Integration of the Public Administration. The Public Administration is made up of the agencies that make up the Executive Branch of the Public Power and all other agencies and entities of a public nature that are permanently in charge of exercising the administrative activities and functions or providing public services of the Colombian State.

The Presidency of the Republic, the ministries and the administrative departments, at the national level, are the main bodies of the Administration.

Likewise, the ministries, administrative departments and superintendencies constitute the Central Sector of the National Public Administration. The agencies and entities attached to or linked to a Ministry or an Administrative Department that enjoy legal status, administrative autonomy and their own assets or independent capital make up the Decentralized Sector of the National Public Administration and perform their functions in accordance with the terms established by law.

The governorates, mayors, departments of dispatch and administrative departments are the main bodies of the Administration at the corresponding territorial level. The others are attached or linked to them, and perform their functions under their guidance,

Machine Translated by Google
12/19/24, 10:... Case 1:25-cv-01099-JDB   Document 1-19   Filed 04/11/25   Page 103 of 148
Congress of Colombia. Law 489 of 1998.

coordination and control in accordance with the terms set forth in the law, ordinances or agreements, as the case may be.

Departmental assemblies and district and municipal councils are administrative corporations elected by popular vote that fulfill the functions assigned to them by the Political Constitution and the law.

Article 40. State entities and agencies subject to special regime.
The Bank of the Republic, autonomous university entities, regional autonomous corporations, the National Television Commission and other organizations and entities with special status granted by the Political Constitution are subject to the provisions established for them by the respective laws.

Article 41. Guidance and control. The general guidance, control and evaluation of the activities of administrative bodies and entities is the responsibility of the President of the Republic and, at their respective levels, the ministers, directors of administrative departments, superintendents, governors, mayors and legal representatives of decentralized entities and mixed-economy companies at any administrative level.

At the national level, ministers and directors of administrative departments guide and coordinate the fulfillment of the functions in charge of the superintendencies, decentralized entities and mixed economy companies that are attached or linked to them or that make up the corresponding Administrative Sector.

**Conc.** Re**solution 294 of 2019. Resolution 338 of 2015, Ministry of Agriculture and Rura**l Development.

Article 42. Administrative Sectors. The Administrative Sector is made up of the Ministry or Administrative Department, the superintendencies and other entities that the law *or the National Government* define as attached or linked to those as appropriate.

each area. **(Note: The crossed out expressions were declared unconstitutional by the Constitutional Court in Judgment C-1437 of 2000, which declared the rest of it constitutional.)**

**Note, article 42: See Decree 2482 of 2012.**

Article 43. Administrative Systems. The National Government may organize national administrative systems in order to coordinate state and private activities. To this end, it shall establish the bodies or entities responsible for carrying out management, programming, execution and evaluation activities.

**Note 1, article 43: Article developed by Decree 1987 of 2013**

**Note 2, article 43: Decree 1258 of 2020. See Decree 2933 of 2010**

Article 44. Sectoral orientation and coordination. The orientation of the exercise of the functions in charge of the organizations and entities that make up an Administrative Sector is the responsibility of the Minister or Director of the Administrative Department to whose office they are attached or linked, without prejudice to the decision-making powers that, in accordance with the law and the acts of creation or restructuring, correspond to them.

**Note 1, article 44: See External Circular 16 of 2015. SNS.**

**Note 2, Article 44: Article developed by Resolution 1726 of 2019. M. Health and Social Protection.**

Article 45. Intersectoral Commissions. The National Government may create intersectoral commissions for the coordination and higher guidance of the execution of certain public functions and services, when by legal mandate or due to their characteristics, they are in charge of two or more ministries, administrative departments or decentralized entities, without prejudice to the specific competences of each of them.

Machine Translated by Google
12/19/24, 10... Case 1:25-cv-01099-JDB    Document 19    Filed 04/11/25    Page 105 of 148
Congress of Colombia, Law 489 of 1998

The Government may establish that the specific measures and acts of the competent bodies and entities are subject to the prior adoption of action programmes and projects by the Intersectoral Commission and delegate to it some of its corresponding functions.

The intersectoral commissions will be made up of ministers, directors of administrative departments, superintendents and legal representatives of the agencies and entities in charge of the functions and activities in question.

**Note 1, article 45: Article developed by** Decree 1347 of 2021, by Decree 704 of 2018, by Decree 1581 of 2017, by Decree 1652 of 2015, by Decree 1510 of 2014, by Decree 858 of 2014, by Decree 2766 of 2013, by Decree 32 of 2013

**Note 2, article 45: See** Decree 1997 of 2019, **See** Decree 2137 of 2018, **See** Decree 1257 of 2017, **See** Decree 1052 of 2014, **See** Decree 2933 of 2010, Decree 955 of 2002 **and** Decree 23 of 2002

**Conc.** Decree 2562 of 2012.

Article 46. Participation of decentralized entities in government policy. Decentralized agencies and entities shall participate in the formulation of policy, in the development of sectoral programs and in their implementation, under the guidance of the respective ministries and administrative departments.

Article 47. Council of Ministers. The Council of Ministers shall be composed of all the Ministers convened by the President of the Republic. By express call, the directors of administrative departments, as well as other officials or individuals that the President of the Republic considers pertinent, may also attend.

Without prejudice to the functions granted to it by the Political Constitution or the law, it is the responsibility of the President of the Republic to establish the special functions of the Council and the rules necessary for its operation.

Machine Translated by Google
12/19/24, 10: Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 106 of 148
Congress of Colombia Law 489 of 1998

Note, article 47: This article was declared constitutional by the Constitutional Court in Judgment C-702 of 1999.

Article 48. Regulatory Commissions. The commissions created by law for the regulation of public utility services through assignment by law or by delegation by the President of the Republic, to promote and guarantee competition among those who provide them, shall be subject in terms of their structure, organization and operation to the provisions of the corresponding acts of creation.

CHAPTER XI

Creation, merger, suppression and restructuring of organizations and entities

Article 49. Creation of administrative bodies and entities.
It is the law, at the initiative of the Government, that is responsible for the creation of ministries, superintendencies, public establishments and other national administrative bodies and entities.

State industrial and commercial enterprises may be created by law or with its authorization.

Mixed economy companies will be established pursuant to legal authorization.

Paragraph. Indirect decentralized entities and subsidiaries of State industrial and commercial companies and mixed economy companies shall be established in accordance with the provisions of this law, and in any case with prior authorization from the National Government in the case of entities of that order or from the Governor or the Mayor in the case of entities of the departmental or municipal order.

Machine Translated by Google
12/19/24, 10:0... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 107 of 148
Congress of Colombia Law 489 of 1998

**Note, article 49:** See article 1.2.2.2. of Decree 1078 of 2015, Single Regulatory Decree for the Information and Communications Technology Sector.

Article 50. Content of the acts of creation. The law that provides for the creation of an administrative body or entity must determine its objectives and organic structure, and also determine the budgetary support in accordance with the fiscal guidelines of the Ministry of Finance and Public Credit.

The organic structure of an administrative body or entity includes the determination of the following aspects:

1. The denomination.

2. The legal nature and the consequent legal regime.

3. The headquarters.

4. The integration of your assets.

5. The designation of the highest management and administration bodies and the form of integration and designation of their holders, and

6. The Ministry or Administrative Department to which they will be attached or linked.

Paragraph. Superintendencies, public establishments and special administrative units shall be attached to the ministries or administrative departments; industrial and commercial companies of the State and mixed economy companies shall be linked to the ministries or administrative departments.

Machine Translated by Google
12/19/24, 10:0... Case 1:25-cv-01099-JDB    Document 19    Filed 04/11/25    Page 108 of 148
Congress of Colombia Law 0489 of 1998

those; the other organizations and entities will be attached or linked, as determined by their act of creation.

Article 51. **Declared unconstitutional by the Constitutional Court in Judgment C-702 of 1999, order confirmed in Judgment C-990 of 1999.** *Modalities for the merger of national entities or organizations decreed by the Government. The President of the Republic, in accordance with the constitutional principles of the administrative function, may order the merger of administrative entities and organizations of the national order in order to guarantee the efficiency and rationality of public management, to avoid duplication of functions and activities and to ensure unity in the conception and exercise of the function or the provision of the service.*

*–*

*The act ordering the merger shall provide for the subrogation of obligations and rights of the merged organizations or entities, the ownership and allocation of assets or income, the necessary budgetary adjustments, the process of adapting the organic structure and, in accordance with the regulations governing the matter, the situation of public servants.*

*–*

*The President of the Republic shall restructure the entity resulting from the merger, establish the necessary modifications in relation to its name, legal nature, assets or capital and budgetary regulation as the case may be, in accordance with the organic regulations on the matter, and the applicable regime in accordance with the provisions of this law.*

*–*

*The merger of agencies, entities or departments, or the transfer of functions from one entity to another, does not imply a solution of continuity for the exercise of the function or the provision of the public service and the fulfillment of the obligations resulting from it by the entity or agency to which they are finally attributed.*

*–*

*Once the merger, deletion or spin-off has been decreed, the public register will be filled with the corresponding act, and the transfers that may take place in relation to third parties will occur in a block and without interruption by operation of law. The merger or deletion of entities or organizations of the national order or the modification of their structure and the acts or contracts that must be extended or granted due to them, will be considered without value and will not generate taxes, contributions of*

*national character or rates for the concept of rates and annotation. For the purposes of the*
*registry on real estate and other assets subject to the same, it will be sufficient to list them in*
*the respective act that decrees the suppression, merger, division or modification, indicating the*
*real estate registration folio number or the data that identifies the registry of the respective*
*asset or right.*

*Paragraph. By virtue of the merger, the Government may not create any new entity or public*
*body at the national level. In this sense, a new entity is considered to be created whenever the*
*entity resulting from the merger pursues objectives that are essentially different from those*
*originally determined by the legislator for the entities being merged.*

Article 52. On the suppression, dissolution and liquidation of national administrative entities or bodies.
The President of the Republic may suppress or order the dissolution and subsequent liquidation of
national administrative entities and bodies provided for in article 38 of this law when:

1. The objectives set for the organization or entity at the time of its creation have lost their reason for
being.

2. The objectives and functions of the entity are transferred to other national bodies or to territorial order
entities.

3. The evaluations of administrative management carried out by the National Government advise its
elimination or the transfer of functions to another entity.

4. This is concluded by using the management and efficiency indicators used by the control bodies and
the results obtained by them each year, after carrying out the examination of the efficiency and
effectiveness of the entities in the administration of public resources, determining the evaluation of their
administrative processes, the use of public profitability and performance indicators and the identification
of the distribution of the surplus they produce, as well as the beneficiaries of their activity or the
examination of the results to establish to what extent their objectives are achieved and the plans,
programs and projects adopted by the administration in a given period are fulfilled.

Machine Translated by Google
12/19/24, 10:... Case 1:25-cv-01099-JDB Document 19 Filed 04/11/25 Page 110 of 148
Congress of Colombia Law 489 of 1998

5. There is duplication of objectives and/or essential functions with one or more other entities.

6. Whenever, as a consequence of the decentralization *or deconcentration* of a service, the entity loses the respective jurisdiction. **(Note: The expressions crossed out in this section were declared unconstitutional by the Constitutional Court in Judgment C-727 of 2000.)**

Paragraph 1. The act ordering the suppression, dissolution and liquidation shall provide for the subrogation of obligations and rights of the suppressed or dissolved organizations or entities, the ownership and allocation of assets or income, the necessary budgetary adjustments, the regime applicable to the liquidation and, in accordance with the regulations governing the matter, the situation of public servants.

Paragraph 2. In the case of entities subject to the corporate regime, the liquidation shall be governed by the rules of the Commercial Code insofar as they are compatible with the nature of the entity whose liquidation is being carried out.

**Note 1, Article 52: This article was declared constitutional by the Constitutional Court in Judgment C-702 of 1999, Order confirmed in Judgment C-108 of 2002.**

**Note 2, Article 52: See Resolution 461 of 2017, UAECGN. DO 50381, p. 304. See Decree 1066 of 2015, Article 2.2.5.1.9.**

Article 53. **Declared unconstitutional by the Constitutional Court in Judgment C-702 of 1999, order confirmed in Judgment C-990 of 1999.** *Demerger of State industrial and commercial companies and mixed economy companies. The President of the Republic may demerge State industrial and commercial companies when it is convenient for the best development of their purpose, in which case the provisions of the previous articles shall apply as appropriate. The President of the Republic may also authorize the demerger of mixed economy companies when it is convenient for the best development of their purpose.*

~~development of its object, in which case the rules governing commercial companies will apply.~~

Article 54. Principles and general rules subject to which the National Government may modify the structure of ministries, administrative departments and other administrative bodies of the national order. In order to modify, that is, vary, transform or renew the organization or structure of ministries, administrative departments and other national administrative entities or bodies, the applicable provisions shall be issued by the President of the Republic in accordance with the provisions of paragraph 16 of article 189. of the Political Constitution and subject to the following general principles and rules:

a) They must respond to the need to enforce the principles of efficiency and rationality of public management, in particular, to avoid duplication of functions; **(Note: This paragraph was declared constitutional by the Constitutional Court in Judgment C-702 of 1999.)**

b) **Literal was declared unconstitutional by the Constitutional Court in Judgment C-702 of 1999, order confirmed in Judgment C-990 of 1999.** *As a general rule, the structure of each entity will be concentrated. Exceptionally, and only to meet national functions in the territorial scope, the structure of the entity may be decentralized,*

c) **Literal was declared unconstitutional by the Constitutional Court in Judgment C-702 of 1999, order confirmed in Judgment C-990 of 1999.** *The structure must be organized in accordance with the changing needs of the public service, making use of the innovations offered by public management,*

d) **Literal was declared unconstitutional by the Constitutional Court in Judgment C-702 of 1999, order confirmed in Judgment C-990 of 1999.** *The organizational structures will be flexible, taking into account that the departments that make up the different agencies are appropriate to a division of the groups of functions that they are responsible for exercising, duly assessable by the policies, the mission and by programmatic areas. To this end, a simple structure will be in place, based on the main departments that the operation of each entity or agency requires,*

e) It must be ensured that there is due harmony, coherence and articulation between the activities carried out by each of the departments, in accordance with the powers attributed by law, in order to:

effects of the formulation, execution and evaluation of its policies, plans and programs, which allow their exercise without duplications or conflicts; **(Note: This literal was declared constitutional by the Constitutional Court in Judgment C-702 of 1999.)**

f) Each of the departments will have specific functions, but all of them must collaborate in the fulfillment of the general functions and in the achievement of the purposes of the entity or organization; **(Note: This paragraph was declared constitutional by the Constitutional Court in Judgment C-702 of 1999.)**

g) **Literal was declared unconstitutional by the Constitutional Court in Judgment C-702 of 1999, order confirmed in Judgment C-990 of 1999.** *The basic dependencies of each entity must be organized observing the name and structure that best suits the achievement of its purpose and the exercise of its functions, clearly identifying the main dependencies, the advisory and coordination bodies, and the authority and hierarchy relationships between those that require it,*

h) **Literal was declared unconstitutional by the Constitutional Court in Judgment C-702 of 1999, order confirmed in Judgment C-990 of 1999.** *The structure adopted must be subject to the purpose, object and general functions of the entity provided for in the law,*

i) **Literal was declared unconstitutional by the Constitutional Court in Judgment C-702 of 1999, order confirmed in Judgment C-990 of 1999.** *Specific functions may only be modified, distributed or deleted to the extent necessary to make them suitable for the new structure,*

j) Internal dependencies may be merged, eliminated or created in each entity or administrative body, and they may be granted administrative and financial autonomy without legal status; **(Note: See Law 2136 of 2021, Article 52. Note: This paragraph was declared constitutional by the Constitutional Court in Judgment C-702 of 1999.).**

k) Internal dependencies whose functions are assigned to other public entities of any kind may not be created; **(Note: This paragraph was declared constitutional by the Constitutional Court in Judgment C-702 of 1999.)**

l) Dependencies must be eliminated or merged in order to avoid duplication of functions and activities; **(Note: This section was declared**

Machine Translated by Google

12/19/24, 10... Case 1:25-cv-01099-JDB    Document 1-9    Congress of Colombia - law 489 of 11/95    Filed 04/11/25    Page 113 of 148

enforceable by the Constitutional Court in Judgment C-702 of 1999.). _____

m) Jobs that are not necessary should be eliminated or merged and the specific functions they performed should be distributed or eliminated.

In such case, the administrative labor regulations will apply; **(Note: This paragraph was declared constitutional by the Constitutional Court in Judgment C-702 of 1999.)**

_____

**Conc.** Decree 1876 of 2021. Decree 1875 of 2021. Decree 2651 of 2013. Decree 2107 of 2013.

n) A new staff structure must be adopted.

**Conc.** Decree 08 of 2024. Decree 746 of 2022. Decree 21 of 2022. Decree 1876 of 2021. Decree 1875 of 2021. Decree 1874 of 2021. Decree 1292 of 2021. Decree 1080 of 2021. Decree 380 of 2021. Decree 1736 of 2020.
Decree 1064 of 2020. Decree 95 of 2020. Decree 1341 of 2019. Decree 2409 of 2018. Decree 1140 of 2018. Decree 2186 of 2017. Decree 1996 of 2017. Decree 787 of 2015. Decree 2723 of 2014. Decree 1118 of 2014.
Decree 2651 of 2013. Decree 2650 of 2013. Decree 2107 of 2013. Decree 1094 of 2013. Decree 575 of 2013. Decree 2587 of 2012. Decree 2562 of 2012. Decree 1832 of 2012.

**Note, article 54:** Article developed by Decree 484 of 2019, by Decree 1474 of 2018, by Decree 1446 of 2014, by Decree 903 of 2014 and by Decree 1985 of 2013. _____

Article 55. **Declared unconstitutional by the Constitutional Court in Judgment C-702 of 1999, order confirmed in Judgment C-990 of 1999.** *Monitoring Commission. The ~~President of the Republic shall issue the decrees referred to in articles 51, 52 and 53 of this law, after receiving the opinion of a commission made up of five (5)~~* ~~Senators and five (5) Representatives, appointed by the respective boards of directors for one-year periods, not re-eligible.~~

CHAPTER XII

Presidency of the Republic, ministries, administrative departments and superintendencies

Article 56. Presidency of the Republic. The President of the Republic is responsible for the supreme direction and coordination and control of the activity of administrative bodies and entities, in accordance with Article 189. of the Political Constitution.

The Presidency of the Republic will be made up of the set of auxiliary services of the President of the Republic and its regime will be that of an Administrative Department.

Paragraph. The Vice President of the Republic shall carry out the special missions or assignments entrusted to him by the President of the Republic, in accordance with the provisions of the Political Constitution.

The Vice Presidency of the Republic will be made up of the set of auxiliary services designated by the President of the Republic. **(Note: This section was declared enforceable according to the correction of Order 76 of 2000.) to Judgment C-727 of 2000.).**

**Note 1, Article 56: See Article 1.1.1.1. of Decree 1081 of 2015, Single Regulatory Decree of the Presidency of the Republic Sector.**

**Note 2, article 56: Article developed by Decree 107 of 2023, by Decree 1273 of 2020 and by Decree 2613 of 2013.**

**Note 3, Article 56: See Presidential Directive 4 of 2018. See Presidential Directive No. 4 of 2014. See Presidential Directive No. 2 of 2014.**

Article 57. Organization and operation of ministries and administrative departments. In accordance with Article 206 of the Political Constitution, the number, name and order of precedence of the ministries and administrative departments shall be determined by law. It is the responsibility of the President of the Republic to distribute business among them according to their nature.

Machine Translated by Google
12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 115 of 148
Congress of Colombia Law 489 of 1998

Article 58. Objectives of ministries and administrative departments.

In accordance with the Constitution, the Act of Creation and this Law, the primary objectives of the ministries and administrative departments are the formulation and adoption of policies, general plans, programs and projects of the Administrative Sector that they direct.

**Conc. Resolution 2534 of 2018, M. Transport.**

Article 59. Functions. The ministries and administrative departments are responsible, without prejudice to the provisions of their creation acts or special laws:

1. Prepare bills related to your branch.

2. Prepare draft executive decrees and resolutions to be issued in the exercise of the powers corresponding to the President of the Republic as the supreme administrative authority and develop his orders related to such powers. **(Note: Section developed by Decree 199 of 2013.)**

_____

3. Fulfill the functions and provide the services assigned to them and issue, in accordance with the law and the respective decrees, the necessary regulations for this purpose.

4. Prepare draft investment plans or programs and other public disbursements corresponding to their sector and the administrative development plans thereof.

5. Coordinate the execution of its plans and programs with territorial entities and provide them with advice, cooperation and technical assistance.

6. Participate in the formulation of Government policy on the issues that concern them and advance its implementation.

Machine Translated by Google

12/19/24, 10:0... Case 1:25-cv-01099-JDB    Document 1-19    Congreso de Colombia Ley 489 de 1998    Filed 04/11/25    Page 116 of 148

7. Guide, coordinate and control, in the manner contemplated by the respective laws and organic structures, the superintendencies, decentralized entities and mixed economy companies that are attached or linked to each of them.

8. Promote and implement plans for decentralization and delegation of activities and functions in the respective sector.

9. Promote, in accordance with constitutional principles, the participation of private entities and persons in the provision of services and activities related to their area of competence.

10. Organize and coordinate the corresponding Sectoral Committee for Administrative Development.

11. Ensure the establishment of the respective Sectoral Information System and supervise and monitor it.

**Note 1, Article 59: Article developed by** Resolution 273 of 2010 **and by** Resolution 2733 of 2010, M. of Environment.

**Note 2: See** Decree 1893 of 2021, **Arti**cle 3.

Article 60. Management of ministries. The management of ministries shall be the responsibility of the Minister, who shall exercise it with the immediate collaboration of the Vice Minister or Vice Ministers.

**Article 60: See** Decree 1258 of 2020.

Article 61. Functions of the Ministers. In addition to those assigned to them by the Political Constitution and special legal provisions, the functions of the Ministers are the following:

Machine Translated by Google
12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 117 of 148
Congress of Colombia Law 489 of 1998

a) To exercise, under their own responsibility, the functions that the President of the Republic delegates to them or the law confers on them and to monitor compliance with those that have been granted to dependencies of the
Ministry, as well as those that have been delegated to officials thereof;

b) Participate in the guidance, coordination and control of the superintendencies, decentralized entities and mixed economy companies, attached or linked to his Office, in accordance with the laws and the respective statutes;

c) Direct and guide the planning function of the administrative sector under his/her charge;

d) Review and approve the draft investment and operating budgets and the prospectus for the use of public credit resources contemplated for the sector under its charge;

e) Monitor the progress of the execution of the budget corresponding to the
Ministry;

f) Sign on behalf of the Nation and in accordance with the Statute
General Contracting Law and the Organic Budget Law, contracts relating to matters pertaining to the Ministry upon delegation by the President of the Republic;

g) Direct personnel administration functions in accordance with the relevant regulations;

h) Act as immediate superior, without prejudice to the nominating function, of the superintendents and legal representatives of attached or linked decentralized entities.

Paragraph. The representation of the Nation in all types of judicial proceedings shall be subject to the provisions of the Administrative Litigation Code and the related special provisions.

**Conc.** Resolution 294 of 2019, Resolution 338 of 2015, **Ministry of Agriculture and Rural Development.**

**Note, article 61:** Article developed by Resolution 2734 of 2010 **and b**y Resolution 2733 of 2010, **M. of Envi**ronment.

Article 62. Deputy Ministers. In addition to those assigned to them by the Political Constitution, the act of creation or special legal provisions and, depending on the number existing in the respective Ministry, the functions of the Deputy Ministers are the following:

a) To fill in for the temporary absences of the Minister, when so ordered by the President of the Republic;

b) Advise the Minister in the formulation of the Sector's policy or action plans and assist him in the management, coordination and control functions that correspond to him;

c) Assist the Minister in his relations with the Congress of the Republic and monitor the progress of bills related to the branch;

d) Carry out the functions delegated by the Minister;

e) Represent the Minister in official activities that he may assign;

f) Study the periodic or occasional reports that the different departments of the Ministry and the entities attached or linked to it must submit to the Minister and present the relevant observations;

g) Direct the preparation of special reports and studies that must be submitted on the development of the plans and programs of the branch;

Machine Translated by Google

12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 119 of 148
Congress of Colombia Law 489 of 1998

h) Ensure the implementation of the specific Administrative Development Plan for the respective sector;

i) Represent the Minister, when requested, in meetings, councils or other collegiate bodies that he must attend;

j) Ensure the exercise of internal control and supervise its effectiveness and compliance with its recommendations. **(Note: See Decree 91 of 2010, Article 12.).** _____

Article 63. Ministerial units. The nomenclature and hierarchy of the ministerial units shall be established in the act that determines the structure of the corresponding Ministry, subject to this law *and the regulations of the Government.* **(Note: This article was declared conditionally enforceable by** ― **the Constitutional Court in Judgment** ~~C-727 of 2000,~~ **except for the crossed out expressions, which were declared unconstitutional in the same Sentence).** _____

____

Article 64. Duties of the heads or directors of ministerial units. In addition to those assigned to them by the Political Constitution, the act of creation and special legal provisions, the duties of the heads or directors of the various ministerial units are the following:

a) Exercise the powers conferred upon them by law or that have been delegated to them;

b) Assist superiors in the study of matters pertaining to the Ministry;

c) Direct, supervise and coordinate the work of its departments in the execution of the adopted programs and in the correct and timely handling of matters within its jurisdiction;

d) Report on the work of their departments and provide the competent official with assessments on the personnel under their command in accordance with the regulations on the matter;

e) Propose the measures it deems appropriate for the better handling of the affairs of the Ministry.

Article 65. Organization and operation of administrative departments. The organizational structure and operation of administrative departments, without prejudice to the provisions of this law, are governed by the rules of creation and organization. In each department there will be a Department Director and a Deputy Director who will have the functions, as far as they are pertinent, contemplated for the Minister and the Vice Ministers, respectively.

In addition, the administrative departments will have the units, councils, commissions or technical committees that are determined for each one.

Article 66. Organization and operation of the superintendencies. The superintendencies are bodies created by law, with the administrative and financial autonomy that the law indicates, **without legal personality,** which perform inspection and surveillance functions attributed by law **or through delegation by the President of the Republic with prior legal authorization.**

The direction of each superintendency will be in charge of the Superintendent. **(Note: The expressions marked in bold in this article were declared constitutional by the Constitutional Court in Judgment C-561 of 1999.)**

Article 67. Organization and operation of special administrative units. Special Administrative Units are bodies created by law, with the administrative and financial autonomy that

the latter indicates to them, without legal personality, that they perform administrative functions to develop or execute programs specific to a ministry or administrative department.

CHAPTER XIII

Decentralized entities

Article 68. Decentralized entities. Decentralized entities of the national order are public establishments, industrial and commercial companies of the State, public corporations and mixed economy companies, superintendencies and special administrative units with legal personality, social companies of the State, **official public service companies** and other entities created by law or with its authorization, whose main purpose is the exercise of administrative functions, the provision of public services or the performance of industrial or commercial activities with legal personality, administrative autonomy and own assets. As organs of the State, even when they enjoy administrative autonomy, they are subject to the political control and supreme direction of the administrative body to which they are attached. **(Note: The section indicated in bold in this subsection was declared constitutional due to the charges analyzed by the Constitutional Court in Judgment C-736 of 2007.)**

Decentralized entities are subject to the rules set forth in the Political Constitution, in this law, in the laws that create them and determine their organic structure, and in their internal statutes.

Decentralized agencies and entities, subject to special regimes by mandate of the Political Constitution, shall be subject to the provisions established for them by the respective law.

Paragraph 1. In accordance with the second paragraph of article 210 of the Political Constitution, the legal regime provided here for decentralized entities is applicable to those of territorial entities without prejudice to the powers assigned by the Constitution and the law to the territorial order authorities.

Paragraph 2. The agencies or entities of the Decentralized Sector that aim to develop scientific and technological activities shall be subject to the Science and Technology Legislation and their organization shall be determined by the National Government.

Paragraph 3. The provisions of this article do not apply to non-profit private law civil corporations linked to the Ministry of the Environment, created by Law 99 of 1993.

Article 69. Creation of decentralized entities. Decentralized entities, at the national level, are created by law; at the departmental, district and municipal level, by ordinance or agreement, or with their authorization, in accordance with the provisions of this law.

The respective project must be accompanied by a demonstrative study that justifies the initiative, in compliance with the principles indicated in article 209. of the Political Constitution.

Article 70. Public establishments. Public establishments are bodies primarily responsible for performing administrative functions and providing public services in accordance with the rules of public law, which have the following characteristics:

a) Legal status;

b) Administrative and financial autonomy;

c) Independent assets, made up of common public assets or funds, the proceeds of taxes, contractual income, own income, fees or contributions for special purposes, in the cases authorized by the Constitution and in the relevant legal provisions.

Article 71. Administrative and financial autonomy. The administrative and financial autonomy of public establishments shall be exercised

In accordance with the acts that govern them and in the performance of their functions, they shall adhere to the law or regulation that created or authorized them and to their internal statutes; and they may not carry out activities or execute acts other than those provided for therein or allocate any part of their assets or resources for purposes other than those contemplated therein.

Article 72. Management and administration of public establishments.
The management and administration of public establishments will be the responsibility of a Board of Directors and a director, manager or president.

Article 73. Composition of the boards of public institutions and duties of their members. The boards of directors of public institutions shall be composed in the manner determined by the respective act of creation.

All members of the boards of directors or advisors of public institutions must act in consultation with the government policy of the respective sector and the interests of the body before which they act.

The boards of public establishments, unless otherwise provided by law, shall be chaired by the Minister or the Director of the Administrative Department to whose office the entity is attached or by his delegate.

Article 74. Qualification of members of the boards of directors. Individual members of the boards of directors or advisors of public institutions, although they perform public functions, do not by that fact alone acquire the status of public employees. Their responsibility, as well as their incompatibilities and disqualifications, shall be governed by the laws on the subject matter and the internal statutes of the respective body.

Machine Translated by Google
12/19/24, 10:0... Case 1:25-cv-01099-JDB    Document 19-2    Filed 04/11/25    Page 124 of 148
Congress of Colombia Law 489 of 1998

Article 75. Official delegates to the boards of directors. Ministers and directors of Administrative Departments and other national authorities who can accredit their delegates to form part of the boards of directors of public establishments, will do so by designating officials at the Management or Advisory level of their corresponding administrative departments or of organizations attached or linked to their Office.

In the case of sectional or local councils, officials from the territorial entity or from decentralized bodies linked or attached to it shall be preferably appointed. If, in addition, said councils are chaired by the Governor or Mayor of the jurisdiction to which the exercise of their functions corresponds, the Minister or the Director of the Department shall consult the Governor or Mayor, without this fact alone being an obligation to appoint the delegate.

Article 76. Functions of the boards of directors of public establishments. The boards of directors of public establishments are responsible for:

a) Formulate, at the proposal of the legal representative, the general policy of the organization, the plans and programs that, in accordance with the Organic Law of Planning and the Organic Budget Law must be proposed for incorporation into the sectoral plans and through these, into the National Development Plan;

b) Formulate, at the proposal of the legal representative, the entity's continuous improvement policy, as well as the programs aimed at guaranteeing administrative development;

c) To be aware of the semi-annual performance evaluations presented by the entity's administration;

d) Propose to the National Government any modifications to the organic structure that they consider pertinent and adopt the internal statutes of the entity and any reforms introduced to them in accordance with the provisions of its creation or restructuring acts;

Machine Translated by Google

12/19/24, 10:...    Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 125 of 148
Congress of Colombia - Law 489 of 1998

e) Approve the draft annual budget of the respective body;

f) Others indicated by law, the act of creation and internal statutes.

**Conc.** Decree 1703 of 2014.

**Note, article 76: See** Decree 76 of 2024. **Article 8**.

Article 77. Appointment of the director, manager or president of public establishments. The director, manager or president of public establishments shall be freely appointed and removed by the President of the Republic.

**Conc.** Decree 2608 of 2013. Decree 356 of 2013.

Article 78. Qualifications and functions of the director, manager or president. The director, manager or president shall be the legal representative of the corresponding entity, shall enter into the acts and contracts necessary for the fulfillment of its objectives and functions on its behalf, shall have its judicial and extrajudicial representation and may appoint the special agents required for the best defense of the interests of the entity.

In addition to those specified in the corresponding laws and regulations, the legal representatives of public establishments shall perform all those functions related to the organization and operation, the exercise of administrative autonomy and legal representation, which are not expressly assigned to another authority.

In particular, they are responsible for:

a) Direct, coordinate, monitor and control the execution of the functions or programs of the organization and its personnel;

Machine Translated by Google

12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 126 of 148
Congress of Colombia Law 489 of 1998

b) Submit general or periodic and specific reports to the President of the Republic, the Minister or Director of the respective Administrative Department, on the activities carried out, the general situation of the entity and the measures adopted that may affect the course of the Government's policy.

Paragraph. National public establishments may only organize sections or regions, provided that the corresponding functions are not assigned to territorial entities.

In this case, the sectional manager or director will be chosen by the respective Governor, from lists of three candidates sent by the legal representative.

**Note, article 78: See Resolution 36 of 2018, ICBF. Do 50.575, page 6**

Article 79. Disciplinary regime for members of the boards and legal representatives of public establishments. In addition to the provisions of the Political Constitution on disqualifications of congressmen, deputies and councillors, in order to be a member of the boards of directors, director, manager or president of public establishments, the prohibitions, incompatibilities and sanctions provided for in Decree Law 128 of 1976 shall be taken into account. Law 80 of 1993 and other concordant regulations that modify or replace them.

Article 80. Exercise of privileges and prerogatives. Public institutions, as administrative bodies, enjoy the same privileges and prerogatives as those granted to the Nation.

Article 81. Regime of acts and contracts. Unilateral acts issued by public establishments in the exercise of administrative functions are administrative acts and are subject to the provisions of the Administrative Litigation Code.

Contracts entered into by public establishments are governed by the rules of the Contractual Statute of state entities contained in

Machine Translated by Google

12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-19    Congress of Colombia Law 489 of 1998    Filed 04/11/25    Page 127 of 148

Law 80 of 1993 and the provisions that complement, add to or modify it, without prejudice to the provisions of the special regulations.

Article 82. Special administrative units and superintendencies with legal personality. Special administrative units and superintendencies are decentralized entities with administrative and patrimonial autonomy which are subject to the legal regime contained in the law that created them and, in matters not provided for by it, to that of public establishments.

Article 83. State social enterprises. State social enterprises, created by the Nation or by territorial entities for the direct provision of health services, are subject to the regime provided for in Law 100 of 1993, Law 344 of 1996 and in this law in the aspects not regulated by said laws and the regulations that complement, replace or add to them.

Article 84. Official public service companies. Official public service companies and public entities whose purpose is to provide such services shall be subject to Law 142 of 1994, the provisions of this law in the aspects not regulated by it and the regulations that complement, replace or add to it.

Article 85. State industrial and commercial enterprises. State industrial and commercial enterprises are bodies created by law or authorized by law, which carry out industrial or commercial activities and economic management in accordance with the rules of private law, except for the exceptions established by law, and which meet the following characteristics:

a) Legal status;

b) Administrative and financial autonomy;

c) Independent capital, constituted entirely with common public assets or funds, the products thereof, or the yield from fees received for functions or services, and special-purpose contributions in cases authorized by the Constitution. **(Note: This section was declared constitutional by the Constitutional Court in Judgment C-1442 of 2000.)**

The capital of State industrial and commercial companies may be represented in shares or quotas of equal nominal value.

State industrial and commercial companies and mixed economy companies will be subject to articles 19, paragraphs 2, 4, 5, 6, 12, 13, 17, 27, paragraphs 2, 3, 4, 5, and 7, and 183 of Law 142 of 1994, as applicable.

Paragraph. The legal provisions protecting industrial secrets and commercial information shall apply to those secrets and information of that nature that are developed and possessed by the State's industrial and commercial enterprises.

Article 86. Administrative and financial autonomy. The administrative and financial autonomy of the State's industrial and commercial enterprises shall be exercised in accordance with the acts that govern them; in carrying out their activities, they shall adhere to the law or regulation that created or authorized them and to their internal statutes; they may not allocate any part of their assets or resources for purposes other than those contemplated in the law or in their internal statutes; in addition to the activities or acts provided for therein, they may develop and execute all those that are necessary for the fulfillment of the assigned objective.

Article 87. Privileges and prerogatives. State industrial and commercial enterprises, as members of the Executive Branch of Public Power, unless otherwise provided by law, enjoy the privileges and prerogatives that the Political Constitution and the laws confer on the Nation and the territorial entities, as the case may be.

Machine Translated by Google

12/19/24, 10:... Case 1:25-cv-01099-JDB   Document 1-19   Filed 04/11/25   Page 129 of 148
Congress of Colombia Law 489 of 1998

However, State industrial and commercial companies, which by reason of their purpose compete with private companies, may not exercise those prerogatives and privileges that imply a violation of the principles of equality and free competition with respect to private companies.

Article 88. Management and administration of companies. The management and administration of the State's industrial and commercial companies shall be the responsibility of a Board of Directors and a Manager or President.

Article 89. Boards of directors of state-owned enterprises. The composition of the boards of directors of state-owned industrial and commercial enterprises, the status and duties of their members, their remuneration and the system of their disqualifications and incompatibilities shall be governed by the provisions applicable to public establishments in accordance with this law.

Furthermore, delegates of private organizations on the boards of directors of companies may not hold management positions in private companies that carry out activities similar to those of the company for which they act and in any case they must declare themselves disqualified when conflicts of interest occur.

Article 90. Functions of the boards of directors of State industrial and commercial enterprises. The boards of directors of State industrial and commercial enterprises are responsible for:

a) Formulate the general policy of the company, the administrative development plan and the plans and programs that, in accordance with the Organic Law of Planning and the Organic Law of the Budget, must be proposed for incorporation into the sectoral plans and, through these, into the Plan.

National Development;

b) Propose to the National Government the modifications to the organic structure that they consider pertinent and adopt the internal statutes of the

entity and any reforms introduced to them;

c) Approve the draft budget of the respective body;

d) Monitor the general functioning of the organization and verify its compliance with the adopted policy;

e) Others indicated by law and internal statutes.

Article 91. Appointment of the Manager or President of State industrial and commercial enterprises. The Manager or President of State industrial and commercial enterprises is the agent of the President of the Republic, **in his free appointment and removal. (Note: The section indicated in bold in this article was declared constitutional by the Constitutional Court in Judgment C-599 of 2000.)**

---

**Conc. Decree 2243 of 2013.**

Article 92. Qualification and functions of the Manager or President. The Manager or President shall be the legal representative of the corresponding entity and shall perform all those functions related to the organization and operation that are not expressly assigned to another authority.

Article 93. Regime of acts and contracts. The acts issued by State industrial and commercial companies for the development of their own industrial or commercial activity or economic management shall be subject to the provisions of Private Law. The contracts entered into by them for the fulfillment of their purpose shall be subject to the provisions of the General Contracting Statute of State entities.

Article 94. Association of State industrial and commercial companies. Companies and corporations created with the exclusive participation of one or more State industrial and commercial companies or between these and other decentralized entities and territorial entities are governed by the provisions established in the acts of creation, and the provisions of the Commercial Code. Except for the following rules: **(Note: Section 1 was declared conditionally constitutional by the charges examined by the Constitutional Court in Judgment C-691 of 2007, enforceability conditionally confirmed in Judgment C-262 of 2008.).**

## 1. Subsidiaries of Industrial and Commercial Companies

For the purposes of this law, a subsidiary company of a State industrial and commercial company is understood to be one in which a State industrial and commercial company participates with a percentage greater than 51% of the total capital.

## 2. Legal characteristics

When more than one industrial and commercial company of the State, territorial entity or other decentralized entity participates in the capital of subsidiary companies, the subsidiary company shall be organized as a commercial company in accordance with the provisions of the Commercial Code.

## 3. Creation of subsidiaries

Industrial and commercial companies of the State and territorial entities that participate in the creation of a subsidiary company shall act subject to prior authorization by law, departmental ordinance or agreement of the respective District or Municipal Council, which may be included in a special regulation **or in the corresponding act of creation and organization of the participating entity or entities. (Note: The expressions indicated in bold in this section were declared constitutional by the Constitutional Court in Judgment C-953 of 1999.)**

## 4. Legal regime

The operation and, in general, the legal regime of acts, contracts, servants and relations with third parties shall be subject to the provisions of private law, especially those of companies and corporations provided for in the Commercial Code and complementary legislation. **(Note: This section was declared constitutional by the charges examined by the Constitutional Court in Judgment C-691 of 2007, enforceability conditionally confirmed in Judgment C-262 of 2008.).**

## 5. Special regime for subsidiaries created with the participation of private individuals

Subsidiary companies in which private individuals participate shall be subject to the provisions set forth in this law for mixed-economy companies.

## 6. Administrative control over subsidiary companies

In the act of constitution of a subsidiary company, whatever its form, the instruments must be established by which the State industrial and commercial company holding the majority stake ensures the conformity of management with the plans and programs and policies of the administrative sector within which they operate.

**Note, article 94: See Decree 403 of 2020, Article 52.**

Article 95. Association between public entities. Public entities may form associations for the purpose of cooperating in the performance of administrative functions or jointly providing services under their responsibility, by entering into inter-administrative agreements or by forming non-profit legal entities.

Non-profit legal entities formed by the exclusive association of public entities are subject to the provisions set forth in the Civil Code and in the regulations for entities of this type. Their Boards or Governing Councils shall be formed in the manner provided for in the corresponding internal statutes, which shall also provide for the appointment of their legal representative.

*Paragraph. The Conference of Governors, the Federation of Municipalities, the Association of Mayors and the associations of municipalities shall be governed by their acts of formation and, where applicable, by the provisions of this article.* **(Note: This article was declared conditionally constitutional by the Constitutional Court in Judgment** C-671 of 1999, **except for its paragraph, which was declared unconstitutional in the same judgment.).**

**Note, article 95: See** Decree 403 of 2020, **Article 52. See** Decree 1066 of 2015, **Article 2.2.5.1.1. paragraph 2.**

Article 96. Establishment of associations and foundations for the performance of activities specific to public entities with the participation of private individuals. State entities, regardless of their nature and administrative order, may, in compliance with the principles set forth in Article 209, of the Constitution, to associate with private legal entities, by entering into association agreements or creating legal entities, for the joint development of activities in relation to the duties and functions assigned to them by law.

The partnership agreements referred to in this article shall be concluded in accordance with the provisions of article 355. of the Political Constitution, they will precisely determine their purpose, term, obligations of the parties, contributions, coordination and all those aspects that are considered pertinent.

When, pursuant to the provisions of this article, non-profit legal entities arise, they shall be subject to the provisions set forth in the Civil Code for civil associations for common benefit.

In any case, the corresponding constitutive act that gives rise to a legal entity will provide for the following aspects:

a) The objectives and activities in charge, specifying their connection with the objectives, functions and controls of the participating public entities;

Machine Translated by Google
12/19/24, 10... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 134 of 148
Congress of Colombia Law 489 of 1998

b) The initial commitments or contributions of the associated entities and their nature and form of payment, subject to budgetary and fiscal provisions, in the case of public entities;

c) The participation of associated entities in the maintenance and operation of the entity;

d) The integration of the management and administration bodies, in which representatives of public entities and individuals must participate;

e) The duration of the association and the grounds for dissolution.

**Note 1, article 96:** See Law 2294 of 2023. Article 270. See Decree 403 of 2020, Article 52. See Decree 1066 of 2015. Article 2.2.5.1.1. paragraph 2.

**Note 2, Article 96:** This article was declared constitutional by the Constitutional Court in Judgment C-671 of 1999.

## CHAPTER XIV

## Mixed economy companies

Article 97. **Regulated by Decree 180 of 2008.** Mixed-economy companies. Mixed-economy companies are legally authorized entities, established as commercial companies with state and private capital contributions, which carry out industrial or commercial activities in accordance with the rules of private law, except for the exceptions established by law.

**Section declared unconstitutional by the Constitutional Court in Judgment C-953 of 1999.** *For a commercial company to be classified as a mixed economy, it is necessary that the state contribute, through the Nation, territorial entities, entities*

~~decentralized and industrial and commercial companies of the State or mixed economy companies is not less than fifty percent (50%) of the total share capital, effectively subscribed and paid.~~

Temporary financial investments do not affect its legal nature or regime.

Paragraph. The regimes of the activities and employees of mixed economy companies in which the contribution of the Nation, territorial entities and decentralized entities is equal to or greater than ninety (90%) of the share capital are those of the State's industrial and commercial companies.

**Note, article 97: Article developed by Decree 529 of 1999.** _____

Article 98. Conditions for participation of public entities. The act of incorporation of any mixed-economy company shall specify the conditions for the participation of the State contained in the provision authorizing its creation, the national, departmental, district or municipal nature of the company, as well as its connection to the different agencies for the purposes of the control that must be exercised over it.

Article 99. Representation of the shares of the Nation and of public entities. The representation of the shares held by public entities or the Nation in a Mixed Economy Company corresponds to the Minister or Head of the Administrative Department to whose office said Company is linked.

The above shall not apply in the case of temporary financial investments in the stock market.

When the shareholder is a public establishment or a State industrial and commercial company, its representation will correspond to the respective legal representative, but may be delegated to the officials indicated in the internal statutes.

Machine Translated by Google
12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 136 of 148
Congress of Colombia Law 489 of 1998

Article 100. Nature of state contributions. In mixed-economy companies, state contributions may consist, among others, of financial or fiscal advantages, guarantee of the company's obligations or subscription of the bonds that it issues. The State may also contribute mining titles and contributions for the exploitation of natural resources owned by the State.

The corresponding contribution will be computed from the moment in which the representative income is effectively realized or recorded in the respective balance sheets.

Article 101. Transformation of companies into businesses. When the shares or social quotas held by private individuals are transferred to one or more public entities, the company will be converted, without the need for prior liquidation, into an industrial and commercial company or into a company between public entities. The corresponding governing bodies of the entity will proceed to modify the internal statutes as appropriate.

Article 102. Disqualifications and incompatibilities. The legal representatives and members of the boards of directors and councils of public establishments, industrial and commercial companies of the State and mixed economy companies **in which the Nation or its entities own ninety percent (90%) or more of their share capital** and **official** public utility companies , shall be subject to the regime of disqualifications, incompatibilities, and responsibilities provided for in Decree 128 of 1976. and other regulations that modify or add to it. **(Note: The sections indicated in bold in this article were declared constitutional based on the charges analyzed by the Constitutional Court in Judgment** C-736 of 2007.**)**

CHAPTER XV

Administrative control

Machine Translated by Google

12/19/24, 10:... Case 1:25-cv-01099-JDB     Document 1-19     Filed 04/11/25     Page 137 of 148
Congress of Colombia - Law 489 of 1998

Article 103. Ownership of control. The President of the Republic as the supreme administrative authority and the ministers and directors of the Administrative Departments shall exercise administrative control over the agencies or entities that make up the Public Administration.

Article 104. Orientation and purpose. The administrative control that, according to law, corresponds to the ministers and directors of the administrative departments shall be oriented to verify and ensure that the activities and functions of the agencies and entities that make up the respective administrative sector are carried out in harmony with government policies, within the principles of this law and in accordance with the plans and programs adopted.

Article 105. Administrative control. Administrative control over decentralized entities shall not include the authorization or approval of specific acts that the internal bodies of these organizations and entities are responsible for issuing under the law.

However, the annual budget is an exception to this rule, as it must undergo the procedures and approvals specified in the Organic Budget Law.

Article 106. Control of State industrial and commercial enterprises and mixed economy companies. Administrative control of State industrial and commercial enterprises and mixed economy companies shall be carried out in accordance with the terms of the corresponding agreements, plans or programs that must be periodically signed with the Nation, through the respective Ministry or Administrative Department.

Article 107. Agreements for the execution of plans and programs. With the periodicity determined by the regulatory standards, the Nation and the territorial entities may enter into agreements with the entities

Machine Translated by Google

12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 138 of 148
Congress of Colombia Law 489 of 1998

decentralized at the corresponding administrative level, for the execution of the plans and programs adopted in accordance with the planning regulations.

These agreements will determine the commitments and obligations of the entities responsible for implementation, the deadlines, reporting duties and control instruments to ensure the efficiency and effectiveness of management.

These agreements shall be deemed to be finalized with the signature of the legal representative of the Nation, or of the territorial entity and of the respective entity or company and may be executed once the certification of the budget availability registry has been accredited, if applicable. In addition to the usual clauses according to their nature, a termination clause may be agreed upon in the event of non-compliance by the decentralized entity or industrial and commercial company of the State.

Article 108. Performance agreements. The Nation and the territorial entities may condition the use and execution of resources from their respective budgets by decentralized entities and mixed economy companies whose financial situation, in accordance with the corresponding evaluation by the internal control bodies, does not allow them to efficiently and effectively fulfill their specific purpose.

Such conditions will be set out in a performance agreement which will determine objectives, action programmes in the aspects of organisation, operation and techniques to ensure the restoration of the conditions for the proper performance of the entity, based on the objectives and functions indicated by the act of creation.

Article 109. Control of indirect decentralized entities and subsidiaries of State industrial and commercial companies. Administrative control over the activities and programs of indirect decentralized entities shall be exercised through the intervention of the legal representatives of the participating agencies and entities or their representatives.

delegates, in the internal deliberative and management bodies of the entity.

The same rule shall apply in relation to subsidiaries of State industrial and commercial enterprises and mixed economy companies.

CHAPTER XVI

Exercise of administrative functions by individuals

Article 110. Conditions for the exercise of administrative functions by private individuals. Private individuals and legal entities may exercise administrative functions, unless *otherwise provided by law,* under the following conditions:

The regulation, control, surveillance and guidance of the administrative function shall be the responsibility at all times, within the legal framework, of the authority or public entity holding the function, which, consequently, must issue the instructions and guidelines necessary for its exercise.

Without prejudice to the relevant controls due to the nature of the activity, the public entity that confers the attribution of the functions will directly exercise control over compliance with the purposes, objectives, policies and programs that must be observed by the individual.

For reasons of public or social interest and at any time, the entity or authority that has assigned to individuals the exercise of administrative functions may terminate the authorization.

The attribution of administrative functions must be preceded by an administrative act and accompanied by an agreement, *if applicable.* **(Note: The expressions crossed out in this article were declared unconstitutional by the Constitutional Court in Judgment C-866 of 1999, which declared the rest of the article of the same constitutional in the terms indicated in said Sentence.).**

Article 111. Requirements and procedures for administrative acts and agreements for conferring administrative functions on private individuals. Administrative entities or authorities may confer the exercise of administrative functions on private individuals, under the conditions set out in the previous article, fulfilling the requirements and observing the procedure described below:

1. Issuance of an administrative act, executive decree, in the case of ministries or administrative departments, or of an act of the board or governing council, in the case of decentralized entities, which will be submitted for approval by the President of the Republic, or by delegation thereof, the ministers or directors of the administrative department, *the governors and the mayors, according to the order to which the entity or agency belongs,* by which it determines: **(Note: The expressions** ~~crossed out in this section were declared unconstitutional by the Constitutional Court in~~ ~~Judgment~~ ~~C-888 of 1999.)~~

a) The specific functions that will be assigned to individuals; **(Note: This paragraph was declared constitutional by the Constitutional Court in Judgment** C- 866 of 1999.)

b) The qualities and requirements that entities or private persons must meet;

c) The conditions for the exercise of functions;

d) The form of remuneration, if applicable;

e) The duration of the assignment and the guarantees that individuals must provide in order to ensure compliance with and application of the principles that govern the exercise of administrative functions in accordance with the Political Constitution and the law.

2. The celebration of an agreement, *if applicable, whose execution* period will be five (5) years, *extendable ,* and for whose celebration the entity or authority must: **(Note: The crossed out expressions in this section were**

Machine Translated by Google
12/19/24, 10... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 141 of 148
Congress of Colombia Law 489 of 1998



**declared unconstitutional by the Constitutional Court in Judgment C-866 of 1999 and the one highlighted and underlined was declared unconstitutional in Judgment C-702 of 1999, Order confirmed in Sentences C-866 of 1999 and C-990 of 1999.).**

Prepare a document or terms of reference, based on the administrative act issued and formulate a public call for this purpose, taking into account the principles established in Law 80 of 1993 for contracting by state entities.

Agree in the agreement the exceptional clauses provided for in Law 80 of 1993 and complementary regulations, once the individual to whom the exercise of administrative functions will be conferred has been selected.

**Note, article 111: This article – with the exception of what is noted above – was declared constitutional by the Constitutional Court in Judgment C-866 of 1999, under the terms established therein.**

Article 112. Legal regime of acts and contracts. The conclusion of the agreement and the subsequent exercise of administrative functions does not modify the nature or the regime applicable to the entity or private person who is entrusted with the task of exercising administrative functions. However, unilateral acts are subject, as regards their issuance and external and internal requirements, to the procedures for communication and challenge of the provisions specific to administrative acts.

Likewise, if contracts are signed on behalf of private entities, they will be subject to the contracting regulations of state entities.

Article 113. Disqualifications and incompatibilities. Legal representatives of private entities or those acting in their place, charged with the exercise of administrative functions are subject to the prohibitions and incompatibilities applicable to public servants, in relation to the function conferred.

Legal representatives and members of the boards of directors or decision-making bodies of private legal entities who have exercised

administrative functions, may not be contractors executing decisions in whose regulation and adoption they have participated.

Article 114. Control over functions. Without prejudice to the controls relevant to the nature of the activity, the public entity that confers the attribution of the functions shall directly exercise control over compliance with the purposes, objectives, policies and programs that must be observed by the individual.

CHAPTER XVII

Final provisions

Article 115. Overall staff and internal work groups. The National Government shall approve the staff of the agencies and entities covered by this law in a global manner. In any case, the director of the agency shall distribute the positions in accordance with the structure, the needs of the organization and its plans and programs.

In order to meet the needs of the service and to effectively and efficiently meet the objectives, policies and programs of the organization or entity, its legal representative may create and organize, on a permanent or temporary basis, internal work groups.

The act of creating such groups will determine the tasks they must perform and the resulting responsibilities and other rules necessary for their operation.

**Conc. Decree 2651 of 2013. Decree 2463 of 2013.**

**Note 1, article 115: Article developed by Decree 4620 of 2010.**

Machine Translated by Google
12/19/24, 10:... Case 1:25-cv-01099-JDB    Document 1-9    Filed 04/11/25    Page 143 of 148
Congress of Colombia Law 489 of 1998

**Note 2, article 115: See Resolution 82 of 2017, IM. DO 50,219, page. 1.**

Article 116. Responsibility of members of commissions, committees or councils. Those who participate in any capacity, permanently or temporarily, in the commissions, committees or councils referred to in this law, without prejudice to the provisions regarding members of the boards or councils of decentralized entities, shall be responsible for their actions in the same terms as the law indicates for public servants.

**Note, article 116: See Resolution 82 of 2017, IM. DO 50,219, page. 1.**

Article 117. Research. In order to improve processes and results and to produce development factors, public entities shall make the necessary arrangements to promote their improvement through social, economic and/or cultural research according to their areas of competence, taking into account international and future trends.

Article 118. Reorganization. Without prejudice to their permanent powers, within twelve months following the entry into force of this law, the entities to which it applies shall carry out and promote the necessary reforms to adapt their organization and operation to its principles and rules.

Paragraph. The entities shall continue to be organized and operate in accordance with the regulations in force on the date of promulgation of this law until the reforms referred to in this article are approved.

Article 119. Publication in the Official Journal. From the date of entry into force of this law, all the following acts must be published in the Official Journal:

Machine Translated by Google

12/19/24, 10... Case 1:25-cv-01099-JDB Document 1-19 Congreso de Colombia Law 489 of 1998 Filed 04/11/25 Page 144 of 148

a) Legislative acts and constitutional reform projects approved in the first round;

b) Laws and bills objected to by the Government;

c) Decrees with the force of law, executive decrees and resolutions issued by the National Government and other administrative acts of a general nature, issued by all bodies, dependencies, entities or organizations of the national order of the different Branches of Public Power and other bodies of a national nature that make up the structure of the State.

Paragraph. Only with the publication of administrative acts of a general nature in the Official Journal is the requirement of publicity fulfilled for the purposes of their validity and enforceability.

**Conc.** Decree 113 of 2023. Decree 867 of 2021. Decree 866 of 2021.

**Note, article 119: This article was declared constitutional by the Constitutional Court in Sentences** C-957 of 1999 **and** C-646 of 2000, in relation **to** the charges analyzed **therein.**

Article 120. **Declared unconstitutional by the Constitutional Court in Judgment** C-702 of 1999, **order confirmed in Judgments** C-923 of 1999, C-953 of 1999, C-954 of 1999, C-990 of 1999 **and** C-109 of 2000. *Extraordinary Powers. In accordance with the provisions of paragraph 10 of article 150 of the Political Constitution, the President of the Republic is vested with specific extraordinary powers so that within a period of six months, counted from the date of publication of this law, he may issue regulations with the force of law to:*

*1. To suppress, merge, restructure or transform entities, agencies and dependencies of the Executive Branch of the Public Power at the national level; that is, higher councils, regulatory commissions, boards and committees, ministries and administrative departments, superintendencies, public establishments, industrial and commercial companies of the State, special administrative units, social enterprises of the State,*

Machine Translated by Google

12/19/24, 10:... Case 1:25-cv-01099-JDB Document 1-9 Congress of Colombia Law 489 of 1995 Filed 04/11/25 Page 145 of 148

State, state-owned companies providing public services, scientific and technological institutes, entities of a unique nature and other entities and administrative bodies of the national order that have been created or authorized by law.

-

2. Arrange the merger, spin-off or dissolution and subsequent liquidation of companies between public entities, mixed economy companies, indirect decentralized companies and associations of public entities, in which there is participation of public entities of the national order.

-

3. Dictate the regime for the liquidation and dissolution of public entities at the national level.

-

4. Eliminate or reform unnecessary regulations, procedures and formalities existing in public administration.

-

5. Review and adjust the rules of the foreign service and the diplomatic career.

-

6. Modify the structure of the Office of the Comptroller General of the Republic, determine the organization and operation of its external audit; suppress, merge, restructure, transform or liquidate the Social Welfare Fund referred to in Law 106 of 1993, determine the system of nomenclature, classification and remuneration of the employees of the Office of the Comptroller General of the Republic, being able to create, suppress or merge jobs and establish the rules that must be observed for this purpose, and dictate the rules on the Special Administrative Career referred to in ordinal 10 of article 268. of the Political Constitution and establish all the characteristics that are the responsibility of the law regarding its personal regime.

-

7. Modify the structure of the Office of the Attorney General and the Office of the General Prosecutor; determine the system of nomenclature, classification and remuneration of its public servants, create, eliminate and merge jobs in said entities; modify the internal system of competences and modify the Administrative Career system provided for the servants of said entities.

-



*Paragraph 1. The extraordinary powers conferred by this article shall be exercised by the Government for the purpose of rationalizing the state apparatus, guaranteeing the efficiency and effectiveness of the administrative function and reducing public spending.*

*Paragraph 2. The act ordering the merger, suppression or dissolution and liquidation shall provide for the subrogation of obligations and rights of the merged, suppressed or dissolved organizations or entities, the ownership and destination of assets or income, and the manner in which the rights will continue to be exercised, the necessary budgetary adjustments, the regime applicable to the liquidation and, in accordance with the regulations governing the matter contained in Law 443 of 1998, the situation of public servants linked to them.*

*Paragraph 3. In exercising the powers conferred by this article, the President of the Republic may not modify codes, statutory laws, organic laws and those referred to in numeral 19 of article 150 of the Political Constitution.*

*Likewise, in exercising these powers, the President of the Republic may not merge or abolish entities or organizations created or provided for by the Political Constitution.*

*Likewise, except as provided in paragraphs 6 and 7, the exercise of the powers conferred in this article does not include the bodies, departments or entities to which the Political Constitution recognizes a regime of autonomy.*

*Paragraph 4. The powers referred to in paragraphs 6 and 7 of this article shall be exercised after hearing the opinion of the Comptroller General of the Republic, the Attorney General of the Nation and the Procurator General of the Nation, in relation to their respective entities.*

*Paragraph 5. By virtue of the powers contained in this article, the Government may not create any new entity or public body at the national level. In this sense, a new entity is considered to be created whenever the result of the exercise of the powers pursues objectives that are essentially different from those originally determined by the legislator for the respective entity or entities.*

Machine Translated by Google
12/19/24, 10... Case 1:25-cv-01099-JDB    Document 1-19    Filed 04/11/25    Page 147 of 148
Congress of Colombia Law 489 of 1998

Article 121. Validity and repeals. This law shall enter into force upon its promulgation and shall repeal any provisions contrary to it, especially Decree-Laws 1050 of 1968, 3130 of 1968 and 130 of 1976.

The President of the Honorable Senate of the Republic,

Fabio Valencia Cossio.

The Secretary General of the Honorable Senate of the Republic,

Manuel Enriquez Rosero.

The Speaker of the Honorable House of Representatives,

Emilio Martinez Rosales.

The Secretary General of the Honorable House of Representatives,

Gustavo Bustamante Moratto.

REPUBLIC OF COLOMBIA-NATIONAL GOVERNMENT

Publish and execute.

Given in Santa Fe de Bogotá, DC, on December 29, 1998.

ANDRES PASTRANA ARANGO

The Minister of the Interior,

Nestor Humberto Martinez Neira.

The Director of the Administrative Department of the Civil Service,

Mauricio Zuluaga Ruiz.