IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERIMETRAL ORIENTAL DE BOGOTÁ,
S.A.S.,

     *Petitioner*,

v.

AGENCIA NACIONAL DE
INFRAESTRUCTURA
and
THE REPUBLIC OF COLOMBIA

     *Respondents*.

Civil Action No. _____

**<u>Declaration of Jason W. Myatt in Support of Petition to Confirm Arbitral Award</u>**

# EXHIBIT 19

**Sentencia C-666/00**

### JURISDICCION COACTIVA-Concepto

*La jurisprudencia ha definido la jurisdicción coactiva como un "privilegio exorbitante" de la Administración, que consiste en la facultad de cobrar directamente, sin que medie intervención judicial, las deudas a su favor, adquiriendo la doble calidad de juez y parte, cuya justificación se encuentra en la prevalencia del interés general, en cuanto dichos recursos se necesitan con urgencia para cumplir eficazmente los fines estatales.*

### JURISDICCION COACTIVA-Naturaleza

### JURISDICCION        COACTIVA-Finalidad/**JURISDICCION COACTIVA POR ORGANISMOS VINCULADOS**

*La finalidad de la jurisdicción coactiva consiste en recaudar en forma rápida las deudas a favor de las entidades públicas, para así poder lograr el eficaz cumplimiento de los cometidos estatales. Pero esta justificación no es aplicable a entes que despliegan actividades semejantes a las de los particulares, aunque aquéllas también estén, de una u otra forma, destinadas a hacer efectivos los fines del Estado. La conversión de las entidades vinculadas en "jueces" y partes puede afectar el equilibrio de las relaciones entre aquéllas y los particulares, con quienes compiten libremente en actividades industriales y comerciales.*

### ACTOS DE GESTION DE ENTIDADES VINCULADAS

*Las actividades generalmente atribuidas por la ley a las entidades vinculadas corresponden, consideradas materialmente, a actos de gestión y no de autoridad y, por ello, aquéllas no deben estar investidas de una atribución exorbitante que está ligada al concepto de imperio del Estado. En estos eventos, los conflictos que se presenten con los particulares deben llevarse a los estrados judiciales, con el fin de respetar el debido proceso y los principios de imparcialidad y de juez natural.*

### FUNCIONES        ADMINISTRATIVAS        POR        ENTES VINCULADOS-Atribución por parte del legislador

*Es posible que el legislador, en ejercicio de su libertad de conformación de la estructura administrativa, asigne a ciertos entes vinculados funciones administrativas. En estos casos, la atribución excepcional en cuestión estaría plenamente justificada, en cuanto las funciones administrativas*

*asignadas expresamente por la ley llevarían implícita la noción de imperium.*

## CONSTITUCIONALIDAD CONDICIONADA

Referencia: expediente D-2706

Demanda de inconstitucionalidad (parcial) contra el artículo 112 de la Ley 6 de 1992

Actor: Hernán Antonio Barrero Bravo

Magistrado Ponente:
Dr. JOSÉ GREGORIO HERNÁNDEZ GALINDO

Santa Fe de Bogotá, D.C., a los ocho (8) días de junio de dos mil (2000).

**La Sala Plena de la Corte Constitucional, en ejercicio de sus atribuciones constitucionales y legales, en especial las previstas en el artículo 241, numeral 4, de la Constitución Política, y cumplidos todos los trámites y requisitos contemplados en el Decreto 2067 de 1991, ha proferido la siguiente**

### SENTENCIA

en relación con la demanda de inconstitucionalidad (parcial) que, en uso de su derecho político, presentó el ciudadano Hernán Antonio Barrero Bravo contra el artículo 112 de la Ley 6 de 1992.

## I. TEXTO DE LA NORMA ACUSADA

A continuación se transcribe, subrayando lo demandado, el texto de la disposición objeto de proceso:

### "LEY 6 DE 1992
(Junio 30)

por la cual se expiden normas en materia tributaria, se otorgan facultades para emitir títulos de deuda pública interna, se dispone un ajuste de pensiones del sector público nacional y se dictan otras disposiciones.

**EL Congreso de Colombia,**

**DECRETA:**

(...)

**Artículo 112.- Facultad de cobro coactivo para las entidades nacionales.** De conformidad con los artículos 68 y 79 del Código Contencioso Administrativo, las entidades públicas del orden nacional tales como ministerios, departamentos administrativos, organismos adscritos y vinculados, la Contraloría General de la República, la Procuraduría General de la Nación y la Registraduría Nacional del Estado Civil, tienen jurisdicción coactiva para hacer efectivos los créditos exigibles a favor de las mencionadas entidades y de la Nación. Para este efecto la respectiva autoridad competente, otorgará poderes a funcionarios abogados de cada entidad o podrá contratar apoderados especiales que sean abogados titulados".

## II. LA DEMANDA

Dice el demandante que la expresión acusada vulnera los artículos 116 y 121 de la Constitución Política.

Manifiesta que el proceso de jurisdicción coactiva es de naturaleza administrativa, y que mediante él, en virtud de mandato legal otorgado por los artículos 68 y 79 del Código Contencioso Administrativo, se faculta a algunas entidades de la Administración Pública para que hagan efectivos los créditos que en su favor o a nombre de la Nación, los particulares u otras entidades les adeuden.

Según el actor, la propia Carta Política, en el artículo 116, inciso 3, permite   que excepcionalmente la ley atribuya función jurisdiccional en materias precisas a determinadas autoridades administrativas.

El artículo 13 de la Ley Estatutaria de la Administración de Justicia -añade la demanda- establece que las autoridades administrativas, excepcionalmente, ejercen función jurisdiccional, de acuerdo con lo establecido en la Constitución, de conformidad con las normas sobre competencia y procedimiento previstas en la ley.

Señala que la inconstitucionalidad de la expresión "y vinculados" proviene de dos circunstancias: la primera consiste en que las empresas industriales y comerciales del Estado y las sociedades de economía mixta no son, como lo exige el artículo 116 de la Constitución "autoridades administrativas" y, por tanto, carecen de lo que denominan los doctrinantes franceses "puissance publique", dispensada a la Administración, cuya característica especial tiene que ver con el

privilegio de la decisión ejecutoria; la segunda en que -según su criterio-
la disposición acusada desconoce que los actos expedidos por los
organismos vinculados para el desarrollo de su actividad propia,
industrial, comercial o de gestión económica, se sujetan a las
disposiciones del Derecho Privado, al tenor de lo dispuesto por los
artículos 93 y 97 de la Ley 489 de 1998, y por lo tanto, los actos
expedidos por aquellos organismos no son actos administrativos que
cuenten con las características de ejecutoriedad, ejecutividad y
obligatoriedad, elementos propios del acto administrativo de acuerdo
con el artículo 68 del Código Contencioso Administrativo.

## III. INTERVENCIONES

La ciudadana Ana Lucia Padrón Carvajal, obrando en calidad de apoderada
de la Contraloría General de la Nación, presenta escrito mediante el cual
expone las razones que a su juicio ameritan la declaración de exequibilidad
de la expresión acusada.

En primer término, advierte que en su criterio el actor presenta en su
demanda una interpretación subjetiva de lo que en su entender la
Constitución Política señala como "autoridades administrativas" y de las
expresiones "organismos y entidades administrativas" y "actos
administrativos expedidos por los organismos vinculados", contenidas en
el artículo 49 de la Ley 489 de 1998.

Por otra parte, la interviniente expresa que la facultad otorgada en la
disposición acusada no vulnera ningún artículo de la Constitución, por
cuanto las entidades autorizadas para ejercer la jurisdicción coactiva sí
tienen el carácter de autoridades administrativas conforme lo dispuesto por
el inciso 5 del artículo 115 de la Carta, que define cuáles entidades forman
parte de la Rama Ejecutiva.

Así mismo porque en virtud de la Ley 489 de 1998, al definir qué se
entiende por organismos que conforman el sector descentralizado de la
Administración Pública Nacional, por empresas industriales y comerciales
así como por sociedades de economía mixta, estableció que estos
organismos desarrollan actividades de naturaleza industrial o comercial
conforme a las reglas de Derecho privado, salvo las excepciones que
consagra la ley y una de ellas es la que indica el artículo 112 parcialmente
impugnado.

También presenta escrito el apoderado del Ministerio de Hacienda y Crédito Público, ciudadano Manuel Avila Olarte, mediante el cual expresa los argumentos que a su juicio ameritan la exequibilidad de la expresión objeto de la presente revisión constitucional.

Manifiesta, invocando jurisprudencia de la Corte Constitucional, que la norma parcialmente demandada no vulnera el artículo 116 de la Carta Fundamental, en virtud de la autorización expresa que se le otorga a las autoridades administrativas para ejercer algunas funciones jurisdiccionales, en la medida en que la jurisdicción coactiva no correspondería a una función judicial sino administrativa.

Recuerda el interviniente que, de acuerdo con lo dispuesto por el artículo 150, numeral 23 de la Constitución, el legislador es el órgano de la Administración Pública competente para definir y señalar cuáles autoridades pueden ejercer la jurisdicción coactiva como función administrativa.

Desconoce el argumento expuesto por el demandante según el cual, los órganos estatales vinculados al sector central de la Administración no se rigen exclusivamente por el Derecho privado -según la Ley 489 de 1998-, sino también por las reglas del Derecho público, cuando así lo determine excepcionalmente la ley (art. 85 y 97 **Ibídem**).

Expresa que otra razón que carece de sustento constitucional y que es expuesta por el demandante, es la de restringir únicamente las obligaciones que prestan mérito ejecutivo a aquéllas que se encuentren expresadas en actos administrativos, toda vez que según el artículo 68 del C.C.A., el documento que contenga la deuda a favor del órgano estatal respectivo, puede estar contenido en un texto que contenga una obligación clara, expresa y exigible.

Finalmente manifiesta el apoderado del Ministerio de Hacienda y Crédito Público que los órganos del Estado vinculados al sector central de la Administración Pública, hacen parte de la Rama Ejecutiva del Poder Público, es decir, que se trata de autoridades administrativas o ejecutivas, que no pueden, por tanto, ejercer una función judicial.

## IV. CONCEPTO DEL PROCURADOR GENERAL DE LA NACIÓN

El Procurador General de la Nación solicita a la Corte declarar la constitucionalidad de la expresión impugnada.

Considera ese Despacho que el ejercicio de la jurisdicción coactiva corresponde a una función administrativa y que si, en virtud del artículo 116 de la Carta Política, las autoridades administrativas y aun los particulares están autorizados para ejercer funciones judiciales, con mayor razón puede facultarse a las autoridades públicas para ejercer la ejecución por vía de la jurisdicción coactiva. Lo anterior, por cuanto esta jurisdicción no reúne los requisitos propios de un proceso judicial, sino que corresponde al ejercicio de las potestades propias de la Administración.

En criterio del Procurador, la jurisdicción coactiva se traduce en una manifestación del ejercicio de los poderes exorbitantes de la Administración, y se ejerce respecto de obligaciones surgidas de actos de soberanía del Estado y no de simples actos de comercio.

Manifiesta que la supuesta transgresión alegada por el demandante al artículo 121 de la Constitución no se presenta, por cuanto las entidades vinculadas sólo pueden ejercer la jurisdicción coactiva en los casos y bajo las condiciones y procedimientos que le establezca la ley.

Por otro lado, y en torno al tema de la naturaleza jurídica de los organismos vinculados, considera el Jefe del Ministerio Público quo éstos pueden realizar cobros a través del procedimiento de jurisdicción coactiva, siempre y cuando se trate de asuntos relacionados con las funciones administrativas que ellas cumplen, es decir, cuando actúen como autoridad administrativa y no como empresa sometida al régimen del Derecho privado.

Finalmente manifiesta que, en torno al tema del ejercicio de la jurisdicción coactiva, en relación a las obligaciones derivadas de los contratos administrativos, cabe advertir que la Ley 80 de 1993 define las empresas industriales y comerciales del Estado y las sociedades de economía mixta como entidades estatales y que en su artículo 4 señala como derecho de las entidades estatales, adelantar las gestiones necesarias para el reconocimiento y cobro de las sanciones pecuniarias y garantías a que hubiere lugar.

## V. CONSIDERACIONES DE LA CORTE CONSTITUCIONAL Y FUNDAMENTOS DE LA DECISION

### La jurisdicción coactiva y los organismos vinculados

La norma objeto de estudio otorga a los organismos vinculados a la Administración Nacional la facultad de ejercer jurisdicción coactiva para

hacer efectivos los créditos exigibles a su favor, según las reglas establecidas en los artículos 68 y 79 del Código Contencioso Administrativo, a los que remite expresamente, circunscribiendo, por tanto, dicha posibilidad a los actos y decisiones contemplados en las disposiciones correspondientes (artículos 68 y 79 del Código Contencioso Administrativo).

En criterio de la Corte Constitucional, la norma así concebida no tiene en cuenta elementos trascendentales para el otorgamiento de la aludida atribución a los entes vinculados: su naturaleza específica y las actividades que les corresponden, en cuyo desempeño están asimilados a los particulares y sólo excepcionalmente se les confía, por la ley, el ejercicio de funciones administrativas.

La remisión que se hace a las mencionadas normas, en cuanto aluden de modo expreso a actos administrativos ejecutoriados a favor de la Nación, de entidades territoriales y de establecimientos públicos; a sentencias y decisiones judiciales ejecutoriadas dictadas a favor del tesoro nacional, de entidades territoriales y de establecimientos públicos; a liquidaciones de impuestos practicadas por funcionarios fiscales; y a liquidaciones privadas que hayan quedado en firme, carece de trascendencia para los fines del presente análisis de constitucionalidad en lo referente a las entidades **vinculadas,** ya que dichos preceptos legales no les son aplicables, como puede verse en los mismos textos, transcritos más adelante (numerales 1, 2 y 3 del artículo 68 y art. 79 C.C.A.)

La remisión sí resulta relevante en cuanto se refiere a contratos, pólizas de seguros y demás garantías que otorguen los contratistas a favor de tales entes y en relación con documentos provenientes de sus deudores por el ejercicio de actividades cumplidas en posición de competencia con los particulares (numerales 4, 5 y 6 del artículo 68 C.C.A), pero allí la Corte, como se verá en esta providencia, estima inconstitucional el otorgamiento injustificado e indiscriminado de las facultades propias de la jurisdicción coactiva a las entidades **vinculadas**, que, en lo concerniente a sus actos de gestión y dada su naturaleza, carecen de la autoridad reconocida al Estado.

Para una mejor comprensión de la disposición objeto de juicio, deben tenerse en cuenta otras normas legales que establecen cuáles son los organismos **vinculados** a los que aquélla se refiere.

El parágrafo del artículo 50 de la Ley 489 de 1998 prescribe lo siguiente:

"**Artículo 50.- Contenido de los actos de creación.** (...) **Parágrafo-** Las superintendencias, los establecimientos públicos y las unidades administrativas especiales

> estarán adscritos a los ministerios o departamentos administrativos; las empresas industriales y comerciales del Estado y las sociedades de economía mixta estarán vinculadas a aquéllos; los demás organismos  y entidades estarán adscritos o vinculados, según lo determine su acto de creación" (se subraya).

Las empresas industriales y comerciales del Estado y las sociedades de economía mixta son entidades descentralizadas por servicios, y gozan de personería jurídica, autonomía administrativa y patrimonio propio, según lo prescriben los artículos 68 y 87 de la citada Ley.

El artículo 85 **ibídem** define a las empresas industriales y comerciales del Estado como "organismos creados por la ley o autorizados por ésta, que desarrollan actividades de naturaleza industrial y comercial y de gestión económica conforme a las reglas del Derecho Privado, salvo excepciones que consagra la ley...".

Definición similar traía el artículo 6 del Decreto 1050 de 1968, y el 97 de la Ley 489 de 1998 señala que las sociedades de economía mixta "son organismos autorizados por la ley, constituidos bajo la forma de sociedades comerciales con aportes estatales y de capital privado, que desarrollan actividades de naturaleza industrial y  comercial conforme a las reglas de Derecho Privado, salvo las excepciones que   consagra la ley".

El artículo 8 del Decreto 1050 de 1968 definía en forma casi idéntica este tipo de entidades descentralizadas.

Ahora bien, se ha entendido que los conceptos de **adscripción** y **vinculación** hacen referencia al grado de autonomía de que gozan los entes descentralizados por servicios; la vinculación supone una mayor independencia respecto de los órganos del sector central de la Administración.

También habrá de hacerse alusión a lo establecido en el artículo 68 del C.C.A., por cuanto el precepto atacado remite a esta disposición. Dicha norma señala cuáles obligaciones prestan mérito ejecutivo por jurisdicción coactiva, de la siguiente forma:

> "**Artículo 68**.- Prestarán mérito ejecutivo por jurisdicción coactiva, siempre que en ellos conste una obligación clara, expresa y actualmente exigible, los siguientes documentos:
>
> 1. Todo acto administrativo ejecutoriado que imponga a favor de la Nación, de una entidad territorial, o de un establecimiento público de cualquier orden, la obligación de pagar una suma líquida de dinero, en los casos previstos en la ley.
>
> 2. Las sentencias y demás decisiones jurisdiccionales ejecutoriadas que impongan a favor del tesoro nacional, de una entidad territorial, o de un establecimiento público de cualquier orden, la obligación de pagar una suma líquida de dinero.

3. Las liquidaciones de impuestos contenidas en providencias ejecutoriadas que practiquen los respectivos funcionarios fiscales, a cargo de los contribuyentes, o las liquidaciones privadas que hayan quedado en firme, en aquellos tributos en los que su presentación sea obligatoria.

4. Los contratos, las pólizas de seguro y las demás garantías que otorguen los contratistas a favor de entidades públicas, que integrarán título ejecutivo con el acto administrativo de liquidación final del contrato, o con la resolución ejecutoriada que decrete la caducidad, o la terminación según el caso.

5. Las demás garantías que a favor de las entidades públicas se presten por cualquier concepto, las cuales se integrarán con el acto administrativo ejecutoriado que declare la obligación.

6. Las demás que consten en documentos que provengan del deudor".

Por su parte, el artículo 79 del C.C.A. señala que "las entidades públicas podrán hacer efectivos los créditos a su favor en todos los casos a que se refieren las disposiciones anteriores por jurisdicción coactiva y los particulares por medio de la jurisdicción ordinaria".

No obstante lo anterior, para establecer cuál es el actual alcance de las transcritas disposiciones, debe tenerse en cuenta que el artículo 75 de la Ley 80 de 1993 modificó lo atinente a la competencia para conocer de las controversias derivadas de los contratos estatales y de los procesos de ejecución o cumplimiento, y la asignó a la jurisdicción de lo contencioso administrativo.

Sobre las implicaciones de esa reforma, vale la pena citar el siguiente auto del Consejo de Estado:

"...mediante el artículo 112 de la ley 6ª de 1992 se dio a las entidades públicas del orden nacional la facultad de cobro coactivo para hacer efectivos los créditos a su favor. No obstante, y de conformidad con lo establecido en el artículo 75 de la ley 80 de 1993, que es posterior y especial, a la jurisdicción de lo contencioso administrativo corresponde conocer de las controversias contractuales derivadas de todos los contratos estatales y de los procesos de ejecución y cumplimiento , de manera que las entidades públicas nacionales sólo tienen la facultad de cobrar coactivamente los créditos que tuvieren a su favor cuando no se trate de obligaciones derivadas de contratos estatales, en cuyo caso, se repite, corresponde a la jurisdicción contencioso administrativa conocer de los procesos de ejecución" (Cfr. Consejo de Estado. Sala de lo Contencioso Administrativo. Sección Quinta. Expediente 817. Auto del 10 de abril de 1997. Magistrado Sustanciador: Mario Alario Méndez).

Es así como, de conformidad con lo prescrito en el artículo 68 del C.C.A., los actos que prestarían mérito ejecutivo respecto de las entidades vinculadas, serían los relacionados con los contratos, pólizas y garantías y demás que consten en documentos que provengan del deudor, pues en el resto de casos contemplados en dicha norma, se hace referencia expresa a

diferentes actos que provengan de otro tipo de entidades (Nación, entidad territorial y establecimiento público).

En consecuencia, si se tiene en cuenta el contexto normativo y particularmente los organismos que expresamente menciona el artículo 68 en cita, la jurisdicción coactiva atribuida por el precepto materia de examen a los entes vinculados estaría atada a actos que podrían considerarse de gestión y no de autoridad, ya que los numerales 4, 5 y 6 del artículo 68 del Código Contencioso Administrativo -que les serían aplicables- se refieren al manejo de sus relaciones bilaterales con los particulares. Pero como ya se explicó, los concernientes a los conflictos contractuales, según la legislación vigente, deben ser resueltos por la jurisdicción de lo contencioso administrativo (artículo 75 de la Ley 80 de 1993).

Hechas las anteriores precisiones sobre el alcance de la norma objeto de juicio a la luz del ordenamiento vigente, cabe establecer cuál es la naturaleza de la "jurisdicción coactiva".

En torno a esa cuestión, se han sostenido dos posiciones antagónicas. La primera defiende el carácter judicial de la función, mientras que la segunda afirma que se trata de una función eminentemente administrativa.

La jurisprudencia ha definido la jurisdicción coactiva como un "privilegio exorbitante" de la Administración, que consiste en la facultad de cobrar directamente, sin que medie intervención judicial, las deudas a su favor, adquiriendo la doble calidad de juez y parte, cuya justificación se encuentra en la prevalencia del interés general, en cuanto dichos recursos se necesitan con urgencia para cumplir eficazmente los fines estatales.

Al respecto, vale la pena citar los siguientes pronunciamientos judiciales:

> "(...) Uno de esos privilegios es la jurisdicción o facultad coactiva, en virtud de la cual el Estado, el Departamento o el Municipio cobran por medio de sus representantes o recaudadores ciertas cantidades que les adeudan, haciendo confundir aparentemente en el empleado que ejerce la jurisdicción los caracteres de juez y parte.
>
> Esta facultad es uno de los **privilegios exorbitantes** de las personas administrativas, según lo expresa el notable publicista M. Hauriou. Este privilegio, el de que las personas administrativas no litigan con los individuos sobre un pie de perfecta igualdad, ha dado nacimiento a la jurisdicción coactiva, sin la cual seguramente la comunidad social no obtendría en tiempo oportuno los recursos que le son necesarios para atender a las exigencias de la administración pública. Por esta razón, dice el citado autor que las acreencias públicas están amparadas por un privilegio general de cobranza, que es una de las manifestaciones de procedimiento de acción directa; la Administración, confeccionando un simple documento de cobranza, se crea un título ejecutivo. Este privilegio existe, por lo menos en provecho del Estado, de los Departamentos". (Corte Suprema de Justicia. Sala de Negocios Generales. Providencia del 13 de agosto de 1936.-G.J. Nº 1911. Pág. 882).

"La jurisdicción coactiva es un privilegio concedido en favor del Estado, que consiste en la facultad de cobras las deudas fiscales por medio de los empleados recaudadores, asumiendo en el negocio respectivo la doble calidad de juez y parte. Pero ese privilegio no va hasta pretermitir las formalidades procedimentales señaladas por la ley para adelantar las acciones ejecutivas". (Corte Suprema de Justicia. Sala de Negocios Generales. G.J. XLV. Nº 1929, Auto de septiembre 1 de 1937, pág. 773).

"...En los conflictos de derecho administrativo, salvo disposición en contrario, ni la administración ni los particulares tienen que recurrir a un juez. Aquella actúa generalmente por sí y ante sí, aplica la ley sin requerimiento de parte, obliga al individuo y ejecuta oficiosamente sus propios ordenamientos. Este sistema es una consecuencia necesaria y forzosa de los mandamientos constitucionales y legales que establecen la prevalencia del interés general sobre el interés privado, que consagran en principio de la aplicabilidad inmediata de ciertas disposiciones de derecho público, y que confieren a la rama administrativa la función de realización de la ley. Es, en una palabra, lo que la moderna doctrina del Estado y del Derecho denomina el privilegio de la decisión previa y el privilegio de la ejecución oficiosa. La administración pública, en tales casos y en la medida de su competencia, no tiene que acudir a un juez para que defina, como árbitro de los intereses en choque, lo que es derecho, porque ella misma está investida de poderes jurídicos de decisión y ejecución. Si el particular se conforma con el pronunciamiento administrativo, éste causará estado. Si no se conforma tendrá abierta la vía gubernativa y, posteriormente, la vía jurisdiccional..." (Consejo de Estado, Sala Plena, junio 15 de 1965, Anales 407-408, T.LXIX. 1965, p. 297)".

"La jurisdicción coactiva es uno de los privilegios exorbitantes de las personas administrativas relacionados por Hauriou en virtud del cual las entidades de derecho público cobran  por medio de sus representantes o recaudadores, las sumas que se les adeudan por impuestos o contribuciones especiales, haciendo confundir en apariencia en el empleado que ejerce la jurisdicción los caracteres de juez y parte. Los créditos fiscales que mediante esa jurisdicción se cobran han nacido en virtud de la facultad de imperio que tiene el Estado sobre los asociados; ellos suelen surgir unilateralmente a la vida jurídica y es quizá esa la diferencia más sustancial y trascendente que existe entre el juicio ejecutivo dentro del derecho privado y los que se siguen por la jurisdicción coactiva; el fundamento de aquellos son las relaciones que han nacido entre particulares en el comercio jurídico, las de éstos son los actos de soberanía que se ejercitan por el Estado y demás entidades de derecho público y por medio de los cuales establecen tributos y contribuciones. Pero ocurre que hay situaciones en que el acto unilateral de establecimiento de un impuesto o contribución tiene características especiales en virtud de vínculos contractuales preexistentes entre la administración y el presunto deudor, los cuales inciden en forma trascendental y a veces decisiva en la relación jurídica que pueden surgir en tal hipótesis entre el Estado como sujeto activo del tributo y el particular como sujeto pasivo del mismo" (Consejo de Estado. Sala de lo Contencioso Administrativo. Sección Cuarta. Sentencia del 25 de marzo de 1969. Consejero Ponente: Dr. Hernando Gómez Mejía. Anales 1969. Tomo 76, pág. 371)

Aunque en las citadas providencias se hacía referencia expresa a la doble condición de juez y parte de los funcionarios investidos de jurisdicción coactiva, en la providencia que a continuación se transcribe se sostiene más claramente el carácter judicial de dicha función. Dijo el Consejo de Estado:

"No puede remitirse a duda que las providencias dictadas por quienes ejercen jurisdicción coactiva tienen la misma naturaleza jurídica de las que profieren en juicio ejecutivo los jueces vinculados a la rama jurisdiccional del poder público y que el conjunto de ellas constituye un verdadero proceso judicial de ejecución y no un simple trámite gubernativo, como los que adelantan los funcionarios de la rama ejecutiva en desarrollo de sus atribuciones propias y dentro de la órbita normal de dicha rama.

> (...) Las actuaciones realizadas en ejercicio de la jurisdicción coactiva constituyen procesos judiciales, no son acusables ante los tribunales contenciosos ni por vía de simple nulidad ni de plena jurisdicción, ya que, de acuerdo con lo que, las aciones de esta índole no están instituidas para impugnar juicios sino actos creadores de situaciones jurídicas generales o emanados de potestades distintas a la judicial, ene l sentido genérico de esta palabra, y además, al contencioso no le está atribuida la función de ser *juez de jueces*". (Cfr. Consejo de Estado. Sala de lo Contencioso Administrativo. Sección Cuarta. Auto del 8 de mayo de 1969. Anales 1969. T. 76, p. 231. C.P.: Dr. Juan Hernández Sáenz)

Por el contrario, la Corte Suprema de Justicia, mediante fallo del 5 de octubre de 1989 (M.P.: Dr. Hernando Gómez Otálora), aseveró que la jurisdicción coactiva correspondía a una función de naturaleza administrativa. Razonó así esa Corporación:

> "La jurisdicción coactiva no implica el ejercicio de una función jurisdiccional sino que es un procedimiento administrativo encaminado a producir y hacer efectivo un título ejecutivo conforme a las normas de los artículos 68 del Código Contencioso Administrativo y 562 del Código de Procedimiento Civil para que el Presidente de la República pueda cumplir el mandato del artículo 120, ordinal 11 de la Carta (se hacía referencia a la Constitución derogada), de cuidar de la exacta recaudación de las rentas públicas. Cabe destacar además que tanto la Corte como el Consejo de Estado en forma reiterada y continua han considerado que la llamada 'jurisdicción' coactiva se ajusta a los preceptos del Estatuto Fundamental, y que por naturaleza no entraña el ejercicio de la función jurisdiccional  como que en ella no se discuten derechos sino que se busca poder hacer efectivo el cobro de las obligaciones tributarias o deudas fiscales surgidas de la potestad  impositiva del Estado y se pretende exigir su cumplimiento compulsivo cuando el sujeto pasivo de dicha obligación la ha incumplido parcial o totalmente".

Y mediante fallo del 26 de junio de 1990 (M.P.: Dr. Fabio Morón Díaz), la Corte Suprema de Justicia reiteró ese criterio, al afirmar que la función en estudio era administrativa, toda vez que orgánicamente había sido asignada a funcionarios de la Rama Ejecutiva del Poder Público, y porque materialmente las decisiones que con base en dicha atribución se dictaran se circunscribían a ejecutar un acto administrativo, pero no podían resolver cuestiones relativas a las excepciones, a las apelaciones, ni analizar la validez del acto que servía de título, por lo que tales decisiones no podían estar investidas de la fuerza de la cosa juzgada, característica propia de las providencias judiciales definitivas.

La Sala Sexta de Revisión de esta Corte, en Sentencia T-445 del 12 de octubre de 1994 (M.P.: Dr. Alejandro Martínez Caballero), acogió el criterio de que la jurisdicción coactiva respondía más a una función administrativa que a una de carácter judicial, con base en la siguiente motivación:

> "Esta Sala de revisión comparte esta última tesis sobre la naturaleza administrativa del proceso de jurisdicción coactiva, pero en razón de los siguientes argumentos:
>
> La administración tiene privilegios que de suyo son los medios idóneos para el cumplimiento efectivo de los fines esenciales del Estado, prerrogativas que se constituyen en la medida en que solo a la administración se le otorga la posibilidad de modificar, crear,

extinguir o alterar situaciones jurídicas, en forma unilateral, con o sin el consentimiento de los administrados, incluso contra su voluntad.

Entonces la administración está definiendo derechos y a la vez creando obligaciones inmediatamente eficaces, gracias a la presunción de validez y de la legitimidad de que gozan sus actos. La presunción de legalidad significa que los actos tienen imperio mientras la autoridad no los declare contrarios a derecho. Este carácter del acto administrativo llamado efecto de ejecutividad, tiene su fundamento en el artículo 238 de la Constitución Política por cuanto al establecer que la jurisdicción de lo contencioso administrativo podrá suspender provisionalmente los efectos de los actos administrativos que sean susceptibles de impugnación por la vía judicial, significa a contrario sensu que mientras no se suspendan los efectos de los actos administrativos, son plenamente válidos.

También se encuentra contenido el principio de ejecutividad en el artículo 64 del Código Contencioso Administrativo, el cual reza:

'Salvo norma expresa en contrario, los actos que queden en firme al concluir el procedimiento administrativo serán suficientes, por sí mismos, para que la administración pueda ejecutar de inmediato los actos necesarios para su cumplimiento. La firmeza de tales actos es indispensable para la ejecución contra la voluntad de los interesados'.

Debe hacerse claridad en que la presunción de legalidad del acto administrativo puede desvirtuarse, poniendo en funcionamiento así el aparato judicial y trasladando al particular la carga de la prueba.  Entonces vemos cómo el control jurisdiccional de los actos administrativos proferidos dentro de procesos de jurisdicción coactiva, se ejercen con posterioridad a su expedición. (artículo 68 del Código Contencioso Administrativo).

También se puede decir que un acto administrativo ejecutable es un mandato y como tal soporta un carácter imperativo, obligatorio contra quien o quienes se dirige en forma particular o en forma abstracta, tesis esta, que se conoce como el carácter ejecutorio de un acto administrativo, siendo una consecuencia de la presunción de legalidad.

En conclusión la Constitución de 1991, en su artículo 238 le dio piso constitucional a los efectos ejecutivo y ejecutorio de los actos administrativos.

En el derecho español una de las modalidades de 'Autotutela' del Estado es la relativa a la ejecutoriedad de los actos administrativos, entendida como la facultad de la administración para definir situaciones jurídicas sin necesidad de acudir a la acción judicial. En palabras de los profesores Eduardo García de Enterría y Tomás-Ramón Fernández la definen como 'el sistema posicional de la Administración respecto a los Tribunales,... La Administración está capacitada como sujeto de derecho para tutelar por sí misma sus propias situaciones jurídicas, incluso sus pretensiones innovativas del statu quo, eximiéndole de este modo de la necesidad común a los demás sujetos, de recabar una tutela judicial.' Esa facultad de autotutela es reconocida excepcionalmente a los particulares (para casos como la legítima defensa, el derecho de retención etc); además para ellos es facultativa, ya que por regla general deben acudir a los tribunales.

La 'Autotutela' se ha clasificado en declarativa o ejecutiva y conservativa o agresiva. La conservativa "protege una situación dada"; la agresiva o activa 'tiene por contenido una conducta positiva y por resultado una mutación en el actual estado de cosas, aunque actúe en protección de una situación previa'.

La autotutela declarativa es esa facultad de la administración de beneficiarse de 'una presunción de legalidad que la hace de cumplimiento necesario, sin necesidad de tener que obtener ninguna sentencia declarativa previa'.

En cuanto a la aututela ejecutiva 'esta expresión va más allá que la anterior: aparte de eximirse a la Administración de la carga de obtener una sentencia ejecutiva, facultándola para el uso directo de su propia coacción sin necesidad de recabar el apoyo de la coacción judicialmente administrada.  Así como la autotutela declarativa se manifiesta en una

declaración o en un acto, la ejecutiva supone el paso al terreno de los hechos, del comportamiento u operaciones materiales, concretamente al uso de la coacción frente a terceros.'

Pero es necesario aclarar que la autotutela ejecutiva se predica únicamente en obligaciones de contenido económico, lo que hace que no todo acto de la administración es autotutelable ejecutivamente. Esto se deduce del artículo 68 del Código Contencioso Administrativo.

En conclusión, considera esta Sala de Revisión que el proceso de jurisdicción coactiva es de naturaleza administrativa, por cuanto su objetivo es hacer efectiva la orden dictada por la administración de cobro de una obligación tributaria.   En otras palabras esta jurisdicción es el uso de la coacción frente a terceros y la expresión de una autotutela ejecutiva.
(...)
Es claro que el administrado está sujeto o sometido a potestades de la Administración, pero esa sujeción solamente supone una eventualidad de soportar efectos razonables, por cuanto las obligaciones que impone la Administración no son fruto de su propia iniciativa, sino que tienen su fuente en la Constitución, en la ley o en normas de inferior jerarquía aplicables a cada caso en particular.  En general la actuación de la administración está limitada al cumplimiento de los fines esenciales del Estado y a garantizar los derechos de las personas y solo si ésta cumple con los ellos, su actuación está ajustada a la ley.

O en otras palabras 'Tal privilegio posicional comporta una excepcionalidad que no tiene por qué ser aberrante.  Ni la Administración debe transformarse en un sujeto justiciable igual que los ciudadanos, ni la doble prerrogativa es por naturaleza incompatible con una acabada tutela judicial efectiva.   La excepcionalidad significa que ese *status* de poder debe limitarse y condicionarse para servir a la realización de los cometidos que corresponden a la Administración en el seno del Estado Social y Democrático de Derecho.

Entonces, surge la pregunta: cual es la finalidad de una ejecución por parte del Estado? No se trata solamente de hacer efectiva una obligación expresa, clara y actualmente exigible sino de recoger bienes que van a contribuir a la satisfacción de los fines esenciales del Estado. (artículo 2 y 365 de la Constitución Política).

### 4.3. El artículo 29 de la Constitución Política es predicable a los Procesos de Jurisdicción coactiva.

Dentro de la filosofía y estructura del Estado, la relación que éste comporta con los entes a él subordinados es correlativa, lo que hace que existan para los dos derechos y obligaciones que deben cumplirse y respetarse.  Una de las obligaciones mas claras que las personas amparadas dentro del ámbito de protección y soberanía de un Estado tienen para con él, es la obligación tributaria.

La Obligación tributaria es una forma de proveer al Estado de fondos y de impulsar la economía, está "constituída por el deber de pagar el impuesto correspondiente a los hechos económicos realizados, ya sea que esta haya sido cuantificada por el mismo contribuyente, o agente retenedor o que el Estado lo haga, mediante una liquidación o resolución en la cual se establezca sanción."

Por lo anterior el nacimiento del crédito fiscal depende de dos fenómenos a) que se verifique determinado hecho atribuible a determinado sujeto y b) que de acuerdo con la ley ese hecho tenga la virtud de vincular al sujeto a quien se imputa su verificación, con el sujeto a quien se debe dar cierta cantidad de dinero a título de impuesto o sujeto activo. Por lo que es necesario que el poder sancionador del Estado disponga de un sistema apto para hacer efectivos coercitivamente derechos ciertos que tiene a su favor, a través del Proceso de Jurisdicción Coactiva.

Este proceso (de jurisdicción coactivo) es administrativo, se surte ante la administración pública, reúne instrumentos por medio de los cuales se debe adelantar el cobro coactivo de las deudas fiscales; también debe orientarse dentro del marco establecido por los principios

básicos de un Estado de Derecho, que a la vez señalan los lineamientos de un debido proceso".

De todo lo anterior cabe concluir que la jurisdicción coactiva obedece al reconocimiento de una facultad evidentemente extraordinaria o excepcional de la Administración, consistente en eximirla de llevar el asunto al conocimiento de los jueces, para lograr ella directamente la ejecución de ciertas obligaciones a su favor.

Cabe recordar que la regla general consiste en que las controversias originadas en la inejecución de una obligación sean dirimidas por los jueces, y por ello, ciertamente constituye una excepción el hecho de que sea la propia Administración la que esté investida del poder para hacer ejecutar directamente ciertos actos, convirtiéndose de esta forma en juez y parte, en cuanto ella ejecuta a los deudores por su propia cuenta, sin intermediación de los funcionarios judiciales.

En todo caso, obedezca la jurisdicción coactiva a una función judicial o a una de naturaleza administrativa -polémica que, para los efectos del presente juicio de constitucionalidad no es indispensable dilucidar-, lo cierto es que aquélla va atada indiscutiblemente a los conceptos de imperio, soberanía, poder y autoridad. Es por eso que el reconocimiento de tal atribución a "organismos vinculados" a la administración pública, cuyas actividades se asemejan a las que desarrollan habitualmente los particulares -motivo por el cual se rigen generalmente por las reglas del Derecho Privado, a diferencia de lo que ocurre con los entes adscritos, como los establecimientos públicos, que están encargados de ejercer funciones administrativas y de prestar servicios públicos conforme a las reglas del Derecho Público (ver artículo 70 de la Ley 489 de 1998)-, implica un desconocimiento de la naturaleza de las cosas, en tanto la atribución no puede considerarse como razonable, si se tienen en cuenta las funciones que cumplen los entes vinculados y el papel que desempeñan en la economía.

Es importante destacar que la finalidad de la jurisdicción coactiva consiste en recaudar en forma rápida las deudas a favor de las entidades públicas, para así poder lograr el eficaz cumplimiento de los cometidos estatales. Pero esta justificación no es aplicable a entes que despliegan actividades semejantes a las de los particulares, aunque aquéllas también estén, de una u otra forma, destinadas a hacer efectivos los fines del Estado (artículo 2 C.P).

Conferir dicha facultad excepcional a entes del indicado carácter para hacer cumplir obligaciones contractuales viola el principio de equidad respecto

de las partes comprometidas en un conflicto (artículo 13 de la Carta), ya que es importante destacar que, dados los fines que persiguen las empresas industriales y comerciales del Estado y las sociedades de economía mixta, éstas suelen competir en igualdad de condiciones con los particulares. Así, pues, la conversión de las entidades vinculadas en "jueces" y partes puede afectar el equilibrio de las relaciones entre aquéllas y los particulares, con quienes compiten libremente en actividades industriales y comerciales.

Debe recalcarse que las actividades generalmente atribuidas por la ley a las entidades vinculadas corresponden, consideradas materialmente, a actos de gestión y no de autoridad y, por ello, aquéllas no deben estar investidas de una atribución exorbitante que, como se explicó con anterioridad, está ligada al concepto de **imperio** del Estado. En estos eventos, los conflictos que se presenten con los particulares deben llevarse a los estrados judiciales, con el fin de respetar el debido proceso y los principios de imparcialidad y de juez natural (artículo 29 **Ibídem**).

De esta forma, si se tienen en cuenta las tareas que usualmente son asignadas a los entes vinculados, para la Corte el reconocimiento de una facultad como la descrita supondría, en los términos generales que contempla la disposición objeto de proceso, un exceso de poder que conduciría, por contera, al desconocimiento de la garantía de toda persona de acceder a la administración de justicia (artículo 229 de la Carta).

Así las cosas, las palabras sobre las cuales recae la impugnación tendrían que declararse inconstitucionales, si no fuera porque también es posible que el legislador, en ejercicio de su libertad de conformación de la estructura administrativa, asigne a ciertos entes vinculados funciones administrativas. En estos casos, la atribución excepcional en cuestión estaría plenamente justificada, en cuanto las funciones administrativas asignadas expresamente por la ley llevarían implícita la noción de **imperium**. En consecuencia, la asignación de la jurisdicción coactiva a los organismos vinculados será declarada exequible, pero bajo el entendido de que éstos podrán hacer uso de dicha atribución únicamente respecto de las indicadas funciones administrativas, y no en cuanto hace referencia a otras funciones y actividades.

En este orden de ideas, la Sala declarará que las expresiones acusadas solamente pueden aceptarse como ajustadas a la Constitución si se entiende que la autorización legal para ejercer el poder coactivo se refiere al cobro o recaudación de recursos provenientes de funciones netamente administrativas confiadas por el legislador de modo expreso a los entes vinculados, siempre que en la misma norma legal correspondiente se

autorice la función de ejecución coactiva y se determinen las condiciones de su ejercicio, exclusivamente en cuanto a los aludidos recursos. Bajo todo otro entendimiento, las palabras demandadas son inexequibles.

**DECISION**

Con fundamento en las consideraciones expuestas, la Corte Constitucional de la República de Colombia, oído el concepto del Procurador General de la Nación y surtidos los trámites que contempla el Decreto 2067 de 1991, administrando justicia en nombre del pueblo y por mandato de la Constitución,

**RESUELVE:**

Declarar **EXEQUIBLES** las palabras "y vinculados" del artículo 112 de la Ley 6ª de 1992, pero en el entendido de que la autorización legal para ejercer el poder coactivo se refiere exclusivamente al cobro o recaudación de recursos provenientes de funciones netamente administrativas confiadas por el legislador de modo expreso a los entes vinculados, siempre que en la misma norma legal correspondiente se autorice la función de ejecución coactiva y se determinen las condiciones de su ejercicio, únicamente en cuanto a los aludidos recursos. Bajo cualquiera otra interpretación, los mencionados vocablos se declaran **INEXEQUIBLES**.

Cópiese, notifíquese, comuníquese, insértese en la Gaceta de la Corte Constitucional, cúmplase y archívese el expediente.

ALEJANDRO MARTINEZ CABALLERO
Presidente

ANTONIO                    BARRERA                    CARBONELL
ALFREDO BELTRAN SIERRA
                    Magistrado

Magistrado

EDUARDO                    CIFUENTES                    MUÑOZ
CARLOS GAVIRIA DIAZ
                    Magistrado
Magistrado


JOSE          GREGORIO          HERNANDEZ          GALINDO
FABIO MORON DIAZ
                    Magistrado
Magistrado


VLADIMIRO                    NARANJO                    MESA
ALVARO TAFUR GALVIS
                    Magistrado
Magistrado
          MARTHA SACHICA DE MONCALEANO
                    Secretaria General

**Aclaración de voto a la Sentencia C-666/00**

> **FUNCIONES ADMINISTRATIVAS POR PARTICULARES/JURISDICCION COACTIVA**-Noción de imperium implícita (Aclaración de voto)

> **CONSTITUCIONALIDAD CONDICIONADA**-Inejecución práctica de la norma acusada (Aclaración de voto)

Referencia: expediente D-2706

Propuse a la Sala la inexequibilidad de las expresiones demandadas, y considero que, no obstante haber sido desestimada esa posibilidad para terminar consignando -como se hizo- una exequibilidad condicionada que prácticamente equivale a aquélla, debo ratificarme en lo que manifesté acerca de la clarísima contradicción entre la norma acusada, por lo que respecta a las entidades vinculadas, y la Constitución Política.

La Corte habría sido mucho más coherente y el fallo más comprensible, en sus alcances y en sus efectos, si la inexequibilidad hubiese sido declarada.

En mi criterio, resulta inaceptable la argumentación a la que acudió la Sala -ya que no estaba en la ponencia original- para sostener la exequibilidad del precepto en lo atinente al recaudo de sumas provenientes de funciones administrativas.

Que "en estos casos, la atribución excepcional en cuestión (jurisdicción coactiva) estaría plenamente justificada, en cuanto las funciones administrativas asignadas expresamente por la ley llevarían implícita la noción de **imperium**", es algo que contradice la columna vertebral de la Sentencia, que se funda precisamente en el hecho de que los entes vinculados carecen de ese atributo, propio de los organismos netamente estatales, y, al actuar en plano de igualdad y en competencia con los particulares, mal podrían estar dotados de atribuciones como la mencionada.

Obsérvese que si tal criterio pudiese ser aceptado, con la misma lógica tendríamos que convenir en que, cuando los particulares son temporalmente investidos de función pública (arts. 123 y 210 de la

Constitución, entre otros) -por ejemplo, cuando recaudan y manejan recursos públicos-, "llevarían implícita" en su gestión "la noción de **imperium**". Y semejante concepto, a mi juicio, desvertebraría todo el sistema constitucional y hasta pondría en tela de juicio la Teoría del Estado.

Si he suscrito en este caso una aclaración, y no un salvamento de voto, ello ocurre únicamente por cuanto en el fondo, con el exigente condicionamiento aprobado por la Sala, nos encontramos en realidad ante la inejecución práctica de la norma, lo cual coincide, bajo esa perspectiva, con la inexequibilidad que desde el principio me permití proponer.


JOSE GREGORIO HERNANDEZ GALINDO
Magistrado

Fecha, ut supra

# English Translation
# of Exhibit 19

**Judgment C-666/00**

COERCIVE **JURISDICTION** -Concept

*Jurisprudence has defined coercive jurisdiction as an "exorbitant privilege" of the Administration, which consists of the power to directly collect debts in its favor, without judicial intervention, acquiring the dual status of judge and party. Justification for this is the prevalence of the general interest, as such resources are urgently needed to effectively fulfill state objectives.*

COERCIVE **JURISDICTION** -Nature

**JURISDICTION**                COERCIVE-Purpose/JURISDICTION **COERCIVE BY RELATED AGENCIES**

*The purpose of coercive jurisdiction is to expeditiously collect debts owed to public entities, thereby ensuring the efficient fulfillment of state duties. However, this justification does not apply to entities that carry out activities similar to those of private individuals, even if those activities are also, in one way or another, intended to implement the State's objectives. The transformation of related entities into "judges" and parties can affect the balance of relations between those entities and private individuals, with whom they freely compete in industrial and commercial activities.*

**ACTS OF MANAGEMENT OF RELATED ENTITIES**

*The activities generally attributed by law to related entities correspond, materially considered, to acts of management and not of authority, and therefore, they should not be invested with an exorbitant power that is linked to the concept of the rule of the State.*

*In these events, disputes with individuals must be brought before the courts, in order to respect due process and the principles of impartiality and the right of a natural judge.*

**ADMINISTRATIVE FUNCTIONS BY ENTITIES**

RELATED - Attribution by the legislator

*It is possible that the legislator, exercising its freedom to shape the administrative structure, assigns administrative functions to certain related entities. In these cases, the exceptional attribution in question would be fully justified, since the administrative functions*

*expressly assigned by law would imply the notion of imperium.*

**CONDITIONED CONSTITUTIONALITY**

Reference: file D-2706

Partial unconstitutionality claim against Article
112 of Law 6 of 1992

Actor: Hernán Antonio Barrero Bravo

Reporting Judge:
Dr. José Gregorio Hernández Galindo

Santa Fe de Bogotá, DC, on the eighth (8) day of June of two thousand (2000).

**The Plenary Chamber of the Constitutional Court, in exercise of its constitutional and
legal powers, especially those provided for in article 241, paragraph 4, of the Political
Constitution, and having fulfilled all the procedures and requirements contemplated
in Decree 2067 of 1991, has issued the following**

**JUDGMENT**

in relation to the (partial) claim of unconstitutionality that, in exercise of his political right,
citizen Hernán Antonio Barrero Bravo filed against article 112 of Law 6 of 1992.

**I. TEXT OF THE ACCUSED RULE**

The following is the text of the provision in question, underlining the claim:

**"LAW 6 OF 1992**
(June 30)

which issues tax regulations, grants powers to issue domestic public debt securities,
provides for an adjustment of national public sector pensions, and establishes other
provisions.

**The Congress of Colombia,**

**DECREE:**

(...)

**Article 112.- Compulsory collection authority for national entities.** In accordance with Articles 68 and 79 of the Administrative Litigation Code, national public entities such as ministries, administrative departments, attached and affiliated agencies, the Comptroller General of the Republic, the Attorney General's Office, and the National Civil Registry have coercive jurisdiction to enforce payable debts in favor of the aforementioned entities and the Nation. For this purpose, the respective competent authority shall grant powers of attorney to legal officials of each entity or may hire special representatives who are licensed attorneys.

## II. THE DEMAND

The plaintiff says that the accused expression violates articles 116 and 121 of the Political Constitution.

It states that the coercive jurisdiction process is administrative in nature, and that through it, by virtue of the legal mandate granted by articles 68 and 79 of the Administrative Litigation Code, certain entities of the Public Administration are empowered to enforce the credits that individuals or other entities owe them in their favor or on behalf of the Nation.

According to the actor, the Political Constitution itself, in Article 116, paragraph 3, allows the law to exceptionally assign jurisdictional functions in specific matters to certain administrative authorities.

Article 13 of the Statutory Law on the Administration of Justice, the complaint adds, establishes that administrative authorities, exceptionally, exercise jurisdictional functions, in accordance with the provisions of the Constitution, in compliance with the rules on jurisdiction and procedure provided for in the law.

He points out that the unconstitutionality of the expression "and related" arises from two circumstances: the first is that the industrial and commercial companies of the State and the mixed economy companies are not, as required by article 116 of the Constitution, "administrative authorities" and, therefore, they lack what the French doctrinalists call "puissance publique", granted to the

Administration, whose special characteristic has to do with the

privilege of the enforceable decision; the second is that - in its opinion
- the challenged provision ignores that the acts issued by the
linked bodies for the development of their own activity, whether
industrial, commercial or economic management, are subject
to the provisions of Private Law, pursuant to the provisions of
Articles 93 and 97 of Law 489 of 1998, and therefore, the acts
issued by those bodies are not administrative acts that have the
characteristics of enforceability, enforceability and obligation,
elements inherent to the administrative act in accordance with Article
68 of the Administrative Litigation Code.

## III. INTERVENTIONS

Ana Lucia Padrón Carvajal, acting as representative of the Office of the
Comptroller General of the Nation, presents a document outlining the
reasons that, in her opinion, warrant declaring the accused expression
constitutional.

First, it warns that, in its opinion, the plaintiff presents in his claim a
subjective interpretation of what, in his understanding, the Political
Constitution designates as "administrative authorities" and of the
expressions "administrative bodies and entities" and "administrative acts
issued by related bodies," contained in Article 49 of Law 489 of 1998.

Furthermore, the intervener states that the power granted in the challenged
provision does not violate any article of the Constitution, since the entities
authorized to exercise coercive jurisdiction do have the character of
administrative authorities in accordance with the provisions of section 5 of
article 115 of the Constitution, which defines which entities are part of the
Executive Branch.

Likewise, because by virtue of Law 489 of 1998, when defining what is
understood by organizations that make up the decentralized sector of the
National Public Administration, by industrial and commercial companies as
well as by mixed economy companies, it established that these
organizations carry out activities of an industrial or commercial nature in
accordance with the rules of private law, except for the exceptions
established by law and one of them is the one indicated in the partially
challenged article 112.

The representative of the Ministry of Finance and Public Credit, Manuel Avila Olarte, also submitted a written statement, in which he expressed the arguments that, in his opinion, justify the constitutionality of the expression that is the subject of this constitutional review.

It states, invoking the jurisprudence of the Constitutional Court, that the partially challenged rule does not violate Article 116 of the Fundamental Charter, by virtue of the express authorization granted to administrative authorities to exercise certain jurisdictional functions, to the extent that coercive jurisdiction would not correspond to a judicial function but to an administrative one.

The speaker recalls that, in accordance with the provisions of Article 150, paragraph 23 of the Constitution, the legislator is the body of the Public Administration competent to define and indicate which authorities may exercise coercive jurisdiction as an administrative function.

It ignores the argument put forward by the plaintiff according to which the state bodies linked to the central sector of the Administration are not governed exclusively by private law - according to Law 489 of 1998 - but also by the rules of public law, when so determined exceptionally by law (art. 85 and 97 **Ibid.).**

He states that another reason that lacks constitutional support and that is put forward by the plaintiff is to restrict only the obligations that provide executive merit to those that are expressed in administrative acts, since according to article 68 of the CCA, the document containing the debt in favor of the respective state body may be contained in a text that contains a clear, express and enforceable obligation.

Finally, the representative of the Ministry of Finance and Public Credit states that the State bodies linked to the central sector of Public Administration are part of the Executive Branch of Public Power, that is, they are administrative or executive authorities and therefore cannot exercise a judicial function.

## IV. CONCEPT OF THE ATTORNEY GENERAL OF THE NATION

The Attorney General of the Nation requests that the Court declare the challenged expression constitutional.

Machine Translated by Google

This Office considers that the exercise of coercive jurisdiction corresponds to an administrative function and that if, pursuant to Article 116 of the Political Constitution, administrative authorities and even private individuals are authorized to exercise judicial functions, public authorities may even more so be empowered to exercise enforcement through coercive jurisdiction. This is because this jurisdiction does not meet the requirements of a judicial process, but rather corresponds to the exercise of the powers inherent to the Administration.

In the opinion of the Attorney General, coercive jurisdiction translates into a manifestation of the exercise of the exorbitant powers of the Administration, and is exercised with respect to obligations arising from acts of sovereignty of the State and not from simple acts of commerce.

It states that the alleged violation of Article 121 of the Constitution alleged by the plaintiff is not present, since the related entities may only exercise coercive jurisdiction in the cases and under the conditions and procedures established by law.

On the other hand, and regarding the issue of the legal nature of the linked bodies, the Head of the Public Prosecutor's Office considers that they can collect fees through the coercive jurisdiction procedure, as long as the matters relate to the administrative functions they perform, that is, when they act as an administrative authority and not as a company subject to the regime of private law.

Finally, it states that, regarding the issue of the exercise of coercive jurisdiction, in relation to the obligations arising from administrative contracts, it should be noted that Law 80 of 1993 defines state-owned industrial and commercial companies and mixed-economy companies as state entities and that in its article 4 it establishes the right of state entities to carry out the necessary procedures for the recognition and collection of pecuniary sanctions and guarantees where applicable.

## V. CONSIDERATIONS OF THE CONSTITUTIONAL COURT AND BASIS FOR THE DECISION

### Coercive jurisdiction and related bodies

The rule under study grants to the organizations linked to the National Administration the power to exercise coercive jurisdiction to

enforce the credits payable in its favor, according to the rules established in articles 68 and 79 of the Administrative Litigation Code, to which it expressly refers, thus limiting said possibility to the acts and decisions contemplated in the corresponding provisions (articles 68 and 79 of the Administrative Litigation Code).

In the opinion of the Constitutional Court, the rule thus conceived does not take into account essential elements for granting the aforementioned power to the related entities: their specific nature and the activities to which they are responsible, in the performance of which they are assimilated to private individuals and are only exceptionally entrusted, by law, with the exercise of administrative functions.

The reference made to the aforementioned regulations, insofar as they expressly refer to administrative acts that have become final in favor of the Nation, territorial entities, and public establishments; to final judgments and judicial decisions issued in favor of the national treasury, territorial entities, and public establishments; to tax assessments made by tax officials; and to private assessments that have become final, is irrelevant for the purposes of this constitutional analysis with regard to the **related entities,** since said legal provisions are not applicable to them, as can be seen in the same texts, transcribed below (sections 1, 2, and 3 of article 68 and art. 79 CCA).

The reference is indeed relevant when it refers to contracts, insurance policies and other guarantees granted by contractors in favor of such entities and in relation to documents originating from their debtors for the exercise of activities carried out in a position of competition with individuals (sections 4, 5 and 6 of article 68 CCA), but there the Court, as will be seen in this ruling, considers unconstitutional the unjustified and indiscriminate granting of the powers of coercive jurisdiction to **related entities,** which, with regard to their management acts and given their nature, lack the authority recognized to the State.

For a better understanding of the provision under review, other legal provisions establishing the **related** bodies to which it refers must be taken into account.

The paragraph of article 50 of Law 489 of 1998 prescribes the following:

> "**Article 50.- Content of the acts of creation.** (...) **Paragraph-** The superintendencies, public establishments and special administrative units

They shall be attached to the ministries or administrative departments; st<u>ate-owned</u>
<u>industrial and commercial enterprises and mixed-economy companies shall be linked</u>
<u>to them; other agenc</u>ies and entities shall be attached or linked as determined by their
act of creation" (emphasized).

State-owned industrial and commercial enterprises and mixed-economy companies are
decentralized service entities, and enjoy legal personality, administrative autonomy, and their
own assets, as prescribed in Articles 68 and 87 of the aforementioned Law.

Article 85 **of the same** defines state-owned industrial and commercial enterprises as "bodies
created by law or authorized by it, which carry out activities of an industrial and commercial
nature and economic management in accordance with the rules of private law, with the
exceptions established by law...".

A similar definition was contained in Article 6 of Decree 1050 of 1968, and Article 97 of Law
489 of 1998 states that mixed-economy companies "are organizations authorized by law,
constituted as commercial companies with state contributions and private capital, which carry
out industrial and commercial activities in accordance with the rules of Private Law, except
for the exceptions established by law."

Article 8 of Decree 1050 of 1968 defined this type of decentralized entities in an almost
identical manner.

However, the concepts of **affiliation** and **connection** have been understood to refer to the
degree of autonomy enjoyed by decentralized service entities; connection implies greater
independence from the bodies of the central government sector.

Reference must also be made to the provisions of Article 68 of the Civil Code, since the
challenged provision refers to this provision. This provision specifies which obligations are
enforceable by coercive jurisdiction, as follows:

"**Article** 68.- The following documents shall be enforceable by coercive jurisdiction,
provided that they contain a clear, express and currently enforceable obligation:

1. Any enforceable administrative act that imposes on the Nation, a territorial entity, or
a public establishment of any kind, the obligation to pay a liquid sum of money, in the
cases provided for by law.

2. Judgments and other final jurisdictional decisions that impose on the national
treasury, a territorial entity, or a public establishment of any kind, the obligation to pay
a liquid sum of money.

Machine Translated by Google

3. Tax assessments contained in final decisions issued by the respective tax officials, at the taxpayer's expense, or private assessments that have become final, in those taxes for which their submission is mandatory.

4. Contracts, insurance policies, and other guarantees granted by contractors to public entities shall be incorporated into the executive title with the administrative act of final settlement of the contract, or with the enforceable resolution decreeing the expiration or termination, as the case may be.

5. Other guarantees provided in favor of public entities for any reason, which will be integrated with the final administrative act declaring the obligation.

6. Others that are recorded in documents originating from the debtor."

For its part, Article 79 of the CCA states that "public entities may enforce the claims in their favor in all cases referred to in the previous provisions through coercive jurisdiction, and individuals through ordinary jurisdiction."

Notwithstanding the foregoing, in order to establish the current scope of the transcribed provisions, it must be taken into account that Article 75 of Law 80 of 1993 modified the jurisdiction to hear disputes arising from state contracts and execution or compliance processes, and assigned it to the jurisdiction of administrative litigation.

Regarding the implications of this reform, it is worth citing the following ruling by the Council of State:

"...by means of article 112 of law 6 of 1992, national public entities were given the power of coercive collection to enforce the credits in their favor. However, and in accordance with the provisions of article 75 of law 80 of 1993, which is later and special, the jurisdiction of administrative litigation is responsible for hearing contractual disputes arising from all state contracts and the processes of execution and compliance, such that national public entities only have the power to coercively collect credits they have in their favor when they do not involve obligations arising from state contracts, in which case, it is repeated, it is the responsibility of the administrative litigation jurisdiction to hear the enforcement processes" (Cfr. Council of State. Administrative Litigation Chamber. Fifth Section. File 817. Order of April 10, 1997. Examining Magistrate: Mario Alario Méndez).

Thus, in accordance with the provisions of article 68 of the CCA, the acts that would provide executive merit with respect to related entities would be those related to contracts, policies and guarantees and others that are contained in documents that come from the debtor, since in the rest of the cases contemplated in said rule, express reference is made to

different acts that come from other types of entities (Nation, territorial entity and public establishment).

Consequently, considering the regulatory context and particularly the bodies expressly mentioned in Article 68, the coercive jurisdiction attributed by the provision under review to the related entities would be tied to acts that could be considered management rather than authority, since sections 4, 5, and 6 of Article 68 of the Administrative Litigation Code—which would be applicable to them—refer to the management of their bilateral relations with private individuals. However, as already explained, those concerning contractual disputes, according to current legislation, must be resolved by the administrative litigation jurisdiction (Article 75 of Law 80 of 1993).

Having made the above clarifications regarding the scope of the rule under trial in light of the current legal system, it is necessary to establish the nature of "coercive jurisdiction."

Two opposing positions have been held regarding this issue. The first defends the judicial nature of the function, while the second maintains that it is an eminently administrative function.

Jurisprudence has defined coercive jurisdiction as an "exorbitant privilege" of the Administration, which consists of the power to directly collect debts in its favor, without judicial intervention, acquiring the dual status of judge and party. Justification for this is the prevalence of the general interest, as such resources are urgently needed to effectively fulfill state objectives.

In this regard, the following judicial pronouncements are worth mentioning:

"(...) One of these privileges is the jurisdiction or coercive power, by virtue of which the State, the Department or the Municipality collect through their representatives or collectors certain amounts that are owed to them, apparently confusing the employee who exercises the jurisdiction between the roles of judge and party.

This power is one of the **exorbitant privileges** of administrative officials, as expressed by the noted publicist M. Hauriou. This privilege, that administrative officials do not litigate with individuals on a perfectly equal footing, has given rise to coercive jurisdiction, without which the social community would surely not obtain in a timely manner the resources it needs to meet the demands of public administration. For this reason, the aforementioned author states that public debts are protected by a general collection privilege, which is one of the manifestations of the direct action procedure; the Administration, by preparing a simple collection document, creates an enforceable title. This privilege exists, at least for the benefit of the State, of the Departments." (Supreme Court of Justice, General Business Division, Ruling of August 13, 1936.-GJ No. 1911. Page 882).

"Coercive jurisdiction is a privilege granted to the State, which consists of the power to collect tax debts through tax collectors, assuming the dual role of judge and party in the respective transaction. However, this privilege does not extend to precluding the procedural formalities established by law to advance executive actions." (Supreme Court of Justice, General Business Division, GJ

XLV. No. 1929, Auto of September 1, 1937, p. 773).

"...In administrative law disputes, unless otherwise provided, neither the administration nor individuals are required to resort to a judge. The former generally acts on its own initiative, applies the law without request from a party, binds the individual, and ex officio executes its own regulations. This system is a necessary and obligatory consequence of the constitutional and legal mandates that establish the prevalence of the general interest over private interest, which enshrine the principle of the immediate applicability of certain provisions of public law, and which confer upon the administrative branch the function of implementing the law. It is, in a word, what modern doctrine of State and Law calls the privilege of prior decision and the privilege of ex officio execution. The public administration, in such cases and to the extent of its jurisdiction, does not have to resort to a judge to define, as arbiter of the conflicting interests, what is law, because it is itself invested with legal powers of decision and execution. If the individual agrees with the administrative ruling, it will become final. If it does not comply, the governmental route will be open to it and, subsequently, the judicial route..." (Council of State, Plenary Chamber, June 15, 1965, Annals 407-408, T.LXIX. 1965, p. 297)".

"Coercive jurisdiction is one of the exorbitant privileges of administrative persons listed by Hauriou, by virtue of which public law entities collect, through their representatives or collectors, the sums owed to them in taxes or special contributions, apparently confusing the employee exercising jurisdiction between the roles of judge and party. The tax credits collected through this jurisdiction arise by virtue of the State's power of authority over its associates; they usually unilaterally enter legal life, and this is perhaps the most substantial and far-reaching difference between executive judgments within private law and those pursued by coercive jurisdiction. The basis of the former are the relationships that arise between individuals in legal commerce; the basis of the latter are the acts of sovereignty exercised by the State and other public law entities, through which they establish taxes and contributions. But there are situations in which the unilateral act of establishing a tax or contribution has special characteristics by virtue of pre-existing contractual links between the administration and the alleged debtor, which have a transcendental and sometimes decisive impact on the legal relationship that may arise in such a hypothesis between the State as the active subject of the tax and the individual as the passive subject of the same" (Council of State. Administrative Litigation Chamber. Fourth Section.

Judgment of March 25, 1969. Reporting Counselor: Dr. Hernando Gómez Mejía. Annals 1969. Volume 76, page 371)

Although the aforementioned rulings expressly referred to the dual status of judge and party of officials vested with coercive jurisdiction, the ruling transcribed below more clearly upholds the judicial nature of this function. The Council of State stated:

"There can be no doubt that the rulings issued by those exercising coercive jurisdiction have the same legal nature as those issued in executive proceedings by judges linked to the jurisdictional branch of public power and that all of them constitute a true judicial process of execution and not a simple governmental procedure, such as those carried out by officials of the executive branch in the development of their own powers and within the normal scope of said branch.

(...) The actions carried out in the exercise of coercive jurisdiction constitute judicial proceedings; they cannot be brought before the contentious courts either by way of simple nullity or full jurisdiction, since, in accordance with the law, actions of this nature are not instituted to challenge judgments but rather acts creating general legal situations or emanating from powers other than the judicial one, in the generic sense of this word, and furthermore, the contentious court is not assigned the function of being *a judge of judges."* (Cf. Council of State. Administrative Litigation Chamber. Fourth Section. Order of May 8, 1969. Annals 1969. Vol. 76, p. 231. CP: Dr. Juan Hernández Sáenz)

On the contrary, the Supreme Court of Justice, in its ruling of October 5, 1989 (MP: Dr. Hernando Gómez Otálora), affirmed that coercive jurisdiction corresponded to an administrative function. The Court reasoned as follows:

"Coercive jurisdiction does not entail the exercise of a jurisdictional function, but rather is an administrative procedure aimed at producing and enforcing an enforceable title in accordance with the provisions of Articles 68 of the Administrative Litigation Code and 562 of the Code of Civil Procedure so that the President of the Republic can fulfill the mandate of Article 120, paragraph 11 of the Constitution (reference was made to the repealed Constitution), to ensure the accurate collection of public revenues. It should also be noted that both the Court and the Council of State have repeatedly and continuously held that so-called coercive 'jurisdiction' complies with the precepts of the Fundamental Statute and that, by nature, it does not entail the exercise of a jurisdictional function, since it does not discuss rights, but rather seeks to enforce the collection of tax obligations or fiscal debts arising from the State's taxing authority, and seeks to require compulsory compliance when the taxpayer has partially or fully failed to comply."

And by ruling of June 26, 1990 (MP: Dr. Fabio Morón Díaz), the Supreme Court of Justice reiterated this criterion, stating that the function under study was administrative, since it had been organically assigned to officials of the Executive Branch of the Public Power, and because materially the decisions issued based on said attribution were limited to executing an administrative act, but could not resolve issues related to exceptions, appeals, nor analyze the validity of the act that served as a title, so that such decisions could not be invested with the force of res judicata, a characteristic of final judicial provisions.

The Sixth Review Chamber of this Court, in Judgment T-445 of October 12, 1994 (MP: Dr. Alejandro Martínez Caballero), adopted the criterion that coercive jurisdiction responded more to an administrative function than to a judicial one, based on the following motivation:

"This Review Chamber shares this latter thesis on the administrative nature of the coercive jurisdiction process, but for the following reasons:

The administration has privileges that in themselves are the ideal means for the effective fulfillment of the essential purposes of the State, prerogatives that are constituted to the extent that only the administration is granted the possibility of modifying, creating,

extinguish or alter legal situations, unilaterally, with or without the consent of the administrators, even against their will.

Thus, the administration is defining rights and simultaneously creating immediately effective obligations, thanks to the presumption of validity and legitimacy enjoyed by its acts. The presumption of legality means that acts are valid as long as the authority does not declare them contrary to law. This nature of the administrative act, called the enforceability effect, is based on Article 238 of the Political Constitution, since, by establishing that the contentious-administrative jurisdiction may provisionally suspend the effects of administrative acts that are subject to judicial challenge, it means, a contrario sensu, that as long as the effects of administrative acts are not suspended, they are fully valid.

The principle of enforceability is also contained in article 64 of the Code.
Administrative Litigation, which reads:

'Unless otherwise expressly provided, the acts that become final at the conclusion of the administrative procedure will be sufficient, in and of themselves, to allow the administration to immediately execute the acts necessary for their fulfillment. The finality of such acts is essential for execution against the will of the interested parties.'

It should be made clear that the presumption of legality of an administrative act can be overturned, thereby triggering the judicial system and shifting the burden of proof to the individual. We thus see how jurisdictional control of administrative acts issued within coercive jurisdiction proceedings is exercised after their issuance (Article 68 of the Administrative Litigation Code).

It can also be said that an enforceable administrative act is a mandate and as such bears an imperative, obligatory character against whomever or whomever it addresses in a particular or abstract form, this thesis being known as the enforceable character of an administrative act, being a consequence of the presumption of legality.

In conclusion, the 1991 Constitution, in its article 238, gave constitutional grounds to the executive and enforceable effects of administrative acts.

In Spanish law, one of the forms of State "self-protection" relates to the enforceability of administrative acts, understood as the administration's power to define legal situations without having to resort to legal action. Professors Eduardo García de Enterría and Tomás-Ramón Fernández define it as "the Administration's positional system vis-à-vis the Courts... The Administration is empowered, as a legal entity, to protect its own legal situations, including its innovative claims regarding the status quo, thereby exempting it from the need common to other entities to seek judicial protection." This power of self-protection is exceptionally recognized for individuals (for cases such as self-defense, the right of retention, etc.); furthermore, it is optional for them, since, as a general rule, they must resort to the courts.

Self-protection has been classified as declarative or executive and conservative or aggressive. Conservative protection "protects a given situation"; aggressive or active protection "has positive conduct as its content and a change in the current state of affairs as its result, even if it acts to protect a previous situation."

Declaratory self-protection is the power of the administration to benefit from 'a presumption of legality that makes it mandatory, without the need to obtain any prior declaratory judgment.'

As for executive self-protection, this expression goes further than the previous one: apart from exempting the Administration from the burden of obtaining an executive sentence, it empowers it to use its own coercion directly without the need to seek the support of judicially administered coercion. Just as declaratory self-protection is expressed in a

statement or in an act, the executive assumes the passage to the field of facts, behavior or material operations, specifically the use of coercion against third parties.

However, it is important to clarify that executive self-protection applies only to obligations of an economic nature, which means that not every administrative act is subject to executive self-protection. This is evident from Article 68 of the Administrative Litigation Code.

In conclusion, this Review Chamber considers that the coercive jurisdiction process is administrative in nature, as its objective is to enforce the order issued by the administration to collect a tax obligation. In other words, this jurisdiction is the use of coercion against third parties and the expression of executive self-protection.

(...)

It is clear that the citizen is subject or subservient to the powers of the Administration, but this subjection only assumes the possibility of enduring reasonable effects, since the obligations imposed by the Administration are not the result of its own initiative, but rather have their source in the Constitution, the law, or lower-ranking regulations applicable to each particular case. In general, the administration's actions are limited to fulfilling the essential purposes of the State and guaranteeing the rights of individuals, and only if it complies with these objectives does its action comply with the law.

Or, in other words, "Such positional privilege entails an exceptionality that need not be aberrant. Neither should the Administration become a subject liable to justice on an equal footing with citizens, nor is the dual prerogative inherently incompatible with effective judicial protection. Exceptionality means that this *status* of power must be limited and conditioned to serve the fulfillment of the duties that correspond to the Administration within the Social and Democratic State of Law."

The question then arises: what is the purpose of enforcement by the State? It is not simply a matter of enforcing an express, clear, and currently enforceable obligation, but also of collecting assets that will contribute to the fulfillment of the State's essential purposes (Articles 2 and 365 of the Political Constitution).

**4.3. Article 29 of the Political Constitution is applicable to coercive jurisdiction processes.**

Within the philosophy and structure of the State, the relationship it has with its subordinate entities is correlative, which means that both have rights and obligations that must be fulfilled and respected. One of the clearest obligations that persons protected within the scope of a State's protection and sovereignty have toward it is the obligation to pay taxes.

The tax obligation is a way of providing the State with funds and boosting the economy. It "constitutes the duty to pay the tax corresponding to the economic events carried out, whether this has been quantified by the taxpayer himself, or by the withholding agent, or whether the State does so through a liquidation or resolution in which a sanction is established."

Therefore, the creation of a tax credit depends on two phenomena: a) that a certain fact attributable to a certain subject is verified and b) that, in accordance with the law, this fact has the virtue of linking the subject to whom its verification is attributed, with the subject to whom a certain amount of money must be given as a tax or active subject.

Therefore, it is necessary for the State's sanctioning power to have a system capable of coercively enforcing certain rights it holds, through the Coercive Jurisdiction Process.

This process (of coercive jurisdiction) is administrative, it is carried out before the public administration, it gathers instruments through which the coercive collection of tax debts must be advanced; it must also be guided within the framework established by the principles

basic principles of a rule of law, which at the same time outline the guidelines for due process."

From all of the above, it can be concluded that coercive jurisdiction is due to the recognition of an evidently extraordinary or exceptional power of the Administration, consisting of exempting it from bringing the matter to the attention of the judges, in order to directly achieve the execution of certain obligations in its favor.

It should be remembered that the general rule is that disputes arising from the non-performance of an obligation are settled by judges, and therefore, it certainly constitutes an exception that it is the Administration itself that is invested with the power to directly execute certain acts, thus becoming both judge and party, insofar as it executes the debtors on its own behalf, without the intervention of judicial officials.

In any case, whether coercive jurisdiction obeys a judicial function or one of an administrative nature—a controversy that, for the purposes of this constitutional judgment, is not essential to elucidate—the truth is that it is indisputably tied to the concepts of rule, sovereignty, power, and authority. That is why the recognition of such attribution to "bodies linked" to the public administration, whose activities resemble those usually carried out by private individuals—which is why they are generally governed by the rules of Private Law, unlike what occurs with attached entities, such as public establishments, which are charged with exercising administrative functions and providing public services in accordance with the rules of Public Law (see Article 70 of Law 489 of 1998)—implies a lack of understanding of the nature of things, since the attribution cannot be considered reasonable, taking into account the functions performed by the linked entities and the role they play in the economy.

It is important to emphasize that the purpose of coercive jurisdiction is to quickly collect debts owed to public entities, thus enabling the effective fulfillment of state duties.
However, this justification does not apply to entities that carry out activities similar to those of individuals, even if they are also, in one way or another, intended to make the State's purposes effective (Article 2 CP).

Granting such exceptional power to entities of the indicated nature to enforce contractual obligations violates the principle of equity with respect to

of the parties involved in a conflict (Article 13 of the Charter), since it is important to emphasize that, given the aims pursued by State-owned industrial and commercial enterprises and mixed-economy companies, they often compete on equal terms with private individuals. Thus, the transformation of related entities into "judges" and parties may affect the balance of relations between them and private individuals, with whom they freely compete in industrial and commercial activities.

It should be emphasized that the activities generally attributed by law to related entities correspond, materially considered, to acts of management and not of authority, and therefore, they should not be vested with an exorbitant power, which, as explained above, is linked to the concept of **the rule of law** of the State. In these cases, conflicts arising with private individuals must be brought before the courts, in order to respect due process and the principles of impartiality and the right of a natural judge (Article 29, **ibid.).**

Thus, if the tasks usually assigned to related entities are taken into account, for the Court the recognition of a power such as the one described would entail, in the general terms contemplated by the provision under review, an excess of power that would lead, in turn, to the disregard of the guarantee of every person's access to the administration of justice (Article 229 of the Charter).

Thus, the words at issue in the challenge would have to be declared unconstitutional, were it not for the fact that it is also possible for the legislator, exercising its freedom to shape the administrative structure, to assign administrative functions to certain related entities.

In these cases, the exceptional power in question would be fully justified, as the administrative functions expressly assigned by law would implicitly carry the notion of **imperium.** Consequently, the assignment of coercive jurisdiction to the related agencies will be declared constitutional, but with the understanding that they may exercise this power only with respect to the aforementioned administrative functions, and not with respect to other functions and activities.

In this order of ideas, the Court will declare that the accused expressions can only be accepted as adjusted to the Constitution if it is understood that the legal authorization to exercise coercive power refers to the collection or raising of resources from purely administrative functions expressly entrusted by the legislator to the linked entities, provided that in the same corresponding legal norm it is

authorize the function of coercive execution and determine the conditions for its exercise, exclusively with regard to the aforementioned resources. Under any other understanding, the challenged words are unenforceable.

**DECISION**

Based on the considerations set forth, the Constitutional Court of the Republic of Colombia, having heard the opinion of the Attorney General of the Nation and having completed the procedures contemplated in Decree 2067 of 1991, administering justice in the name of the people and by mandate of the Constitution,

**RESOLVES:**

Declare the words "and related parties" in Article 112 of Law 6 of 1992 **CONSTITUTIONAL ,** but with the understanding that the legal authorization to exercise coercive power refers exclusively to the collection or collection of resources from purely administrative functions expressly entrusted by the legislator to the related entities, provided that the corresponding legal provision authorizes the coercive execution function and determines the conditions for its exercise, solely with respect to the aforementioned resources. Under any other interpretation, the aforementioned words are declared **UNCONSTITUTIONAL.**

Copy, notify, communicate, insert in the Gazette of the Constitutional Court, comply and archive the file.

Alejandro Martinez Caballero

President

ANTONIO                          BARRIER                          CARBONELL
ALFREDO BELTRAN SIERRA
                     Magistrate
Magistrate

EDUARDO                    CIFUENTES                    MUÑOZ
Carlos Gavíria Diaz
                    Magistrate
Magistrate


JOSE          GREGORIO          HERNANDEZ          GALINDO
FABIO MORON DIAZ
                         Magistrate
Magistrate


VLADIMIR                    NARANJO                    MESA
ALVARO TAFUR GALVIS
                    Magistrate
Magistrate
          MARTHA SACHICA OF MONCALEANO
                    General Secretariat

**Clarification of vote on Judgment C-666/00**

**FUNCTIONS                    ADMINISTRATIVE                              BY
PRIVATE PARTIES/COERCIVE JURISDICTION-Notion** of implicit imperium (Clarification
of vote)

Practical **constitutionality** of the                    CONDITIONED-Non-execution

challenged rule (Clarification of vote)


Reference: file D-2706


I proposed to the Court that the challenged expressions be declared unconstitutional, and I
consider that, despite this possibility having been rejected, ending up recording - as was done
- a conditional constitutionality that is practically equivalent to the former, I must reaffirm what I
stated about the very clear contradiction between the challenged rule, with respect to the
related entities, and the Political Constitution.


The Court would have been much more coherent and the ruling more understandable, in its
scope and effects, if the unconstitutionality had been declared.

In my opinion, the argument used by the Court—since it was not included in the original report
—to support the constitutionality of the provision with regard to the collection of sums from
administrative functions is unacceptable.


That "in these cases, the exceptional attribution in question (coercive jurisdiction) would be fully
justified, since the administrative functions expressly assigned by law would implicitly carry the
notion of **imperium",** is something that contradicts the backbone of the Judgment, which is
based precisely on the fact that the linked entities lack this attribute, typical of purely state
bodies, and, acting on an equal footing and in competition with private individuals, could hardly
be endowed with powers such as the one mentioned.


Note that if such a criterion could be accepted, with the same logic we would have to agree
that, when individuals are temporarily invested with public functions (arts. 123 and 210 of the

Constitution, among others)—for example, when they collect and manage public resources—"would implicitly carry" in their management "the notion of **imperium."** And such a concept, in my opinion, would undermine the entire constitutional system and even call into question the Theory of State.

If I have signed a clarification in this case, and not a dissenting opinion, this is only because, in essence, with the demanding conditions approved by the Court, we are actually faced with the practical non-execution of the rule, which coincides, from that perspective, with the unconstitutionality that I allowed myself to propose from the beginning.

José Gregorio Hernández Galindo
Magistrate

Date, as above