IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERIMETRAL ORIENTAL DE BOGOTÁ,
S.A.S.,

               *Petitioner*,

v.

AGENCIA NACIONAL DE
INFRAESTRUCTURA
and
THE REPUBLIC OF COLOMBIA

               *Respondents*.

**Civil Action No.** _____

**Declaration of Jason W. Myatt in Support of Petition to Confirm Arbitral Award**

# EXHIBIT 22

**REPÚBLICA DE COLOMBIA**

**CONSEJO DE ESTADO
SALA DE LO CONTENCIOSO ADMINISTRATIVO
SECCIÓN TERCERA – SUBSECCIÓN B**

Bogotá DC, dos (2) de agosto de dos mil veinticuatro (2024)

| | |
|---|---|
| **Magistrado ponente:** | **FREDY IBARRA MARTÍNEZ** |
| **Radicación**: | **13001-23-33-000-2013-00652-03 (68.833)** |
| **Actor**: | **ALVIS YEPES SAS** |
| **Demandados**: | **AGENCIA NACIONAL DE INFRAESTRUCTURA - ANI- Y AUTOPISTAS DEL SOL SA** |
| **Acción:** | **REPARACIÓN DIRECTA** |
| **Asunto:** | **APELACIÓN SENTENCIA – DEPRECIACIÓN Y OBSTACULIZACIÓN DE UN INMUEBLE POR OBRAS CIVILES DE CONSTRUCCIÓN DE UN PEAJE** |

*Síntesis del caso:* la parte actora reclama indemnización de perjuicios por la construcción de unas obras civiles en el frente de su predio con ocasión de la instalación del peaje "Turbaco" en la carretera troncal de occidente entre la ciudad de Cartagena y el municipio de Turbaco (Bolívar), en hechos ocurridos en agosto de 2010; según la demanda, dichas edificaciones desvalorizaron el valor comercial del referido inmueble porque que se le impidió el acceso vehicular, se le obstaculizó la vista panorámica y la explotación económica de dicho terreno

Decide la Sala los recursos de apelación interpuestos por las partes demandadas (Samai – índice 02, ed 13 y ed 14) en contra de la sentencia proferida el 19 de noviembre de 2021 por el Tribunal Administrativo de Bolívar (Samai – índice 02, ed. 11) que dispuso:

> "**PRIMERO: DECLARAR** que la AGENCIA NACIONAL DE INFRAESTRUCTURA – ANI y a la sociedad AUTOPISTAS DEL SOL S.A., son solidaria, administrativa y patrimonialmente responsable por el daño antijurídico ocasionado a la parte demandante Sociedad ALVIS YEPES S.A.S., por los perjuicios derivados de la construcción del peaje ubicado en el Tramo No. 1 Cartagena –Turbaco – Arjona, frente al inmueble propiedad de la parte actora, en el marco del Contrato de Concesión No. 008 de 2007, ocasionando la desvalorización del mismo en un 45% de su avalúo comercial; conforme a lo expuesto en la parte motiva de la presente providencia.

*Expediente: 13001-23-33-000-2013-00652-03 (68.833)*
*Actor: Alvis Yepes SAS*
*Reparación directa*
*Apelación sentencia*

**SEGUNDO: CONDENAR** solidariamente a la *AGENCIA NACIONAL DE INFRAESTRUCTURA – ANI y a la sociedad AUTOPISTAS DEL SOL S.A., a título de Perjuicio Material, al pago de la suma de CIENTO NOVENTA Y SEIS MILLONES OCHOCIENTOS OCHENTA Y CUATRO MIL PESOS ($196.884.000), valor que deberá ser actualizado conforme al inciso final del artículo 187 del CPACA.*

**TERCERO: NEGAR** *las pretensiones de la demanda frente a las aseguradas QBE SEGUROS S.A. y SEGUREXPO S.A., en calidad de llamadas en garantía; e igualmente* **NEGAR** *las demás pretensiones de la demanda; conforme a lo expuesto en la parte motiva de la presente providencia.*

**CUARTO: NO CONDENAR** *en costas.*

**QUINTO: CUMPLIR** *la presente sentencia de conformidad con lo dispuesto en el artículo 192 del CPACA.*

**SEXTO:** *Una vez ejecutoriada la presente sentencia,* **ARCHIVAR** *el expediente, previa devolución del remanente, si existiere. las pretensiones de la demanda frente a las aseguradas QBE SEGUROS S.A. y SEGUREXPO S.A., en calidad de llamadas en garantía; e igualmente NEGAR las demás pretensiones de la demanda; conforme a lo expuesto en la parte motiva de la presente providencia.* (Samai – índice 02, ed. 11 negrillas y mayúsculas sostenidas del texto original).

## I. ANTECEDENTES

### 1. La demanda[1]

Mediante escrito presentado el 13 de septiembre de 2012 (fl. 14 – Samai – índice 02, ed. 01), la empresa Alvis Yepes SAS presentó demanda de reparación directa en contra de la Agencia Nacional de Infraestructura – ANI y la sociedad Autopistas del Sol SA[2] (fls. 1 a 15 – Samai – índice 02, ed. 01) con las siguientes pretensiones:

*"***PRIMERO***: Declarar administrativa y extracontractualmente responsable a la* **AGENCIA NACIONAL DE INFRAESTRUCTURA,** *Instituto descentralizado de derecho público, de carácter Nacional, de los perjuicios causados como consecuencia de la construcción de obras civiles en la parte al frente donde está ubicado un inmueble identificado con la matrícula inmobiliaria No. 12997 de la Oficina de*

---

[1] El 2 de mayo de 2014, la parte actora presentó reforma de la demanda en la que aportó y solicitó el decreto y práctica de nuevas pruebas, la cual fue admitida el 9 de septiembre de 2014 por el Tribunal Administrativo de Bolívar  (fls. 547 a 581, 583 a 587 – Samai -índice 02, ed. 3).

[2] Según el certificado de existencia y representación de 2 de marzo de 2017 de la Cámara de Comercio de Bogotá,  el 19 de abril de 2015 dicha empresa se transformó en Autopistas del Sol SAS (fls. 855 a 859 y 863 a 869 – Samai – índice 02, ed. 05).

*Expediente: 13001-23-33-000-2013-00652-03 (68.833)*
*Actor: Alvis Yepes SAS*
*Reparación directa*
*Apelación sentencia*

*Registro de instrumentos públicos de la ciudad de Cartagena de Indias de propiedad de la sociedad demandante.*

***SEGUNDO**: Que se declare la responsabilidad patrimonial y administrativa y condenar mancomunadamente a la **AGENCIA NACIONAL DE INFRAESTRUCTURA, y la sociedad AUTOPISTAS DEL SOL SA**, a pagar a favor de la sociedad **ALVIS YEPES SAS**., los perjuicios causados en la suma que se señale acorde con los perjuicios calculados por el perito en pesos colombianos, sumas debidamente indexada, más los intereses de mora hasta cuando efectivamente pague los perjuicios a mi representada.*

***TERCERO**: Condenar a la **AGENCIA NACIONAL DE INFRAESTRUCTURA** y la sociedad **AUTOPISTAS DEL SOL S**A, a pagar las condenas señaladas debidamente actualizadas según la variación porcentual del índice de precios al consumidor existente entre el valor histórico y el que exista cuando se produzca el fallo de segunda instancia o el auto que liquide los perjuicios materiales, teniendo en cuenta la fórmula de matemática financiera aceptada por el Honorable Consejo de Estado, teniendo en cuenta la indemnización debida o consolidada y la futura.*

***CUARTO**: Condenar a la **AGENCIA NACIONAL DE INFRAESTRUCTURA** y a la **AUTOPISTA DEL SOL SA** al pago de las costas y perjuicios causadas dentro del proceso judicial de la referencia.*

***PRETENSIÓN SUBSIDIARIA A LA SEGUNDA PRINCIPAL***

*Que se condene a la **AGENCIA NACIONAL DE INFRAESTRUCTURA** y a la sociedad **AUTOPISTAS DEL SOL SA**, a pagar a favor de la sociedad **ALVIS YEPES SAS**, los perjuicios materiales causados en la suma equivalente a la desvalorización del inmueble materia de la demanda, esto es, la diferencia de valor resultante entre el valor comercial que tenía antes de la obra pública en mención y el que tiene actualmente como consecuencia de la aludida construcción, calculados por el perito que se designe, en pesos colombianos, suma debidamente indexada, más los interés de mora hasta cuando efectivamente pague los perjuicios a mi representada".* (fls. 1 a 14 - Samai – índice 02, ed. 01 – negrillas y mayúsculas sostenidas del texto original).

Como fundamento de las súplicas de la demanda se narraron, básicamente, los siguientes hechos:

1) La sociedad Alvis Yepes SAS es propietaria de un predio urbano -lote 1 "Parcelaciones Puente Honda"- con una cabida de 7.217 metros, localizado en la carretera troncal de occidente entre los municipios de Cartagena de Indias y Turbaco (Bolívar), el cual era utilizado como bodega y para la realización de eventos sociales.

*Expediente: 13001-23-33-000-2013-00652-03 (68.833)*
*Actor: Alvis Yepes SAS*
*Reparación directa*
*Apelación sentencia*

2) Desde el mes de agosto de 2010, el Instituto Colombiano de Concesiones (hoy Agencia Nacional del Infraestructura - ANI) autorizó y ordenó la construcción de un peaje contiguo al predio de la parte demandante, lo cual impidió el acceso vehicular, obstaculizó la vista panorámica del inmueble y el aprovechamiento comercial del inmueble que era destinado para el depósito de materiales y la realización de reuniones sociales; dicha obra fue realizada sin obtener los permisos respectivos ni tampoco fue socializada con los vecinos del sector (fls. 2 a 8 – Samai – índice 02, ed. 01).

## 2. Trámite de primera instancia

1) La demanda fue admitida el 20 de enero de 2014 por el Tribunal Administrativo de Bolívar, quien ordenó notificar personalmente a los representantes legales de las entidades demandadas, al Ministerio Público y a la Agencia Nacional de Defensa Jurídica del Estado (fls. 180 a 183 Samai – índice 02, ed. 01).

2) En la contestación de la demanda y su reforma, la Agencia Nacional de Infraestructura (ANI)  replicó los hechos,  se opuso a las súplicas; propuso las excepciones de *"falta de legitimación en la causa por pasiva"* y *"la genérica"*; como razones de la defensa adujo, en síntesis, *i)*  la parte actora no demostró que el daño reclamado excediera las cargas públicas, *ii)*  tampoco se acreditó la existencia del nexo causal entre ese daño y la construcción del peaje, *iii)* la ANI no puede asumir solidariamente la responsabilidad que eventualmente le puede corresponder a la concesionaria Autopistas del Sol SA, toda vez que esta empresa era la encargada de instalar y operar las estaciones de peaje del proyecto vial "Ruta Caribe" en desarrollo de contrato de concesión no. 008 de 2007 y, *iv)* la demandante omitió probar los perjuicios pretendidos, por lo cual rechaza la liquidación presentada por la parte actora. Finalmente, en escrito separado la ANI llamó en garantía a QBE Seguros[3] (fls. 191 a 237 y 599 a 607 - Samai – índice 02, ed. 01, 02, 03 y 04).

.

[3] El 16 de mayo de 2016, la Sección Tercera – Subsección B del Consejo de Estado revocó el numeral sexto de la parte resolutiva del auto de 5 de diciembre de 2014 proferido por el Tribunal Administrativo de Bolívar que negó el referido llamamiento en garantía de QBE Seguros y, en su lugar, dispuso su aceptación (fls. 780 a 785 y 788 a 789 – Samaí – índice 02, ed. 04).

3) Por su parte, en la contestación de la demanda y su reforma, Autopistas del Sol SA también se opuso a las pretensiones; rebatió los hechos y propuso las excepciones de *"falta de legitimación en la causa por activa", "falta de legitimación en la causa por pasiva con fundamento en que si fuera procedente la condena, debería ser condenado es el Instituto Nacional de Concesiones, hoy Agencia Nacional de Infraestructura" (sic), "no haberse cumplido debidamente con el requisito de procedibilidad", "las personas jurídicas no son susceptibles de sufrir daño moral", "inexistencia de la obligación", "ausencia de nexo causal", "necesidad de la prueba", "excepción correspondiente a la carga de la prueba", "prevalencia del interés general sobre el particular", "de configurarse un daño especial un solo particular no puede restablecer el equilibrio de las cargas públicas", "inexistencia de la obligación de indemnizar", "inexistencia de daño especial"*; la *"excepción genérica"* y, como razones de la defensa argumentó, básicamente, que no está acreditado el daño reclamado ni el nexo causal (fls. 302 a 312 – Samai – índice 02, ed. 02).

Posteriormente, dicha sociedad complemento la contestación de la demanda en la que aludió a que la constitución de peajes tenía fundamento legal y a que la reforma de la demanda fue extemporánea; por último, en escrito separado llamó en garantía a la compañía Segurexpo de Colombia SA[4] (fls. 527 a 528, 637 a 645 y 738 a 742 – Samai – índice 02, ed. 03 y 04).

4) En la contestación de la demanda y del llamamiento en garantía, la compañía QBE Seguros SA se opuso a las pretensiones; refutó los hechos y propuso en su orden las excepciones de *"falta de legitimación en la causa por activa", falta de legitimación en la causa por pasiva, con fundamento en la probable condena", "inexistencia de la obligación", carga de la prueba", "prevalencia del interés general", "falta de cobertura de la póliza de responsabilidad civil expedida por QBE Seguros SA", "inexistencia de responsabilidad a cargo de la ANI, presupuesto necesario para la afectación de la póliza no. 120100001155 expedida por QBE Seguros SA", "operancia en exceso de la póliza no. 120100001155" (sic) y "límites de responsabilidad de la compañía de seguros"* y, finalmente, argumentó que la ANI no es responsable por la construcción del peaje, no existe prueba del daño ni del

---

[4] El 5 de diciembre de 2016, el Tribunal Administrativo de Bolívar admitió el llamamiento en garantía de la compañía Segurexpo de Colombia SA (fls. 743 a 745 – Samai – índice 02, ed. 04).

nexo causal y que la responsabilidad de la aseguradora tiene un límite cuantitativo que debe respetarse en caso de una condena (fls. 816 a 828 y 829 a 847 – Samai – índice 02, ed. 05).

5) Por su parte, en la contestación de la demanda y del llamamiento en garantía, la compañía Segurexpo de Colombia SA se opuso a las pretensiones; rebatió los hechos; propuso correlativamente las excepciones de *"falta de legitimación en la causa por activa", "inexistencia de la obligación, "inexistencia de los elementos estructurantes de la responsabilidad, inexistencia de prueba de los perjuicios", "prevalencia del interés general sobre el particular" "inexistencia de la obligación de indemnizar – ausencia de prueba de ocurrencia del siniestro y de la cuantía de la pérdida", aplicación de las condiciones especiales y generales que rigen el contrato de seguro", "límite de la responsabilidad del asegurador", "aplicación del deducible"*; *"la genérica"* y, por último adujo, en síntesis, que Segurexpo SA no tenía ninguna obligación indemnizatoria porque no se acreditó la realización del riesgo ni el monto del perjuicio sufrido por la parte actora (fls. 909 a 927 – Samai – índice 02, ed. 05).

6) La Agencia Nacional de Defensa Jurídica del Estado guardó silencio.

7) Mediante memorial de 21 de noviembre de 2018, la parte actora puso en conocimiento del tribunal que además de los daños causados por la construcción del peaje de Turbaco, se construyó un baño colindante a la entrada de su predio que afecta la vista panorámica y su valorización (fls. 994 a 996 – Samai – índice 02, ed. 05).

8) Los días 21 de febrero de 2018 y 16 de mayo de 2019, el Tribunal Administrativo de Bolívar realizó la audiencia inicial en la que declaró no probadas las excepciones de falta de legitimación en la causa por activa e indebido agotamiento del requisito de conciliación extrajudicial[5] propuestas por Autopistas del Sol SA y QBE Seguros SA; fijó el objeto del litigio; decretó las pruebas aportadas y solicitadas por las partes y las entidades llamadas y, dio traslado de los dictámenes periciales presentados por la parte actora (fls. 983

---

[5] El 14 de febrero de 2019, la Sección Tercera – Subsección B del Consejo de Estado confirmó la decisión del tribunal que declaró no probada la excepción de indebido agotamiento del requisito de conciliación formulada por la sociedad Autopistas del Sol SA (fls. 1003 a 1007 – Samai – índice 01).

a 987 – Samai – índice 02, ed. 05); el 3 de julio de 2019 se realizó la audiencia de pruebas en la que se practicaron e incorporaron las pruebas testimoniales, periciales y documentales decretadas a las partes y a las entidades llamadas en garantía (fls. 1018 a 1024 – Samai – índice 02, ed. 05); el 9 de septiembre de 2019 se corrió traslado para alegar de conclusión y al Ministerio público para que emitiera concepto (fls. 1069 a 1070 – Samai – índice 02, ed.05); las partes y las entidades llamadas en garantía en sus alegaciones reiteraron los argumentos expuestos en la demanda y las respectivas contestaciones, el colaborador fiscal no rindió concepto (fls.1073 a 1130 – Samai – índice 02, ed. 05).

## 3. La sentencia impugnada

El 19 de noviembre de 2021, el Tribunal Administrativo de Bolívar declaró la responsabilidad patrimonial extracontractual de la Agencia Nacional de Infraestructura (ANI) y de la empresa Autopistas del Sol SA por el daño causado a la parte demandante con la construcción frente a su predio del peaje Cartagena – Turbaco – Arjona (Bolívar) en el marco del contrato de concesión no. 008 de 2007; en consecuencia, las condenó en forma solidaria a pagarle a la actora la suma de $196.884.000 de pesos; absolvió a las entidades llamadas en garantía; negó las demás súplicas de la demanda y, finalmente, no condenó en costas a las entidades demandadas debido a la prosperidad parcial de la demanda. Las razones de la decisión fueron las siguientes:

Las pruebas documentales, testimoniales y periciales demuestran que en desarrollo del referido contrato de concesión se construyó un peaje[6] frente al predio de la parte actora localizado en la vía Cartagena – Turbaco – Arjona (Bolívar), lo cual generó una devaluación del 45% del valor comercial del inmueble dado que se impidió su acceso vehicular por el levantamiento del nivel del piso, se limitó su vista panorámica bidireccional y su explotación económica; por consiguiente, dicha construcción produjo un daño excepcional a la empresa demandante que excede las cargas públicas, razón por la cual, en virtud de la regla de solidaridad prevista en el artículo 2344 del Código Civil,

---

[6] La referida área de peaje consta de ocho (8) casetas de cobro que ocupan las dos calzadas de la vía con un área de 2.345, 25 m²; un edificio administrativo de dos (2) plantas que abarca un área de 93.125 m². localizado en la zona de derecho de vía lado izquierdo y, un baño para minusválidos con una cabida de 5.13m² ubicado en el sector de derecho de vía lado izquierdo.

la Agencia Nacional de Infraestructura, como propietaria de esa obra pública, y la sociedad Autopistas del Sol SA, en su condición de ejecutora, deben indemnizar en partes iguales a la parte actora; no obstante, en armonía con lo dispuesto en los artículos 1045 y 1054 del Código de Comercio, las compañías QBE Seguros SA y Segurexpo de Colombia SA no están llamadas a reparar los perjuicios reclamados, toda vez que la responsabilidad declarada no fue producto de una falla en la ejecución del contrato de concesión ni de los estudios y diseños previos o de hechos externos imputables a las aseguradoras sino, por razón de un daño especial sufrido por la sociedad Alvis Yepes SAS.

Por último, con fundamento en los dictámenes periciales, el tribunal solo indemnizó por la desvalorización del 45% del avalúo comercial del inmueble equivalente a $196.884.000 pesos, dado que ese valor ascendía a $437.520.000,oo; empero, no reconoció perjuicios por la explotación comercial del predio porque no se acreditaron en el proceso (Samai – índice 02, ed. 11).

## 4. Los recursos de apelación

## 1. La Agencia Nacional de Infraestructura (ANI)

Solicita que se revoque la sentencia de primera instancia por las siguientes razones: *i)* mediante la Resolución 4336 de 28 de septiembre de 2006 el Ministerio de Transporte autorizó la instalación del peaje "Turbaco", la cual fue publicada en esa misma fecha; por consiguiente, como la demanda se presentó en el año 2013, esto es, por fuera del plazo de los dos (2) años contados a partir de la publicación de la mencionada decisión, se configuró la caducidad del medio de control de reparación directa; *ii)* la parte actora omitió demostrar la vulneración del derecho de propiedad de la sociedad demandante, pues, no acreditó que la construcción del peaje implicó la supresión de la explotación económica del predio; *iii)* aunque el tribunal encontró que el peaje obstaculizó la vista panorámica del terreno e impidió el acceso vehicular por el levantamiento del nivel del suelo, dichas afectaciones no se encuentran sustentadas técnicamente con la prueba pericial aportada; *iv)* la sentencia omitió evaluar el grado de participación de la ANI en la producción del daño conforme lo establece el artículo 140 del CPACA, más

aún cuando la construcción del peaje fue realizada por el concesionario y, *v)* si se confirmase la condena resulta procedente el llamamiento en garantía de QBE Seguros SA (hoy Zurich Seguros SA), debido a que el amparo de la póliza también cubre los perjuicios en que pudieron incurrir los terceros indeterminados (Samai – índice 02, ed. 14).

## 4.2 Autopistas del Sol SAS (antes Autopistas del Sol SA)

Por su parte también solicita que se revoque el fallo de primera instancia o, en su defecto, que se declararen no probadas las excepciones propuestas por Segurexpo SA y se la condene también a indemnizar los perjuicios correspondientes porque se encuentran cubiertos por la póliza tomada con esta entidad (antes Autopistas del Sol SA), las razones son las siguientes: *i)* la parte actora no demostró que se configuraron los presupuestos del daño especial; *ii)* la fuente del daño no proviene de la construcción del peaje sino de la Resolución no. 4336 de 28 de septiembre de 2006 proferida por el Ministerio de Transporte que ordenó su instalación, la cual no fue controvertida por la parte actora ni tampoco alegó su desconocimiento; *iii)* el medio de control de reparación se encuentra caducado, porque la demanda se presentó dos (2) años después de la publicación de la Resolución no. 4336 de 28 de diciembre de 2006; *iv)* pese a que el fallo concluyó que se produjo una desvalorización del 45% del valor comercial del predio con base en el dictamen pericial rendido por el ingeniero civil Jesús Cantillo Puerta, dicha estimación no está sustentada técnicamente; *v)* el concesionario es responsable de los riesgos de construcción del peaje, pero, no de los daños derivados de la instalación de peaje, la cual fue ordenada por el referido acto administrativo y que fue proferido previamente a la suscripción del contrato de concesión (Samai – índice 02- ed. 13).

## 5. Actuación surtida en segunda instancia

El 11 de octubre de 2022 se admitió el recurso de apelación interpuesto por las partes demandadas (Samai – índice 04); de igual manera, como no se decretaron ni solicitaron pruebas en el término de ejecutoria del auto admisorio, no se corrió traslado para alegar de conclusión de conformidad con

lo previsto en el artículo 247 del CPACA; el Ministerio Público no rindió concepto (Samai – índice 10).

## II. CONSIDERACIONES DE LA SALA

Cumplidos el trámite procesal, sin que exista causal alguna de nulidad que invalide lo actuado, procede la Sala a resolver el asunto sometido a consideración con el siguiente derrotero: 1) caducidad del medio de control judicial, 2) objeto de la controversia y anuncio de la decisión, 3) hechos probados, 4) análisis del recurso, 5) conclusión y, 6) condena en costas.

## 1. Caducidad del medio de control judicial

1) Las recurrentes sostienen que se encuentra configurada la caducidad del medio de control judicial de reparación directa previsto en el artículo 164 i) del CPACA, toda vez que, la demanda se presentó dos (2) años después de la publicación de la Resolución no. 004336 de 28 de septiembre de 2006 mediante la cual el Ministerio de Transporte le ordenó al Instituto Nacional de Vías la instalación de la Estación de Peaje "Turbaco" localizada en el PR 96 + 500 entre la ciudad de Cartagena y el Municipio de Turbaco (Bolívar); por tanto, como dicho acto administrativo se publicó el 28 de septiembre de 2006, la parte actora podía demandar hasta el 29 de septiembre de 2008, sin embargo, presentó la demanda en forma extemporánea, esto es, en septiembre de 2013.

2) La Sala no comparte el argumento de las entidades apelantes y considera, por el contrario, que en el presente caso no ha operado la caducidad del medio de control de reparación directa, porque, el plazo legal de dos (2) años que tiene la parte demandante para acudir a esta jurisdicción no puede contabilizarse a partir de la fecha de publicación del acto administrativo que dispuso que el INVIAS instalara el referido peaje en el aludido sector, sino que, en principio, dicho término se debe computar a partir de la fecha de terminación de la obras civiles que se edificaron con motivo de la construcción de la estación peaje "Turbaco" contiguo al predio de la parte actora en desarrollo del contrato de concesión no. 008 de 27 de julio de 2007 -proyecto vial "Ruta Caribe"-, las cuales, según la demanda, constituyen la fuente del daño reclamado, pues, es a partir de ese momento y no antes cuando los afectados

se percatan efectivamente de la ocurrencia de los daños ocasionados a su propiedad.

La demanda no cuestiona la ilegalidad del referido acto administrativo, esa no era la causa la causa del daño cuya reclamación se reclama con aquella.

3) En ese sentido, aunque en esta ocasión se desconoce a ciencia cierta en qué fecha finalizó la construcción de las mencionadas obras civiles, en el libelo introductorio se asevera que estas comenzaron en agosto de 2010, de suerte que aún si contabilizara el termino de caducidad a partir del inicio de las referidas construcciones, se evidencia que la parte actora demandó dentro del citado plazo legal.

En efecto, se observa que la sociedad demandante agotó el requisito de procedibilidad el 11 de mayo de 2012 con lo cual interrumpió el término de caducidad por 75 días cuyo computo se reanudó el 27 de julio de 2012 luego de la expedición de la constancia de no conciliación, por tanto, el libelo introductorio se presentó en forma oportuna el 13 de septiembre de 2012; sumado a ello, la prueba recabada en el proceso evidencia que dichas edificaciones se construirían entre los años 2011 y 2012 y que la estación de peaje "Turbaco" entró a operar partir de septiembre de 2013, con lo cual no hay duda que la parte actora acudió a la jurisdicción oportunamente  (fls. 14, 19 a 20, 129 a 133 y 372 a 428 – Samai – índice 02, ed. 01, 02, 03 y 04).

4) Por último, advierte la Sala que no obra en el proceso la Resolución no. 004336 de 28 de septiembre de 2006 mediante la cual el Ministerio de Transporte ordenó la instalación del mencionado peaje ni tampoco los interesados solicitaron el decreto de dicha prueba en esta instancia.

## 2. Objeto de la controversia y anuncio de la decisión

En el marco del recurso de apelación, le corresponde a la Sala establecer si las entidades demandadas y las llamadas en garantía deben indemnizar los perjuicios reclamados por las obras civiles realizadas en el frente del predio de la parte actora con ocasión de la construcción del peaje "Turbaco", el cual se encuentra localizado en la carretera troncal de occidente en el municipio de

Turbaco (Bolívar) contiguo al referido inmueble; según la demanda, dicha infraestructura desvalorizó el valor comercial del predio.

La Sala modificará el fallo apelado en el sentido de *i)* declarar únicamente la responsabilidad patrimonial extracontractual de la Agencia Nacional de Infraestructura (ANI) a título de daño especial por la depreciación del valor comercial del predio de la parte actora en el 45% de su avalúo comercial con motivo de la construcción del peaje "Turbaco"; *ii)* condenar, en consecuencia, a la Agencia Nacional de Infraestructura (ANI) a pagar a la parte demandante por dicho concepto la suma $196.884.000, valor que más adelante se actualizara a la fecha de esta providencia; *iii)* absolver a la empresa Autopistas del Sol SAS y a las entidades llamadas en garantía y *iv)* condenar en costas de segunda instancia a la Agencia Nacional de Infraestructura – ANI-.

El fundamento de dichas decisiones estriba en que se demostró en el proceso que en el marco del contrato de concesión no. 008 de 27 de julio de 2007, proyecto vial "Ruta Caribe", suscrito entre las entidades demandadas, la concesionaria Autopistas del Sol SAS edificó unas obras civiles en el frente del predio de la parte actora con ocasión de la construcción del peaje "Turbaco", lo cual le ocasionó a la sociedad demandante un daño especial, anormal y grave que rompió la igualdad de las cargas públicas que deben soportar los administrados en la medida en que con esa infraestructura se depreció el valor comercial de dicho inmueble; no obstante, se declarará únicamente la responsabilidad de la Agencia Nacional de Infraestructura (ANI), toda vez que dicha entidad es la directora y propietaria de la obra pública de conformidad con lo dispuesto en el Decreto 4165 de 2011 y el referido contrato de concesión, pues, la empresa Autopistas del Sol SAS en su condición de concesionaria se limitó únicamente a construir dicha infraestructura conforme con los diseños y especificaciones técnicas previstas en las estipulaciones contractuales sin que, además, se hubiese demostrado en el proceso que obró con culpa en la producción del daño o que las edificaciones desconocieron dichos parámetros constructivos; de igual manera, la aseguradora QBE Seguros SA, llamada en garantía en este proceso por la Agencia Nacional de Infraestructura -ANI-, no debe responder por el daño reclamado, porque, dicho riesgo no se encuentra amparado por el respectivo contrato de seguro.

**3. Hechos probados[7]**

En el proceso se acreditaron los siguientes hechos relevantes para la resolución de la presente controversia:

1) Según la escritura pública no. 2.485 de 29 de diciembre de 1999 de la Notaría Quinta de Cartagena y el respectivo certificado de tradición de 7 de septiembre de 2012 expedido por la Oficina de Registro de Instrumentos Públicos de Cartagena, la parte actora es propietaria del predio distinguido como lote no. 1 "Parcelaciones Puente Honda",  localizado en la carretera troncal de occidente en el municipio de Turbaco (Bolívar), el cual tiene una superficie de 7.217 m$^2$ (fls. 18, 21 a 26,  149  a 151y 555 a 557  – Samai – índice 02, ed. 01 y 03).

2)  El Instituto Nacional de Concesiones -INCO- y Autopistas del Sol SA suscribieron el contrato de concesión no. 008 de 27 de julio de 2007 para la ejecución del proyecto vial "Ruta Caribe"; en las cláusulas 2, 10.24, 11.5, 14, 17, 28.5.1 y 42 se estipuló, en su orden, que el concesionario realizará por su cuenta y riesgo las actividades pertinentes para la construcción, rehabilitación, operación y mantenimiento de la mencionada vía pública; que es obligación del concesionario suministrar, instalar y operar los equipos necesarios para operar los peajes; que el contratante cede al concesionario los recursos netos y derechos de recaudo de los peajes, cuyo producto conforma la remuneración esperada; que la ubicación de las estaciones correspondientes será la descrita en la resolución respectiva que emita el Ministerio de Transporte; que el concesionario se obliga a constituir una garantía de responsabilidad civil extracontractual durante el plazo de ejecución y tres (3) años más después de la terminación de la concesión y, que  la instalación, operación y construcción de peajes se deben ceñir a las especificaciones técnicas y los costos derivados de esas actividades serán de cuenta y riesgo del concesionario  (fls. 29 a 114 – Samai – índice 02, ed. 01).

3)  En el avalúo comercial del inmueble de la parte actora  de 16 de marzo de 2011, el perito Carlos Vélez Paz de la Lonja de Propiedad Raíz de Cartagena

---

[7] De acuerdo con las reglas procesales y los precedentes de esta Sección, la Sala valorara el material fotográfico aportado al proceso en conjunto con los demás medios de convicción que obran en el expediente.

y Bolívar determinó *i)* que dicho predio tiene una cabida de 7.217 m$^2$, se encuentra localizado en el margen oeste de la carretera troncal de occidente en el municipio de Turbaco, a 4 km de la ciudad de Cartagena (Bolívar) y su uso del suelo corresponde a sector semiurbano residencial; *ii)* que frente al referido fundo se construyen las instalaciones del peaje "Turbaco"; *iii)* que en el lote existe una casa en mal estado y un kiosco de palma en buenas condiciones; *iii)* que el terreno es apto para desarrollar proyectos constructivos y actualmente no presenta ninguna explotación económica; el valor comercial total del predio, con la casa y el kiosco asciende a la suma de $437.520.000,oo (fls.119 a 133 – Samai – índice 02, ed. 01).

4) En la audiencia de pruebas, dicho perito reiteró las conclusiones expuestas en el mencionado dictamen pericial y frente a las preguntas que se le formularon en dicha diligencia por los sujetos procesales respondió, principalmente, lo siguiente *i)* en su condición de gerente de la referida entidad realizó directamente el estudio sobre el lote de propiedad de la parte demandante; *ii)* para estimar el valor del lote se basó en el valor de predios similares ubicados en la zona de la carretera troncal de occidente; *iii)* en la inspección del inmueble no advirtió ninguna actividad  recreacional o comercial; *iv)* el lote se encontraba por debajo del límite de la carretera; *v)* el fundo tenía un uso de expansión urbana; *vi)* en el avalúo comercial del referido inmueble no tuvo en cuenta las obras de peaje que en ese momento se estaban realizando; *vii)* no existe ninguna vía secundaria para acceder a ese predio; *viii)* el objeto del dictamen era realizar el avaluó comercial  del lote sin ninguna limitación; *ix)* para valorar el predio se tuvo en cuenta la vía de acceso principal que es la carretera troncal de occidente y, *x)* enfatizó en que no tuvo en cuenta la construcción del peaje para realizar la referida valoración comercial del lote de propiedad de la parte demandante. (Samai – índice 02, ed.22).

5) Obran en el proceso sendos registros fotográficos que corresponden presuntamente al predio de la parte demandante y a las obras de construcción del peaje "Turbaco" (fls. 134 a 146 – Samai – índice 02, ed. 01), los cuales no fueron desconocidos por las partes ni tampoco tachadas.

*Expediente: 13001-23-33-000-2013-00652-03 (68.833)*
*Actor: Alvis Yepes SAS*
*Reparación directa*
*Apelación sentencia*

6) En oficio de 17 de enero de 2011 el Secretario de Planeación de Turbaco informó que la edificación del peaje de "Turbaco no tenía licencia de construcción; el 16 de julio de 2019, esa dependencia sostuvo que la ANI era la entidad competente para dicho efecto (fls. 147 a 148 y 1061 – Samai – índice 02, ed. 01 y 05).

7) En las actas de reunión de 23 de febrero de 2011, 16 de marzo de 2011, 1º de abril de 2011, 8 de agosto de 2011, 6 de diciembre de 2011, 2 de agosto de 2013 y 1º y 18 de noviembre de 2013 se advierte que el concesionario Autopistas del Sol SA dio a conocer a las autoridades del municipio de Turbaco, lideres sociales y miembros de la comunidad el diseño, puesta en funcionamiento e inquietudes sobre el peaje "Turbaco" (fls. 372 a 428 – Samai – índice 02, ed. 02, 03, 04).

8) En el dictamen pericial de 7 de mayo de 2014 realizado dentro del proceso por el perito Jesús Cantillo Puerta con el objeto de evaluar los perjuicios causados al lote no. 1 de propiedad de la parte demandante por las obras del peaje "Turbaco" se concluyó, fundamentalmente: *i)* las construcciones del peaje cubren todo el frente del lote no. 1; *ii)*  dichas obras consisten en poza séptica ubicada a 1.40m de la pared frente del inmueble, tanque de concreto de almacenamiento de agua potable situado a 5m de la pared frente del predio, edificio de dos (2) plantas para administración del peaje y caseta para planta eléctrica; *iii)* la superficie construida del peaje mide 10,40m de ancho por 50.40m de largo; *iv)* esa área ha sido rellenada con material de zahorra de 1m de altura, lo cual ha impedido la entrada vehicular y el acceso peatonal a dicho predio; *v)* como las edificaciones del peaje se efectuaron en el frente del predio de la parte actora se disminuyó su valor comercial, pues, se obstaculizó su vista panorámica, se afectó su potencial urbanístico y el relleno del suelo en zahora impide el acceso vehicular; *vi)* que según el POT del municipio de Turbaco, el uso del suelo asignado al inmueble es de carácter urbano; *vii)* la desvalorización del lote por la construcción de las obras del peaje sobre la zona frontal del predio equivale a una suma igual al 45% de su avaluó comercial cuando no existían las mencionadas construcciones; *viii)* el 16 de marzo de 2011 la Lonja de Propiedad Raíz de Cartagena tasó el valor comercial de la propiedad en $437.520.000, por tanto, el aludido porcentaje de depreciación corresponde a $196.884.000; *ix)*  el valor comercial del inmueble

para la fecha del peritaje una vez restado dicho factor de disminución, equivale a $240.636.000; *ix)* las mencionadas obras contiguas a la parte frontal del predio obligan a la parte actora a pagar las tarifas de peaje cuando se desplace desde ese lugar a Cartagena y también frustran la posibilidad de que en ese terreno se realicen proyectos constructivos o recreacionales. Finalmente, al dictamen se anexaron seis (6) fotografías que, según el perito, corresponden al área de construcción y su distancia a la pared del frente del inmueble  (fls. 566 a 569 – Samai – índice 02, ed. 03).

9) En la sustentación del aludido dictamen en la audiencia de pruebas, el mencionado perito, sostuvo, principalmente, lo siguiente: *i)* los daños y perjuicios ocasionados al predio de la parte actora son contundentes y quedaron determinados en el dictamen que obra en el proceso; *ii)*  en la actualidad se puede comprobar  los daños causados a dicho inmueble con las obras realizadas del área de peaje, las cuales cubren todo el frente del mencionado lote; *iii)*  se construyó en ese sector una poza séptica, un tanque de agua de concreto enterrado, un edificio de dos (2) plantas, una caseta para planta eléctrica y un relleno en zahorra compactada de un (1) metro de altura que ejerce presión sobre el muro del inmueble; *iv)* ese relleno impide el acceso al inmueble al mencionado lote; *v)*  dichas edificaciones disminuyeron el valor comercial del predio; *vi)* las referidas construcciones se encuentran a menos de dos metros del inmueble y afectan su entrada y salida y  *vii)* por último, cuantificó en un 45% el detrimento del valor comercial del inmueble.

Con relación a las preguntas formuladas en la audiencia por los intervinientes, el perito respondió, en síntesis: *i)* que para establecer el porcentaje de depreciación del 45% del valor comercial de inmueble de la parte actora se basó el avaluó comercial que presentó en el proceso la Lonja de Propiedad Raíz de Cartagena y Bolívar, porque era una entidad prestigiosa y él como perito fue designado únicamente para evaluar los perjuicios de dicho; *ii)* que tiene experiencia como perito avaluador y que no tiene estudios formales en la materia; *iii)* que no tiene ningún vínculo personal, laboral o de parentesco con la parte demandante; *iv)* que cuando realizó el dictamen en el año de 2014, encontró en el frente del predio las obras anteriormente relacionadas; *v)* que todas esas edificaciones están situadas entre el frente del lote y la línea de terminación de la calzada en el sentido Cartagena – Turbaco de la carretera

troncal de occidente; *vi)* que el lote de la parte actora tiene cerramiento completo y que las obras se construyeron sobre las áreas de retiro; *vii)* que para ingresar al lote se requiere construir una rampa de concreto, pero, la salida vehicular no es posible porque es contravía; *viii)* que las obras realizadas dificultan el desarrollo arquitectónico del predio; *ix)* que las edificaciones se realizaron frente al cerramiento del lote; *x)* que debido al relleno del suelo no se puede ingresar al predio en vehículo ni tampoco salir por ese medio de transporte hacia la carretera porque el sentido de la dirección es contravía; *xi)* que el detrimento del 45% del valor comercial del predio obedece a los perjuicios ocasionados por las referidas construcciones; *xii)* que con las edificaciones relacionadas no se dejó una franja de retiro; *xiii)* que el terreno de los demandantes no se benefició con la carretera sino que se perjudicó con las obras que se construyeron en su frente; *xiv)* que para determinar el porcentaje del 45% de disminución del avalúo comercial se basó en los derechos de uso del terreno y las posibilidades de desarrollo el predio y, *xv)* reiteró que no se le solicitó que realizara una avaluó comercial del predio sino una evaluación de los perjuicios y, por tal motivo, tomó la valoración realizada por la Lonja de Propiedad Raíz de Cartagena y Bolívar (Samai – índice 02, ed. 22).

10) En el contrato de seguro no. 120100001155 de responsabilidad civil extracontractual suscrito entre el INCO y QBE Seguros SA, vigente entre el 25 de agosto de 2009 y el 7 de octubre de 2011 y por un valor de $1.000.000.000, dicha compañía se obligó a indemnizar los perjuicios que cause el asegurado, entre otros conceptos, por el deterioro o destrucción de bienes de acuerdo con los términos y condiciones establecidos en la póliza (fls. 622 a 636 y 839 a 847 – Samai – índice 02, ed. 04, 05).

11) De igual manera, en el contrato de seguro no. 133-51077-24-BG (póliza 133) de responsabilidad civil extracontractual suscrito entre Autopistas del Sol SA y Segurexpo SA Aseguradora de Crédito y del Comercio Exterior SA con vigencia desde el 3 de septiembre de 2007 hasta el 27 de febrero de 2014 y por un valor asegurado de $4.057.669.441,00 cuyo beneficiario es el INCO (ANI), la referida compañía de seguros se obligó a cubrir los daños ocasionados a terceros derivados del contrato de concesión "Ruta Caribe" (fls. 598 a 599 y 870 a 884 – Samai – índice 02, ed.03 y 05).

12) Por oficio de 30 de mayo de 2019, la Corporación Autónoma Regional del Canal del Dique informó que mediante Resolución no. 1165 de 17 de junio de 2010 proferida por el entonces Ministerio de Ambiente, Vivienda y Desarrollo Territorial, se otorgó licencia ambiental y permiso de aprovechamiento forestal a la sociedad Autopistas del Sol SA para la construcción de la segunda calzada de la carretera Cartagena – Turbaco – Arjona, lo cual fue ratificado mediante oficio de 27 de junio de 2019 por la Autoridad Nacional de Licencias Ambientales (fls. 1005 a 1006 y 1051 a 1057 – Samai – índice 02, ed. 05).

13) El 5 de junio de 2019, el Consorcio Épsilon Vial informó que en el peaje "Turbaco" correspondiente al contrato de concesión vial "Ruta Caribe" se construyeron *i)* ocho (8) casetas de cobro de peaje que ocupan las dos calzadas de la vía con un área de 2.345,25 m$^2$; *ii)* un edificio administrativo situado en la zona de derecho de vía lado izquierdo con una superficie de 93.125m$^2$ y, *iii)* un baño para minusválidos localizado en la zona de derecho de vía lado izquierdo con un área de 5.13m$^2$ (fls. 1016 a 1017 – Samai – índice 02, ed. 05).

14) El testigo Elieth Berdugo Flórez de profesión ingeniero civil y especialista en estructuras declaró, principalmente, *i)* que laboró como como ingeniero de gestión predial en la empresa Autopistas del Sol SA entre los años 2011 y 2013 y que luego fue residente de obra hasta el año 2017; *ii)* que las obras de construcción del peaje "Turbaco" se realizaron entre los años 2011 y el 2012, pero, no se realizaron en el inmueble de la parte actora sino en la zona de derecho de vía y, además, que se garantizó el acceso a dicho predio; *iii)* que el uso del suelo de los terrenos vecinos es rural; *iv)* que para la construcción del referido peaje no se requería de licencia urbanística por tratarse de un proyecto de carácter nacional, además, que la obra se realizó sobre la franja de derecho de vía y estaba autorizada por el Ministerio de Transporte; *v)* que las construcciones se encuentran a una distancia aproximada de tres (3) a cuatro (4) metros del muro del referido inmueble; *vi)* que para edificar el área de peaje se efectuó un relleno que aumento el nivel del suelo respecto del predio de la parte actora; *vii)* que frente al mencionado lote de terreno se parqueaban vehículos utilizados en la obra pública; *viii)* que el derecho de vía tiene aproximadamente 11 metros entre el borde la vía y el inicio de la

propiedad de la parte actora y, *ix)* que el acceso a dicho predio se conservó en condiciones similares a las existentes antes del peaje, pues, aunque el relleno del suelo tiene una dimensión aproximada de un (1) metro, se adecuó la aludida entrada para el ingreso y salida de vehículos a esa propiedad.

15) Por su parte, el declarante Humberto Morales aseveró, en síntesis*,* los siguiente: *i)* era amigo de la familia propietaria del terreno; *ii)* a dicho lugar solía asistir a actividades recreativas; *iii)* en el referido lote se almacenaban equipos de la empresa de ingeniería de propiedad de la sociedad demandante; *iii)* debido a los rellenos realizados en el acceso al predio, este no puede ser utilizado para activades recreativas o guardar materiales y, *iv)* las edificaciones del peaje fueron realizadas entre los años 2011 a 2012 y que debido a esas obras se produjo un desnivel en el suelo.

## 4. Análisis del recurso

1) De conformidad con el artículo 90 de la Constitución Política, esta Corporación ha sostenido en forma pacífica que se puede deducir responsabilidad patrimonial extracontractual del Estado por la ejecución de actividades licitas que resultan beneficiosas para la comunidad, como por ejemplo la construcción de una obra pública, siempre que se demuestre que esa intervención ocasionó un daño especial, anormal y excepcional que comporta el rompimiento del principio superior de igualdad de los ciudadanos ante las cargas públicas, por lo cual ese daño no debe ser soportado por el particular afectado por revestir especial gravedad.

Esta Sección ha sostenido que para que se configure el daño especial deben concurrir los siguientes presupuestos:

> *a) Que se desarrolle una actividad legítima de la administración;*
>
> *b) La actividad debe tener como consecuencia el menoscabo del derecho de una persona;*
>
> *c) El menoscabo del derecho debe tener origen en el rompimiento del principio de la igualdad frente a la ley y a las cargas públicas;*
>
> *d) El rompimiento de esa igualdad debe causar un daño grave y especial, en cuanto recae sólo sobre alguno o algunos de los Administrados;*

*e) Debe existir un nexo causal entre la actividad legítima de la administración y el daño causado; y*

*f) El caso concreto no puede ser susceptible de ser encasillado dentro de otro, de los regímenes de responsabilidad de la administración[8].*

De igual manera, la jurisprudencia de la Sección ha reiterado que el daño especial *"ha sido elaborado a partir de la concepción de igualdad de las cargas públicas que pesan sobre los administrados; esto implica considerar i) que las cargas ordinarias o normales que se aplican sobre todos los ciudadanos o sectores específicos de ellos deben ser asumidas como un sacrificio o carga ordinaria frente al Estado, pero ii) los sacrificios particulares a que se vea avocado un ciudadano a consecuencia de una acción lícita del Estado corresponde a una situación anormal que amerita ser compensada (…)"[9]*

2) De acuerdo con esos precedentes y con fundamento en los hechos probados descritos anteriormente, la Sala encuentra demostrado en el proceso lo siguiente:

a) En desarrollo del contrato de concesión no. 008 de 27 de julio de 2007, proyecto vial "Ruta Caribe", suscrito entre las entidades demandadas se construyó la estación de peaje "Turbaco" localizada en la carretera troncal de occidente en el municipio de Turbaco (Bolívar), como mecanismo de retribución del concesionario por la ejecución del referido proyecto.

b) Con motivo de esa construcción se realizaron además varias obras civiles (poza séptica, tanque de almacenamiento de agua potable, edificio de dos (2) plantas para administración del peaje, caseta para planta eléctrica y un (1) baño para minusválidos), las cuales se edificaron en todo el frente del lote no. 1 de propiedad de la sociedad demandante a una distancia aproximada de entre 3 y 4 metros; no obstante, esta infraestructura afectó en forma grave y anormal dicho predio, por cuanto depreciaron su valor comercial.

---

[8] Consejo de Estado, Sala de lo Contencioso Administrativa, Sección Tercera, sentencia del 13 de septiembre de 1991, expediente 6.453 MP Daniel Suárez Hernández.

[9] Consejo de Estado, Sala de lo Contencioso Administrativa, Sección Tercera, Subsección A, exp. 33113 de 26 de agosto de 2015.

c) El referido inmueble fue el único que sufrió un menoscabo excepcional como consecuencia de las referidas construcciones que se realizaron en su parte frontal con motivo de la instalación del denominado peaje "Turbaco", pues, no se evidenció en el proceso que esa infraestructura perjudicó a otros predios colindantes

d) Aunque, la construcción de la señalada área de peaje como también de las mencionadas obras civiles fue llevada a cabo por la sociedad Autopistas del Sol SAS en desarrollo del referido contrato de concesión vial "Ruta Caribe" y sus anexos respectivos, suscrito con el Instituto Nacional de Concesiones - INCO- hoy Agencia Nacional de Infraestructura (ANI), dicha entidad pública era la directora y propietaria de dicha obra como de la infraestructura de transporte requerida para el desarrollo del objeto contractual, competencias que actualmente se encuentran a cargo de la ANI de conformidad con lo regulado en el Decreto 4165 de 2011 que transformó la naturaleza jurídica de la referida entidad.

3) Desde esa perspectiva probatoria, no cabe duda para la Sala que la instalación y la construcción de la estación de peaje de "Turbaco" lo mismo que para las obras que finalmente se realizaron frente al predio de la parte actora, obedece a una actuación legitima de la Agencia Nacional de Infraestructura (ANI) (antes Instituto Nacional de Concesiones -INCO-), toda vez que, dichas actividades tienen fundamento en el ordenamiento jurídico y en el contrato de concesión del proyecto vial "Ruta Caribe" suscrito en su momento entre las partes demandadas, sin que se haya formulado ningún reproche de ilegalidad respecto de dicho contrato ni de la adopción y ejecución del respectivo proyecto vial y/o su componente atinente a la construcción de la infraestructura del mencionado punto de peaje.

Sin embargo, tampoco se desconoce que las obras civiles que se edificaron contiguas al referido inmueble quebrantaron el principio de igualdad ante las cargas públicas que deben soportar los administrados, pues, se acreditó en el proceso que a diferencia de los predios vecinos, el fundo de la parte demandante fue el único que resultó afectado con dichas construcciones en la medida en que se edificaron en el frente del predio, con lo cual se advierte que se le causó a la sociedad demandante un daño anormal, especial y grave que

no estaba obligado a soportar, pues, el predio sufrió un desmedro en su valor comercial, en la medida en que, se obstaculizó su acceso vehicular, su vista panorámica y las posibilidades de explotación económica.

4) Lo expuesto le permite concluir a la Sala que se verifican los presupuestos jurisprudenciales para predicar que la Agencia Nacional de Infraestructura es la única responsable del perjuicio causado a la parte actora a título de daño especial, toda vez que, se demostró que las obras de construcción del mencionado peaje se desplegaron en desarrollo de un contrato estatal de concesión, empero causaron un menoscabo anormal, grave y especial a la sociedad demandante quien no tenía el deber jurídico de soportarlo.

5) En ese orden de ideas, no cabe duda que la Agencia Nacional de Infraestructura si se encuentran legitimada en la causa por pasiva para responder patrimonial y extracontractualmente por el daño reclamado, pues, por ministerio legal y contractual, la ANI era la propietaria de la obra y ostentaba la administración del referido contrato de concesión como de la infraestructura de transporte vinculada a ese acuerdo de voluntades así como su vigilancia y control (Decretos 1800 de 2003 y 4165 de 2011).

No obstante, la entidad demandada "Autopistas del Sol SAS no es responsable del daño reclamado, porque, pese a que fue la encargada de construir la estación de peaje como las obras civiles lindantes con el predio de la parte actora, se advierte que dichas edificaciones se ejecutaron en el marco del pluricitado contrato de concesión; es decir, no se evidenció en el proceso que la concesionaria obró con culpa o que construyó esa infraestructura al margen de ese acuerdo de voluntades o que las obras corresponden a una ejecución unilateral o por cuenta y riesgo de la referida empresa.

Adicionalmente, tampoco se probó en el proceso que Autopistas del Sol SAS realizó esas construcciones por fuera de los diseños y especificaciones previstas en el mencionado contrato, anexos, apéndices y pliego de condiciones, de suerte que se pueda inferirse que en la ejecución de esa obra civil el proceder de esa empresa fue arbitrario, irrazonable o

antitécnico que hubiese desentendido o trastocado las directrices y especificaciones técnicas o, de alguna manera que la ejecución de los trabajos no correspondiese a lo puntualmente pactado en el contrato de concesión; de igual manera, no se acreditó que dicha empresa hubiese utilizado materiales, equipos o elementos no previstos en el contrato o que lo hiciese de manera irregular y defectuosa, pues, se reitera no se demostró que esa Autopistas del Sol SAS irrespetó los parámetros técnicos y constructivos previstos en el referido acuerdo de voluntades, documentos anexos y pliego de condiciones, cuya vigilancia y control estaba a cargo de la entidad pública contratante, razón por la cual la concesionaria no debe reparar el daño reclamado.

Por lo tanto, estima la Sala que la Agencia Nacional de Infraestructura (ANI)debe indemnizar el daño causado en su condición de directora, propietaria de la mencionada obra pública y administradora de la infraestructura de transporte vinculada al proyecto vial "Ruta Caribe", sumado al hecho de que en desarrollo de sus funciones de vigilancia y control no objetó ni puso en cuestión la ejecución y construcción de la estación de peaje "Turbaco" realizadas por Autopistas del Sol SAS, con lo cual se evidencia que esas edificaciones no desatendieron las obligaciones contractuales ni los diseños técnicos previstos para el efecto.

6) De otro lado, es preciso destacar que la parte actora no cuestiona ni pide perjuicios por la instalación del peaje de "Turbaco" en el sitio que determinó el Ministerio de Transporte mediante acto administrativo (cláusula 17.3 del contrato), sino que, por el contrario, reclama por los daños que se le ocasionaron con aludidas obras civiles que se realizaron frente a su predio y limitaron sus derechos, razón por la cual, tampoco es admisible el argumento de las entidades apelantes en cuanto sostiene que el Ministerio de Transporte es el responsable de los perjuicios reclamados por haber dispuesto la instalación del peaje en el referido punto geográfico, según lo ordenado en la Resolución no. 004336 de 28 de septiembre de 2006.

Sobre ese aspecto, reitera la Sala que no se acreditó en el proceso que el referido ministerio fue quien dispuso o determinó que las mencionadas obras civiles se construyeran contiguas al inmueble de la parte actora, sino

que, por el contrario, estas fueron ejecutadas por el concesionario con la vigilancia y control de la Agencia Nacional de Infraestructura en desarrollo del contrato de concesión "Ruta Caribe", por lo cual no es cierto que el acto administrativo que dispuso la instalación del peaje "Turbaco" constituye la fuente del daño que reclama la sociedad demandante.

8) Por otra parte, las entidades cuestionan en sus recursos el dictamen pericial rendido por el señor Jesús Cantillo Puerta, porque no sustentó técnicamente su conclusión de que el predio de la parte actora se desvalorizo en el 45% de su valor comercial con ocasión de las obras que se realizaron en la construcción del área de peaje "Turbaco".

Sobre este punto de la controversia, lo primero que debe advertirse es que, por sustracción de materia, no hay lugar a examinar y decidir de fondo la impugnación que sobre ese aspecto hace la sociedad concesionaria por la sencilla y suficiente razón de que fue absuelta de responsabilidad patrimonial; por consiguiente, sobre este especifico punto de la litis, esto es, la supuesta ausencia de fundamentos técnicos que fundamenten el dictamen pericial elaborado para determinar el monto de los perjuicios sufridos por la parte actora, tan solo hay lugar para estudiar los reparos de formulados por la Agencia Nacional de Infraestructura (ANI) por ser el único sujeto procesal al que se lo declara responsable patrimonialmente.

En ese sentido, no le asiste razón a la Agencia Nacional de Infraestructura (ANI) en cuanto a este punto de la impugnación, por cuanto, del análisis integral de esa prueba, la Sala encuentra que el perito utilizó como referencia para establecer ese porcentaje de desvalorización el avalúo comercial del lote no. 1 realizado el 16 de marzo de 2011 por el señor Carlos Vélez Paz de la Lonja de Propiedad Raíz de Cartagena y Bolívar, el cual estimó que para esa fecha el valor comercial de dicho predio ascendía a $437.520.000, toda vez, que auxiliar de la justicia no fue designado para realizar el referido avalúo, razón por la cual se fundamentó en la valuación que realizó dicha entidad.

Por tanto, con base en ese avalúo el perito Jesús Cantillo Puerta concluyó que las obras realizadas en el frente del inmueble por las entidades demandadas

impidieron el acceso vehicular, obstaculizaron la vista panorámica y limitaron las posibilidades de explotación comercial de ese lote de terreno, por lo cual este se desvalorizó en el 45% del referido avalúo comercial equivalente a $196.884.000.

Desde esa perspectiva, la Sala considera que no le asiste razón a la ANI en cuanto considera que el perito no justificó técnicamente el porcentaje de depreciación del referido inmueble, pues, aunque los recursos de apelación echan de menos la metodología que se utilizó para establecer dicho monto o los soportes probatorios de dicha conclusión, se observa que la pericia si utilizó elementos objetivos y razonables para establecer la desvalorización del valor comercial del inmueble de la sociedad demandante, habida cuenta que, en el dictamen y en sus sustentación se explica y fundamenta dicha depreciación a partir precisamente de las limitaciones que las mencionadas obras civiles le ocasionaron al predio, tales como obstruir el acceso de vehículos por elevar el nivel del suelo, afectar su vista panorámica y sus posibilidades de desarrollo comercial, lo cual, sin duda, constituyen razones atendibles para darle validez a la prueba pericial realizada por el señor Jesús Cantillo Puerta.

9) De otra parte, la Agencia Nacional de Infraestructura (ANI) sostiene en la apelación que, de mantenerse la decisión de declararla responsable patrimonialmente por los daños reclamados, la aseguradora llamada en garantía QBE Seguros SA está obligada a pagar la condena impuesta en primera instancia.

En ese sentido, advierte la Sala que obra en el expediente el contrato de seguro no. 120100001155 de responsabilidad civil extracontractual suscrito entre el entonces INCO y QBE Seguros SA, vigente entre el 25 de agosto de 2009 y el 7 de octubre de 2011 y por un valor de $1.000.000.000, mediante el cual dicha compañía se obliga a indemnizar los perjuicios que cause el asegurado, entre otros conceptos, por el deterioro o destrucción de bienes de acuerdo con los términos y condiciones establecidas en la póliza.

No obstante, de la revisión de ese contrato de seguro encuentra la Sala que los perjuicios reclamados no se encuentran cubiertos por la respectiva póliza

de seguros, pues, el daño especial causado con la construcción de las obras del peaje "Turbaco no es un riesgo asegurado por la póliza.

Por consiguiente, QBE Seguros o quien la reemplace o sustituya no debe pagar la suma que fue impuesta a la Agencia Nacional de Infraestructura – ANI- en esta providencia.

10) Finalmente, en el caso, de la aseguradora Segurexpo SA, entidad llamada en garantía por Autopistas del Sol SA, por sustracción de materia, no hay lugar a pronunciarse sobre si debe o no pagar la condena, toda vez que, la Sala encontró acreditado que la empresa concesionaria no debe responder por los perjuicios causados.

11) Por último, la sala actualizará la condena impuesta a la parte actora en la primera instancia en la que se estableció que el valor de depreciación del predio en el 45% de su valor comercial equivale a la suma de $196.884.000 pesos, por tanto, el valor actualizado de la condena a la fecha de esta providencia a cargo de la Agencia Nacional de Infraestructura (ANI) asciende a la suma de $ 362.052.429[10] pesos.

## 5. Conclusión

La Sala modificará la sentencia apelada en los términos descritos en esta providencia, toda vez que, se demostró que la Agencia Nacional de Infraestructura es patrimonial y extracontractualmente responsable a título de daño especial por los perjuicios causado a la parte actora, en la medida en que, con las obras que se realizaron en el frente del predio de la parte actora con motivo de la construcción del peaje "Turbaco" se disminuyó el valor comercial de esa propiedad; se absuelve a Autopistas del Sol SAS; se condena en costas a la ANI y, por último se confirma en todo lo demás el fallo de primera instancia.

---

[10] La actualización se realiza con fundamento en la siguiente fórmula:

Ra = Rh (196.884.000) 143.38 índice final de julio de 2024 (fallo de segunda instancia)
                     77.97 índice inicial septiembre de 2012 (fallo de primera instancia)
Ra = $ 362.052.429

En cuanto a las dos entidades aseguradoras llamadas en garantía no hay merito para proferir condena en su contra, como en su momento lo dispuso el *a quo*.

## 6. Condena en costas

En los términos de los artículos 188 del CPACA y 365 (numeral 3) del CGP, como se desestimó el recurso de apelación de la Agencia Nacional de Infraestructura (ANI), esta asumirá las costas procesales de la segunda instancia, las cuales deberán ser liquidadas en forma concentrada por el tribunal de primera instancia, incluidas las agencias en derecho, de conformidad con lo dispuesto en los artículos 365 y 366 del CGP.

En mérito de lo expuesto, **EL CONSEJO DE ESTADO, SALA DE LO CONTENCIOSO ADMINISTRATIVO, SECCIÓN TERCERA, SUBSECCIÓN B** administrando justicia en nombre de la República y por autoridad de la ley,

## F A L L A :

**1º) Modifícase** la sentencia de 19 de noviembre de 2021 proferida por el Tribunal Administrativo de Bolívar, la cual queda así:

> ***"PRIMERO: Declárase*** *la responsabilidad patrimonial extracontractual de la Agencia Nacional de Infraestructura (ANI) por el daño especial causado a la Sociedad Alvis Yepes SAS consistente en la depreciación del valor comercial del lote no. 1 localizado en el municipio de Turbaco en la carretera troncal de occidente entre la ciudad de Cartagena y Turbaco (Bolívar), como consecuencia de la construcción de unas obras en el frente de dicho terreno con ocasión de la instalación y edificación del peaje "Turbaco" en dicho sector en desarrollo del contrato de concesión no. 008 de 2007, proyecto vía "Ruta del Sol".*
>
> ***SEGUNDO: Condénase*** *a la Agencia Nacional de Infraestructura (ANI) a pagar a la sociedad Alvis Yepes SAS la suma de TRESCIENTOS SESENTA Y DOS MILLONES CINCUENTA Y DOS MIL CUATROCIENTOS VEINTINUEVE PESOS($362.052. 429,oo), valor que deberá ser actualizado conforme al inciso final del artículo 187 del CPACA.*
>
> ***TERCERO: absuélvase*** *a la empresa Autopistas del Sol SAS" y a las aseguradoras QBE Seguros SA, o quien la sustituya o haga sus veces, y a Segurexpo SA Aseguradora de Crédito y del Comercio Exterior SA, o quien la sustituya o haga sus veces.*
>
> *"****CUARTO: Niéganse*** *las demás pretensiones de la demanda."*

*Expediente: 13001-23-33-000-2013-00652-03 (68.833)*
*Actor: Alvis Yepes SAS*
*Reparación directa*
*Apelación sentencia*

**2°) Confírmase** en todo lo demás la sentencia apelada.

**3º) Condénase** en costas en derecho de la segunda instancia a la Agencia Nacional de Infraestructura –ANI- incluidas las agencias en derecho, **tásense** de manera concentrada por el tribunal de primera instancia.

**4º)** Ejecutoriada esta providencia, por secretaría **devuélvase** el expediente al tribunal de origen previas las respectivas constancias secretariales.

**NOTIFÍQUESE Y CÚMPLASE**

**ALBERTO MONTAÑA PLATA**
**Magistrado**
**(Firmado electrónicamente)**
**Aclara voto**

**FREDY IBARRA MARTÍNEZ**           **MARTÍN BERMÚDEZ MUÑOZ**
**Magistrado**                                     **Magistrado**
**(Firmado electrónicamente)**          **(Firmado Electrónicamente)**
                                                           **Salva voto**

*CONSTANCIA: la presente providencia fue firmada electrónicamente por el Magistrado Ponente de la Subsección B de la Sección Tercera del Consejo de Estado en la plataforma digital SAMAI, en consecuencia, se garantiza la autenticidad, integridad, conservación y posterior consulta de conformidad con los artículos 1 y 2 de la Ley 2213 de 2022.*

# English Translation
# of Exhibit 22

**REPUBLIC OF COLOMBIA**



**COUNCIL OF STATE**
**ADMINISTRATIVE LITIGATION CHAMBER**
**SECTION THIRD – SUBSECTION B**

Bogotá DC, August two (2) of two thousand twenty-four (2024)

**Reporting Judge: Fredy Ibarra Martinez**
**Filing:** 13001-23-33-000-2013-00652-03 (68.833)

|  |  |
|---|---|
|  | **ALVIS YEPES SAS** |
| **Plaintiff: Defendants:** | **NATIONAL INFRASTRUCTURE AGENCY - ANI- AND HIGHWAYS OF THE SUN SA** |
| **Action:** | **DIRECT REPAIR** |
| **Affair:** | **APPEAL OF JUDGMENT – DEPRECIATION AND OBSTRUCTION OF A PROPERTY DUE TO CIVIL WORKS FOR THE CONSTRUCTION OF A TOLL** |

*Summary of the case:* the plaintiff claims compensation for damages for the construction of civil works in front of its property on the occasion of the installation of the "Turbaco" toll on the western trunk highway between the city of Cartagena and the municipality of Turbaco (Bolívar), in events that occurred in August 2010; according to the lawsuit, these buildings devalued the commercial value of the aforementioned property because vehicular access was impeded, the panoramic view was obstructed, and the economic exploitation of said land was hindered.

The Court decides the appeals filed by the parties

defendants (Samai – index 02, ed 13 and ed 14) against the judgment

issued on November 19, 2021 by the Administrative Court of Bolívar

(Samai – index 02, ed. 11) which provided:

> *"**FIRST: DECLARE** that the NATIONAL INFRASTRUCTURE AGENCY – ANI and the company AUTOPISTAS DEL SOL SA, are jointly, administratively and patrimonially responsible for the unlawful damage caused to the plaintiff, Company ALVIS YEPES SAS, for the damages derived from the construction of the toll located in Section No. 1 Cartagena – Turbaco – Arjona, in front of the property owned by the plaintiff, within the framework of Concession Contract No. 008 of 2007, causing the devaluation of the same by 45% of its commercial appraisal; in accordance with what is set forth in the motivational part of this ruling.*

**SECOND: TO** *jointly and severally order the NATIONAL INFRASTRUCTURE AGENCY – ANI and the company AUTOPISTAS DEL SOL SA, as Material Damages, to pay the sum of ONE HUNDRED NINETY-SIX MILLION EIGHT HUNDRED EIGHTY-FOUR THOUSAND PESOS ($196,884,000), a value that must be updated in accordance with the final paragraph of article 187 of the CPACA.*

**THIRD: DENY** *the claims of the lawsuit against the insured parties QBE SEGUROS SA and SEGUREXPO SA, as collateral; and likewise* **DENY** *the other claims of the lawsuit, as set forth in the grounds of this ruling.*

**FOURTH: DO NOT AWARD** *costs.*

**FIFTH: COMPLY with** *this sentence in accordance with the provisions of article 192 of the CPACA.*

**SIXTH:** *Once this sentence becomes final,* **FILE** *the file, after returning any remaining balance, if any. the claims of the lawsuit against the insured parties QBE SEGUROS SA and SEGUREXPO SA, as collateral; and likewise DENY the other claims of the lawsuit; as set forth in the grounds of this ruling. (Samai – index 02, ed. 11, bold and sustained capital letters of the original text).*

# I. BACKGROUND

## 1. The demand1

By means of a document submitted on September 13, 2012 (fl. 14 – Samai – index 02, ed. 01), the company Alvis Yepes SAS filed a lawsuit direct redress against the National Infrastructure Agency – ANI and the company Autopistas del Sol SA2 (fls. 1 to 15 – Samai – index 02, ed. 01) with the following claims:

*"FIRST: Declare administratively and extracontractually responsible to the NATIONAL INFRASTRUCTURE AGENCY, a decentralized Institute of public law, of a National character, for the damages caused as a consequence of the construction of civil works in the front part where a property identified with real estate registration No. 12997 of the Office of*

---

1 On May 2, 2014, the plaintiff filed an amendment to the complaint in which he submitted and requested the decree and practice of new evidence, which was admitted on September 9, 2014 by the Administrative Court of Bolívar (fls. 547 to 581, 583 to 587 – Samai -index 02, ed. 3).

2 According to the certificate of existence and representation of March 2, 2017 from the Chamber of Commerce of Bogotá, on April 19, 2015, said company was transformed into Autopistas del Sol SAS (fls. 855 to 859 and 863 to 869 – Samai – index 02, ed. 05).

*Registry of public instruments of the city of Cartagena de Indias owned by the plaintiff company.*

**SECOND:** *That the patrimonial responsibility be declared and administrative and jointly condemn the **NATIONAL INFRASTRUCTURE AGENCY and the company AUTOPISTAS DEL SOL SA,** to pay in favor of the company **ALVIS YEPES SAS.,** the damages caused in the amount indicated according to the damages calculated by the expert in Colombian pesos, sums duly indexed, plus late payment interest until the damages are actually paid to my representative.*

**THIRD:** *Condemn the **NATIONAL AGENCY OF INFRAESTRUCTURA** and the company **AUTOPISTAS DEL SOL** SA, to pay the sentences indicated, duly updated according to the percentage variation of the consumer price index existing between the historical value and the one that exists when the second instance ruling or the order that liquidates the material damages is produced, taking into account the financial mathematics formula accepted by the Honorable Council of State, taking into account the compensation due or consolidated and the future one.*

**FOURTH:** *Condemn the **NATIONAL AGENCY OF INFRAESTRUCTURA** and **AUTOPISTA DEL SOL SA** to pay the costs and damages caused within the judicial process of the reference.*

**<u>CLAIM SUBSIDIARY TO THE SECOND MAIN CLAIM</u>**

*That the **NATIONAL AGENCY** be condemned **INFRAESTRUCTURA** and the company **AUTOPISTAS DEL SOL SA,** to pay in favor of the company **ALVIS YEPES SAS,** the damages materials caused in the sum equivalent to the devaluation of the property subject of the claim, that is, the difference in value resulting between the commercial value it had before the public work in question and the current value as a result of the aforementioned construction, calculated by the designated expert, in Colombian pesos, a sum duly indexed, plus interest*

*of delay until the damages are actually paid to my client."* (fls. 1 to 14 - Samai – index 02, ed. 01 – bold and sustained capital letters of the original text).

As a basis for the claims of the claim, the following were basically narrated: the following facts:

1) The company Alvis Yepes SAS is the owner of an urban property - lot 1 "Parcelaciones Puente Honda" - with a capacity of 7,217 meters, located on the western trunk road between the municipalities of Cartagena de Indias Indias and Turbaco (Bolívar), which was used as a warehouse and for the holding social events.

2) Since August 2010, the Colombian Institute of Concessions

(today the National Infrastructure Agency - ANI) authorized and ordered the

construction of a toll gate adjacent to the plaintiff's property, which

prevented vehicular access, obstructed the panoramic view of the property and the

commercial use of the property that was intended for storage

of materials and the holding of social gatherings; this work was carried out

without obtaining the respective permits nor was it socialized with the

neighbors of the sector (fls. 2 to 8 – Samai – index 02, ed. 01).

## 2. First instance procedure

1) The claim was admitted on January 20, 2014 by the Court

Administrative of Bolívar, who ordered to personally notify the

legal representatives of the defendant entities, the Public Prosecutor's Office and

to the National Agency for the Legal Defense of the State (fls. 180 to 183 Samai –

index 02, ed. 01).

2) In the response to the claim and its amendment, the National Agency for

Infrastructure (ANI) replicated the facts, opposed the pleas; proposed the

exceptions of *"lack of legitimacy in the cause due to passive"* and *"the generic";*

As reasons for the defense, he argued, in summary, *i)* the plaintiff did not demonstrate

that the damage claimed exceeded public charges, *ii)* it was not proven either

the existence of a causal link between that damage and the construction of the toll, *iii)* the

ANI cannot jointly assume the responsibility that may eventually be incurred.

may correspond to the concessionaire Autopistas del Sol SA, since

This company was responsible for installing and operating the toll stations of the

"Ruta Caribe" road project under concession contract no. 008 of

2007 and, *iv)* the plaintiff failed to prove the damages claimed, for which reason

rejects the settlement submitted by the plaintiff. Finally, in a separate document, ANI

called QBE Seguros3 as guarantor (pages 191 to 237 and 599 to 607 - Samai – index

02, ed. 01, 02, 03 and 04).

.

---

3 On May 16, 2016, the Third Section – Subsection B of the Council of State revoked the sixth
paragraph of the operative part of the order of December 5, 2014 issued by the
Administrative Court of Bolívar that denied the aforementioned call for guarantee from QBE
Seguros and, instead, ordered its acceptance (fls. 780 to 785 and 788 to 789 – Samaí – index
02, ed. 04).

3) For its part, in the response to the claim and its amendment, Autopistas del

Sol SA also opposed the claims; it refuted the facts and proposed the following:

exceptions of *"lack of legitimacy in the cause by active"*, *"lack of legitimacy in the*

*cause by passive based on the fact that if it were appropriate*

*the conviction, the National Institute of Concessions should be condemned,*

*today National Infrastructure Agency" (sic)*, *"not having complied*

*duly with the requirement of admissibility"*, *"legal persons are not*

*susceptible to moral damage"*, *"nonexistence of obligation"*, *"absence of*

*causal link"*, *"need for proof"*, *"exception corresponding to the burden*

*of the evidence"*, *"prevalence of the general interest over the particular"*, *"of*

*a special damage is configured, a single individual cannot restore the*

*balance of public burdens"*, *"absence of obligation to compensate"*,

*"absence of special damage";* the *"generic exception"* and, as reasons for the

The defense basically argued that the damage claimed was not proven.

nor the causal link (fls. 302 to 312 – Samai – index 02, ed. 02).


Subsequently, said company completed the response to the claim.

in which he alluded to the fact that the establishment of tolls had a legal basis since

The amendment to the claim was untimely; finally, in a separate document, he called

the company Segurexpo de Colombia SA4 as guarantor (pages 527 to 528,

637 to 645 and 738 to 742 – Samai – index 02, ed. 03 and 04).


4) In the response to the claim and the call for guarantee, the

QBE Seguros SA company opposed the claims; refuted the facts and

proposed in his order the exceptions of *"lack of legitimacy in the cause for*

*active"*, *lack of legitimacy in the cause due to passive, based on the*

*probable conviction"*, *"absence of obligation"*, *burden of proof"*,

*"prevalence of the general interest"*, *"lack of coverage of the insurance policy"*

*civil liability issued by QBE Seguros SA"*, *"nonexistence of*

*responsibility of the ANI, budget necessary for the allocation*

*of policy no. 120100001155 issued by QBE Seguros SA"*, *"operation in*

*excess of policy no. 120100001155" (sic)* and *"limits of liability of*

*the insurance company"* and finally argued that the ANI is not

responsible for the construction of the toll, there is no proof of damage or

---

On December 5 , 2016, the Administrative Court of Bolívar admitted the guarantee claim of the company Segurexpo de Colombia SA (fls. 743 to 745 – Samai – index 02, ed. 04).

*File: 13001-23-33-000-2013-00652-03 (68,833)*
*Actor: Alvis Yepes SAS*
*Direct repair*
*Appeal of the sentence*

causal link and that the insurer's liability has a limit

quantitative that must be respected in the event of a conviction (fls. 816 to 828 and 829

a 847 – Samai – index 02, ed. 05).

5) For its part, in the response to the claim and the call in

guarantee, the company Segurexpo de Colombia SA opposed the

claims; refuted the facts; proposed the corresponding exceptions

of *"lack of legitimacy in the cause by active", "nonexistence of the obligation,*

*"nonexistence of the structuring elements of responsibility,*

*lack of proof of damages", "prevalence of the general interest over*

*the individual" "nonexistence of the obligation to compensate – absence of evidence*

*of the occurrence of the accident and the amount of the loss", application of the*

*special and general conditions governing the insurance contract", "limit of*

*the insurer's liability", "application of the deductible"; "the generic"* and,

Finally, he argued, in summary, that Segurexpo SA had no obligation

compensation because the realization of the risk and the amount of the damage were not proven

damage suffered by the plaintiff (fls. 909 to 927 – Samai – index 02, ed. 05).

6) The National Agency for the Legal Defense of the State remained silent.

7) By means of a memorial dated November 21, 2018, the plaintiff put in

the court is aware that in addition to the damages caused by the

construction of the Turbaco toll, a bathroom was built adjacent to the

entrance to your property that affects the panoramic view and its value (fls. 994

a 996 – Samai – index 02, ed. 05).

8) On 21 February 2018 and 16 May 2019, the Court

Administrative Court of Bolívar held the initial hearing in which it declared no

the exceptions of lack of legitimacy in the cause have been proven by active and

undue exhaustion of the requirement of extrajudicial conciliation5 proposed by

Autopistas del Sol SA and QBE Seguros SA; established the subject matter of the litigation; decreed the

evidence provided and requested by the parties and the entities called and, gave

Transfer of the expert opinions submitted by the plaintiff (page 983)

---

5 On February 14, 2019, the Third Section – Subsection B of the Council of State confirmed the decision of the court that declared unproven the exception of improper exhaustion of the conciliation requirement formulated by the company Autopistas del Sol SA (fls. 1003 to 1007 – Samai – index 01).

a 987 – Samai – index 02, ed. 05); the hearing was held on July 3, 2019

of evidence in which the testimonial evidence was practiced and incorporated,

expert and documentary reports ordered to the parties and the entities called

under warranty (pages 1018 to 1024 – Samai – index 02, ed. 05); September 9

In 2019, a transfer was made to allege the conclusion and to the Public Prosecutor's Office.

to issue a concept (fls. 1069 to 1070 – Samai – index 02, ed.05); the

The parties and the entities called as guarantors reiterated in their allegations the

arguments set forth in the complaint and the respective replies, the

Tax collaborator did not render a concept (fls.1073 to 1130 – Samai – index 02, ed.

05).

### 3. The contested judgment

On November 19, 2021, the Administrative Court of Bolívar declared the

non-contractual liability of the National Agency for

Infrastructure (ANI) and the company Autopistas del Sol SA for the damage

caused to the plaintiff by the construction of the toll booth in front of his property

Cartagena – Turbaco – Arjona (Bolívar) within the framework of the concession contract

No. 008 of 2007; consequently, it condemned them jointly and severally to pay

the plaintiff the sum of $196,884,000 pesos; she acquitted the entities called

under warranty; denied the other claims of the complaint and, finally, did not condemn

in costs to the defendant entities due to the partial success of the

demand. The reasons for the decision were as follows:

Documentary, testimonial and expert evidence demonstrates that in

In the development of the aforementioned concession contract, a toll booth[6] was built in

front of the plaintiff's property located on the Cartagena – Turbaco – Arjona road.

(Bolívar), which generated a 45% devaluation of the commercial value of the

property since vehicular access was prevented due to the lifting of the

floor level, its two-way panoramic view and its exploitation were limited

economic; consequently, said construction caused exceptional damage

to the plaintiff company that exceeds public charges, reason for which,

by virtue of the rule of solidarity provided for in article 2344 of the Civil Code,

---

6 The aforementioned toll area consists of eight (8) toll booths that occupy the two lanes of the road with an area of 2,345.25 m2 ; a two (2) story administrative building that covers an area of 93.125 m2, located in the left side right-of-way area and a bathroom for disabled people with a capacity of 5.13 m2 located in the left side right-of-way sector.

the National Infrastructure Agency, as owner of this public work,

and the company Autopistas del Sol SA, in its capacity as executor, must

compensate the plaintiff in equal parts; however, in accordance with the

provided in articles 1045 and 1054 of the Commercial Code, companies

QBE Seguros SA and Segurexpo de Colombia SA are not called to repair

the damages claimed, since the declared liability was not

product of a failure in the execution of the concession contract or the

previous studies and designs or external facts attributable to the

insurers but, due to special damage suffered by the company Alvis

Yepes SAS.

Finally, based on the expert opinions, the court only

compensated for the 45% devaluation of the commercial appraisal of the property

equivalent to $196,884,000 pesos, given that this value amounted to

$437,520,000.00; however, it did not recognize damages for commercial exploitation

of the property because they were not accredited in the process (Samai – index 02, ed. 11).

## 4. Appeals

### 1. The National Infrastructure Agency (ANI)

Requests that the first instance judgment be revoked for the following reasons:

reasons: *i)* by Resolution 4336 of September 28, 2006,

The Ministry of Transport authorized the installation of the "Turbaco" toll, which was

published on that same date; consequently, as the claim is

presented in 2013, that is, outside the two (2) year period

counted from the publication of the aforementioned decision, the

expiration of the means of direct repair control; *ii)* the plaintiff failed

demonstrate the violation of the company's property rights

The plaintiff did not prove that the construction of the toll entailed the

suppression of the economic exploitation of the property; *iii)* although the court

found that the toll obstructed the panoramic view of the land and prevented the

vehicular access due to the raising of the ground level, said effects

are not technically supported by the expert evidence provided;

*iv)* the judgment failed to assess the degree of ANI's participation in the

production of damage as established in article 140 of the CPACA, plus

even though the construction of the toll was carried out by the concessionaire and, *v)*
If the sentence is confirmed, the call for guarantee is appropriate.
QBE Seguros SA (today Zurich Seguros SA), due to the coverage of the policy
It also covers any damages that third parties may incur.
indeterminate (Samai – index 02, ed. 14).

### 4.2 Autopistas del Sol SAS (formerly Autopistas del Sol SA)

For its part, it also requests that the first instance ruling be revoked or, in
failing that, that the exceptions proposed by
Segurexpo SA and also order it to compensate for damages
corresponding because they are covered by the policy taken with
This entity (formerly Autopistas del Sol SA), the reasons are the following: *i)* the
The plaintiff did not demonstrate that the damage assumptions were met
special; *ii)* the source of the damage does not come from the construction of the toll but from
Resolution No. 4336 of September 28, 2006, issued by the Ministry
of Transport that ordered its installation, which was not controversial by the
plaintiff nor claimed ignorance; *iii)* the means of control of
repair is expired, because the claim was filed two (2)
years after the publication of Resolution No. 4336 of December 28
of 2006; *iv)* despite the fact that the ruling concluded that there was a devaluation
45% of the commercial value of the property based on the expert opinion rendered
by the civil engineer Jesús Cantillo Puerta, said estimate is not
technically supported; *v)* the concessionaire is responsible for the risks
construction of the toll, but not for damages resulting from the installation
toll, which was ordered by the aforementioned administrative act and which was
issued prior to the signing of the concession contract (Samai –
index 02- ed. 13).

### 5. Action taken in the second instance

On October 11, 2022, the appeal filed by
the defendants (Samai – index 04); likewise, as it is not
They did not order or request evidence within the term of the execution of the order
admissible, no transfer was made to allege conclusion in accordance with

as provided for in Article 247 of the CPACA; the Public Prosecutor's Office did not render concept (Samai – index 10).

## II. COURT CONSIDERATIONS

Once the procedural process has been completed, there being no cause for nullity that invalidate the proceedings, the Court proceeds to resolve the matter submitted to consideration with the following path: 1) expiration of the control medium judicial, 2) object of the controversy and announcement of the decision, 3) facts proven, 4) analysis of the appeal, 5) conclusion and, 6) award of costs.

### 1. Expiration of the means of judicial control

1) The appellants maintain that the expiration of the means of judicial control of direct redress provided for in article 164 i) of the CPACA, since the lawsuit was filed two (2) years after the Publication of Resolution No. 004336 of September 28, 2006 through which the Ministry of Transportation ordered the National Institute of Via the installation of the "Turbaco" Toll Station located on PR 96 + 500 between the city of Cartagena and the Municipality of Turbaco (Bolívar); therefore, As said administrative act was published on September 28, 2006, the part The plaintiff could sue until September 29, 2008, however, filed the lawsuit late, that is, in September 2013.

2) The Court does not share the argument of the appellant entities and considers, On the contrary, in the present case the expiration of the medium has not occurred of direct repair control, because, the legal period of two (2) years that the plaintiff has to go to this jurisdiction cannot be counted from the date of publication of the administrative act that ordered that INVIAS install the aforementioned toll in the aforementioned sector, but, In principle, this term must be computed from the date of termination of the civil works that were built for the construction of the "Turbaco" toll station adjacent to the plaintiff's property in development of the Concession contract no. 008 of July 27, 2007 - road project "Route Caribbean"-, which, according to the lawsuit, constitute the source of the damage claimed, therefore, it is from that moment and not before when those affected

They are effectively aware of the occurrence of the damage caused to their property.

The claim does not question the illegality of the aforementioned administrative act, that is not It was the cause of the damage whose claim is being made with that one.

3) In that sense, although on this occasion it is unknown for certain in What date was the construction of the aforementioned civil works completed in the libel? introductory statement states that these began in August 2010, so that even if the expiration term were counted from the beginning of the referred to constructions, it is evident that the plaintiff sued within the cited legal term.

Indeed, it is observed that the plaintiff company exhausted the requirement of procedurality on May 11, 2012, thereby interrupting the term of expiration for 75 days whose computation was resumed on July 27, 2012 then from the issuance of the certificate of non-conciliation, therefore, the libel introductory document was filed in a timely manner on September 13, 2012; In addition, the evidence gathered in the process shows that these buildings would be built between 2011 and 2012 and the station The "Turbaco" toll began operating in September 2013, meaning that There is doubt that the plaintiff went to court in a timely manner (fls. 14, 19 to 20, 129 to 133 and 372 to 428 – Samai – index 02, ed. 01, 02, 03 and 04).

4) Finally, the Court notes that Resolution No. 004336 of September 28, 2006 by which the Ministry of Transport ordered the installation of the aforementioned toll nor the Interested parties requested the decree of said test in this instance.

**2. Subject of the controversy and announcement of the decision**

In the context of the appeal, it is up to the Court to establish whether The defendant entities and those called in guarantee must compensate the damages claimed for the civil works carried out on the front of the property of the plaintiff on the occasion of the construction of the "Turbaco" toll, which was It is located on the western trunk road in the municipality of

Turbaco (Bolívar) adjacent to the aforementioned property; according to the lawsuit, said infrastructure devalued the commercial value of the property.

The Court will modify the appealed judgment by *i)* declaring only the non-contractual liability of the National Agency for Infrastructure (ANI) for special damages due to depreciation of the commercial value of the property of the plaintiff at 45% of its commercial appraisal due to the construction of the "Turbaco" toll; *ii)* ordering, consequently, the National Infrastructure Agency (ANI) to pay the plaintiff for this purpose the sum of $196,884,000, value that later will be updated to the date of this ruling; *iii)* absolve the company Autopistas del Sol SAS and the entities called as guarantors and *iv)* order the National Infrastructure Agency – ANI-. to pay the costs of the appeal

The basis for these decisions is that it was demonstrated in the proceedings that, within the framework of concession contract no. 008 of July 27, 2007, for the "Ruta Caribe" highway project, signed between the defendant entities, the concessionaire Autopistas del Sol SAS built civil works in front of the the plaintiff's property during the construction of the "Turbaco" toll booth, which caused the plaintiff company special, abnormal and serious  damage that violated the equity of the public burdens that the public entities must bear, the extent that the infrastructure depreciated the commercial value of said property; however, the liability will be declared solely that of the National Infrastructure Agency (ANI), since this entity is the director and owner of the public works in accordance with with the provisions of Decree 4165 of 2011 and the aforementioned concession contract, therefore, the company Autopistas del Sol SAS, in its capacity as the concessionaire, limited itself solely to constructing said infrastructure in accordance with the designs and technical specifications provided for in the contractual stipulations without, in addition, having been shown in the process to have been at fault in causing the damage or that the buildings ignored these construction parameters; likewise, the insurer QBE Seguros SA, called as a guarantor in this process by the National Agency of Infrastructure -ANI-, should not be liable for the damage claimed, because said risk is not covered by the respective insurance contract.

*File: 13001-23-33-000-2013-00652-03 (68,833)*
*Actor: Alvis Yepes SAS*
*Direct repair*
*Appeal of the sentence*

**3. Proven facts[7]**

In the process the following facts relevant to the case were proven: resolution of this dispute:

1) According to public deed no. 2,485 of December 29, 1999 of the Notary Public of Cartagena and the respective certificate of tradition of 7 September 2012 issued by the Office of the Registry of Instruments Publics of Cartagena, the plaintiff is the owner of the distinguished property as lot no. 1 "Parcelaciones Puente Honda", located on the highway western trunk line in the municipality of Turbaco (Bolívar), which has a surface of 7,217 m2 (fls. 18, 21 to 26, 149 to 151 and 555 to 557 – Samai – index 02, ed. 01 and 03).

2) The National Institute of Concessions -INCO- and Autopistas del Sol SA signed concession contract no. 008 of July 27, 2007 for the execution of the "Ruta Caribe" road project; in clauses 2, 10.24, 11.5, 14, 17, 28.5.1 and 42 stipulated, in their order, that the concessionaire will carry out on its own account and risk the activities relevant to the construction, rehabilitation, operation and maintenance of the aforementioned public road; which is an obligation from the dealer to supply, install and operate the necessary equipment to operate the tolls; the contractor transfers the net resources to the concessionaire and toll collection rights, the proceeds of which constitute the remuneration expected; that the location of the corresponding stations will be as described in the respective resolution issued by the Ministry of Transport; that the The concessionaire is obliged to provide an extracontractual civil liability guarantee during the execution period and three (3) years after the termination of the concession and the installation, operation and construction Tolls must adhere to the technical specifications and the resulting costs. These activities will be at the expense and risk of the concessionaire (fls. 29 to 114 – Samai – index 02, ed. 01).

3) In the commercial appraisal of the plaintiff's property dated March 16, 2011, expert Carlos Vélez Paz of the Cartagena Real Estate Exchange

---

[7] In accordance with the procedural rules and precedents of this Section, the Chamber will assess ~~the photographic material submitted~~ to the proceedings together with the other evidence in the file.

and Bolívar determined *i)* that said property has a capacity of 7,217 m2                    , HE

It is located on the west side of the western trunk road

in the municipality of Turbaco, 4 km from the city of Cartagena (Bolívar) and its

land use corresponds to the semi-urban residential sector; *ii)* that compared to the

The "Turbaco" toll facilities are being built on the aforementioned property; *iii)* that in

The lot has a house in poor condition and a palm kiosk in good condition

conditions; *iii)* that the land is suitable for developing construction projects

and currently has no economic exploitation; the commercial value

The total value of the property, including the house and the kiosk, amounts to

$437,520,000.00 (fls. 119 to 133 – Samai – index 02, ed. 01).


4) At the hearing of evidence, the expert reiterated the conclusions set forth

in the aforementioned expert opinion and in response to the questions that were asked

formulated in said diligence by the procedural subjects responded,

mainly the following *i)* in his capacity as manager of the aforementioned entity

directly carried out the study on the lot owned by the party

plaintiff; *ii)* to estimate the value of the lot, he based himself on the value of the properties

similar ones located in the area of the western trunk road; *iii)* in the

Inspection of the property did not reveal any recreational or activity

commercial; *iv)* the lot was located below the road limit; *v)* the

The property was used for urban expansion; *vi)* in the commercial appraisal of the aforementioned

The property did not take into account the toll works that were being built at that time.

were doing; *vii)* there is no secondary route to access that

property; *viii)* the purpose of the opinion was to carry out the commercial appraisal of the lot without

no limitation; *ix)* the access road was taken into account to assess the property

main road which is the western trunk road and, *x)* emphasized that he did not have

into account the construction of the toll to carry out the aforementioned assessment

commercial of the lot owned by the plaintiff. (Samai – index 02,

ed.22).


5) There are photographic records in the process that correspond

allegedly to the plaintiff's property and to the construction works

of the "Turbaco" toll (fls. 134 to 146 – Samai – index 02, ed. 01), which do not

were not acknowledged by the parties nor crossed out.

6) In an official letter dated January 17, 2011, the Secretary of Planning of Turbaco reported that the construction of the "Turbaco" toll did not have a license construction; on July 16, 2019, that agency stated that the ANI was the competent entity for this purpose (fls. 147 to 148 and 1061 – Samai – index 02, ed. 01 and 05).

7) In the minutes of the meeting of February 23, 2011, March 16, 2011, 1st April 2011, August 8, 2011, December 6, 2011, August 2 of 2013 and 1st and 18th November 2013 it is noted that the dealer Autopistas del Sol SA announced to the authorities of the municipality of Turbaco, social leaders and community members the design, implementation Operation and concerns about the "Turbaco" toll (fls. 372 to 428 – Samai – index 02, ed. 02, 03, 04).

8) In the expert opinion of May 7, 2014, carried out within the process by the expert Jesús Cantillo Puerta in order to assess the damages caused to lot no. 1 owned by the plaintiff by the works of the "Turbaco" toll was completed, fundamentally: *i)* the constructions of the toll covers the entire front of lot no. 1; *ii)* said works consist of a pool septic tank located 1.40m from the front wall of the property, concrete tank drinking water storage located 5m from the front wall of the property, Two (2) story building for toll administration and plant booth electric; *iii)* the built surface of the toll is 10.40m wide by 50.40m long; *iv)* that area has been filled with 1m gravel material high, which has prevented vehicular entry and pedestrian access to said property; *v)* how the toll buildings were built in front of the property the plaintiff's commercial value was reduced, since its panoramic view, its urban potential was affected and the soil was filled in Zahora prevents vehicular access; *vi)* that according to the POT of the municipality of Turbaco, the land use assigned to the property is urban in nature; *vii)* the devaluation of the lot due to the construction of the toll works on the front area of the property is equivalent to a sum equal to 45% of its appraisal commercial when the aforementioned buildings did not exist; *viii)* on 16 In March 2011, the Cartagena Real Estate Exchange assessed the property's market value at $437,520,000; therefore, the aforementioned depreciation percentage corresponds to $196,884,000; *ix)* the property's market value

*File: 13001-23-33-000-2013-00652-03 (68,833)*
*Actor: Alvis Yepes SAS*
*Direct repair*
*Appeal of the sentence*

for the date of the appraisal, once said reduction factor has been subtracted, it is equivalent

$240,636,000; *ix)* the aforementioned works adjacent to the front of the

property forces the plaintiff to pay toll fees when moving

from that place to Cartagena and also frustrate the possibility that in that

land for construction or recreational projects. Finally,

Six (6) photographs were attached to the opinion which, according to the expert, correspond

to the construction area and its distance from the front wall of the property (fls.

566 to 569 – Samai – index 02, ed. 03).


9) In the support of the aforementioned opinion at the evidence hearing, the

The aforementioned expert maintained, mainly, the following: *i)* the damages and

The damages caused to the plaintiff's property are overwhelming and

were determined in the opinion that is in the proceedings; *ii)* in the

Currently, the damage caused to the property can be verified with the

works carried out in the toll area, which cover the entire front of the

mentioned lot; *iii)* a septic tank and a tank were built in that sector

of buried concrete water, a two (2) story building, a booth for

power plant and a compacted gravel fill of one (1) meter in height

which exerts pressure on the wall of the building; *iv)* this filling prevents access

to the property on the aforementioned lot; *v)* said buildings decreased the value

commercial of the property; *vi)* the aforementioned buildings are located at less

two meters from the property and affect its entry and exit and *vii)* finally,

quantified the loss of the commercial value of the property at 45%.


Regarding the questions posed at the hearing by the speakers,

The expert responded, in summary: *i)* that to establish the percentage of

depreciation of 45% of the commercial value of the plaintiff's property

based the commercial appraisal presented in the process by the Property Exchange

Raíz de Cartagena and Bolívar, because it was a prestigious entity and he as

expert was appointed solely to assess the damages of said; *ii)* that

has experience as an appraiser and has no formal studies in

the subject matter; *iii)* that there is no personal, employment or family relationship

with the plaintiff; *iv)* that when he issued the opinion in 2014,

found the works previously mentioned in front of the property; *v)* that

All these buildings are located between the front of the lot and the line of

Completion of the roadway in the Cartagena – Turbaco direction of the highway

western trunk road; *vi)* that the plaintiff's lot has a fence

complete and that the works were built on the withdrawal areas; *vii)* that

To enter the lot, a concrete ramp must be built, but the

vehicle exit is not possible because it is the wrong way; *viii)* that the works

carried out hinder the architectural development of the property; *ix)* that the

buildings were built in front of the lot enclosure; *x)* that due to the

soil filling, it is not possible to enter the property by vehicle or leave

by that means of transport towards the road because the direction of travel

is contrary; *xi)* that the detriment of 45% of the commercial value of the property

is due to the damage caused by the aforementioned constructions; *xii)* that

with the related buildings no setback strip was left; *xiii)* that the

The plaintiffs' land did not benefit from the road but was

damaged by the works that were built in front of it; *xiv)* that for

determining the percentage of 45% decrease in the commercial appraisal was based

in the rights of use of the land and the possibilities of development of the property

and, *xv)* reiterated that he was not asked to carry out a commercial appraisal of the property

but an assessment of the damages and, for this reason, took the assessment

carried out by the Real Estate Exchange of Cartagena and Bolívar (Samai –

index 02, ed. 22).


10) In insurance contract no. 120100001155 of civil liability

extracontractual agreement signed between INCO and QBE Seguros SA, valid between 25

August 2009 and October 7, 2011 and for a value of $1,000,000,000,

The company was obliged to compensate the insured for any damages caused,

among other concepts, for the deterioration or destruction of goods in accordance with

the terms and conditions set forth in the policy (fls. 622 to 636 and 839 to 847

– Samai – index 02, ed. 04, 05).


11) Similarly, in insurance contract no. 133-51077-24-BG (policy

133) of extracontractual civil liability signed between Autopistas del Sol

SA and Segurexpo SA Credit and Foreign Trade Insurance Company SA with

valid from September 3, 2007 to February 27, 2014 and

for an insured value of $4,057,669,441.00 whose beneficiary is the INCO

(ANI), the aforementioned insurance company was obliged to cover the damages

caused to third parties arising from the "Ruta Caribe" concession contract (fls.

598 to 599 and 870 to 884 – Samai – index 02, ed.03 and 05).

*File: 13001-23-33-000-2013-00652-03 (68,833)*
*Actor: Alvis Yepes SAS*
*Direct repair*
<u>*Appeal of the sentence*</u>

12) By letter of May 30, 2019, the Regional Autonomous Corporation of

Canal del Dique reported that through Resolution No. 1165 of June 17,

2010 issued by the then Ministry of Environment, Housing and Development

Territorial, an environmental license and forestry use permit were granted

to the company Autopistas del Sol SA for the construction of the second carriageway

of the Cartagena – Turbaco – Arjona highway, which was ratified by

Official letter dated June 27, 2019 from the National Licensing Authority

Environmental (fls. 1005 to 1006 and 1051 to 1057 – Samai – index 02, ed. 05).

13) On June 5, 2019, the Epsilon Vial Consortium reported that at the toll

"Turbaco" corresponding to the "Ruta Caribe" road concession contract

They built *i)* eight (8) toll booths that occupy the two lanes of the road with an area of

2,345.25 m2 ; *ii)* an administrative building

located in the right-of-way area on the left side with a surface area of

93.125m2 and, *iii)* a bathroom for disabled people located in the right-of-way area on the

left side with an area of 5.13m2 (fls. 1016 to 1017 – Samai – index

02, ed. 05).

14) The witness Elieth Berdugo Flórez is a civil engineer and specialist by profession

In structures he declared, mainly, *i)* that he worked as an engineer of

property management at the company Autopistas del Sol SA between 2011 and

2013 and was then a resident of the work until 2017; *ii)* that the works of

Construction of the "Turbaco" toll took place between 2011 and 2012,

However, they were not carried out on the property of the plaintiff but in the area of

right of way and, in addition, that access to said property was guaranteed; *iii)* that

the land use of the neighbouring lands is rural; *iv)* that for construction

The aforementioned toll did not require a planning license because it was a

national project, in addition, the work was carried out on the strip

of right of way and was authorized by the Ministry of Transport; *v)* that

The buildings are located at a distance of approximately three (3) to

four (4) meters from the wall of the aforementioned property; *vi)* that to build the area

A toll was filled which raised the ground level with respect to the

property of the plaintiff; *vii)* that in front of the aforementioned plot of land,

parked vehicles used in public works; *viii)* that the right of way

There are approximately 11 meters between the edge of the road and the beginning of the

property of the plaintiff and, *ix)* that access to said property was maintained

under conditions similar to those existing before the toll, since, although the

soil filling has an approximate dimension of one (1) meter, it was adapted

the aforementioned entrance for the entry and exit of vehicles to that property.

15) For his part, the declarant Humberto Morales stated, in summary, the

following: *i)* he was a friend of the family that owned the land; *ii)* to said place

used to attend recreational activities; *iii)* the aforementioned lot was used to store

equipment of the engineering company owned by the plaintiff company;

*iii)* due to the fillings made in the access to the property, it cannot be

used for recreational activities or storing materials and, *iv)* buildings

of the toll were carried out between the years 2011 and 2012 and that due to these

During the works, an unevenness in the ground occurred.

## 4. Resource analysis

1) In accordance with Article 90 of the Political Constitution, this

Corporation has peacefully maintained that it can be deduced

extracontractual patrimonial liability of the State for the execution of

lawful activities that are beneficial to the community, such as

example the construction of a public work, provided that it is demonstrated that

This intervention caused special, abnormal and exceptional damage that

It entails the breach of the higher principle of equality of citizens

before public charges, for which reason this damage should not be borne by the

particular affected by being particularly serious.

This Section has held that for special damage to be configured,

the following conditions must be met:

> *a) That a legitimate activity of the administration is carried out;*

> *b) The activity must result in the impairment of a person's right;*

> *c) The impairment of the right must originate from the breach of the principle of equality before the law and public burdens;*

> *d) The breaking of this equality must cause serious and special damage, since it affects only one or some of the Managed;*

*e) There must be a causal link between the legitimate activity of the administration and the damage caused; and*

*f) The specific case cannot be classified within another of the administration's responsibility regimes8 .*

Similarly, the jurisprudence of the Section has reiterated that the damage special *"has been developed from the concept of equality of burdens public burdens on the governed; this implies considering i) that the ordinary or normal charges that apply to all citizens or Specific sectors of them must be assumed as a sacrifice or burden ordinary vis-à-vis the State, but ii) the particular sacrifices to which it is subjected a citizen is liable as a result of a lawful action of the State*

*corresponds to an abnormal situation that deserves to be compensated (…)"9*

2) In accordance with these precedents and based on the facts proven described above, the Court finds demonstrated in the process as follows:

a) In development of concession contract no. 008 of July 27, 2007, "Caribbean Route" road project, signed between the defendant entities built the "Turbaco" toll station located on the main highway of west in the municipality of Turbaco (Bolívar), as a mechanism of remuneration of the concessionaire for the execution of the aforementioned project.

b) In addition, several civil works were carried out in connection with this construction. (septic tank, drinking water storage tank, two (2) building plants for toll administration, booth for power plant and one (1) bathroom for disabled people), which were built on the entire front of lot no. 1 owned by the plaintiff company at a distance of approximately between 3 and 4 meters; however, this infrastructure seriously affected and said property is abnormal, since its commercial value has depreciated.

---

8 Council of State, Administrative Litigation Chamber, Third Section, judgment of September 13, 1991, file 6.453 MP Daniel Suárez Hernández.

9 Council of State, Administrative Litigation Chamber, Third Section, Subsection A, File No. 33113 of August 26, 2015.

*File: 13001-23-33-000-2013-00652-03 (68,833)*
*Actor: Alvis Yepes SAS*
*Direct repair*
<u>*Appeal of the sentence*</u>

c) The aforementioned property was the only one that suffered exceptional damage as
as a result of the aforementioned constructions that were carried out in its part
front due to the installation of the so-called "Turbaco" toll, since it was not evident in
the process that this infrastructure harmed other properties
neighboring

d) Although, the construction of the indicated toll area as well as the
The aforementioned civil works were carried out by the company Autopistas del
Sol SAS in the development of the aforementioned "Ruta Caribe" highway concession contract and
its respective annexes, signed with the National Institute of Concessions -
INCO - today National Infrastructure Agency (ANI), said public entity
She was the director and owner of said work as well as the infrastructure of
transport required for the development of the contractual object, powers
which are currently in charge of the ANI in accordance with the
regulated in Decree 4165 of 2011 which transformed the legal nature of
the aforementioned entity.

3) From this evidentiary perspective, there is no doubt for the Court that the
Installation and construction of the "Turbaco" toll station
that for the works that were finally carried out in front of the property of the part
actress, is due to a legitimate action of the National Agency of
Infrastructure (ANI) (formerly the National Institute of Concessions -INCO-), all
since these activities are based on the legal system and
in the concession contract for the "Ruta Caribe" road project signed in its
moment between the defendants, without any agreement having been formulated
any accusation of illegality regarding the said contract or the adoption and execution
of the respective road project and/or its component related to the construction of
the infrastructure of the aforementioned toll point.

However, it is also not unknown that the civil works that were built
adjacent to the aforementioned property violated the principle of equality before the
public burdens that the administered must bear, since it was accredited in the
process that unlike the neighboring properties, the fund of the part
The plaintiff was the only one who was affected by said constructions in the
extent to which they were built in front of the property, which shows that
the plaintiff company was caused abnormal, special and serious damage that

was not obliged to bear it, since the property suffered a decrease in its value

commercial, to the extent that its vehicular access and view were obstructed

overview and the possibilities of economic exploitation.

4) The foregoing allows the Court to conclude that the following are verified:

jurisprudential budgets to preach that the National Agency of

Infrastructure is solely responsible for the damage caused to the party

plaintiff for special damages, since it was demonstrated that the works

construction of the aforementioned toll was deployed in the development of a

state concession contract, however, caused an abnormal impairment,

serious and special to the plaintiff company who did not have the legal duty

to bear it.

5) In this order of ideas, there is no doubt that the National Agency for

Infrastructure if they are legitimized in the cause for passive for

be financially and extracontractually liable for the damage claimed,

Well, by legal and contractual ministry, the ANI was the owner of the work

and held the administration of the aforementioned concession contract as well as

the transport infrastructure linked to this agreement of wills as well

as well as its surveillance and control (Decrees 1800 of 2003 and 4165 of 2011).

However, the defendant entity "Autopistas del Sol SAS" is not

responsible for the damage claimed, because, despite the fact that she was responsible for

build the toll station and the civil works adjacent to the property

From the plaintiff, it is noted that said buildings were built in the

framework of the aforementioned concession contract; that is, it was not evident in the

process that the concessionaire acted with fault or that it built that

infrastructure outside of this agreement of wills or that the works

correspond to a unilateral execution or on behalf and at the risk of the aforementioned

company.

Additionally, it was not proven in the process that Autopistas del Sol

SAS carried out these constructions outside the designs and

specifications provided in the aforementioned contract, annexes, appendices and

specifications, so that it can be inferred that in the execution

of that civil work the conduct of that company was arbitrary, unreasonable or

*File: 13001-23-33-000-2013-00652-03 (68,833)*
*Actor: Alvis Yepes SAS*
*Direct repair*
<u>*Appeal of the sentence*</u>

anti-technical that would have ignored or disrupted the guidelines and

technical specifications or in some way that the execution of the

work did not correspond to what was specifically agreed in the contract

concession; likewise, it was not proven that said company had

used materials, equipment or elements not provided for in the contract or that

did so in an irregular and defective manner, since, it is reiterated, it was not demonstrated

that Autopistas del Sol SAS did not respect the technical parameters and

constructive provided for in the aforementioned agreement of wills, documents

annexes and specifications, whose supervision and control was the responsibility of

the contracting public entity, which is why the concessionaire should not

repair the claimed damage.


Therefore, the Court considers that the National Infrastructure Agency

(ANI) must compensate for the damage caused in her capacity as director,

owner of the aforementioned public works and administrator of the

transport infrastructure linked to the "Ruta Caribe" road project,

added to the fact that in the development of its surveillance functions and

control did not object or question the execution and construction of the

"Turbaco" toll station carried out by Autopistas del Sol SAS, with which

which shows that these buildings did not neglect their obligations

contractual or technical designs provided for this purpose.


6) On the other hand, it is necessary to highlight that the plaintiff does not question or ask for

damages for the installation of the "Turbaco" toll at the site that determined

the Ministry of Transport by administrative act (clause 17.3 of the

contract), but, on the contrary, claims for the damages that are caused to him

caused by the aforementioned civil works that were carried out in front of their property

and limited their rights, which is why it is not admissible either.

argument of the appellant entities in that it maintains that the Ministry

Transport is responsible for the damages claimed for having

arranged the installation of the toll at the referred geographical point, as per

ordered in Resolution No. 004336 of September 28, 2006.


On this aspect, the Court reiterates that it was not proven in the process that the

The aforementioned ministry was the one that arranged or determined that the aforementioned

civil works will be built adjacent to the property of the plaintiff, but

that, on the contrary, these were executed by the concessionaire with the
surveillance and control of the National Infrastructure Agency in development
of the "Ruta Caribe" concession contract, which is why it is not true that the
administrative act that ordered the installation of the "Turbaco" toll constitutes the
source of the damage claimed by the plaintiff company.

8) On the other hand, the entities question the opinion in their resources
expert opinion rendered by Mr. Jesús Cantillo Puerta, because he did not support
technically its conclusion that the plaintiff's property is
devalued by 45% of its commercial value on the occasion of the works that
were carried out in the construction of the "Turbaco" toll area.

On this point of the controversy, the first thing to note is that,
due to the removal of matter, there is no room to examine and decide on the merits of the matter
challenge that the concessionary company makes on this aspect by the
simple and sufficient reason why she was acquitted of responsibility
patrimonial; therefore, on this specific point of the litigation, this
is, the alleged absence of technical foundations that support the
expert opinion prepared to determine the amount of damages
suffered by the plaintiff, there is only room to study the objections of
formulated by the National Infrastructure Agency (ANI) for being the only one
procedural subject who is declared financially responsible.

In this sense, the National Infrastructure Agency is not right.
(ANI) Regarding this point of the challenge, because, from the analysis
integral part of that evidence, the Court finds that the expert used as
reference to establish that percentage of devaluation the appraisal
Commercial of lot no. 1 carried out on March 16, 2011 by Mr.
Carlos Vélez Paz of the Real Estate Exchange of Cartagena and Bolívar, the
which estimated that on that date the commercial value of said property amounted to
to $437,520,000, since no judicial assistant was appointed to
carry out the aforementioned appraisal, which is why it was based on the valuation
that was carried out by said entity.

Therefore, based on this assessment, the expert Jesús Cantillo Puerta concluded that
the works carried out on the front of the property by the defendant entities

They prevented vehicular access, obstructed the panoramic view and limited
the possibilities of commercial exploitation of that plot of land, for which reason
This was devalued by 45% of the aforementioned commercial appraisal equivalent to
$196,884,000.

From that perspective, the Court considers that the ANI is not right in
as he considers that the expert did not technically justify the percentage of
depreciation of the aforementioned property, since, although the appeals
They miss the methodology that was used to establish said amount or
the supporting evidence for this conclusion, it is observed that the expertise did use
objective and reasonable elements to establish the depreciation of the value
commercial property of the plaintiff company, given that, in the
opinion and in its support it explains and justifies said depreciation
starting precisely from the limitations that the aforementioned civil works
caused to the property, such as obstructing vehicle access by raising the
ground level, affecting its panoramic view and its development possibilities
commercial, which, without a doubt, constitutes reasonable reasons to give it validity
to the expert evidence carried out by Mr. Jesús Cantillo Puerta.

9) On the other hand, the National Infrastructure Agency (ANI) maintains in the
appeal that, if the decision to declare her responsible is upheld
patrimonially for the damages claimed, the insurer called in
QBE Seguros SA is obliged to pay the sentence imposed in
first instance.

In this regard, the Court notes that the contract is in the file.
Insurance No. 120100001155 for non-contractual civil liability subscribed
between the then INCO and QBE Seguros SA, in force between August 25,
2009 and October 7, 2011 and for a value of $1,000,000,000, through the
which said company is obliged to compensate for the damages caused by the
insured, among other concepts, for the deterioration or destruction of property
agreement with the terms and conditions set forth in the policy.

However, from the review of this insurance contract, the Court finds that
The claimed damages are not covered by the respective policy

insurance, therefore, the special damage caused by the construction of the works The "Turbaco toll is not a risk insured by the policy.

Consequently, QBE Seguros or whoever replaces or substitutes it should not pay the sum that was imposed on the National Infrastructure Agency – ANI- in this provision.

10) Finally, in the case of the insurance company Segurexpo SA, an entity called under warranty by Autopistas del Sol SA, for theft of material, there is no place to decide whether or not he should pay the sentence, since the Court found it proven that the concessionary company should not be responsible for the damages caused.

11) Finally, the court will update the sentence imposed on the plaintiff in the first instance in which it was established that the depreciation value of the property at 45% of its commercial value is equivalent to the sum of $196,884,000 pesos, therefore, the updated value of the sentence as of the date of this provision in charge of the National Infrastructure Agency (ANI) amounts to the sum of $362,052,42910 pesos.

5. **Conclusion**

The Court will modify the appealed judgment in the terms described in this providence, since it was demonstrated that the National Agency of Infrastructure is patrimonially and extracontractually responsible as special damages for the harm caused to the plaintiff, to the extent that that, with the works that were carried out in front of the plaintiff's property Due to the construction of the "Turbaco" toll, the value was reduced commercial property of that property; Autopistas del Sol SAS is absolved; The ANI is ordered to pay the costs and, finally, the ruling is confirmed in all other respects. of first instance.

---

10 The update is carried out based on the following formula:

Ra = Rh (196,884,000) 1<u>43.38 f</u>inal index of July 2024 (second instance ruling)
                77.97 initial index September 2012 (first instance ruling)
Ra = $362,052,429

As for the two insurance entities called as guarantee, there is no merit to pronounce condemnation against him, as he ordered at the time the *a quo*.

**6. Order to pay costs**

In the terms of articles 188 of the CPACA and 365 (section 3) of the CGP, how the appeal of the National Agency was dismissed Infrastructure (ANI), this will assume the procedural costs of the second instance, which must be liquidated in a concentrated manner by the court of first instance, including agencies in law, of in accordance with the provisions of Articles 365 and 366 of the CGP.

In view of the foregoing, **THE COUNCIL OF STATE, COURT CHAMBER ADMINISTRATIVE LITIGATION, THIRD SECTION, SUBSECTION B** administering justice in the name of the Republic and by authority of law,

### FAILURE :

**1st)** The judgment of November 19, 2021 issued by the Administrative Court of Bolívar, which is as follows:

> **"FIRST:** *The extracontractual patrimonial liability of the National Infrastructure Agency (ANI) is hereby declared for the special damage caused to the company Alvis Yepes SAS consisting of the depreciation of the commercial value of lot no. 1 located in the municipality of Turbaco on the western trunk highway between the city of Cartagena and Turbaco (Bolívar), as a result of the construction of works in front of said land on the occasion of the installation and construction of the "Turbaco" toll in said sector in development of concession contract no. 008 of 2007, "Ruta del Sol" road project.*

> **SECOND:** The National Infrastructure Agency (ANI) ***is ordered*** to pay the company Alvis Yepes SAS the sum of *THREE HUNDRED SIXTY-TWO MILLION FIFTY-TWO THOUSAND FOUR HUNDRED TWENTY-NINE PESOS ($362,052,429.00), a value that must be* updated in accordance with the final paragraph of article 187 of the CPACA.

> **THIRD:** *The company Autopistas del Sol SAS and the insurers QBE Seguros SA, or whoever replaces it or acts in its place, and Segurexpo SA Aseguradora de Crédito y del Comercio Exterior SA, or whoever replaces it or acts in its place, shall be acquitted.*

> **"FOURTH:** *The other claims of the complaint are denied."*

*File: 13001-23-33-000-2013-00652-03 (68,833)*
*Actor: Alvis Yepes SAS*
*Direct repair*
<u>*Appeal of the sentence*</u>

**2°)** The appealed judgment is confirmed in all other respects.

**3rd)** The Agency shall be ordered to pay the costs of the second instance. National Infrastructure Agency –ANI- including agencies in law, **are assessed** in a concentrated manner by the court of first instance.

**4°)** Once this order has become final, the file **shall be returned** by the secretary to the court of origin after the respective secretarial records.

**NOTIFY AND COMPLY**

**Alberto Montana Plata**
**Magistrate**
**(Electronically signed)**
**Clarifies vote**

**Fredy Ibarra Martinez**                          **MARTIN BERMUDEZ MUÑOZ**
**Magistrate**                                              **Magistrate**
**(Electronically signed)**                          **(Electronically Signed)**
                                                                   **Save vote**

*CERTIFICATE: This ruling was electronically signed by the Reporting Judge of Subsection B of the Third Section of the Council of State on the SAMAI digital platform. Consequently, its authenticity, integrity, preservation and subsequent consultation are guaranteed in accordance with Articles 1 and 2 of Law 2213 of 2022.*