IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERIMETRAL ORIENTAL DE BOGOTÁ,
S.A.S.,

　　　　　　　　*Petitioner*,

v.

AGENCIA NACIONAL DE
INFRAESTRUCTURA
and
THE REPUBLIC OF COLOMBIA

　　　　　　　　*Respondents*.

**Civil Action No. _____**

<u>**Declaration of Jason W. Myatt in Support of Petition to Confirm Arbitral Award**</u>

# EXHIBIT 32

# Decreto 2295 de 2023

Los datos publicados tienen propósitos exclusivamente informativos. El Departamento Administrativo de la Función Pública no se hace responsable de la vigencia de la presente norma. Nos encontramos en un proceso permanente de actualización de los contenidos.

DECRETO 2295 DE 2023

(Diciembre 29)

ÚLTIMA FECHA DE ACTUALIZACIÓN: 06 DE MARZO DE 2024

Por el cual se liquida el Presupuesto General de la Nación para la vigencia fiscal de 2024, se detallan las apropiaciones y se clasifican y definen los gastos

EL PRESIDENTE DE LA REPÚBLICA DE COLOMBIA

En ejercicio de las facultades constitucionales y legales, en especial las que le confiere el artículo 67 del Estatuto Orgánico del Presupuesto, y

CONSIDERANDO

Que el artículo 67 del Estatuto Orgánico del Presupuesto General de la Nación faculta al Gobierno nacional para dictar el Decreto de Liquidación del Presupuesto General de la Nación.

Que el citado artículo establece que el Decreto se acompañará con un anexo que tendrá el detalle del gasto para el año fiscal respectivo.

Que el artículo 21 de la Ley 2342 de 2023 "*Por la cual se decreta el presupuesto de rentas y recursos de capital y ley de apropiaciones para la vigencia fiscal del 1o. de enero al 31 de diciembre de 2024*" faculta al Gobierno Nacional para que en el Decreto de liquidación clasifique los ingresos y gastos y defina estos últimos.

Que de acuerdo con lo anterior y en concordancia con el artículo 209 de la Constitución Política, que señala que la función administrativa está al servicio de los intereses generales y se desarrolla con fundamento en los principios de eficacia, economía y celeridad, le corresponde al Gobierno Nacional ejercer la facultad conferida en el artículo 67 del Estatuto Orgánico del Presupuesto y así garantizar la debida ejecución de los recursos contenidos en el Presupuesto General de la Nación.

Que en mérito de lo expuesto,

DECRETA

PRIMERA PARTE

CAPÍTULO I

ARTÍCULO 1. PRESUPUESTO DE GASTOS O LEY DE APROPIACIONES. Aprópiese para atender los gastos de funcionamiento, inversión y servicio de la deuda pública del Presupuesto General de la Nación durante la vigencia fiscal del 1o. de enero al 31 de diciembre de 2024 una suma por valor de: QUINIENTOS DOS BILLONES QUINIENTOS NOVENTA Y SEIS MIL OCHOCIENTOS TREINTA Y TRES MILLONES DOSCIENTOS VEINTICUATRO MIL CIENTO OCHENTA Y NUEVE PESOS MONEDA LEGAL ($502.596.833.224.189), según el detalle establecido en el artículo 2° de la Ley 2342 de

2023 "Por la cual se decreta el presupuesto de rentas y recursos de capital y ley de apropiaciones para la vigencia fiscal del 1° de enero al 31 de diciembre de 2024.

ANEXO

jurisprudencia228030_1709935802599

(Modificado por el Art. 1 del Decreto 312 de 2024)

(Anexo Modificado por el Art. 1 del Decreto 103 de 2024)


SEGUNDA PARTE

PRESUPUESTO DE RENTAS Y RECURSOS DE CAPITAL

ARTÍCULO 2. PRESUPUESTO DE RENTAS Y RECURSOS DE CAPITAL. Fíjense los cómputos del presupuesto de rentas y recursos de capital del Tesoro de la Nación para la vigencia fiscal del 10. de enero al 31 de diciembre de 2024, en la suma de QUINIENTOS DOS BILLONES QUINIENTOS NOVENTA Y SEIS MIL OCHOCIENTOS TREINTA Y TRES MILLONES DOSCIENTOS VEINTICUATRO MIL CIENTO OCHENTA Y NUEVE PESOS MONEDA LEGAL ($502.596.833.224.189), según el detalle que se encuentra a continuación:

https://www.funcionpublica.gov.co/eva/gestornormativo/documentos/decreto-2295-2023_imagen2_decreto2295de2023.pdf


TERCERA PARTE

DISPOSICIONES GENERALES

ARTÍCULO 3. Las disposiciones generales del presente decreto son complementarias de las leyes 38 de 1989, 179 de 1994, 225 de 1995, 819 de 2003, 1473 de 2011 y 1508 de 2012 y demás normas de carácter orgánico y deben aplicarse en armonía con estas.

Estas normas rigen para los órganos que conforman el Presupuesto General de la Nación, y para los recursos de la Nación asignados a las Empresas Industriales y Comerciales del Estado y a las Sociedades de Economía Mixta con el régimen de aquellas.

Los fondos sin personería jurídica deben ser creados por ley o por su autorización expresa y estarán sujetos a las normas y procedimientos establecidos en la Constitución Política, el Estatuto Orgánico del Presupuesto, el presente decreto y las demás normas que reglamenten los órganos a los cuales pertenecen.


CAPÍTULO I

DE LAS RENTAS Y RECURSOS

ARTÍCULO 4. Las solicitudes de modificación a fuentes de financiación cuando se trate de recursos de crédito de las diferentes apropiaciones que se detallen en el anexo del decreto de liquidación, siempre y cuando no modifiquen los montos aprobados por el Congreso de la Republica en la ley anual, requerirán concepto previo de la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público.

ARTÍCULO 5. Los ingresos corrientes de la Nación y aquellas contribuciones y recursos que en las normas legales no se haya autorizado su recaudo y manejo a otro órgano, forman parte del Sistema de Cuenta Única Nacional y por tanto deberán consignarse en la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público.

Las superintendencias que no sean una sección presupuestal deben consignar en la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público el valor de las contribuciones establecidas en la ley dentro de los cinco (5) días hábiles siguientes a la recepción de los recursos.

ARTÍCULO 6. OPORTUNIDAD DEL REGISTRO DEL RECAUDO. Para alcanzar los estándares de calidad, oportunidad y transparencia de la gestión financiera pública, los órganos del Presupuesto General de la Nación, sin perjuicio de la aplicación de las medidas previstas por incumplimiento, deben hacer el registro en el Sistema Integrado de Información Financiera - SIIF Nación del recaudo de ingresos bajo su administración, en el momento que se identifique la situación asociada a la generación del hecho económico respectivo.

Para el efecto, la Dirección General de Crédito Público y Tesoro Nacional y las tesorerías de las entidades reportarán de manera regular a los órganos del Presupuesto General de la Nación, las transacciones registradas en las cuentas bancarias recaudadoras que requieren su afectación presupuestal oportuna, independiente de los ajustes a que haya lugar, para efectos del cierre contable en el mes siguiente al recaudo y de acuerdo con el calendario establecido por el Administrador SIIF Nación.

Igualmente, las entidades que ejecutan apropiaciones financiadas con recursos sin situación de fondos, ni flujo de efectivo, deberán registrar en el SIIF Nación la ejecución del ingreso a más tardar al momento de realizar el pago con cargo a dichos recursos.

Los órganos del Presupuesto General de la Nación que registran los ingresos de la gestión financiera pública a través de aplicativos misionales propios, y que interoperan con el SIIF Nación, deben propender porque el recaudo se refleje en línea y tiempo real o garantizar que este sea mínimo diario.

ARTÍCULO 7. El Ministerio de Hacienda y Crédito Público a través de la Dirección General de Crédito Público y Tesoro Nacional fijará los criterios técnicos y las condiciones para el manejo de los excedentes de liquidez y para la ejecución de operaciones de cubrimiento de riesgos, acorde con los objetivos monetarios, cambiarios y de tasa de interés a corto y largo plazo.

ARTÍCULO 8. El Gobierno nacional podrá emitir títulos de Tesorería, TES, Clase "B", con base en la facultad de la Ley 51 de 1990 de acuerdo con las siguientes reglas: no contarán con la garantía solidaria del Banco de la República; el estimativo de los ingresos producto de su colocación se incluirá en el Presupuesto General de la Nación como recursos de capital, con excepción de los provenientes de la colocación de títulos para operaciones temporales de tesorería y los que se emitan para regular la liquidez de la economía; sus rendimientos se atenderán con cargo al Presupuesto General de la Nación con excepción de los que se emitan para regular la liquidez de la economía y los que se emitan para operaciones temporales de tesorería; su redención se atenderá con cargo a los recursos del Presupuesto General de la Nación, con excepción de las operaciones temporales de tesorería, y los que se emitan para regular la liquidez de la economía; podrán ser administrados directamente por la Nación; podrán ser denominados en moneda extranjera; su emisión solo requerirá del Decreto que la autorice, fije el monto y sus condiciones financieras; la emisión destinada a financiar las apropiaciones presupuestales estará limitada por el monto de estas; su emisión no afectará el cupo de endeudamiento.

ARTÍCULO 9. La liquidación de los excedentes financieros de que trata el Estatuto Orgánico del Presupuesto, que se efectúen en la vigencia del presente decreto, se hará con base en una proyección de los ingresos y de los gastos para la vigencia siguiente a la de corte de los Estados Financieros, en donde se incluyen además las cuentas por cobrar y por pagar exigibles no presupuestadas, las reservas presupuestales, así como la disponibilidad inicial (caja, bancos e inversiones).

ARTÍCULO 10. Los títulos que se emitan para efectuar transferencia temporal de valores en los términos del artículo 146 de la Ley 1753 de 2015, solo requerirán del decreto que lo autorice, fije el monto y sus condiciones financieras. Su redención y demás valores asociados se atenderán con el producto de la operación de transferencia y su emisión no afectará el saldo de la deuda pública.

ARTÍCULO 11. A más tardar el 20 enero de 2024, los órganos que conforman el Presupuesto General de la Nación realizarán los ajustes a los registros en el Sistema Integrado de Información Financiera (SIIF) Nación, tanto en la imputación por concepto de ingresos que corresponden a los registros detallados de recaudos de su gestión financiera publica a 31 de diciembre del año anterior, como de los gastos, cuando haya necesidad de cancelar compromisos y/u obligaciones.

ARTÍCULO 12. Pertenecen a la Nación los rendimientos financieros obtenidos por el Sistema de Cuenta Única Nacional, así como los originados con recursos de la Nación, y los provenientes de recursos propios de las entidades, fondos, cuentas y demás órganos que hagan parte de dicho Sistema que conforman el Presupuesto General de la Nación, en concordancia con lo establecido por los artículos 16 y 101 del Estatuto Orgánico del Presupuesto. La reglamentación expedida por el Gobierno nacional para efectos de la periodicidad, metodología de cálculo, forma de liquidación y traslado de dichos rendimientos, continuará vigente durante el término de este decreto. Se exceptúa de la anterior disposición, aquellos rendimientos originados con recursos de las entidades estatales del orden nacional que administren contribuciones parafiscales y de los órganos de previsión y seguridad social que administren prestaciones sociales de carácter económico, los rendimientos financieros originados en patrimonios autónomos que la ley haya autorizado su tratamiento, así como los provenientes de recursos de terceros que dichas entidades estatales mantengan en calidad de depósitos o administración.

CAPÍTULO II

DE LOS GASTOS

ARTÍCULO 13. Las afectaciones al presupuesto se harán teniendo en cuenta la prestación principal originada en los compromisos que se adquieran y con cargo a este rubro se cubrirán los demás costos inherentes o accesorios. Con cargo a las apropiaciones de cada rubro

presupuestal, que sean afectadas con los compromisos, se atenderán las obligaciones derivadas de estos, tales como los costos imprevistos, ajustes y revisión de valores e intereses moratorios, gravámenes a los movimientos financieros y gastos de nacionalización.

ARTÍCULO 14. Prohíbase tramitar actos administrativos u obligaciones que afecten el presupuesto de gastos cuando no reúnan los requisitos legales o se configuren como hechos cumplidos. El representante legal y ordenador del gasto o en quienes estos hayan delegado, responderán disciplinaria, fiscal y penalmente por incumplir lo establecido en esta norma.

ARTÍCULO 15. Para proveer empleos vacantes se requerirá el certificado de disponibilidad presupuestal por la vigencia fiscal de 2024, por medio de este, el jefe de presupuesto o quien haga sus veces garantizará la existencia de los recursos del 1 de enero al 31 de diciembre de 2024, por todo concepto de gastos de personal, salvo que el nombramiento sea en reemplazo de un cargo provisto o creado durante la vigencia, para lo cual se deberá expedir el certificado de disponibilidad presupuestal por lo que resta del año fiscal.

Toda provisión de empleos de los servidores públicos deberá corresponder a los previstos en la planta de personal, incluyendo las vinculaciones de los trabajadores oficiales y tener previstos sus emolumentos de conformidad con el artículo 122 de la Constitución Política.

La vinculación de supernumerarios, por periodos superiores a tres meses, deberá ser autorizada mediante resolución suscrita por el jefe del respectivo órgano.

En cumplimiento del artículo 49 de la Ley 179 de 1994, previo al inicio de un proceso de concurso de méritos para proveer los cargos de carrera administrativa, la entidad deberá certificar la disponibilidad presupuestal para atender el costo del concurso, los cargos que se convocarán, y su provisión.

ARTÍCULO 16. La solicitud de modificación a las plantas de personal, además de lo contemplado en las normas de austeridad, requerirá para su consideración y trámite, por parte del Ministerio de Hacienda y Crédito Público - Dirección General del Presupuesto Público Nacional, los siguientes requisitos:

Exposición de motivos

Costos comparativos de las plantas vigente y propuesta

Efectos sobre la adquisición de bienes y servicios de la entidad

Concepto del Departamento Nacional de Planeación si se afectan los gastos de inversión, y

Los demás que la Dirección General del Presupuesto Público Nacional considere pertinentes.

El Departamento Administrativo de la Función Pública aprobará las propuestas de modificaciones a las plantas de personal, cuando hayan obtenido concepto o viabilidad presupuestal del Ministerio de Hacienda y Crédito Público - Dirección General del Presupuesto Público Nacional.

ARTÍCULO 17. Los recursos destinados a programas de capacitación y bienestar social no pueden tener por objeto crear o incrementar salarios, bonificaciones, sobresueldos, primas, prestaciones sociales, remuneraciones extralegales o estímulos pecuniarios ocasionales que la ley no haya establecido para los servidores públicos, ni servir para otorgar beneficios directos en dinero o en especie.

Todos los funcionarios públicos de la planta permanente o temporal podrán participar en los programas de capacitación de la entidad; las matrículas de los funcionarios de la planta permanente o temporal se girarán directamente a los establecimientos educativos, salvo lo previsto por el artículo 114 de la Ley 30 de 1992, modificado por el artículo 27 de la Ley 1450 de 2011. Su otorgamiento se hará en virtud de la reglamentación interna para la planta permanente o temporal del órgano respectivo.

ARTÍCULO 18. La constitución y funcionamiento de las cajas menores en los órganos que conforman el Presupuesto General de la Nación, y en las entidades nacionales con régimen presupuestal de Empresas Industriales y Comerciales del Estado con carácter no financiero, respecto de los recursos que le asigna la Nación, se regirán por el Decreto 1068 de 2015 y por las demás normas que lo modifiquen o adicionen.

ARTÍCULO 19. Se podrán hacer distribuciones en el presupuesto de ingresos y gastos, sin cambiar su destinación, mediante resolución suscrita por el jefe del respectivo órgano. En el caso de los establecimientos públicos del orden nacional, estas distribuciones se harán por resolución o acuerdo de las juntas o consejos directivos. Si no existen juntas o consejos directivos, lo hará el representante legal de estos. Estas operaciones presupuestas les se someterán a la aprobación del Ministerio de Hacienda y Crédito Público - Dirección General del Presupuesto Público Nacional, y tratándose de gastos de inversión, requerirán el concepto previo favorable del Departamento Nacional de Planeación - Dirección de Programación de Inversiones Públicas.

Los jefes de los órganos responderán por la legalidad de los actos en mención.

A fin de evitar duplicaciones en los casos en los cuales la distribución afecte el presupuesto de otro órgano que haga parte del Presupuesto General de la Nación, el mismo acto administrativo servirá de base para realizar los ajustes correspondientes en el órgano que distribuye e incorpora las del órgano receptor. La ejecución presupuestal de estas deberá efectuarse por Los receptores en la misma vigencia de la distribución.

Tratándose de gastos de inversión, la operación presupuestal descrita en el órgano receptor se clasificará en el programa y subprograma a ejecutar que corresponda; para los gastos de funcionamiento se asignará al rubro presupuestal correspondiente; estas operaciones en ningún caso podrán cambiar la destinación ni la cuantía, lo cual deberá constar en el acto administrativo que para tal fin se expida.

El jefe del órgano o en quien este haya delegado la ordenación del gasto podrá efectuar mediante resolución desagregaciones presupuesta les a las apropiaciones contenidas en el anexo del decreto de liquidación, así como efectuar asignaciones internas de apropiaciones en sus dependencias, seccional es o regionales a fin de facilitar su manejo operativo y de gestión, sin que las mismas impliquen cambiar su destinación. Estas desagregaciones y asignaciones deberán quedar registradas en el Sistema Integrado de Información Financiera (SIIF) Nación, y su validez no requerirán aprobación Ministerio de Hacienda y Crédito Público ¿ Dirección General del Presupuesto Público Nacional, ni del previo concepto favorable por parte del Departamento Nacional de Planeación - Dirección de Programación de Inversiones Públicas.

ARTÍCULO 20. Los órganos de que trata el artículo 3o del presente decreto podrán pactar el pago de anticipos y la recepción de bienes y servicios, únicamente cuando cuenten con Programa Anual Mensualizado de Caja (PAC) de la vigencia, aprobado por el Confis.

Los órganos que hacen parte del Presupuesto General de la Nación solo podrán solicitar el giro de los recursos aprobados en el Programa Anual de Caja a la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público, cuando hayan recibido los bienes y/o servicios o se tengan cumplidos los requisitos que hagan exigible su pago. En ningún caso las entidades podrán solicitar la trasferencia de recursos a fiducias o encargos fiduciarios o patrimonios autónomos, o a las entidades con las que celebre convenios o contratos interadministrativos, sin que se haya cumplido el objeto del gasto. Cuando las fiducias, los encargos fiduciarios, los patrimonios autónomos o los convenios o contratos interadministrativos utilicen la creación de subcuentas, subprogramas, subproyectos, o cualquier otra modalidad de clasificación, deberán implementar unidad de caja, para buscar eficiencia en el manejo de los recursos que les sitúa la Nación.

PARÁGRAFO. Los saldos de recursos de portafolios administrados por la Dirección General de Crédito Público y Tesoro Nacional que no se encuentren comprometidos para atender gastos o pago de obligaciones, forman parte de la unidad de caja de la Nación y se podrán utilizar para cumplir las obligaciones para las cuales fueron creados. Sobre estas operaciones de Tesorería dicha Dirección llevará el registro contable correspondiente.

ARTÍCULO 21. El Gobierno nacional en el decreto de liquidación clasificará los ingresos y gastos y definirá estos últimos.

Así mismo, cuando las partidas se incorporen en numerales rentísticos, secciones, programas y subprogramas que no correspondan a su objeto o naturaleza, las ubicará en el sitio que corresponda.

La Dirección General del Presupuesto Público Nacional del Ministerio de Hacienda y Crédito Público hará mediante resolución, las operaciones que en igual sentido se requieran durante el transcurso de la vigencia.

Cuando se trate del presupuesto de gastos de inversión requerirá el concepto previo favorable del Departamento Nacional de Planeación - Dirección de Programación de Inversiones Públicas.

ARTÍCULO 22. El Ministerio de Hacienda y Crédito Público - Dirección General del Presupuesto Público Nacional, de oficio o a petición del jefe del órgano respectivo, hará por resolución las aclaraciones y correcciones de leyenda necesarias para enmendar los errores de transcripción y aritméticos que figuren en el Presupuesto General de la Nación para la vigencia fiscal de 2024.

Cuando se trate de aclaraciones y correcciones de leyenda del presupuesto de gastos de inversión, se requerirá el concepto previo favorable del Departamento Nacional de Planeación - Dirección de Programación de Inversiones Públicas.

ARTÍCULO 23. Los órganos de que trata el artículo 30 del presente decreto son los únicos responsables por el registro de su gestión financiera pública en el Sistema Integrado de Información Financiera (SIIF) ¿ Nación.

No se requerirá el envío de ninguna información a la Dirección General del Presupuesto Público Nacional del Ministerio de Hacienda y Crédito

Público, que quede registrada en el Sistema Integrado de Información Financiera (SIIF) - Nación, salvo en aquellos casos en que esta de forma expresa lo solicite.

ARTÍCULO 24. Cuando los órganos que hacen parte del Presupuesto General de la Nación celebren contratos entre sí que afecten sus presupuestos, con excepción de los de crédito, harán los ajustes mediante resoluciones proferidas por el jefe del órgano respectivo. En el caso de los Establecimientos Públicos del orden nacional, las Superintendencias y Unidades Administrativas Especiales con personería jurídica, así como las señaladas en el artículo 50 del Estatuto Orgánico del Presupuesto, dichos ajustes deben realizarse por acuerdo o resolución de las juntas o consejos directivos; en ausencia de estos por el representante legal del órgano.

Los actos administrativos a que se refiere el inciso anterior deberán ser remitidos al Ministerio de Hacienda y Crédito Público - Dirección General del Presupuesto Público Nacional, acompañados del respectivo certificado en que se haga constar que se recaudarán los recursos expedidos por el órgano contratista y su justificación económica, para la aprobación de las operaciones presupuesta les en ellos contenidas, requisito sin el cual no podrán ser ejecutadas. De conformidad con el artículo 80 de la Ley 819 de 2003, los recursos deberán ser incorporados y ejecutados en la misma vigencia fiscal en la que se lleve a cabo la aprobación.

Cuando en los convenios se pacte pago anticipado y para el cumplimiento de su objeto el órgano contratista requiera contratar con un tercero, solo podrá solicitarse el giro efectivo de los recursos a la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público una vez dicho órgano adquiera el compromiso presupuestal y se encuentren cumplidos los requisitos que hagan exigible su pago a favor del beneficiario final.

Tratándose de gastos de inversión, requerirán el concepto previo favorable del Departamento Nacional de Planeación - Dirección de Programación de Inversiones Públicas.

Los jefes de los órganos responderán por la legalidad de los actos en mención.

ARTÍCULO 25. Salvo lo dispuesto por el artículo 47 de la Ley 1450 de 2011, ningún órgano podrá contraer compromisos que impliquen el pago de cuotas a organismos internacionales con cargo al Presupuesto General de la Nación, sin que exista la ley aprobatoria de tratados públicos o que el Presidente de la República haya autorizado su aplicación provisional en los términos del artículo 224 de la Constitución Política.

Una vez cumplidos los requisitos del inciso anterior, previa autorización del Ministerio de Relaciones Exteriores, los Establecimientos Públicos del orden nacional solo podrán pagar con cargo a sus recursos propios las cuotas a dichos organismos.

Los aportes y contribuciones de la República de Colombia a los organismos financieros internacionales se pagarán con cargo al Presupuesto General de la Nación, salvo en aquellos casos en que los aportes se contabilicen como reservas internacionales, que serán pagados de conformidad con lo previsto en la Ley 31 de 1992 o aquellas que la modifiquen o adicionen.

Los compromisos que se adquieran en el marco de tratados o convenios internacionales, de los cuales Colombia haga parte y cuya vinculación haya sido aprobada por Ley de la República, no requerirán de autorización de vigencias futuras, no obstante, se deberá contar con aval fiscal previo por parte del Consejo Superior de Política Fiscal (Confis).

ARTÍCULO 26. Los órganos que conforman el Presupuesto General de la Nación deben reintegrar dentro del primer trimestre de 2024 a la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público los recursos de la Nación, ya sus tesorerías cuando correspondan a recursos propios, que no estén amparando compromisos u obligaciones, y que correspondan a apropiaciones presupuestales de vigencias fiscales anteriores, incluidos sus rendimientos financieros, diferencial cambiario, y demás reditos originados en aquellos, con el soporte correspondiente.

La presente disposición también se aplica a los recursos de convenios celebrados con organismos internacionales, incluyendo los de contrapartida.

Así mismo, los órganos que conforman el Presupuesto General de la Nación, de conformidad con el artículo 36 de la Ley 1955 de 2019, deberán reintegrar a la Dirección General de Crédito Público y Tesoro Nacional dentro del primer mes de 2024 los recursos del Presupuesto General de la Nación que hayan sido girados a entidades financieras y que no hayan sido pagados a los beneficiarios finales. Estos recursos se constituirán como acreedores varios sujetos a devolución y serán puestos a disposición de la Entidad Financiera cuando se haga exigible su pago a beneficiarios finales, sin que esto implique operación presupuestal alguna, entendiendo de que se trata de una operación de manejo eficiente de Tesorería.

ARTÍCULO 27. Los gastos que sean necesarios para la contratación, ejecución, administración y servicio de las operaciones de crédito público, las

operaciones asimiladas, las operaciones propias del manejo de la deuda pública, las conexas con las anteriores, y las demás relacionadas con los recursos del crédito, serán atendidos con cargo a las apropiaciones del servicio de la deuda pública; así como, los gastos que sean necesarios para la contratación, ejecución y administración de títulos de deuda pública y de las operaciones de tesorería de la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público y sus conexas.

De conformidad con el artículo 46 del Estatuto Orgánico del Presupuesto, las pérdidas del Banco de la República se atenderán mediante la emisión de bonos y otros títulos de deuda pública. La emisión de estos bonos o títulos se realizará en condiciones de mercado, no implicará operación presupuestal alguna y solo debe presupuestarse para efectos del pago de intereses y de su redención.

Cuando se presenten utilidades del Banco de la Republica a favor de la nación se podrán pagar en efectivo o con títulos de deuda pública.

CAPÍTULO I

DE LAS RESERVAS PRESUPUESTALES Y CUENTAS POR PAGAR

ARTÍCULO 28. A través del Sistema Integrado de Información Financiera (SIIF)-Nación se constituirán con corte a 31 de diciembre de 2023 las reservas presupuestales y cuentas por pagar de cada una de las secciones del Presupuesto General de la Nación, a las que se refiere el artículo 89 del Estatuto Orgánico del Presupuesto. Como máximo, las reservas presupuestales corresponderán a la diferencia entre los compromisos y las obligaciones, y las cuentas por pagar por la diferencia entre las obligaciones y los pagos.

Para las cuentas por pagar que se constituyan a 31 de diciembre de 2023 se debe contar con el correspondiente programa anual mensualizado de caja de la vigencia, de lo contrario deberán hacerse los ajustes en los registros y constituir las correspondientes reservas presupuestales. Igual procedimiento se deberá cumplir en la vigencia 2024.

Si durante el año de la vigencia de la reserva presupuestal o de la cuenta por pagar desaparece el compromiso u obligación que los originó, se podrán hacer los ajustes respectivos en el Sistema Integrado de Información Financiera (SIIF) Nación.

Como quiera que el SIIF Nación refleja el detalle, la secuencia y el resultado de la información financiera pública registrada por las entidades y órganos que conforman el Presupuesto General de la Nación, no se requiere el envío de ningún soporte físico a la Dirección General del Presupuesto Público Nacional, ni a la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público, salvo que las mismas lo requieran.

ARTÍCULO 29. Las entidades que hacen parte del Presupuesto General de la Nación que administran recursos para el pago de pensiones podrán construir reservas presupuestales o cuentas por pagar con los saldos de apropiación que a 31 de diciembre se registren en el Sistema Integrado de Información Financiera (SIIF) Nación para estos propósitos. Lo anterior se constituye como una provisión para atender el pago oportuno del pasivo pensional a cargo de dichas entidades la siguiente vigencia.

ARTÍCULO 30. En lo relacionado con las cuentas por pagar y las reservas presupuestales, el presupuesto inicial corresponde a la vigencia fiscal de 2024 cumple con lo establecido en el artículo 31 de la Ley 344 de 1996 y el artículo 9 de la Ley 225 1995.

CAPÍTULO IV

DE LAS VIGENCIAS FUTURAS

ARTÍCULO 31. Las entidades u órganos que requieran modificar el plazo y/o los cupos anuales de vigencias futuras autorizados por el Consejo Superior de Política Fiscal (Confis), o quien este delegue, requerirán de manera previa, la reprogramación de las vigencias futuras en donde se especifiquen las nuevas condiciones; en los demás casos, se requerirá de una nueva autorización.

ARTÍCULO 32. Los cupos anuales autorizados para asumir compromisos de vigencias futuras no utilizados a 31 de diciembre del año en que se concede la autorización caducan, salvo en los casos previstos en el inciso 2 del articulo 8o de la Ley 819 de 2003.

Cuando no fuere posible adelantar en la vigencia fiscal correspondiente los ajustes presupuestales a que se refiere el inciso 2 del artículo 8o de la Ley 819 de 2003, se requerirá de la reprogramación de los cupos anuales autorizados por parte de la autoridad que expidió la autorización inicial, con el fin de dar continuidad al proceso de selección del contratista. De no ser necesario efectuar algún ajuste, no se requerirá de una nueva autorización de vigencia futura.

Los registros en el Sistema Integrado de Información Financiera (SIIF) - Nación deberán corresponder a los cupos efectivamente utilizados.

CAPÍTULO V

CLASIFICACIÓN DE LOS GASTOS

ARTÍCULO 33. Los gastos incluidos en el presupuesto para la vigencia fiscal de 2024 se clasifican de la siguiente forma:

https://www.funcionpublica.gov.co/eva/gestornormativo/documentos/decreto-2295-2023_imagen3_decreto2295de2023.pdf

CAPÍTULO VI

DEFINICIÓN DE LOS GASTOS

ARTÍCULO 34. Los gastos incluidos en el presupuesto para la vigencia fiscal 2024 se definen de la siguiente forma:

A. FUNCIONAMIENTO

Son aquellos gastos que tienen por objeto atender las necesidades de los órganos para cumplir a cabalidad con las funciones asignadas en la Constitución Política y la Ley.

01 GASTOS DE PERSONAL

Son los gastos asociados con el personal vinculado laboralmente con el Estado a través de una relación legal/reglamentaria o de una relación contractual laboral (Ley 909 de 2004, Art.1).

01 01 PLANTA DE PERSONAL PERMANENTE

Comprende la remuneración por los servicios laborales prestados por servidores públicos vinculados a la planta de personal aprobada para cada órgano del PGN.

01 01 01 SALARIO

Son las remuneraciones pagadas en efectivo o en especie a los empleados vinculados laboralmente con el Estado, como contraprestación por los servicios prestados. El salario se compone por un sueldo básico y por los demás pagos que tiene como particularidad remunerar el trabajo del empleado.

01 01 02 CONTRIBUCIONES INHERENTES A LA NÓMINA

Corresponde a las contribuciones legales que debe hacer una entidad como empleadora, a entidades del sector privado y público, tales como: Cajas de Compensación Familiar, SENA, ICBF, ESAP, Fondo Nacional de Ahorro, Fondos Administradores de Cesantías y Pensiones, Empresas Promotoras de Salud privadas y públicas, así como, las administradoras públicas y privadas de aportes que se destinan para accidentes de trabajo y enfermedad profesional.

01 01 03 REMUNERACIONES NO CONSTITUTIVAS DE FACTOR SALARIAL

Corresponde a los gastos del personal vinculado laboralmente con el Estado que la ley no reconoce como constitutivos de factor salarial. Estos pagos no forman parte de la base para el cálculo y pago de las prestaciones sociales, aportes parafiscales y seguridad social, aunque sí forman parte de la base de retención en la fuente, por ingresos laborales.

01 01 04 OTROS GASTOS DE PERSONAL-PREVIO CONCEPTO DGPPN

Esta cuenta es de programación presupuestal y registra el monto de los gastos de personal po incremento salarial que resulta del ajuste del poder adquisitivo y demás criterios de programación impartidos para consideración, si los hubiera.

01 02 PERSONAL SUPERNUMERARIO Y PLANTA TEMPORAL

Comprende la remuneración por los servicios laborales prestados por el personal vinculado de forma temporal o transitoria con la administración pública, bien sea dentro de una planta de personal temporal o como personal supernumerario.

Las definiciones de los conceptos en que se desagregan los gastos de PERSONAL SUPERNUMERARIO Y PLANTA TEMPORAL correspondientes a 01 02 01 SALARIO, 01 02 02 CONTRIBUCIONES INHERENTES A LA NÓMINA, 01 02 03 REMUNERACIONES NO CONSTITUTIVAS DE FACTOR SALARIAL Y 01 02 04 OTROS GASTOS DE PERSONAL-PREVIO CONCEPTO DGPPN para 01 02 PERSONAL SUPERNUMERARIO Y PLANTA TEMPORAL son iguales a los conceptos de la Planta de Personal Permanente aplicables a este tipo de vinculación laboral.

02 ADQUISICIÓN DE BIENES Y SERVICIOS

Son los gastos asociados a la compra de bienes y a la contratación de servicios, suministrados por personas naturales o jurídicas, que son necesarios para el cumplimiento de las funciones asignadas por la Constitución Política y la ley al órgano del PGN.

La remuneración para la contratación de servicios, suministrados por personas naturales o jurídicas, no podrá pactarse por valor mensual superior a la remuneración total mensual establecida para el jefe de la entidad.

Se entiende por remuneración total mensual del jefe de la entidad, la que corresponda a este en cada uno de dichos períodos, sin que en ningún caso puedan tenerse en consideración los factores prestacionales.

De manera excepcional, para aquellos eventos en los que se requiera contratar servicios altamente calificados, entendidos éstos como los de alto nivel de especialidad, complejidad y detalle, podrán pactarse honorarios superiores a la remuneración total mensual establecida para el jefe de la entidad, los cuales no podrán exceder del valor total mensual de remuneración del jefe de la entidad incluidos los factores prestacionales y las contribuciones inherentes a la nómina, relacionadas con seguridad social y parafiscales a cargo del empleador. En estos eventos el Representante Legal de la entidad deberá certificar el cumplimiento de los siguientes aspectos: 1. Justificar la necesidad del servicio personal altamente calificado. 2. Indicar las características y calidades específicas, altamente calificadas, que reúne el contratista para la ejecución del contrato, y 3. Determinar las características de los productos y/o servicios que se espera obtener.

03 TRANSFERENCIAS CORRIENTES

Comprende las transacciones que realiza un órgano del PGN a otra unidad sin recibir de esta última ningún bien, servicio o activo a cambio como contrapartida directa. Las transferencias por su naturaleza reducen el ingreso y las posibilidades de consumo del otorgante e incrementan el ingreso y las posibilidades de consumo del receptor.

04 TRANSFERENCIAS DE CAPITAL

Comprende las transacciones que realiza un órgano del PGN a otra unidad para la adquisición de un bien o el pago de un pasivo, sin recibir de esta última ningún bien, servicio o activo a cambio como contrapartida directa. A diferencia de las transferencias corrientes, estas implican el traspaso de la propiedad de un activo (distinto del efectivo y de las existencias) de una unidad a otra, la obligación de adquirir o de disponer de un activo por una o ambas partes, o la obligación de pagar un pasivo por parte del receptor.

05 GASTOS DE COMERCIALIZACIÓN Y PRODUCCIÓN

Comprende los gastos asociados a la adquisición de insumos necesarios para la producción y comercialización de los bienes y servicios que provee el órgano del PGN.

06 ADQUISICIÓN DE ACTIVOS FINANCIEROS

Comprende los recursos destinados a la adquisición de derechos financieros, los cuales brindan a su propietario el derecho a recibir fondos u otros recursos de otra unidad.

07 DISMINUCIÓN DE PASIVOS

Son los gastos asociados a una obligación de pago adquirida por el órgano del PGN, pero que está sustentada en el recaudo previo de los recursos. Los gastos por disminución de pasivos se caracterizan por no afectar el patrimonio de la unidad institucional.

08 GASTOS POR TRIBUTOS, MULTAS, SANCIONES E INTERESES DE MORA

Comprende el gasto por tributos, multas, sanciones e intereses de mora, que por mandato legal deben atender los órganos del PGN. Entiéndase por tributos, las prestaciones pecuniarias establecidas por una autoridad estatal, en ejercicio de su poder de imperio, para el cumplimiento de sus fines. Los tributos se distinguen entre impuestos, tasas y contribuciones según la intensidad del poder de coacción y el deber de contribución implícito en cada modalidad.

Las multas, sanciones e intereses de mora comprenden el gasto por penalidades pecuniarias que se derivan del poder punitivo del Estado, y que se establecen por el incumplimiento de leyes o normas administrativas, con el fin de prevenir un comportamiento considerado indeseable.

B. SERVICIO DE LA DEUDA PÚBLICA

Los gastos por concepto del servicio a la deuda, tanto interna como externa, tienen por objeto atender el cumplimiento de las obligaciones correspondientes al pago del principal, los intereses, las comisiones, y todo tipo de gastos derivados de las operaciones de crédito público que realizan los órganos del PGN con el fin de dotar a la entidad estatal de recursos, bienes o servicios con plazo para su pago.

09 SERVICIO DE LA DEUDA PÚBLICA EXTERNA

Comprende el gasto por amortizaciones del principal, los intereses, las comisiones, y todo tipo de gastos derivados de las operaciones de crédito público que realizan los órganos del PNG con agentes residentes fuera del país.

10 SERVICIO DE LA DEUDA PÚBLICA INTERNA

Comprende el gasto por amortizaciones del principal, los intereses, las comisiones, y todo tipo de gastos derivados de las operaciones de crédito público que realizan los órganos del PNG con agentes residentes en el territorio colombiano.

C. INVERSIÓN

Son aquellas erogaciones susceptibles de causar réditos o de ser de algún modo económicamente productivas, o que tengan cuerpo de bienes de utilización perdurable, llamados también de capital por oposición a los de funcionamiento que se hayan destinado por lo común a extinguirse con su empleo. Asimismo, aquellos gastos destinados a crear infraestructura social.

La característica fundamental de este gasto debe ser que su asignación permita acrecentar la capacidad de producción y productividad en el campo de la estructura física, económica y social.

Las inversiones que estén financiadas con recursos del crédito externo, para poder ejecutarse, deberán tener el recurso incorporado en el Presupuesto, tener aprobación de la Dirección General de Crédito Público y Tesoro Nacional y someterse a los procedimientos de contratación administrativa.

Al momento de la obligación, los gastos de inversión se desagregarán al máximo nivel del Clasificador por Objeto de gasto del Catálogo de Clasificación Presupuestal establecido por la Dirección General del Presupuesto Público Nacional, al igual que los gastos de funcionamiento.

ARTICULO 35. Las desagregaciones en las que se clasifican cada uno de los objetos de gasto definidos en el artículo anterior, serán las establecidas en el Catálogo de Clasificación Presupuestal de la Dirección General del Presupuesto Público Nacional del Ministerio de Hacienda y Crédito Público.

CAPÍTULO VII

DISPOSICIONES VARIAS

ARTÍCULO 36. El servidor público que reciba una orden de embargo sobre los recursos incorporados en el Presupuesto General de la Nación, incluidas las transferencias que hace la Nación a las entidades territoriales, está obligado a efectuar los trámites correspondientes para solicitar su desembargo.

Para este efecto, la certificación de inembargabilidad donde se encuentren incorporados los recursos objeto de la medida cautelar se solicitará al jefe del órgano de la sección presupuestal o a quien este delegue. La solicitud debe indicar el tipo de proceso, las partes involucradas, el

despacho judicial que profirió las cautelares y el origen de los recursos que fueron embargados.

PARÁGRAFO. En los mismos términos, el Representante Legal de las entidades descentralizadas que administran recursos de la seguridad social certificará la inembargabilidad de estos recursos en los términos previstos en el artículo 63 de la Constitución Política en concordancia con el artículo 134 de la Ley 100 de 1993 y el artículo 25 de la Ley 1751 de 2015.

ARTÍCULO 37. Los órganos a que se refiere el artículo 30 del presente decreto pagarán los fallos de tutela con cargo al rubro que corresponda a la naturaleza del negocio fallado; igualmente, los contratos de transacción se imputarán con cargo al rubro afectado inicialmente con el respectivo compromiso.

Para pagarlos, primero se deben efectuar los traslados presupuesta les requeridos, con cargo a los saldos de apropiación disponibles durante la vigencia fiscal en curso.

Los Establecimientos Públicos deben atender las providencias que se profieran en su contra, en primer lugar, con recursos propios realizando previamente las operaciones presupuestales a que haya lugar. Con cargo a las apropiaciones de sentencias y conciliaciones, se podrán pagar todos los gastos originados en los tribunales de arbitramento, así como las cauciones o garantías bancarias o de compañías de seguros que se requieran en procesos judiciales.

Cuando se extiendan los efectos de una sentencia de unificación jurisprudencial dictada por el Consejo de Estado de conformidad con lo dispuesto en el artículo 102 del Código de Procedimiento Administrativo y de lo Contencioso Administrativo, en virtud de la autonomía presupuestal consagrada en el artículo 110 del Estatuto Orgánico del Presupuesto, la operación presupuestal a que haya lugar será responsabilidad del Jefe de cada órgano y su pago se imputará al rubro que lo generó.

PARÁGRAFO. Durante la presente vigencia fiscal, no se efectuarán los aportes al Fondo de Contingencias de las Entidades Estatales de los que tratan los numerales 1 y 2 del artículo 5 de la Ley 448 de 1998 relacionados con los pasivos judiciales descritos en el artículo 194 de la Ley 1437 de 2011.

ARTÍCULO 38. La Fiscalía General de la Nación, la Policía Nacional, el Ejército Nacional, la Armada Nacional, la Fuerza Aérea y la Unidad Nacional de Protección, deben cubrir con cargo a sus respectivos presupuestos, los gastos del personal vinculado a dichos órganos y que conforman los Grupos de Acción Unificada por la Libertad Personal (Gaula), a que se refiere la Ley 282 de 1996.

PARÁGRAFO. La Unidad Nacional de Protección o la Policía Nacional cubrirán con sus respectivos presupuestos, los gastos de viaje y viáticos causados por los funcionarios que hayan sido asignados al Congreso de la República para prestar los servicios de protección y seguridad personal a sus miembros.

ARTÍCULO 39. Las obligaciones por concepto de servicios médicos asistenciales (no pensiones), servicios públicos domiciliarios (Acueducto y Alcantarillado, Energía, Gas natural), servicios públicos de comunicaciones (que incluye los servicios de telecomunicaciones y postales), servicios de transporte de pasajeros o carga y contribuciones inherentes a la nómina, causados en el último bimestre de 2023, se pueden pagar con cargo a las apropiaciones de la vigencia fiscal de 2024.

Los sueldos de vacaciones, la prima de vacaciones, la indemnización de vacaciones, la bonificación especial de recreación, los auxilios de cesantías, las pensiones, los auxilios funerarios a cargo de las entidades, los impuestos, las contribuciones (incluida la tarifa de control fiscal), las contribuciones a organismos internacionales, así como las obligaciones de las entidades liquidadas correspondientes a servicios públicos domiciliarios y contribuciones inherentes a la nómina, se pueden pagar con cargo al presupuesto vigente cualquiera sea el año de su causación, afectando el rubro que les dio origen.

ARTÍCULO 40. En las Empresas Industriales y Comerciales del Estado y en las Sociedades de Economía Mixta sujetas al régimen de aquellas dedicadas a la generación, transmisión, distribución y comercialización de energía, los gastos relacionados con la adquisición de bienes y servicios necesarios para los procesos de producción, transformación y comercialización se clasificarán como proyectos de inversión. Igual procedimiento se aplicará a las Empresas de Servicios Públicos Domiciliarios en cuyo capital la Nación o sus entidades descentralizadas posean el 90% o más.

En los casos en que las Empresas Industriales y Comerciales del Estado y en las Sociedades de Economía Mixta sujetas al régimen de aquellas, de cualquier sector, reciban aportes de la Nación, estos se clasificarán como una transferencia en la Sección Principal del Sector Administrativo en que se encuentren vinculadas.

PARÁGRAFO. Las Empresas Industriales y Comerciales del Estado y las Sociedades de Economía Mixta sujetas al régimen de aquellas, registrarán

sus proyectos de inversión en el Banco Nacional de Programas y Proyectos, de conformidad con la metodología y lineamientos que establezca el Departamento Nacional de Planeación.

ARTÍCULO 41. El porcentaje de la cesión del impuesto a las ventas asignado a las cajas departamentales de previsión y al Fondo de Prestaciones Sociales del Magisterio con destino al pago de las cesantías definitivas y pensiones del personal docente nacionalizado, continuará pagándose tomando como base los convenios suscritos en virtud de lo dispuesto en la Ley 91 de 1989.

ARTÍCULO 42. La ejecución de los recursos que se giran al Fondo Nacional de Pensiones de las Entidades Territoriales - Fonpet - con cargo al Presupuesto General de la Nación, se realizará por medio de resolución expedida por el Ministerio de Hacienda y Crédito Público, ordenando el giro de los recursos. Si no fuere posible realizar el giro de los recursos a las administradoras del Fondo, bastará para el mismo efecto, que por dicha resolución se disponga la administración de los mismos por parte de la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público a través de una cuenta especial, mientras los recursos puedan ser efectivamente entregados.

Los recursos serán girados con la periodicidad que disponga el Gobierno nacional. En el evento en que los recursos no se hayan distribuido en su totalidad entre las entidades territoriales, los no distribuidos se podrán girar a una cuenta del Fondo administrada de la misma manera que los demás recursos del Fondo, como recursos por abonar a las cuentas correspondientes de las entidades territoriales.

ARTÍCULO 43. El Ministerio de Trabajo y la Administradora Colombiana de Pensiones - Colpensiones, podrán compensar deudas recíprocas por concepto de aportes y devoluciones de los subsidios pagados por la Nación dentro del Programa de Subsidio de Aporte en Pensión, realizando únicamente los registros contables y las modificaciones en las historias laborales de los ciudadanos a que haya lugar. Si subsisten obligaciones a cargo de la Nación *y/o* Colpensiones, corresponderá a la entidad deudora, estimar e incluir en el presupuesto de cada vigencia fiscal la apropiación presupuestal con los recursos necesarios, con el fin de efectuar los pagos de las obligaciones a su cargo.

ARTÍCULO 44. Sin perjuicio de lo establecido en las normas vigentes el pago de la deuda correspondiente al pasivo pensional de las entidades territoriales con el Fomag y en cumplimiento del parágrafo 2° del artículo 18 de la Ley 715 de 2001, el Fonpet deberá girar al Fomag como amortizaciones de la deuda pensional de los entes territoriales los recursos acumulados por cada una de ellas en el sector Educación del Fonpet, solo teniendo en cuenta el valor del pasivo pensional registrado en el Sistema de Información del Fondo. Para el efecto, el Fonpet podrá trasladar recursos excedentes del sector Propósito General de cada entidad territorial al sector educación, cuando no cuenten con los recursos suficientes para atender sus pasivos pensionales en dicho sector.

En caso de que por efecto de la actualización de los cálculos actuariales de las entidades territoriales resulten giros superiores al pasivo pensional, estos serán reintegrados por el Fomag durante la vigencia fiscal al Fonpet, a favor de la Entidad Territorial.

El Fomag informará de estas operaciones a las entidades territoriales para su correspondiente registro presupuestal y contabilización y, a la Dirección General de Regulación Económica de la Seguridad Social del Ministerio de Hacienda y Crédito Público, el detalle de lo correspondiente a cada entidad territorial.

En desarrollo del artículo 199 de la Ley 1955 de 2019, los recursos del Fonpet asignados en el Presupuesto General de la Nación durante la vigencia fiscal 2024 con destino al Fomag, se imputarán en primer lugar a la amortización de la deuda pensional corriente de la vigencia fiscal en curso de los entes territoriales registrada en dicho Fondo, sin perjuicio de las depuraciones posteriores a que haya lugar. En segundo lugar, se aplicarán a las demás obligaciones pensionales y el excelente amortizará a la reserva actuaria.

ARTÍCULO 45. El retiro de recursos de las cuentas de las entidades territoriales en el Fonpet para el pago de bonos pensionales o cuotas partes de bonos pensionales y cuotas partes pensionales, se efectuará de conformidad con la normativa vigente, sin que la entidad territorial requiera acreditar previamente la incorporación en su presupuesto. Durante la vigencia fiscal, tales entidades territoriales deberán realizar la incorporación presupuestal y el registro contable de los pagos que por estos conceptos sean realizados por el Fonpet.

En la vigencia 2024, por solicitud de las entidades territoriales podrán reorientar los recursos para gastos de inversión, las rentas que constituyen aportes a su cargo, de conformidad con la ley 549 de 1999.

La Entidad Territorial informará al Ministerio de Hacienda la opción prefiere para la realización de los aportes, ya sea que se acoja a la opción de reorientación de rentas, al Modelo de Administración Financiera o al Modelo de Suspensión de Aportes.

ARTÍCULO 46. Las entidades estatales podrán constituir mediante patrimonio autónomo los fondos a que refiere el artículo 107 de la Ley 42 de 1993. Los recursos que se coloquen en dichos Fondos ampararán los bienes del Estado cuando los estudios técnicos indiquen que es más conveniente la cobertura de los riesgos con reservas públicas que con seguros comerciales.

*Departamento Administrativo de la Función Pública*

Cuando los estudios técnicos permitan establecer que determinados bienes no son asegurables o que su aseguramiento implica costos de tal naturaleza que la relación costo-beneficio del aseguramiento es negativa, o que los recursos para autoprotección mediante fondos de aseguramiento son de tal magnitud que no es posible o conveniente su uso para tal fin, se podrá asumir el riesgo frente a estos bienes y no asegurarlos ni ampararlos con fondos de aseguramiento.

También podrán contratar un seguro de responsabilidad civil para servidores públicos, mediante cual se ampare la responsabilidad de los mismos por actos o hechos no dolosos ocurridos en ejercicio de sus funciones, y los gastos de defensa en materia disciplinaria, penal y fiscal que deban realizar; estos últimos gastos los podrán pagar las entidades, siempre y cuando exista decisión definitiva que exonere de toda responsabilidad y no sea condenada la contraparte a las costas del proceso.

Esta disposición será aplicada en las mismas condiciones a las Superintendencias, así como a las Empresas Industriales y Comerciales del Estado y a las Sociedades de Economía Mixta asimiladas a estas.

ARTÍCULO 47. Con los ingresos corrientes y excedentes de la Subcuenta de Solidaridad del Fondo de Solidaridad Pensional se podrán financiar programas de la Subcuenta de Subsistencia de dicho Fondo, para la protección de las personas en estado de indigencia o de pobreza extrema, en los términos del Decreto 3771 de 2007, compilado por el Decreto 1833 de 2016 y las normas que lo modifiquen o adicionen.

PARÁGRAFO. Autorícese al Departamento Administrativo para la Prosperidad Social (DPS) para ejecutar los recursos del Fondo de Solidaridad Pensional que financien el Programa Colombia Mayor, en los términos del parágrafo 2 del artículo 50 del Decreto Legislativo 812 de 2020.

ARTÍCULO 48. Con el fin de financiar el Sistema General de Seguridad Social en Salud, en cumplimiento de lo dispuesto en el artículo 48 de la Constitución Política y el artículo 90 de la Ley 1122 de 2007, para la vigencia 2024 se presupuestarán en el Presupuesto General de la Nación los ingresos corrientes y excedentes de los recursos de que trata el artículo 2.6.1.4.1.1 del Decreto 780 de 2016.

Previa cobertura de los riesgos amparados con cargo a los recursos de que trata el artículo 2.6.1.4.1.1 del Decreto 780 de 2016, se financiará, con cargo a dichos recursos la Sostenibilidad y Afiliación de la Población Pobre y Vulnerable asegurada a través del Régimen Subsidiado; una vez se tenga garantizado el aseguramiento, se podrán destinar recursos a financiar otros programas de salud pública.

También podrán ser financiados con dichos recursos, en el marco de lo dispuesto por el artículo 337 de la Constitución Política y los tratados e instrumentos internacionales vigentes, los valores que se determinen en cabeza del Estado colombiano por las atenciones iniciales de urgencia que sean prestadas a los nacionales colombianos en el territorio extranjero de zonas de frontera con Colombia, al igual que las atenciones iniciales de urgencia prestadas en el territorio colombiano a los nacionales de los países fronterizos, de conformidad con la reglamentación que para el efecto expida el Gobierno nacional.

Los excedentes de los recursos de que trata el artículo 2.6.1.4.1.1 del Decreto 780 de 2016, con corte a 31 de diciembre de 2023, serán incorporados en el presupuesto de la Administradora de los Recursos del Sistema General de Seguridad Social en Salud (ADRES), y se destinarán a la financiación del aseguramiento en salud.

ARTÍCULO 49. Las entidades responsables de la reparación integral a la población víctima del conflicto armado del orden nacional darán prioridad en la ejecución de sus respectivos presupuestos, a la atención de dicha población y, en especial, a la población en situación de desplazamiento forzado y a la población étnica víctima de desplazamiento, beneficiarios de sentencias de restitución de tierras, en cumplimiento de la Ley 1448 de 2011, la Ley 2078 de 2021 y a lo ordenado por la Corte Constitucional en la Sentencia T -025 de 2004 y sus Autos de Seguimiento. Estas entidades deberán atender prioritariamente, todas las solicitudes de Ayuda Humanitaria de Emergencia y Transición constituyendo estas un título de gasto prevalente sobre las demás obligaciones de la entidad y para garantizar sostenibilidad a los procesos de restitución de tierras.

ARTÍCULO 50. Durante la vigencia de 2024, con el fin de verificar los avances en la implementación de la Ley 1448 de 2011 y los Decretos ley étnicos 4633,4634 Y 4635 de 2011 modificados por la Ley 2078 de 2021, las entidades encargadas de ejecutar la política de víctimas, especificarán en el Sistema Integrado de Información Financiera (SIIF) Nación, en el Sistema Unificado de Inversiones y Finanzas Públicas (SUIFP), y en los demás aplicativos que para este propósito determinen el Ministerio de Hacienda y Crédito Público y el Departamento Nacional de Planeación, los rubros que dentro de su presupuesto destinan a este fin y remitirán a la Unidad para la Atención y Reparación Integral a las Víctimas los listados de la población beneficiada de las medidas de atención, asistencia y reparación integral previstas para la población víctima del conflicto armado.

ARTÍCULO 51. Bajo la coordinación de la Unidad para la Atención y Reparación Integral a las Víctimas y el Departamento Nacional de Planeación. los órganos que integran el Presupuesto General de la Nación encargados de las iniciativas en el marco de la política pública de asistencia, atención y reparación integral a la población víctima. adelantarán la focalización y municipalización indicativa del gasto de inversión destinado a

dicha población. en concordancia con la Ley 1448 de 2011. prorrogada por la Ley 2078 de 2021 y la reglamentación vigente.

La focalización y territorialización indicativas procurarán la garantía del goce efectivo de los derechos de las víctimas y tendrán en cuenta las características heterogéneas y las capacidades institucionales de las entidades territoriales.

ARTÍCULO 52. Los recursos del Fondo para la Rehabilitación, Inversión y Lucha contra el Crimen Organizado (Frisco). en la presente vigencia fiscal serán transferidos a la Nación por la Sociedad de Activos Especiales (SAE) S.A.S., a la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público, de acuerdo con lo establecido en los Documentos Con pes 3412 de 2006,3476 de 2007 y 3575 de 2009.

ARTÍCULO 53. Sin perjuicio de la responsabilidad fiscal y disciplinaria a que haya lugar, cuando en vigencias anteriores no se haya realizado el pago de obligaciones adquiridas con las formalidades previstas en el Estatuto Orgánico del Presupuesto y demás normas que regulan la materia, y sobre los mismos no se haya constituido la reserva presupuestal o la cuenta por pagar correspondiente, se podrá hacer el pago bajo el concepto de "Pago de Pasivos Exigibles - Vigencias Expiradas".

También procederá la operación prevista en el inciso anterior, cuando el pago no se hubiere realizado pese a haberse constituido oportunamente la reserva presupuestal o la cuenta por pagar en los términos del artículo 89 del Estatuto Orgánico del Presupuesto.

El mecanismo previsto en el primer inciso de este artículo también procederá cuando se trate del cumplimiento de una obligación originada en la ley, exigible en vigencias anteriores, aun sin que medie certificado de disponibilidad presupuestal ni registro presupuestal.

Cuando se cumpla alguna de las anteriores condiciones, se podrá atender el gasto de "Pago Pasivos Exigibles - Vigencias Expiradas", a través del rubro presupuestal correspondiente de acuerdo con el detalle del anexo del decreto de liquidación. Al momento de hacerse el registro presupuestal deberá dejarse consignada la expresión "Pago Pasivos Exigibles - Vigencias Expiradas". Copia del acto administrativo que ordena su pago deberá ser remitido a la Contraloría General de la República.

En todo caso, el jefe del órgano respectivo certificará previamente el cumplimiento de los requisitos señalados en este artículo.

Lo preceptuado en el presente artículo no aplica cuando se configuren como hechos cumplidos.

PARÁGRAFO. Este artículo también aplicará para las Empresas Industriales y Comerciales del Estado y las Sociedades de Economía Mixta asimiladas a estas, donde la Nación tenga una participación del 90 por ciento o más.

ARTÍCULO 54. Las asignaciones presupuestales del Fondo Único de Tecnologías de la Información y las Comunicaciones, incluye los recursos necesarios para cubrir los gastos de funcionamiento en que incurra el Operador Postal Oficial por la Prestación del servicio postal universal y la franquicia postal, el Proveedor de Redes y Servicios de telecomunicaciones por la prestación de los servicios de franquicia telegráfica. En el caso de las franquicias postal y telegráfica, el pago se realizará en relación con los servicios que se presten a los órganos beneficiarios que hacen parte del Presupuesto General de la Nación.

El Fondo Único de TIC efectuara la transferencia de recursos al Operador Postal por la prestación de los servicios de la franquicia postal y/o el proveedor de redes y servicios de telecomunicaciones que efectivamente haya prestado el servicio de telegrafía. El receptor de la transferencia expedirá el respectivo paz y salvo a la entidad beneficiaria de los servicios correspondientes a las franquicias postal y/o telegráfica tan pronto como reciba los recursos.

Los recursos a que se refiere el numeral 8 del artículo 35 de la Ley 1341 de 2009, modificado por el artículo 22 de la ley 1978 de 2019, para financiar gastos de funcionamiento del Ministerio de las Tecnologías de la Información y las Comunicaciones, serán transferidos por el Fondo Único de Tecnologías de la Información y las Comunicaciones a la Dirección General de Crédito Publico y Tesoro Nacional.

PARÁGRAFO 1. El Fondo Único de TIC podrá pagar con cargo a las apropiaciones de la vigencia fiscal de 2024, las obligaciones causadas en el último trimestre de la vigencia 2023 por concepto de servicio postal universal, y franquicias postales y/o telegráfica de que trata el presente artículo.

PARAGRAFO 2. El Fondo Único de TIC podrá destinar los dineros recibidos por la contraprestación de que trata el artículo 14 de la Ley 1369 de 2009, para financiar el servicio postal universal y los gastos de vigilancia y control de los operadores postales.

ARTÍCULO 55. El respaldo presupuestal a cargo de la Nación frente a los títulos que emita Colpensions para amparar el 20% correspondiente a

la Nación del subsidio, o incentivo periódico de los BEPS en el caso de indemnización sustitutiva o devolución de aportes de que trata la Ley 1328 de 2009, considerarán las disponibilidades fiscales de la Nación que sean definidas por el Confis.

Dichos títulos se podrán programar en el Presupuesto General de la Nación hasta por el monto definido en el Marco de Gasto de Mediano Plazo del sector en la vigencia fiscal en la cual se deba realizar su pago, es decir, a los tres años de la emisión del Título.

ARTÍCULO 56. Las entidades que hacen parte del Presupuesto General de la Nación que celebren contratos y convenios interadministrativos con entidades del orden territorial, y en donde se ejecuten recursos de partidas que correspondan a inversión regional, exigirán que para la ejecución de dichos proyectos, la entidad territorial publique previamente el proceso de selección que en el Sistema Electrónico para la Contratación Pública (SECOP), y solo se podrán contratar con Pliegos Tipo establecidos por el Gobierno nacional.

ARTÍCULO 57. Los pagos por menores tarifas del sector eléctrico y de gas que se causen durante la vigencia del presente decreto, podrán ser girados por el Ministerio de Minas y Energía, con base en la proyección de costos realizada con la información aportada por los prestadores del servicio, o a falta de ella, con base en la información disponible. Los saldos que a 31 de diciembre de 2024 se generen por concepto se atenderán con cargo a las apropiaciones la vigencia fiscal siguiente.

El Ministerio de Minas y Energía podrá con cargo a los recursos disponibles apropiados para el efecto, pagar los saldos que por este concepto se hubieren causado en vigencias anteriores.

ARTÍCULO 58. La Nación, a través de la Oficina de Bonos Pensionales del Ministerio de Hacienda y Crédito Público y la Administradora Colombiana de Pensiones - Colpensiones, en virtud del artículo 2.2.16.7.25 del Decreto 1833 de2016, podrán compensar deudas reciprocas por concepto de Bonos Pensionales Tipo A, pagados por la Nación por cuenta de Colpensiones, y obligaciones exigibles a cargo de la Nación, a favor de Colpensiones, por concepto de Bonos pensionales Tipo B y T, sin afectación presupuestal. Para tal efecto, será suficiente que las entidades, lleven a cabo los registros contables a que haya lugar. En el evento, en el que, una vez efectuada la compensación, subsistan obligaciones a cargo de la Nación y/o Colpensiones, corresponderá a la entidad deudora, estimar e incluir en el presupuesto de cada vigencia fiscal, la apropiación presupuestal con los recursos necesarios, con el fin de efectuar los pagos de las obligaciones a su cargo.

ARTÍCULO 59. Las entidades responsables del Sistema Penitenciario y Carcelario del país del orden nacional, darán prioridad en la ejecución con sus respectivos presupuestos, a la atención integral de la población penitenciaria y carcelaria, en cumplimiento de las Sentencias T-388 de 2013 Y T-762 de 2015 de la Corte Constitucional.

ARTÍCULO 60. Con el ánimo de garantizar el derecho al pago oportuno de las mesadas pensionales, Colpensiones podrá recurrir a los recursos de liquidez propios con el propósito de atender el pago de las obligaciones establecidas en los artículos 137 y 138 de la Ley 100 de 1993. Estos recursos serán devueltos por la Nación a Colpensiones, bajo los términos y condiciones acordados por las partes.

ARTÍCULO 61. ACCIÓN DE REPETICIÓN. Las entidades públicas obligadas a ejercer la acción de repetición contenida en el artículo 4o de la Ley 678 de 2001, semestralmente reportarán para lo de su competencia a la Contraloría General de la República y a la Procuraduría General de la Nación, acerca de cada uno de los fallos judiciales pagados con dineros públicos durante el período respectivo, anexando la correspondiente certificación del Comité de Conciliación, donde conste el fundamento de la decisión de iniciar o no, las respectivas acciones de repetición.

Así mismo, dentro de los dos (2) meses siguientes a la decisión del Comité de Conciliación, se remitirán a los organismos de control mencionados en el acápite anterior, las constancias de radicación de las respectivas acciones ante el funcionario judicial competente.

PARÁGRAFO. Lo dispuesto en el presente artículo tendrá efecto para todos los fallos que se hayan pagado a la entrada en vigencia del presente decreto y que aún no hayan sido objeto de acción de repetición.

ARTÍCULO 62. Con el propósito de evitar una doble presupuestación, la Superintendencia de Notariado y Registro girará directamente los recaudos de la Ley 55 de 1985 por concepto de los ingresos provenientes de los derechos por registro de instrumentos públicos y otorgamiento de escrituras en los porcentajes que establece la normativa vigente a la Rama Judicial, la Fiscalía, USPEC, Ministerio de Justicia y del Derecho y el ICBF, con cargo a los valores presupuestados en cada una de ellas, con esta fuente. La Superintendencia hará los ajustes contables a que haya lugar.

ARTÍCULO 63. El Ministerio de Minas y Energía reconocerá las obligaciones por consumo de energía hasta por el monto de las apropiaciones de la vigencia fiscal, financiadas con los recursos del Fondo de Energía Social (FOES). Por tanto, los prestadores del servicio público de energía, no podrán constituir pasivos a cargo de la Nación que correspondan a la diferencia resultante entre el porcentaje señalado por el artículo 190 de la Ley 1753 de 2015 y lo efectivamente reconocido.

ARTÍCULO 64. Los gastos en que incurra el Ministerio de Educación Nacional para la realización de las actividades de control, seguimiento y cobro de valores adeudados, para adelantar el proceso de verificación y recaudo de la contribución parafiscal prevista en la Ley 1697 de 2013, se realizarán con cargo a los recursos depositados en el Fondo Nacional de Universidades Estatales de Colombia, para lo cual se harán los correspondientes registros presupuestales.

ARTÍCULO 65. La Nación podrá emitir bonos en condiciones de mercado u otros títulos de deuda pública para pagar las obligaciones financieras a su cargo causadas o acumuladas, para sanear los pasivos correspondientes a las cesantías de las universidades estatales a que se refiere el artículo 88 de la Ley 30 de 1992, del personal administrativo y docente no acogidos al nuevo régimen salarial. Igualmente, podrá emitir bonos pensiona les de que trata la Ley 100 de 1993, en particular para las universidades estatales.

Así mismo, durante la presente vigencia fiscal la Nación podrá reconocer y pagar, bien sea con cargo al servicio de deuda del Presupuesto General de la Nación o con bonos u otros títulos de deuda pública las obligaciones a cargo del Fondo de Estabilización de Precios de los Combustibles (FEPC) y los bonos pensionales a su cargo de que trata la Ley 100 de 1993 y su Decreto 1833 de 2016, compilatorio de las normas del Sistema General de Pensiones. Cuando se emitan TES clase B para atender el pago de los bonos pensionales a cargo de la Nación que se hayan negociado de acuerdo con el artículo 12 del Decreto 1299 de 1994 en el mercado secundario, podrán ser administrados por la Dirección General de Crédito Público y Tesoro Nacional en una cuenta independiente, con el objetivo de suministrar la respectiva liquidez. El Ministerio de Hacienda y Crédito Público, mediante acto administrativo establecerá los parámetros aplicables a las operaciones de las que trata este inciso.

La Nación podrá reconocer como deuda pública las obligaciones a cargo de la Agencia Nacional de Infraestructura y del Instituto Nacional de Vías, surgidas de los contratos de concesión por concepto de sentencias y conciliaciones hasta por quinientos mil millones de pesos ($500.000.000.000); en estos casos serán reconocidas mediante la emisión de bonos u otros títulos de deuda pública en condiciones de mercado, para lo cual deberá surtirse el procedimiento previsto en el artículo 29 de la Ley 344 de 1996 y sus normas reglamentarias, en lo pertinente.

La responsabilidad por el pago de las obligaciones a que hace referencia el inciso anterior es de la Agencia Nacional de Infraestructura y del Instituto Nacional de Vías, según corresponda.

PARÁGRAFO. La emisión de los bonos o títulos de que trata el presente artículo no implica operación presupuestal y solo debe presupuestarse para efectos de su redención y pago de intereses. El mismo procedimiento se aplicará a los bonos que se expidan en cumplimiento del artículo 29 de la Ley 344 de 1996. La Agencia Nacional de Infraestructura y el Instituto Nacional de Vías al hacer uso de este mecanismo solo procederán con los registros contables que sean del caso para extinguir dichas obligaciones en virtud de los acuerdos de pago que suscriban con el Ministerio de Hacienda y Crédito Público.

ARTÍCULO 66. Las partidas del Presupuesto General de la Nación con destino al Fondo de Protección de Justicia de que trata el Decreto 200 de 2003 y las normas que lo modifiquen o adicionen, quedan incorporadas en la Rama Judicial Consejo Superior de la Judicatura, Fiscalía General de la Nación, Procuraduría General de la Nación y Ministerio del Interior.

ARTÍCULO 67. DEL FUNCIONAMIENTO Y DESARROLLO DEL FONDO PARA LA DEFENSA DE LOS DERECHOS E INTERESES COLECTIVOS. Con base en lo dispuesto en la Ley 472 de 1998, la Defensoría del Pueblo financiará el funcionamiento del Fondo con el producto de los rendimientos financieros del capital de dicho Fondo.

ARTÍCULO 68. ADMINISTRACIÓN Y FUNCIONAMIENTO DEL SISTEMA NACIONAL DE DEFENSORÍA PÚBLICA. Con base en la transferencia realizada para el desarrollo del Sistema Nacional de Defensoría Pública, serán imputables a la misma los gastos de funcionamiento que garanticen el debido desarrollo de los postulados previstos en la Ley 941 de 2005, con base en el principio de programación integral previsto en el artículo 17 del Estatuto Orgánico del Presupuesto.

ARTÍCULO 69. Cuando existan rendimientos financieros generados por el Fondo de Devolución de Armas, dichos recursos serán incorporados en la Sección Presupuestal1501 Ministerio de Defensa Nacional, como fuente de ingreso Fondos Especiales (Fondos Internos), los cuales serán utilizados de acuerdo con lo establecido en el Estatuto Orgánico del Presupuesto.

ARTÍCULO 70. Las operaciones de cobertura previstas en los artículos 129 de la Ley 2010 de 2019 - Fondo de Estabilización del Ingreso Fiscal- y 33 de la Ley 1955 de 2019 -Fondo de Estabilización de Precios de los Combustibles- se podrán estructurar, contratar y ejecutar en forma conjunta, como parte de un programa integral de mitigación de los riesgos fiscales derivados de las fluctuaciones de los precios del petróleo, los combustibles líquidos y la tasa de cambio del peso colombiano por el dólar estadounidense. Los costos generados por la ejecución de dichas operaciones se podrán asumir con cargo al servicio de la deuda pública del Presupuesto General de la Nación cuando los recursos disponibles en dichos fondos sean insuficientes. Las operaciones de cobertura de que trata el presente artículo se podrán administrar por la Dirección General de Crédito Público y Tesoro Nacional a través de cuentas independientes mientras son incorporadas a los fondos respectivos. En caso de percibirse recursos en virtud de las operaciones de cobertura, estos podrán ser incorporados en los estados financieros del Fondo de

Estabilización del Ingreso Fiscal (FEIF) para posterior utilización de los mismos.

ARTÍCULO 71. VERIFICACIÓN DEL REGISTRO DE PROYECTOS FINANCIADOS O COFINANCIADOS. Para la correspondiente asignación de recursos de la Nación que cofinancian proyectos en cualquier nivel de gobierno, los órganos que son una sección dentro del Presupuesto General de la Nación deberán verificar que los proyectos cofinanciados estén registrados en el Banco Nacional de Programas y Proyectos administrado por el Departamento Nacional de Planeación. Lo dispuesto en el inciso anterior también aplica en los eventos en que la financiación o cofinanciación la realicen los órganos del Presupuesto General de la Nación a través de fiducias, encargos fiduciarios y/o patrimonios autónomos.

ARTÍCULO 72. ADQUISICIÓN DE DIVISAS PARA LA EJECUCIÓN PRESUPUESTAL DEL SERVICIO DE DEUDA EXTERNA. A fin de fijar el valor definitivo de las apropiaciones necesarias para atender el servicio de la deuda externa frente a posibles variaciones en las tasas de cambio, se autoriza a la Dirección General de Crédito Público y Tesoro Nacional del Ministerio de Hacienda y Crédito Público, para que con la orden de afectación presupuestal pueda adquirir las divisas necesarias que permitan la ejecución presupuestal correspondiente al servicio de deuda externa del Presupuesto General de la Nación, registrando las obligaciones presupuesta la a la tasa de cambio vigente a la fecha de la afectación presupuestal. Para atender los pagos requeridos del servicio de deuda externa, la Dirección General de Crédito Público y Tesoro Nacional podrá conformar los portafolios en divisas que requiera con los recursos derivados de la afectación presupuestal correspondiente.

ARTÍCULO 73. ASISTENCIA Y REPRESENTACIÓN JUDICIAL DE ENTIDADES PÚBLICAS. Dentro del marco de colaboración armónica que debe orientar las actuaciones administrativas de las distintas autoridades y entidades del Estado, y con el fin de reducir costos de desplazamientos y gastos judiciales, se tendrán en cuenta las siguientes consideraciones:

a) Cuando varias entidades de la administración pública tanto del orden nacional como territorial, actúen como demandantes o demandadas dentro de un proceso judicial, podrán de común acuerdo con los apoderados judiciales que uno de ellos tome la representación judicial de las restantes para la comparecencia de las audiencias que dentro del respectivo proceso hayan sido convocadas o por ley deban asistir. Para tal efecto la entidad encomendada a asumir la representación judicial para la audiencia correspondiente, estará en capacidad y queda facultada para disponer uno de sus apoderados o funcionarios que reciba los poderes que se requieran.

b) En materia de cobro de costas judiciales en que varias entidades de la Rama Ejecutiva, entre ellas el Ministerio de Hacienda y Crédito Público, sean beneficiarias de los mismos, el recaudo de la totalidad de ellas estará a cargo de Ministerio de Hacienda y Crédito Público quien queda facultado para iniciar los cobros judiciales o extrajudiciales respectivos. Cuando las costas incluyan agencias en derecho las mismas se entenderán a favor de la entidad pública y no del apoderado que las representa. Sin perjuicio de lo dispuesto en el literal a) del presente artículo, las entidades podrán a través de la modalidad de teletrabajo, representar y vigilar los procesos en las diferentes zonas del país.

ARTÍCULO 74. INCORPORACIÓN DE RECURSOS ENTIDADES TERRITORIALES Al FONDO DE LA REGISTRADURÍA PARA El EJERCICIO DE LOS MECANISMOS DE PARTICIPACIÓN CIUDADANA. Para la vigencia del 2024 el Fondo Rotatorio de la Registraduría Nacional del Estado Civil, a través de convenios, podrá recibir los recursos que aporten las entidades territoriales para la financiación de mecanismos de participación ciudadana, en virtud de los principios de colaboración armónica y autonomía territorial, en coordinación con la Registraduría Nacional del Estado Civil.

Con dichos recursos, se atenderán los gastos correspondientes a la financiación de mecanismos de participación ciudadana solicitados por las entidades territoriales, previo recaudo de los aportes de la entidad territorial solicitante, y en el monto que se reciba por parte de la entidad territorial solicitante.

ARTÍCULO 75. OBLIGACIÓN DE REPORTE - BONOS TEMÁTICOS SOBERANOS. Sin perjuicio de las obligaciones de reporte ya existentes, las entidades ejecutoras del Presupuesto General de la Nación (PGN) que tengan transferencias o proyectos seleccionados para hacer parte de los portafolios de bonos temáticos de acuerdo a los marcos de referencia a los que se refiere el artículo 40 de la Ley 2073 de 2020, deberán proveer al Ministerio de Hacienda y Crédito Público y el Departamento Nacional de Planeación, cada 6 meses una vez emitido el bono temático la información necesaria para realizar los reportes a los inversionistas, tales como indicadores de impacto, desempeño y controversias ambientales, sociales o de gobernanza que se presenten en estos gastos o proyectos.

ARTÍCULO 76. En las Empresas Industriales y Comerciales del Estado y Sociedades de Economía Mixta con el régimen de aquellas y en las Empresas de Servicios públicos y sus subordinadas, en las cuales la participación de la Nación directamente o a través de sus entidades descentralizadas sea igualo superior al noventa por ciento y que desarrollen sus actividades bajo condiciones de competencia, la aprobación y modificación de su presupuesto, de las viabilidades presupuestales y de las vigencias futuras, corresponderá a las juntas directivas de las respectivas empresas y sociedades, sin requerirse concepto previo de ningún órgano o entidad gubernamental.

PARÁGRAFO. Estas empresas y sociedades seguirán reportando su información presupuestal a la Dirección General del Presupuesto Público Nacional y a la Dirección de Programación de Inversiones Públicas, de acuerdo con lo establecido en el artículo 93 del Estatuto Orgánico del Presupuesto.

ARTÍCULO 77. PAGO DE OBLIGACIONES DEL FONDO DE ESTABILIZACIÓN DE PRECIOS DE LOS COMBUSTIBLES (FEPC). Para atender las obligaciones a cargo del Fondo de Estabilización de Precios de los Combustibles (FEPC), incluidas las causadas en vigencias anteriores, el Ministerio de Hacienda y Crédito Público realizará directamente las correspondientes transferencias o compensaciones. Para realizar las correspondientes transferencias o compensaciones el Ministerio de Hacienda y Crédito Público podrá: (i) utilizar las apropiaciones presupuestales de funcionamiento o de servicio de la deuda disponibles no comprometidas; (ii) utilizar los recursos que se encuentren como saldos de caja del FEPC, y (iii) compensar total o parcialmente, con cargo a los dividendos decretados por Ecopetrol S.A a favor de la Nación, las obligaciones liquidadas del FEPC con el Grupo Ecopetrol, sin que ello implique un movimiento de efectivo para las partes ni operación presupuestal alguna. Esta última operación deberá ser presentada ante el Consejo Nacional de Política Económica y Social (Conpes) para su recomendación, en el marco del artículo 97 del Decreto 111 de 1996 - Estatuto Orgánico de Presupuesto.

ARTÍCULO 78. ENTES AUTÓNOMOS UNIVERSITARIOS ESTATALES UNIVERSIDADES PÚBLICAS. En cumplimiento de la sentencia C-346 de 2021 proferida por la Corte Constitucional, las apropiaciones presupuestales se asignan en la sección presupuestal 2257 denominada "Entes autónomos universitarios estatales - Universidades Públicas", en la cual se incorporan los montos totales de gastos de funcionamiento e inversión que la Nación transfiere a cada uno de estos entes autónomos. El gasto de funcionamiento e inversión de cada universidad está contenido en el anexo que forma parte del presente decreto. En el caso de los recursos de inversión de que trata el artículo 86 de la Ley 30 de 1992, cada ente autónomo universidad pública deberá tener registrado un proyecto de inversión en el Banco de Proyectos de Inversión Nacional (BPIN).

PARÁGRAFO 1. En el anexo del decreto de liquidación del Presupuesto General de la Nación dentro de la sección presupuestal "Entes autónomos universitarios estatales - Universidades Públicas", cada Universidad se identificará como una unidad ejecutora solo para lo relacionado con la gestión presupuestal del giro de dichos recursos y realizará el registro de la ejecución presupuestal de los montos señalados en el Sistema Integrado de Información Financiera (SIIF) Nación, solamente para la transferencia de estos recursos a sus tesorerías, para lo cual se garantizará el PAC sin necesidad de solicitud, atendiendo la respectiva autonomía presupuestal sin que por ello sean considerados como establecimientos públicos.

Las transferencias diferentes a las establecidas en la sección presupuestal 2257 o los pagos que requieran ser efectuados por entidades del Presupuesto General de la Nación a los entes autónomos estatales - Universidades Públicas, se girarán como si las mismas fueran un tercero no usuario del Sistema Integrado de Información Financiera (SIIF).

PARÁGRAFO 2. Para efectos de la programación del Presupuesto General de la Nación de 2025, los entes autónomos universitarios estatales - Universidades Públicas no requerirán anteproyecto de presupuesto, en virtud de su autonomía presupuestal.

Lo previsto en este artículo solo aplicará en lo relacionado con la gestión presupuestal del gasto para el giro de los recursos, sin perjuicio de la autonomía universitaria para planear, programar, apropiar, ejecutar y modificar sus presupuestos.

ARTÍCULO 79. Para efectos de la distribución de los criterios que utilicen datos censales del Sistema General de Participaciones para las once doceavas de la vigencia de aplicación del presente decreto, se garantizará a todos los beneficiarios como mínimo el 50% de lo asignado por concepto de las once doceavas de la vigencia anterior.

PARÁGRAFO. El criterio de eficiencia de las Participaciones para Propósito General, Agua Potable y Saneamiento Básico, el Subcomponente de Salud Pública de la Participación para Salud y la Asignación Especial para Programas de Alimentación Escolar, así como la distribución de la Participación para Educación, el Subcomponente de Subsidio a la Oferta de la Participación para Salud y la Asignación Especial del 2.9% al Fondo Nacional de Pensiones de las Entidades Territoriales (Fonpet) del Sistema General de Participaciones, se exceptúan de la medida contemplada en el presente artículo.

ARTÍCULO 80. En los presupuestos del Ministerio de Hacienda y Crédito Público y del Departamento Nacional de Planeación se incluirá una apropiación con el objeto de atender los gastos para prevención y atención de desastres Atención, Asistencia y Reparación Integral a las Víctimas del Conflicto Armado Interno, así como para financiar programas y proyectos de inversión que se encuentren debidamente registrados en el Banco Nacional de Programas y Proyectos, de conformidad con el artículo 68 del Estatuto Orgánico del Presupuesto, sin cambiar su destinación y cuantía, en los términos de la Sentencia C-006 de 2012 de la Corte Constitucional.

PARÁGRAFO. Se podrán efectuar distribuciones dentro del proceso de ejecución presupuestal para la financiación de proyectos que se encuentren registrados en el Banco Nacional de Programas y Proyectos, sin cambiar su destinación y cuantía, con el fin de promover el cumplimiento del Plan Nacional de Desarrollo 2022-2026, el desarrollo territorial y el fortalecimiento de los programas sociales.

ARTÍCULO 81. Los certificados de libertad y tradición por no corresponder a derechos de registro de instrumentos públicos, serán excluidos para dar cumplimiento a lo establecido en los artículos 13 y 13ª de la Ley 55 de 1985.

ARTÍCULO 82. Con cargo a los recursos del Sistema General de Participaciones del sector educación de la vigencia 2024, se podrán financiar las obligaciones laborales causadas y pendientes de pago de la vigencia 2023 que correspondan a contribuciones de nómina, aportes patronales y del afiliado con destino al Fomag y parafiscales.

ARTÍCULO 83. En el evento en que la Nación tenga pendiente el giro de recursos de vigencias anteriores a una entidad territorial con cargo al Sistema General de Participaciones, por efecto de las medidas adoptadas en aplicación del Decreto 028 de 2008 o por falta del registro oportuno de la Cuenta Maestra, la entidad del orden nacional ordenadora de gasto notificará a la Dirección General de Crédito Público y del Tesoro Nacional dicha situación y su cuantía, y se ejecutará presupuestalmente, manteniendo los recursos en una cuenta separada y administrada por la mencionada Dirección, que no implica reconocimiento diferente al monto no girado.

Una vez se supere la situación que dio lugar al recurso pendiente de giro, la entidad de orden nacional ordenadora del gasto informará a la Dirección General de Crédito Público y Tesoro Nacional para que se proceda con el giro, sin que para dicho evento proceda operación presupuestal alguna.

ARTÍCULO 84. Las entidades que son sección presupuestal, que hayan cambiado su código de identificación presupuestal por disposición legal, ejecutarán las reservas presupuestales y pagaran las cuentas por pagar que se constituyan al cierre de la vigencia fiscal de 2023 con cargo al rubro que les dio origen en la codificación de la vigencia fiscal 2023. El mismo procedimiento aplicará para la ejecución de las reservas presupuestales y el pago de las cuentas por pagar que se constituyan al cierre de la vigencia fiscal 2023 en cabeza de la unidad ejecutora 280102 Registraduría Nacional del Estado Civil - Consejo Nacional Electoral.

ARTÍCULO 85. Durante la vigencia 2024, el Ministerio de Minas Energía y destinará recursos para promover y cofinanciar proyectos dirigidos a la prestación del servicio público de gas combustible a través del desarrollo de infraestructura del Gas Licuado de Petróleo - GPL por red a nivel Nacional y masificar su uso en el sector rural y en los estratos bajos urbanos, con cargo a los recursos dispuestos en la presente vigencia para el proyecto de distribución de recursos al consumo en cilindros y proyectos de infraestructura de GLP.

ARTÍCULO 86. Con el fin de dar cierre al proceso de Nivelación Salarial para los empleados de planta no vinculados a las Unidades de Trabajo Legislativo del H. Congreso de la República, aprópiense a través del Ministerio de Hacienda y Crédito Público seis mil millones de pesos ($6.000.000.000), los cuales se adicionaran en gastos de funcionamiento de las respectivas Corporaciones, y se dividirán entre la Cámara de Representantes y el Senado de la República.

ARTÍCULO 87. Atendiendo a la especial condición insular del Departamento Archipiélago de San Andrés, Providencia y Santa Catalina, y a los objetivos de preservación de la reserva de biosfera Sea Flower, en el actual presupuesto se asignarán recursos para el Ministerio de Vivienda, Ciudad y Territorio con el objeto de atender los costos que no sean recuperables vía tarifa o subsidios, de la puesta en marcha, operación y mantenimiento del sistema de extracción, adecuación y tratamiento de residuos sólidos para el departamento. Los prestadores del sistema deberán reportar al Ministerio de Vivienda, Ciudad y Territorio los costos de dichas actividades que no puedan ser recuperados, con el fin de que les sean girados mensualmente para garantizar la continua operación del sistema. Con el fin de efectuar dicho giro, el citado Ministerio deberá solicitar la información que considere necesaria a las autoridades competentes para asegurar que los costos asumidos correspondan a aquellos que no puedan ser cubiertos vía tarifa o subsidios.

El Ministerio de Vivienda, Ciudad y Territorio podrá con cargo a los recursos disponibles apropiados para el efecto, pagar los saldos que por este concepto se hubieren causado en la vigencia 2023 para la planta de manejo de residuos sólidos de San Andrés.

ARTÍCULO 88. Las entidades responsables del cumplimiento de lo ordenado en la Sentencias T-302 de 2017, que declara "la existencia de un estado de cosas inconstitucional en relación con el goce efectivo de los derechos fundamentales a la alimentación, a la salud, al agua potable y a la participación de los niños y niñas del pueblo Wayúu, darán prioridad en la ejecución de sus respectivos presupuestos para que las obligaciones emanadas, beneficien a la población objetivo.

Estas entidades deberán atender prioritariamente, todas las solicitudes de ayuda y transición constituyendo estas, en el título de gasto prevalente sobre las demás obligaciones de la entidad.

ARTÍCULO 89. El Gobierno nacional a través del Ministerio de Hacienda y Crédito Público, complementara recursos al Fondo para el Desarrollo Integral del Distrito Especial de Buenaventura, para la implementación del Plan Especial para el Desarrollo Integral del Distrito de Buenaventura, de conformidad con lo establecido por la Ley 1872 de 2017.

Durante la vigencia del presente decreto, la financiación de los proyectos de inversión será definida de conformidad con los avances en la formulación y viabilizarían de los proyectos.

ARTÍCULO 90. Principios de economía, eficiencia y eficacia en la actuación de la Unidad Administrativa Especial Dirección de Impuestos y

Aduanas Nacionales - UAE DIAN. Para optimizar los recursos de la Unidad Administrativa Especial Dirección de Impuestos y Aduanas Nacionales - UAE DIAN en aquellas actividades que permitan realizar inteligencia tributaria, obtener un mayor recaudo y/o combatir conductas ligadas al incumplimiento de las obligaciones tributarias, aduaneras y cambiarias, el Director General definirá, en coordinación con el Ministro de Hacienda y Crédito Publico, la política para iniciar procesos y actuaciones administrativas a cargo de la entidad, así como para ejercer el deber de denuncia y el medio de control de reparación directa, para lo cual el Director de la DIAN expedirá la resolución.

Las áreas competentes decidirán de manera motivada de acuerdo con la resolución expedida.

ARTÍCULO 91. La Financiera de Desarrollo Territorial S A. - FINDETER estructurará previa verificación de la Superintendencia Financiera de Colombia el cumplimiento de los requisitos para la administración y gestión de los sistemas integrales de riesgos, otorgar crédito directo, con o sin tasa compensada, a las empresas de distribución y comercialización de energía eléctrica de naturaleza oficial, mixta y/o privada, que hayan aplicado a la opción tarifaria regulatoria establecida por la Comisión de Regulación de Energía y Gas-CREG.

FINDETER establecerá las condiciones a través de las cuales otorgará los créditos hasta por un monto equivalente al saldo acumulado pendiente de cobro de la opción tarifaria de cada empresa de distribución y comercialización a la fecha de expedición del presente decreto; sujeto a la disponibilidad de recursos.

PARÁGRAFO. FINDETER podrá evaluar y aceptar como garantía de las empresas de distribución y comercialización para el otorgamiento de los créditos a los que se refiere el presente artículo, las siguientes: (i) la cesión de los derechos económicos del saldo acumulado pendiente de cobro de la opción tarifaria debidamente certificado por la Superintendencia de Servicios Públicos Domiciliarios; (ii) la cesión de los derechos económicos asociados al pago de hasta el noventa por ciento (90%) de los subsidios futuros que razonablemente se vayan a causar por la prestación del servicio calculados con base en la facturación mensual promedio de los últimos dos (2) años debidamente certificado por la Superintendencia de Servicios Públicos Domiciliarios; (iii) la cesión de la porción no subsidiada de las cuentas por cobrar o facturas debidas por los usuarios de cualquier estrato, certificada por representante legal y contador y/o revisor fiscal o quien haga sus veces; (iv) los subsidios causados pendientes de gire certificados por la entidad competente; (v) cualquier otro tipo de garantía suficiente para la entidad financiera de conformidad con la normatividad vigente.

ARTÍCULO 92 ANEXO. El detalle del gasto para la vigencia fiscal del 2024 está contenido en el anexo que acompaña el presente Decreto, de conformidad con lo establecido en el artículo 67 del Estatuto Orgánico de Presupuesto.

https://www.funcionpublica.gov.co/eva/gestornormativo/documentos/decreto-163-2024_imagen1_decreto63del2024.pdf

jurisprudencia228030_1709935950048

(Modificado por el Art. 2 del Decreto 312 de 2024)

(Modificado por el Art. 1 del Decreto 163 del 2024)

ARTÍCULO 93. VIGENCIA. El presente decreto rige a partir de la fecha de su publicación y surte efectos fiscales a partir del 1 de enero del 2024.

ARTÍCULO 94. CONCEPTO PREVIO DEL DEPARTAMENTO NACIONAL DE PLANEACIÓN. Las modificaciones y/o distribuciones en el presupuesto de gastos de inversión, sin cambiar su destinación, se harán mediante resolución suscrita por el jefe del respectivo órgano para lo cual requerirán el concepto previo favorable del Departamento Nacional de Planeación - Dirección de Programación de Inversiones Públicas. Estas operaciones presupuestales se someterán a la aprobación del Ministerio de Hacienda y Crédito Público - Dirección General del Presupuesto Público Nacional.

(Adicionado por el Art. 3 del Decreto 312 de 2024)

PUBLÍQUESE Y CÚMPLASE

Dado en Bogotá D.C., a los 29 DIC 2023

EL PRESIDENTE DE LA REPUBLICA

(FDO) GUSTAVO PETRO URREGO

EL MINISTRO DE HACIENDA Y CRÉDITO PÚBLICO,

RICARDO BONILLA GONZÁLEZ

*Fecha y hora de creación: 2025-03-07 13:47:59*

# English Translation
# of Exhibit 32



# Decree 2295 of 2023

> The data published is for informational purposes only. The Administrative Department of the Civil Service is not responsible for the validity of this regulation. We are constantly updating the content.

DECREE 2295 OF 2023

(December 29)

LAST UPDATE: MARCH 6, 2024

By which the General Budget of the Nation for the fiscal year 2024 is liquidated, the appropriations are detailed and the expenses are classified and defined

The President of the Republic of Colombia

In exercise of the constitutional and legal powers, especially those conferred by Article 67 of the Organic Statute of the Budget, and

CONSIDERING

That Article 67 of the Organic Statute of the General Budget of the Nation empowers the national Government to issue the Decree of Liquidation of the General Budget of the Nation.

The aforementioned article establishes that the Decree will be accompanied by an annex containing the details of the expenditure for the respective fiscal year.

That Article 21 of Law 2342 of 2023 "By which the budget of income and capital resources and appropriations law are decreed for the fiscal year from January 10 to December 31, 2024" empowers the National Government to classify income and expenses in the Liquidation Decree and define the latter.

That in accordance with the above and in accordance with article 209 of the Political Constitution, which states that the administrative function is at the service of general interests and is developed based on the principles of efficiency, economy and speed, it is up to the National Government to exercise the power conferred in article 67 of the Organic Statute of the Budget and thus guarantee the proper execution of the resources contained in the General Budget of the Nation.

That in light of the above,

DECREE

PART ONE

CHAPTER I

ARTICLE 1. EXPENDITURE BUDGET OR APPROPRIATION LAW. To cover the operating, investment and public debt service expenses of the General Budget of the Nation during the fiscal year from January 1 to December 31, 2024, the following sum shall be appropriated: FIVE HUNDRED TWO TRILLION FIVE HUNDRED NINETY-SIX THOUSAND EIGHT HUNDRED THIRTY-THREE MILLION TWO HUNDRED TWENTY-FOUR THOUSAND ONE HUNDRED EIGHTY-NINE PESOS IN LEGAL CURRENCY ($502,596,833,224,189), according to the details established in article 2. of Law 2342 of

Machine Translated by Google

2023 "By which the budget of income and capital resources and appropriations law are decreed for the fiscal year from January 1 to December 31, 2024.

ANNEX

jurisprudence228030_1709935802599

(Modified by Art. 1 of Decree 312 of 2024)

(Annex Modified by Art. 1 of Decree 103 of 2024)

SECOND PART

BUDGET OF INCOME AND CAPITAL RESOURCES

ARTICLE 2. BUDGET OF REVENUES AND CAPITAL RESOURCES. The calculations of the budget of revenues and capital resources of the Treasury of the Nation for the fiscal year from January 10 to December 31, 2024, shall be set at the sum of FIVE HUNDRED TWO TRILLION FIVE HUNDRED NINETY-SIX THOUSAND EIGHT HUNDRED THIRTY-THREE MILLION TWO HUNDRED TWENTY-FOUR THOUSAND ONE HUNDRED EIGHTY-NINE PESOS CURRENCY LEGAL ($502,596,833,224,189), according to the details below:

https://www.funcionpublica.gov.co/eva/gestornormativo/documentos/decreto-2295-2023_imagen2_decreto2295de2023.pdf

THIRD

GENERAL PROVISIONS

ARTICLE 3. The general provisions of this decree are complementary to laws 38 of 1989, 179 of 1994, 225 of 1995, 819 of 2003, 1473 from 2011 and 1508 of 2012 and other organic regulations and must be applied in harmony with these.

These rules apply to the bodies that make up the General Budget of the Nation, and to the resources of the Nation assigned to the State Industrial and Commercial Enterprises and to the Mixed Economy Companies under their regime.

Funds without legal personality must be created by law or by express authorization and shall be subject to the rules and procedures established in the Political Constitution, the Organic Budget Statute, this decree, and other regulations governing the bodies to which they belong.

CHAPTER I

OF INCOME AND RESOURCES

ARTICLE 4. Requests for modifications to financing sources when they involve credit resources from the different appropriations detailed in the annex to the liquidation decree, provided that they do not modify the amounts approved by the Congress of the Republic in the annual law, will require a prior opinion from the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit.

ARTICLE 5. The current income of the Nation and those contributions and resources that legal regulations have not authorized for collection and management by another body, form part of the National Single Account System and therefore must be recorded in the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit.

Superintendencies that are not a budget section must record in the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit the value of the contributions established in the law within five (5) business days following receipt of the resources.

ARTICLE 6. TIMELINESS OF RECORDING COLLECTION. In order to meet the standards of quality, timeliness, and transparency of public financial management, the bodies of the General Budget of the Nation, without prejudice to the application of the measures provided for noncompliance, must record the collection of revenues under their administration in the Integrated Financial Information System (SIIF Nación), at the time the situation associated with the generation of the respective economic event is identified.

To this end, the General Directorate of Public Credit and National Treasury and the treasuries of the entities will regularly report to the bodies of the General Budget of the Nation, the transactions recorded in the collecting bank accounts that require timely budgetary allocation, regardless of any adjustments that may be necessary, for the purposes of accounting closure in the month following the collection and in accordance with the schedule established by the National SIIF Administrator.

Likewise, entities that execute appropriations financed with resources without funds or cash flow must record the execution of the income in the National SIIF no later than the time of making the payment from said resources.

The bodies of the General Budget of the Nation that record revenue from public financial management through their own mission-related applications and that interoperate with the National SIIF (Institutional Tax System of the Nation) must ensure that collections are reflected online and in real time or guarantee that they are recorded at least daily.

ARTICLE 7. The Ministry of Finance and Public Credit, through the General Directorate of Public Credit and National Treasury, shall establish the technical criteria and conditions for the management of excess liquidity and for the execution of risk hedging operations, in accordance with short- and long-term monetary, exchange rate, and interest rate objectives.

ARTICLE 8. The national Government may issue Treasury bonds, TES, Class "B", based on the power of Law 51 of 1990, in accordance with the following rules: they will not have a joint and several guarantee from the Bank of the Republic; the estimated income from their placement will be included in the General Budget of the Nation as capital resources, with the exception of those from the placement of securities for temporary treasury operations and those issued to regulate the economy's liquidity; their yields will be covered by the General Budget of the Nation, with the exception of those issued to regulate the economy's liquidity and those issued for temporary treasury operations; their redemption will be covered by resources from the General Budget of the Nation, with the exception of temporary treasury operations and those issued to regulate the economy's liquidity; they may be managed directly by the Nation; they may be denominated in foreign currency; their issuance will only require a Decree authorizing it, establishing the amount and its financial conditions. The issuance intended to finance budget appropriations will be limited by the amount of these; its issuance will not affect the debt limit.

ARTICLE 9. The liquidation of the financial surpluses referred to in the Organic Statute of the Budget, which are carried out during the validity of this decree, will be made based on a projection of the income and expenses for the period following the cut-off date of the Financial Statements, which also include the unbudgeted accounts receivable and payable, the budgetary reserves, as well as the initial availability (cash, banks and investments).

ARTICLE 10. The titles issued to carry out temporary transfer of securities under the terms of article 146 of Law 1753 As of 2015, they will only require a decree authorizing them, setting the amount, and establishing their financial conditions. Their redemption and other associated securities will be covered by the proceeds of the transfer transaction, and their issuance will not affect the public debt balance.

ARTICLE 11. No later than January 20, 2024, the bodies that comprise the General Budget of the Nation will make adjustments to the records in the Integrated Financial Information System (SIIF) Nation, both in the imputation by concept of income that correspond to the detailed records of collections of its public financial management as of December 31 of the previous year, as well as expenses, when there is a need to cancel commitments and/or obligations.

ARTICLE 12. The financial returns obtained by the National Single Account System, as well as those originated with resources of the Nation, and those originating from the own resources of the entities, funds, accounts and other bodies that are part of said System that make up the General Budget of the Nation, belong to the Nation, in accordance with the provisions of articles 16 and 101 of the Organic Budget Statute. The regulations issued by the national government for the purposes of the periodicity, calculation methodology, settlement method, and transfer of said income shall remain in effect for the duration of this decree. The following are exempt from the above provision: income originating from resources of national state entities that administer parafiscal contributions and social security and welfare bodies that administer economic social benefits, financial income originating from autonomous assets whose processing is authorized by law, as well as income from third-party resources that said state entities maintain as deposits or for administration.

CHAPTER II

OF THE EXPENSES

ARTICLE 13. The allocations to the budget will be made taking into account the main benefit originated in the commitments acquired and with the charge to this item the other inherent or accessory costs will be covered. With the appropriations of each item

Machine Translated by Google

budgetary, which are affected by the commitments, the obligations arising from these will be addressed, such as unforeseen costs, adjustments and revision of values and default interest, taxes on financial transactions and nationalization expenses.

ARTICLE 14. The processing of administrative acts or obligations that affect the expenditure budget is prohibited when they do not meet the legal requirements or are considered accomplished facts. The legal representative and expenditure manager, or those to whom they have delegated, shall be held disciplinary, fiscal, and criminally liable for failure to comply with the provisions of this regulation.

ARTICLE 15. To fill vacant positions, a certificate of budget availability will be required for the fiscal year 2024. Through this certificate, the head of the budget or whoever acts in his place will guarantee the existence of resources from January 1 to December 31, 2024, for all personnel expenses, unless the appointment is to replace a position filled or created during the fiscal year, for which a certificate of budget availability must be issued for the remainder of the fiscal year.

All employment provisions for public servants must correspond to those provided for in the staff plan, including the links of official workers and have their emoluments provided for in accordance with article 122. of the Political Constitution.

The appointment of supernumerary staff for periods exceeding three months must be authorized by a resolution signed by the head of the respective body.

In compliance with article 49 of Law 179 of 1994, prior to the start of a merit-based competition process to fill administrative career positions, the entity must certify the budget availability to cover the cost of the competition, the positions to be announced, and their filling.

ARTICLE 16. The request for modification to the staffing plans, in addition to what is contemplated in the austerity regulations, will require the following requirements for its consideration and processing by the Ministry of Finance and Public Credit - General Directorate of the National Public Budget:

Statement of reasons

Comparative costs of current and proposed plants

Effects on the acquisition of goods and services of the entity

Concept of the National Planning Department if investment expenses are affected, and

Any other matters that the General Directorate of the National Public Budget considers relevant.

The Administrative Department of the Civil Service will approve proposed changes to staffing levels once they have received approval or budgetary feasibility from the Ministry of Finance and Public Credit - General Directorate of the National Public Budget.

ARTICLE 17. Resources allocated to training and social welfare programs may not be intended to create or increase salaries, bonuses, additional wages, premiums, social benefits, extra-legal remunerations or occasional monetary incentives that the law has not established for public servants, nor may they be used to provide direct benefits in cash or in kind.

All permanent and temporary public officials may participate in the entity's training programs; tuition fees for permanent and temporary officials shall be transferred directly to educational institutions, except as provided for in Article 114. of Law 30 of 1992, amended by Article 27 of Law 1450 of 2011. Its granting will be made in accordance with the internal regulations for the permanent or temporary staff of the respective body.

ARTICLE 18. The constitution and operation of the petty cash funds in the bodies that make up the General Budget of the Nation, and in the national entities with a budgetary regime of State Industrial and Commercial Enterprises with a non-financial character, with respect to the resources assigned to them by the Nation, will be governed by Decree 1068 of 2015 and by any other regulations that modify or add to it.

ARTICLE 19. Distributions may be made within the income and expenditure budget, without changing their purpose, by means of a resolution signed by the head of the respective body. In the case of national public establishments, these distributions shall be made by resolution or agreement of the governing boards or councils. If no governing boards or councils exist, their legal representative shall make the allocation. These budgeted operations shall be submitted for approval by the Ministry of Finance and Public Credit - General Directorate of the National Public Budget. In the case of investment expenditures, they shall require the prior favorable opinion of the National Planning Department - Directorate of Public Investment Programming.

Machine Translated by Google

The heads of the bodies shall be responsible for the legality of the acts in question.

To avoid duplication in cases where the distribution affects the budget of another agency that is part of the General Budget of the Nation, the same administrative act will serve as the basis for making the corresponding adjustments in the distributing agency and incorporating those of the receiving agency. The budgetary execution of these funds must be carried out by the recipients during the same period of the distribution.

In the case of investment expenditures, the budgetary operation described in the receiving body will be classified under the corresponding program and subprogram to be executed; for operating expenses, they will be assigned to the corresponding budget line; these operations may not, under any circumstances, change their purpose or amount, which must be recorded in the administrative act issued for this purpose.

The head of the body or the person to whom he has delegated the management of expenditure may, by means of a resolution, carry out budgetary disaggregations to the appropriations contained in the annex of the liquidation decree, as well as make internal allocations of appropriations in his departments, sections or regions in order to facilitate their operational and management management, without these implying a change in their destination.
These disaggregations and allocations must be recorded in the Integrated Financial Information System (SIIF) Nation, and their validity will not require approval from the Ministry of Finance and Public Credit - General Directorate of the National Public Budget, nor prior favorable opinion from the National Planning Department - Directorate of Public Investment Programming.

ARTICLE 20. The bodies referred to in Article 3 of this decree may agree on the payment of advances and the receipt of goods and services only when they have a current Annual Monthly Cash Program (PAC), approved by Confis.

The bodies that are part of the General Budget of the Nation may only request the transfer of resources approved in the Annual Cash Program to the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit when they have received the goods and/or services or the requirements that make their payment due have been met. Under no circumstances may entities request the transfer of resources to trusts, fiduciary trusts, or autonomous assets, or to entities with which they enter into inter-administrative agreements or contracts, until the purpose of the expenditure has been fulfilled. When trusts, fiduciary trusts, autonomous assets, or inter-administrative agreements or contracts use the creation of sub-accounts, subprograms, sub-projects, or any other classification method, they must implement a cash unit to ensure efficiency in the management of the resources allocated to them by the Nation.

PARAGRAPH. The resource balances of portfolios managed by the General Directorate of Public Credit and National Treasury that are not committed to meeting expenses or paying obligations are part of the Nation's treasury and may be used to fulfill the obligations for which they were created. The Directorate shall keep the corresponding accounting records for these Treasury operations.

ARTICLE 21. The national Government will classify the income and expenses in the liquidation decree and define the latter.

Likewise, when items are included in revenue numerals, sections, programs and subprograms that do not correspond to their purpose or nature, they will be placed in the corresponding place.

The General Directorate of the National Public Budget of the Ministry of Finance and Public Credit will carry out, through a resolution, any similar operations required during the current term.

When it comes to the investment expenditure budget, it will require the prior favorable opinion of the National Planning Department - Directorate of Public Investment Programming.

ARTICLE 22. The Ministry of Finance and Public Credit - General Directorate of the National Public Budget, ex officio or at the request of the head of the respective body, will make by resolution the necessary clarifications and corrections to the legend to amend the transcription and arithmetic errors that appear in the General Budget of the Nation for the fiscal year 2024.

For clarifications and corrections to the capital expenditure budget legend, a prior favorable opinion from the National Planning Department - Public Investment Programming Directorate will be required.

ARTICLE 23. The bodies referred to in article 30 of this decree are the only ones responsible for the registration of their public financial management in the Integrated Financial Information System (SIIF) - Nation.

No information will be required to be sent to the General Directorate of the National Public Budget of the Ministry of Finance and Credit.

Machine Translated by Google

Public, which is registered in the Integrated Financial Information System (SIIF) - Nation, except in those cases in which it expressly requests it.

ARTICLE 24. When the bodies comprising the General Budget of the Nation enter into contracts with each other that affect their budgets, with the exception of credit contracts, they shall make adjustments through resolutions issued by the head of the respective body. In the case of national public establishments, superintendencies and special administrative units with legal status, as well as those indicated in Article 50 of the Organic Budget Statute, said adjustments must be made by agreement or resolution of the governing boards or councils; in the absence of these, by the legal representative of the body.

The administrative acts referred to in the preceding paragraph must be submitted to the Ministry of Finance and Public Credit - General Directorate of the National Public Budget, accompanied by the respective certificate stating that the resources issued by the contracting body will be collected and their economic justification, for the approval of the budgetary operations contained therein, a requirement without which they cannot be executed. In accordance with Article 80 of Law 819 of 2003, the resources must be incorporated and executed in the same fiscal year in which the approval is carried out.

When advance payment is stipulated in the agreements and, in order to fulfill its purpose, the contracting body requires contracting with a third party, the effective transfer of the resources to the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit may only be requested once said body acquires the budgetary commitment and the requirements that make its payment due to the final beneficiary have been met.

In the case of investment expenditures, they will require the prior approval of the National Planning Department - Directorate of Public Investment Programming.

The heads of the bodies shall be responsible for the legality of the acts in question.

ARTICLE 25. Except as provided in Article 47 of Law 1450 2011, no body may enter into commitments that imply the payment of fees to international organizations charged to the General Budget of the Nation, without the existence of the law approving public treaties or without the President of the Republic having authorized its provisional application in the terms of article 224. of the Political Constitution.

Once the requirements of the previous section have been met, with prior authorization from the Ministry of Foreign Affairs, national public establishments may only pay fees to said organizations from their own resources.

The contributions of the Republic of Colombia to international financial organizations will be paid from the General Budget of the Nation, except in those cases in which contributions are recorded as international reserves, which will be paid in accordance with the provisions of Law 31. of 1992 or those that modify or add to it.

Commitments acquired within the framework of international treaties or agreements to which Colombia is a party and whose binding force has been approved by law of the Republic will not require authorization for future validity; however, prior fiscal endorsement by the Higher Council for Fiscal Policy (Confis) is required.

ARTICLE 26. The bodies that make up the General Budget of the Nation must return, within the first quarter of 2024, to the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit, the resources of the Nation, and to its treasuries when they correspond to own resources, that are not covering commitments or obligations, and that correspond to budget appropriations from previous fiscal periods, including their financial returns, exchange rate differential, and other profits originating from those, with the corresponding support.

This provision also applies to resources from agreements concluded with international organizations, including counterpart funds.

Likewise, the bodies that make up the General Budget of the Nation, in accordance with article 36 of Law 1955 As of 2019, they must return to the General Directorate of Public Credit and National Treasury within the first month of 2024 any funds from the General Budget of the Nation that have been transferred to financial institutions and that have not been paid to the final beneficiaries. These funds will be designated as various creditors subject to repayment and will be made available to the Financial Institution when payment to the final beneficiaries becomes due. This does not imply any budgetary operation, as it is understood that this is an efficient Treasury management operation.

ARTICLE 27. The expenses that are necessary for the contracting, execution, administration and service of public credit operations, the

---

Machine Translated by Google

Administrative Department of the Civil Service

Similar operations, operations related to the management of public debt, those related to the above, and others related to credit resources, will be covered by appropriations for servicing the public debt; as well as the expenses necessary for the contracting, execution, and administration of public debt securities and the treasury operations of the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit and its related entities.

Pursuant to Article 46 of the Organic Budget Statute, the Bank of the Republic's losses will be met through the issuance of bonds and other public debt securities. The issuance of these bonds or securities will be carried out under market conditions, will not entail any budgetary operation, and should only be budgeted for the purposes of interest payments and redemption.

When profits from the Banco de la República are presented to the nation, they may be paid in cash or with public debt securities.

CHAPTER I

BUDGET RESERVES AND ACCOUNTS PAYABLE

ARTICLE 28. Through the Integrated Financial Information System (SIIF)-Nation, the budget reserves and accounts payable of each of the sections of the General Budget of the Nation, referred to in article 89 , will be established as of December 31, 2023. of the Organic Statute of the Budget. At most, budget reserves will correspond to the difference between commitments and obligations, and accounts payable to the difference between obligations and payments.

For accounts payable established as of December 31, 2023, the corresponding monthly annual cash flow schedule for the current period must be available; otherwise, adjustments must be made to the records and the corresponding budget reserves must be established.
The same procedure must be followed in the 2024 term.

If the commitment or obligation that gave rise to the reserve disappears during the year the budget reserve or account payable is in effect, the corresponding adjustments may be made in the National Integrated Financial Information System (SIIF).

Since the SIIF Nación reflects the detail, sequence, and outcome of the public financial information recorded by the entities and bodies that comprise the General Budget of the Nation, no physical support is required to be sent to the General Directorate of the National Public Budget, nor to the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit, unless otherwise requested by them.

ARTICLE 29. Entities that are part of the General Budget of the Nation and manage resources for pension payments may build budget reserves or accounts payable with the appropriation balances recorded in the National Integrated Financial Information System (SIIF) as of December 31 for these purposes. This constitutes a provision to cover the timely payment of pension liabilities owed by these entities during the following fiscal year.

ARTICLE 30. Regarding accounts payable and budget reserves, the initial budget corresponding to the fiscal year 2024 complies with the provisions of Article 31. of Law 344 of 1996 and Article 9 of Law 225 1995.

CHAPTER IV

OF FUTURE VALIDITIES

ARTICLE 31. Entities or bodies that need to modify the term and/or annual quotas for future periods authorized by the Higher Council for Fiscal Policy (Confis), or its delegate, must first request the rescheduling of future periods, specifying the new conditions. In all other cases, a new authorization will be required.

ARTICLE 32. The annual quotas authorized to assume commitments for future periods not used by December 31 of the year in which the authorization is granted expire, except in the cases provided for in section 2 of article 8 of Law 819 of 2003.

When it is not possible to advance the budget adjustments referred to in Section 2 of Article 8 of Law 819 of 2003 during the corresponding fiscal year, the authority that issued the initial authorization will need to reschedule the annual quotas authorized in order to ensure continuity with the contractor selection process. If no adjustments are necessary, a new authorization for future validity will not be required.

Machine Translated by Google

The records in the Integrated Financial Information System (SIIF) - Nation must correspond to the quotas actually used.

CHAPTER V

CLASSIFICATION OF EXPENSES

ARTICLE 33. The expenses included in the budget for the 2024 fiscal year are classified as follows:

https://www.funcionpublica.gov.co/eva/gestornormativo/documentos/decreto-2295-2023_imagen3_decreto2295de2023.pdf

CHAPTER VI

DEFINITION OF EXPENSES

ARTICLE 34. The expenses included in the budget for the 2024 fiscal year are defined as follows:

A. OPERATION

These are expenses intended to meet the needs of the bodies to fully fulfill the functions assigned in the Political Constitution and the Law.

01 PERSONNEL EXPENSES

These are the expenses associated with personnel linked to the State through a legal/regulatory relationship or a contractual employment relationship (Law 909 of 2004, Art.1).

01 01 PERMANENT STAFF PLANT

It includes remuneration for labor services provided by public servants linked to the staff approved for each PGN body.

01 01 01 SALARY

These are remunerations paid in cash or in kind to employees employed by the State, as compensation for services rendered. Salaries consist of a base salary and other payments designed to compensate for the employee's work.

01 01 02 INHERENT PAYROLL CONTRIBUTIONS

This corresponds to the legal contributions that an entity must make as an employer, to entities in the private and public sectors, such as: Family Compensation Funds, SENA, ICBF, ESAP, National Savings Fund, Severance and Pension Management Funds, private and public Health Promotion Companies, as well as public and private administrators of contributions that are allocated for work-related accidents and occupational diseases.

01 01 03 REMUNERATION NOT CONSTITUTING A SALARY FACTOR

These correspond to the expenses of employees employed by the State that the law does not recognize as part of the salary factor. These payments are not part of the basis for calculating and paying social benefits, parafiscal contributions, and social security, although they are part of the withholding tax base for employment income.

01 01 04 OTHER PERSONNEL EXPENSES - PRIOR DGPPN CONCEPT

This account is for budget programming and records the amount of personnel expenses due to salary increases resulting from the adjustment of purchasing power and other programming criteria provided for consideration, if any.

Machine Translated by Google

01 02 SUPERNUMERARY AND TEMPORARY STAFF

It includes remuneration for labor services provided by personnel temporarily or temporarily associated with the public administration, either within a temporary staffing plan or as supernumerary personnel.

The definitions of the concepts into which the expenses of SUPERNUMERARY PERSONNEL AND TEMPORARY STAFF corresponding to 01 02 01 SALARY, 01 02 02 CONTRIBUTIONS INHERENT TO THE PAYROLL, 01 02 03 REMUNERATION NOT CONSTITUTING A SALARY FACTOR AND 01 02 04 OTHER PERSONNEL EXPENSES - PREVIOUS DGPPN CONCEPT are broken down for 01 02 SUPERNUMERARY PERSONNEL AND TEMPORARY STAFF are the same as the concepts of the Permanent Personnel Plant applicable to this type of employment relationship.

02 ACQUISITION OF GOODS AND SERVICES

These are the expenses associated with the purchase of goods and the contracting of services, provided by natural or legal persons, which are necessary for the fulfillment of the functions assigned by the Political Constitution and the law to the PGN body.

The remuneration for the contracting of services provided by natural or legal persons may not be agreed upon for a monthly value greater than the total monthly remuneration established for the head of the entity.

The total monthly remuneration of the head of the entity is understood to be the amount corresponding to the head of the entity in each of said periods, without in any case taking into consideration the performance factors.

Exceptionally, for those events requiring the contracting of highly qualified services, understood as those with a high level of specialization, complexity, and detail, fees higher than the total monthly remuneration established for the head of the entity may be agreed upon. These fees may not exceed the total monthly remuneration of the head of the entity, including benefits and inherent payroll contributions related to social security and parafiscal contributions, which are the employer's responsibility. In these events, the Legal Representative of the entity must certify compliance with the following aspects: 1. Justify the need for highly qualified personal services. 2. Indicate the specific, highly qualified characteristics and qualities that the contractor meets for the execution of the contract; and 3. Determine the characteristics of the products and/or services expected to be obtained.

03 CURRENT TRANSFERS

This includes transactions made by a PGN body to another unit without receiving any goods, services, or assets from the latter in return as direct compensation. Transfers, by their very nature, reduce the income and consumption possibilities of the giver and increase the income and consumption possibilities of the recipient.

04 CAPITAL TRANSFERS

These include transactions made by a PGN body to another unit for the acquisition of an asset or the payment of a liability, without receiving any goods, services, or assets from the latter in return as direct consideration. Unlike current transfers, these involve the transfer of ownership of an asset (other than cash and inventories) from one unit to another, the obligation to acquire or dispose of an asset by one or both parties, or the obligation to pay a liability by the recipient.

05 MARKETING AND PRODUCTION EXPENSES

It includes the expenses associated with the acquisition of inputs necessary for the production and marketing of goods and services provided by the PGN body.

06 ACQUISITION OF FINANCIAL ASSETS

It includes resources intended for the acquisition of financial rights, which give their owner the right to receive funds or other resources from another unit.

07 DECREASE IN LIABILITIES

These are expenses associated with a payment obligation acquired by the PGN body, but which are supported by the prior collection of resources. Expenses for reducing liabilities are characterized by not affecting the institutional unit's assets.

Machine Translated by Google

08 EXPENSES FOR TAXES, FINES, PENALTIES AND LATE PAYMENT INTEREST

This includes expenditures for taxes, fines, penalties, and late payment interest, which the PGN bodies are legally required to address. Taxes are defined as monetary benefits established by a state authority, in the exercise of its governmental power, to fulfill its purposes. Taxes are distinguished between taxes, fees, and contributions based on the intensity of the coercive power and the obligation to contribute implicit in each type.

Fines, penalties, and late payment interest comprise the expenditure for monetary penalties derived from the State's punitive power, and which are established for noncompliance with laws or administrative regulations, in order to prevent behavior considered undesirable.

B. PUBLIC DEBT SERVICE

Debt service expenses, both domestic and foreign, are intended to meet obligations related to the payment of principal, interest, fees, and all other expenses arising from public credit operations carried out by PGN bodies to provide the state entity with resources, goods, or services with a deadline for payment.

09 SERVICE OF THE EXTERNAL PUBLIC DEBT

This includes principal repayments, interest, commissions, and all other expenses arising from public credit operations carried out by the PNG bodies with agents residing outside the country.

10 SERVICE OF THE INTERNAL PUBLIC DEBT

This includes principal amortization expenses, interest, commissions, and all types of expenses arising from public credit operations carried out by the PNG bodies with agents residing in Colombian territory.

C. INVESTMENT

These are expenditures that are likely to generate revenue or be economically productive in some way, or that consist of assets for long-term use, also called capital assets, as opposed to operating assets, which are generally intended to expire upon use. These are also expenditures intended to create social infrastructure.

The fundamental characteristic of this expenditure must be that its allocation allows for increased production capacity and productivity in the areas of physical, economic, and social structure.

Investments financed with external credit resources must be incorporated into the budget, approved by the General Directorate of Public Credit and National Treasury, and subject to administrative contracting procedures in order to be implemented.

At the time of the obligation, investment expenses will be disaggregated at the highest level of the Expenditure Object Classifier of the Budget Classification Catalogue established by the General Directorate of the National Public Budget, as will operating expenses.

ARTICLE 35. The breakdowns into which each of the expenditure objects defined in the previous article are classified will be those established in the Budget Classification Catalogue of the General Directorate of the National Public Budget of the Ministry of Finance and Public Credit.

CHAPTER VII

MISCELLANEOUS PROVISIONS

ARTICLE 36. Any public servant who receives an order of seizure of the resources included in the General Budget of the Nation, including transfers made by the Nation to territorial entities, is obligated to carry out the corresponding procedures to request their release.

For this purpose, the certification of non-seizability where the resources subject to the precautionary measure are incorporated will be requested from the head of the budget section body or whoever he delegates. The request must indicate the type of process, the parties involved, the

Machine Translated by Google

judicial office that issued the precautionary measures and the origin of the resources that were seized.

PARAGRAPH. In the same terms, the Legal Representative of the decentralized entities that administer social security resources shall certify the non-seizability of these resources in the terms provided for in Article 63. of the Political Constitution in accordance with article 134 of Law 100 of 1993 and article 25 of Law 1751 of 2015.

ARTICLE 37. The bodies referred to in Article 30 Under this decree, guardianship rulings will be charged to the item corresponding to the nature of the failed business; likewise, transaction contracts will be charged to the item initially affected with the respective commitment.

To pay them, the required budget transfers must first be made, charging the appropriation balances available during the current fiscal year.

Public institutions must respond to rulings issued against them, first and foremost, with their own resources, first carrying out the necessary budgetary operations. All expenses incurred in arbitration tribunals, as well as any bank or insurance company bonds or guarantees required in legal proceedings, may be paid from appropriations from judgments and conciliations.

When the effects of a judgment of jurisprudential unification issued by the Council of State are extended in accordance with the provisions of Article 102 of the Code of Administrative Procedure and Administrative Litigation, by virtue of the budgetary autonomy enshrined in article 110 of the Organic Statute of the Budget, the budgetary operation to which it takes place will be the responsibility of the Head of each body and its payment will be charged to the item that generated it.

PARAGRAPH. During the current fiscal year, contributions to the Contingency Fund of State Entities referred to in sections 1 and 2 of article 5 of Law 448 of 1998 related to the judicial liabilities described in article 194 will not be made. of Law 1437 of 2011.

ARTICLE 38. The Attorney General's Office, the National Police, the National Army, the National Navy, the Air Force and the National Protection Unit must cover, from their respective budgets, the expenses of the personnel linked to said bodies and that make up the Unified Action Groups for Personal Freedom (GAULA), referred to in Law 282. of 1996.

PARAGRAPH. The National Protection Unit or the National Police shall cover, within their respective budgets, the travel and per diem expenses incurred by officials assigned to the Congress of the Republic to provide protection and personal security services to its members.

ARTICLE 39. Obligations for medical assistance services (not pensions), public utilities (Water and Sewage, Energy, Natural Gas), public communications services (which includes telecommunications and postal services), passenger or cargo transportation services and contributions inherent to the payroll, accrued in the last two months of 2023, may be paid from the appropriations of the 2024 fiscal year.

Vacation pay, vacation bonuses, vacation compensation, special recreation bonuses, severance pay, pensions, funeral benefits payable by entities, taxes, contributions (including the fiscal control fee), contributions to international organizations, as well as obligations of liquidated entities corresponding to public utilities and contributions inherent to the payroll, can be paid from the current budget regardless of the year of their accrual, affecting the item that gave rise to them.

ARTICLE 40. In State-owned Industrial and Commercial Enterprises and in Mixed Economy Companies subject to the regime of those engaged in the generation, transmission, distribution, and marketing of energy, expenses related to the acquisition of goods and services necessary for the production, transformation, and marketing processes shall be classified as investment projects. The same procedure shall apply to Residential Public Service Companies in which the Nation or its decentralized entities hold 90% or more of their capital.

In cases where State Industrial and Commercial Enterprises and Mixed Economy Companies subject to the regime of those, from any sector, receive contributions from the Nation, these will be classified as a transfer in the Main Section of the Administrative Sector to which they are linked.

PARAGRAPH. State Industrial and Commercial Enterprises and Mixed Economy Companies subject to the regime of those, will register

---

Machine Translated by Google

their investment projects in the National Bank of Programs and Projects, in accordance with the methodology and guidelines established by the National Planning Department.

ARTICLE 41. The percentage of the sales tax assigned to the departmental pension funds and the Teachers' Social Benefits Fund for the payment of final severance pay and pensions of nationalized teaching staff will continue to be paid based on the agreements signed pursuant to the provisions of Law 91. from 1989.

ARTICLE 42. The execution of the resources transferred to the National Pension Fund of Territorial Entities (Fonpet) from the General Budget of the Nation shall be carried out by means of a resolution issued by the Ministry of Finance and Public Credit, ordering the transfer of the resources. If it is not possible to transfer the resources to the Fund's administrators, it shall be sufficient for this purpose for said resolution to order their administration by the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit through a special account, as long as the resources can be effectively delivered.

The funds will be transferred at the intervals established by the national government. In the event that the funds have not been fully distributed among the territorial entities, the undistributed funds may be transferred to a Fund account managed in the same manner as the Fund's other resources, as funds to be credited to the corresponding accounts of the territorial entities.

ARTICLE 43. The Ministry of Labor and the Colombian Pension Administrator (Colpensions) may offset reciprocal debts for contributions and refunds of subsidies paid by the Nation under the Pension Contribution Subsidy Program, making only the accounting records and making any necessary changes to citizens' employment histories. If obligations remain with the Nation and/or Colpensions, the debtor entity shall be responsible for estimating and including in the budget for each fiscal year the necessary appropriation of funds to make payments on its obligations.

ARTICLE 44. Without prejudice to the provisions of current regulations, the payment of the debt corresponding to the pension liability of territorial entities with Fomag and in compliance with paragraph 2 of article 18 of Law 715 Since 2001, Fonpet must transfer to Fomag the resources accumulated by each of them in the Fonpet Education sector as repayments of the pension debt of the territorial entities, taking into account only the value of the pension liability recorded in the Fund's Information System. For this purpose, Fonpet may transfer surplus resources from the General Purpose sector of each territorial entity to the education sector when it does not have sufficient resources to cover its pension liabilities in that sector.

If the updated actuarial calculations of territorial entities result in transfers exceeding the pension liability, these will be reimbursed by Fomag during the fiscal year to Fonpet, in favor of the Territorial Entity.

Fomag will report these operations to the territorial entities for their corresponding budgetary registration and accounting, and will report the details corresponding to each territorial entity to the General Directorate of Economic Regulation of Social Security of the Ministry of Finance and Public Credit.

In development of article 199 of Law 1955 As of 2019, the Fonpet resources allocated in the General Budget of the Nation during the 2024 fiscal year for Fomag will be allocated first to the amortization of the current pension debt of the territorial entities registered in said Fund for the current fiscal year, without prejudice to any subsequent adjustments that may occur. Second, they will be applied to other pension obligations, and the outstanding amount will be amortized into the actuarial reserve.

ARTICLE 45. The withdrawal of funds from the accounts of territorial entities in the Fonpet for the payment of pension bonds or pension bond shares and pension shares shall be carried out in accordance with current regulations, without the territorial entity being required to previously prove the inclusion in its budget. During the fiscal year, such territorial entities must include in their budget and record the payments made by the Fonpet for these purposes.

In the 2024 period, at the request of territorial entities, they may redirect resources for investment expenses, the income that constitutes contributions under their charge, in accordance with Law 549 of 1999.

The Territorial Entity will inform the Ministry of Finance of its preferred option for making contributions, whether it will use the income reorientation option, the Financial Management Model, or the Contribution Suspension Model.

ARTICLE 46. State entities may constitute, through autonomous assets, the funds referred to in Article 107. of Law 42 of 1993. The resources placed in these Funds will cover State assets when technical studies indicate that it is more convenient to cover the risks with public reserves than with commercial insurance.

Machine Translated by Google

When technical studies establish that certain assets are not insurable or that their insurance entails costs of such a nature that the cost-benefit ratio of insurance is negative, or that the resources for self-protection through insurance funds are of such magnitude that their use for such a purpose is not possible or convenient, the risk with respect to these assets may be assumed and they may not be insured or covered by insurance funds.

They may also purchase civil liability insurance for public servants, which covers their liability for non-malicious acts or events occurring in the performance of their duties, as well as the costs of disciplinary, criminal, and tax defenses they may incur. These latter costs may be paid by the entities, provided there is a final decision exonerating them from all liability and the other party is not ordered to pay the costs of the proceedings.

This provision will be applied under the same conditions to the Superintendencies, as well as to the State Industrial and Commercial Enterprises and the Mixed Economy Companies assimilated to these.

ARTICLE 47. Current and surplus income from the Solidarity Subaccount of the Pension Solidarity Fund may be used to finance programs from the Subsistence Subaccount of said Fund, for the protection of people in a state of indigence or extreme poverty, in accordance with Decree 3771. of 2007, compiled by Decree 1833 of 2016 and the regulations that modify or add to it.

PARAGRAPH. Authorize the Administrative Department for Social Prosperity (DPS) to execute the resources of the Pension Solidarity Fund that finance the Colombia Mayor Program, in accordance with paragraph 2. of article 50 of Legislative Decree 812 of 2020.

ARTICLE 48. In order to finance the General Health Social Security System, in compliance with the provisions of article 48 of the Political Constitution and Article 90 of Law 1122 of 2007, for the 2024 period, the current income and surpluses of the resources referred to in article 2.6.1.4.1.1 will be budgeted in the General Budget of the Nation. of Decree 780 of 2016.

Prior coverage of the risks covered by the resources referred to in article 2.6.1.4.1.1 of Decree 780 As of 2016, these resources will be used to finance the Sustainability and Affiliation of the Poor and Vulnerable Population insured through the Subsidized System; once insurance is guaranteed, resources may be allocated to finance other public health programs.

They may also be financed with these resources, within the framework of the provisions of article 337 of the Political Constitution and the international treaties and instruments in force, the values that are determined by the Colombian State for the initial emergency care provided to Colombian nationals in foreign territory in border areas with Colombia, as well as the initial emergency care provided in Colombian territory to nationals of border countries, in accordance with the regulations issued for this purpose by the national Government.

The surpluses of the resources referred to in article 2.6.1.4.1.1 of Decree 780 of 2016, as of December 31, 2023, will be incorporated into the budget of the Administrator of the Resources of the General Social Security System in Health (ADRES), and will be allocated to the financing of health insurance.

ARTICLE 49. The entities responsible for the comprehensive reparation of the population that is a victim of the armed conflict at the national level will give priority in the execution of their respective budgets to the care of said population and, in particular, to the population in a situation of forced displacement and to the ethnic population that is a victim of displacement, beneficiaries of land restitution sentences, in compliance with Law 1448. of 2011, Law 2078 2021, as ordered by the Constitutional Court in Judgment T-025 of 2004 and its Follow-up Orders. These entities must prioritize all requests for Emergency and Transition Humanitarian Aid, constituting a spending title that takes precedence over the entity's other obligations and ensuring the sustainability of land restitution processes.

ARTICLE 50. During the 2024 term, in order to verify the progress in the implementation of Law 1448 of 2011 and ethnic decree laws 4633, 4634 and 4635 of 2011 modified by Law 2078 From 2021, the entities in charge of executing the victims' policy will specify in the Integrated Financial Information System (SIIF) Nation, in the Unified System of Investments and Public Finances (SUIFP), and in the other applications that for this purpose determine the Ministry of Finance and Public Credit and the National Planning Department, the items that within their budget they allocate for this purpose and will send to the Unit for Comprehensive Attention and Reparation to Victims the lists of the population benefiting from the care, assistance and comprehensive reparation measures provided for the population victims of the armed conflict.

ARTICLE 51. Under the coordination of the Unit for Comprehensive Care and Reparation for Victims and the National Planning Department, the bodies comprising the General Budget of the Nation responsible for initiatives within the framework of the public policy of assistance, care, and comprehensive reparation for the victim population will advance the targeting and indicative municipalization of investment expenditures destined for

Machine Translated by Google

said population, in accordance with Law 1448 of 2011. Extended by Law 2078 of 2021 and current regulations.

The indicative targeting and territorialization will ensure the effective enjoyment of victims' rights and will take into account the heterogeneous characteristics and institutional capacities of the territorial entities.

ARTICLE 52. The resources of the Fund for the Rehabilitation, Investment and Fight against Organized Crime (Frisco) will be transferred to the Nation during the current fiscal year by the Special Assets Company (SAE) SAS, to the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit, in accordance with the provisions of Documents Con pes 3412 of 2006, 3476 of 2007 and 3575 of 2009.

ARTICLE 53. Without prejudice to any applicable fiscal and disciplinary liability, when in previous periods payment has not been made for obligations acquired with the formalities provided for in the Organic Statute of the Budget and other regulations governing the matter, and the corresponding budget reserve or account payable has not been established for them, payment may be made under the concept of "Payment of Demandable Liabilities - Expired Periods".

The operation provided for in the previous paragraph will also be carried out when payment has not been made despite the budget reserve or the account payable having been established in a timely manner in accordance with Article 89 of the Organic Budget Statute.

The mechanism provided for in the first paragraph of this article will also apply when it involves compliance with an obligation arising from the law, enforceable in previous periods, even without a certificate of budget availability or budget registration.

When any of the above conditions are met, the "Payment of Due Liabilities - Expired Periods" expense may be covered through the corresponding budget item, as detailed in the annex to the liquidation decree. When making the budget entry, the phrase "Payment of Due Liabilities - Expired Periods" must be included. A copy of the administrative act ordering its payment must be sent to the Comptroller General of the Republic.

In any case, the head of the respective body shall certify in advance compliance with the requirements set forth in this article.

The provisions of this article do not apply when they are configured as accomplished facts.

PARAGRAPH. This article shall also apply to State Industrial and Commercial Enterprises and Mixed Economy Companies assimilated to these, where the Nation holds a 90 percent or more stake.

ARTICLE 54. The budget allocations of the Single Information and Communications Technology Fund include the resources necessary to cover the operating expenses incurred by the Official Postal Operator for the provision of the universal postal service and the postal franchise, and by the Telecommunications Network and Service Provider for the provision of telegraph franchise services. In the case of postal and telegraph franchises, payment shall be made in relation to the services provided to the beneficiary bodies that are part of the General Budget of the Nation.

The Single ICT Fund will transfer funds to the Postal Operator for the provision of postal franchise services and/or to the telecommunications network and service provider that actually provided the telegraph service. The recipient of the transfer will issue the corresponding clearance certificate to the beneficiary entity of the services corresponding to the postal and/or telegraph franchises as soon as they receive the funds.

The resources referred to in numeral 8 of article 35 of Law 1341 of 2009, amended by Article 22 of Law 1978 In 2019, the funds will be transferred from the Single Fund for Information and Communications Technologies to the General Directorate of Public Credit and National Treasury to finance the operating expenses of the Ministry of Information and Communications Technologies.

PARAGRAPH 1. The Single ICT Fund may pay, using appropriations for the 2024 fiscal year, the obligations incurred in the last quarter of the 2023 fiscal year for the universal postal service and postal and/or telegraph franchises referred to in this article.

PARAGRAPH 2. The Single ICT Fund may allocate the money received for the consideration referred to in article 14 of Law 1369 of 2009, to finance the universal postal service and the costs of monitoring and controlling postal operators.

ARTICLE 55. The budgetary support provided by the Nation for the titles issued by Colpensions to cover the 20% corresponding to

Machine Translated by Google

the Nation of the subsidy, or periodic incentive of the BEPS in the case of substitute compensation or return of contributions covered by Law 1328 of 2009, will consider the fiscal availability of the Nation that is defined by Confis.

These securities may be programmed in the General Budget of the Nation up to the amount defined in the Medium-Term Expenditure Framework for the sector in the fiscal year in which payment is due, that is, three years after the issuance of the Security.

ARTICLE 56. Entities that are part of the General Budget of the Nation that enter into contracts and inter-administrative agreements with territorial entities, and where resources are executed from items corresponding to regional investment, will require that for the execution of said projects, the territorial entity previously publish the selection process in the Electronic System for Public Contracting (SECOP), and they may only be contracted with Standard Documents established by the national Government.

ARTICLE 57. Payments for lower electricity and gas sector rates incurred during the validity of this decree may be made by the Ministry of Mines and Energy based on the cost projection made with the information provided by the service providers, or in the absence of such projections, based on the available information. Any balances generated by December 31, 2024, will be covered by appropriations for the following fiscal year.

The Ministry of Mines and Energy may, using available resources appropriated for this purpose, pay any balances incurred in this regard in previous periods.

ARTICLE 58. The Nation, through the Pension Bonds Office of the Ministry of Finance and Public Credit and the Colombian Pension Administrator - Colpensions, pursuant to article 2.2.16.7.25 of Decree 1833 2016, may offset reciprocal debts for Type A Pension Bonds, paid by the Nation on behalf of Colpensions, and enforceable obligations of the Nation, in favor of Colpensiones, for Type B and T Pension Bonds, without budgetary impact. For this purpose, it will be sufficient for the entities to keep the applicable accounting records. In the event that, after the offsetting has been carried out, obligations remain with the Nation and/or Colpensiones, it will be the debtor entity's responsibility to estimate and include in the budget for each fiscal year the budget appropriation with the necessary resources in order to make payments on its obligations.

ARTICLE 59. The entities responsible for the country's Penitentiary and Prison System at the national level will give priority in the execution of their respective budgets to the comprehensive care of the penitentiary and prison population, in compliance with Sentences T-388 of 2013 and T-762 of 2015 of the Constitutional Court.

ARTICLE 60. In order to guarantee the right to timely payment of pension payments, Colpensions may use its own liquidity resources to meet the payment of the obligations established in articles 137 and 138 of Law 100 of 1993. These resources will be returned by the Nation to Colpensiones, under the terms and conditions agreed upon by the parties.

ARTICLE 61. ACTION FOR REPETITION. Public entities obliged to exercise the action for repeal contained in Article 4 of Law 678 From 2001, they will report semi-annually to the Comptroller General of the Republic and the Attorney General of the Nation for their jurisdiction, regarding each of the judicial rulings paid with public funds during the respective period, attaching the corresponding certification from the Conciliation Committee, stating the basis for the decision to initiate or not the respective repetition actions.

Likewise, within two (2) months following the decision of the Conciliation Committee, the records of filing of the respective actions before the competent judicial official will be sent to the control bodies mentioned in the previous section.

PARAGRAPH. The provisions of this article shall apply to all judgments that have been paid upon the entry into force of this decree and that have not yet been subject to enforcement action.

ARTICLE 62. In order to avoid double budgeting, the Superintendency of Notaries and Registry will directly transfer the collections of Law 55 of 1985, for the concept of income from fees for the registration of public instruments and the granting of deeds, in the percentages established by current regulations, to the Judicial Branch, the Attorney General's Office, USPEC, the Ministry of Justice and Law, and the ICBF, charged to the amounts budgeted for each of them, from this source. The Superintendency will make the necessary accounting adjustments.

ARTICLE 63. The Ministry of Mines and Energy shall recognize obligations for energy consumption up to the amount of appropriations for the fiscal year, financed with resources from the Social Energy Fund (FOES). Therefore, public energy service providers may not establish liabilities for the Nation that correspond to the difference between the percentage indicated in Article 190 of Law 1753 of 2015 and what was effectively recognized.

Machine Translated by Google

ARTICLE 64. The expenses incurred by the Ministry of National Education for carrying out the activities of control, monitoring and collection of amounts owed, to advance the process of verification and collection of the parafiscal contribution provided for in Law 1697 of 2013, will be carried out with funds deposited in the National Fund for State Universities of Colombia, for which the corresponding budget records will be made.

ARTICLE 65. The Nation may issue bonds under market conditions or other public debt securities to pay its financial obligations, whether incurred or accrued, to settle the liabilities corresponding to the severance pay of state universities referred to in Article 88 of Law 30. of 1992, for administrative and teaching staff not covered by the new salary system. Likewise, it may issue pension bonds as provided for in Law 100 of 1993, particularly for state universities.

Likewise, during the current fiscal year the Nation may recognize and pay, either by charging the debt service of the General Budget of the Nation or with bonds or other public debt securities, the obligations of the Fuel Price Stabilization Fund (FEPC) and the pension bonds under its charge as provided for in Law 100. of 1993 and its Decree 1833 of 2016, compilation of the rules of the General Pension System. When Class B TES are issued to cover the payment of pension bonds payable by the Nation that have been negotiated in accordance with Article 12 of Decree 1299 Since 1994, the secondary market may be managed by the General Directorate of Public Credit and National Treasury in a separate account, with the aim of providing the necessary liquidity. The Ministry of Finance and Public Credit, through an administrative act, shall establish the parameters applicable to the operations covered by this section.

The Nation may recognize as public debt the obligations of the National Infrastructure Agency and the National Highway Institute arising from concession contracts for judgments and settlements up to five hundred billion pesos ($500,000,000,000); in these cases, they will be recognized through the issuance of bonds or other public debt securities under market conditions, for which the procedure provided for in Article 29 of Law 344 **must be followed**. of 1996 and its regulatory standards, where relevant.

The responsibility for payment of the obligations referred to in the previous section lies with the National Infrastructure Agency and the National Roads Institute, as appropriate.

PARAGRAPH. The issuance of the bonds or securities referred to in this article does not entail a budgetary operation and must only be budgeted for the purposes of their redemption and interest payment. The same procedure shall apply to bonds issued pursuant to article 29. of Law 344 of 1996. When using this mechanism, the National Infrastructure Agency and the National Roads Institute will only proceed with the accounting records that are relevant to extinguish said obligations by virtue of the payment agreements they sign with the Ministry of Finance and Public Credit.

ARTICLE 66. The items of the General Budget of the Nation for the Justice Protection Fund referred to in Decree 200 of 2003 and the regulations that modify or add to it, are incorporated into the Judicial Branch Superior Council of the Judiciary, Attorney General's Office, Attorney General's Office and Ministry of the Interior.

ARTICLE 67. OPERATION AND DEVELOPMENT OF THE FUND FOR THE DEFENSE OF COLLECTIVE RIGHTS AND INTERESTS. Based on the provisions of Law 472 of 1998, the Ombudsman's Office will finance the operation of the Fund with the proceeds of the financial returns on the capital of said Fund.

ARTICLE 68. ADMINISTRATION AND OPERATION OF THE NATIONAL PUBLIC DEFENDER SYSTEM. Based on the transfer made for the development of the National Public Defender System, the operating expenses that guarantee the proper development of the principles provided for in Law 941 **will be attributable to it.** of 2005, based on the principle of comprehensive programming provided for in Article 17 of the Organic Statute of the Budget.

ARTICLE 69. When there are financial returns generated by the Arms Return Fund, said resources will be incorporated into Budget Section 1501 of the Ministry of National Defense, as a source of income Special Funds (Internal Funds), which will be used in accordance with the provisions of the Organic Statute of the Budget.

ARTICLE 70. The hedging operations provided for in articles 129 of Law 2010 of 2019 - Fiscal Revenue Stabilization Fund - and 33 of Law 1955 of 2019 - Fuel Price Stabilization Fund - may be structured, contracted, and executed jointly, as part of a comprehensive program to mitigate fiscal risks arising from fluctuations in the prices of oil, liquid fuels, and the exchange rate of the Colombian peso to the US dollar. The costs generated by the execution of said operations may be assumed by charging the public debt service of the General Budget of the Nation when the resources available in said funds are insufficient. The hedging operations referred to in this article may be administered by the General Directorate of Public Credit and National Treasury through independent accounts while they are incorporated into the respective funds. If resources are received by virtue of the hedging operations, these may be incorporated into the financial statements of the Fund.

Machine Translated by Google

Stabilization of Fiscal Revenue (FEIF) for later use.

ARTICLE 71. VERIFICATION OF THE REGISTRY OF FINANCED OR CO-FINANCED PROJECTS. For the corresponding allocation of national resources that co-finance projects at any level of government, the bodies that are a section within the General Budget of the Nation must verify that the co-financed projects are registered in the National Bank of Programs and Projects administered by the National Planning Department. The provisions of the preceding paragraph also apply in cases where the financing or co-financing is carried out by the bodies of the General Budget of the Nation through trusts, fiduciary assignments, and/or autonomous assets.

ARTICLE 72. ACQUISITION OF FOREIGN CURRENCY FOR BUDGETARY EXECUTION OF EXTERNAL DEBT SERVICE. In order to establish the final value of the appropriations required to service the external debt in the face of possible exchange rate fluctuations, the General Directorate of Public Credit and National Treasury of the Ministry of Finance and Public Credit is hereby authorized, with the budget allocation order, to acquire the necessary foreign currency to execute the budgetary execution corresponding to the external debt service of the General Budget of the Nation, recording the budgetary obligations at the exchange rate in effect on the date of the budget allocation. To meet the required payments for external debt service, the General Directorate of Public Credit and National Treasury may establish the required foreign currency portfolios with the resources derived from the corresponding budget allocation.

ARTICLE 73. JUDICIAL ASSISTANCE AND REPRESENTATION OF PUBLIC ENTITIES. Within the framework of harmonious collaboration that should guide the administrative actions of the various State authorities and entities, and in order to reduce travel costs and legal expenses, the following considerations shall be taken into account:

a) When several public administration entities, whether national or territorial, act as plaintiffs or defendants in a judicial proceeding, they may, by mutual agreement with their legal representatives, arrange for one of them to assume the legal representation of the remaining entities for the hearings they have been convened in the respective proceeding or are required to attend by law. For this purpose, the entity entrusted with assuming legal representation for the corresponding hearing shall be capable and authorized to appoint one of its representatives or officials to receive the required powers.

b) In matters of collection of legal costs in which several entities of the Executive Branch, including the Ministry of Finance and Public Credit, are beneficiaries, the Ministry of Finance and Public Credit shall be responsible for collecting all such costs, which shall be empowered to initiate the respective judicial or extrajudicial collections. When the costs include legal entities, they shall be deemed to be in favor of the public entity and not of the representative representing them. Notwithstanding the provisions of paragraph a) of this article, entities may, through teleworking, represent and monitor proceedings in different areas of the country.

ARTICLE 74. INCORPORATION OF TERRITORIAL ENTITY RESOURCES INTO THE REGISTRY FUND FOR THE EXERCISE OF CITIZEN PARTICIPATION MECHANISMS. For the 2024 term, the National Civil Registry's Revolving Fund, through agreements, may receive resources contributed by territorial entities for the financing of citizen participation mechanisms, by virtue of the principles of harmonious collaboration and territorial autonomy, in coordination with the National Civil Registry.

These funds will be used to cover the costs of financing citizen participation mechanisms requested by territorial entities, subject to the collection of contributions from the requesting territorial entity and the amount received from the requesting territorial entity.

ARTICLE 75. REPORTING OBLIGATION - SOVEREIGN THEMATIC BONDS. Without prejudice to existing reporting obligations, the executing entities of the General Budget of the Nation (PGN) that have transfers or projects selected to be part of the thematic bond portfolios in accordance with the reference frameworks referred to in Article 40 of Law 2073 of 2020, must provide the Ministry of Finance and Public Credit and the National Planning Department, every 6 months after the thematic bond is issued, the necessary information to prepare reports to investors, such as impact indicators, performance and environmental, social or governance controversies that arise in these expenses or projects.

ARTICLE 76. In State Industrial and Commercial Enterprises and Mixed Economy Companies with the regime of those and in Public Service Companies and their subordinates, in which the participation of the Nation directly or through its decentralized entities is equal to or greater than ninety percent and that develop their activities under conditions of competition, the approval and modification of their budget, budgetary feasibility and future terms, will correspond to the boards of directors of the respective companies and societies, without requiring a prior opinion from any government body or entity.

PARAGRAPH. These companies and corporations will continue to report their budget information to the General Directorate of the National Public Budget and the Directorate of Public Investment Programming, in accordance with the provisions of Article 93 of the Organic Budget Statute.

Machine Translated by Google

ARTICLE 77. PAYMENT OF OBLIGATIONS OF THE FUEL PRICE STABILIZATION FUND (FEPC). To meet the obligations of the Fuel Price Stabilization Fund (FEPC), including those accrued in previous periods, the Ministry of Finance and Public Credit will directly make the corresponding transfers or offsets. To make the corresponding transfers or offsets, the Ministry of Finance and Public Credit may: (i) use available uncommitted operating or debt service budget appropriations; (ii) use resources held as cash balances of the FEPC; and (iii) fully or partially offset, by charging the dividends declared by Ecopetrol SA in favor of the Nation, the FEPC's settled obligations with the Ecopetrol Group, without this implying a cash flow for the parties or any budgetary operation.

This last operation must be submitted to the National Council for Economic and Social Policy (Conpes) for its recommendation, within the framework of Article 97 of Decree 111 of 1996 - Organic Budget Statute.

ARTICLE 78. STATE UNIVERSITY AUTONOMOUS ENTITIES AND PUBLIC UNIVERSITIES. In compliance with Constitutional Court ruling C-346 of 2021, budget appropriations are allocated in budget section 2257 entitled "State University Autonomous Entities - Public Universities," which includes the total operating and investment expenses that the Nation transfers to each of these autonomous entities. The operating and investment expenses of each university are contained in the annex that forms part of this decree. In the case of investment resources referred to in Article 86 of Law 30 of 1992, each public university autonomous entity must have an investment project registered with the National Investment Project Bank (BPIN).

PARAGRAPH 1. In the annex to the decree for the liquidation of the General Budget of the Nation within the budget section "Autonomous State University Entities - Public Universities", each University will be identified as an executing unit only for matters related to the budgetary management of the transfer of said resources and will record the budgetary execution of the amounts indicated in the Integrated Financial Information System (SIIF) Nation, only for the transfer of these resources to its treasuries, for which the PAC will be guaranteed without the need for a request, taking into account the respective budgetary autonomy without being considered as public establishments.

Transfers other than those established in budget section 2257 or payments that must be made by entities of the General Budget of the Nation to state autonomous entities - Public Universities, will be issued as if they were a third party not a user of the Integrated Financial Information System (SIIF).

PARAGRAPH 2. For the purposes of programming the General Budget of the Nation for 2025, autonomous state university entities - Public Universities will not require a draft budget, by virtue of their budgetary autonomy.

The provisions of this article shall only apply to budgetary management of expenditures for the allocation of resources, without prejudice to the university's autonomy to plan, program, appropriate, execute, and modify its budgets.

ARTICLE 79. For the purposes of the distribution of criteria using census data from the General Participation System for the eleven twelfths of the validity of the application of this decree, all beneficiaries will be guaranteed at least 50% of what was assigned for the concept of the eleven twelfths of the previous validity.

PARAGRAPH. The efficiency criterion for General Purpose, Drinking Water and Basic Sanitation Participations, the Public Health Subcomponent of the Health Participation, and the Special Allocation for School Feeding Programs, as well as the distribution of the Education Participation, the Supply Subsidy Subcomponent of the Health Participation, and the 2.9% Special Allocation to the National Pension Fund for Territorial Entities (Fonpet) of the General Participation System, are exempt from the measure contemplated in this article.

ARTICLE 80. The budgets of the Ministry of Finance and Public Credit and the National Planning Department shall include an appropriation for the purpose of covering expenses for disaster prevention and response, Comprehensive Care, Assistance and Reparation for Victims of the Internal Armed Conflict, as well as to finance investment programs and projects that are duly registered in the National Bank of Programs and Projects, in accordance with article 68 of the Organic Budget Statute, without changing their purpose and amount, in accordance with the terms of Judgment C-006 of 2012 of the Constitutional Court.

PARAGRAPH. Distributions may be made within the budget execution process to finance projects registered with the National Bank of Programs and Projects, without changing their purpose or amount, in order to promote compliance with the 2022-2026 National Development Plan, territorial development, and the strengthening of social programs.

ARTICLE 81. Certificates of freedom and tradition, since they do not correspond to rights of registration of public instruments, will be excluded in order to comply with the provisions of articles 13 and 13a of Law 55 of 1985.

ARTICLE 82. The accrued and pending labor obligations for the 2023 period corresponding to payroll contributions, employer and affiliate contributions to Fomag, and parafiscal contributions may be financed from the resources of the General Participation System of the education sector for the 2024 period.

ARTICLE 83. In the event that the Nation has pending the transfer of resources from previous periods to a territorial entity charged to the General Participation System, due to the effect of the measures adopted in application of Decree 028 of 2008 or due to the lack of timely registration of the Master Account, the national entity in charge of expenditure will notify the General Directorate of Public Credit and the National Treasury of said situation and its amount, and the budget will be executed, keeping the resources in a separate account and managed by the aforementioned Directorate, which does not imply a different recognition of the untransferred amount.

Once the situation that gave rise to the pending resource transfer is resolved, the national entity in charge of the expenditure will inform the General Directorate of Public Credit and the National Treasury so that the transfer can be made, without any budgetary operation being required for this event.

ARTICLE 84. The entities that are a budget section, which have changed their budget identification code by legal provision, will execute the budget reserves and pay the accounts payable that are constituted at the end of the fiscal year 2023 with a charge to the item that gave rise to them in the coding of the fiscal year 2023. The same procedure will apply for the execution of the budget reserves and the payment of the accounts payable that are constituted at the end of the fiscal year 2023 under the head of the executing unit 280102 National Registry of Civil Status - National Electoral Council.

ARTICLE 85. During the 2024 period, the Ministry of Mines and Energy will allocate resources to promote and co-finance projects aimed at providing the public fuel gas service through the development of Liquefied Petroleum Gas - LPG infrastructure through the network at the National level and to increase its use in the rural sector and in the lower urban strata, with a charge to the resources provided in the current period for the project of distribution of resources for consumption in cylinders and LPG infrastructure projects.

ARTICLE 86. In order to close the Salary Leveling process for permanent employees not linked to the Legislative Work Units of the H. Congress of the Republic, six billion pesos ($6,000,000,000) shall be appropriated through the Ministry of Finance and Public Credit, which shall be added to the operating expenses of the respective Corporations, and shall be divided between the House of Representatives and the Senate of the Republic.

ARTICLE 87. Considering the special insular status of the Archipelago Department of San Andrés, Providencia and Santa Catalina, and the preservation objectives of the Sea Flower Biosphere Reserve, the current budget will allocate resources to the Ministry of Housing, City and Territory to cover costs that cannot be recovered via tariffs or subsidies for the start-up, operation and maintenance of the solid waste extraction, adaptation and treatment system for the department. System providers must report to the Ministry of Housing, City and Territory the costs of said activities that cannot be recovered, so that they may be transferred monthly to guarantee the continued operation of the system. In order to make said transfer, the aforementioned Ministry must request the information it deems necessary from the competent authorities to ensure that the costs assumed correspond to those that cannot be covered via tariffs or subsidies.

The Ministry of Housing, City and Territory may, using available resources appropriated for this purpose, pay any outstanding balances accrued in 2023 for the San Andrés solid waste management plant.

ARTICLE 88. The entities responsible for compliance with the provisions of Judgment T-302 of 2017, which declares the existence of an unconstitutional state of affairs in relation to the effective enjoyment of the fundamental rights to food, health, drinking water and participation of the children of the Wayúu people, will give priority in the execution of their respective budgets so that the obligations arising benefit the target population.

These entities must prioritize all requests for assistance and transition, constituting these as the expenditure heading that takes precedence over the entity's other obligations.

ARTICLE 89. The national Government, through the Ministry of Finance and Public Credit, will supplement resources to the Fund for the Comprehensive Development of the Special District of Buenaventura, for the implementation of the Special Plan for the Comprehensive Development of the District of Buenaventura, in accordance with the provisions of Law 1872 of 2017.

During the validity of this decree, the financing of investment projects will be defined in accordance with progress in the formulation and viability of the projects.

ARTICLE 90. Principles of economy, efficiency and effectiveness in the performance of the Special Administrative Unit of the Tax and Administration Directorate

Machine Translated by Google

Administrative Department of the Civil Service

National Customs - UAE DIAN. To optimize the resources of the Special Administrative Unit of the National Tax and Customs Directorate - UAE DIAN in those activities that allow for tax intelligence, obtain greater collection, and/or combat conduct linked to noncompliance with tax, customs, and exchange obligations, the Director General will define, in coordination with the Minister of Finance and Public Credit, the policy for initiating administrative processes and actions under the entity's responsibility, as well as for exercising the duty to report and the means of direct redress control, for which the Director of the DIAN will issue the resolution.

The competent areas will decide in a reasoned manner in accordance with the resolution issued.

ARTICLE 91. The Territorial Development Finance Company S A. - FINDETER will structure, after verification by the Colombian Financial Superintendence that the requirements for the administration and management of comprehensive risk systems have been met, grant direct credit, with or without a compensated rate, to electricity distribution and marketing companies of an official, mixed and/or private nature, that have applied for the regulatory tariff option established by the Energy and Gas Regulation Commission - CREG.

FINDETER will establish the conditions under which it will grant loans up to an amount equivalent to the accumulated outstanding balance of each distribution and marketing company's tariff option as of the date of issuance of this decree, subject to the availability of resources.

PARAGRAPH. FINDETER may evaluate and accept the following as collateral from distribution and marketing companies for the granting of the credits referred to in this article: (i) the transfer of the economic rights of the accumulated balance pending collection of the tariff option duly certified by the Superintendency of Residential Public Services; (ii) the transfer of the economic rights associated with the payment of up to ninety percent (90%) of the future subsidies that will reasonably be accrued by the provision of the service, calculated based on the average monthly billing of the last two (2) years, duly certified by the Superintendency of Residential Public Services; (iii) the transfer of the non-subsidized portion of the accounts receivable or invoices owed by users of any stratum, certified by a legal representative and accountant and/or fiscal auditor or whoever acts in their place; (iv) the accrued subsidies pending payment certified by the competent entity; (v) any other type of guarantee sufficient for the financial institution in accordance with current regulations.

ARTICLE 92 ANNEX. The details of expenditures for the 2024 fiscal year are contained in the annex accompanying this Decree, in accordance with the provisions of Article 67 of the Organic Budget Statute.

https://www.funcionpublica.gov.co/eva/gestornormativo/documentos/decreto-163-2024_imagen1_decreto63del2024.pdf

jurisprudence228030_1709935950048

(Modified by Art. 2 of Decree 312 of 2024)

(Modified by Art. 1 of Decree 163 (from 2024)

ARTICLE 93. VALIDITY. This decree shall take effect from the date of its publication and shall take effect on tax matters as of January 1, 2024.

ARTICLE 94. PRIOR APPROVAL OF THE NATIONAL PLANNING DEPARTMENT. Modifications and/or distributions to the investment expenditure budget, without changing its purpose, shall be made through a resolution signed by the head of the respective agency, for which they shall require the prior approval of the National Planning Department - Public Investment Programming Directorate. These budgetary operations shall be subject to the approval of the Ministry of Finance and Public Credit - General Directorate of the National Public Budget.

(Added by Art. 3 of Decree 312 of 2024)

PUBLISH AND COMPLY

Given in Bogotá DC, on December 29, 2023

THE PRESIDENT OF THE REPUBLIC

(Signed) Gustavo Petro Urrego

THE MINISTER OF FINANCE AND PUBLIC CREDIT,

Ricardo Bonilla Gonzalez

Machine Translated by Google

**Administrative Department of the Civil Service**

Creation date and time: 2025-03-07 13:47:59